**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

ELECTRONIC PRIVACY INFORMATION CENTER
1718 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20009

      Plaintiff,

      v.
                                              Civ. Action No. 19-810

UNITED STATES DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20230

      Defendant.

---

**COMPLAINT FOR INJUNCTIVE RELIEF**

1.     This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for injunctive and other appropriate relief to secure the release of agency records requested by Plaintiff Electronic Privacy Information Center ("EPIC") from Defendant United States Department of Justice ("DOJ").

2.     EPIC challenges the failure of the DOJ to disclose non-exempt records in response to EPIC's FOIA request concerning the investigation by Special Counsel Robert S. Mueller into Russian interference in the 2016 United States presidential election.[1]

---

[1] *See* Ex. 1, U.S. Dep't of Justice, Office of the Deputy Att'y Gen., Order No. 3915-2017, Appointment of Special Counsel to Investigate Russian Interference with the 2016 Presidential Election and Related Matters ¶ (a) (May 17, 2017), https://www.justice.gov/opa/press-release/file/967231/download.

3.      Prompt disclosure of the requested records, which are of overwhelming public interest,[2] is mandated by the FOIA.

4.      The public has a right to know the full scope of Russian interference in the 2016 United States presidential election and whether the President of the United States played any role in such interference. The public also has a right to know whether the President unlawfully obstructed any investigation into Russian election interference or related matters. The requested records are vital to the public's understanding of these issues and to the integrity of the political system of the United States.

## Jurisdiction and Venue

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, 5 U.S.C. § 552(a)(4)(B), and 5 U.S.C. § 552(a)(6)(C)(i). This Court has personal jurisdiction over Defendant DOJ.

6.      Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391.

## Parties

7.      Plaintiff EPIC is a nonprofit organization incorporated in Washington, D.C. and established in 1994 to focus public attention on emerging privacy and civil liberties issues. Central to EPIC's mission is oversight and analysis of government activities.

8.      EPIC is a membership organization.[3] EPIC's members include distinguished experts in law, technology, and public policy.[4]

---

[2] Jennifer Agiesta, *CNN Poll: Almost Everyone Wants a Public Report on Mueller's Findings*, CNN (Feb. 7, 2019), https://www.cnn.com/2019/02/07/politics/cnn-poll-russia-mueller-report-release/index.html.
[3] EPIC, Bylaws of the Electronic Privacy Information Center §§ 2.02, 5.01 (as amended Jan. 26, 2018).
[4] *Id.* § 5.01.

9.      EPIC maintains one of the most popular privacy websites in the world, epic.org, which

provides EPIC's members, policymakers, and the public with access to current information about

emerging privacy and civil liberties issues. EPIC also disseminates information to the public

through the EPIC Alert[5] and through various news organizations.[6] EPIC is a representative of the

news media. *EPIC v. DOD*, 241 F. Supp. 2d 5, 11 (D.D.C. 2003).

10.     In 2017, following reports of Russian interference in the 2016 U.S. presidential election,

EPIC launched the Democracy and Cybersecurity Project.[7] EPIC's Project is focused on

preserving and promoting democratic institutions. EPIC has brought numerous FOIA requests

and lawsuits as part of the Democracy and Cybersecurity Project. In *EPIC v. FBI*,[8] EPIC

obtained records revealing the FBI's failure to follow its own victim notification procedures in

response to Russian cyberattacks against U.S. officials and U.S. political organizations.[9] In *EPIC

v. DHS*,[10] EPIC obtained records detailing the Department of Homeland Security's response to

Russian cyberattacks on election infrastructure.[11] In *EPIC v. ODNI*,[12] EPIC brought suit to obtain

the full Intelligence Community Assessment of Russian interference in the 2016 election.[13] And

in *EPIC v. IRS*[14] and *EPIC v. IRS II*,[15] EPIC brought suit to obtain certain of President Trump's

---

[5] EPIC, *EPIC Alert* (Mar. 5, 2019), https://epic.org/alert/.

[6] EPIC, EPIC in the News (Mar. 5, 2019), https://epic.org/news/.

[7] EPIC, *Democracy and Cybersecurity: Preserving Democratic Institutions* (Feb. 4, 2019), https://epic.org/democracy/.

[8] No. 1:17-CV-00121 (TNM), 2018 WL 2324084 (D.D.C. May 22, 2018).

[9] EPIC, *EPIC v. FBI (Russian Hacking)* (Feb. 28, 2019), https://epic.org/foia/fbi/russian-hacking/.

[10] No. 17-2047 (D.D.C. filed Oct. 4, 2017).

[11] EPIC, *EPIC v. DHS* (Jan. 31, 2019), https://epic.org/foia/dhs/cybersecurity/russian-interference/default.html.

[12] 281 F. Supp. 3d 203 (D.D.C. 2017).

[13] EPIC, *EPIC v. ODNI (Russian Hacking)* (Feb. 28, 2019), https://www.epic.org/foia/odni/russian-hacking/.

[14] 910 F.3d 1232 (D.C. Cir. 2018).

[15] No. 18-902 (D.D.C. filed Apr. 17, 2018).

individual and business tax records to determine the scope of the President's Russian financial entanglements.[16]

11.     Defendant DOJ is a federal agency within the meaning of the FOIA. 5 U.S.C. § 552(f)(1). Defendant DOJ is headquartered in Washington, D.C.

## Facts

12.     EPIC's FOIA request, and the Special Counsel investigation to which it pertains, arise out of the Russian government's coordinated campaign to interfere with the 2016 U.S. presidential election.

