**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, |
| Plaintiff, |
| v. |
| UNITED STATES DEPARTMENT OF JUSTICE, |
| Defendant. |

Civ. Action No. 19-810 (RBW)

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION
FOR A PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................ ii

ARGUMENT ................................................................................................................................1

I.     THE COURT CAN, AND SHOULD, ESTABLISH A SCHEDULE TO ENSURE THAT THE DEPARTMENT OF JUSTICE PROCESSES EPIC'S REQUEST AS SOON AS PRACTICABLE. ..................................................................................................2

     A.    The Court should order the Department of Justice to produce the Mueller Report to EPIC by April 15 or at the same time the report is made available to Congress, whichever comes first. ...........................................................................6

     B.    The Court should order the Department of Justice to immediately process and release any executive summary contained in the Mueller Report............................8

     C.    The Court should order the Department of Justice to conduct a search and complete processing of records responsive to Category 5 of EPIC's request by April 29. ......................................................................................................................9

II.    EPIC WILL SUFFER IRREPARABLE HARM IF RELIEF IS NOT GRANTED. ..........10

III.   THE BALANCE OF THE EQUITIES AND THE PUBLIC INTEREST FAVOR RELIEF. ....................................................................................................................................14

CONCLUSION .............................................................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Aguilera v. FBI,*
    941 F. Supp. 144 (D.D.C. 1996) ...................................................................................10

*CREW v. DOJ,*
    854 F.3d 675 (D.C. Cir. 2017) .....................................................................................13

*CREW v. FEC,*
    711 F.3d 180 (D.C. Cir. 2013) .......................................................................................3

*Daily Caller v. U.S. Dep't of State,*
    152 F. Supp. 3d 1 (D.D.C. 2015) ................................................................................3, 4

*DIRECTV, Inc. v. FCC,*
    110 F.3d 816 (D.C. Cir. 1997) .....................................................................................15

*EPIC v. DOJ,*
    416 F. Supp. 2d 30 (D.D.C. 2006) ...............................................................4, 10, 12, 14, 16

*EPIC v. FBI,*
    933 F. Supp. 2d 42 (D.D.C. 2013) .................................................................................5

*EPIC v. IRS,*
    910 F.3d 1232 (D.C. Cir. 2018) ...................................................................................13

*EPIC v. Presidential Advisory Comm'n on Election Integrity,*
    266 F. Supp. 3d 26 297 (D.D.C. 2017),
    *aff'd on other grounds,* 878 F.3d 371 (D.C. Cir. 2017) ...........................................11, 14

*League of Women Voters of United States v. Newby,*
    838 F.3d 1 (D.C. Cir. 2016) .......................................................................................15

*McGehee v. CIA,*
    697 F.3d 1095 (D.C. Cir. 1983), *vacated on other grounds on panel reh'g & reh'g en banc*
    *denied,* 711 F.2d 1076 (D.C. Cir. 1983) ........................................................................6

*Payne Enters., Inc. v. United States,*
    837 F.2d 486 (D.C. Cir. 1988) ......................................................................................3

*Protect Democracy Project, Inc. v. DOD,*
    263 F. Supp. 3d 293 (D.D.C. 2017) ......................................................................3, 10, 13

*Pub. Citizen v. Dep't of State,*
    276 F.3d 643 (D.C. Cir. 2002) ......................................................................................6

*Wash. Post v. DHS,*
    459 F. Supp. 2d 61 (D.D.C. 2006) ...............................................................................10

**Statutes**

5 U.S.C. § 552(a)(4)(B) ...................................................................................................3, 16

5 U.S.C. § 552(a)(6)(E)(iii) .........................................................................................3, 10, 16

5 U.S.C. § 552(b)(6) .........................................................................................................10

5 U.S.C. § 552(b)(7)(A) .....................................................................................................10

5 U.S.C. § 552(b)(7)(C) .....................................................................................................10

**Other Authorities**

28 C.F.R. § 16.4(a) .............................................................................................................6

Joint Status Report, *EPIC v. NARA,* No. 18-2150 (D.D.C. filed Sept. 28, 2018) ...........................5

Kenneth W. Starr, *Communication from Kenneth W. Starr, Independent Counsel, Transmitting a Referral to the United States House of Representatives Filed in Conformity with the Requirements of Title 28, United States Code, Section 595(C)*, H.R. Doc. No. 105-310 (1998) .8

Lawrence E. Walsh, Independent Counsel, *Final Report of the Independent Counsel for Iran/Contra Matters* (1993) ................................................................................................8

Minute Order, *Fix The Court v. DOJ*, No. 18-2091 (D.D.C. filed Sep. 24, 2018) ..........................4

Nicholas Fandos, Michael S. Schmidt, & Mark Mazzetti, *Some on Mueller's Team Say Report Was More Damaging Than Barr Revealed*, N.Y. Times (Apr. 3, 2019) ...............................8, 11

Status Report, *Fix The Court v. DOJ*, No. 18-1620 (D.D.C. filed Jul. 23, 2018)............................4

Transcript of Status Conference, ECF No. 13, *CREW v. DOJ*, No. 18-766 (D.D.C. argued Oct. 3, 2018) ........................................................................................................................................5

**ARGUMENT**

This is not a normal Freedom of Information Act ("FOIA") lawsuit. The report sought by

EPIC is the focus of a singular national debate. A unanimous House of Representatives has voted

420-0 to seek release of the report. Hearings in Congress are already being planned. *The New*

*York Times* and *The Washington Post* are now accepting orders for the report on Amazon. By the

agency's own admission, more than 400 FOIA requests related to the report are currently

pending. The Attorney General has said he will release the report by "mid-April, if not sooner,"

yet controversy surrounds an airbrushed summary that he previously made public. There is no

government document in recent memory that has generated more public interest than the Special

Counsel's Report on election interference in the 2016 presidential election, the "Mueller Report."

