# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

---

ELECTRONIC PRIVACY
INFORMATION CENTER,

        Plaintiff,

        v.

UNITED STATES DEPARTMENT OF
JUSTICE,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 19-cv-810 (RBW)

---

JASON LEOPOLD, BUZZFEED, INC.,

        Plaintiffs,

        v.

UNITED STATES DEPARTMENT OF
JUSTICE, et al.

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 19-cv-957 (RBW)

---

## DEPARTMENT OF JUSTICE'S MOTION FOR SUMMARY JUDGMENT IN *LEOPOLD v. DEPARTMENT OF JUSTICE* AND PARTIAL SUMMARY JUDGMENT IN *ELECTRONIC PRIVACY INFORMATION CENTER v. DEPARTMENT OF JUSTICE*

Defendant, the United States Department of Justice, moves for summary judgment pursuant to Federal Rule of Civil Procedure 56.[1]  In support of this motion, the Court is respectfully

---

[1] Pursuant to the Court's Order, this motion "pertain[s] only to the plaintiffs' request for Special Counsel Mueller's report regarding the investigation into Russian interference in the 2016 United States presidential election," and does not address the additional documents sought by Plaintiff Electronic Privacy Information Center.  Order at 2 n.1, Dkt. 43.  Accordingly, as applied to *Electronic Privacy Information Center v. Department of Justice*, this motion is for partial summary judgment.  With respect to *Leopold v. Department of Justice*, this motion is dispositive of the entire case.

referred to Defendant's accompanying memorandum of points and authorities and attached exhibits.

Dated: June 3, 2019                        Respectfully submitted,

                                        HASHIM MOOPPAN
Deputy Assistant Attorney General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Director
Federal Programs Branch

*/s/ Courtney D. Enlow*
COURTNEY D. ENLOW
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Room 12102
Washington, D.C. 20005
Tel: (202) 616-8467
Email: courtney.d.enlow@usdoj.gov

*Counsel for Defendant*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                                    )
ELECTRONIC PRIVACY                                  )
INFORMATION CENTER,                                 )
                                                    )
            Plaintiff,                              )
                                                    )
      v.                                            )      Civil Action No. 19-cv-810 (RBW)
                                                    )
UNITED STATES DEPARTMENT OF                         )
JUSTICE,                                            )
                                                    )
            Defendant.                              )
_____ )
                                                    )
JASON LEOPOLD, BUZZFEED, INC.,                      )
                                                    )
            Plaintiffs,                             )
                                                    )
      v.                                            )      Civil Action No. 19-cv-957 (RBW)
                                                    )
UNITED STATES DEPARTMENT OF                         )
JUSTICE, et al.                                     )
                                                    )
            Defendants.                             )
_____ )

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE
DEPARTMENT OF JUSTICE'S MOTION FOR SUMMARY JUDGMENT IN
_LEOPOLD v. DEPARTMENT OF JUSTICE_ AND PARTIAL SUMMARY JUDGMENT IN
_ELECTRONIC PRIVACY INFORMATION CENTER v. DEPARTMENT OF JUSTICE_**

<strong><u>TABLE OF CONTENTS</u></strong>

TABLE OF AUTHORITIES……………………………………………………………..iv

TABLE OF EXHIBITS……………………………………………………………………xii

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 3

I. The Department of Justice's Investigation into Russian Interference in the 2016 Presidential Election ................................................................................................ 3

II. The Attorney General's Letters to Congress Concerning the Mueller Report .................. 4

III. Plaintiffs' FOIA Requests ................................................................................................ 6

IV. The Instant Litigation ...................................................................................................... 7

V. DOJ's Response to Plaintiffs and Release of the FOIA-processed Version of the Mueller Report ...................................................................................................... 8

STANDARD OF REVIEW .............................................................................................. 10

ARGUMENT .................................................................................................................... 10

I. DOJ PROPERLY WITHHELD INFORMATION PURSUANT TO EXEMPTIONS 3, 5, 6, AND 7 ....................................................................................... 10

    A. DOJ Properly Withheld Information Protected by Statute Pursuant to Exemption 3 ................................................................................................. 11

        1. DOJ Properly Withheld Federal Grand Jury Information Under Exemption 3 .......................................................................................... 11

        2. DOJ Properly Withheld Information Pertaining to Intelligence Sources and Methods Under Exemption 3 ........................................... 13

    B. DOJ Properly Withheld Law Enforcement Information Under Exemption 7 ........ 15

        1. The Mueller Report Was Compiled for Law Enforcement Purposes ............ 16

        2. DOJ Properly Withheld Information Concerning Pending Enforcement Proceedings Under Exemption 7(A) .............................................. 18

        3. DOJ Properly Withheld Information Which Would Deprive a Person of a Right to a Fair Trial Under Exemption 7(B) .................................. 23

i

4.  DOJ Properly Withheld Information Concerning Investigative Techniques and Procedures Under Exemption 7(E). ....................................................... 26

    a.  DOJ Properly Withheld Information that Would Reveal Techniques and Procedures Authorized for and Used in National Security Investigations Under Exemption 7(E). ................................................... 27

    b.  DOJ Properly Withheld Details About Techniques and Procedures that Would Reveal Investigative Focus and Scope, and Circumstances, Methods and Fruits of Investigatory Operations Under Exemption 7(E). ................................................................................................. 29

C.  DOJ Properly Withheld Information Related to Individuals' Personal Privacy Under Exemptions 5, 6, and 7(C). ............................................................. 31

    1.  DOJ Properly Withheld Privacy Information Under Exemptions 6 and 7(C). ................................................................................................. 31

        a.  DOJ Properly Withheld Names, Social Media Account Information, and Other Contact Information of Unwitting Third Parties Under Exemptions 6 and 7(C). .......................................................... 35

        b.  DOJ Properly Withheld Names and Personally-identifiable Information About Individuals Not Charged by the Office of the Special Counsel Under Exemptions 6 and 7(C). ................................... 37

        c.  DOJ Properly Information Concerning a Subject of the Investigation Under Exemptions 6 and 7(C). ............................................... 40

        d.  DOJ Properly Withheld Names, Social Media Account Information, Contact Information, and Other Personally-identifiable Information About Individuals Merely Mentioned in the Report Under Exemptions 6 and 7(C). ....................................................... 42

    2.  DOJ Properly Withheld Deliberative Information Regarding Charging Decisions Under Exemption 5. ...................................................... 44

        a.  DOJ Properly Withheld Deliberations About Application of Criminal Law to Specific Factual Scenarios Under Exemption 5. ...................... 47

        b.  DOJ Properly Withheld Deliberations About Charging Decisions Not to Prosecute Under Exemption 5. ......................................................... 50

II.  DOJ IS PROHIBITED BY COURT ORDER FROM DISCLOSING INFORMATION RELATING TO ROGER  STONE'S ONGOING CRIMINAL CASE............................ 53

III.  DOJ RELEASED ALL REASONABLY SEGREGABLE, NON-EXEMPT INFORMATION................................................................................................. 54

CONCLUSION...................................................................................................................... 55

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Access Reports v. Dep't of Justice*,
    926 F.2d 1192 (D.C. Cir. 1991)............................................................................ 49

*Albuquerque Pub. Co. v. Dep't of Justice*,
    726 F. Supp. 851 (D.D.C. 1989)........................................................................... 38

*Alyeska Pipeline Serv. Co. v. EPA*,
    856 F.2d 309 (D.C. Cir. 1988).............................................................................. 20

*Am. Civil Liberties Union of S. Cal. v. U.S. Citizenship & Immigration Servs.*,
    133 F. Supp. 3d 234 (D.D.C. 2015)...................................................................... 26

*Am. Civil Liberties Union v. Dep't of Def.*,
    628 F.3d 612 (D.C. Cir. 2011)............................................................... 11, 13, 14

*Am. Civil Liberties Union v. Dep't of Justice*,
    655 F.3d 1 (D.C. Cir. 2011)........................................................................ 34, 43

*Associated Press v. FBI*,
    265 F. Supp. 3d 82 (D.D.C. 2017)........................................................................ 27

*Banks v. Dep't of Justice*,
    757 F. Supp. 2d 13 (D.D.C. 2010).................................................................. 36, 37

*Bartko v. Dep't of Justice*,
    79 F. Supp. 3d 167 (D.D.C. 2015)........................................................... 33, 34, 43

*Bast v. Dep't of Justice*,
    665 F.2d 1251 (D.C. Cir. 1981)..................................................................... 38, 40

*Beck v. Dep't of Justice*,
    997 F.2d 1489 (D.C. Cir. 1993)........................................................................... 32

*Blackwell v. FBI*,
    646 F.3d 37 (D.C. Cir. 2011)..................................................................... *passim*

*Blakeney v. FBI*,
    No. 17-CV-2288 (BAH), 2019 WL 450678 (D.D.C. Feb. 5, 2019)......................... 50

*Boehm v. FBI*,
    948 F. Supp. 2d 9 (D.D.C. 2013).......................................................................... 36

*Braga v. FBI*,
    910 F. Supp. 2d 258 (D.D.C. 2012)...................................................................... 32

*Brick v. Dep't of Justice,*
  358 F. Supp. 3d 37 (D.D.C. 2019) ..................................................................... 13, 14

*Burka v. Dep't of Health & Human Servs.,*
  87 F.3d 508 (D.C. Cir. 1996) ...................................................................................... 45

*Cable News Network, Inc. v. FBI,*
  298 F. Supp. 3d 124 (D.D.C. 2018), *appeal dismissed,* No. 18-5041, 2018 WL 4619108
  (D.C. Cir. July 5, 2018) ........................................................................................... 22

*Campbell v. Dep't of Justice,*
  164 F.3d 20 (D.C. Cir. 1998) ...................................................................................... 16

*CIA v. Sims,*
  471 U.S. 159 (1985) ..................................................................................................... 14

*Citizens for Responsibility & Ethics in Wash. v. Dep't of Justice,*
  746 F.3d 1082 (D.C. Cir. 2014) ............................................................................ 18, 23

*Citizens for Responsibility & Ethics in Wash. Dep't of Justice,*
  160 F. Supp. 3d 226 (D.D.C. 2016) .......................................................................... 27

*Clemente v. FBI,*
  867 F.3d 111 (D.C. Cir. 2017) .................................................................................... 16

*Coastal States Gas Corp. v. Dep't of Energy,*
  617 F.2d 854 (D.C. Cir. 1980) ............................................................................ *passim*

*Coleman v. FBI,*
  13 F. Supp. 2d 75 (D.D.C. 1998) .............................................................................. 36

*Cong. News Syndicate v. Dep't of Justice,*
  438 F. Supp. 538 (D.D.C. 1977) ............................................................................... 43

*Ctr. for Nat'l Sec. Studies v. Dep't of Justice,*
  331 F.3d 918 (D.C. Cir. 2003) ............................................................................. *passim*

*Defs. of Wildlife v. U.S. Border Patrol,*
  623 F. Supp. 2d 83 (D.D.C. 2009) ............................................................................ 10

*Dep't of Defense v. Fed. Labor Relations Auth.,*
  510 U.S. 487 (1994) ..................................................................................................... 33

*Dep't of Justice v. Reporters Comm. for Freedom of the Press,*
  489 U.S. 749 (1989) ............................................................................................... *passim*

*Dep't of the Interior v. Klamath Water Users Protective Ass'n,*
  532 U.S. 1 (2001) ......................................................................................................... 45

*Diamond v. Atwood,*
    43 F.3d 1538 (D.C. Cir. 1995) ................................................................. 10

*DiBacco v. U.S. Army,*
    795 F.3d 178 (D.C. Cir. 2015) ................................................................. 14

*Elec. Privacy Info. Ctr. v. Dep't of Justice,*
    296 F. Supp. 3d 109 (D.D.C. 2017) ........................................................ 15

*Elliott v. FBI,*
    Civ. A No. 06-1244, 2007 WL 1302595 (D.D.C. May 2, 2007) ................ 36

*FBI v. Abramson,*
    456 U.S. 615 (1982) ................................................................................ 10

*Fitzgibbon v. CIA,*
    911 F.2d 755 (D.C. Cir. 1990) ........................................................... 37, 43

*Fund for Constitutional Gov't v. Nat'l Archives & Records Serv.,*
    656 F.2d 856 (D.C. Cir. 1981) ......................................................... *passim*

*Gov't Accountability Project v. Dep't of Justice,*
    852 F. Supp. 2d 14 (D.D.C. 2012) .......................................................... 49

*GTE Sylvania, Inc. v. Consumers Union,*
    445 U.S. 375 (1980) ................................................................................ 54

*Halperin v. CIA,*
    629 F.2d 144 (D.C. Cir. 1980) ................................................................. 14

*Harrison v. Exec. Office for U.S. Attorneys,*
    377 F. Supp. 2d 141 (D.D.C. 2005) ........................................................ 41

*Heggestad v. Dep't of Justice,*
    182 F. Supp. 2d 1 (D.D.C. 2000) ................................................. 45, 46, 50

*Henderson v. Office of the Dir. of Nat'l Intelligence,*
    151 F. Supp. 3d 170 (D.D.C. 2016) ........................................................ 26

*Hodge v. FBI,*
    703 F.3d 575 (D.C. Cir. 2013) ................................................................. 12

*In re Sealed Case,*
    121 F.3d 729 (D.C. Cir. 1997) ................................................................. 45

*Jackson v. U.S. Attorney's Office, Dist. of New Jersey,*
    293 F. Supp. 2d 34 (D.D.C. 2003) ..................................................... 49, 52

*Jimenez v. FBI*,
   938 F. Supp. 21 (D.D.C. 1996) ............................................................................... 50

*Juarez v. Dep't of Justice*,
   518 F.3d 54 (D.C. Cir. 2008) ................................................................................... 54

*Judicial Watch, Inc. v. Dep't of State*,
   __ F. Supp. 3d __, 2019 WL 1166757 (D.D.C. Mar. 13, 2019) ......................... 14, 15

*Judicial Watch, Inc. v. Nat'l Archives & Records Admin.*,
   876 F.3d 346 (D.C. Cir. 2017) ................................................................................ 39

*Kay v. FCC*,
   976 F. Supp. 23 (D.D.C. 1997), *aff'd*, 172 F.3d 919 (D.C. Cir. 1998) ................ 21, 22

*King v. Dep't of Justice*,
   830 F.2d 210 (D.C. Cir. 1987) ................................................................................ 33

*Kishore v. Dep't of Justice*,
   575 F. Supp. 2d 243 (D.D.C. 2008) ................................................................... 33, 36

*Kissinger v. Reporters Comm. for Freedom of the Press*,
   445 U.S. 136 (1980) ............................................................................................... 54

*Larson v. Dep't of State*,
   565 F.3d 857 (D.C. Cir. 2009) ......................................................................... *passim*

*Lewis-Bey v. Dep't of Justice*,
   595 F. Supp. 2d 120 (D.D.C. 2009) ........................................................................ 29

*Mack v. Dep't of the Navy*,
   259 F. Supp. 2d 99 (D.D.C. 2003) .......................................................................... 17

*Mapother v. Dep't of Justice*,
   3 F.3d 1533 (D.C. Cir. 1993) ............................................................................. 18, 20

*Martin v. Dep't of Justice*,
   488 F.3d 446 (D.C. Cir. 2007) ................................................................................ 34

*Matthews v. FBI*,
   Civ. A. No. CV 15-569 (RDM), 2019 WL 1440161 (D.D.C. Mar. 31, 2019) .................... 11, 13

*Mayer Brown, LLP v. IRS*,
   562 F.3d 1190 (D.C. Cir. 2009) .............................................................................. 27

*McGehee v. Dep't of Justice*,
   800 F. Supp. 2d 220 (D.D.C. 2011) ................................................................... 36, 43

*Mead Data Cent., Inc. v. Dep't of the Air Force*,
  566 F.2d 242 (D.C. Cir. 1977) .................................................................... 54

*Morgan v. Dep't of Justice*,
  923 F.2d 195 (D.C. Cir. 1991) ............................................................... 53, 54

*Murphy v. Exec. Office for U.S. Attorneys*,
  789 F.3d 204 (D.C. Cir. 2015) .................................................................... 10

