# Exhibit 1

Declaration of Vanessa Brinkmann, with supporting exhibits,

dated June 3, 2019

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER,<br><br>*Plaintiff*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE,<br><br>*Defendant*. | Civil Action No. 19-cv-810 (RBW) |
| JASON LEOPOLD, BUZZFEED, INC.,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE, et al.<br><br>*Defendants*. | Civil Action No. 19-cv-957 (RBW) |

## <u>DECLARATION OF VANESSA R. BRINKMANN</u>

I, Vanessa R. Brinkmann, declare the following to be true and correct:

1. I am Senior Counsel in the Office of Information Policy (OIP), United States Department of Justice (the Department or DOJ). In this capacity, I am responsible for supervising the handling of the Freedom of Information Act (FOIA) requests subject to litigation processed by the Initial Request Staff (IR Staff) of OIP. The IR Staff of OIP is responsible for processing FOIA requests seeking records from within OIP and from within six senior leadership offices of the Department of Justice, specifically the Offices of the Attorney General (OAG),

1

Deputy Attorney General (ODAG), Associate Attorney General (OASG), Legal Policy (OLP),

Legislative Affairs (OLA), and Public Affairs (PAO).  Moreover, the IR Staff is responsible for

processing FOIA requests seeking certain records from the Special Counsel's Office (SCO).

2.   The IR Staff of OIP determines whether records responsive to requests exist and, if

so, whether they can be released in accordance with the FOIA.  In processing such requests, the

IR Staff consults with personnel in the senior leadership offices and, when appropriate, in other

components within the Department of Justice, as well as with others in the Executive Branch.

3.   I make the statements herein on the basis of personal knowledge, on my review of the

information at issue, as well as on information acquired by me in the course of performing my

official duties.

<u>Plaintiffs' Initial Requests to OIP</u>

4.   By letter dated November 5, 2018, Plaintiff Electronic Privacy Information Center

(EPIC) submitted a FOIA request to OIP seeking fourteen categories of records "concerning the

investigation by Special Counsel Robert S. Mueller into Russian interference in the 2016 United

States presidential election and related matters."  This declaration is limited to a discussion of

OIP's processing of the confidential "Report On The Investigation Into Russian Interference In

The 2016 Presidential Election" ("the Report"), which is responsive to category (1)(a) of EPIC's

FOIA request.  EPIC's FOIA request is attached hereto as Exhibit A.

5.   By letter dated March 21, 2019, Plaintiffs Jason Leopold and Buzzfeed, Inc.

(hereinafter "Leopold") submitted a FOIA request to OIP seeking "[a] copy of the [final report]

prepared by the Office of Special Counsel Robert Mueller."  Mr. Leopold's FOIA request is

attached hereto as Exhibit B.

<u>The Department's Investigations into Russian Interference</u>
<u>in the 2016 Presidential Election</u>

6.     On March 20, 2017, in testimony before Congress, then-Federal Bureau of

Investigation (FBI) Director James B. Comey publicly confirmed the existence of an

investigation of the Russian government's efforts to interfere in the 2016 presidential election

stating, "that the FBI, as part of our counterintelligence mission, is investigating the Russian

government's efforts to interfere in the 2016 presidential election, and that includes investigating

the nature of any links between individuals associated with the Trump campaign and the Russian

government and whether there was any coordination between the campaign and Russia's

efforts."  *See* Statement Before the House Permanent Select Committee on Intelligence (March

20, 2017), *available at* http://www.fbi.gov/news/testimony/hpsci-hearing-titled-russian-active-

measures-investigation.

7.     On May 17, 2017, Deputy Attorney General Rod J. Rosenstein, in his capacity as

Acting Attorney General,[1] appointed Robert S. Mueller III to serve as Special Counsel for the

investigation into Russian interference with the 2016 presidential election.  *See* DOJ Order No.

3915-2017, Appointment of Special Counsel to Investigate Russian Interference with the 2016

Presidential Election and Related Matters (May 17, 2017), *available at*

https://www.justice.gov/opa/press-release/file/967231/download.  Acting Attorney General

Rosenstein's appointment order included authorization for the Special Counsel to both

investigate this matter and prosecute federal crimes arising from this investigation.  *Id.*  Under

---

[1] Deputy Attorney General Rosenstein was Acting Attorney General for purposes of the
investigation due to then-Attorney General Jeff Sessions' March 2, 2017 recusal from "any
matters arising from the campaigns for President of the United States."  *See* Attorney General
Sessions Statement on Recusal (March 2, 2017), *available at*
https://www.justice.gov/opa/pr/attorney-general-sessions-statement-recusal.

the terms of his appointment, Special Counsel Mueller was specifically authorized to "conduct the investigation confirmed by then-FBI Director James B. Comey in testimony before the House Permanent Select Committee on Intelligence on March 20, 2017, including: (i) any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump; and (ii) any matters that arose or may arise directly from the investigation; and (iii) any other matters within the scope of 28 C.F.R. § 600.4(a)." *Id.* In addition, the appointment order provided that "[i]f the Special Counsel believes it is necessary and appropriate, the Special Counsel is authorized to prosecute federal crimes arising from the investigation of these matters." *Id.* Finally, the appointment order specified that "[s]ections 600.4 through 600.10 of Title 28 of the Code of Federal Regulations are applicable to the Special Counsel." *Id.*

8.   Department of Justice regulations 28 C.F.R. §§ 600.4 – 600.10 (2018) govern the general powers of a Special Counsel, including the Special Counsel's jurisdiction, staff, powers and authority, conduct and accountability, and notifications and reports that must be made by either the Special Counsel or the Attorney General.

9.   On March 22, 2019, Attorney General William P. Barr[2] notified Congress and the public that Special Counsel Mueller had concluded his investigation into Russian interference in the 2016 election and related matters, and that Special Counsel Mueller had submitted a "confidential report explaining the prosecution or declination decisions" reached in the investigation, as required by 28 C.F.R. § 600.8(c). *See* Letter from Attorney General William P.

---

[2] William Barr was confirmed as Attorney General on February 14, 2019, and, as of that date, Attorney General Barr began oversight of the SCO investigation.  *See* Press Release, William P. Barr Confirmed as 85th Attorney General of the United States (February 14, 2019), *available at* https://www.justice.gov/opa/pr/william-p-barr-confirmed-85th-attorney-general-united-states.

Barr to the House and Senate Judiciary Committees (March 22, 2019), *available at*

https://www.justice.gov/ag/page/file/1147986/download.  On March 29, 2019, Attorney General

Barr notified Congress and the public that the Department of Justice was preparing the Report

for public release with redactions, by "mid-April."  *See* Letter from Attorney General William P.

Barr to the House and Senate Judiciary Committees (March 29, 2019), *available at*

https://www.justice.gov/ag/page/file/1153021/download.

  10. On April 18, 2019, Attorney General Barr transmitted a copy of the Report with

redactions to Congress, a copy of which was also posted on DOJ's website the same day.  *See*

Press Conference, Attorney General William P. Barr Delivers Remarks on the Release of the

Report on the Investigation into Russian Interference in the 2016 Presidential Election (April 18,

2019), *available at* https://www.justice.gov/opa/speech/attorney-general-william-p-barr-delivers-

remarks-release-report-investigation-russian; *see also* Report On The Investigation Into Russian

Interference In The 2016 Presidential Election (as released on April 18, 2019), *available at*

https://www.justice.gov/storage/report.pdf.  Redactions were made based on four distinct

categories outlined in the April 18, 2019 letter:  (1) grand jury information; (2) investigative

techniques "which reflect material identified by the intelligence and law enforcement

communities as potentially compromising sensitive sources, methods, or techniques, as well as

information that could harm ongoing intelligence or law enforcement activities;" (3)

"information that, if released, could harm ongoing law enforcement matters…including charged

cases where court rules and orders bar public disclosure by the parties of case information;" and

(4) "information that would unduly infringe upon the personal privacy and reputational interests

of peripheral third parties…which includes deliberation about decisions not to recommend

prosecution of such parties." [3]  *See* Letter from Attorney General William P. Barr to the House.

and Senate Judiciary Committees (April 18, 2019), *available at*

https://www.justice.gov/ag/page/file/1167086/download.

<u>OIP's Processing of the Report Pursuant to the FOIA</u>

11. On April 18, 2019, the same date the Report with redactions was provided to

Congress and released publicly by the Attorney General, OIP began to review the full un-

redacted Report for disclosure pursuant to the FOIA.[4]  As a result of this review, OIP determined

that all of the information redacted from the version of the Report released by the Attorney

General is exempt from FOIA disclosure pursuant to varying combinations of Exemptions 3, 5,

6, and 7 of the FOIA, 5 U.S.C. § 552 (b)(3), (b)(5), (b)(6), and (b)(7).  As part of its FOIA

review, OIP marked each redaction in the Report with the applicable FOIA exemption(s).  On

May 6, 2019, the FOIA-processed version of the Report was posted in OIP's FOIA Library,

which is publicly available on OIP's website at https://www.justice.gov/oip/foia-library.

