# Exhibit 7

Letter from the Attorney General,

dated April 18, 2019



# The Attorney General
Washington, D.C.

April 18, 2019

The Honorable Lindsey Graham
Chairman, Committee on the Judiciary
United States Senate
290 Russell Senate Office Building
Washington, D.C. 20510

The Honorable Jerrold Nadler
Chairman, Committee on the Judiciary
United States House of Representatives
2132 Rayburn House Office Building
Washington, D.C. 20515

The Honorable Dianne Feinstein
Ranking Member, Committee on the Judiciary
United States Senate
331 Hart Senate Office Building
Washington, D.C. 20510

The Honorable Doug Collins
Ranking Member, Committee on the Judiciary
United States House of Representatives
1504 Longworth House Office Building
Washington, D.C. 20515

Dear Chairman Graham, Chairman Nadler, Ranking Member Feinstein, and Ranking Member Collins:

I write today to provide you with a public version of the report prepared by Special Counsel Robert S. Mueller, III. Although the Special Counsel prepared this document as a "confidential report" to the Attorney General under 28 C.F.R. § 600.8(c), I have determined that the public interest warrants as much transparency as possible regarding the results of the Special Counsel's investigation. Accordingly, I have determined that the report should be released to the public and provided to Congress, subject only to those redactions required by the law or compelling law enforcement, national security, or personal privacy interests.

### *Russian Interference in the 2016 U.S. Presidential Election*

Volume I of the Special Counsel's report describes the results of his investigation into Russia's attempts to interfere in the 2016 U.S. presidential election and any coordination of those efforts with the Trump campaign and its associates. As quoted in my March 24, 2019 letter, the Special Counsel stated his bottom-line conclusion on the question of so-called "collusion" as follows: "[T]he investigation did not establish that members of the Trump Campaign conspired or coordinated with the Russian government in its election interference activities."

More specifically, the Special Counsel determined that there were two main Russian efforts to influence the 2016 election. The first involved attempts by a Russian organization, the Internet Research Agency (IRA), to conduct disinformation and social media operations in the United States designed to sow social discord, eventually with the aim of interfering with the election. The Special Counsel brought criminal charges against a number of Russian nationals and entities in connection with these activities, but concluded that "[t]he investigation did not identify evidence that any U.S. persons conspired or coordinated with the IRA."

1

The second main Russian effort to influence the 2016 election involved hacking into the computer systems of the Clinton campaign and certain Democratic Party organizations for the purpose of stealing documents and emails for later public dissemination. Such unauthorized access into computers is a federal crime. The Special Counsel found that Russian government actors successfully carried out these hacking activities between March and mid-June 2016, stealing many thousands of documents and emails. Based on these activities, the Special Counsel brought criminal charges against Russian military officers for conspiring to hack into computers in the United States for purposes of influencing the election. But the Special Counsel did not find that President Trump, his campaign, or its associates conspired or coordinated with the Russian government in its hacking activities.

The Special Counsel also considered whether any persons associated with the Trump campaign had any role in disseminating the hacked information, either through Wikileaks or other channels. Although some of the Special Counsel's discussion concerning these matters must be redacted because of court orders in pending cases or potential harm to ongoing investigations, the Special Counsel did not find that any person associated with the Trump campaign, or any other U.S. citizen, illegally participated in the dissemination of hacked information.

Finally, in connection with investigating Russian interference, the Special Counsel reviewed contacts between persons associated with the Trump campaign and persons having or claiming to have ties to the Russian government. After reviewing those contacts, the Special Counsel did not find any conspiracy to violate U.S. law involving Russia-linked persons and any persons associated with the Trump campaign.

### *Obstruction of Justice*

Volume II of the Special Counsel's report describes his investigation into whether President Trump's actions in connection with the Russia investigation constituted obstruction of justice. Although the report documents the President's actions in detail, the Special Counsel decided not to evaluate the President's conduct under the Department's standards governing prosecution and declination decisions. As I explained in my March 24, 2019 letter to Congress, "[a]fter making a 'thorough factual investigation' into these matters," the Special Counsel "did not draw a conclusion—one way or the other—as to whether the examined conduct constituted obstruction." As the Special Counsel put it, "while this report does not conclude that the President committed a crime, it also does not exonerate him."