### Russian Interference in the 2016 U.S. Presidential Election

13.     In 2016, the Russian government carried out a multi-pronged attack on the U.S. presidential election to destabilize U.S. democratic institutions and to aid the candidacy of Donald J. Trump. As explained in the declassified 2017 Intelligence Community Assessment ("ICA") on Russian election interference:

> We assess with high confidence that Russian President Vladimir Putin ordered an influence campaign in 2016 aimed at the US presidential election, the consistent goals of which were to undermine public faith in the US democratic process, denigrate Secretary Clinton, and harm her electability and potential presidency. We further assess Putin and the Russian Government developed a clear preference for President-elect Trump. When it appeared to Moscow that Secretary Clinton was likely to win the election, the Russian influence campaign then focused on undermining her expected presidency.
>
> We also assess Putin and the Russian Government aspired to help President-elect Trump's election chances when possible by discrediting Secretary Clinton and publicly contrasting her unfavorably to him.[17]

---

[16] EPIC, *EPIC v. IRS* (Feb. 4, 2019), https://epic.org/foia/irs/trump-taxes/; EPIC, *EPIC v. IRS II* (Mar. 18, 2019), https://epic.org/foia/irs/trump-taxes-ii/.

[17] Office of the Dir. of Nat'l Intelligence, ICA 2017-01D, *Intelligence Community Assessment: Assessing Russian Activities and Intentions in Recent US Elections* 1 (Jan. 6, 2017), https://www.dni.gov/files/documents/ICA_2017_01.pdf.

14.     The ICA—along with the reports, investigations, and prosecutions that have ensued—establishes that Russia interfered with the 2016 election on at least four fronts.

15.     First, "Russia's intelligence services conducted cyber operations against targets associated with the 2016 US presidential election, including targets associated with both major US political parties."[18] These operations included the "exfiltrat[ion of] large volumes of data" from the Democratic National Committee ("DNC") and "the compromise of the personal e-mail accounts of Democratic Party officials and political figures."[19]

16.     Second, Russian intelligence services "used the Guccifer 2.0 persona, DCLeaks.com, and WikiLeaks to release US victim data obtained in cyber operations publicly and in exclusives to media outlets."[20] These disclosures included data extracted by Russian intelligence from DNC networks.[21] Subsequent investigation has also revealed that senior Trump campaign officials engaged in multiple meetings with Russian intermediaries offering to provide "dirt" on Hillary Clinton, including "thousands of emails" obtained by Russia.[22]

17.     Third, "Russian intelligence accessed elements of multiple state or local electoral boards" in an ongoing effort to assess "US electoral processes and related technology and equipment."[23]

---

[18] Office of the Dir. of Nat'l Intelligence, *supra* note 17, at 2.

[19] *Id.*

[20] Office of the Dir. of Nat'l Intelligence, *supra* note 17, at 2–3.

[21] *Id.* at 3.

[22] Statement of the Offense at ¶ 14, *United States v. Papadopoulos*, No. 17-182 (D.D.C. Oct. 5, 2017) ("The Professor told defendant PAPADOPOULOS . . . that 'They [the Russians] have dirt on her'; 'the Russians had emails of Clinton'; 'they have thousands of emails.'"); *see also* House Permanent Select Committee on Intelligence, *Status of the Russia Investigation (Minority Report)* (Mar. 13, 2018), https://democrats-intelligence.house.gov/uploadedfiles/final_-_minority_status_of_the_russia_investigation_with_appendices.pdf (noting that the "stated purpose" of "the June 9, 2016 Trump Tower meeting with Russian emissaries" was to "provide damaging information on Hillary Clinton").

[23] Office of the Dir. of Nat'l Intelligence, *supra* note 17, at 3.

18.     Fourth, "Russia's state-run propaganda machine—comprised of its domestic media apparatus, outlets targeting global audiences such as RT and Sputnik, and a network of quasi-government trolls—contributed to the influence campaign by serving as a platform for Kremlin messaging to Russian and international audiences."[24] As part of this propaganda push, the Russian government spent millions of dollars and employed hundreds of people to flood Facebook and Twitter with fraudulent users, posts, articles, groups, and targeted advertisements.[25]

19.     In the two years since the Intelligence Community Assessment was published, the ICA's findings have been repeatedly confirmed by federal inquiries[26] and investigative reporting.[27] The Senate Intelligence Committee, after an "an in-depth review" of the ICA and associated intelligence, determined that "the conclusions of the ICA are sound" and noted "that collection and analysis subsequent to the ICA's publication continue to reinforce its assessments."[28]

---

[24] Office of the Dir. of Nat'l Intelligence, *supra* note 17, at 3–4.

[25] Indictment at ¶¶ 3–6, 10, *United States v. Internet Res. Agency*, No. 18-32 (D.D.C. Feb. 16, 2018); *see also* Statement from EPIC to U.S. Senate Select Comm. on Intelligence (Sep. 4, 2018), https://epic.org/testimony/congress/EPIC-SSCI-ForeignSocialMedia-Sept2018.pdf (calling for greater transparency concerning Russian manipulation of news and information on social networks during and after the 2016 election).

[26] Senate Select Comm. on Intelligence, *The Intelligence Community Assessment: Assessing Russian Activities and Intentions in Recent U.S. Elections* (July 3, 2018), https://www.burr.senate.gov/imo/media/doc/SSCI%20ICA%20ASSESSMENT_FINALJULY3.pdf [hereinafter *Senate Intelligence Report*].

[27] *E.g.*, Scott Shane & Mark Mazzetti, *The Plot to Subvert an Election: Unraveling the Russia Story So Far*, N.Y. Times (Sep. 20, 2018), https://www.nytimes.com/interactive/2018/09/20/us/politics/russia-interference-election-trump-clinton.html; Rosalind S. Helderman, Leslie Shapiro, & Chris Alcantara, *What we learned about Trumpworld outreach to Russia since Mueller's investigation began*, Wash. Post (Feb. 19, 2019), https://www.washingtonpost.com/graphics/2019/politics/mueller-report-primer/.

[28] Senate Select Comm. on Intelligence, *supra* note 26, at 7.