The public interest in the release of this report is overwhelming. EPIC now respectfully urges this

Court to order the Department of Justice to make public the Mueller Report.

In the opposition to EPIC's Motion, the Department of Justice ("DOJ") has conceded that

EPIC's FOIA request is entitled to expedited processing. Yet the agency refuses to agree to a

fixed schedule for the release of the Mueller Report and other responsive records. The agency

argues that it is "not practicable" to produce the report within the next week, even though the

Attorney General has stated that he is already "preparing the report for release" by "mid-April, if

not sooner," and is "making the redactions that are required." Def.'s Opp'n 1, 11. The agency's

opposition does not propose a schedule for processing; the agency does not propose to prepare an

index of records responsive to EPIC's request; the agency does not even commit to complete a

search for responsive records. This is a uniquely important FOIA case, yet the Department of

Justice has failed to take the steps it would routinely in other FOIA cases. This is not an "orderly

process," Def.'s Opp'n 1; it is an intentional tactic to keep from the public the outcome of the

most consequential investigation in recent history. Judicial oversight is critical for the expeditious resolution of this matter.

Accordingly, the Court should enter a preliminary injunction ordering the DOJ to process EPIC's FOIA Request by the earliest date(s) practicable. Specifically, the Court should order the DOJ (1) to produce the Mueller Report to EPIC by mid-April (April 15), or at the same time the report is made available to Congress, whichever comes first; (2) to immediately produce the executive summaries submitted by the Special Counsel as closing documentation alongside the Mueller Report; and (3) to produce records responsive to Category 5 of EPIC's FOIA Request by April 29.

EPIC is entitled to this injunction. EPIC is likely to succeed on the merits of its claims because the DOJ has conceded that EPIC's FOIA request is entitled to expedited processing, because the DOJ has failed to provide an alternative processing schedule, and because the agency's own statements indicate that the proposed processing schedule is practicable. Moreover, EPIC will suffer irreparable harm absent the requested injunction because the DOJ has unlawfully refused to timely disclose records that are the subject of extraordinary public attention and of upcoming hearings in Congress. Finally, the balance of equities and the public interest favor injunctive relief, as none of the DOJ's claims can overcome the public interest in the prompt disclosure of the Mueller Report.

I.      **THE COURT CAN, AND SHOULD, ESTABLISH A SCHEDULE TO ENSURE THAT THE DEPARTMENT OF JUSTICE PROCESSES EPIC'S REQUEST AS SOON AS PRACTICABLE.**

Despite the agency's claims, the FOIA explicitly grants injunctive —and courts routinely use that authority—to establish and enforce processing deadlines. Under the FOIA, the Court has broad authority to grant equitable relief. *Daily Caller v. U.S. Dep't of State*, 152 F. Supp. 3d 1, 8

(D.D.C. 2015). This includes the authority to "enjoin the agency from withholding agency records improperly withheld." 5 U.S.C. § 552(a)(4)(B). The FOIA "imposes no limits on courts' equitable powers in enforcing its terms." *Daily Caller*, 152 F. Supp. 3d at 8 (quoting *Payne Enters., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988)). Courts have specifically found that "unreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent these abuses." *Payne Enters.*, 837 F.2d at 494. Once a FOIA matter is in litigation, the court "will supervise the agency's ongoing process, ensuring that the agency continues to exercise due diligence in processing the request." *CREW v. FEC*, 711 F.3d 180, 189 (D.C. Cir. 2013) (citing 5 U.S.C. § 552(a)(6)(C)).

Preliminary injunction motions in FOIA cases "generally present one of two questions"—(1) "has the relevant agency appropriately denied a request for expedited processing," and (2) "is the agency processing [the request] as quickly as 'practicable.'" *Protect Democracy Project, Inc. v. DOD*, 263 F. Supp. 3d 293, 297 (D.D.C. 2017). Here the agency conceded the first question and granted EPIC's request for expedited processing *after* the preliminary injunction motion was filed. Def.'s Opp'n 2. So the question is now whether the agency is processing the request "as quickly as 'practicable.'" *Id.* EPIC has twice sought the answer to that question, without the need for "burdensome and unnecessary motion practice," Def.'s Opp'n 15, by attempting to negotiate a processing schedule with the agency; both times the agency has declined to engage in negotiations or establish a schedule. *See* Ex. 8; Def.'s Opp'n, Ex. 1, Decl. of Vanessa Brinkmann, Ex. D, ECF No. 19-1. Therefore, the Court should now set a schedule for processing EPIC's FOIA request "as soon as practicable." 5 U.S.C. § 552(a)(6)(E)(iii).

EPIC is likely to succeed on the merits of its claim that the Department of Justice is not processing EPIC's FOIA request as soon as practicable, Compl. ¶¶ 71–75, and is thus entitled to a

preliminary injunction establishing an expedited processing and production schedule. Courts have previously held that when an agency violates the "twenty-day deadline applicable to standard FOIA requests," that agency "presumptively also fails to process an expedited request 'as soon as practicable.'" *EPIC v. DOJ*, 416 F. Supp. 2d 30, 39 (D.D.C. 2006). This presumption is "rebuttable," but the Department of Justice has provided no evidence here to rebut the presumption, *Daily Caller*, 152 F. Supp. 3d at 11, and has simply refused to propose any schedule for processing and release of responsive records.