*Nation Magazine v. U.S. Customs Serv.*,
  71 F.3d 885 (D.C. Cir. 1995) ...................................................................... 37

*Nat'l Archives & Records Admin. v. Favish*,
  541 U.S. 157 (2004) ..................................................................................... 33

*Nat'l Ass'n of Retired Fed. Employees v. Horner*,
  879 F.2d 873 (D.C. Cir. 1989) .................................................................... 37

*Nat'l Sec. Archive Fund, Inc. v. CIA*,
  402 F. Supp. 2d 211 (D.D.C. 2005) ........................................................... 54

*Negley v. FBI*,
  825 F. Supp. 2d 63 (D.D.C. 2011), *aff'd*, 2012 WL 1155734 (D.C. Cir. Mar. 28, 2012) ......... 43

*NLRB v. Robbins Tire & Rubber Co.*,
  437 U.S. 214 (1978) ........................................................................ 18, 20, 21

*NLRB v. Sears, Roebuck & Co.*,
  421 U.S. 132 (1975) ..................................................................................... 45

*North v. Walsh*,
  881 F.2d 1097 (D.C. Cir. 1989) .................................................................. 21

*Painting & Drywall Work Pres. Fund, Inc. v. Dep't of Hous. & Urban Dev.*,
  936 F.2d 1300 (D.C. Cir. 1991) .................................................................. 32

*Performance Coal Co. v. Dep't of Labor*,
  847 F. Supp. 2d 6 (D.D.C. 2012) ................................................................ 50

*Poitras v. Dep't of Homeland Sec.*,
  303 F. Supp. 3d 136 (D.D.C. 2018) ............................................................ 30

*Pratt v. Webster*,
  673 F.2d 408 (D.C. Cir. 1982) .................................................................... 26

*Pub. Emps. for Envtl. Responsibility v. Int'l Boundary & Water Comm'n, U.S.-Mex.*,
  740 F.3d 195 (D.C. Cir. 2014) .................................................................... 16

*Roth v. Dep't of Justice*,
    642 F.3d 1161 (D.C. Cir. 2011)..................................................................... 34

*Russell v. Dep't of the Air Force*,
    682 F.2d 1045 (D.C. Cir. 1982)............................................................. 45, 46

*SafeCard Servs., Inc. v. SEC*,
    926 F.2d 1197 (D.C. Cir. 1991)............................................................ *passim*

*Schrecker v. Dep't of Justice*,
    349 F.3d 657 (D.C. Cir. 2003)............................................................. *passim*

*Senate of the Commonwealth of P.R. on Behalf of Judiciary Comm. v. Dep't of Justice*,
    823 F.2d 574 (D.C. Cir. 1987)............................................................... 49, 52

*Shapiro v. CIA*,
    247 F. Supp. 3d 53 (D.D.C. 2017)................................................................ 28

*Soghoian v. Dep't of Justice*,
    885 F. Supp. 2d 62 (D.D.C. 2012)................................................................ 29

*Spirko v. U.S. Postal Serv.*,
    147 F.3d 992 (D.C. Cir. 1998)..................................................................... 41

*Stern v. FBI*,
    737 F.2d 84 (D.C. Cir. 1984)....................................................................... 32

*Strang v. U.S. Arms Control & Disarmament Agency*,
    864 F.2d 859 (D.C. Cir. 1989)..................................................................... 26

*Sussman v. U.S. Marshals Serv.*,
    494 F.3d 1106 (D.C. Cir. 2007)............................................................. 12, 55

*Tamayo v. Dep't of Justice*,
    932 F. Supp. 342 (D.D.C. 1996)............................................................. 43, 44

*Tax Analysts v. Dep't of Justice*,
    845 F.2d 1060 (D.C. Cir. 1988), *aff'd*, 492 U.S. 136 (1989) ................................. 54

*Taylor v. Dep't of Justice*,
    257 F. Supp. 2d 101 (D.D.C. 2003)............................................................. 44

*Thelen v. Dep't of Justice*,
    169 F. Supp. 3d 128 (D.D.C. 2016)............................................................. 45

*Thompson v. Dep't of Justice*,
    851 F. Supp. 2d 89 (D.D.C. 2012)......................................................... 32, 33

*United States v. Stone*,
No. 1:19-cr-00018 (D.D.C.)………………………………………….…… *passim*

*Vaughn v. Rosen*,
523 F.2d 1136 (D.C. Cir. 1975).............................................................. 46

*Wash. Post Co. v. Dep't of Justice*,
863 F.2d 96 (D.C. Cir. 1988)...................................................... 23, 24, 26

*Wolf v. CIA*,
473 F.3d 370 (D.C. Cir. 2007)............................................................. 10

## Statutes

5 U.S.C. § 552.................................................................................. *passim*

18 U.S.C. § 401(3) ................................................................................ 5

28 U.S.C. § 533 .................................................................................. 18

28 U.S.C. § 534 .................................................................................. 18

50 U.S.C. § 3024(i)(1) ............................................................. 9, 11, 13, 14

## Rules

Fed. R. Civ. P. 56(a) ........................................................................... 10

Fed. R. Crim. P. 6(e) ............................................................... 5, 9, 11, 12

## Regulations

28 C.F.R. § 0.85 ................................................................................. 18

28 C.F.R. § 600.4(a)................................................................... 3, 7, 17

28 C.F.R. § 600.8 .......................................................................... *passim*

## Executive Orders

U.S. Intelligence Activities, Exec. Order No. 12,333,
46 Fed. Reg. 59,941 (Dec. 4, 1981)……………………………………………18

## Legislative Materials

132 Cong. Rec. H9466 (daily ed. Oct. 8, 1986)……………………………………26

## Other Authorities

Caroline Kelly, *Tallying all 36 pages of redactions in the Mueller Report*, CNN, Apr. 18, 2019,
https://www.cnn.com/2019/04/18/politics/mueller-report-redactions/index.html....................2

FOIA-processed version of the Report on the Investigation into Russian Interference In the 2016
Presidential Election,
https://www.justice.gov/oip/foia-library...................................................................................8

Report on the Investigation into Russian Interference In the 2016 Presidential Election (as
released on Apr. 18, 2019),
https://www.justice.gov/storage/report.pdf.............................................................................5

*Special Counsel Robert S. Mueller III Makes Statement on Investigation into Russian
Interference in the 2016 Presidential Election* (May 29, 2019),
https://www.justice.gov/opa/speech/special-counsel-robert-s-mueller-iii-makes-statement-
investigation-russian-interference...........................................................................................36

## TABLE OF EXHIBITS

Declaration of Vanessa Brinkmann, dated June 3, 2019……...…………………………..…Exhibit 1

     Exhibits to Brinkmann Declaration

     EPIC FOIA request, dated November 5, 2018……...……………………Exhibit A

     Leopold FOIA request, dated March 22, 2019…………………..………Exhibit B

     OIP's response letters to Plaintiffs, dated May 6, 2019…...……...……...Exhibit C

     "Report On The Investigation Into Russian Interference
     In The 2016 Presidential Election" with additional FOIA markings…….Exhibit D

Statement Before the House Permanent Select Committee on Intelligence by James B. Comey, http://www.fbi.gov/news/testimony/hpsci-hearing-titled-russian-active-measures-investigation dated March 20, 2017…………...............................................................…………………Exhibit 2

DOJ Order No. 3915-2017, Appointment of Special Counsel to Investigate Russian Interference with the 2016 Presidential Election and Related Matters, https://www.justice.gov/opa/press-release/file/967231/download, dated May 17, 2017………………………………………Exhibit 3

Letter from Attorney General, dated March 22, 2019………….………………………Exhibit 4

Letter from Attorney General, dated March 24, 2019…………………………………..…Exhibit 5

Letter from Attorney General, dated March 29, 2019…………………………………..…Exhibit 6

Letter from Attorney General, dated April 18, 2019..………………………………………Exhibit 7

## INTRODUCTION

Plaintiffs in this consolidated Freedom of Information Act ("FOIA") case, Electronic Privacy Information Center ("EPIC"), Jason Leopold, and BuzzFeed, Inc., filed FOIA requests with Defendant, the Department of Justice (the "Department" or "DOJ"), for the confidential report submitted by Special Counsel Robert S. Mueller, III to the Attorney General pursuant to 28 C.F.R. § 600.8, titled "Report On The Investigation Into Russian Interference In The 2016 Presidential Election" (the "Mueller Report" or "Report"). The Report sets forth various aspects of the Special Counsel's investigation into interference by Russian agents and entities in the 2016 presidential election and criminal cases resulting from that investigation. In so doing, the Report describes the Federal Bureau of Investigation's ("FBI") intelligence sources and methods, as well as law enforcement techniques and procedures, that were utilized during the investigation. The Report also provides details related to criminal proceedings, including grand jury information, bases for charging decisions, and information related to pending criminal cases. The Report further includes the identities of numerous individuals, including those who, as alleged in an indictment, were unwitting victims of interference efforts by a Russian entity on social media platforms, and those who were investigated but not charged with any crime.

Not surprisingly, upon reviewing the Report, the Department, with the assistance of the Special Counsel, identified certain information that required redaction before the Report could be released to the public. On April 18, 2019, the Attorney General released the public version of the Report, which contained limited redactions for: (1) grand jury information; (2) information related to investigative techniques; (3) personal privacy information, as well as deliberative material regarding charging decisions; and (4) information that could cause harm to ongoing law enforcement matters. These redactions were quite limited and the redacted Report allowed the

public to see the overwhelming majority of its content.[2]

The DOJ's Office of Information Policy ("OIP") then conducted a review of the Report for disclosure pursuant to the FOIA. As a result of its review, OIP determined that all of the information redacted from the version of the Report released by the Attorney General is exempt from disclosure pursuant to varying combinations of Exemptions 3, 5, 6, and 7 of the FOIA. Specifically, OIP concluded that disclosure of the withheld information would reveal: (1) grand jury information protected by Rule 6(e) of the Federal Rule of Criminal Procedure and Exemption 3; (2) intelligence sources and methods protected by the National Security Act and Exemption 3; (3) privacy information protected by Exemptions 6 and 7(C); (4) deliberative information regarding charging decisions protected by Exemption 5; and (5) law enforcement information protected by Exemptions 7(A), 7(B), and 7(E).

Despite the Department's expeditious review, its release of the Mueller Report with only limited redactions, and the obvious applicability of many of the exemptions based on the face of the redacted Report, Plaintiffs challenge each and every redaction. But because the Department's declaration establishes that the redacted material is protected by Exemptions 3, 5, 6, and 7, and that all segregable material has been produced to Plaintiffs, the Department has fully complied with its obligations under the FOIA. Also, because DOJ is prohibited by court order from disclosing information related to an ongoing criminal case, DOJ has not improperly withheld that information under the FOIA. The Court should therefore grant summary judgment for the Department of Justice.

---

[2] Media reports have estimated that only 8% of the 448-page Report was redacted. *See, e.g.*, Caroline Kelly, *Tallying all 36 pages of redactions in the Mueller Report*, CNN, Apr. 18, 2019, https://www.cnn.com/2019/04/18/politics/mueller-report-redactions/index html (accessed on May 30, 2019).

# BACKGROUND

## I. The Department of Justice's Investigation into Russian Interference in the 2016 Presidential Election

On March 20, 2017, in testimony before Congress, then-FBI Director James B. Comey publicly confirmed the existence of an investigation of the Russian government's efforts to interfere in the 2016 presidential election, stating:

> [T]he FBI, as part of our counterintelligence mission, is investigating the Russian government's efforts to interfere in the 2016 presidential election, and that includes investigating the nature of any links between individuals associated with the Trump campaign and the Russian government and whether there was any coordination between the campaign and Russia's efforts. As with any counterintelligence investigation, this will also include an assessment of whether any crimes were committed.

Exh. 2 (Statement Before the House Permanent Select Committee on Intelligence); *see also* Exh. 1 (Decl. of Vanessa Brinkmann ¶ 6 (June 3, 2019)).

On May 17, 2017, Acting Attorney General Rod J. Rosenstein appointed Robert S. Mueller, III to serve as Special Counsel for the investigation into Russian interference with the 2016 presidential election. *See* Exh. 3 (DOJ Order No. 3915-2017). Under the terms of his appointment, the Special Counsel was authorized to

> conduct the investigation confirmed by then-FBI Director James B. Comey in testimony before the House Permanent Select Committee on Intelligence on March 20, 2017, including: (i) any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump; and (ii) any matters that arose or may arise directly from the investigation; and (iii) any other matters within the scope of 28 C.F.R. § 600.4(a).

*Id.* The Special Counsel also was authorized "to prosecute federal crimes arising from the investigation of these matters," *id.*, and to "investigate and prosecute federal crimes committed in the course of, and with intent to interfere with, the Special Counsel's investigation, such as perjury, obstruction of justice, destruction of evidence, and intimidation of witnesses; and to conduct appeals arising out of the matter being investigated and/or prosecuted," 28 C.F.R. § 600.4(a).

At the conclusion of his work, the Special Counsel was required to "provide the Attorney General with a confidential report explaining the prosecution or declination decisions reached by the Special Counsel." 28 C.F.R. § 600.8(c). The Special Counsel concluded his work and on March 22, 2019, provided this "[c]losing documentation," *id.*—what is commonly referred to as the Mueller Report—to the Attorney General, *see* Exh. 4 (letter from the Attorney General (Mar. 22, 2019)).

## II. The Attorney General's Letters to Congress Concerning the Mueller Report

On the same day that the Special Counsel provided his Report to the Attorney General, the Attorney General informed Congress that the Special Counsel "has concluded his investigation of Russian interference in the 2016 election and related matters" and had "submitted to me today a 'confidential report explaining the prosecution or declination decisions' he has reached, as required by 28 C.F.R. § 600.8(c)." Exh. 4. In that letter, the Attorney General stated that he was "committed to as much transparency as possible" and that he "intend[ed] to determine what other information from the [Mueller Report (aside from its principal conclusions)] can be released to Congress and to the public consistent with the law, including the Special Counsel regulations, and the Department's long-standing practices and policies." *Id.*

Two days later, on March 24, 2019, the Attorney General submitted a second letter to Congress, in which he "inform[ed] [Congress] about the status of [his] initial review of the report [the Special Counsel] has prepared." *See* Exh. 5 at 1 (letter from the Attorney General (Mar. 24, 2019)). In that letter, the Attorney General reiterated that he is "mindful of the public interest in this matter," and, "[f]or that reason, [his] goal and intent is to release as much of the Special Counsel's report as [he] can consistent with applicable law, regulations, and Departmental policies." *Id.* at 4. The Attorney General explained that, among other things, certain grand jury information must be redacted before the report could be released:

Based on my discussions with the Special Counsel and my initial review, it is apparent that the report contains material that is or could be subject to Federal Rule of Criminal Procedure 6(e), which imposes restrictions on the use and disclosure of information relating to "matter[s] occurring before [a] grand jury." Fed. R. Crim. P. 6(e)(2)(B). Rule 6(e) generally limits disclosure of certain grand jury information in a criminal investigation and prosecution. *Id.* Disclosure of 6(e) material beyond the strict limits set forth in the rule is a crime in certain circumstances. *See, e.g.*, 18 U.S.C. § 401(3). This restriction protects the integrity of grand jury proceedings and ensures that the unique and invaluable investigative powers of a grand jury are used strictly for their intended criminal justice function.

*Id.* Finally, the Attorney General explained the process by which DOJ would redact the grand jury information and "any information that could impact other ongoing matters" and release the report:

Given these restrictions, the schedule for processing the report depends in part on how quickly the Department can identify the 6(e) material that by law cannot be made public. I have requested the assistance of the Special Counsel in identifying all 6(e) information contained in the report as quickly as possible. Separately, I also must identify any information that could impact other ongoing matters, including those that the Special Counsel has referred to other offices. As soon as that process is complete, I will be in a position to move forward expeditiously in determining what can be released in light of applicable law, regulations, and Departmental policies.