12. On May 6, 2019, OIP issued a response letter to each Plaintiff via email, which

explained that OIP had completed its FOIA processing of the Report, and that the Report was

determined to be appropriate for release with redactions made pursuant to Exemptions 3, 5, 6,

7(A), 7(B), 7(C), and 7(E) of the FOIA, 5 U.S.C. § 552 (b)(3), (b)(5), (b)(6), (b)(7)(A), (b)(7)(B),

(b)(7)(C), and (b)(7)(E).  The response letters also contained a link to the FOIA-processed

version of the Report.  Plaintiffs were also advised that some information contained in the Report

---

[3] On May 8, 2019, the President made a preliminary, protective assertion of executive privilege over materials relating to the Special Counsel's work, including over the portions of the Report withheld from Congress.

[4] Although FOIA exemptions would also have applied to other information in the Report, the Department's earlier release of the Report rendered unnecessary review by OIP of anything other than the redacted information in the Report.

was subject to a court order in *United States v. Roger J. Stone, Jr.*, Criminal No. 19-cr-18-ABJ

(D.D.C.), prohibiting counsel for the parties from making statements to the media or in public

settings that pose a substantial likelihood of material prejudice to the case.[5]  OIP's May 6, 2019

response letters to Plaintiffs are attached hereto as Exhibit C.

<u>Application of FOIA Exemptions to the Report</u>

13.  OIP carefully reviewed, processed, and released to Plaintiffs (and the public, by

posting online) all non-FOIA exempt portions of the Report.  In coordination with the

appropriate Department components, OIP conducted a thorough FOIA review of the information

underlying each redaction in the public version of the Report, and determined that the same

information was protected pursuant to FOIA Exemptions 3, 5, 6, 7(A), 7(B), 7(C), and/or 7(E).

As reflected in the redactions applied to the FOIA-processed Report, much of the information is

withheld by a combination of overlapping and often inter-related FOIA exemptions which

provide multiple grounds for protection.  Every effort has been made to ensure that no

reasonably segregable, non-exempt portions of the Report have been withheld from release.

14. To facilitate the explanation of the FOIA exemptions herein, and in an effort to

provide as much information as possible about the basis for protecting the information

underlying each redaction, OIP has added coding in the margins of the FOIA-processed Report,

---

[5] D.C. District Court Rule 57.7 requires the parties to a case "not to release or authorize the release of information or opinion which a reasonable person would expect to be disseminated by means of a public communication, in connection with pending or imminent criminal litigation with which the lawyer or the law firm is associated, if there is a reasonable likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice."  This rule applies to all charged cases, and it was fully considered by the Department for all charged cases when redactions were made in the public release of the report.  As provided by the rule, however, the court in Stone issued additional orders to further restrict public statements by the parties.

in addition to the exemption labels already placed within each FOIA redaction box.[6]  These codes further categorize the withheld information to more readily illustrate the bases for protection under the FOIA.  For example, redactions made pursuant to Exemption 3 are further identified by two separate codes, (b)(3)-1 and (b)(3)-2, to readily identify the two discrete statutory bases being used in conjunction with Exemption 3 of the FOIA to protect certain information.[7]  This Declaration narratively describes the content of the information withheld under each category, as well as the justification for its protection under the FOIA.  This Declaration and the corresponding coded Report, attached hereto as Exhibit D, are intended to be read in tandem.  The exemptions and corresponding coded categories are as follows:

| EXEMPTIONS AND CODED CATEGORIES | CATEGORY DESCRIPTION |
|---|---|
| Exemption (b)(3) | Information protected by statute |
| (b)(3)-1 | *Federal grand jury information, prohibited from disclosure by Rule 6(e) of the Federal Rules of Criminal Procedure* |
| (b)(3)-2 | *Intelligence sources and methods, prohibited from disclosure by the National Security Act of 1947, 50 U.S.C. § 3024(i)(1)* |
| Exemption (b)(5) | Information withheld pursuant to the deliberative process privilege |
| (b)(5)-1 | *Deliberations about application of law to specific factual scenarios* |
| (b)(5)-2 | *Deliberations about charging decisions not to prosecute* |
| Exemption (b)(7)(A) | Pending law enforcement proceedings |

---

[6] During the course of coding the FOIA-processed Report, OIP identified limited instances where the exemptions cited within redaction boxes required correction.  As a result, citations to Exemption 3 have been removed from the redaction boxes on page 39 in Volume 1 of the Report; citations to Exemption (7)(B) within two redaction boxes in Appendix B, and to Exemptions 6 and (7)(C) within one redaction box in Appendix D, have been removed; and a citation to Exemption (7)(E) has been added to each of two redaction boxes in Volume 1, notes 1148 & 1149.  In these instances, only the exemption citations have been corrected; the placement of the redactions remains the same.

[7] Redactions made pursuant to FOIA Exemptions (7)(A) and (7)(B) have not been divided into coded categories.

| Exemption (b)(7)(B) | Information which would deprive a person of a right to a fair trial or impartial adjudication |
|---|---|
| Exemptions (b)(6) and (b)(7)(C) | Unwarranted invasions of personal privacy |
| (b)(6)/(b)(7)(C)-1 | *Names, social media account information, and other contact information of unwitting third parties* |
| (b)(6)/(b)(7)(C)-2 | *Names and personally-identifiable information about individuals not charged by the SCO* |
| (b)(6)/(b)(7)(C)-3 | *Information concerning a subject of the investigation by the SCO* |
| (b)(6)/(b)(7)(C)-4 | *Names, social media account information, contact information, and other personally-identifiable information of individuals merely mentioned in the Report* |
| Exemption (b)(7)(E) | Investigative techniques and procedures |
| (b)(7)(E)-1 | *Information that would reveal techniques authorized for and used in national security investigations* |
| (b)(7)(E)-2 | *Details about techniques and procedures that would reveal investigative focus and scope, and circumstances, methods and fruits of investigative operations* |

## Exemption 3

15. Exemption 3 of the FOIA protects from disclosure records that are specifically exempted from disclosure by other federal statutes, "provided that such statute (A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld; and (B) if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph." 5 U.S.C. § 552 (b)(3). All of the information withheld by OIP pursuant to Exemption 3 falls under subpart (A)(i) of the FOIA – in other words, OIP has no discretion to release this information inasmuch as it is required to be withheld from public disclosure pursuant to federal statute(s) which were enacted prior to 2009.

16. In this instance, the information withheld by OIP in the Report pursuant to Exemption 3 falls into two categories:

- (b)(3)-1:  federal grand jury information, prohibited from disclosure by Rule 6(e) of the Federal Rules of Criminal Procedure ("Rule 6(e)"); and

- (b)(3)-2:  information pertaining to intelligence sources and methods, prohibited from disclosure by the National Security Act of 1947, 50 U.S.C. §§ 3024(i)(1).[8]

Each of these categories will be addressed in turn.

*(b)(3)-1: Federal Grand Jury Information*

17. Federal grand jury information withheld by OIP throughout the Report pursuant to Rule 6(e) is coded in as "(b)(3)-1."  As an initial matter, Rule 6(e) was amended by Congress in 1977, and therefore was "enacted" by Congress well before the date of enactment of the OPEN FOIA Act of 2009.  *See* Fed. R. Crim, P. 6(e), enacted by Act of July 30, 1977, Pub. L. No. 95-78, 91 Stat. 319.

18. Rule 6(e) establishes the preservation of the secrecy of grand jury proceedings and material, regardless of the nature of the record in which the material is discussed, when disclosure would reveal a protected aspect of the grand jury's investigation.  In the record at issue, only that information which explicitly discloses matters occurring before a federal grand jury – the disclosure of which would reveal a secret aspect of the grand jury's investigation – has been withheld pursuant to "(b)(3)-1."  All of the information withheld concerns the inner workings of federal grand juries – specifically, the names and/or identifying information of individuals who were subpoenaed or actually testified before a federal grand jury (or information that might reveal that the witness was subpoenaed or testified before the grand jury) and information provided by these individuals in their grand jury testimony.  Only information that

---

[8] The information withheld pursuant to Exemption 3 and coded as (b)(3)-2, is also protected by Exemption 7(E), coded as (b)(7)(E)-1, discussed *infra*.

was explicitly connected to the operation of the federal grand jury, and thus which could not be disclosed without clearly revealing the inner workings of grand jury proceedings, was protected pursuant to Exemption 3.  Information that, while possibly relevant to the federal grand jury investigations related to the Report, could nonetheless be released without compromising the secrecy of the corresponding grand jury proceedings, has been disclosed.  The disclosure of any of the remaining (b)(3)-1 material would clearly violate the secrecy of grand jury proceedings, and therefore cannot be released without violating the non-disclosure requirements on Rule 6(e).