Presented with the results of the Special Counsel's thorough, almost-two-year investigation, I determined that the Special Counsel's decision not to reach a conclusion on obstruction left it to me to determine whether the conduct described in the report constitutes a crime when considered under the principles of federal prosecution. The Attorney General has ultimate responsibility for all criminal investigations conducted by the Department. The very function of a federal prosecutor conducting a criminal investigation is to determine whether an offense has been committed and, if so, whether there is sufficient evidence to overcome the presumption of innocence that attaches to every person. Prosecutors are entrusted with awesome investigative powers, including the power to use a grand jury, for the purpose of making these prosecutorial decisions and not for any other purpose. Consequently, I determined that it was

2

incumbent on me to decide, one way or the other, whether the evidence set forth in the Special Counsel's report was sufficient to establish that the President committed an obstruction-of-justice offense. As stated in my March 24 letter, the Deputy Attorney General and I determined that it was not.

### *Preparation of the Public Report*

As noted above, I have concluded that the report should be released to the public and to Congress to the maximum extent possible, subject only to those redactions required by law or by compelling law enforcement, national security, or personal privacy interests. As you will see, most of the redactions were required to protect grand-jury secrecy or to comply with judicial orders (i) protecting from public release sensitive discovery information or (ii) prohibiting public disclosure of information bearing upon ongoing investigations and criminal proceedings, including *United States v. Internet Research Agency LLC, et al.* and *United States v. Roger Jason Stone, Jr.*

With the assistance of the Special Counsel and his team, we have coordinated the redaction process with members of the intelligence community and with the prosecuting offices currently handling matters referenced in the report. We have clearly marked the redactions based upon the reason for withholding the redacted information: (1) grand-jury information (marked in red), the disclosure of which is prohibited by Federal Rule of Criminal Procedure 6(e); (2) investigative techniques (marked in yellow), which reflect material identified by the intelligence and law enforcement communities as potentially compromising sensitive sources, methods, or techniques, as well as information that could harm ongoing intelligence or law enforcement activities; (3) information that, if released, could harm ongoing law enforcement matters (marked in white), including charged cases where court rules and orders bar public disclosure by the parties of case information; and (4) information that would unduly infringe upon the personal privacy and reputational interests of peripheral third parties (marked in green), which includes deliberation about decisions not to recommend prosecution of such parties.

Because the White House voluntarily cooperated with the Special Counsel's investigation, significant portions of the report contain materials over which the President could have asserted privilege. After the release of my March 29, 2019 letter, the Office of the White House Counsel requested the opportunity to review the redacted report for the purpose of advising the President as to whether he should invoke privilege on any portion prior to the public disclosure of this information. In view of this issue's importance to long-standing interests of the Presidency, I decided that office should be in a position to advise the President. Therefore, I agreed to the request. Following that review, the President confirmed that, in the interest of transparency, he would not assert privilege prior to the public disclosure of the report, although it would have been well within his authority to do so in many instances. Thus, the White House did not request that any information be withheld from public release, and no material was redacted based on executive privilege.

In addition, earlier this week, the President's personal counsel requested and were granted the opportunity to review the redacted report before it was publicly released. That request was consistent with the practice followed under the now-expired Ethics in Government Act, which permitted individuals named in a report prepared by an Independent Counsel the opportunity to

review and comment on the report before publication. *See* 28 U.S.C. § 594(h)(2). The President's personal lawyers raised no objections to publication of any information in the redacted report, and they were not permitted to make, and did not request, any further redactions. Thus, all redactions in the report were made by Department lawyers working together with the Special Counsel's office and the intelligence community.

### *Accommodation of Congress's Requests*

I acknowledge that you have expressed an interest in viewing an unredacted version of the report. As I have said on several occasions, it is my intent to accommodate that request to the extent that I can. I will therefore make available for review by you and the "Gang of Eight" a version of the report with all redactions removed except those relating to grand-jury information. In light of the law and governing judicial precedent, I do not believe that I have discretion to disclose grand-jury information to Congress. Nevertheless, this accommodation will allow you to review the bulk of the redacted material for yourselves.

Finally, I understand that your Committees will have many questions about these matters, and I look forward to discussing them with you in my upcoming testimony. As I previously offered, I am currently available to testify before the Senate Judiciary Committee on May 1, 2019, and before the House Judiciary Committee on May 2, 2019. I believe that the release of the Special Counsel's report, together with my testimony, will accommodate any need Congress has to learn about the results of the Special Counsel's investigation.

\*    \*    \*

In light of the public interest surrounding this matter, I will disclose this letter to the public after delivering it to you.

Sincerely,

*[signature: William P. Barr]*

William P. Barr
Attorney General