Criminal Investigations Into Russian Election Interference

20.     On January 20, 2017—two weeks after the public release of the Intelligence Community

Assessment—Donald J. Trump was inaugurated as the 45th President of the United States.

21.     On March 2, 2017, then-Attorney General Jeff Sessions, who had been a prominent

supporter of Mr. Trump during the campaign, recused himself "from any existing or future

investigations of any matters related in any way to the campaigns for President of the United

States."[29] As a result, the responsibilities of the Attorney General for any such investigation

passed to the Deputy Attorney General.[30]

22.     On March 20, 2017, James B. Comey, then-Director of the Federal Bureau of

Investigation ("FBI"), confirmed to the House Permanent Select Committee on Intelligence that

the FBI was conducting an investigation into "the Russian government's efforts to interfere in

the 2016 presidential election," including "the nature of any links between individuals associated

with the Trump campaign and the Russian government and whether there was any coordination

between the campaign and Russia's efforts."[31] Mr. Comey noted that the investigation would

include "an assessment of whether any crimes were committed."[32]

---

[29] Press Release, U.S. Dep't of Justice, Attorney General Sessions Statement on Recusal (Mar. 2, 2017), https://www.justice.gov/opa/pr/attorney-general-sessions-statement-recusal; *see also* 28 C.F.R. § 45.2(a).

[30] 28 U.S.C. § 508 ("In case of a vacancy in the office of Attorney General, or of his absence or disability, the Deputy Attorney General may exercise all the duties of that office[.]").

[31] *Russian Active Measures Investigation: Hearing Before the H. Permanent Select Comm. on Intelligence*, 115th Cong. (2017) (Statement of James B. Comey, Dir., Fed. Bureau of Investigation), https://www.fbi.gov/news/testimony/hpsci-hearing-titled-russian-active-measures-investigation.

[32] *Id.*

23.     On May 9, 2017, President Trump removed Director Comey from office and terminated

his employment. [33]

24.     Two days later, in a nationally televised NBC News interview, President Trump stated:

> I was going to fire Comey knowing, there was no good time to do it. And in fact
> when I decided to just do it, I said to myself, I said you know, this Russia thing with
> Trump and Russia is a made up story, it's an excuse by the Democrats for having
> lost an election that they should have won.[34]

25.     On May 17, 2017, Deputy Attorney General Rod J. Rosenstein—in his capacity as Acting

Attorney General—appointed Robert S. Mueller III "to serve as Special Counsel for the United

States Department of Justice."[35]

26.     Mr. Rosenstein authorized Mr. Mueller to "conduct the investigation confirmed by then-

FBI Director James B. Comey in testimony before the House Permanent Select Committee on

Intelligence on March 20, 2017," including "any links and/or coordination between the Russian

government and individuals associated with the campaign of President Donald Trump"; "any

matters that arose or may arise directly from the investigation"; and, "any other matters within

the scope of 28 C.F.R. § 600.4(a)."[36] Mr. Rosenstein also authorized Mr. Mueller "to prosecute

federal crimes arising from the investigation of these matters" where "it is necessary and

appropriate[.]"[37]

---

[33] Letter from Donald J. Trump, President of the United States, to James B. Comey, Dir., Fed.
Bureau of Investigation (May 9, 2017), https://www.gpo.gov/fdsys/pkg/DCPD-
201700325/pdf/DCPD-201700325.pdf.
[34] Adam Edelman, *Trump says He Didn't Fire Comey 'Because of Russia,' Contradicting Past
Statements*, NBC News (May 31, 2018), https://www.nbcnews.com/politics/donald-
trump/trump-says-he-didn-t-fire-comey-because-russia-contradicting-n878836.
[35] Ex. 1 ¶ (a).
[36] *Id.* ¶ (b).
[37] *Id.* ¶ (c).

27.    Over the course of Mr. Mueller's investigation, the Special Counsel brought criminal

charges against 34 individuals and three organizations,[38] including:

- Former National Security Adviser Michael Flynn, who pleaded guilty to making false

  statements to the FBI;[39]

- Former Trump campaign manager Paul Manafort, who was convicted of multiple

  counts of tax fraud and bank fraud[40] and pleaded guilty to conspiracy against the

  United States and other charges;[41]

- Former Trump deputy campaign manager Rick Gates, who pleaded guilty to

  conspiracy against the United States and making a false statement to the FBI;[42]

- Former Trump campaign foreign policy adviser George Papadopolous, who pleaded

  guilty to making false statements to the FBI;[43]

- Former Trump personal attorney Michael Cohen, who pleaded guilty to making false

  statements to Congress;[44]

---

[38] U.S. Dep't of Justice, *Special Counsel's Office* (Jan. 25, 2019), https://www.justice.gov/sco.
[39] Plea Agreement, *United States v. Flynn*, No. 17-232 (D.D.C. Dec. 1, 2017),
https://www.justice.gov/file/1015121/download.
[40] U.S. Dep't of Justice, *supra* note 38 ("On Aug. 21, 2018, a federal jury found Manafort guilty
on eight counts: counts 1-5, subscribing to a false individual income tax return for tax years
2010-2014; count 12, failure to file reports of foreign bank and financial accounts for year 2012;
count 25, bank fraud; and count 27, bank fraud.").
[41] Plea Agreement, *United States v. Manafort*, No. 17-201 (D.D.C. Sep. 14, 2018),
https://www.justice.gov/file/1094151/download.
[42] Plea Agreement, *United States v. Gates*, No. 17-201 (D.D.C. Feb. 23, 2018),
https://www.justice.gov/file/1038801/download.
[43] Plea Agreement, *United States v. Papadopolous*, No. 17-182 (D.D.C. Oct. 5, 2017),
https://www.justice.gov/file/1007341/download.
[44] Plea Agreement, *United States v. Cohen*, No. 18-850 (S.D.N.Y. Nov. 29, 2018)