The Department of Justice has also refused to propose a processing schedule as is the custom when a FOIA plaintiff seeks a preliminary injunction. In most FOIA cases, including those exceptional cases where a plaintiff pursues preliminary injunctive relief, it is not necessary for the Court to enter a mandatory injunction, Def.'s Opp'n 14, because the parties promptly reach an agreement on an expedited schedule for processing and release of records. For example, in three cases filed last year (two involving the Department of Justice), the plaintiff withdrew its motion for a preliminary injunction after the agency agreed to an expeditious processing schedule. In *Fix The Court v. Department of Justice*, No. 18-1620 (filed Jul. 10, 2018), the parties agreed to a schedule for searching and processing responsive records, and the Department of Justice processed and released "653 documents totaling approximately 1800 pages" within one week after the preliminary injunction motion was filed. Status Report, *Fix The Court v. DOJ*, No. 18-1620 (D.D.C. filed Jul. 23, 2018). The same parties reached an agreement in another case where the Department of Justice would process "100 documents per week" and "promptly begin producing non-exempt, responsive materials." Minute Order, *Fix The Court v. DOJ*, No. 18-2091 (D.D.C. filed Sep. 24, 2018). In EPIC's recent suit against the National Archives, the parties negotiated a schedule for expeditiously searching and processing records from among more than

4

900,000 documents following the filing of a preliminary injunction. Joint Status Report, *EPIC v. NARA*, No. 18-2150 (D.D.C. filed Sept. 28, 2018).

This Court has recently taken similar steps to ensure the prompt processing and release of responsive records in FOIA cases that did not even involve a preliminary injunction motion. For example, in *Citizens for Responsibility and Ethics in Washington v. U.S. Department of Justice*, No. 18-1766 (filed Jul. 30, 2018), this Court ordered "that the government produce 750" pages per month, even after the agency represented that it could produce only 500 pages per month. Transcript of Status Conference 9, ECF No. 13, *CREW v. DOJ*, No. 18-766 (D.D.C. argued Oct. 3, 2018). The schedule that EPIC proposes is no more burdensome than the schedules that courts routinely impose in FOIA cases. For example, the Department of Justice recently agreed to process responsive records at a rate of 600 pages per month in one of its cases. Joint Status Report, ECF No. 23, *Democracy Forward Found. v. DOJ*, No. 18-0734 (D.D.C. filed Apr. 18, 2018).

The agency's extended discussion of how "[a]gencies ordinarily process FOIA requests for agency records on a first-in, first-out basis" is not relevant to processing once a FOIA matter is in litigation and subject to judicial oversight. In these circumstances, defendant agencies negotiate deadlines with the plaintiff or are subject to court-imposed schedules. If an agency seeks to justify delay due to special circumstances, then the agency bears the burden of proving "exceptional circumstances" in order to obtain an *Open America* stay. *EPIC v. FBI*, 933 F. Supp. 2d 42, 44 (D.D.C. 2013). The Department of Justice has not moved for an *Open America* stay or shown exceptional circumstances here to warrant such a stay, nor could it. So the case should proceed to an expedited processing and production schedule commensurate with the exceptional public interest in the release of the Mueller Report and the associated records EPIC has requested.

The Department of Justice does not dispute that the agency is in possession of records responsive to EPIC's request. The agency also concedes that it must process EPIC's request "as soon as practicable." Def.'s Opp'n 2 (quoting 5 U.S.C. § 552(a)(6)(E)(iii)). The only question is when. Given the unique public interest in the release of the Mueller Report, the commitments already made by the Attorney General, and the fact that EPIC has already agreed to prioritize the release of the Report, the Court should order the Department of Justice to (1) produce the Mueller Report to EPIC by April 15 or at the same time the report is made available to Congress, whichever comes first, (2) immediately produce any executive summaries contained in the Mueller Report, and (3) conduct a search and complete processing the records responsive to Category 5 of EPIC's request by April 29. The Court should also set a schedule for an expedited briefing and in camera review of exemption claims concerning any redacted portions of the Mueller Report.

A.   **The Court should order the Department of Justice to produce the Mueller Report to EPIC by April 15 or at the same time the report is made available to Congress, whichever comes first.**

The Department of Justice concedes that the Mueller Report is responsive to EPIC's FOIA request and that the agency is required to process the record and release it to EPIC as soon as practicable. Def.'s Opp'n 11–12.[1] The agency also concedes that it is already "preparing the report for release" pursuant to the order of the Attorney General, that the report "will be released 'by mid-April, if not sooner'"; and that "the Department is identifying and redacting the report as appropriate using the same type of considerations for which FOIA provides exemptions." Def.'s

---

[1] While the agency notes that the current final report did not exist at the time EPIC submitted its request, EPIC requested "all reports" prepared "under 28 C.F.R. § 600.8(c)" as well as "all drafts, outlines, exhibits, and supporting materials associated with any actual or planned" report. Compl. ¶ 43. Also, as the agency is well aware, the "cut off" date for records responsive to a FOIA request is the date of search, and the agency has not yet conducted a search. *Pub. Citizen v. Dep't of State*, 276 F.3d 643, 644 (D.C. Cir. 2002); *McGehee v. CIA*, 697 F.3d 1095, 1104 (D.C. Cir. 1983), *vacated on other grounds on panel reh'g & reh'g en banc denied*, 711 F.2d 1076 (D.C. Cir. 1983); *see also* 28 C.F.R. § 16.4(a) (Department of Justice regulation adopting the date-of-search cut off standard).

Opp'n 1, 12. How then can the agency claim that it is not "practicable" to produce the report to EPIC by mid-April or at the same time that it is produced to Congress, whichever comes first? The agency's explanation "strains credulity." Def.'s Opp'n 23.

According to the Office of Information Policy ("OIP"), the agency cannot release the Mueller Report to EPIC under the FOIA at the same time that the report is made publicly available by the Attorney General. Brinkmann Decl. ¶ 31. This, the agency says, is because "OIP will need to undergo a review of the material." *Id*. This is a report that the Attorney General of the United States, who is the head of the Department of Justice, has personally reviewed and will release to the public. What possible purpose would an additional review, *after public release by the Attorney General*, serve? The OIP does not offer any further explanation. And this position by the agency is illogical and indefensible.