*Id.*

On March 29, 2019, the Attorney General submitted a third letter to Congress, in which he again reiterated his "desire to ensure that Congress and the public have the opportunity to read the Special Counsel's report." Exh. 6 at 1 (letter from the Attorney General (Mar. 29, 2019)).

On April 18, 2019, the Attorney General transmitted to Congress the redacted Report, a copy of which was also posted on DOJ's website the same day. *See* Report On The Investigation Into Russian Interference In The 2016 Presidential Election (as released on Apr. 18, 2019), https://www.justice.gov/storage/report.pdf. In the letter to Congress that accompanied the Report, the Attorney General explained that the Report was being "released to the public and to Congress to the maximum extent possible, subject only to those redactions required by law or by compelling law enforcement, national security, or personal privacy interests." Exh. 7 at 3 (letter from the

Attorney General (Apr. 18, 2019)). The released copy provided a shorthand description of the

basis for each redaction. *See id.* The Attorney General explained the rationale for the redactions:

> As you will see, most of the redactions were required to protect grand-jury secrecy
> or to comply with judicial orders (i) protecting from public release sensitive
> discovery information or (ii) prohibiting public disclosure of information bearing
> upon ongoing investigations and criminal proceedings, including *United States v.*
> *Internet Research Agency LLC, et al.* and *United States v. Roger Jason Stone, Jr.*

> With the assistance of the Special Counsel and his team, we have coordinated the
> redaction process with members of the intelligence community and with the
> prosecuting offices currently handling matters referenced in the report. We have
> clearly marked the redactions based upon the reason for withholding the redacted
> information: (1) grand-jury information . . . , the disclosure of which is prohibited
> by Federal Rule of Criminal Procedure 6(e); (2) investigative techniques . . . , which
> reflect material identified by the intelligence and law enforcement communities as
> potentially compromising sensitive sources, methods, or techniques, as well as
> information that could harm ongoing intelligence or law enforcement activities; (3)
> information that, if released, could harm ongoing law enforcement matters . . . ,
> including charged cases where court rules and orders bar public disclosure by the
> parties of case information; and (4) information that would unduly infringe upon
> the personal privacy and reputational interest of peripheral third parties . . . , which
> includes deliberation about decisions not to recommend prosecution of such parties.

*Id.*

## III.    Plaintiffs' FOIA Requests

On November 5, 2018, EPIC submitted a FOIA request to the Department of Justice. *See*

Brinkmann Decl. Exh. A (EPIC FOIA request). As relevant to this motion, EPIC sought "'[a]ll

report[s]' and 'closing documentation' prepared under 28 C.F.R. § 600.8(c), whether or not such

records were actually provided to the Attorney General or Acting Attorney General." *Id.*

On March 21, 2019, Mr. Leopold, who is a reporter for BuzzFeed, Inc., submitted a FOIA

request to the Department of Justice. *See id.* Exh. B (Leopold FOIA request). In that request,

Mr. Leopold sought from "the Office of Attorney General, the Deputy Attorney General, and the

Office of Special Counsel Robert Mueller":

> A copy of the FINAL REPORT prepared by the Office of Special Counsel Robert
> Mueller relating to the Office's investigation into: any links and/or coordination

between the Russian government and individuals associated with the campaign of President Donald Trump; and (ii) any matters that arose or may arise directly from the investigation; and (iii) any other matters within the scope of 28 C.F.R. § 600.4(a).

*Id.* Both Mr. Leopold and EPIC sought expedited processing of their FOIA requests, and, after the Special Counsel submitted the Report to the Attorney General, OIP granted the requests for expedition.[3]

## IV.    The Instant Litigation

On March 22, 2019—the same day the Attorney General first publicly acknowledged the existence of the Mueller Report—EPIC filed the instant lawsuit.  *See* Compl., Dkt. 1.  Shortly thereafter, Mr. Leopold and BuzzFeed, Inc., filed their complaint.[4]  *See* Compl., *Leopold v. Dep't of Justice*, No. 19-cv-957 (D.D.C. Apr. 4, 2019), Dkt. 1.  Both sets of Plaintiffs filed motions for preliminary injunctions seeking immediate release of the Mueller Report, which the Court denied, finding that the Plaintiffs failed to demonstrate irreparable harm and a substantial likelihood of success on the merits of their claims.  *See* Order, Dkt. 24 (denying EPIC's motion for failure to show irreparable harm); Order, *Leopold v. Dep't of Justice*, No. 19-cv-957 (D.D.C. Apr. 18, 2019), Dkt. 18 (denying Mr. Leopold and BuzzFeed, Inc.'s motion for failure to show irreparable harm and a likelihood of success on the merits of their claims).  The Court then consolidated the cases "to the extent that the plaintiffs in the above-captioned matters are seeking the release of the Special Counsel Mueller's report regarding the investigation into Russian interference in the 2016

---

[3] OIP is responsible for processing FOIA requests seeking records from within the Office of the Attorney General, the Office of the Deputy Attorney General, and certain records from the Office of the Special Counsel.  Brinkmann Decl. ¶ 1.

[4] In their complaint, Mr. Leopold and BuzzFeed, Inc. name the following department, offices, and individual as defendants: "U.S. Department of Justice," "DOJ Office of Attorney General," "DOJ Deputy Attorney General," and "DOJ Office of Special Counsel."  Compl. at 1, *Leopold v. Dep't of Justice*, No. 19-cv-957 (D.D.C. Apr. 4, 2019), Dkt. 1. Because the Office of the Attorney General, the Deputy Attorney General, and the Office of the Special Counsel are part of the Department of Justice, and because Mr. Leopold submitted the FOIA request to the Department of Justice, the Department of Justice is the only proper defendant in this matter.

United States presidential election." Order at 2, Dkt. 33. Defendant filed its answers to both

complaints on April 25, 2019. *See* Dkt. 36, 37. Following a status conference, the Court directed

DOJ to produce the FOIA-processed version of the Report to Plaintiffs by May 6, 2019, the

timeframe that DOJ proposed, and set a briefing schedule for cross-motions for summary judgment

only as to Plaintiffs' request for the Mueller Report. *See* Order at 1, 2 n.1, Dkt. 43.

## V.  DOJ's Response to Plaintiffs and Release of the FOIA-processed Version of the Mueller Report

In accordance with the Court's Order, OIP issued a response letter to each Plaintiff and

released the FOIA-processed version of the Report to Plaintiffs on May 6, 2019.[5]  Brinkmann

Decl. ¶ 12, Exh. C.  In her declaration, Vanessa Brinkmann, OIP Senior Counsel, attests that, in

coordination with the appropriate Department components, OIP conducted a thorough review of

the Report and concluded that all reasonably segregable, nonexempt information from the Report

was disclosed to Plaintiffs.  *Id.* ¶ 13.  Consistent with the redactions described by the Attorney

General in his letters to Congress, OIP determined that certain information in the Mueller Report

should be withheld from disclosure pursuant to FOIA Exemptions 3, 5, 6, and 7.  *Id.*  OIP also

determined that certain information in the Report is subject to a court order in a pending criminal

case, *United States v. Stone*, No. 1:19-cr-00018 (D.D.C.).  *Id.* ¶ 90.  As reflected in the markings

on the redacted Report itself, much of the information is protected by overlapping and often inter-

related exemptions and thus has multiple bases for withholding.  *See id.* ¶ 13.

To facilitate the explanation of the FOIA exemptions in Ms. Brinkmann's declaration, and

in an effort to provide as much information as possible about the basis for protecting the

information underlying each redaction, OIP has added codes to the margins of the FOIA-processed

<hr>

[5] The FOIA-processed version of the Report is publicly available on OIP's website at https://www.justice.gov/oip/foia-library.

Report that are in addition to the exemption labels already placed within each FOIA redaction box.[6]  *Id.* ¶ 14.  These codes correspond to particular categories of information withheld from disclosure and the corresponding FOIA exemptions.  *Id.*  The additional codes are:

| EXEMPTIONS AND CODED CATEGORIES | CATEGORY DESCRIPTION |
|---|---|
| Exemption (b)(3) | Information protected by statute |
| *(b)(3)-1* | *Federal grand jury information, prohibited from disclosure by Rule 6(e) of the Federal Rules of Criminal Procedure* |
| *(b)(3)-2* | *Intelligence sources and methods, prohibited from disclosure by the National Security Act of 1947, 50 U.S.C. § 3024(i)(1)* |
| Exemption (b)(5) | Information withheld pursuant to the deliberative process privilege |
| *(b)(5)-1* | *Deliberations about application of law to specific factual scenarios* |
| *(b)(5)-2* | *Deliberations about charging decisions not to prosecute* |
| Exemption (b)(7)(A) | Pending law enforcement proceedings |
| Exemption (b)(7)(B) | Information which would deprive a person of a right to a fair trial or impartial adjudication |
| Exemptions (b)(6) and (b)(7)(C) | Unwarranted invasions of personal privacy |
| *(b)(6)/(b)(7)(C)-1* | *Names, social media account information, and other contact information of unwitting third parties* |
| *(b)(6)/(b)(7)(C)-2* | *Names and personally-identifiable information about individuals not charged by the Special Counsel's Office* |
| *(b)(6)/(b)(7)(C)-3* | *Information concerning a subject of the investigation by the Special Counsel's Office* |
| *(b)(6)/(b)(7)(C)-4* | *Names, social media account information, contact information, and other personally-identifiable information of individuals merely mentioned in the Report* |
| Exemption (b)(7)(E) | Investigative techniques and procedures |
| *(b)(7)(E)-1* | *Information that would reveal techniques and procedures authorized for and used in national security investigations* |
| *(b)(7)(E)-2* | *Details about techniques and procedures that would reveal investigative focus and scope, and circumstances, methods and fruits of investigatory operations* |

---

[6] "During the course of coding the FOIA-processed Report, OIP identified limited instances where the exemptions cited within redaction boxes required correction."  Brinkmann Decl. ¶ 14 n.6.  "As a result, citations to Exemption 3 have been removed from the redaction boxes on page 39 in Volume 1 of the Report; citations to Exemption (7)(B) within two redaction boxes in Appendix B, and to Exemptions 6 and (7)(C) within one redaction box in Appendix D, have been removed; and a citation to Exemption (7)(E) has been added to each of two redaction boxes in Volume 1, notes 1148 & 1149."  *Id.*  "In these instances, only the exemption citations have been corrected; the placement of the redactions remains the same."  *Id.*

*Id.* The Report with the additional codes is attached as Exhibit D to Ms. Brinkmann's declaration.

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). "FOIA cases typically and appropriately are decided on motions for summary judgment." *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). Where, as here, the parties have moved and cross-moved for summary judgment, the Court conducts a *de novo* review of the agency's response to the challenged FOIA requests. *See* 5 U.S.C. § 552(a)(4)(B).

## ARGUMENT

## I. DOJ PROPERLY WITHHELD INFORMATION PURSUANT TO EXEMPTIONS 3, 5, 6, AND 7.

The Department must justify any information withheld subject to FOIA's statutory exemptions. In FOIA, Congress recognized "that legitimate governmental and private interests could be harmed by release of certain types of information and provided nine specific exemptions under which disclosure could be refused." *FBI v. Abramson*, 456 U.S. 615, 621 (1982). "Summary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007) (quotations omitted); *Murphy v. Exec. Office for U.S. Attorneys*, 789 F.3d 204, 209 (D.C. Cir. 2015) ("emphasiz[ing] that an agency's task is not herculean"). Here, because

DOJ's declaration sets forth logical and plausible justifications for invoking Exemptions 3, 5, 6, and 7 over the withheld information, the Court should grant summary judgment for Defendant.

### A. DOJ Properly Withheld Information Protected by Statute Pursuant to Exemption 3.

Exemption 3 protects records that are "specifically exempted from disclosure by [another] statute" if the relevant statute "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue" or "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3); *see Am. Civil Liberties Union v. Dep't of Def.*, 628 F.3d 612, 617–18 (D.C. Cir. 2011) (stating that Exemption 3 "incorporat[es] the protections of other shield statutes"). To withhold records under Exemption 3, an agency "need only show that the statute claimed is one of exemption as contemplated by Exemption 3 and that the withheld material falls within the statute." *Larson*, 565 F.3d at 868.

In this case, the information in the Report withheld by DOJ pursuant to Exemption 3 falls into two categories: federal grand jury information, prohibited from disclosure by Federal Rule of Criminal Procedure 6(e) (identified on the Report as "(b)(3)-1"), and information pertaining to intelligence sources and methods, prohibited from disclosure by the National Security Act of 1947, 50 U.S.C. § 3024(i)(1) (identified on the Report as "(b)(3)-2"). Brinkmann Decl. ¶ 16.

### 1. DOJ Properly Withheld Federal Grand Jury Information Under Exemption 3.

DOJ relies upon Federal Rule of Criminal Procedure 6(e) to withhold federal grand jury information under Exemption 3. Rule 6(e) expressly bars disclosure of "matter[s] occurring before the grand jury." Fed. R. Crim. P. 6(e)(2)(B).[7] "It is well-established that Rule 6(e) is a qualifying

---

[7] This bar is subject to certain exceptions, none of which is relevant here. *See* Fed. R. Crim. P. 6(e); *see also Fund for Constitutional Gov't v. Nat'l Archives & Records Serv.*, 656 F.2d 856, 868, 869 (D.C. Cir. 1981) (noting that the "scope of the secrecy is necessarily broad" and that "[t]he rule makes quite clear that disclosure of matters occurring before the grand jury is the exception and not the rule").

statute for purposes of Exemption 3." *Matthews v. FBI*, Civ. A. No. CV 15-569 (RDM), 2019 WL 1440161, at *4 (D.D.C. Mar. 31, 2019) (citing *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1113 (D.C. Cir. 2007); *Fund for Constitutional Gov't v. Nat'l Archives & Records Serv.*, 656 F.2d 856, 867 (D.C. Cir. 1981)). Because Rule 6(e) is a qualifying statute for the purposes of Exemption 3, the only remaining inquiry is whether information withheld on that basis falls within Rule 6(e). *See Larson*, 565 F.3d at 868.

The withheld grand jury information in the Report clearly falls within Rule 6(e). "Rule 6(e) applies if the disclosed material would tend to reveal some secret aspect of the grand jury's investigation, including the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, or the deliberations or questions of jurors." *Hodge v. FBI*, 703 F.3d 575, 580 (D.C. Cir. 2013) (citation omitted). DOJ withheld under this exemption only information that "explicitly discloses matters occurring before a federal grand jury" or "was explicitly connected to the operation of the federal grand jury," disclosure of which would reveal "a secret aspect of the grand jury's investigation" or "the inner workings of grand jury proceedings." Brinkmann Decl. ¶ 18.

Specifically, DOJ withheld "the names and/or identifying information of individuals who were subpoenaed or actually testified before a federal grand jury (or information that might reveal that the witness was subpoenaed or testified before the grand jury) and information provided by these individuals in their grand jury testimony."[8] *Id.* Courts have repeatedly held that information concerning witness names and their testimony is protected from disclosure under Exemption 3

---

[8] "Only information that was explicitly connected to the operation of the federal grand jury, and thus which could not be disclosed without clearly revealing the inner workings of grand jury proceedings, was protected pursuant to Exemption 3." Brinkmann Decl. ¶ 18; *see also id.* ¶ 24 (stating that "only information with a clear nexus to federal grand jury proceedings was withheld"). "Information that, while possibly relevant to the federal grand jury investigations related to the Report, could nonetheless be released without compromising the secrecy of the corresponding grand jury proceedings, has been disclosed." *Id.* ¶ 18; *see also id.* ¶ 24.

because revealing such information would reveal a secret aspect of grand jury proceedings. *See, e.g.*, *Fund for Constitutional Gov't*, 656 F.2d at 869 (finding that disclosure of information "naming or identifying grand jury witnesses [or] quoting or summarizing grand jury testimony" "would reveal matters occurring before the grand jury and is, therefore, properly exempt from disclosure pursuant to FOIA Exemption 3"); *Matthews*, 2019 WL 1440161, at *4 (finding that the "FBI properly invoked Exemption 3" because "the identities of those served with Federal Grand Jury subpoenas, the records subpoenaed, and other information on the internal workings of the Federal Grand Jury . . . clearly disclose matters occurring before the grand jury" (citation omitted)). Therefore, because release of the grand jury information in the Mueller Report "would reveal a secret aspect of the grand jury's investigation" or would "reveal[] the inner workings of grand jury proceedings," Brinkmann Decl. ¶ 18, it was properly withheld under Exemption 3.