*(b)(3)-2: National Security Act*

19. Information withheld by OIP throughout the Report coded as "(b)(3)-2," is protected pursuant to Section 102(A)(i)(1) of the National Security Act of 1947 ("NSA"), as amended by the Intelligence Reform and Terrorism Prevention Act of 2004 ("IRTPA"), 50 U.S.C. § 3024 (i)(1), which provides that the Director of National Intelligence ("DNI") "shall protect intelligence sources and methods from unauthorized disclosure."  The National Security Act of 1947, and the IRTPA amendment, were enacted prior to the OPEN FOIA Act of 2009.  This federal statute leaves no discretion to the DNI about withholding from the public information about intelligence sources and methods; as such, the protection afforded to intelligence sources and methods by 50 U.S.C. § 3024(i)(1) is absolute.

20. To fulfill his obligation of protecting intelligence sources and methods, the DNI is authorized to establish and implement guidelines for the Intelligence Community ("IC") for the classification of information under applicable laws, Executive Orders, or other Presidential Directives, and for access to and dissemination of intelligence.  *See* 50 U.S.C. § 3024 (i)(2)(A), (B).  The FBI, a component of the Department of Justice, is one of seventeen members of the IC. *See* How the IC Works, *available at* https://www.intel.gov/how-the-ic-works.   In order to

11

effectively pursue the investigative mandate issued by the Deputy Attorney General/Acting

Attorney General, the FBI assigned agents to the Special Counsel's Office who assisted the

Special Counsel in conducting the investigation he supervised while at the same time remaining

full-time FBI employees, retaining all of their lawful authorities.  Special Counsel Mueller

reported to the Attorney General pursuant to 28 C.F.R. § 600, et seq.  Some information about

and derived from investigative activities of FBI personnel assigned to the Special Counsel are

contained in the Special Counsel's Report.

21. As stated above, pursuant to the NSA, as amended by the IRTPA, the DNI is

authorized to establish and implement guidelines for the IC regarding access to and

dissemination of intelligence.  50 U.S.C. §§ 3024(i)(2)(A), (B).  Accordingly, the DNI

promulgated Intelligence Community Directive (ICD) 700, providing that IC elements and heads

of IC element agencies/departments (e.g., including the Attorney General as head of DOJ and, its

component, the FBI) shall protect "national intelligence and intelligence sources and methods

and activities from unauthorized disclosure."  *See* Intelligence Community Directive 700, ¶ 2a

(June 7, 2012), *available at* www.dni.gov/files/documents/ICD/ICD_700.pdf.  As such, the

Department is prohibited from disclosing intelligence sources and methods of the IC pursuant to

the statute.

22. The NSA, as amended by the IRTPA, provides absolute protection to intelligence

sources and methods, and does not distinguish between classified and unclassified sources and

methods.  All sources and methods must be protected pursuant to the statute.

23. Here, OIP protected unclassified sources and methods relating to investigative and

information gathering techniques used in investigations into interference activities emanating

from Russia in the 2016 presidential election.  In particular, this information reflects material

identified by the intelligence and law enforcement communities as potentially compromising sensitive sources, methods, or techniques, the release of which could cause harm to ongoing intelligence gathering or law enforcement activities. Disclosures of such information would present the potential for individuals and foreign agents to develop and implement countermeasures to evade detection, which would result in the loss of significant intelligence information, generally relied upon by the IC. Given that Congress prohibited the disclosure of information pertaining to intelligence sources and methods used by the IC, and consistent with the DNI's directive to the heads of IC elements, these intelligence sources and methods cannot be disclosed.

### Segregation of Non-Exempt Information

24. In each instance where information was withheld pursuant to FOIA Exemption 3, only the precise information which would be prohibited from disclosure by Rule 6(e) or the NSA has been withheld. For the portions protected pursuant to (b)(3)-1, only information with a clear nexus to federal grand jury proceedings was withheld pursuant to Exemption 3. Indeed, as discussed above, if any information could be released without violating grand jury secrecy rules, that information was released. For the portions protected pursuant to (b)(3)-2, only the specific information that reveals intelligence sources and methods, which is prohibited from disclosure by the NSA, was withheld pursuant to Exemption 3. Notably, the withholdings made on this basis were so precise that only limited portions within redaction boxes, where the NSA-protected information appears, are withheld as (b)(3)-2, in conjunction with other FOIA Exemptions (*see,* e.g., notes 9-18; 23-27; 35-37; 39-43; 52-54; 63-66; 77-78 of the Report).

Exemption 5

25. Exemption 5 of the FOIA exempts from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  As discussed in detail below, the portions of the Report withheld by OIP pursuant to Exemption 5 are protected by the deliberative process privilege.

*Exemption 5: Inter-/Intra-Agency Threshold*

26. Records withheld pursuant to Exemption 5 of the FOIA must be inter- or intra-agency.  Here, the information withheld under this exemption is located solely within the "confidential report" prepared by the Special Counsel for the Attorney General pursuant to 28 C.F.R. § 600.8(c).  These redacted portions of information in the Report were generated by, exchanged within, and remain wholly internal to, the Executive Branch.  As such, all information withheld pursuant to Exemption 5 is "inter-/intra-agency" and satisfies the threshold requirement of the exemption.

*Exemption 5: Deliberative Process Privilege*

27. The deliberative process privilege is intended to protect the decision-making processes of government agencies from public scrutiny, in order to enhance the quality of agency decisions.  To be withheld under the deliberative process privilege, the information at issue must be both "pre-decisional" and "deliberative."

28. The Special Counsel's Report to the Attorney General contains detailed explanations of the basis for the decisions made by the Special Counsel to pursue indictments in some instances, and not to pursue charges in others.  These explanations include analysis of the facts gathered during the SCO investigation, evaluations of the weight of evidence, and assessment of

the law in relation to evidentiary facts, which led to the conclusions reached by the Special

Counsel.  Given the extraordinary public interest in the this matter, the Attorney General

authorized release of the vast majority of the Special Counsel's Report, including a considerable

amount of information that could have been protected pursuant to Exemption 5 of the FOIA.

OIP has protected only a limited amount of information within the remaining redacted portions

of the Report on the basis of the deliberative process privilege.  The limited portions of the

Report withheld by OIP pursuant to Exemption 5 fall into two inter-related, and partly

overlapping, categories of pre-decisional, deliberative information:

- (b)(5)-1: deliberations about applications of law to specific factual scenarios, in which the Special Counsel explains to the Attorney General the basis for his charging decisions; and

- (b)(5)-2: deliberations about charging decisions not to prosecute, which would reveal criminal charges considered but not pursued against certain named individuals under investigation.

Each of these categories will be addressed in turn.

*(b)(5)-1: Deliberations about Application of Law to Specific Factual Scenarios*

29.  The material coded as "(b)(5)-1" consists of the Special Counsel's detailed

descriptions of the SCO's analysis of pertinent criminal statutes and legal theories, and how

those laws apply to the evidence uncovered during the course of the SCO investigation.  In these

portions of the Report, the Special Counsel provides insight into the frank and candid

deliberations of the SCO regarding the application of criminal laws to relevant facts.

30. The information withheld in this category is pre-decisional, in that it explains the

thought processes and application of law to specific facts that were considered by the Special

15

Counsel prior to reaching decisions on the specific matters discussed in the Report that resulted in criminal charges.  This information is deliberative because it consists of the Special Counsel's descriptions of legal theories applicable to the evidence gathered by SCO staff, assessments of the strengths of potential defenses, discussions about possible factual hurdles and weight of evidence issues, and evaluation of potential prosecutorial considerations pertinent to the factual scenarios presented.  Release of this information could provide individuals with a road map as to how the Department assesses novel issues or application of the law in areas where prosecutions are infrequent.  Disclosure of this information also could result in individuals altering their behavior when engaging in certain activity in an effort to skirt criminal responsibility while still engaging in unlawful conduct.

31. The Special Counsel's Report extensively outlined the factual information obtained as a result of the years' long investigation conducted by the SCO, the majority of which has been released (unless separately protected by other FOIA exemptions).  The Report also provides detailed explanations of the various laws and legal theories applicable to the evidence gathered by the SCO.  Where the Special Counsel's application of the law to specific facts resulted in a decision to pursue criminal charges, and where information supporting criminal charges has been publicly disclosed, such as in criminal indictments, that information has generally not been withheld on the basis of Exemption 5.  However, where the Report provides privileged, internal analysis or detailed assessments of the strength of evidence, potential factual hurdles, or viability of legal action which preceded the Special Counsel's charging decisions, that information has been withheld as disclosure would risk significant harm to the integrity of the Department's decision-making process.