- Former Trump campaign advisor Roger Stone, who was indicted on charges of obstruction of justice, making false statements to Congress, and witness tampering;[45]

- The Internet Research Agency, Concord Management and Consulting LLC, Concord Catering, and thirteen Russian nationals, who are charged with conspiracy against the United States and related offenses for flooding social media platforms with fraudulent content to interfere with U.S. political processes;[46] and

- Twelve other Russian nationals, who are charged with conspiracy to commit computer crimes and other offenses for hacking Democratic Party computer networks and email accounts linked to the Clinton campaign.[47]

28.    On November 7, 2018, Attorney General Sessions resigned from office.[48] President Trump designated Matthew G. Whitaker, Chief of Staff to the Attorney General, to serve as Acting Attorney General.[49] Although Mr. Whitaker had been a prominent critic of Mr. Mueller's probe prior to assuming office,[50] Whitaker "decided not to recuse himself from the Special Counsel investigation."[51]

---

[45] Indictment, *United States v. Stone*, No. 19-18 (D.D.C. Jan. 24, 2019), https://www.justice.gov/file/1124776/download.

[46] Indictment, *United States v. Internet Research Agency LLC,* No. 18-32 (D.D.C. Feb. 16, 2018), https://www.justice.gov/file/1035477/download.

[47] Indictment, *United States v. Netyksho*, No. 18-215 (D.D.C. July 13, 2018), https://www.justice.gov/file/1080281/download.

[48] Letter from Jefferson B. Sessions III, Att'y Gen., to Donald J. Trump, President (Nov. 7, 2018), *available at* https://int.nyt.com/data/documenthelper/475-jeff-sessions-letter-offering/optimized/full.pdf.

[49] Memorandum from Steven A. Engel, Asst. Att'y Gen., to Emmet T. Flood, Counsel to the President at 1 (Nov. 14, 2018), https://www.justice.gov/olc/page/file/1110881/download.

[50] Adam Goldman & Edward Wong, *Trump Installs a Critic of the Mueller Investigation to Oversee It*, N.Y. Times (Nov. 7, 2018), https://www.nytimes.com/2018/11/07/us/politics/whitaker-mueller-trump.html.

[51] Letter from Stephen E. Boyd, Asst. Att'y Gen., to Sen. Mitch McConnell & Sen. Charles E. Schumer at 2 (Dec. 20, 2018), *available at* https://int.nyt.com/data/documenthelper/551-senate-letter-re-acting-ag-eth/2ae5d0739b6be8f2ec12/optimized/full.pdf.

29.     In December 2018, President Trump nominated former Attorney General William P. Barr

to serve again as Attorney General. Six months earlier, Mr. Barr had sent a memo to senior DOJ

officials in which Barr strongly criticized the direction of the Special Counsel investigation and

stated that Mr. Mueller's "obstruction theory" concerning President Trump's firing of Director

Comey "should be rejected[.]" Mr. Barr was confirmed by the Senate as Attorney General on

February 14, 2019.[52]

### The Mueller Report(s)

30.     According to President Trump,[53] Attorney General Barr,[54] members of President Trump's

legal team,[55] and multiple major news organizations,[56] Mr. Mueller is expected to produce, or

---

[52] *Roll Call Vote 116th Congress - 1st Session*, U.S. Senate (Feb. 14, 2019),
https://www.senate.gov/legislative/LIS/roll_call_lists/roll_call_vote_cfm.cfm?congress=116&session=1&vote=00024.

[53] Brian Naylor, *Trump Backs Public Release Of Mueller Report*, NPR (Mar. 20, 2019),
https://www.npr.org/2019/03/20/705162788/trump-backs-public-release-of-mueller-report.

[54] Responses from William P. Barr, Nominee to be U.S. Att'y Gen, to Questions from Sen. Chris
Coons at 154–55 (Jan. 2019), https://www.judiciary.senate.gov/imo/media/doc/Barr%20
Responses%20to%20Coons%20QFRs1.pdf.

[55] *E.g.*, Memorandum from John M. Dowd, Att'y for President Trump, to Robert S. Mueller,
Special Counsel (Jan. 29, 2018), reprinted in *The Trump Lawyers' Confidential Memo to
Mueller, Explained*, N.Y. Times (June 2, 2018), https://www.nytimes.com/interactive/2018/06/
02/us/politics/trump-legaldocuments.html ("It is our understanding that the reason behind the
request for the interview is to allow the Special Counsel's office to complete its report."); Rudy
Giuliani, @RudyGiuliani, Twitter (Aug. 15, 2018, 9:58 AM), https://twitter.com/RudyGiuliani/
status/1029728984446193664 ("DOJ should require Mueller to submit his report before
September 7.").

[56] *E.g.*, Devlin Barrett, Josh Dawsey, & Matt Zapotosky, *Justice Department preparing for
Mueller report in coming days*, Wash. Post (Feb. 20, 2019), https://www.washingtonpost.com/
world/national-security/justice-department-preparing-for-mueller-report-in-coming-
days/2019/02/20/c472691c-354b-11e9-af5b-b51b7ff322e9_story.html ("Justice Department
officials . . . believe a confidential report could be issued in coming days, according to people
familiar with the discussions."); Katie Benner, *Mueller Report Expected to Go to Justice
Department Within Weeks*, N.Y. Times (Feb. 21, 2019), https://www.nytimes.com/
2019/02/21/us/politics/mueller-report-ending.html ("The new attorney general, William P. Barr,
is preparing for the special counsel to deliver a report in coming weeks on the results of the
investigation into Russian interference in the 2016 election[.]"); Sadie Gurman & Aruna
Viswanatha, *Where the Mueller Report Stands—and What Could Happen Next*, Wall Street J.

has already completed, one or more reports detailing the Special Counsel's findings and decisions (the "Mueller Report(s)").