Indeed, EPIC acknowledged that Attorney General's prior statements while attempting to negotiate a schedule for the release of responsive records that could have avoided briefing on the preliminary injunction. *See* Ex. 8. In communications with opposing counsel, EPIC offered to schedule release of the report "prior to the hearing scheduled for April 9" and noted that "We would also consider an alternative date consistent with the Attorney General's representations to Congress about the release of the report." Ex. 8. The agency declined, preferring to "proceed with briefing." *Id*.

Now the Court must decide what is practicable. All evidence indicates that it is practicable for the Department of Justice to release the Mueller Report to EPIC by "mid-April, if not sooner." Therefore, the Court should order the agency to produce the report to EPIC by April 15 or at the same time that the report is made available to Congress, whichever is sooner.

**B.      The Court should order the Department of Justice to immediately process and release any executive summary contained in the Mueller Report.**

The Mueller Report is a uniquely significant historical document. But some aspects of the report, including its format and structure, are likely similar to earlier independent counsel reports. One element of the report that should be immediately released is the executive summary (or summaries), which are typically drafted in a way that does not implicate the type of materials that the Department of Justice claims might be exempt. Earlier independent counsel reports included summaries that were promptly released to the public without redactions. And recent reports indicate that the Mueller Report contains similar summaries.

Both the Walsh Report and the Starr Report included extensive executive summaries that were released without any redaction. In 1993, the Independent Counsel issued a final report on Iran-Contra. Lawrence E. Walsh, Independent Counsel, *Final Report of the Independent Counsel for Iran/Contra Matters* (1993). The report began with a nine-page executive summary, which was released to the public without redactions. *Id*. at xiii–xxi. The 1998 report of the Independent Counsel in the investigation of President Clinton similarly included an introduction that summarized the principle findings and was released publicly without any redactions. Kenneth W. Starr, *Communication from Kenneth W. Starr, Independent Counsel, Transmitting a Referral to the United States House of Representatives Filed in Conformity with the Requirements of Title 28, United States Code, Section 595(C)*, H.R. Doc. No. 105-310 (1998). Members of the Special Counsel's team reportedly wrote "multiple summaries of the report," which they believed could be made public. Nicholas Fandos, Michael S. Schmidt, & Mark Mazzetti, *Some on Mueller's Team Say Report Was More Damaging Than Barr Revealed*, N.Y. Times (Apr. 3, 2019).[2]

---

[2] https://www.nytimes.com/2019/04/03/us/politics/william-barr-mueller-report.html.

Any summaries of the findings in the final report would be responsive to category 1(a) of EPIC's report and would be unlikely to contain exempt material. Compl. ¶ 43. Therefore, it should be practicable for the agency to release the summaries to EPIC today without further processing.

**C.    The Court should order the Department of Justice to conduct a search and complete processing of records responsive to Category 5 of EPIC's request by April 29.**

EPIC recognizes that there could be a large number of records responsive to the seven categories outlined in EPIC's FOIA request. That is why the processing schedule that EPIC twice proposed to the agency would prioritize the processing and release of the Mueller Report, then proceed to the agency's release of records responsive to Category 5 of EPIC's FOIA request by April 29, 2019. *See* Ex. 8. Category 5 includes "All referrals by the Special Counsel, Attorney General, or Acting Attorney General for 'administrative remedies, civil sanctions, or other governmental action outside the criminal justice system' under 28 C.F.R. § 600.4(c)" as well as other records associated with those referrals. Compl. ¶ 43. EPIC's proposed schedule maximizes the public interest in the release of the most significant records first and provides for a structured release of the remaining records over time.

Rather than respond to EPIC's proposal or offer an alternative processing schedule, the agency has simply refused to provide any timeline for processing. The OIP Senior Counsel states that "it would be inappropriate at this time for the OIP to commit to Plaintiff's requested schedule, or a fixed processing schedule." Brinkmann Decl. ¶ 34. But processing schedules are routine in FOIA cases, and at this point the agency has given no indication as to how it would propose to proceed. In the absence of any firm proposal from the agency, and after more than four months have passed since EPIC filed its request, the agency has "presumptively [failed] to

process an expedited request 'as soon as practicable.'" *EPIC v. DOJ*, 416 F. Supp. 2d 30, 39

(D.D.C. 2006).

The Court should accordingly adopt EPIC's proposed processing schedule.

## II.   EPIC WILL SUFFER IRREPARABLE HARM IF RELIEF IS NOT GRANTED.

The DOJ's unlawful refusal to timely disclose the report that is at the center of a critical

national debate works precisely the type of irreparable harm to EPIC that—time and again—

courts have found sufficient for a preliminary injunction. *E.g.*, *EPIC v. DOJ*, 416 F. Supp. 2d 30;

*Protect Democracy*, 263 F. Supp. 3d at 300–01; *Wash. Post v. DHS*, 459 F. Supp. 2d 61 (D.D.C.

2006); *Aguilera v. FBI*, 941 F. Supp. 144, 151 (D.D.C. 1996).

The agency's arguments to the contrary fail. First, the agency wrongly insists that EPIC's

informational injuries have already been remedied by the Attorney General's "anticipate[d]"

release, on his own terms, of a redacted version of the Mueller Report. Def.'s Opp'n 24, 25. Not

so. The FOIA entitles EPIC to disclosure of non-exempt responsive records as soon as

"practicable"—not at the discretion of an agency official. 5 U.S.C. § 552(a)(6)(E)(iii).

Just as importantly, the DOJ offers no evidence that the portions of the Mueller Report

released by the Attorney General through his review process will be coextensive with the

information that the FOIA guarantees to EPIC. To the contrary: the Attorney General has

promised to withhold material that would merely "affect other ongoing matters" or "infringe on

the . . . reputational interests" of third parties. Ex. 7 at 1. There is a significant risk that the agency

will withhold far more material than any arguably applicable FOIA exemption would allow. *See* 5

U.S.C. § 552(b)(7)(A) (permitting the withholding only of information that "could reasonably be

expected to *interfere* with *enforcement* proceedings" (emphases added)); 5 U.S.C. §§ 552(b)(6),

(7)(C) (permitting withholding only of information that would work an "unwarranted invasion of

*personal privacy*" (emphasis added)).