## 2. DOJ Properly Withheld Information Pertaining to Intelligence Sources and Methods Under Exemption 3.

Section 102A(i)(1) of the National Security Act of 1947, as amended, is an Exemption 3 statute that requires the withholding of information pertaining to intelligence sources and methods.[9] Section 102A requires the Director of National Intelligence ("DNI") to "protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 3024(i)(1). "The DNI has delegated enforcement of this National Security Act mandate to the heads of the 17 agencies that constitute the Intelligence Community, and the FBI is one of those delegees." *Brick v. Dep't of Justice*, 358 F. Supp. 3d 37, 47 (D.D.C. 2019) (citation omitted); *see also* Brinkmann

---

[9] The information withheld pursuant to Exemption 3 and coded as (b)(3)-2 in the Report, is also protected by Exemption 7(E), coded as (b)(7)(E)-1 and discussed below in Part I.B.4.a. Brinkmann Decl. ¶ 16 n.8. As the D.C. Circuit has found, "the government need prevail on only one exemption; it need not satisfy both." *Am. Civil Liberties Union*, 628 F.3d at 623 n.3; *see also Larson*, 565 F.3d at 862–63 ("[A]gencies may invoke the exemptions independently and courts may uphold agency action under one exemption without considering the applicability of the other.").

Decl. ¶¶ 20–21. In this case, "the FBI assigned agents to the Special Counsel's Office who assisted the Special Counsel in conducting the investigation he supervised while at the same time remaining full-time FBI employees, retaining all of their lawful authorities." *Id.* ¶ 20. Some information about and derived from investigative activities of FBI personnel assigned to the Special Counsel's Office is contained in the Report. *Id.* The National Security Act prohibits the Department from disclosing the FBI's intelligence sources and methods. *Id.* ¶ 21; *see* 50 U.S.C. § 3024(i)(1); *Brick*, 358 F. Supp. 3d at 47.

Given this statutory prohibition on disclosure, it is "well-accepted that Section 102A(i)(1) of the National Security Act of 1947 is a withholding statute for purposes of Exemption 3." *Brick*, 358 F. Supp. 3d at 47–48 (quoting 5 U.S.C. § 552(b)(3)) (citing *CIA v. Sims*, 471 U.S. 159, 167 (1985); *DiBacco v. U.S. Army*, 795 F.3d 178, 197 (D.C. Cir. 2015)). Because Section 102A is a qualifying statute for the purposes of Exemption 3, the only remaining inquiry is whether DOJ's declaration shows that the withheld material "relates to intelligence sources and methods" or "can reasonably be expected to lead to unauthorized disclosure of intelligence sources and methods." *Judicial Watch, Inc. v. Dep't of State*, __ F. Supp. 3d __, 2019 WL 1166757, at *4 (D.D.C. Mar. 13, 2019) (quoting *Larson*, 565 F.3d at 865; *Halperin v. CIA*, 629 F.2d 144, 147 (D.C. Cir. 1980)). "[T]he government's burden is a light one," as courts have "'consistently deferred to executive affidavits predicting harm to national security, and have found it unwise to undertake searching judicial review.'" *Am. Civil Liberties Union*, 628 F.3d at 624 (quoting *Ctr. for Nat'l Sec. Studies v. Dep't of Justice*, 331 F.3d 918, 927 (D.C. Cir. 2003)).

DOJ's declaration shows that the withheld information "relates to intelligence sources and methods," *Judicial Watch*, 2019 WL 1166757, at *4, and thus satisfies its "light" burden, *Am. Civil Liberties Union*, 628 F.3d at 624. DOJ has withheld from the Report "unclassified sources and

methods relating to investigative and information gathering techniques used in investigations into interference activities emanating from Russia in the 2016 presidential election." Brinkmann Decl. ¶ 23. Information withheld under this category "reflects material identified by the intelligence and law enforcement communities as potentially compromising sensitive sources, methods, or techniques, the release of which could cause harm to ongoing intelligence gathering or law enforcement activities."[10]  *Id.*  Information about intelligence gathering techniques is routinely protected from disclosure. *See, e.g.*, *Elec. Privacy Info. Ctr. v. Dep't of Justice*, 296 F. Supp. 3d 109, 121 (D.D.C. 2017) (stating that material pertaining to "specific surveillance techniques . . . must be protected from disclosure under Section 102A(i)(1)").  And for good reason: "[d]isclosure[] of such information would present the potential for individuals and foreign agents to develop and implement countermeasures to evade detection, which would result in the loss of significant intelligence information, generally relied upon by the [intelligence community]." Brinkmann Decl. ¶ 23. Accordingly, because the withheld material "relates to intelligence sources and methods," *Judicial Watch*, 2019 WL 1166757, at *4, DOJ properly withheld that material under Exemption 3.

### B.  DOJ Properly Withheld Law Enforcement Information Under Exemption 7.

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," the disclosure of which could reasonably be expected to cause particular harms. 5 U.S.C. § 552(b)(7).  The exemption is broken down into six parts that serve as the specific basis for withholding—Exemptions 7(A) through Exemption 7(F).  *See id.*  In this case, DOJ

---

[10] "[O]nly the specific information that reveals intelligence sources and methods . . . was withheld." Brinkmann Decl. ¶ 24.  Notably, the withholdings made on this basis were so precise that if a redaction was made pursuant to numerous FOIA exemptions, OIP marked the National Security Act-protected information as "(b)(3)-2" *within* that redaction. *Id.*  Examples of this precision can be found in notes 9–18, 23–27, 35–37, 39–43, 52–54, 63–66, and 77–78 of the Report.  *See id.*

withheld information under Exemptions 7(A), 7(B), and 7(E), as well as 7(C) (together with Exemption 6), which is discussed below in Part I.C.1. *See* Brinkmann Decl. ¶¶ 39–89.

### 1. The Mueller Report Was Compiled for Law Enforcement Purposes.

As a threshold matter, "[t]o fall within any of the exemptions under the umbrella of Exemption 7, a record must have been 'compiled for law enforcement purposes.'" *Pub. Emps. for Envtl. Responsibility v. Int'l Boundary & Water Comm'n, U.S.-Mex.*, 740 F.3d 195, 202–03 (D.C. Cir. 2014) (quoting 5 U.S.C. § 552(b)(7)). "To determine whether records are compiled for law enforcement purposes, [the D.C. Circuit] has long emphasized that the focus is on how and under what circumstances the requested files were compiled and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding." *Clemente v. FBI*, 867 F.3d 111, 119 (D.C. Cir. 2017) (quotation omitted). Thus, "[t]o show that the disputed documents were 'compiled for law enforcement purposes,' the [agency] need only 'establish a rational nexus between the investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law.'" *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (quoting *Campbell v. Dep't of Justice*, 164 F.3d 20, 32 (D.C. Cir. 1998)). "Because the DOJ is an agency specializ[ing] in law enforcement, its claim of a law enforcement purpose is entitled to deference." *Ctr. for Nat. Sec. Studies*, 331 F.3d at 926 (quotations omitted).

DOJ's declaration shows that the Mueller Report plainly was "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). "The Report is a product of the investigations carried out by FBI agents, DOJ prosecutors, and Special Counsel Robert S. Mueller III, the latter of which was authorized by Acting Attorney General Rod J. Rosenstein on May 17, 2017, by Order 3915-2017." Brinkmann Decl. ¶ 40; *see also* 28 C.F.R. § 600.8(c). The function of the Special

Counsel's Office was to conduct the investigation into Russian interference with the 2016 presidential election and to prosecute federal crimes arising from the investigation and those committed in the course of, and with intent to interfere with, that investigation. *See* Exh. 3; 28 C.F.R. § 600.4(a); *see also* Brinkmann Decl. ¶ 40. The Report, which is the "[c]losing documentation" of the Special Counsel's work, summarizes the results of the investigation and "explain[s] the prosecution or declination decisions [the Special Counsel] reached." 28 C.F.R. § 600.8(c); *see also* Brinkmann Decl. ¶ 40. Courts routinely have upheld agency assertions that similar reports or documents generated in the course of an investigation were compiled for law enforcement purposes. *See, e.g.*, *Mack v. Dep't of the Navy*, 259 F. Supp. 2d 99, 108 (D.D.C. 2003) (finding that "criminal reports of investigations [that] set forth the background and status of an investigation" were "compiled for law enforcement purposes"); *Ctr. for Nat. Sec. Studies*, 331 F.3d at 926 (finding that the term "law enforcement" includes an investigation into "a breach of this nation's security," and concluding that a list of individuals detained during the investigation of the September 11 terrorist attacks was compiled for law enforcement purposes because "[a]s compiled, they constitute a comprehensive diagram of the law enforcement investigation after September 11"); *Blackwell*, 646 F.3d at 40 (finding that "documents generated in the course of investigating and prosecuting Blackwell on insider trading charges were quite obviously related to the FBI's law enforcement duties").

In addition, "the Special Counsel was assisted in his investigation by full-time FBI personnel who were assigned to [the Special Counsel's Office], but who retained all legal authorities related to their status as FBI employees." Brinkmann Decl. ¶ 41. The FBI is the primary investigative agency of the federal government, with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency, conduct

investigations and activities to protect the United States and its people from terrorism and threats to national security, and further the foreign intelligence objectives of the United States. *Id.*; *see* 28 U.S.C. §§ 533, 534; 28 C.F.R. § 0.85; U.S. Intelligence Activities, Exec. Order No. 12,333, 46 Fed. Reg. 59,941 (Dec. 4, 1981), *as implemented by* the Attorney General's Guidelines for Domestic FBI Operations. "To the extent that information in the Report derives from the authorized law enforcement activities of these FBI agents, or pertains to national security or criminal investigations that remain ongoing at [DOJ] or within the intelligence community, that information was and remains compiled for purposes consistent with the FBI's law enforcement functions." Brinkmann Decl. ¶ 41.

Accordingly, the Court should conclude that the entirety of the Report was compiled for law enforcement purposes. *See Ctr. for Nat. Sec. Studies*, 331 F.3d at 926.

### 2. DOJ Properly Withheld Information Concerning Pending Enforcement Proceedings Under Exemption 7(A).

Exemption 7(A) protects records or information "compiled for law enforcement purposes" when disclosure "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). As the D.C. Circuit has explained, "Exemption 7(A) reflects the Congress's recognition that 'law enforcement agencies ha[ve] legitimate needs to keep certain records confidential, lest the agencies be hindered in their investigations or placed at a disadvantage when it [comes] time to present their case.'" *Citizens for Responsibility & Ethics in Wash. v. Dep't of Justice*, 746 F.3d 1082, 1096 (D.C. Cir. 2014) (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978)). "To justify withholding, [an agency] must therefore demonstrate that 'disclosure (1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or reasonably anticipated.'" *Id.* (quoting *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1540 (D.C. Cir. 1993)). The latter two prongs of this analysis—pending or

18

reasonably anticipated enforcement proceedings—typically may be satisfied by pointing to a pending investigation or proceeding. *See id.* at 1098.

The information in the Report withheld by DOJ pursuant to Exemption 7(A) pertains to a number of "pending criminal and national security investigations and prosecutions." Brinkmann Decl. ¶ 43. Six criminal and national security proceedings are public and ongoing: *United States v. Internet Research Agency, LLC, et al.*, No. 1:18-cr-00032 (D.D.C.), *United States v. Netyksho, et. al.*, No. 1:18-cr-00215 (D.D.C.), *United States v. Flynn*, No. 1:17-cr-00232 (D.D.C.), *United States v. Gates*, No. 1:17-cr-00201 (D.D.C.), *United States v. Kilimnik*, No. 1-17-cr-00201 (D.D.C.), and *United States v. Stone*, No. 1:19-cr-00018 (D.D.C.). *Id.* ¶ 44. Other United States Attorney's Offices have similarly pending, related prosecutions, including *United States v. Khusyaynova*, No. 1:18-mj-00464 (E.D.V.A.), and *United States v. Morenets, et al.*, 1:18-cr-00263 (W.D. Pa.). *Id.* "The [d]efendants in some of these prosecutions remain fugitives, and there remain unindicted co-conspirators, all of whom could commit further illegal activities similar to those charged." *Id.* "Moreover, additional investigations related to the work of the [Special Counsel's Office], or targeting related actors, remain pending, under the criminal and national security authorities of DOJ." *Id.* "Some of these investigations now are being handled by U.S. Attorney's Offices and the National Security Division, as well as by the FBI in conjunction with other partners in the intelligence community."[11] *Id.*

The "[p]ortions of the Report withheld pursuant to Exemption 7(A) consist of evidence and information collected over the course of the Special Counsel or other investigations which have been used in criminal and national security enforcement proceedings against, among others, the

---

[11] An indictment contains only allegations of criminal conduct. The Department is offering no opinion about the guilt or innocence of any charged defendant. Every defendant is presumed innocent until the defendant pleads guilty or is proven guilty beyond a reasonable doubt in court.

above-listed indicted individuals and entities."[12]  *Id.* ¶ 45.  Release of this information would interfere with the Department of Justice's prosecution of these pending proceedings in three ways. *Id.* ¶¶ 45–46.

First, disclosure "risks that adversarial third parties, including hostile foreign powers, could use that information to fabricate or destroy evidence, [or] tamper with, improperly influence or intimidate witnesses, in an effort to disrupt the criminal justice process."  *Id.* ¶ 45.  These harms are the types of "interference" at which Exemption 7(A) is directed.  *See NLRB*, 437 U.S. at 236, 239–41 (permitting the NLRB to withhold potential witnesses' statements collected during an investigation because early disclosure might lead to intimidation of witnesses); *Alyeska Pipeline Serv. Co. v. EPA*, 856 F.2d 309, 312–13 (D.C. Cir. 1988) (holding that Exemption 7(A) permitted the EPA to withhold documents related to an ongoing investigation because disclosure would reveal the scope and direction of the investigation and could allow the investigation's target to destroy or alter evidence, fabricate fraudulent alibis, and intimidate witnesses).

Second, premature release of the prosecution's evidence or information against the criminal defendants "would reveal the scope, limits, and direction of the investigations and prosecutions."  Brinkmann Decl. ¶ 45.  Release of this information would harm the Government's cases in court by giving the indicted individuals and others (for example, unindicted co-conspirators) "an unprecedented insight into the strengths and weaknesses of the investigations and resulting information and evidence [used] in their indictments and criminal cases."  *Id.*  As courts have recognized, with such insight, individuals could be able to circumvent the Government's efforts to bring them to justice.  *Id.* ¶¶ 45, 46; *see Mapother*, 3 F.3d at 1543 (finding

---

[12] "None of the information that has been withheld has been officially, publicly disclosed in connection with these ongoing proceedings, except for information that may be public but that the [G]overnment may not disclose pursuant to court rules and orders."  Brinkmann Decl. ¶ 45.

that because the release of an attorney's index of all documents he deems relevant would provide "critical insights into [government's] legal thinking and strategy" the documents was "clearly covered by Exemption 7(A)"); *Kay v. FCC*, 976 F. Supp. 23, 39 (D.D.C. 1997), *aff'd*, 172 F.3d 919 (D.C. Cir. 1998) (stating that an agency may "establish interference by demonstrating that premature release of the records could give a litigant the ability to construct defenses to avoid the charges entirely" (citing *NLRB*, 437 U.S. at 241–42; *North v. Walsh*, 881 F.2d 1097, 1088 (D.C. Cir. 1989)).

Third, release of this information would be "incompatible with court orders and rules prohibiting the disclosure of information relevant to ongoing criminal cases and restricting discovery for sensitive information about ongoing national security investigations."[13]  Brinkmann Decl. ¶¶ 46, 50; *see, e.g.*, Order at 3, *United States v. Stone*, 1:19-cr-00018 (D.D.C. Feb. 15, 2019), Dkt. 36, *amended by* Minute Order (Feb. 21, 2019); L.Cr.R. 57.7.  Accordingly, because release of this information would harm the Government's cases in court, DOJ properly withheld that information under Exemption 7(A).  *See NLRB*, 437 U.S. at 232 (finding that Congress intended that Exemption 7(A) apply "whenever the Government's case in court . . . would be harmed by the premature release of evidence or information").