32. The pre-decisional deliberations presented in the Report reflect the internal processes of the Special Counsel and his staff, and these deliberations go to the core of the Department's law enforcement mission.  Department attorneys and other personnel engage daily in in-depth factual investigations, evidence-gathering, and careful, frank, comprehensive analysis of the law and evidence specific to the wide range of investigations under their review.  These investigations and the evidence and facts collected therefrom, in turn, directly inform Department attorneys' evaluative processes in which they assess whether violations of law have occurred, and the relative strengths, weakness, and challenges presented by potential cases, all of which ultimately informs the Department's decisions on whether to pursue prosecutions.  This preliminary application of law to facts is reflective of the evolving decision-making process of DOJ agents and attorneys in their singular role of investigating and prosecuting federal crimes.  With respect to the work of the SCO and of the FBI agents and attorneys assigned to the SCO, this decision-making process is reflected throughout the Special Counsel's Report, but most notably in Volume 1, Section V.

33. OIP withheld, on the basis of Exemption 5, descriptive details about SCO's deliberations leading up to the prosecution and declination decisions presented in the Report.  This information is part and parcel to the core deliberative process of the Department outlined above, and reflects the substantive and complex prosecutorial decision-making process that led to, and preceded, the Special Counsel's conclusions.

*(b)(5)-2: Deliberations about Charging Decisions Not to Prosecute*

34. Relatedly, the information coded as "(b)(5)-2," also consists of application of criminal law to evidentiary facts and on that basis is protected by the deliberative process privilege for the same reasons as (b)(5)-(1), discussed above.  But the protections afforded this

category differ, and extend more broadly, in two respects.  All of the information in this category pertains to charges that were contemplated but not pursued.  Accordingly, the charging decisions not to prosecute in particular instances, and the identities of the individuals against whom those criminal charges were considered but not pursued,[9] are also protected pursuant to the deliberative process privilege.

35. As explained above, information regarding the application of law to specific facts leading up to charging decisions is pre-decisional and deliberative.  Where that analysis resulted in a decision not to charge, the elements of the contemplated prosecutions also are protected by the deliberative process privilege.  Inasmuch as this information recounts the thinking and considerations of the Special Counsel prior to reaching decisions on these matters, it is pre-decisional.  This information is also deliberative, because it reflects contemplated charges against individuals that were considered, but not pursued, as the Special Counsel formulated his conclusions on these matters.

36. Moreover, the decisions themselves are not final in the sense that, as in all cases in which prosecution is not otherwise barred, the Department is not precluded from bringing such charges in the future, were evidence developed that supported the principles of federal prosecution governing the standards for initiating criminal prosecution.  If internal charging considerations such as these were released, the Department's prosecutorial interests would be severely compromised should a later decision be made to bring charges based on development of

---

[9] The identities of individuals not charged are also withheld in conjunction with FOIA Exemptions 6 and 7(C), discussed *infra* in ¶¶ 68-71, and coded as (b)(6)/(7)(C)-2.  Additionally, some charges were considered, but not pursued, related to facts arising from the Roger Stone criminal case.  In those instances, information pertaining to this matter is also withheld in conjunction with FOIA Exemptions 6 and 7(C), discussed *infra* in ¶¶ 72-75, and coded as (b)(6)/(7)(C)-3.

additional evidence.  Department employees must have confidence that they can share legal analysis, including honest assessments of potential prosecutorial strategies and vulnerabilities, without fear that those assessments will be revealed to potential legal adversaries or alert potential targets of investigations and prosecutions.

37. If the subjects and details of potential DOJ prosecutions were routinely released to the public whenever a charge is not pursued at a given point in time, Department attorneys would be wary about providing comprehensive legal analysis and viewpoints from all angles critical to ensure the quality of the decision-making process.  More broadly, Department staff would be hesitant to memorialize the thinking behind their decisions for fear that by so doing, the deliberations that went into those decisions would be publicly disclosed.  It is therefore critical that DOJ employees' candid views and legal analysis are protected from disclosure in this instance.

*Segregation of Non-Exempt Information*

38. In withholding information pursuant to the deliberative process privilege, OIP took great care to limit the application of Exemption 5.  Notably, the application of Exemption 5 was limited to the Special Counsel's description of the considerations leading to his charging decisions, primarily in Volume 1, Section V of the Report, and in a few limited instances elsewhere in Volume 1 where legal analysis was applied to the specific evidence at hand in reaching a decision not to prosecute at this time.  Only those portions of the Report that would reveal the SCO's deliberative process have been protected under Exemption 5.  Accordingly, as much information as possible has been segregated for release (unless protected by other FOIA exemptions).

Exemption 7

39. FOIA Exemption 7 exempts from mandatory disclosure "records or information compiled for law enforcement purposes" when disclosure could reasonably be expected to cause one of the harms enumerated in the subparts of the exemption. 5 U.S.C. § 552(b)(7).

*Exemption 7: Threshold*

40. As a threshold matter, information withheld pursuant to Exemption 7 and its subparts must be or have been compiled for law enforcement purposes. The Report is a product of the investigations carried out by FBI agents, DOJ prosecutors, and Special Counsel Robert S. Mueller III, the latter of which was authorized by Acting Attorney General Rod J. Rosenstein on May 17, 2017, by Order 3915-2017. Special Counsel Mueller's investigation was governed by Department regulations. 28 C.F.R. § 600, et seq. As discussed above, the Special Counsel was appointed to conduct the investigation into Russian interference with the 2016 presidential election, and was authorized to prosecute federal crimes arising from the investigation. Under the terms of his appointment, Special Counsel Mueller was authorized to "conduct the investigation confirmed by then-FBI Director James B. Comey in testimony before the House Permanent Select Committee on Intelligence on March 20, 2017, including (i) any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump; and (ii) any matters that arose or may arise directly from the investigation; and (iii) any other matters within the scope of 28 C.F.R. § 600.4(a)." *See* DOJ Order No. 3915-2017. The Report was compiled in the Special Counsel's fulfillment of that role, to conduct the aforementioned investigation. Thus, the entirety of the Report was compiled for law enforcement purposes, and the information OIP has protected pursuant to Exemption 7 subparts (7)(A), (7)(B), and 7(C) readily meets the exemption's threshold.

20

41. As stated previously, the Special Counsel was assisted in his investigation by full-time FBI personnel who were assigned to the SCO, but who retained all legal authorities related to their status as FBI employees.  The FBI is the primary investigative agency of the federal government, with authority and responsibility to:  investigate all violations of federal law not exclusively assigned to another agency; conduct investigations and activities to protect the United States and its people from terrorism and threats to national security; and further the foreign intelligence objectives of the United States.  *See* Exec. Order No. 12333, 46 Fed. Reg. 59,941 (December 4, 1981) (as implemented by the Attorney General's Guidelines for Domestic FBI Operations); 28 C.F.R. § 0.85; 28 U.S.C. 533 & 534.  To the extent that information in the Report derives from the authorized law enforcement activities of these FBI agents, or pertains to national security or criminal investigations that remain ongoing at the Department of Justice or within the intelligence community, that information was and remains compiled for purposes consistent with the FBI's law enforcement functions.

Exemption 7(A)

42. FOIA Exemption 7(A) protects records or information "compiled for law enforcement purposes" when disclosure "could reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. § 552(b)(7)(A).  Information may be withheld pursuant to Exemption 7(A) when it is established that (1) the information relates to pending or prospective investigations or other enforcement proceedings, and (2) disclosure of the information could reasonably be expected to interfere with the identified enforcement proceedings.

43. The information withheld in the Report pursuant to 7(A) pertains to a number of pending law enforcement prosecutions and investigations.  This information relates both to pending criminal and national security investigations and prosecutions.

44. As a result of various investigations, the SCO obtained numerous indictments, of which the following criminal and national security prosecutions are public and ongoing: *United States v. Internet Research Agency, LLC, et al.* (D.D.C. No. 1:18-cr-00032), *United States v. Netyksho, et al.* (D.D.C. No. 1:18-cr-00215), *United States v. Flynn* (D.D.C. No. 1:17-cr-00232), *United States v. Gates* (D.D.C. No. 1:17-cr-00201), *United States v. Kilimnik* (D.D.C. No. 1-17-cr-00201), and *United States v. Stone* (D.D.C. No. 1:19-cr-00018).[10]   Other United States Attorney's Offices have similarly pending, related prosecutions, including *United States v. Khusyaynova* (E.D.V.A. No. 1:18-mj-00464) and *United States v. Morenets et al.* (W.D. Pa. 1:18-cr-00263).  The Defendants in some of these prosecutions remain fugitives, and there remain unindicted co-conspirators, all of whom could commit further illegal activities similar to those charged.[11]   Moreover, additional investigations related to the work of the SCO, or targeting related actors, remain pending, under the criminal and national security authorities of DOJ. Some of these investigations now are being handled by U.S. Attorney's Offices and the National Security Division, as well as by the FBI in conjunction with other partners in the intelligence community.