31.     The precise number, character, and scope of the Mueller Report(s) are not publicly known,[57] but one such document is the Special Counsel's final report to the Attorney General required by 28 C.F.R. § 600.8(c).[58] Section 600.8(c) states:

> **(c) Closing documentation.** At the conclusion of the Special Counsel's work, he or she shall provide the Attorney General with a confidential report explaining the prosecution or declination decisions reached by the Special Counsel.

32.     On March 22, 2019, major news organizations reported that Mr. Mueller had transmitted the Special Counsel's final report under section 600.8(c) to Attorney General Barr.[59] That report has not yet been made public.

_____

(Feb. 22, 2019), https://www.wsj.com/articles/final-mueller-report-not-expected-next-week-justice-department-official-says-11550874759 ("Mr. Mueller is widely believed to be in the final stages of his sprawling investigation and is expected to deliver his report to Attorney General William Barr in the coming weeks.").

[57] *See, e.g.*, Charlie Savage, *Legal Experts Urge Release of Watergate Report to Offer Mueller a Road Map*, N.Y. Times (Sep. 14, 2018), https://www.nytimes.com/2018/09/14/us/politics/mueller-report-grand-jurywatergate.html ("The leading theory is that Mr. Mueller will write a report for his supervisor at the Justice Department. . . . But there is historical precedent for another model. Echoing a move by the Watergate prosecutor in March 1974, the grand jury with which Mr. Mueller has been working could try to send a report about the evidence it has gathered directly to the House Judiciary Committee."); Michael S. Schmidt & Maggie Haberman, *Mueller Examining Trump's Tweets in Wide-Ranging Obstruction Inquiry*, N.Y. Times (July 26, 2018), https://www.nytimes.com/2018/07/26/us/politics/trump-tweets-mueller-obstruction.html ("If Mr. Mueller does not plan to make a case in court, a report of his findings could be sent to Congress, leaving it to lawmakers to decide whether to begin impeachment proceedings.").

[58] *See* Ex. 1 ¶ (d) ("Sections 600.4 through 600.10 of Title 28 of the Code of Federal Regulations are applicable to the Special Counsel.").

[59] Sharon LaFraniere & Katie Benner, *Mueller Delivers Report on Russia Investigation to Attorney General*, N.Y. Times (Mar. 22, 2019), https://www.nytimes.com/2019/03/22/us/politics/mueller-report-release.html; Devlin Barrett & Matt Zapotosky, *Mueller report sent to attorney general, signaling his Russia investigation has ended*, Wash. Post (Mar. 22, 2019), https://www.washingtonpost.com/world/national-security/mueller-report-sent-to-attorney-general-signaling-his-russia-investigation-has-ended/2019/03/22/b061d8fa-323e-11e9-813a-0ab2f17e305b_story.html.

33.     One of the Mueller Report(s)—possibly the Special Counsel's final report under section 600.8(c)—is said to address allegations that President Trump obstructed justice by attempting to block a criminal probe into Russian election interference.[60]

34.     There are several legal authorities under which the Special Counsel or Attorney General may issue a report or otherwise disclose information concerning the Special Counsel's investigation.

35.     First, as noted, the Special Counsel is required to provide the Attorney General with a report at the conclusion of the investigation under 28 C.F.R. § 600.8(c).[61]

36.     Second, under 28 C.F.R. § 600.8(a)(2), the Special Counsel is required to provide annual status reports to the Attorney General:

> **(2)** Thereafter, 90 days before the beginning of each fiscal year, the Special Counsel shall report to the Attorney General the status of the investigation, and provide a budget request for the following year. The Attorney General shall determine whether the investigation should continue and, if so, establish the budget for the next year.[62]

37.     Third, under 28 C.F.R. § 600.7(b), the Attorney General may request an explanation for any investigative or prosecutorial step taken by the Special Counsel:

> **(b)** The Special Counsel shall not be subject to the day-to-day supervision of any official of the Department. However, the Attorney General may request that the Special Counsel provide an explanation for any investigative or prosecutorial step, and may after review conclude that the action is so inappropriate or unwarranted under established Departmental practices that it should not be pursued. In conducting that review, the Attorney General will give great weight to the views of

---

[60] Carol D. Leonnig & Robert Costa, *Mueller Told Trump's Attorneys the President Remains Under Investigation But is Not Currently a Criminal Target*, Wash. Post (Apr. 3, 2018), https://www.washingtonpost.com/politics/mueller-told-trumps-attorneys-the-president-remains-underinvestigation-but-is-not-currently-a-criminal-target/2018/04/03/d7832cf0-36c1-11e8-acd5-35eac230e514_story.html ("The special counsel also told Trump's lawyers that he is preparing a report about the president's actions while in office and potential obstruction of justice, according to two people with knowledge of the conversations.").

[61] Ex. 1 ¶ (d) ("Sections 600.4 through 600.10 of Title 28 of the Code of Federal Regulations are applicable to the Special Counsel.").