EPIC's FOIA Request also calls for numerous categories of records that the Attorney General has given no indication he will voluntarily disclose. These include any "referrals . . . for 'administrative remedies, civil sanctions or other governmental action outside the criminal justice system' under 28 C.F.R. § 600.4(c)," Ex. 2 at 2, and the "summaries of the [Mueller] report" written by the Special Counsel. Fandos et al., *supra*; *see also* Ex. 2 at 1–2 (requesting all "'closing documentation' prepared under 28 C.F.R. § 600.8(c)" and "[a]ll other reports summarizing or describing . . . evidence, findings, decisions, actions, or planned actions"). In sum, the Attorney General's March 29 letter falls well short of curing the agency's unlawful failure to provide EPIC with information "highly relevant to an ongoing and highly public matter." *EPIC v. Presidential Advisory Comm'n on Election Integrity*, 266 F. Supp. 3d 26 297, 319 (D.D.C. 2017), *aff'd on other grounds*, 878 F.3d 371 (D.C. Cir. 2017).

Second, the irreparable harm facing EPIC is far from "speculative," as the DOJ wrongly claims. Def.'s Opp'n 22, 24. The existence of undisclosed records responsive to EPIC's FOIA Request is uncontested, and irreparable harm should be beyond dispute because the agency has not produced those records to EPIC. The Attorney General has confirmed that the DOJ is in possession of the Mueller Report, much of which the Attorney General believes fit for public disclosure. Ex. 7 at 1. The Special Counsel has also transmitted "summaries of the [Mueller] report" to the Attorney General intended for public release. Fandos et al., *supra*. Still other documents known to be in the possession of the DOJ—for example, the required annual "'report[s]' concerning 'the status of the investigation' prepared under 28 C.F.R. § 600.8(a)(2)"— are presumptively subject to public disclosure. Ex. 2 at 1. All of these documents come within the scope of EPIC's FOIA Request, yet none have been released. No "speculation" is needed to

identify the irreparable informational harm EPIC suffers from being unlawfully denied access to these records within weeks of proposed hearings in Congress on the content of the documents.

Third, contra the DOJ, EPIC's irreparable harms are not cured by the agency's decision to administratively designate EPIC's FOIA Request as "expedited"—particularly when that decision comes five months after the DOJ wrongly denied expedition. Def.'s Opp'n 22. The court in *EPIC v. DOJ* explained the flaw in this type of argument when granting a previous preliminary injunction sought by EPIC against the Department of Justice:

> DOJ insists that EPIC will suffer no harm if the court were to deny EPIC's motion for a preliminary injunction because DOJ has already afforded EPIC all the relief to which it is entitled. Because it has already expedited EPIC's FOIA requests by administratively granting them expedited status and prioritizing them over other pending requests, DOJ argues that EPIC is entitled to "nothing more." This argument stretches the limits of plausibility. EPIC's right to expedition is certainly not satisfied by DOJ's decision to give priority to EPIC's requests. What matters to EPIC is not how the requests are labeled by the agency, but rather when the documents are actually released. As EPIC contends, "merely paying lip service" to EPIC's statutory right does not negate "the harm that results from the agency's failure to actually expedite its processing." Unless the requests are processed without delay, EPIC's right to expedition will be lost.

*EPIC v. DOJ*, 416 F. Supp. 2d at 41. The reasoning of EPIC's earlier successful case for a preliminary injunction is all the more compelling here, given that EPIC demonstrated its entitlement to expedited processing five months ago, Ex. 2 at 11–12, yet only now has been placed at the end of the expedited processing queue. Redressing EPIC's informational harms requires *immediate processing* of EPIC's FOIA Request, not untimely placement at the back of the express line.

Fourth, the DOJ claims counterintuitively that because public interest in the Mueller Report and related matters is so great, EPIC and the public should have no problem waiting indefinitely until relevant information is disclosed. Def.'s Opp'n 22–23. This defies both common sense and the DOJ's own FOIA regulations. The fact that records relate to a matter of

"widespread and exceptional media interest" *heightens* the importance of immediate disclosure; it does not give the DOJ license to complete processing on its own relaxed schedule. 28 C.F.R. § 16.5(e)(1)(iv). The public's immense and ongoing interest in the Mueller Report and Russian interference in the 2016 election simply underscores the gravity of the informational injury inflicted by the DOJ's unlawful delay. *See Protect Democracy*, 263 F. Supp. 3d at 300 (quoting *Elec. Frontier Found. v. Office of Dir. of Nat'l Intelligence*, 2007 WL 4208311, at *7 (N.D. Cal. Nov. 27, 2007)) ("Ongoing public and congressional debates about issues of vital national importance cannot be restarted or wound back.")).

Fifth, the DOJ wrongly presupposes that the records requested by EPIC are exempt from disclosure, and that EPIC will therefore be uninjured by delay. But the DOJ has already expressly conceded the opposite in the March 29 letter. As noted, Attorney General Barr believes that many parts of the Mueller Report are fit for public disclosure. Ex. 7 at 1. And many other records sought by EPIC—including the summaries prepared by the Special Counsel for public release, Fandos et al., *supra*, and the annual status reports under 28 C.F.R. § 600.8(a)(2)—are highly likely to be non-exempt. In any event, "FOIA unambiguously places on an agency the burden of establishing that records are exempt." *EPIC v. IRS*, 910 F.3d 1232, 1238 (D.C. Cir. 2018). That burden cannot be carried by unsworn assertions made in an agency brief, particularly because—in the DOJ's telling—the agency has not even bothered to determine "what, exactly, [EPIC is] seeking in some of the fourteen categories of records outlined in Plaintiff's FOIA request." Brinkmann Decl. ¶ 32. The FOIA "mandates a strong presumption in favor of disclosure," and the Court must assume that the records EPIC seeks are non-exempt. *CREW v. DOJ*, 854 F.3d 675, 681 (D.C. Cir. 2017) (quoting *ACLU v. DOJ*, 655 F.3d 1, 5 (D.C. Cir. 2011)).