"Additionally, portions of the Report withheld pursuant to Exemption 7(A) consist of information, the disclosure of which is reasonably expected to interfere with pending criminal and national security investigations" that are not yet at the prosecution stage.  Brinkmann Decl. ¶ 47. Prior to and during the course of the Special Counsel's investigation, "evidence of potential criminal activity that was outside the scope of the Special Counsel's jurisdiction was periodically

---

[13] In making the redactions to the Report, DOJ "considered the local criminal rule concerning pretrial publicity" in "each charged case."  Brinkmann Decl. ¶ 50.

discovered." *Id.* "As a result, law enforcement authorities, principally the FBI and other DOJ components, conducted further investigative activities outside the auspices of the [Special Counsel's Office]." *Id.* "In addition, the Special Counsel's investigation into the Russian actors' efforts to influence the 2016 presidential election also has broader implications for ongoing national security investigations conducted by the FBI and its intelligence community partners." *Id.*

Releasing non-public details about the specifics and contours of the Special Counsel's Office investigatory activities "would risk undermining these ongoing criminal and national security investigations." *Id.* "Generally, an agency may establish interference [with an investigation] by showing that release of the records would reveal the scope, direction and nature of its investigation." *Kay*, 976 F. Supp. at 38. Here, in addition to the harms described above, "[t]hese ongoing criminal and national security investigations would be adversely affected by revealing information or activities that are (or are not) of interest to investigators, areas where there may be gaps in investigators' knowledge about such information or activities that could be exploited by targets and hostile foreign powers, who investigators have already spoken with (or who they have not spoken with), what evidence or intelligence has been gathered (or not gathered), what exactly was said (or not) or gathered (or not), and whether individuals or entities are (or are not) of investigative interest." Brinkmann Decl. ¶ 48. "Further, disclosing information regarding evidence or intelligence already known or obtained by DOJ would risk influencing, compromising, or tainting information that may be obtained by other sources, risking fabrication or falsification of future testimony, destruction or alteration of evidence, or attempts to intimidate or influence potential sources." *Id.*; *see also Cable News Network, Inc. v. FBI*, 298 F. Supp. 3d 124, 130 (D.D.C. 2018), *appeal dismissed*, No. 18-5041, 2018 WL 4619108 (D.C. Cir. July 5, 2018)

(finding that the FBI properly withheld records under Exemption 7(A) that "would highlight particular activities, interactions, and individuals," which could assist subjects or targets of the investigation in shaping their testimony).

Finally, disclosure of "the specific techniques and procedures used by investigators and the specific circumstances of their use" would also "create the risk of targets, subjects, and adversaries—including, in the case of national security investigations, hostile foreign powers—undermining or developing countermeasures to thwart these techniques."[14] Brinkmann Decl. ¶ 49. Accordingly, because release of this information could reasonably be expected to interfere with pending criminal and national security investigations, DOJ properly withheld that information under Exemption 7(A). *See Citizens for Responsibility & Ethics in Wash.*, 746 F.3d at 1096 ("[S]o long as the investigation continues to gather evidence for a possible future criminal case, and that case would be jeopardized by the premature release of that evidence, Exemption 7(A) applies." (quotation omitted)).

### 3. DOJ Properly Withheld Information Which Would Deprive a Person of a Right to a Fair Trial Under Exemption 7(B).

Exemption 7(B) protects from disclosure "records or information compiled for law enforcement purposes [the disclosure of which] would deprive a person of a right to a fair trial or an impartial adjudication." 5 U.S.C. § 552(b)(7)(B). The purpose of the exemption is to "prevent disclosures from conferring an unfair advantage upon one party to an adversary proceeding or leading to prejudicial publicity in pending cases that might inflame jurors." *Wash. Post Co. v. Dep't of Justice*, 863 F.2d 96, 101 (D.C. Cir. 1988) (citation omitted). To withhold information pursuant to Exemption 7(B), the D.C. Circuit has articulated a two-part standard that must be met:

---

[14] For these reasons, this information is also protected by Exemption 7(E), and the risk of circumvention of these techniques and procedures is discussed in more detail below in Part I.B.4. Brinkmann Decl. ¶ 49 n.12.

"(1) that a trial or adjudication is pending or truly imminent; and (2) that it is more probable than not that disclosure of the material sought would seriously interfere with the fairness of those proceedings." *Id.* at 102.

"The portions of the Report withheld pursuant to Exemption 7(B) consist of information pertaining to Roger Stone and/or his pending criminal case in the U.S. District Court for the District of Columbia."[15]  Brinkmann Decl. ¶ 53.  Mr. Stone's case is currently scheduled for trial on November 5, 2019.  *See* Scheduling Order at 2, *United States v. Stone*, 1:19-cr-00018 (D.D.C. Mar. 15, 2019), Dkt. 65; Brinkmann Decl. ¶ 53.  As such, the withheld information relates to an imminent trial and thus meets the first necessary standard for invoking Exemption 7(B).  *See* Brinkmann Decl. ¶ 53; *see also Wash. Post*, 863 F.2d at 102.

In addition, given the "high-profile media coverage and intense public scrutiny" of the *Stone* case since his indictment in January 2019, Brinkmann Decl. ¶ 54, disclosure of the information in the Report about Mr. Stone or his case would seriously interfere with the fairness of that trial, *see Wash. Post*, 863 F.2d at 102.  As the presiding judge in Mr. Stone's case recognized, the case has "already received and is going to continue to receive a great deal of public attention."  Tr. of Status Conf. at 16:2–4, *United States v. Stone*, 1:19-cr-00018 (D.D.C. Feb. 1, 2019), Dkt. 23; *see also id.* at 16:18–20 ("In this case, I'm sure it's no surprise to anyone, that I've noticed that there's already been considerable publicity . . . .").  In light of that public attention, the *Stone* Court considered entering an order pursuant to Local Criminal Rule 57.7[16] that would

---

[15] DOJ also is prohibited by Court order from disclosing this information, as discussed below in Part II.  Brinkmann Decl. ¶¶ 54, 90.

[16] Local Criminal Rule 57.7(b)(1) states that it is the duty of a lawyer or law firm "not to release or authorize the release of information or opinion which a reasonable person would expect to be disseminated by means of a public communication, in connection with pending or imminent criminal litigation with which the lawyer or the law firm is associated, if there is a reasonable likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice."  LCrR 57.7(b)(1).  This rule applies to all charged cases, not just to the case of Mr. Stone.  As noted above, violation of this rule would harm the ongoing investigation, and the Government's

"require all parties and counsel for both sides to . . . refrain from making further statements to the media or in public settings that are substantially likely to have a materially prejudicial effect on the case." *Id.* at 17:15–20. The Court stated that such an order may be necessary to "safeguard the defendant's right to a fair trial, and also to ensure that we will have the ability to seat a jury that has not been tainted by pretrial publicity in this matter." *Id.* at 17:11–14; *see also* Brinkmann Decl. ¶ 55.

Indeed, a few weeks later, because of the "the widespread media coverage this case has already received," the *Stone* Court entered an order that directed "[c]ounsel for the parties and the witnesses [to] refrain from making statements to the media or in public settings that pose a substantial likelihood of material prejudice to this case." Order at 3, *United States v. Stone*, 1:19-cr-00018 (D.D.C. Feb. 15, 2019), Dkt. 36, *amended by* Minute Order (Feb. 21, 2019); *see also* Brinkmann Decl. ¶ 54. The Court found that the order was necessary to "to safeguard the defendant's right to a fair trial [and] to ensure that the Court has the ability to seat a jury that has not been tainted by pretrial publicity." Order at 3, *United States v. Stone*, 1:19-cr-00018 (D.D.C. Feb. 15, 2019), Dkt. 36, *amended by* Minute Order (Feb. 21, 2019).

DOJ's declarant has likewise recognized the "extraordinary media attention surrounding [Mr. Stone's] case," as well as "the litigation that already has ensued concerning pretrial publicity in the case, and the court's multiple orders further restricting public statements in the case," and determined that the release of any information regarding Mr. Stone or his case contained in the Report could influence potential jurors and seriously interfere with the fairness of Mr. Stone's impending jury trial. Brinkmann Decl. ¶ 56. DOJ withheld information governed by the local rule

---

adherence to the rule also justifies withholding under Exemption 7(A). *See supra* Part I.B.2. Local Criminal Rule 57.7(c) goes further, however, and gives the Court authority "[i]n a widely publicized or sensational criminal case, . . . [to] issue a special order governing such matters as extrajudicial statements by parties, witnesses and attorneys likely to interfere with the rights of the accused to a fair trial by an impartial jury." LCrR 57.7(c).

and court orders and determined that no additional information regarding Mr. Stone's case could be released without impacting his right to a fair trial or running afoul of the letter and the spirit of the Court's rulings concerning public statements by the parties. *Id.* ¶ 54. Accordingly, because release of information about Mr. Stone or his case could seriously interfere with the fairness of his impending jury trial, DOJ properly withheld this information under Exemption 7(B). *See Wash. Post*, 863 F.2d at 102.

### 4. DOJ Properly Withheld Information Concerning Investigative Techniques and Procedures Under Exemption 7(E).

Exemption 7(E) authorizes withholding of information compiled for law enforcement purposes if release of the information "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Congress intended that Exemption 7(E) protect law enforcement techniques and procedures from disclosure, as well as techniques and procedures used in all manner of investigations after crimes or other incidents have occurred. *See Henderson v. Office of the Dir. of Nat'l Intelligence*, 151 F. Supp. 3d 170, 176 (D.D.C. 2016) (citing 132 Cong. Rec. H9466 (daily ed. Oct. 8, 1986)). The range of "law enforcement purposes" covered by Exemption 7(E) includes not only traditional criminal law enforcement duties, but also proactive steps taken by the Government designed to maintain national security. *See Ctr. for Nat'l Sec. Studies*, 331 F.3d at 926; *Am. Civil Liberties Union of S. Cal. v. U.S. Citizenship & Immigration Servs.*, 133 F. Supp. 3d 234, 242 (D.D.C. 2015) ("This Circuit has held that national security is within the realm of law enforcement purposes sufficient to justify withholding based on Exemption 7." (citing *Strang v. U.S. Arms Control & Disarmament Agency*, 864 F.2d 859, 862 (D.C. Cir. 1989); *Pratt v. Webster*, 673 F.2d 408, 420 (D.C. Cir. 1982)).

"There is some disagreement in the courts as to the proper reading of Exemption 7(E)"—specifically, whether the "risk circumvention of the law" requirement that "clearly applies to records containing guidelines . . . also applies to records containing 'techniques and procedures.'" *Citizens for Responsibility & Ethics in Wash. v. Dep't of Justice*, 160 F. Supp. 3d 226, 241–42 (D.D.C. 2016) (quoting 5 U.S.C. § 552(b)(7)(E)).  Even if the requirement does apply, "Exemption 7(E) 'sets a relatively low bar for the agency to justify withholding.'" *Associated Press v. FBI*, 265 F. Supp. 3d 82, 99 (D.D.C. 2017) (quoting *Blackwell*, 646 F.3d at 41).  The agency need not make a "highly specific . . . showing" of risk of circumvention of the law, but only "demonstrate logically how the release of the requested information might create" such a risk.  *Blackwell*, 646 F.3d at 42 (quoting *Mayer Brown, LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009)).  Nor must the agency demonstrate "an actual or certain risk of circumvention" of the law; rather the agency need only show "the chance of a reasonably expected risk."  *Mayer Brown*, 562 F.3d at 1193.

As explained above, information about and derived from the investigative activities of FBI and DOJ personnel, including those assigned to the Special Counsel's Office, are contained in the Report.  Brinkmann Decl. ¶¶ 20, 82.  The information in the Report withheld by DOJ pursuant to Exemption 7(E) falls into two categories: information that would reveal techniques and procedures authorized for and used in national security investigations (identified on the Report as "(b)(7)(E)-1"), and details about techniques and procedures that would reveal investigative focus and scope, and circumstances, methods and fruits of investigatory operations (identified on the Report as "(b)(7)(E)-2").  *Id.* ¶ 82.

### a. DOJ Properly Withheld Information that Would Reveal Techniques and Procedures Authorized for and Used in National Security Investigations Under Exemption 7(E).

The information in the Report withheld under Exemption 7(E) "pertains to the specific circumstances regarding the use of techniques and procedures that are authorized and used by DOJ,

including prosecutors and the FBI, in national security investigations."[17]  Brinkmann Decl. ¶ 83.

The "context in which these techniques are discussed" in the Report "reveals specific details about

when during an investigation a specific technique or procedure might be utilized, the types of

information that might be sought from use of the technique, and the concurrent limitations on its

use and/or utility."  *Id.* ¶ 84.  These discussions may also reveal what techniques might be used

together, as well as "specific details and non-public information about how the techniques are

implemented."  *Id.* ¶ 85.  "These techniques and procedures, more specifically, the specific

circumstances concerning their use, are meant to operate clandestinely."  *Id.* ¶ 84.  Courts have

recognized that when aggregated, as it is here, this information would illustrate an investigative

roadmap of how law enforcement conducts a national security investigation.  *Id.* ¶ 85; *see Shapiro

v. CIA*, 247 F. Supp. 3d 53, 72 (D.D.C. 2017) (discussing the "mosaic" theory).

Disclosure of the techniques used in the Special Counsel's investigation would have

"significant ramifications for their use in other pending and future national security

investigations."  Brinkmann Decl. ¶ 83.  Because detailed information about the circumstances of

the use of the techniques—including "how, when, and why such techniques and procedures are

employed, and the capabilities of these techniques and procedures—are not publicly known," *id.*

¶ 84, disclosure of that information "would give sophisticated criminals, including foreign agents

of the type discussed in the Report, information necessary to change their behavior and implement

effective countermeasures to circumvent the FBI's investigative and intelligence-gathering efforts,

as well as techniques of its intelligence community partners," *id.* ¶ 85.  "Such disclosure would

have ramifications for the use of these techniques and procedures in future investigations,

---

[17] The information withheld pursuant to Exemption 7(E) and coded as (b)(7)(E)-1 in the Report, is also protected by
Exemption 3, coded as (b)(3)-2 and discussed above in Part I.A.2.  Brinkmann Decl. ¶¶ 82 n.20, 86.

including counterintelligence and counterterrorism investigations." *Id.* ¶ 85. Courts have protected against disclosure of law enforcement techniques for similar reasons. *See, e.g.*, *Soghoian v. Dep't of Justice*, 885 F. Supp. 2d 62, 75 (D.D.C. 2012) (protecting electronic surveillance techniques because release of information showing "what information is collected, how it is collected, and more importantly, when it is *not* collected" could allow criminals to evade detection); *Lewis-Bey v. Dep't of Justice*, 595 F. Supp. 2d 120, 138 (D.D.C. 2009) (protecting details of electronic surveillance techniques, including the "circumstances under which the techniques were used, the specific timing of their use, and the specific location where they were employed," because disclosure of this information "would illustrate the agency's strategy in implementing these specific techniques, and, in turn, could lead to decreased effectiveness in future investigations by allowing potential subjects to anticipate . . . and identify such techniques as they are being employed" (citation omitted)). Thus, to the extent that the Department must show that disclosure of law enforcement techniques and procedures risks circumvention of the law, the Department has met this "relatively low bar" and this information is protected from disclosure under Exemption 7(E). *Blackwell*, 646 F.3d at 42.

### b. DOJ Properly Withheld Details About Techniques and Procedures that Would Reveal Investigative Focus and Scope, and Circumstances, Methods and Fruits of Investigatory Operations Under Exemption 7(E).