*Pending Prosecutions*

45. Portions of the Report withheld pursuant to Exemption 7(A) consist of evidence and information collected over the course of the Special Counsel or other investigations which have been used in criminal and national security enforcement proceedings against, among others, the

---

[10] The Special Counsel's Office also indicted the following individuals, all of whom have been sentenced:  Michael Cohen, Paul Manafort, George Papadopolous, Richard Pinedo, and Alex van der Zwaan.  A case against Richard Gates in the Eastern District of Virginia has been dismissed.
[11] An indictment contains only allegations of criminal conduct.  The Department is offering no opinion about the guilt or innocence of any charged defendant.  Every defendant is presumed innocent unless and until proven guilty beyond a reasonable doubt in court.

above-listed indicted individuals and entities.  None of the information that has been withheld

has been officially, publicly disclosed in connection with these ongoing proceedings, except for

information that may be public but that the government may not disclose pursuant to court rules

and orders.  Because these identified cases remain ongoing, they would undoubtedly be harmed

by a premature release of the prosecution's evidence or information against the Defendants.

Release of this information would reveal the scope, limits, and direction of the investigations and

prosecutions, which would allow the indicted individuals and others (e.g., unindicted co-

conspirators) to circumvent efforts to bring them to justice by giving them an unprecedented

insight into the strengths and weaknesses of the investigations and resulting information and

evidence utilized in their indictments and criminal cases.  Disclosing information beyond what

has generally been officially, publicly disclosed regarding the evidence and information known

to the Department also risks that adversarial third parties, including hostile foreign powers, could

use that information to fabricate or destroy evidence, tamper with, improperly influence or

intimidate witnesses, in an effort to disrupt the criminal justice process.

　　　46. Release of this information would provide a comprehensive picture of the Special

Counsel's and other DOJ components' investigations that could be utilized by the Defendants or

adversarial third parties to thwart the pursuit of justice, interfering with the Department of

Justice's prosecution of these pending law enforcement cases.  Such release would also be

incompatible with court orders and rules prohibiting the disclosure of information relevant to

ongoing criminal cases and restricting discovery for sensitive information about ongoing national

security investigations.

*Pending Investigations*

47. Additionally, portions of the Report withheld pursuant to Exemption 7(A) consist of information, the disclosure of which is reasonably expected to interfere with pending criminal and national security investigations.  As noted above, the SCO has already obtained indictments in cases stemming directly from its investigation into Russian interference, and information relating directly to those cases has been withheld pursuant to Exemption 7(A), but SCO's investigations also have broader implications for ongoing criminal and national security investigations.  Prior to and during the course of the SCO investigation, evidence of potential criminal activity that was outside the scope of the Special Counsel's jurisdiction was periodically discovered.  As a result, law enforcement authorities, principally the FBI and other DOJ components, conducted further investigative activities outside the auspices of the SCO.  In addition, the Special Counsel's investigation into the Russian actors' efforts to influence the 2016 presidential election also has broader implications for ongoing national security investigations conducted by the FBI and its intelligence community partners.  Releasing non-public details about the specifics and contours of the SCO investigatory activities would risk undermining these ongoing criminal and national security investigations.

48. These ongoing criminal and national security investigations would be adversely affected by revealing information or activities that are (or are not) of interest to investigators, areas where there may be gaps in investigators' knowledge about such information or activities that could be exploited by targets and hostile foreign powers, who investigators have already spoken with (or who they have not spoken with), what evidence or intelligence has been gathered (or not gathered), what exactly was said (or not) or gathered (or not), and whether individuals or entities are (or are not) of investigative interest.  Further, disclosing information regarding

evidence or intelligence already known or obtained by DOJ would risk influencing, compromising, or tainting information that may be obtained by other sources, risking fabrication or falsification of future testimony, destruction or alteration of evidence, or attempts to intimidate or influence potential sources.

49.  Moreover, disclosing the specific techniques and procedures used by investigators and the specific circumstances of their use, beyond those which have already been made public, would adversely impact the Department's ongoing criminal and national security investigations for the same reasons explained above.  Such disclosure would also create the risk of targets, subject, and adversaries – including, in the case of national security investigations, hostile foreign powers –undermining or developing countermeasures to thwart these techniques.[12]

50. All of the information protected pursuant to Exemption 7(A) within the Report relates to ongoing criminal and national security cases now being prosecuted by, or to ongoing criminal and national security investigations being pursued by, DOJ and its intelligence community partners.  Release of any additional material beyond what has already been disclosed in the public domain would risk interference with these law enforcement matters for the reasons detailed above.  In addition, as noted above, local court rules prevent the Department from making public statements that could prejudice the trial in charged cases or adversely affect the due administration of justice.  Disclosure of such information could harm the ongoing prosecution by increasing the risk that such disclosures would jeopardize the integrity of the prosecution and create undue litigation risk.  In each charged case, the Department considered the local criminal rule concerning pretrial publicity in making redactions to the Report.

---

[12] For these reasons, this information is also protected by Exemption 7(E), and the risk of circumvention of these techniques and procedures is discussed in more detail *infra*.

*Segregation of Non-Exempt Information*

51. A substantial amount of information pertaining to ongoing and current enforcement proceedings has been disclosed within the Report, in public statements made by Attorney General Barr, and in public indictments.  OIP has thoroughly reviewed the information that remains withheld from release on the basis of Exemption 7(A), and has determined releasing any further information could reasonably be expected to interfere with enforcement proceedings.

Exemption 7(B)

52. Exemption 7(B) of the FOIA protects from disclosure "records or information compiled for law enforcement purposes [the disclosure of which] would deprive a person of a right to a fair trial or an impartial adjudication."  5 U.S.C. § 552(b)(7)(B).  The protections afforded by Exemption 7(B) are meant to prevent prejudicial publicity that could impair a court proceeding.  In withholding information pursuant to Exemption 7(B), a two-part standard is employed:  there must be a pending or truly imminent trial or adjudication, and it must be more probable than not that disclosure would seriously interfere with the fairness of those proceedings.

53. The portions of the Report withheld pursuant to Exemption 7(B) consist of information pertaining to Roger Stone and/or his pending criminal case in the U.S. District Court for the District of Columbia.  As noted above, and described more fully below, local court rules prevent the government from making public statements that would impair a fair trial or adversely affect the due administration of justice.[13]  Mr. Stone's case is currently scheduled for trial on November 5, 2019, and the court has entered specific orders further restricting statements by the parties in light of public statements previously made by Mr. Stone.  *See United States v. Stone*,

---

[13] As discussed in the previous section, release of information that could harm ongoing law enforcement activities also would be incompatible with court rules prohibiting the disclosure of information relevant to ongoing criminal cases.

1:19-cr-00018, Scheduling Order, ECF No. 65 (Entered: March 15, 2019).  As such, the withheld information clearly relates to a truly imminent trial and circumstances where the court has taken additional steps to assure public statements by the parties do not adversely affect the trial.

54.  The prosecution of Mr. Stone has been at the center of high-profile media coverage and intense public scrutiny since he was indicted in January 2019.  Thus, any information released regarding Mr. Stone or his case contained in the Report is likely to receive the same attention, which could influence potential jurors.  D.C. District Court Local Criminal Rule 57.7(b)(1) states that it is the duty of a lawyer or law firm "not to release or authorize the release of information or opinion which a reasonable person would expect to be disseminated by means of a public communication, in connection with pending or imminent criminal litigation with which the lawyer or the law firm is associated, if there is a reasonable likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice."  This rule applies to all charged cases, not just to the case of Mr. Stone.  In addition, Rule 57.7 authorizes the Court "[i]n a widely publicized or sensational criminal case" to "issue a special order governing such matters as extrajudicial statements by parties, witnesses and attorneys likely to interfere with the rights of the accused to a fair trial by an impartial jury."  Pursuant to that authority, on February 15, 2019, Judge Amy Berman Jackson entered an order stating that "[c]ounsel for the parties and the witnesses must refrain from making statements to the media or in public settings that pose a substantial likelihood of material prejudice to this case."  Dkt. No. 36, amended by Minute Order (February 21, 2019),[14] at 3.  Any further release

---

[14] On February 21, 2019, Judge Jackson as a result of conduct by Mr. Stone modified her prior order as follows:  "[T]he conditions of defendant's pretrial release are hereby modified to include the condition that, and the February 15, 2019 media communications order is hereby modified to provide that, the defendant is prohibited from making statements to the media or in public settings about the Special Counsel's investigation or this case or any of the participants in

of the protected information would risk running afoul of the letter and the spirit of the court's rulings concerning public statements by the parties.

55. Judge Jackson, in the February 15, 2019 Order, explained the reasoning underlying her decision to enter the order as follows: "to safeguard the defendant's right to a fair trial; to ensure that the Court has the ability to seat a jury that has not been tainted by pretrial publicity;" and "to maintain the dignity and seriousness of the courthouse and these proceedings." *See id.*

56. Similarly, and in light of the extraordinary media attention surrounding his case, the litigation that already has ensued concerning pretrial publicity in the case, and the court's multiple orders further restricting public statements in the case, OIP has invoked Exemption 7(B) to protect those portions of the Report that we have determined would, more probably than not, seriously interfere with the fairness of Mr. Stone's impending jury trial.