[62] 28 C.F.R. § 600.8(a)(2).

the Special Counsel. If the Attorney General concludes that a proposed action by a Special Counsel should not be pursued, the Attorney General shall notify Congress as specified in § 600.9(a)(3).[63]

38.     Fourth, under 28 C.F.R. § 600.9(a), the Attorney General is required to notify certain

members of Congress of key developments in the Special Counsel's investigation:

> **(a)** The Attorney General will notify the Chairman and Ranking Minority Member of the Judiciary Committees of each House of Congress, with an explanation for each action —
>
> > **(1)** Upon appointing a Special Counsel;
> >
> > **(2)** Upon removing any Special Counsel; and
> >
> > **(3)** Upon conclusion of the Special Counsels investigation, including, to the extent consistent with applicable law, a description and explanation of instances (if any) in which the Attorney General concluded that a proposed action by a Special Counsel was so inappropriate or unwarranted under established Departmental practices that it should not be pursued.[64]

39.     Fifth, under 28 C.F.R. § 600.4(c), the Special Counsel may take "necessary action" to

pursue penalties "outside the criminal justice system" in consultation with the Attorney General:

> **(c) Civil and administrative jurisdiction.** If in the course of his or her investigation the Special Counsel determines that administrative remedies, civil sanctions or other governmental action outside the criminal justice system might be appropriate, he or she shall consult with the Attorney General with respect to the appropriate component to take any necessary action. A Special Counsel shall not have civil or administrative authority unless specifically granted such jurisdiction by the Attorney General.[65]

40.     Sixth, the Special Counsel may use its "full power and independent authority to exercise

all investigative and prosecutorial functions of any United States Attorney"[66] to transmit

"report[s]," "recommendation[s]," or other "compilation[s] of information" to Congress via the

---

[63] 28 C.F.R. § 600.7(b).
[64] 28 C.F.R. § 600.9(a).
[65] 28 C.F.R. § 600.4(c).
[66] 28 C.F.R. § 600.6.

grand jury process.[67] This procedure was used by Special Counsel Leon Jaworski in 1974 to convey "material in the Grand Jury's possession having a material bearing on matters within the primary jurisdiction of the United States House of Representatives Committee on the Judiciary relating to questions of impeachment."[68]

41.     Finally, the Special Counsel and/or Attorney General may rely on their powers under 28 C.F.R. § 600.1 *et seq.* (and on other legal authorities) to disclose developments, evidence, findings, decisions, actions, or planned actions from the Special Counsel's investigation.

<u>EPIC's FOIA Request</u>

42.     On November 5, 2018, EPIC submitted a FOIA Request via fax to the DOJ's Office of Information Policy.[69]

43.     EPIC, in its FOIA Request, sought fourteen categories of records related to the Special Counsel's investigation into Russian interference in the 2016 U.S. presidential election:

> (1)(a)     All "report[s]" and "closing documentation" prepared under 28 C.F.R. § 600.8(c), whether or not such records were actually provided to the Attorney General or Acting Attorney General;
>
> (b)     All drafts, outlines, exhibits, and supporting materials associated with any actual or planned "report" or "closing documentation" under 28 C.F.R. § 600.8(c);

---

[67] *In re Report & Recommendation of June 5, 1972 Grand Jury Concerning Transmission of Evidence to House of Representatives*, 370 F. Supp. 1219, 1221, 1226 (D.D.C. 1974), *aff'd sub nom. Haldeman v. Sirica*, 501 F.2d 714 (D.C. Cir. 1974).

[68] Report & Recommendation at 1, *In re Report & Recommendation*, 370 F. Supp. at 1221, 1226 (D.D.C. 1974) (capitalization altered), *available at* https://www.archives.gov/files/ research/investigations/watergate/roadmap/docid-70105890.pdf; *see also* 105 Cong. Rec. H9,670 (daily ed. Oct. 6, 1998) (statement of Rep. Jackson-Lee) ("[I]t will be recalled the Watergate special prosecution force did not send to Congress an argumentative or inflammatory document, but rather a simple road map which merely summarized and identified the location of relevant evidence.").

[69] Ex. 2, FOIA Request from EPIC to Douglas Hibbard, Chief, Initial Request Staff, Office of Info. Policy, Dep't of Justice (Nov. 5, 2018).

(2)(a)    All "report[s]" concerning "the status of the investigation" prepared under 28 C.F.R. § 600.8(a)(2), whether or not such records were actually provided to the Attorney General or Acting Attorney General;

(b)    All drafts, outlines, exhibits, and supporting materials associated with any actual or planned "report" concerning "the status of the investigation" under 28 C.F.R. § 600.8(a)(2);

(3)(a)    All records "expla[ining] . . . any investigative or prosecutorial step" under 28 C.F.R. § 600.7(b), whether or not such records were actually provided to the Attorney General or Acting Attorney General;

(b)    All drafts, outlines, exhibits, and supporting materials associated with any actual or planned "explanation for any investigative or prosecutorial step" under 28 C.F.R. § 600.7(b);

(4)(a)    All records prepared under 28 C.F.R. § 600.9(a) to "notify the Chairman and Ranking Minority Member of the Judiciary Committees of each House of Congress" of a development in the Special Counsel investigation, whether or not such records were actually transmitted to any member of Congress;

(b)    All drafts, outlines, exhibits, and supporting materials associated with any actual or planned notification under 28 C.F.R. § 600.9(a);

(5)(a)    All referrals by the Special Counsel, Attorney General, or Acting Attorney General for "administrative remedies, civil sanctions or other governmental action outside the criminal justice system" under 28 C.F.R. § 600.4(c), whether or not such records were actually transmitted to any party outside of the Special Counsel's Office;

(b)    All drafts, outlines, exhibits, and supporting materials associated with any actual or planned referral for "administrative remedies, civil sanctions or other governmental action outside the criminal justice system" under 28 C.F.R. § 600.4(c);

(6)(a)    All "report[s]," "recommendation[s]," and other "compilation[s] of information" prepared for the eventual consideration of one or more members of Congress,[70] whether or not such records were actually transmitted to any party outside of the Special Counsel's Office;

(b)    All drafts, outlines, exhibits, and supporting materials associated with any actual or planned report, recommendation, or compilation of the type described in Category (6)(a) of this request;

---

[70] *In re Report & Recommendation*, 370 F. Supp. at 1221, 1226.