Sixth, the DOJ also ignores the urgency brought by the many ongoing or imminent proceedings—judicial, legislative, investigatory, and political—to which the requested records are directly relevant. Def.'s Opp'n 23–25. The agency cannot deny that many of the records requested by EPIC are "highly relevant to . . . ongoing" congressional proceedings. *EPIC v. PACEI*, 266 F. Supp. 3d 26 at 319. Instead, the DOJ simply asserts that *other* sources of information will be useful in evaluating those proceedings. Def.'s Opp'n 23. But the presence of other information does not cure the agency's unlawful failure to disclose the Mueller Report and other related records to EPIC "as soon as practicable." And the agency cannot recast significant events that have already occurred—the President's call for further investigations and the ongoing 2020 presidential campaign—as distant or speculative. Def.'s Opp'n 24–25. Both are active subjects of public interest and controversy, and the records requested by EPIC are plainly relevant to both.

Finally, the DOJ again posits that "grant[ing] Plaintiff's request for expedition" is sufficient, and that EPIC's interest in disseminating information to the public will therefore not be harmed by additional delay. Def.'s Opp'n 25. But merely placing EPIC's FOIA Request at the back of the expedited processing queue does nothing to satisfy EPIC's right to *expeditious processing*. *EPIC v. DOJ*, 416 F. Supp. 2d at 41. EPIC's interest in informing the public is directly and irreparably harmed by the DOJ's failure to timely disclose requested records.

The DOJ's refusal to expeditiously process EPIC's FOIA Request and release responsive records causes EPIC irreparable harm warranting immediate injunctive relief from this Court.

## III.   THE BALANCE OF THE EQUITIES AND THE PUBLIC INTEREST FAVOR RELIEF.

The DOJ does not articulate any public interest or equitable interest to counterbalance the strong interests that EPIC has identified. The agency does not dispute EPIC's powerful interest in immediate disclosure of the requested records, Pl.'s Mem. 30; the public's urgent need for the

same records, *id.* at 31-32; or the overwhelming and bipartisan public support for disclosure of the

Mueller Report, *id.* at 32–33. Nor does agency dispute that "there is a substantial public interest in

having governmental agencies abide by the federal laws that govern their existence and

operations," such as the expedited processing provisions of the FOIA. *Id.* at 31 (quoting *League*

*of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)). On this basis alone,

the Court should grant the requested injunction. *See DIRECTV, Inc. v. FCC*, 110 F.3d 816, 829

(D.C. Cir. 1997) (arguments not responded to are "take[n] as conceded").

Nevertheless, the DOJ claims that having to *actually process* EPIC's FOIA Request on an

expedited basis—as required by Congress—would disadvantage other FOIA requesters. But the

agency's own declarant argues persuasively against this:

> As of March 29, 2019, OIP is processing 415 FOIA requests related to the Special
> Counsel's Office Investigation. This includes both requests for records of the Special
> Counsel's Office as well as related records located in the Department's senior
> leadership offices. Of those 415 requests, 198 were received after the Attorney
> General notified Congress of the conclusion of the investigation. This number
> continues to grow each day.

Brinkmann Decl. ¶ 19. In other words: literally hundreds of requesters are seeking the same sorts

of Special Counsel records called for in EPIC's FOIA Request. Nearly half of those requests

(198) have come in the three weeks since the Attorney General publicly acknowledged the

existence of the Mueller Report, *id.*, presumably a great many of those FOIA requesters are

seeking the exact same record at issue this case. Immediate processing of EPIC's FOIA Request,

beginning with the Mueller Report, would therefore enable the DOJ to disclose records

responsive to dozens or hundreds of requests in short order. Economizing the processing of FOIA

requests in this way would significantly enhance—not "undermine"—the "proper operation" of

the FOIA and the DOJ's processing queues. Def.'s Opp'n 26.

Further, the DOJ's argument fails to acknowledge that the agency has already assigned personnel to process the Mueller Report. *See* Ex. 7 at 1; Brinkmann Decl. ¶ 31. Whatever concerns the DOJ may have previously had about the resources required to review, process, and disclose the Mueller Report in expeditious fashion, the agency has already determined that disclosure of the report should be prioritized above other agency priorities. *See* Def.'s Opp'n 8. An order from this Court requiring the agency to complete processing of the Mueller Report by April 15, 2019, would vindicate EPIC's right to expedition and conform with the Attorney General's prior representations, while harming no apparent equitable interest on the part of the DOJ.

The DOJ also argues that immediately processing EPIC's FOIA Request might cause the agency to disclose *too much* information. Def.'s Opp'n 27. But just as Congress has permitted agencies to withhold certain types of information responsive to a FOIA request, Congress has also established that particular requests—like EPIC's—must be processed "as soon as practicable" in the estimation of a reviewing Court. 5 U.S.C. § 552(a)(6)(E)(iii); *see also* 5 U.S.C. § 552(a)(4)(B) ("[T]he court shall determine the matter de novo[.]") "Vague suggestions" that an agency will be unable to comply with both aspects of the FOIA do not constitute a valid equitable interest:

> Congress has already weighed the value of prompt disclosure against the risk of mistake by an agency and determined that twenty days is a reasonable time period, absent exceptional circumstances, for an agency to properly process standard FOIA requests. Here, DOJ has not yet made any specific showing that it will not be able to process the documents within the time period sought by EPIC. Vague suggestions that inadvertent release of exempted documents might occur are insufficient to outweigh the very tangible benefits that FOIA seeks to further—government openness and accountability.