The information in the Report withheld under Exemption 7(E) also pertains to "details about the use of a variety of sensitive techniques and procedures utilized by the FBI agents and prosecutors investigating Russian interference in the 2016 presidential election and in other cases." Brinkmann Decl. ¶ 87. The Report describes the "exact circumstances under which the techniques were utilized; the methods of investigative or information gathering employed, including the specific dates and times and targets of information gathering techniques; and the actual fruits of

the investigative operations or evidence relied upon by the [Special Counsel's Office]." *Id.* ¶ 88.

"Release of this information would disclose the methods employed by investigators and prosecutors in the collection and analysis of information, including how and from which sources they collected particular types of information and the methodologies employed to analyze it once collected." *Id.* ¶ 87. More specifically, "release of the information withheld in this category would reveal specific non-public details about the use of techniques and procedures regarding investigative focus; information about the gathering and/or analysis of information; information directly implicating investigative targets, dates, and scope of investigatory operations; and information that would reveal investigative strategies for utilizing particular information gathered." *Id.* Such information is properly withheld under Exemption 7(E). *See Poitras v. Dep't of Homeland Sec.*, 303 F. Supp. 3d 136, 159 (D.D.C. 2018) (finding that the agency's explanation that disclosure of "the investigative focus of specific FBI investigations" would "reveal the scope of the FBI's programs and the strategies it plans to pursue in preventing and disrupting criminal activity" was sufficient to withhold that information under Exemption 7(E)).

To the extent that the Department must show that disclosure of law enforcement techniques and procedures risks circumvention of the law, the Department has met this "relatively low bar." *See Blackwell*, 646 F.3d at 42. Disclosure of this information risks circumvention of the law by the subjects of other investigations. Brinkmann Decl. ¶ 87. "While it is well-known that the FBI and the [intelligence community] utilize a variety of investigative and information-gathering techniques in law enforcement investigations, the exact details of how given techniques are implemented (investigatively and/or technically) are not public." *Id.* ¶ 88. "Any release of the circumstances under which these techniques and procedures were implemented would undermine the FBI's and prosecutors' effectiveness, as well as those of intelligence community partners, in

ongoing investigations and prosecutions and its future use.," *id.*, by "enabl[ing] the subjects of other investigations to identify the precise timing and circumstances when these or similar currently-used techniques and procedures are being employed, evaluate the capabilities of these techniques and procedures, and take evasive actions or countermeasures to circumvent their effectiveness," *id.* ¶ 87. Providing such "valuable information to investigative targets concerning the circumstances in which specific techniques were used" would "diminish[] the relative utility of these techniques" and would "undermin[e] the usefulness of the information collected." *Id.* ¶ 87. Accordingly, because release of this information "might create" a risk of circumvention of the law by criminal and foreign agents, this information is protected from disclosure under Exemption 7(E). *Blackwell*, 646 F.3d at 42.

### C. DOJ Properly Withheld Information Related to Individuals' Personal Privacy Under Exemptions 5, 6, and 7(C).

The Department withheld information that would unduly infringe upon individuals' personal privacy interests, which includes deliberations about charging decisions. Specifically, DOJ withheld identifying information of unwitting third parties, individuals who were not charged with any crime, and individuals who were merely mentioned in the Report, as well as information related to a subject of the investigation, under Exemption 6 and 7(C). Relatedly, DOJ withheld deliberations concerning charging decisions under Exemption 5.

#### 1. DOJ Properly Withheld Privacy Information Under Exemptions 6 and 7(C).

Exemptions 6 and 7(C) protect the privacy of individuals from unwarranted invasion. Exemption 6 allows the withholding of information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) is the law enforcement counterpart to Exemption 6 and protects from disclosure "law enforcement records

or information" that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Information protected by these exemptions "includes the prosaic (*e.g.*, place of birth and date of marriage) as well as the intimate and potentially embarrassing." *Painting & Drywall Work Pres. Fund, Inc. v. Dep't of Hous. & Urban Dev.*, 936 F.2d 1300, 1302 (D.C. Cir. 1991); *see also Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763 (1989) (rejecting a "cramped notion of personal privacy" under the FOIA's exemptions and emphasizing that "privacy encompass[es] the individual's control of information concerning his or her person"). Privacy is of particular importance in the FOIA context because a disclosure required by the FOIA is a disclosure to the public at large. *See Painting & Drywall*, 936 F.2d at 1302 (finding that if information "must be released to one requester, it must be released to all, regardless of the uses to which it might be put").

Both Exemption 6 and 7(C) "require agencies and reviewing courts to 'balance the privacy interests that would be compromised by disclosure against the public interest in the release of the requested information.'" *Braga v. FBI*, 910 F. Supp. 2d 258, 266 (D.D.C. 2012) (quoting *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993)). "The privacy interest at stake belongs to the individual, not the government agency, and 'individuals have a strong interest in not being associated unwarrantedly with alleged criminal activity.'" *Thompson v. Dep't of Justice*, 851 F. Supp. 2d 89, 99 (D.D.C. 2012) (quoting *Stern v. FBI*, 737 F.2d 84, 91–92 (D.C. Cir. 1984)) (citing *Reporters Comm.*, 489 U.S. at 763–65). The D.C. Circuit has held "categorically that, unless access to the names . . . of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1206 (D.C. Cir. 1991).

On the other side of the balance, the "only relevant 'public interest in disclosure' to be weighed in this balance is the extent to which disclosure would serve 'the core purpose of the FOIA,' which is 'contribut[ing] significantly to public understanding *of the operations or activities of the government.*'" *Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994) (quoting *Reporters Comm.*, 489 U.S. at 775); *see also Kishore v. Dep't of Justice*, 575 F. Supp. 2d 243, 256 (D.D.C. 2008). "This inquiry, moreover, should focus not on the general public interest in the subject matter of the FOIA request, but rather on the incremental value of the specific information being withheld." *Schrecker v. Dep't of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003) (citing *King v. Dep't of Justice*, 830 F.2d 210, 234 (D.C. Cir. 1987)). "It is a FOIA requester's obligation to articulate a public interest sufficient to outweigh an individual's privacy interest, and the public interest must be significant." *Thompson*, 851 F. Supp. 2d at 99 (citing *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004)).

Although Exemptions 6 and 7(C) both require agencies and reviewing courts to undertake the same weighing of interests, the balance under Exemption 7(C) "tilts more strongly toward nondisclosure" because its "privacy language is broader than the comparable language in Exemption 6." *Bartko v. Dep't of Justice*, 79 F. Supp. 3d 167, 172 (D.D.C. 2015) (quoting *Reporters Comm.*, 489 U.S. at 756); *compare* 5 U.S.C. § 552(b)(6) (protecting from disclosure information which "*would* constitute a *clearly unwarranted* invasion of personal privacy" (emphasis added)), *with* 5 U.S.C. § 552(b)(7)(C) (protecting from disclosure information that "*could reasonably be expected to* constitute an unwarranted invasion of personal privacy" (emphasis added)). These phrasing differences reflect Congress's choice to provide "greater protection" to law enforcement materials than to "personnel, medical, and other similar files." *Bartko*, 79 F. Supp. 3d at 172 (citing *Reporters Comm.*, 489 U.S. at 756); *Martin v. Dep't of*

*Justice*, 488 F.3d 446, 456 (D.C. Cir. 2007) ("The Supreme Court has observed that the statutory privacy right protected by Exemption 7(C) is not so limited as others." (citing *Reporters Comm.*, 489 U.S. at 762)). Thus, Exemption 7(C) "establishes a lower bar for withholding material [than Exemption 6]." *Am. Civil Liberties Union v. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011).

Here, because the Mueller Report was compiled for law enforcement purposes, *see supra* Part I.B.1, DOJ applied Exemption 7(C) to protect personal privacy information in the Report, Brinkmann Decl. ¶ 60; *see also id.* ¶¶ 40, 41. And because the entire record at issue was compiled for law enforcement purposes, the Court need only apply the 7(C) balancing test, which tilts further in favor of non-disclosure. *See Roth v. Dep't of Justice*, 642 F.3d 1161, 1173 (D.C. Cir. 2011) (finding "no need to consider Exemption 6 separately [where] all information that would fall within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C)").

In conducting this balancing test, DOJ determined that release of the withheld information could reasonably be expected to constitute an unwarranted invasion of the privacy of individuals mentioned in the Report, and concluded that the information is protected from disclosure under Exemption 7(C). Brinkmann Decl. ¶ 60. Moreover, even though it was unnecessary for DOJ to do so, *see Bartko*, 79 F. Supp. 3d at 172, DOJ also determined that the higher Exemption 6 balancing standard is met for all of the information withheld to protect individuals' privacy, Brinkmann Decl. ¶ 60.

The information in the Report withheld by DOJ pursuant to Exemptions 6 and 7(C) falls into four categories: names, social media account information, and other contact information of unwitting third parties (identified on the Report as "(b)(6)/(b)(7)(C)-1"); names and personally-identifiable information about individuals not charged by the Special Counsel's Office (identified on the Report as "(b)(6)/(b)(7)(C)-2"); information concerning a subject of the investigation by the

Special Counsel's Office (identified on the Report as "(b)(6)/(b)(7)(C)-3"); and names, social media account information, contact information, and other personally-identifiable information of individuals merely mentioned in the Report (identified on the Report as "(b)(6)/(b)(7)(C)-4"). Brinkmann Decl. ¶ 62.

### a. DOJ Properly Withheld Names, Social Media Account Information, and Other Contact Information of Unwitting Third Parties Under Exemptions 6 and 7(C).

The first category of privacy-based withholdings comprises names, social media account information, and other contact information that could reveal the identities of third parties who were "unknowingly involved in election interference efforts carried out by Russian nationals." Brinkmann Decl. ¶ 63. The Special Counsel concluded that the "Internet Research Agency (IRA)," a Russian entity, "carried out . . . a social media campaign designed to provoke and amplify social discord in the United States." *Id.* Exh. D at Vol. 1 at 4 (Report). "The publicly-released information in the Report extensively documents the operations in the United States involving fake IRA-controlled social media accounts, including Facebook, YouTube, and Twitter, posing as American citizens, or pretending to be affiliated with U.S. political or grassroots organizations." *Id.* ¶ 63. "In connection with these operations, the Report identifies numerous authentic social media users, reporters, and individuals associated with the Trump campaign who[,] apparently not knowing that the IRA-controlled accounts and personas were fake[,] were contacted by, or interacted or engaged with the IRA's social media activities." *Id.* In addition, "[t]he publicly-released information in the Report also extensively documents the Main Intelligence Directive of the General Staff (GRU)'s computer intrusion operations, including the GRU hacking directed at the Clinton campaign and dissemination of hacked materials through the fictitious online personas DCLeaks and Guccifer 2.0." *Id.* "In connection with discussions of these operations, the Report identifies reporters who—again, apparently not knowing that the GRU-controlled personas were

fake—were contacted by DCLeaks and Guccifer 2.0 as a part of GRU's efforts to promote release

of the hacked materials." *Id.* These individuals were unwittingly used by—and in that sense,

"were essentially victimized by—interference efforts emanating from Russia, because they

apparently did not know that their contacts or activities involved Russian nationals."[18] *Id.* DOJ

withheld those individuals' names and identifying information, including, in limited instances, the

names of Facebook groups,[19] under Exemptions 6 and 7(C). *Id.* ¶¶ 63, 64.

In assessing whether there is a privacy interest in this information, DOJ determined that

given "the intense public interest surrounding the [Special Counsel's Office's] work as well as the

public and media scrutiny, and partisan attacks, that occur when any new fact is made public,

disclosure of the identities and associated social media/contact information of these individuals,

who are merely victims of interference operations emanating from Russia, would certainly subject

these individuals to unwarranted attention, harassment and potential harm" and that these

individuals therefore have a "significant privacy interest." *Id.* ¶ 65. For similar reasons, courts

have consistently found that Exemption 7(C) applies to the names and identifying information of

victims. *See, e.g.*, *Boehm v. FBI*, 948 F. Supp. 2d 9, 30 (D.D.C. 2013); *McGehee v. Dep't of

Justice*, 800 F. Supp. 2d 220, 233–34 (D.D.C. 2011); *Banks v. Dep't of Justice*, 757 F. Supp. 2d

13, 19 (D.D.C. 2010); *Kishore*, 575 F. Supp. 2d at 256–57; *Elliott v. FBI*, Civ. A No. 06-1244,

2007 WL 1302595, at *6 (D.D.C. May 2, 2007); *Coleman v. FBI*, 13 F. Supp. 2d 75, 79 (D.D.C.

1998). Thus, information identifying the third-party victims mentioned in the Report is

---

[18] As reflected in the Special Counsel's statement on May 29, 2019, indictments returned by the Special Counsel contain allegations, and in the publicly released report, neither the Special Counsel nor the Department were commenting on the guilt or innocence of any charged defendant. *Special Counsel Robert S. Mueller III Makes Statement on Investigation into Russian Interference in the 2016 Presidential Election* (May 29, 2019), *available at* https://www.justice.gov/opa/speech/special-counsel-robert-s-mueller-iii-makes-statement-investigation-russian-interference (accessed May 31, 2019).

[19] DOJ withheld the names of Facebook groups that can be used to identify the individuals who are members of and interact within each group. Brinkmann Decl. ¶ 64.

"'categorically exempt' from disclosure under Exemption 7(C) in the absence of an overriding public interest in its disclosure." *Banks*, 757 F. Supp. 2d at 18 (quoting *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 896 (D.C. Cir. 1995)).

In assessing the public interest in disclosing the names and identifying information of these unwitting third parties, DOJ considered the mission and role of DOJ and whether revealing the identities of these individuals would shed light on the operations and activities of DOJ. Brinkmann Decl. ¶ 66. DOJ found that releasing the individuals' identities would "in no way enhance the public's understanding of how the Department carries out its duties, particularly in light of the wealth of information that has been disclosed about the results of the [Special Counsel's] investigation." *Id.* Because these individuals have a significant privacy interest and release of their identifying information would not further enlighten the public about the DOJ's performance of its duties, DOJ properly withheld that information under Exemptions 6 and 7(C). *See Fitzgibbon v. CIA*, 911 F.2d 755, 768 (D.C. Cir. 1990) (finding that the agency properly withheld an individual's name from an FBI report because "there is no reasonably conceivable way in which the release of the one individual's name . . . would allow citizens to know 'what their government is up to'" (quoting *Reporters Comm.*, 489 U.S. at 772)); *see also Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989) (stating that "something, even a modest privacy interest, outweighs nothing every time").

### b. DOJ Properly Withheld Names and Personally-identifiable Information About Individuals Not Charged by the Special Counsel's Office Under Exemptions 6 and 7(C).

The second category of privacy-based withholdings comprises names and other identifying information that could reveal the identities of individuals who were subjects of the Special Counsel's investigation but who were ultimately not charged with any crime. Brinkmann Decl. ¶ 68. "The Report details charges that were considered or were potentially applicable to these

individuals, but which ultimately were not pursued by [the Special Counsel's Office]." *Id.* "In so doing, the Report also provides information relevant to the Special Counsel's evaluation, including specific facts and details about the individuals' actions." *Id.* When those circumstantial details, in conjunction with information that is already publicly known, would reveal the identities of these individuals, those details were withheld under Exemptions 6 and 7(C).[20] *Id.*

As the D.C. Circuit has found, "revelation of the fact that an individual has been investigated for suspected criminal activity represents a significant intrusion on that individual's privacy cognizable under Exemption 7(C)." *Fund for Constitutional Gov't*, 656 F.2d at 865; *see also Bast v. Dep't of Justice*, 665 F.2d 1251, 1254 (D.C. Cir. 1981) (finding that documents that "reveal allegations of wrongdoing by suspects who never were prosecuted . . . implicate privacy rights"); *Albuquerque Pub. Co. v. Dep't of Justice*, 726 F. Supp. 851, 855 (D.D.C. 1989) (finding that "individuals have a substantial privacy interest in information that either confirms or suggests that they may have been subject to a criminal investigation" (citations omitted)). "The degree of intrusion is indeed potentially augmented by the fact that . . . the investigation [is] one which attracts as much national attention as those conducted by the [Watergate Special Prosecution Force.]" *Fund for Constitutional Gov't*, 656 F.2d at 865. In this case, DOJ recognized the "stigmatizing effect that being associated with a criminal investigation carries," which, because of the national attention to the work of the Special Counsel's Office, would be magnified. Brinkmann Decl. ¶ 69. "Given the intense public interest surrounding the [Special Counsel's Office's] work[,] as well as the public and media scrutiny, and partisan attacks, that occur when any new fact is made public," DOJ determined that disclosure of the identities of individuals who were ultimately

---

[20] The information withheld pursuant to Exemption 6 and 7(C) and coded as (b)(6)/(7)(C)-2 in the Report is also protected by Exemption 5, coded as (b)(5)-2 and discussed below in Part I.C.2.b. Brinkmann Decl. ¶ 68 n.16.

not charged with any crime would subject them to significant embarrassment, reprisal, unwarranted harassment, and reputational or even physical harm. *Id.* In light of these harms, DOJ concluded that these individuals have a "significant" privacy interest in preventing disclosure of this information. *Id.* ¶ 71.