*Segregation of Non-Exempt Information*

57. OIP withheld, pursuant to Exemption 7(B), information governed by the local rule and additional court orders. Given the circumstances of this case and the impact that release of any further information regarding Mr. Stone's case may have on his right to a fair trial, no further non-exempt information may be segregated for release.

---

the investigation or the case. The prohibition includes, but is not limited to, statements made about the case through the following means: radio broadcasts; interviews on television, on the radio, with print reporters, or on internet based media; press releases or press conferences; blogs or letters to the editor; and posts on Facebook, Twitter, Instagram, or any other form of social media. Furthermore, the defendant may not comment publicly about the case indirectly by having statements made publicly on his behalf by surrogates, family members, spokespersons, representatives, or volunteers." While the amended order applied specifically to Mr. Stone as a result of public statements he had made about the case, the government understood that the court had heightened concern over pre-trial publicity, given the prior conduct of Mr. Stone, and that the government too should restrict its public statements about the case so as to not harm the investigation or risk further litigation on pretrial publicity.

Exemptions 6 and 7(C)

58. Both Exemptions 6 and 7(C) of the FOIA protect against unwarranted invasions of individuals' personal privacy.  Exemption 6 protects from disclosure information the release of which "would constitute a clearly unwarranted invasion of the personal privacy" of individuals. 5 U.S.C. § 552(b)(6).  Exemption 7(C) protects information "compiled for law enforcement purposes" when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  All of the information withheld in the Report on personal privacy grounds is protected by both Exemption 6 and Exemption 7(C).

59. When determining whether to withhold information pursuant to either Exemption 6 or Exemption 7(C), OIP assesses whether there is a more than de minimis privacy interest at stake, whether there is any "FOIA public interest" in disclosure, and if so, balances those interests to determine whether protection of the information is appropriate.  The balancing test for Exemption 6 uses a "would constitute a clearly unwarranted invasion of personal privacy" standard, while the balancing test for Exemption 7(C) uses the lower standard of "could reasonably be expected to constitute an unwarranted invasion of personal privacy."

60. As established above, all of the information in the Report was clearly "compiled for law enforcement purposes."  *See* ¶ 40-41.  Accordingly, Exemption 7(C), with its "could reasonably be expected to" standard, is applicable to all of the privacy redactions made in the Report.  Nonetheless, OIP has determined that the higher Exemption 6 balancing standard (where disclosure would constitute a clearly unwarranted privacy invasion) is also met for all of the information withheld to protect individuals' privacy.  As such both exemptions will be addressed for each category of protected information.

61. In conducting the balancing analysis for both Exemptions 6 and 7(C), the FOIA public interest considered is limited to information which would shed direct light on DOJ's performance of its mission:  to enforce the law and defend the interests of the United States according to the law; to ensure public safety against threats foreign and domestic; to provide federal leadership in preventing and controlling crime; to seek just punishment for those guilty of unlawful behavior; and to ensure fair and impartial administration of justice for all Americans.

62. Information withheld throughout the Report pursuant to Exemptions 6 and 7(C) falls into four categories:

- (b)(6)/(7)(C)-1: names, social media account information, and other contact information of unwitting third parties;

- (b)(6)/(7)(C)-2: names and personally-identifiable information about individuals not charged by the SCO;

- (b)(6)/(7)(C)-3: information concerning a subject of the investigation by the SCO; and

- (b)(6)/(7)(C)-4: names, social media account information, contact information, and other personally-identifiable information of individuals merely mentioned in the Report.

Each of these categories will be addressed in turn.

*(b)(6)/(7)(C)-1: Unwitting Third Parties*

63.   The first category of privacy-based withholdings pertains to "unwitting third parties" and is coded as "(b)(6)/(7)(C)-1."  OIP has withheld names, social media account information, and other contact information that could reveal the identities of these third parties, who are all individuals, and who were unknowingly involved in election interference efforts carried out by

Russian nationals. These individuals were unwittingly utilized by – and in that sense, were essentially victimized by – interference efforts emanating from Russia, because they apparently did not know that their contacts or activities involved Russian nationals.[15] The publicly-released information in the Report extensively documents the operations in the United States involving fake Internet Research Agency (IRA)-controlled social media accounts, including Facebook, YouTube, and Twitter, posing as American citizens, or pretending to be affiliated with U.S. political or grassroots organizations. In connection with these operations, the Report identifies numerous authentic social media users, reporters, and individuals associated with the Trump campaign who – apparently not knowing that the IRA-controlled accounts and personas were fake – were contacted by, or interacted or engaged with the IRA's social media activities. The publicly-released information in the Report also extensively documents the Main Intelligence Directive of the General Staff (GRU)'s computer intrusion operations, including the GRU hacking directed at the Clinton campaign and dissemination of hacked materials through the fictitious online personas DCLeaks and Guccifer 2.0. In connection with discussions of these operations, the Report identifies reporters who – again, apparently not knowing that the GRU-controlled personas were fake – were contacted by DCLeaks and Guccifer 2.0 as a part of GRU's efforts to promote release of the hacked materials. It is these unwitting third parties whose

---

[15] As reflected in the Special Counsel's statement on May 29, 2019, indictments returned by the Special Counsel contain allegations, and in the publicly released report, neither the Special Counsel nor the Department were commenting on the guilt or innocence of any charged defendant. Every defendant is presumed innocent unless and until proven guilty beyond a reasonable doubt in court. *See* Special Counsel Robert S. Mueller III Statement on Investigation into Russian Interference in the 2016 Presidential Election (May 29, 2019), *available at* https://www.justice.gov/opa/speech/special-counsel-robert-s-mueller-iii-makes-statement-investigation-russian-interference.

names, social media account information, and other contact information has been protected in this category.

64. In limited instances, OIP has withheld the names of Facebook groups in order to protect the individuals who can be identified through their online interactions with the Facebook groups.  In other words, the Facebook groups can be tied to the individuals who are members of and interact within each group.  The Facebook group names have been withheld in order to protect these individuals.

65. As noted above, in order to withhold information pursuant to Exemptions 6 and 7(C), a balancing of the privacy interests of the individuals mentioned in the Report against any FOIA public interest in disclosure must weigh in favor of non-disclosure.  Given the intense public interest surrounding the SCO's work as well as the public and media scrutiny, and partisan attacks, that occur when any new fact is made public, disclosure of the identities and associated social media/contact information of these individuals, who are merely victims of interference operations emanating from Russia, would certainly subject these individuals to unwarranted attention, harassment and potential harm, that gives rise to a significant privacy interest.

66. In assessing whether there is a FOIA public interest in disclosure of the names of these unwitting third parties, OIP considered the mission and role of DOJ and whether revealing the identities of these individuals referenced in the Report sheds light on the operations and activities of DOJ.  OIP determined that releasing the individuals' identities would in no way enhance the public's understanding of how the Department carries out its duties, particularly in light of the wealth of information that has been disclosed about the results of the SCO's investigation.

67. I have determined that the significant privacy interests of these individuals outweighs the dearth of public interest in disclosure of their identities and associated social media/contact information.  As such, this information has been protected pursuant to FOIA Exemptions 6 and 7(C) because its release would constitute a clearly unwarranted (and could reasonably be expected to constitute an unwarranted) invasion of the personal privacy of these unwitting third parties.

*(b)(6)/(7)(C)-2: Individuals Not Charged by the Special Counsel's Office*

68. The second category of privacy-based withholdings pertains to individuals not charged by the Special Counsel's Office and is coded as "(b)(6)/(b)(7)(C)-2."  OIP has withheld names and other personally-identifiable information that could reveal the identities of these individuals.[16]  In the Report, the Special Counsel describes the bases for his decisions not to pursue criminal charges against these individuals. The Report details charges that were considered or were potentially applicable to these individuals, but which ultimately were not pursued by SCO.  In so doing, the Report also provides information relevant to the Special Counsel's evaluation, including specific facts and details about the individuals' actions.  In some instances, those circumstantial details, in conjunction with information that is already publicly known, would reveal the identities of these individuals.  In those instances, these circumstantial details have also been protected on the basis of Exemptions 6 and 7(C).

69. As noted above, in order to withhold information pursuant to Exemptions 6 and 7(C), a balancing of the privacy interests of the individuals mentioned in the Report against any FOIA public interest in disclosure must weigh in favor of non-disclosure.  Given the intense public

---

[16] The identities of these individuals are also withheld in conjunction with FOIA Exemption 5, discussed *supra* in ¶¶ 34-37, and coded as (b)(5)-2.

interest surrounding the SCO's work as well as the public and media scrutiny, and partisan attacks, that occur when any new fact is made public, disclosure of the identities of these individuals, who were ultimately not charged with any crime, would certainly subject these individuals to unwarranted harassment and potential harm.  OIP also considered the stigmatizing effect that being associated with a criminal investigation carries.  Moreover, having it publicly revealed that criminal charges against these individuals were contemplated (particularly in this context), notwithstanding that no charges were ultimately filed, would very likely subject them to significant embarrassment, reputational harm, reprisal, or even physical harm should their connection to the SCO investigation be publicized.