(7)(a)    All other reports summarizing or describing, for one or more persons outside of the Special Counsel's Office, (i) any of the Special Counsel's evidence, findings, decisions, actions, or planned actions, or (ii) any developments in the Special Counsel investigation; and

(b)    All drafts, outlines, exhibits, and supporting materials associated with any actual or planned report of the type described in Category (7)(a) of this request.[71]

44.    EPIC excluded from its FOIA Request records "which have already been disclosed to the public in their complete and unredacted form (i) in the course of an open judicial proceeding; (ii) available at https://www.justice.gov/sco; or (iii) available at https://www.justice.gov/news."[72]

45.    EPIC sought expedited processing of its FOIA Request and demonstrated that the request qualifies for expedition under two separate provisions of the DOJ's FOIA regulations.[73]

46.    First, EPIC explained that it is entitled to expedition of its FOIA Request under 28 C.F.R. § 16.5(e)(1)(ii) because "there is an 'urgency to inform the public about an actual or alleged federal government activity" and because EPIC "is primarily engaged in disseminating information."[74]

47.    As EPIC stated in its FOIA Request, the requested records pertain to "the Special Counsel's investigation of Russian interference in the 2016 U.S. presidential election"; "the U.S. government's response to Russian election interference"; and "President Trump's alleged obstruction of justice while in office."[75] EPIC cited the "voluminous press coverage of, and immense public interest in" these government activities,[76] noting that "Americans are deeply

---

[71] Ex. 2 at 1–3.
[72] *Id.* at 3.
[73] *Id.* at 11–12.
[74] *Id.* at 11 (quoting 28 C.F.R. § 16.5(e)(1)(ii)).
[75] *Id.*
[76] *Id.* (citing *Robert Mueller — F.B.I. Director*, N.Y. Times (Nov. 1, 2018), https://www.nytimes .com/topic/person/robert-mueller-mdash-fbi-director (listing over 570 articles concerning Robert

concerned about the scope of Russian interference in the 2016 presidential election; the U.S.

government's response to that interference; the involvement of particular individuals in that

interference, including possibly President Trump; the susceptibility of U.S. election systems and

democratic institutions to future foreign interference; and the integrity of the Special Counsel

investigation itself."[77]

48.     EPIC also stated that it is "an organization 'primarily engaged in disseminating

information'"[78]—and is thereby entitled to expedited processing of its FOIA Request—because

EPIC qualifies as "'a representative of the news media.'"[79]

49.     Second, EPIC explained that it is entitled to expedition of its FOIA Request under 28

C.F.R. § 16.5(e)(1)(iv) because "EPIC's request involves '[a] matter of widespread and

exceptional media interest in which there exist possible questions about the government's

integrity that affect public confidence.'"[80]

50.     As EPIC stated in its FOIA Request, "In addition to the extraordinary media attention

given to the work of the Special Counsel, the requested records concern the potential

involvement of the President in a foreign campaign to influence an election that he won; the

possible obstruction of justice by the President while in office; the federal government's capacity

---

Mueller since his appointment as Special Counsel on May 17, 2017); Morning Consult &
Politico, *National Tracking Poll* (Oct. 30, 2018), https://www.politico.com/f/?id=00000166-
cb61-d184-ad67-ff67dddd0000 (finding that over 66% of respondents were aware of, and had
developed an opinion on, Special Counsel Mueller); *Robert Mueller*, Google Trends (Nov. 2,
2018), https://trends.google.com/trends/explore?date=today%205-y&geo=US&q=
Robert%20Mueller (showing a more than 100-fold increase in U.S. Google searches for Robert
Mueller following his appointment as Special Counsel)).
[77] *Id.* at 12.
[78] *Id.* (quoting 28 C.F.R. § 16.5(e)(1)(ii)).
[79] *Id.* (quoting *EPIC*, 241 F. Supp. 2d at 11).
[80] *Id.* (quoting 28 C.F.R. § 16.5(e)(1)(iv)).

to defend U.S. election systems and democratic institutions against foreign attacks; and the discharge of a high-profile Special Counsel investigation."[81]

51.     Finally, EPIC explained that it is "entitled to receive the requested record[s] with only duplication fees assessed"[82] because EPIC is "a representative of the news media."[83] EPIC explained that "'any duplication fees should also be waived because disclosure of the requested information . . . 'is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester.'"[84] EPIC described in detail how its FOIA Request satisfies the DOJ's three-factor test for a waiver of duplication fees.[85]

<u>The DOJ's Failure to Release the Requested Records</u>

52.     By letter dated November 15, 2018, the DOJ's Office of Information Policy acknowledged receipt of EPIC's FOIA Request "on behalf of the Special Counsel's Office."[86]

53.     In the letter, the DOJ admitted that it had "not yet completed a search to determine whether there are records within the scope of [EPIC's] request."[87]

54.     The DOJ claimed that EPIC's request presented "unusual circumstances" under 5 U.S.C. § 552(a)(6)(B), a provision which (if applicable) gives an agency no more than 10 additional working days to make a determination on a FOIA request.

---

[81] *Id.* (citing *Search Results: "Robert Mueller" and "Russia"*, Google News (Nov. 2, 2018), https://www.google.com/search?tbm=nws&q=%22Robert+Mueller%22+and+%22Russia%22 (identifying 941,000 news results containing both "Robert Mueller" and "Russia"); Shane & Mazzetti, *supra* note 27).
[82] Ex. 2 at 13 (citing 5 U.S.C. § 552(a)(4)(A)(ii)(II)).
[83] *EPIC*, 241 F. Supp. 2d at 11.
[84] Ex. 2 at 13 (quoting 28 C.F.R. § 16.10(k)(1)); *see also* § 552(a)(4)(A)(iii).
[85] *Id.*
[86] Ex. 3, Letter from Vanessa R. Brinkmann, Senior Counsel, Office of Info. Policy, Dep't of Justice, to Enid Zhou, EPIC Open Government Counsel 1 (Nov. 15, 2018).
[87] *Id.* at 1.