*EPIC v. DOJ*, 416 F. Supp. 2d at 42. The DOJ's arguments to the contrary are particularly unconvincing where, as here, the agency repeatedly insists that disclosure of the Mueller Report is imminent.

The DOJ also points to "discussions with Congress over the anticipated release of the Mueller Report" to argue that the agency should be excused from its Congressionally-established obligation to expeditiously process EPIC's FOIA Request. Def.'s Opp'n 28. But agency does not attempt to explain how disclosure pursuant to the FOIA would "disrupt" or "preempt" negotiations to disclose the Mueller Report on entirely separate terms to Congress. This vague and hypothetical fear does not undermine EPIC's entitlement to an injunction.

Because injunctive relief would impose no significant burden on the DOJ while advancing the overwhelming interests of EPIC and the public in prompt disclosure of the requested records, the Court should enter the requested injunction.

## CONCLUSION

For the above reasons, and for the reasons set forth in EPIC's original Memorandum, this Court should grant EPIC's Motion for a Preliminary Injunction and order the DOJ to (1) produce the Mueller Report to EPIC by April 15 or at the same time the report is made available to Congress, whichever comes first, (2) immediately produce any executive summaries contained in the Mueller Report, and (3) conduct a search and complete processing the records responsive to Category 5 of EPIC's request by April 29.

Respectfully Submitted,

MARC ROTENBERG, D.C. Bar #422825
EPIC President and Executive Director

/s/ Alan Butler
ALAN BUTLER, D.C. Bar #1012128
EPIC Senior Counsel
butler@epic.org

JOHN DAVISSON, D.C. Bar #1531914
EPIC Counsel

ELECTRONIC PRIVACY INFORMATION
CENTER
1718 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20009
(202) 483-1140 (telephone)
(202) 483-1248 (facsimile)

*Attorneys for Plaintiff EPIC*

Dated: April 8, 2019

# Exhibit 8



**From:** **Enlow, Courtney D. (CIV)** Courtney.D.Enlow@usdoj.gov
**Subject:** RE: Activity in Case 1:19-cv-00810-RBW ELECTRONIC PRIVACY INFORMATION CENTER v. UNITED STATES DEPARTMENT OF JUSTICE Order
**Date:** April 3, 2019 at 11:21 AM
**To:** Alan Butler butler@epic.org
**Cc:** Marc Rotenberg rotenberg@epic.org, John Davisson davisson@epic.org

Dear Alan,

Thank you for your response.  We will proceed with briefing in accordance with Judge Walton's Order.

Best regards,
Courtney


Courtney Enlow
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W., Room 12102
Washington, D.C. 20005
(202) 616-8467
courtney.d.enlow@usdoj.gov


---

**From:** Alan Butler <butler@epic.org>
**Sent:** Wednesday, April 03, 2019 11:01 AM
**To:** Enlow, Courtney D. (CIV) <cenlow@CIV.USDOJ.GOV>
**Cc:** Marc Rotenberg <rotenberg@epic.org>; John Davisson <davisson@epic.org>
**Subject:** Re: Activity in Case 1:19-cv-00810-RBW ELECTRONIC PRIVACY INFORMATION CENTER v. UNITED STATES DEPARTMENT OF JUSTICE Order

Dear Courtney,

Thank you for your response and for confirming that the Department of Justice will process EPIC's FOIA request on an expedited basis.

As you noted, the agency is now required to process EPIC's FOIA request "as soon as practicable." Therefore, we cannot agree to withdraw our PI motion until the agency has agreed to a schedule for processing EPIC's request and producing responsive records.

Because the Attorney General has represented to the House Judiciary Committee that the Department of Justice will process and produce the report "by mid-April, if not sooner," the agency cannot seriously argue that it is not "practicable" to complete the processing of the report (category 1(a) of EPIC's request) by mid-April.

We have agreed to limit the scope for the initial processing of EPIC's FOIA request to the report and category 5, and to withdraw our motion for a preliminary injunction, if the agency

can produce the report prior to the hearing scheduled for April 9 and process and release records responsive to Category 5 by April 29th. That will obviate the need for briefing. Once the agency has produced those records to EPIC, we can set an appropriate schedule for processing the remaining records.

We would also consider an alternative date consistent with the Attorney General's representations to Congress about the release of the report.

If we are unable to reach an agreement regarding the release of the report, we will proceed with briefing and be prepared to discuss this issue with Judge Walton next Tuesday.

Sincerely,

Alan Butler
Senior Counsel
Electronic Privacy Information Center
1718 Connecticut Ave., N.W. Suite 200
Washington, D.C. 20009
(202) 483-1140 x103
butler@epic.org

> On Apr 2, 2019, at 7:18 PM, Enlow, Courtney D. (CIV) <Courtney.D.Enlow@usdoj.gov> wrote:
>
> Dear Alan,
>
> Thank you for your email.  We would also like to avoid unnecessary briefing in this case.
>
> The Department of Justice has agreed to expedite EPIC's FOIA request.  EPIC's request for a preliminary injunction directing the Department to grant EPIC's request for expedited processing is now moot.  On that basis alone, EPIC should withdraw its motion for a preliminary injunction.  Please let me know if EPIC will agree to do so.
>
> We are not able to commit to a processing schedule at this time.  As you know, on March 29, 2019, the Attorney General sent a letter to Congress to address the "'confidential report' [the Special Counsel Robert S. Mueller, III] has submitted to [the Attorney General] pursuant to 28 C.F.R. § 600.8(c)."  *See* Pl.'s Mot., Ex. 7 at 1, Dkt. 7-4.  In that letter, the Attorney General stated, "We are preparing the report for release, making the redactions that are required.  The Special Counsel is assisting us in this process.  Specifically, we are well along in the process of identifying and redacting the following:  (1) material subject to Federal Rule of Criminal Procedure 6(e) that by law cannot be made public; (2) material that the intelligence community identifies as potentially compromising sensitive sources and methods; (3) material that could affect other ongoing matters, including those that the Special Counsel has

referred to other Department offices; and (4) information that would unduly infringe on the personal privacy and reputational interests of peripheral third parties." The Attorney General further stated, "Our progress is such that I anticipate we will be in a position to release the report by mid-April, if not sooner." *Id.* It is not practicable for the Department to release the report earlier than the timeframe the Attorney General already provided. Furthermore, a schedule should not be set until after the release of the report.