On the public interest side of the balance, disclosure of this information is warranted only if it is "'necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity.'" *Schrecker*, 349 F.3d at 661 (quoting *SafeCard*, 926 F.2d at 1206); *see also Fund for Constitutional Gov't*, 656 F.2d at 861–66 (withholding identities of persons investigated but not charged, unless "exceptional interests militate in favor of disclosure"). There is no such evidence here. As DOJ found, although the "release of the individuals' identities would be something that the public at large is generally interested in, disclosure of the identities of uncharged individuals in this one investigation would not significantly enhance the public's understanding of how the Department carries out its duties." Brinkmann Decl. ¶ 70. This is particularly so given the wealth of information that has been disclosed about the results of the Special Counsel's investigation and about charges set forth in criminal indictments that were obtained by the Special Counsel's Office against numerous other individuals and entities. *Id.*; *see also Judicial Watch, Inc. v. Nat'l Archives & Records Admin.*, 876 F.3d 346, 350 (D.C. Cir. 2017) (finding that the public interest in a draft indictment against Hillary Clinton "is greatly reduced . . . because of the voluminous information already in the public domain about the Independent Counsel's investigation of President and Mrs. Clinton"). Accordingly, because the significant privacy interests of these uncharged individuals outweighs the general public interest in disclosure of their names and identifying information, DOJ properly withheld this information under Exemptions 6 and 7(C). *See* Brinkmann Decl. ¶ 71.

### c. DOJ Properly Information Concerning a Subject of the Investigation Under Exemptions 6 and 7(C).

The third category of privacy-based withholdings comprises information concerning a subject of the Special Counsel's investigation. Brinkmann Decl. ¶ 72. Within this category, DOJ has protected "non-public information pertaining to Roger Stone and/or his pending criminal case in the United States District Court for the District of Columbia." *Id.* "The redactions in this category include information pertaining to Mr. Stone, but also to other individuals discussed in connection with the facts related to Mr. Stone's criminal case."[21] *Id.*

The D.C. Circuit has recognized that "Exemption 7(C) 'affords broad[ ] privacy rights to suspects.'" *SafeCard Servs.*, 926 F.2d at 1205 (quoting *Bast*, 665 F.2d at 1254). In assessing whether there is a privacy interest to protect information related to Mr. Stone and other individuals discussed in connection with the facts related to Mr. Stone's criminal case, DOJ's declarant determined that "[g]iven the intense public interest surrounding the [Special Counsel's Office's] work[,] as well as the public and media attention surrounding [Mr. Stone's] ongoing court case, and the significant attention that any new fact made public will receive, disclosure of any additional non-public information about [Mr. Stone] or other individuals protected by this category would certainly subject them to unwarranted harassment, stigma, further reputational or even physical harm." Brinkmann Decl. ¶ 73. Mr. Stone's privacy interest is "magnified here" because his "trial is imminent," *id.* and release of information could "compound[] the pre-trial publicity that his case has already received," *id.* ¶ 72, and thus compound the harms he would face upon release of the information, *see id.* ¶¶ 72–73.

On the public interest side of the balance, DOJ "considered the mission and role of DOJ

---

[21] "To the extent that such individuals also fall within another Exemption 6/7(C) category, their information is additionally and independently protected for the reasons set forth in the discussions of those categories." Brinkmann Decl. ¶ 72 n.17.

and whether there is a FOIA public interest in revealing any further information in the Report pertaining to [these individuals] as a subject or subjects of the Special Counsel's investigation." *Id.* ¶ 74. Although release of additional investigatory details about Mr. Stone or these other individuals "would be something the public at large is generally interested in," disclosure of such information prior to Mr. Stone's trial "would not significantly enhance the public's understanding of how the Department carries out its duties," *id.*, nor is it "'necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity,'" *Schrecker*, 349 F.3d at 661 (quoting *SafeCard*, 926 F.2d at 1206). Additionally, in light of these circumstances and the Court order restricting statements by the parties, the "public interest in learning the details about and basis for the Department's criminal case against [Mr. Stone] will be served in the ordinary course, through the public disclosures made at trial." Brinkmann Decl. ¶ 74. Accordingly, because the privacy interest of Mr. Stone and individuals related to Mr. Stone's case outweigh the public interest in disclosure, DOJ properly withheld information pursuant to Exemptions 6 and 7(C). *See Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 997, 998–99 (D.C. Cir. 1998) (upholding the agency's withholding under Exemption 7(C) of "suspect files" that included "narratives and computer generated printouts of criminal activity of former suspects, photographs of former suspects, criminal histories and descriptions of suspects and former suspects, an interview of a former suspect pertaining to other unrelated crimes, and inspectors' notes containing information from state, local, and federal law enforcement agencies pertaining to suspects and former suspects"); *Harrison v. Exec. Office for U.S. Attorneys*, 377 F. Supp. 2d 141, 147 (D.D.C. 2005) (upholding the agency's redactions under "Exemption 7(C) to protect the identities of criminal defendants").

### d. DOJ Properly Withheld Names, Social Media Account Information, Contact Information, and Other Personally-identifiable Information About Individuals Merely Mentioned in the Report Under Exemptions 6 and 7(C).

The final category of privacy-based withholdings comprises names, social media account information, contact information, and other personally-identifiable information that could reveal the identities of individuals who were merely mentioned in the Report and who were not subjects of the Special Counsel's investigation nor charged by the Special Counsel's Office with any crime and who were also not unwitting third parties. Brinkmann Decl. ¶ 76. "These 'mere mentions' include third parties who are mentioned only in association with individuals of interest to the investigation (but who are not themselves subjects or targets of the investigation); individuals who were mentioned in relation to or were victims of GRU hacking and dumping operations; assorted contact information, including social media account information, for these and other individuals mentioned throughout the Report; and names and related personally-identifiable information of individuals for whom evidence of potential criminal activity was referred by the Special Counsel to appropriate law enforcement authorities." *Id.* "With respect to the latter group of individuals, who are mentioned in Section B ('Referrals') of Appendix D to the Report, these individuals were not subjects of the [Special Counsel's] investigation." *Id.* "Rather, they are included in an appendix to the Report only because evidence of potential criminal activity periodically surfaced during the course of the [Special Counsel's] investigation."[22] *Id.*

In conducting the balancing test, DOJ found because of the stigmatizing effect of being associated with a criminal investigation, disclosure of the identities of these individuals would

---

[22] "Two entries in Section B of Appendix D relates to an individual or individuals whose privacy information has been categorized and coded as (b)(6)/(7)(C)-3." Brinkmann Decl. ¶ 76 n.19, *see also id.* ¶¶ 72–75. "Another entry in Section B of Appendix D relates to an individual against whom the [Special Counsel's Office] contemplated, but did not pursue, charges related to the Special Counsel's investigation." *Id.* ¶ 76 n.19. "Although information about this individual is considered a 'mere mention' in the context of Appendix D, this individual's privacy information has separately been categorized and coded as (b)(6)/(7)(C)-2, elsewhere in the Report." *Id.*

subject them to unwarranted harassment and potential harm. *Id.* ¶ 77. Indeed, as the D.C. Circuit has recognized, "[i]t is surely beyond dispute that the mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation." *Fitzgibbon*, 911 F.2d at 767 (citation omitted); *see also Cong. News Syndicate v. Dep't of Justice*, 438 F. Supp. 538, 541 (D.D.C. 1977) (stating that "an individual whose name surfaces in connection with an investigation may, without more, become the subject of rumor and innuendo"). For this reason, courts routinely uphold agencies' decisions to withhold identifying information of third parties merely mentioned in law enforcement records. *See, e.g.*, *Negley v. FBI*, 825 F. Supp. 2d 63, 70–73 (D.D.C. 2011), *aff'd*, 2012 WL 1155734 (D.C. Cir. Mar. 28, 2012); *McGehee*, 800 F. Supp. 2d at 233–34. The stigmatizing harm is especially likely here, given the intense public and media scrutiny that occurs whenever any new fact related to the Special Counsel's investigation is made public. Brinkmann Decl. ¶ 77. "Moreover, with respect to the individuals mentioned as 'Referrals' in Appendix D, where these individuals are mentioned in the context of evidence that surfaced regarding potentially criminal activity, but where no assessment or judgment is made by the Special Counsel regarding that evidence, the privacy interest is particularly significant." *Id.* Indeed, the "privacy interest is strongest where the individuals in question 'have been investigated but never publicly charged.'" *Bartko*, 79 F. Supp. 3d at 173 (quoting *Am. Civil Liberties Union*, 655 F.3d at 7); *see also Tamayo v. Dep't of Justice*, 932 F. Supp. 342, 344 (D.D.C. 1996) (finding that "third parties of investigative interest to the FBI" "have a significant privacy, as well as safety, interest in not having their identities disclosed").

On the public interest side of the balancing test, disclosure of the names or identifying information of individuals who are merely mentioned in the Report is not "'necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity.'" *Schrecker*,

349 F.3d at 661 (quoting *SafeCard*, 926 F.2d at 1206). To the contrary, DOJ found that release of this information would "in no way" enhance the public's understanding of how the Department carries out its duties, particularly in light of the wealth of information that has been disclosed about the results of the Special Counsel's investigation. Brinkmann Decl. ¶ 78. "With respect to the individuals mentioned as 'Referrals' in Appendix D, the Special Counsel makes no assessment of the evidence against them but only reports that such evidence was referred elsewhere for appropriate handling." *Id.* "This accounting of referrals and information that surfaced only incidentally during the course of the [Special Counsel's] investigation, where the individuals were not subjects of the [Special Counsel's] investigation, therefore would not significantly enhance the public's understanding of how the Department carries out its duties." *Id.*

Therefore, because the significant privacy interest of individuals who are merely mentioned in the Report outweighs the minimal, if any, public interest in disclosure, DOJ properly withheld this information under Exemptions 6 and 7(C). *See Taylor v. Dep't of Justice*, 257 F. Supp. 2d 101, 109 (D.D.C. 2003) (protecting from disclosure "[n]ames and/or identifying data concerning third parties merely mentioned" in FBI records, as well as "[n]ames and/or identifying data of third parties who were of investigative interest to the FBI" under Exemption 7(C)); *Tamayo*, 932 F. Supp. at 344 (protecting from disclosure the identities of "third parties of investigative interest to the FBI, DEA, and the Customs Service" under Exemption 7(C)).

### 2. DOJ Properly Withheld Deliberative Information Regarding Charging Decisions Under Exemption 5.

Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). Thus, as a threshold matter, to invoke this exemption, a record must be of the type intended to be covered by the phrase "inter-agency or intra-agency memorandums." *Id.* Here, the

"redacted portions of information in the Report were generated by, exchanged within, and remain wholly internal to, the Executive Branch." Brinkmann Decl. ¶ 26. As such, all information withheld pursuant to Exemption 5 is "inter-/intra-agency" and satisfies the threshold requirement of the exemption. *See Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (stating that the "source [of the withheld information] must be a Government agency").

Exemption 5 applies to records that would normally be protected from disclosure in civil discovery. *See Burka v. Dep't of Health & Human Servs.*, 87 F.3d 508, 516 (D.C. Cir. 1996). Among the privileges encompassed by Exemption 5 is the deliberative process privilege. *Id.* The deliberative process privilege applies to "decisionmaking of executive officials generally," and protects documents containing deliberations that are part of the process by which government decisions are formulated. *In re Sealed Case*, 121 F.3d 729, 737, 745 (D.C. Cir. 1997). The purpose of the privilege is to "'prevent injury to the quality of agency decisions'" by "encourag[ing] frank discussion of policy matters, prevent[ing] premature disclosure of proposed policies, and avoid[ing] public confusion that may result from disclosure of rationales that were not ultimately grounds for agency action." *Thelen v. Dep't of Justice*, 169 F. Supp. 3d 128, 138 (D.D.C. 2016) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975)) (citing *Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982)).

To come within the scope of the deliberative process privilege, a document must be both pre-decisional and deliberative. *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). A document is pre-decisional if "it was generated before the adoption of an agency policy." *Id.* "To show that a document is predecisional, the agency need not identify a specific final agency decision; it is sufficient to establish 'what deliberative process is involved, and the role played by the document[] at issue in the course of that process.'" *Heggestad v. Dep't*

*of Justice*, 182 F. Supp. 2d 1, 7 (D.D.C. 2000) (quoting *Coastal States*, 617 F.2d at 868).  A document is deliberative if "it reflects the give-and-take of the consultative process."  *Coastal States*, 617 F.2d at 866.  Stated differently, the document "must be 'a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters.'"  *Heggestad*, 182 F. Supp. 2d at 7 (quoting *Vaughn v. Rosen*, 523 F.2d 1136, 1143–44 (D.C. Cir. 1975)).  The privilege therefore applies broadly to "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency."  *Coastal States*, 617 F.2d at 866.  Moreover, Exemption 5 applies if "disclosure of even purely factual material would reveal an agency's decision-making process."  *Russell*, 682 F.2d at 1048.

The Mueller Report provides an explanation to the Attorney General of "the prosecution or declination decisions reached by the Special Counsel."  28 C.F.R. § 600.8(c).  Thus, the Report "contains detailed explanations of the basis for the decisions made by the Special Counsel to pursue indictments in some instances, and not to pursue charges in others."  Brinkmann Decl. ¶ 28.  "These explanations include analysis of the facts gathered during the [Special Counsel's] investigation, evaluations of the weight of evidence, and assessment of the law in relation to evidentiary facts, which led to the conclusions reached by the Special Counsel."  *Id.*  "Given the extraordinary public interest in the this matter, the Attorney General authorized release of the vast majority of the Special Counsel's Report, including a considerable amount of information that could have been protected pursuant to Exemption 5 of the FOIA."  *Id.*; *see also* Exh. 7 at 1 (determining that "the public interest warrants as much transparency as possible regarding the results of the Special Counsel's investigation," "subject only to those redactions required by the law or compelling law enforcement, national security, or personal privacy interests").  "OIP has

protected only a limited amount of information within the remaining redacted portions of the Report on the basis of the deliberative process privilege." Brinkmann Decl. ¶ 28.

The information in the Report withheld by DOJ pursuant to Exemption 5 falls into "two inter-related, and partly overlapping categories" that relate to the Special Counsel's charging decisions: deliberations about the application of law to specific factual scenarios, in which the Special Counsel explains to the Attorney General the basis for his charging decisions (identified on the Report as "(b)(5)-1"), and deliberations about charging decisions not to prosecute, which would reveal criminal charges considered but not pursued against certain named individuals under investigation (identified on the Report as "(b)(5)-2"). *Id.*

### a. DOJ Properly Withheld Deliberations About Application of Criminal Law to Specific Factual Scenarios Under Exemption 5.

In the category marked as "(b)(5)-1" on the Report, DOJ withheld detailed descriptions of the Special Counsel's frank and candid deliberations regarding the application of criminal laws and legal theories to evidence uncovered during the course of the Special Counsel's investigation.[23] Brinkmann Decl. ¶ 29. Disclosure of these internal, detailed assessments of the strength of evidence, potential factual hurdles, or viability of legal action which preceded the Special Counsel's charging decisions would risk significant harm to the integrity of the Department's decision-making process. *Id.* ¶ 31. Withholdings under this category are reflected most notably in Volume 1, Section V, *id.* ¶ 32, which "sets forth the Special Counsel's charging decisions," *id.* Exh. D at Vol. 1 at 3 (Report).