70. In assessing the FOIA public interest in disclosing the identities of these individuals who were ultimately not charged with any crime, OIP considered the mission and role of DOJ and whether there is a FOIA public interest in revealing the identities of these individuals named in the Report.  OIP determined that although the release the individuals' identities would be something that the public at large is generally interested in, disclosure of the identities of uncharged individuals in this one investigation would not significantly enhance the public's understanding of how the Department carries out its duties.  In reaching this assessment, OIP is particularly mindful of the wealth of information that has been disclosed about the results of the SCO's investigation, and about charges that were pursued in criminal indictments that were issued by SCO against numerous other individuals and entities.

71. I have determined that the significant privacy interests of these uncharged individuals in being associated with this law enforcement investigation outweighs the general public interest in disclosure of their names and of information that would identify them.  As such, this information has been protected pursuant to FOIA Exemptions 6 and 7(C) because its release

would constitute a clearly unwarranted (and could reasonably be expected to constitute an unwarranted) invasion of the personal privacy of these uncharged individuals.

*(b)(6)/(7)(C)-3: Information Concerning a Subject of the Investigation by the SCO*

72. The third category of privacy-based withholdings protects information pertaining to an individual who was a subject of the investigation by the SCO, and is coded as "(b)(6)/(7)(C)-3." Within this category, OIP has protected non-public information pertaining to Roger Stone and/or his pending criminal case in the United States District Court for the District of Columbia. The redactions in this category include information pertaining to Mr. Stone, but also to other individuals discussed in connection with the facts related to Mr. Stone's criminal case.[17] The information related to the investigative subject or subjects that has been protected in this category would, if released, clearly invade the individual's or individuals' personal privacy and in particular, Mr. Stone's ability to receive a fair trial and to respond to the charges against him in court without compounding the pre-trial publicity that his case has already received.

73. As noted above, in order to withhold information pursuant to Exemptions 6 and 7(C), a balancing of the privacy interests of the individuals mentioned in the Report against any FOIA public interest in disclosure must weigh in favor of non-disclosure. Given the intense public interest surrounding the SCO's work as well as the public and media attention surrounding this individual's ongoing court case, and the significant attention that any new fact made public will receive, disclosure of any additional non-public information about the individual or individuals protected in this category would certainly subject them to unwarranted harassment, stigma, further reputational or even physical harm. Individuals have protectable privacy interests in

---

[17] To the extent that such individuals also fall within another Exemption 6/7(C) category, their information is additionally and independently protected for the reasons set forth in the discussions of those categories.

premature release of investigatory details relevant to criminal law enforcement proceedings against them, beyond what is made public in connection with their criminal justice proceedings. That interest is magnified here, where Mr. Stone's trial is imminent, and any further public disclosure of details regarding the case against him will impact his ability to amount an effective defense and deprive him of the right to a fair trial.

74. In assessing the FOIA public interest in disclosing information about the individual or individuals protected in this category, OIP considered the mission and role of DOJ and whether there is a FOIA public interest in revealing any further information in the Report pertaining to them as a subject or subjects of the Special Counsel's investigation.  OIP determined that although release of the investigatory details about this individual or individuals beyond those that have already been disclosed by the Department would be something the public at large is generally interested in, release of additional information at this time, rather than during the course of Mr. Stone's imminent trial, would not significantly enhance the public's understanding of how the Department carries out its duties.  In reaching this assessment, OIP is particularly mindful of local court rules that prevent the government from making public statements that would impair a fair trial or adversely affect the due administration of justice, and that the court has entered specific orders further restricting statements by the parties in light of public statements previously made by Mr. Stone.[18]  In light of these circumstances, OIP took into consideration that the public interest in learning the details about and basis for the Department's criminal case against this individual will be served in the ordinary course, through the public disclosures made at trial.

---

[18] *See* D.C. District Court Local Criminal Rule 57.7(b)(1); <u>United States v. Stone</u>, 1:19-cr-00018, ECF No. 36 (February 15, 2019), *amended by* Minute Order (February 21, 2019), at 3.

75. I have determined that the significant privacy interests of this individual or individuals and the substantial likelihood that further disclosures about the government's case against Mr. Stone will adversely affect his imminent trial, outweigh the public interest in premature disclosure of the investigatory details related to him in the Report.  As such, this information has been protected pursuant to FOIA Exemptions 6 and 7(C) because its release would constitute a clearly unwarranted (and could reasonably be expected to constitute an unwarranted) invasion of the personal privacy of individuals related to Mr. Stone's case.

*(b)(6)/(7)(C)-4: Individuals Merely Mentioned*

76. The fourth and final category of privacy-based withholdings pertains to individuals who are merely mentioned in the Report, who were neither subjects of the SCO investigation nor charged by the SCO with any crime and who were also not unwitting third parties, who are separately coded as "(b)(6)/(7)(C)-1."  OIP has withheld the names, social media account information, contact information, and other personally-identifiable information of these individuals who are merely mentioned in the Report under the code "(b)(6)/(7)(C)-4."  These "mere mentions" include third parties who are mentioned only in association with individuals of interest to the investigation (but who are not themselves subjects or targets of the investigation); individuals who were mentioned in relation to or were victims of GRU hacking and dumping operations; assorted contact information, including social media account information, for these and other individuals mentioned throughout the Report; and names and related personally-identifiable information of individuals for whom evidence of potential criminal activity was referred by the Special Counsel to appropriate law enforcement authorities.  With respect to the latter group of individuals, who are mentioned in Section B ("Referrals") of Appendix D to the Report, these individuals were not subjects of the SCO investigation.  Rather, they are included

in an appendix to the Report only because evidence of potential criminal activity periodically surfaced during the course of the SCO's investigation.[19]

77. As noted above, in order to withhold information pursuant to Exemptions 6 and 7(C), a balancing of the privacy interests of the individuals mentioned in the Report against any FOIA public interest in disclosure must weigh in favor of non-disclosure.  Given the intense public interest surrounding the SCO's work as well as the public and media scrutiny, and partisan attacks, that occur when any new fact is made public, as well as the stigmatizing effect that being associated with a criminal investigation carries, disclosure of the identities or social media/contact information of these individuals, who are merely mentioned in the Report, but who were not subjects of the investigation, nor pursued or considered for criminal charges by the SCO in any way, would certainly subject these individuals to unwarranted harassment and potential harm.  Moreover, with respect to the individuals mentioned as "referrals" in Appendix D, where these individuals are mentioned in the context of evidence that surfaced regarding potentially criminal activity, but where no assessment or judgment is made by the Special Counsel regarding that evidence, the privacy interest is particularly significant.

78. In assessing the FOIA public interest in disclosing the names, social media/contact information, or other personally-identifiable information of these individuals who were merely mentioned in the Report, OIP considered the mission and role of DOJ in assessing whether there is a FOIA public interest in revealing the identities of these individuals mentioned in the Report.

---

[19] Two entries in Section B of Appendix D relate to an individual or individuals whose privacy information has been categorized and coded as (b)(6)/(7)(C)-3, discussed *supra* in ¶¶ 72-75. Another entry in Section B of Appendix D relates to an individual against whom the SCO contemplated, but did not pursue, charges related to the Special Counsel's investigation. Although information about this individual is considered a "mere mention" in the context of Appendix D, this individual's privacy information has separately been categorized and coded as (b)(6)/(7)(C)-2, elsewhere in the Report.

OIP determined that releasing the individuals' identities, social media/contact information, or other personally-identifiable information would in no way enhance the public's understanding of how the Department carries out its duties, particularly in light of the wealth of information that has been disclosed about the results of the SCO's investigation.  With respect to the individuals mentioned as "referrals" in Appendix D, the Special Counsel makes no assessment of the evidence against them but only reports that such evidence was referred elsewhere for appropriate handling.  This accounting of referrals and information that surfaced only incidentally during the course of the SCO investigation, where the individuals were not subjects of the SCO investigation, therefore would not significantly enhance the public's understanding of how the Department carries out its duties.

79. I have determined that the significant privacy interests of these individuals outweighs the dearth of public interest in disclosure of their names, their social media account or contact information, or other personally-identifiable information.  As such, this information has been protected pursuant to FOIA Exemptions 6 and 7(C) because as its release would constitute a clearly unwarranted (and could reasonably be expected to constitute an unwarranted) invasion of the personal privacy of these individuals merely mentioned in the Report.