55.     The DOJ also stated that it was denying EPIC's request for expedited processing under both 28 C.F.R. § 16.5(e)(1)(ii) and 28 C.F.R. § 16.5(e)(1)(iv).[88]

56.     Despite overwhelming public interest in the immediate disclosure of the requested records—as set forth in EPIC's FOIA Request[89]—the DOJ claimed that it could not "identify a particular urgency to inform the public about an actual or alleged federal government activity [under 28 C.F.R. § 16.5(e)(1)(ii)] beyond the public's right to know about government activities generally."[90]

57.     The DOJ also stated that the DOJ's Director of Public Affairs "has determined that [EPIC's] request for expedited processing [under 28 C.F.R. § 16.5(e)(1)(iv)] should be denied." The DOJ identified no basis for the Director's decision.

58.     Today—March 22, 2019—is the 92nd working day since the DOJ received EPIC's FOIA request.

59.     The DOJ has failed to make a determination regarding EPIC's FOIA request within the time period allowed by 5 U.S.C. §§ 552(a)(6)(A)(i) and (B)(i).

60.     The DOJ's failure to make a determination on EPIC's FOIA request within the applicable time limits is a violation of the FOIA.

61.     On December 21, 2018, EPIC submitted a FOIA Appeal to the Director of the Office of Information Policy concerning the DOJ's denial of expedited processing.[91] EPIC reiterated the grounds for expedition set forth in EPIC's original FOIA request.[92]

---

[88] *Id.*
[89] Ex. 2 at 11–12.
[90] Ex. 3 at 1.
[91] Ex. 4, FOIA Appeal from EPIC to Director, Office of Info. Policy, Dep't of Justice (Dec. 21, 2018).
[92] *Id.* at 4–7.

62.     Today—March 22, 2019—is approximately the 59th working day since the DOJ received EPIC's FOIA Appeal concerning the agency's denial of expedited processing.

63.     The DOJ has failed to make a determination regarding EPIC's FOIA Appeal within the time period allowed by 5 U.S.C. §§ 552(a)(6)(A)(ii) and (E)(ii)(II).

64.     The DOJ's failure to make a determination on EPIC's FOIA Appeal within the applicable time limits is a violation of the FOIA.

65.     Accordingly, EPIC has constructively exhausted all administrative remedies under 5 U.S.C. § 552(a)(6)(C)(i).

## <u>Count I</u>

### **Violation of the FOIA: Failure to Comply with Statutory Deadlines**

66.     Plaintiff asserts and incorporates by reference paragraphs 1–65.

67.     Defendant DOJ, by failing to make a determination regarding EPIC's request for 92 working days, has violated the deadlines set forth in 5 U.S.C. § 552(a)(6)(A)(i) and 5 U.S.C. § 552(a)(6)(B)(i).

68.     Defendant DOJ, by failing to make a determination on EPIC's FOIA Appeal for approximately 59 working days, has violated the deadlines set forth in 5 U.S.C. § 552(a)(6)(A)(ii) and 5 U.S.C. § 552(a)(6)(E)(ii)(II).

69.     Plaintiff has constructively exhausted all applicable administrative remedies with respect to EPIC's FOIA Request and FOIA Appeal under 5 U.S.C. § 552(a)(6)(C)(i).

70.     Plaintiff is entitled to injunctive relief with respect to the processing of EPIC's FOIA request and FOIA Appeal and the disclosure of the requested records.

## Count II

### Violation of the FOIA: Unlawful Denial of Expedited Processing

71.    Plaintiff asserts and incorporates by reference paragraphs 1–65.

72.    Defendant DOJ has wrongfully denied expedited processing of EPIC's FOIA Request in violation of 5 U.S.C. § 552(a)(6)(E).

73.    Defendant DOJ has wrongfully failed to make a determination on EPIC's FOIA Appeal from the DOJ's denial of expedited processing in violation of 5 U.S.C. § 552(a)(6)(E)(ii)(II) and 5 U.S.C. § 552(a)(6)(A)(ii).

74.    Plaintiff has constructively exhausted applicable administrative remedies with respect to expedited processing of EPIC's FOIA Request under 5 U.S.C. § 552(a)(6)(C)(i).

75.    Plaintiff is entitled to injunctive relief requiring expedited processing of EPIC's FOIA Request.

## Count III

### Violation of the FOIA: Unlawful Withholding of Agency Records

76.    Plaintiff asserts and incorporates by reference paragraphs 1–65.

77.    Defendant DOJ has wrongfully withheld agency records requested by EPIC.

78.    Plaintiff has constructively exhausted applicable administrative remedies with respect to EPIC's FOIA Request under 5 U.S.C. § 552(a)(6)(C)(i).

79.    Plaintiff is entitled to injunctive relief with respect to the release and disclosure of the requested records.

## Requested Relief

WHEREFORE, Plaintiff requests that this Court:

    A.  Order the DOJ to process EPIC's FOIA request on an expedited basis;

B.  Order the DOJ to immediately conduct a search for all records responsive to EPIC's

    FOIA request;

C.  Order the DOJ to disclose all nonexempt records responsive to EPIC's FOIA request;

D.  Award EPIC costs and reasonable attorney's fees incurred in this action; and

E.  Grant such other relief as the Court may deem just and proper.

Respectfully Submitted,

MARC ROTENBERG, D.C. Bar #422825
EPIC President and Executive Director

ALAN BUTLER, D.C. Bar #1012128
EPIC Senior Counsel

/s/ John Davisson
JOHN DAVISSON, D.C. Bar #1531914
EPIC Counsel
davisson@epic.org

ELECTRONIC PRIVACY
INFORMATION CENTER
1718 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20009
(202) 483-1140 (telephone)
(202) 483-1248 (facsimile)

*Attorneys for Plaintiff EPIC*

Dated: March 22, 2019