Best regards,
Courtney


Courtney Enlow
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W., Room 12102
Washington, D.C. 20005
(202) 616-8467
courtney.d.enlow@usdoj.gov

---

**From:** Alan Butler <butler@epic.org>
**Sent:** Monday, April 01, 2019 7:12 PM
**To:** Enlow, Courtney D. (CIV) <cenlow@CIV.USDOJ.GOV>
**Cc:** Marc Rotenberg <rotenberg@epic.org>; John Davisson <davisson@epic.org>
**Subject:** Re: Activity in Case 1:19-cv-00810-RBW ELECTRONIC PRIVACY INFORMATION CENTER v. UNITED STATES DEPARTMENT OF JUSTICE Order

Dear Courtney,

We have reviewed Judge Walton's briefing order and would like to schedule a call with you to discuss the possibility of setting a production schedule to avoid unnecessary briefing in this case.

As you know, EPIC is seeking expedited processing of its Freedom of Information Act request for the Mueller Report and related documents. Our goal is to ensure the prompt release of the unredacted report, and then the subsequent release of related documents.

We believe that the Court is likely to grant our motion and require the agency to process our request and produce responsive records on an expedited schedule. If the agency can commit now to the release of certain documents, it should be possible to avoid unnecessary briefing.

We are willing to agree to a reasonable, expedited processing schedule to prioritize

we are willing to agree to a reasonable, expedited processing schedule to prioritize the release of the most significant documents. Specifically, we would propose the following schedule:

    • The agency will process and produce the final report (category (1)(a)) by April 9th. We are aware that the Attorney General has said to the Chairmen of the House and Senate Judiciary Committees that he is working with the Special Counsel to release the report to Congress by "mid-April, if not sooner." Therefore, we believe it should be practicable for the agency to produce the report by the date of the Court's scheduled hearing, which is April 9.

    • The agency identify, process, and release records responsive to Category 5 by April 29, 2019.

    • After that process is complete, we would schedule a call the week of April 29th to discus and set a schedule for processing the remaining categories

If the agency is willing to agree to this schedule, then EPIC would be willing to consider withdrawing its preliminary injunction motion in the interest of efficiency and in expediting these proceedings.

Please let us know if you are available for a call tomorrow.

Sincerely,

Alan Butler
Senior Counsel
Electronic Privacy Information Center
1718 Connecticut Ave., N.W. Suite 200
Washington, D.C. 20009
(202) 483-1140 x103
butler@epic.org


    Begin forwarded message:

    **From:** DCD_ECFNotice@dcd.uscourts.gov
    **Subject: Activity in Case 1:19-cv-00810-RBW ELECTRONIC PRIVACY INFORMATION CENTER v. UNITED STATES DEPARTMENT OF JUSTICE Order**
    **Date:** April 1, 2019 at 5:12:26 PM EDT
    **To:** DCD_ECFNotice@dcd.uscourts.gov

    **This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
    **\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of**

**case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**U.S. District Court**

**District of Columbia**

## Notice of Electronic Filing

The following transaction was entered on 4/1/2019 at 5:12 PM and filed on 4/1/2019

| | |
|---|---|
| **Case Name:** | ELECTRONIC PRIVACY INFORMATION CENTER v. UNITED STATES DEPARTMENT OF JUSTICE |
| **Case Number:** | 1:19-cv-00810-RBW |
| **Filer:** | |
| **Document Number:** | 11 |

**Docket Text:**
**ORDER. In accordance with the reasons stated in the attached Order, it is hereby ORDERED that David Christenson's [5] Motion for Leave to File Motion to Join and Intervene is GRANTED. It is further ORDERED that David Christenson shall file his motion to join or intervene on or before 12:00 p.m. on April 4, 2019. It is further ORDERED that the Department shall file its opposition to David Christenson's motion to join or intervene on or before 12:00 p.m. on April 8, 2019. It is further ORDERED that the Department shall file its opposition to the plaintiff's motion for preliminary injunction on or before April 5, 2019. It is further ORDERED that the plaintiff shall file its reply in support of its motion on or before 12:00 p.m. on April 8, 2019. It is further ORDERED that the parties shall appear before the Court for a hearing on the Plaintiff's Motion for a Preliminary Injunction on April 9, 2019, at 9:00 a.m. Signed by Judge Reggie B. Walton on April 1, 2019. (lcrbw1)**

**1:19-cv-00810-RBW Notice has been electronically mailed to:**

Courtney Danielle Enlow
  courtney.d.enlow@usdoj.gov, fedprog.ecf@usdoj.gov

John L. Davisson    davisson@epic.org, efiling@epic.org

**1:19-cv-00810-RBW Notice will be delivered by other means to::**

DAVID ANDREW CHRISTENSON

DAVID ANDREW CHRISTENSON
P.O. Box 9063
Miramar Beach, FL 32550
The following document(s) are associated with this transaction:
**Document description:**Main Document
**Original filename:**suppressed
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=973800458 [Date=4/1/2019]
[FileNumber=5944659-0]
[4498727f9c9bd13d0d0bcca008497fe472203b1c64dbfc484d1ef225a197
bf7b8207f
94cd798e4bc31fc54ba4af4e973854741ad903e377ce2d790f4c59f0b26]]