DOJ properly withheld this information under Exemption 5 because it is both predecisional and deliberative. *See Coastal States*, 617 F.2d at 866. The information is predecisional because

---

[23] "Where the Special Counsel's application of the law to specific facts resulted in a decision to pursue criminal charges, and where information supporting criminal charges has been publicly disclosed, such as in criminal indictments, that information has generally not been withheld on the basis of Exemption 5." Brinkmann Decl. ¶ 31.

"it explains the thought processes and application of law to specific facts that was considered by the Special Counsel prior to reaching decisions on the specific matters discussed in the Report that resulted in criminal charges." Brinkmann Decl. ¶ 30. "This preliminary application of law to facts is reflective of the evolving decision-making process of DOJ agents and attorneys in their singular role of investigating and prosecuting federal crimes." *Id.* ¶ 32. Department agents and attorney "engage daily in in-depth factual investigations, evidence-gathering, and careful, frank, comprehensive analysis of the law and evidence specific to the wide range of investigations under their review." *Id.* "These investigations and the evidence and facts collected therefrom, in turn, directly inform Department attorneys' evaluative processes in which they assess whether violations of law have occurred, and the relative strengths, weaknesses, and challenges presented by potential cases, all of which ultimately inform the Department's decisions on whether to pursue prosecutions." *Id.* Because the Report describes these substantive and complex prosecutorial decision-making processes that led to, and preceded, the Special Counsel's charging decisions, the withheld material is properly characterized as "predecisional." *Id.*; *see also Coastal States*, 617 F.2d at 868 (stating that, to establish that a document is "predecisional," an agency need identify only "what deliberative process is involved, and the role played by the documents [at] issue in the course of that process").

Similarly, as to the second part of the analysis, the withheld "information is deliberative because it consists of the Special Counsel's descriptions of legal theories applicable to the evidence gathered by [Special Counsel's Office] staff, assessments of the strengths of potential defenses, discussions about possible factual hurdles and weight of evidence issues, and evaluation of potential prosecutorial considerations pertinent to the factual scenarios presented." Brinkmann Decl. ¶ 30. "Release of this information could provide individuals with a road map as to how the

Department assesses novel issues or application of the law in areas where prosecutions are infrequent." *Id.* "Disclosure of this information also could result in individuals altering their behavior when engaging in certain activity in an effort to skirt criminal responsibility while still engaging in unlawful conduct." *Id.* Because this information reflects the evolving decision-making processes of DOJ agents and attorneys leading up to the prosecution and declination decisions presented in the Report, *id.* ¶ 32, it is properly characterized as "deliberative," *see Coastal States*, 617 F.2d at 866 (stating that a document is "deliberative" if it "reflects the give-and-take of the consultative process"); *see also Access Reports v. Dep't of Justice*, 926 F.2d 1192, 1195 (D.C. Cir. 1991) (noting that "the 'deliberative' and 'predecisional' requirements tend to merge" as "[b]oth terms have come to apply only to documents that contribute to an ongoing deliberative *process* within an agency").

As the D.C. Circuit has found, "the process leading to a decision to initiate, or to forego, prosecution is squarely within the scope of th[e] [deliberative process] privilege." *Senate of the Commonwealth of P.R. on Behalf of Judiciary Comm. v. Dep't of Justice*, 823 F.2d 574, 585 n.38 (D.C. Cir. 1987). Indeed, courts have routinely recognized that documents reflecting the Government's internal deliberations about whether to charge an individual with a crime are protected from disclosure under the deliberative process privilege. For example, in *Jackson v. United States Attorneys Office, District of New Jersey*, the Court found that the Assistant United States Attorney's notes reflecting his "evaluation of the case and reasons the [office] should decline prosecution" are "part and parcel of the [office's] decisionmaking processes regarding criminal prosecutions" and are thus protected from disclosure under Exemption 5. 293 F. Supp. 2d 34, 40 (D.D.C. 2003). Courts in other cases have reached similar conclusions. *See, e.g.*, *Gov't Accountability Project v. Dep't of Justice*, 852 F. Supp. 2d 14, 25–26 (D.D.C. 2012) (finding that

the deliberative process privilege applied to e-mails between attorneys discussing whether or not to file criminal charges); *Blakeney v. FBI*, Civ. A. No. 17-CV-2288 (BAH), 2019 WL 450678, at *4 (D.D.C. Feb. 5, 2019) (finding that the agency "appropriately relied on Exemption 5" to withhold "email communications among the [Assistant United States Attorneys] analyzing the facts and evidence . . . to determine what charges to bring against Plaintiff" because the documents were protected by the deliberative process privilege (citation omitted)); *Jimenez v. FBI*, 938 F. Supp. 21, 28–29 (D.D.C. 1996) (finding that the agency properly withheld documents under Exemption 5 where the "withheld documents illustrate the steps in decisionmaking at the U.S. Attorney's office and other federal and state agencies in considering possible criminal actions against Mr. Jimenez and third party individuals" and "[d]isclosure of this information would reveal predecisional and deliberative communications among government personnel, and could undermine the candid and comprehensive considerations essential for efficient agency decisionmaking" (citation omitted); *Heggestad*, 182 F. Supp. 2d at 7–12 (finding that the deliberative process privilege covered documents related to decision-making process of whether to pursue prosecution of taxpayer violations); *Performance Coal Co. v. Dep't of Labor*, 847 F. Supp. 2d 6, 14–16 (D.D.C. 2012) (finding that the deliberative process privilege applied to information regarding whether to refer miners for possible prosecution based on safety violations).

Accordingly, because the information concerning the bases for the Special Counsel's prosecution and declination decisions are predecisional and deliberative, that information is protected by the deliberative process privilege and the Department properly withheld such information under Exemption 5.

### b.  DOJ Properly Withheld Deliberations About Charging Decisions Not to Prosecute Under Exemption 5.

The second category of information withheld under Exemption 5 (coded as "(b)(5)-(2)" on

the Report) also consists of application of criminal law to specific evidentiary facts and is protected by the deliberative process privilege for the same reasons as the first category discussed above. Brinkmann Decl. ¶ 34; *see supra* Part I.C.2.a.  But, unlike the first category, *all* of the information in this category pertains to charges that were contemplated but not pursued.  Brinkmann Decl. ¶ 34.  Moreover, the protections afforded to the information in this category differ, and extend more broadly, in two respects.  *Id.*  First, this category includes the charging decisions not to prosecute.  *Id.*  Second, this category includes the identities of the individuals against whom those criminal charges were considered but not pursued.[24]  *Id.*

DOJ properly withheld the Special Counsel's declination decisions and the individuals' identities under Exemption 5 because this information is both predecisional and deliberative.  *See Coastal States*, 617 F.2d at 866.  In addition to the reasons set forth above in Part I.C.2.a., the information is predecisional because the decisions themselves are not final.  Brinkmann Decl. ¶ 36. Although the Special Counsel decided not to prosecute, "the Department is not precluded from bringing such charges in the future, were evidence developed that supported the principles of federal prosecution governing the standards for initiating criminal prosecution."  *Id.*  This is true for any case in which a decision is made not to prosecute.  *Id.*  "If internal charging considerations such as these were released, the Department's prosecutorial interests would be severely compromised should a later decision be made to bring charges based on development of additional evidence."  *Id.*

Moreover, the information is pre-decisional because the elements of the contemplated

---

[24] "The identities of individuals not charged are also withheld in conjunction with FOIA Exemptions 6 and 7(C) . . . and coded as (b)(6)/(7)(C)-2," discussed above in Part I.C.1.b.  Brinkmann Decl. ¶ 34 n.9; *see also id.* ¶¶ 68–71. "Additionally, some charges were considered, but not pursued, related to fact arising from the Roger Stone criminal case."  *Id.* ¶ 34 n.9.  "In those instances, information pertaining to this matter is also withheld in conjunction with FOIA Exemptions 6 and 7(C) . . . and coded as (b)(6)/(7)(C)-3."  *Id.*; *see also id.* ¶¶ 72–75.

charges themselves elucidate the thinking and considerations of the Special Counsel prior to reaching charging decisions. *Id.* ¶ 35. This information is deliberative because it reflects contemplated charges against individuals that were considered but not pursued and the reasons for not pursuing the charges at that time. *Id.* As set forth more fully above in Part I.C.2.a., courts have routinely recognized that this type of information related to declination decisions is protected from disclosure by the deliberative process privilege under Exemption 5. *See, e.g.*, *Jackson*, 293 F. Supp. 2d at 40 (protecting attorney notes reflecting his "evaluation of the case and reasons the [office] should decline prosecution").

Release of this information would cause the exact harm the deliberative process privilege is designed to protect. As the D.C. Circuit has observed, "Exemption 5 is tailor-made for the situation in which [a prosecutor's office] is assessing the evidence it [is] compiling" because "expos[ing] this process to public scrutiny would unnecessarily inhibit the prosecutor in the exercise of his traditionally broad discretion to assess the case and decide whether or not to file charges." *Senate of the Commonwealth of P.R.*, 823 F.2d at 585 n.38 (citation omitted). If internal charging considerations such as those described in the Report were released, DOJ "attorneys would be wary about providing comprehensive legal analysis and viewpoints from all angles critical to ensure the quality of the decision-making process." Brinkmann Decl. ¶ 37. "More broadly, Department staff would be hesitant to memorialize the thinking behind their decisions for fear that by so doing, the deliberations that went into those decisions would be publicly disclosed." *Id.* To protect the quality of decision-making, "Department employees must have confidence that they can share legal analysis, including honest assessments of potential prosecutorial strategies and vulnerabilities, without fear that those assessments will be revealed to potential legal adversaries or alert potential targets of investigations and prosecutions." *Id.* ¶ 36. "It is therefore critical that

DOJ employees' candid views and legal analysis are protected from disclosure." *Id.* ¶ 37.

Accordingly, because information concerning declination decisions are predecisional and deliberative, that information is protected by the deliberative process privilege and the Department properly withheld such information under Exemption 5.

## II. DOJ IS PROHIBITED BY COURT ORDER FROM DISCLOSING INFORMATION RELATING TO ROGER STONE'S ONGOING CRIMINAL CASE.

"Certain information contained in the Report pertaining to the Department's ongoing criminal case against Roger Stone, is also prohibited from disclosure pursuant to [Court order.]"[25] Brinkmann Decl. ¶ 90; *see also* Order, *United States v. Stone*, 1:19-cr-00018 (D.D.C. Feb. 15, 2019), Dkt. 36, *amended by* Minute Order (Feb. 21, 2019). Although "the mere existence of a court seal is, without more, insufficient to justify nondisclosure under the FOIA," the D.C. Circuit has recognized that "those sealing orders intended to operate as the functional equivalent of an injunction prohibiting disclosure can justify an agency's decision to withhold records that do not fall within one of the specific FOIA exemptions." *Morgan v. Dep't of Justice*, 923 F.2d 195, 199 (D.C. Cir. 1991). In the *Stone* case, pursuant to Local Criminal Rules 57.7(b)(1) and 57.7(c), the U.S. District Court for the District of Columbia has ordered "[c]ounsel for the parties and the witnesses" to "refrain from making statements to the media or in public settings that pose a substantial likelihood of material prejudice to [Mr. Stone's] case." Order at 3, *United States v. Stone*, 1:19-cr-00018 (D.D.C. Feb. 15, 2019), Dkt. 36, *amended by* Minute Order (Feb. 21, 2019). As the *Stone* Court recognized, the case will "continue to receive a great deal of public attention," Tr. of Status Conf. at 16:2–4, *United States v. Stone*, 1:19-cr-00018 (D.D.C. Feb. 1, 2019), Dkt.

---

[25] This information is also protected from disclosure pursuant to Exemption 7(B) and/or Exemptions 6 and 7(C) as discussed above in Parts I.B.3. and I.C.1.c.

23, and release of the information in the Report pertaining to Mr. Stone likewise would receive a "great deal of public attention," *id.*, which could "pose a substantial likelihood of material prejudice to [Mr. Stone's] case," Order at 3, *United States v. Stone*, 1:19-cr-00018 (D.D.C. Feb. 15, 2019), Dkt. 36, *amended by* Minute Order (Feb. 21, 2019). DOJ thus is prohibited by the Court order from releasing information in the Report pertaining to Mr. Stone. Brinkmann Decl. ¶ 90.

Because the *Stone* Court order prohibits DOJ from releasing information in the Report pertaining to Mr. Stone, DOJ has not "improperly" withheld that information under the FOIA. *See Morgan*, 923 F.2d at 199; *see also Tax Analysts v. Dep't of Justice*, 845 F.2d 1060, 1064 n.7 (D.C. Cir. 1988), *aff'd*, 492 U.S. 136 (1989) (stating that "agency records are not 'improperly withheld' when a lawful injunction by a federal court prohibits agency compliance with a FOIA request" (citing *GTE Sylvania, Inc. v. Consumers Union*, 445 U.S. 375, 387 (1980)). As the Supreme Court has recognized, "[w]hen an agency has demonstrated that it has not withheld requested records in violation of the standards established by Congress, the federal courts have no authority to order the production of such records under the FOIA." *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 139 (1980). Accordingly, the Court should grant summary judgment for Defendant on the information withheld under the *Stone* order.

## III. DOJ RELEASED ALL REASONABLY SEGREGABLE, NON-EXEMPT INFORMATION.

The FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). Accordingly, "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). But this provision does not require disclosure of records in which the non-exempt information that remains is meaningless. *See Nat'l Sec. Archive Fund, Inc.*

*v. CIA*, 402 F. Supp. 2d 211, 221 (D.D.C. 2005). And a court "may rely on government affidavits that show with reasonable specificity why documents withheld pursuant to a valid exemption cannot be further segregated." *Juarez v. Dep't of Justice*, 518 F.3d 54, 61 (D.C. Cir. 2008).

Consistent with this obligation, OIP has conducted a thorough review of the entire unredacted Mueller Report and concluded that there is no additional, non-exempt information that may reasonably be segregated and released without violating grand jury secrecy rules, violating the National Security Act of 1947's prohibitions on disclosure of intelligence sources and methods, undermining the Department of Justice's deliberative process, violating individuals' privacy, interfering with pending law enforcement proceedings, depriving an individual's right to a fair trial, and revealing sensitive law enforcement techniques and procedures which would risk circumvention of the law and threaten national security. *See* Brinkmann Decl. ¶¶ 13, 24, 38, 51, 57, 80, 89, 91. This segregability conclusion is borne out by the released Report: redactions have been taken narrowly and only where specific information protected by exemptions is at issue, and significant portions of the Report have been released as a matter of discretion and transparency that would otherwise be subject to exemptions. Therefore, because Ms. Brinkmann's declaration establishes that all reasonably segregable, non-exempt information has been released, summary judgment should be granted for DOJ. *See Sussman*, 494 F.3d at 1117 ("Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material.").

## CONCLUSION

For the foregoing reasons, the Court should grant summary judgment for the Department of Justice.

Dated: June 3, 2019                    Respectfully submitted,

                                       HASHIM MOOPPAN
                                       Deputy Assistant Attorney General
                                       Civil Division

                                       ELIZABETH J. SHAPIRO
                                       Deputy Director
                                       Civil Division, Federal Programs Branch

                                       */s/ Courtney D. Enlow*
                                       COURTNEY D. ENLOW
                                       Trial Attorney
                                       United States Department of Justice
                                       Civil Division, Federal Programs Branch
                                       1100 L Street, N.W.
                                       Room 12102
                                       Washington, D.C. 20005
                                       Tel: (202) 616-8467
                                       Email: courtney.d.enlow@usdoj.gov

                                       *Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 3, 2019, I electronically transmitted the foregoing to the parties

and the clerk of court for the United States District Court for the District of Columbia using the

CM/ECF filing system.

*/s/ Courtney D. Enlow*
COURTNEY D. ENLOW
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Room 12102
Washington, D.C. 20005
Tel: (202) 616-8467
Email: courtney.d.enlow@usdoj.gov