*Segregation of Non-Exempt Information*

80. In each instance where privacy-based information was withheld in categories (b)(6)/(7)(C)-1, (b)(6)/(7)(C)-2, and (b)(6)/(7)(C)-4, only the precise information that would reveal the identities, social media/contact information, or other information identifiable to the individuals was withheld pursuant to Exemptions 6 and 7(C).  When no other FOIA exemptions were applicable, only the specific information that, if released, would result in an unwarranted invasion in the privacy of individual was redacted within sentences in order to segregate and

release as much non-exempt information as possible to Plaintiffs and the public.  For category (b)(6)/(7)(C)-3, investigatory details were withheld in consideration of the significant privacy interests of the individual or individuals, which outweigh the public interest in premature disclosure of the investigatory details related to the government's case against Mr. Stone in advance of his imminent trial, in combination with FOIA Exemptions 7(A) and 7(B).  No additional, non-exempt information from category (b)(6)/(7)(C)-3 is appropriate for release.

<u>Exemption 7(E)</u>

81. Exemption 7(E) of the FOIA protects "records or information compiled for law enforcement purposes" when disclosure "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  This exemption affords categorical protection to techniques and procedures used in law enforcement investigations.  It protects techniques and procedures that are not well-known to the public, as well as non-public details concerning the use of publicly-known techniques and procedures.

82. Information about and derived from the investigative activities of FBI and DOJ personnel, including those assigned to SCO, are contained in the Special Counsel's Report.  In this instance, the information withheld in the Report pursuant to Exemption 7(E), if disclosed, would potentially compromise sensitive sources, methods, or techniques, or could harm ongoing intelligence or law enforcement activities.  This information falls into two categories:

- (b)(7)(E)-1:  techniques and procedures authorized for and used in national security investigations; [20] and

- (b)(7)(E)-2:  details about techniques and procedures that would reveal investigative focus and scope, and circumstances, methods and fruits of investigatory operations.

Each of these categories will be addressed in turn.

*(b)(7)(E)-1: Techniques and Procedures Authorized for and Used in National Security Investigations*

83. Information withheld throughout the Report and coded as "(b)(7)(E)-1," pertains to the specific circumstances regarding the use of techniques and procedures that are authorized and used by DOJ, including prosecutors and the FBI, in national security investigations.  Within the Report, the use of these techniques and procedures were referenced by the SCO and withheld by OIP because they were used in the context of national security investigations – e.g., the Special Counsel's investigation into Russian interference in the 2016 U.S. presidential election.  However, their disclosure here would also have significant ramifications for their use in other pending and future national security investigations.  Although some of the techniques and procedures themselves may generally be known to the public, the specific circumstances of their use, including how and when they were used, are not well-known to the public.  These specific circumstances cannot be described with greater specificity without yielding sufficient information to enable wrongdoers, including hostile foreign powers, to potentially evade detection.

---

[20] The information withheld pursuant to Exemption 7(E) and coded as (b)(7)(E)-1, is also protected by Exemption 3, coded as (b)(3)-2, discussed *supra.*

84. Here, the context in which these techniques and procedures are discussed reveals specific details about when during an investigation a specific technique or procedure might be utilized, the types of information that might be sought from use of the technique, and the concurrent limitations on its use and/or utility.  These techniques and procedures, more specifically, the specific circumstances concerning their use, are meant to operate clandestinely.  As noted above, detailed information about the circumstances of their use – including how, when, and why such techniques and procedures are employed, and the capabilities of these techniques and procedures – are not publicly known.

85. Disclosure of the information withheld as (b)(7)(E)-1 may also reveal what techniques or procedures might be used in coordination, as well as specific details and non-public information about how the techniques and procedures are implemented.  When aggregated, as it is here, this information will illustrate an investigative roadmap of how law enforcement conducts a national security investigation.  Disclosure of such a roadmap here, and over time, would give sophisticated criminals, including foreign agents of the type discussed in the Report, information necessary to change their behavior and implement effective countermeasures to circumvent the FBI's investigative and intelligence-gathering efforts, as well as techniques of its intelligence community partners.  Such disclosure would have ramifications for the use of these techniques and procedures in future investigations, including counterintelligence and counterterrorism investigations.

86. The information in this category is, as noted elsewhere, also fully protected from disclosure by the National Security Act of 1947, as amended by the IRTPA, and consistent with ICD 700.  As such, the Department is prohibited from disclosing this information regarding FBI intelligence gathering techniques and procedures pursuant to the statute.

*(b)(7)(E)-2:  Details about Techniques and Procedures that would Reveal Investigative Focus and Scope, and Circumstances, Methods and Fruits of Investigatory Operations*

87. Information withheld throughout the Report and coded as "(b)(7)(E)-2," if disclosed, would reveal details about the use of a variety of sensitive techniques and procedures utilized by the FBI agents and prosecutors investigating Russian interference in the 2016 presidential election and in other cases.  Specifically, release of the information withheld in this category would reveal specific non-public details about the use of techniques and procedures regarding investigative focus; information about the gathering and/or analysis of information; information directly implicating investigative targets, dates, and scope of investigatory operations; and information that would reveal investigative strategies for utilizing particular information gathered.  As a whole, this detailed information concerning how, when, where, and why specific investigative techniques and procedures were utilized in the SCO's investigation is not publicly known.  Release of this information would disclose the methods employed by investigators and prosecutors in the collection and analysis of information, including how and from which sources they collected particular types of information and the methodologies employed to analyze it once collected.  Such disclosures would enable the subjects of other investigations to identify the precise timing and circumstances when these or similar currently-used techniques and procedures are being employed, evaluate the capabilities of these techniques and procedures, and take evasive actions or countermeasures to circumvent their effectiveness.  This would provide valuable information to investigative targets concerning the circumstances in which specific techniques were used, thereby diminishing the relative utility of these techniques and undermining the usefulness of the information collected.

88. Throughout the course of the Special Counsel's and other investigations which resulted in the Report, the FBI agents and prosecutors utilized investigative or information gathering techniques to acquire information concerning Russian interference activities.  While it is well-known that the FBI and the IC utilize a variety of investigative and information gathering techniques in law enforcement investigations, the exact details of how given techniques are implemented (investigatively and/or technically) are not public and were not in the copy of the Report released publicly by the Attorney General.  Likewise, OIP withheld this information in the Report because it would disclose the exact circumstances under which the techniques were utilized; the methods of investigative or information gathering employed, including the specific dates and times and targets of information gathering techniques; and the actual fruits of the investigative operations relied upon by the SCO.  Any release of the circumstances under which these techniques and procedures were implemented would undermine the FBI's and prosecutors' effectiveness, as well as those of intelligence community partners, in ongoing investigations and prosecutions and its future use.

*Segregation of Non-Exempt Information*

89. As is evident from the FOIA-redacted Report, a substantial amount of the information gathered in the investigation into election interference activities emanating from Russia has been released.  Only the precise information which would reveal non-public details about the Department's law enforcement techniques and procedures, the disclosure of which would risk circumvention of the law by criminal actors and hostile foreign powers, was protected on the basis of Exemption 7(E).

<u>Roger Stone Order</u>

90. Certain information contained in the Report pertaining to the Department's ongoing criminal case against Roger Stone, is also prohibited from disclosure pursuant to the February 15, 2019 court order issued in *United States v. Stone* (D.D.C. No. 1:19-cr-00018), which has been referenced elsewhere herein.  *See* Order, ECF No. 36 (February 15, 2019), *amended by* Minute Order (February 21, 2019), at 3.  Specifically, the U.S. District Court for the District of Columbia has ordered "[c]ounsel for the parties and the witnesses" to "refrain from making statements to the media or in public settings that pose a substantial likelihood of material prejudice to [Mr. Stone's] case."  *Id.*

<u>Conclusion</u>

91.  In sum, in response to Plaintiffs' FOIA requests, OIP thoroughly reviewed the full un-redacted Report submitted to the Attorney General by Special Counsel Robert Mueller pursuant to 28 C.F.R. § 600.8(c).  In light of the public release of the Report by the Attorney General on April 18, 2019, which resulted in the release of vast majority of the information therein, OIP conducted a FOIA review of only the information that was redacted in the Attorney General's release.  As a result of this FOIA review, I have determined that all of the information redacted in the Report is properly withheld and exempt from disclosure pursuant to FOIA Exemptions 3, 5, 6, 7(A), 7(B), 7(C), and 7(E), 5 U.S.C. § 552 (b)(3), (b)(5), (b)(6), (b)(7)(A), (b)(7)(B), (b)(7)(C), and (b)(7)(E).  No further, non-exempt information may be segregated for public release without violating grand jury secrecy rules, violating the National Security Act of 1947's prohibitions on disclosure of intelligence sources and methods, undermining the Department of Justice's deliberative process, violating individuals' privacy, interfering with pending law enforcement proceedings, depriving an individual's right to a fair trial, and

45

revealing sensitive law enforcement techniques and procedures which would risk circumvention of the law and threaten national security.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Vanessa R. Brinkmann
Senior Counsel
Office of Information Policy
United States Department of Justice

Executed on this 3rd day of June, 2019.