# Exhibit 1



# The Attorney General
## Washington, D.C.

March 24, 2019

The Honorable Lindsey Graham
Chairman, Committee on the Judiciary
United States Senate
290 Russell Senate Office Building
Washington, D.C. 20510

The Honorable Jerrold Nadler
Chairman, Committee on the Judiciary
United States House of Representatives
2132 Rayburn House Office Building
Washington, D.C. 20515

The Honorable Dianne Feinstein
Ranking Member, Committee on the Judiciary
United States Senate
331 Hart Senate Office Building
Washington, D.C. 20510

The Honorable Doug Collins
Ranking Member, Committee on the Judiciary
United States House of Representatives
1504 Longworth House Office Building
Washington, D.C. 20515

Dear Chairman Graham, Chairman Nadler, Ranking Member Feinstein, and Ranking Member Collins:

As a supplement to the notification provided on Friday, March 22, 2019, I am writing today to advise you of the principal conclusions reached by Special Counsel Robert S. Mueller III and to inform you about the status of my initial review of the report he has prepared.

### *The Special Counsel's Report*

On Friday, the Special Counsel submitted to me a "confidential report explaining the prosecution or declination decisions" he has reached, as required by 28 C.F.R. § 600.8(c). This report is entitled "Report on the Investigation into Russian Interference in the 2016 Presidential Election." Although my review is ongoing, I believe that it is in the public interest to describe the report and to summarize the principal conclusions reached by the Special Counsel and the results of his investigation.

The report explains that the Special Counsel and his staff thoroughly investigated allegations that members of the presidential campaign of Donald J. Trump, and others associated with it, conspired with the Russian government in its efforts to interfere in the 2016 U.S. presidential election, or sought to obstruct the related federal investigations. In the report, the Special Counsel noted that, in completing his investigation, he employed 19 lawyers who were assisted by a team of approximately 40 FBI agents, intelligence analysts, forensic accountants, and other professional staff. The Special Counsel issued more than 2,800 subpoenas, executed nearly 500 search warrants, obtained more than 230 orders for communication records, issued almost 50 orders authorizing use of pen registers, made 13 requests to foreign governments for evidence, and interviewed approximately 500 witnesses.

1

The Special Counsel obtained a number of indictments and convictions of individuals and entities in connection with his investigation, all of which have been publicly disclosed.  During the course of his investigation, the Special Counsel also referred several matters to other offices for further action.  The report does not recommend any further indictments, nor did the Special Counsel obtain any sealed indictments that have yet to be made public.  Below, I summarize the principal conclusions set out in the Special Counsel's report.

**Russian Interference in the 2016 U.S. Presidential Election.** The Special Counsel's report is divided into two parts.  The first describes the results of the Special Counsel's investigation into Russia's interference in the 2016 U.S. presidential election.  The report outlines the Russian effort to influence the election and documents crimes committed by persons associated with the Russian government in connection with those efforts.  The report further explains that a primary consideration for the Special Counsel's investigation was whether any Americans – including individuals associated with the Trump campaign – joined the Russian conspiracies to influence the election, which would be a federal crime.  The Special Counsel's investigation did not find that the Trump campaign or anyone associated with it conspired or coordinated with Russia in its efforts to influence the 2016 U.S. presidential election.  As the report states: "[T]he investigation did not establish that members of the Trump Campaign conspired or coordinated with the Russian government in its election interference activities."[1]

The Special Counsel's investigation determined that there were two main Russian efforts to influence the 2016 election.  The first involved attempts by a Russian organization, the Internet Research Agency (IRA), to conduct disinformation and social media operations in the United States designed to sow social discord, eventually with the aim of interfering with the election.  As noted above, the Special Counsel did not find that any U.S. person or Trump campaign official or associate conspired or knowingly coordinated with the IRA in its efforts, although the Special Counsel brought criminal charges against a number of Russian nationals and entities in connection with these activities.

The second element involved the Russian government's efforts to conduct computer hacking operations designed to gather and disseminate information to influence the election.  The Special Counsel found that Russian government actors successfully hacked into computers and obtained emails from persons affiliated with the Clinton campaign and Democratic Party organizations, and publicly disseminated those materials through various intermediaries, including WikiLeaks.  Based on these activities, the Special Counsel brought criminal charges against a number of Russian military officers for conspiring to hack into computers in the United States for purposes of influencing the election.  But as noted above, the Special Counsel did not find that the Trump campaign, or anyone associated with it, conspired or coordinated with the Russian government in these efforts, despite multiple offers from Russian-affiliated individuals to assist the Trump campaign.

---

[1]   In assessing potential conspiracy charges, the Special Counsel also considered whether members of the Trump campaign "coordinated" with Russian election interference activities.  The Special Counsel defined "coordination" as an "agreement—tacit or express—between the Trump Campaign and the Russian government on election interference."

**Obstruction of Justice.** The report's second part addresses a number of actions by the President – most of which have been the subject of public reporting – that the Special Counsel investigated as potentially raising obstruction-of-justice concerns. After making a "thorough factual investigation" into these matters, the Special Counsel considered whether to evaluate the conduct under Department standards governing prosecution and declination decisions but ultimately determined not to make a traditional prosecutorial judgment. The Special Counsel therefore did not draw a conclusion – one way or the other – as to whether the examined conduct constituted obstruction. Instead, for each of the relevant actions investigated, the report sets out evidence on both sides of the question and leaves unresolved what the Special Counsel views as "difficult issues" of law and fact concerning whether the President's actions and intent could be viewed as obstruction. The Special Counsel states that "while this report does not conclude that the President committed a crime, it also does not exonerate him."

The Special Counsel's decision to describe the facts of his obstruction investigation without reaching any legal conclusions leaves it to the Attorney General to determine whether the conduct described in the report constitutes a crime. Over the course of the investigation, the Special Counsel's office engaged in discussions with certain Department officials regarding many of the legal and factual matters at issue in the Special Counsel's obstruction investigation. After reviewing the Special Counsel's final report on these issues; consulting with Department officials, including the Office of Legal Counsel; and applying the principles of federal prosecution that guide our charging decisions, Deputy Attorney General Rod Rosenstein and I have concluded that the evidence developed during the Special Counsel's investigation is not sufficient to establish that the President committed an obstruction-of-justice offense. Our determination was made without regard to, and is not based on, the constitutional considerations that surround the indictment and criminal prosecution of a sitting president.[2]

In making this determination, we noted that the Special Counsel recognized that "the evidence does not establish that the President was involved in an underlying crime related to Russian election interference," and that, while not determinative, the absence of such evidence bears upon the President's intent with respect to obstruction. Generally speaking, to obtain and sustain an obstruction conviction, the government would need to prove beyond a reasonable doubt that a person, acting with corrupt intent, engaged in obstructive conduct with a sufficient nexus to a pending or contemplated proceeding. In cataloguing the President's actions, many of which took place in public view, the report identifies no actions that, in our judgment, constitute obstructive conduct, had a nexus to a pending or contemplated proceeding, and were done with corrupt intent, each of which, under the Department's principles of federal prosecution guiding charging decisions, would need to be proven beyond a reasonable doubt to establish an obstruction-of-justice offense.

### *Status of the Department's Review*

The relevant regulations contemplate that the Special Counsel's report will be a "confidential report" to the Attorney General. *See* Office of Special Counsel, 64 Fed. Reg. 37,038,

---

[2]   *See A Sitting President's Amenability to Indictment and Criminal Prosecution*, 24 Op. O.L.C. 222 (2000).

37,040-41 (July 9, 1999).  As I have previously stated, however, I am mindful of the public interest in this matter.  For that reason, my goal and intent is to release as much of the Special Counsel's report as I can consistent with applicable law, regulations, and Departmental policies.

Based on my discussions with the Special Counsel and my initial review, it is apparent that the report contains material that is or could be subject to Federal Rule of Criminal Procedure 6(e), which imposes restrictions on the use and disclosure of information relating to "matter[s] occurring before [a] grand jury." Fed. R. Crim. P. 6(e)(2)(B).  Rule 6(e) generally limits disclosure of certain grand jury information in a criminal investigation and prosecution. *Id.*  Disclosure of 6(e) material beyond the strict limits set forth in the rule is a crime in certain circumstances. *See, e.g.*, 18 U.S.C. § 401(3).  This restriction protects the integrity of grand jury proceedings and ensures that the unique and invaluable investigative powers of a grand jury are used strictly for their intended criminal justice function.

Given these restrictions, the schedule for processing the report depends in part on how quickly the Department can identify the 6(e) material that by law cannot be made public.  I have requested the assistance of the Special Counsel in identifying all 6(e) information contained in the report as quickly as possible.  Separately, I also must identify any information that could impact other ongoing matters, including those that the Special Counsel has referred to other offices.  As soon as that process is complete, I will be in a position to move forward expeditiously in determining what can be released in light of applicable law, regulations, and Departmental policies.

\*       \*       \*

As I observed in my initial notification, the Special Counsel regulations provide that "the Attorney General may determine that public release of" notifications to your respective Committees "would be in the public interest." 28 C.F.R. § 600.9(c).  I have so determined, and I will disclose this letter to the public after delivering it to you.

Sincerely,

William P. Barr
Attorney General

4

# Exhibit 2



**Office of the Deputy Attorney General**
Washington, D.C. 20530

ORDER NO. 3915-2017

APPOINTMENT OF SPECIAL COUNSEL
TO INVESTIGATE RUSSIAN INTERFERENCE WITH THE
2016 PRESIDENTIAL ELECTION AND RELATED MATTERS

By virtue of the authority vested in me as Acting Attorney General, including 28 U.S.C. §§ 509, 510, and 515, in order to discharge my responsibility to provide supervision and management of the Department of Justice, and to ensure a full and thorough investigation of the Russian government's efforts to interfere in the 2016 presidential election, I hereby order as follows:

(a)      Robert S. Mueller III is appointed to serve as Special Counsel for the United States Department of Justice.

(b)      The Special Counsel is authorized to conduct the investigation confirmed by then-FBI Director James B. Comey in testimony before the House Permanent Select Committee on Intelligence on March 20, 2017, including:

    (i)      any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump; and

    (ii)     any matters that arose or may arise directly from the investigation; and

    (iii)    any other matters within the scope of 28 C.F.R. § 600.4(a).

(c)      If the Special Counsel believes it is necessary and appropriate, the Special Counsel is authorized to prosecute federal crimes arising from the investigation of these matters.

(d)      Sections 600.4 through 600.10 of Title 28 of the Code of Federal Regulations are applicable to the Special Counsel.

_5/17/17_
Date

Rod J. Rosenstein
Acting Attorney General

# Exhibit 3



# The Attorney General
## Washington, D.C.

March 22, 2019

The Honorable Lindsey Graham
Chairman, Committee on the Judiciary
United States Senate
290 Russell Senate Office Building
Washington, D.C. 20510

The Honorable Jerrold Nadler
Chairman, Committee on the Judiciary
United States House of Representatives
2132 Rayburn House Office Building
Washington, D.C. 20515

The Honorable Dianne Feinstein
Ranking Member, Committee on the Judiciary
United States Senate
331 Hart Senate Office Building
Washington, D.C. 20510

The Honorable Doug Collins
Ranking Member, Committee on the Judiciary
United States House of Representatives
1504 Longworth House Office Building
Washington, D.C. 20515

Dear Chairman Graham, Chairman Nadler, Ranking Member Feinstein, and Ranking Member Collins:

I write to notify you pursuant to 28 C.F.R. § 600.9(a)(3) that Special Counsel Robert S. Mueller III has concluded his investigation of Russian interference in the 2016 election and related matters. In addition to this notification, the Special Counsel regulations require that I provide you with "a description and explanation of instances (if any) in which the Attorney General" or acting Attorney General "concluded that a proposed action by a Special Counsel was so inappropriate or unwarranted under established Departmental practices that it should not be pursued." 28 C.F.R. § 600.9(a)(3). There were no such instances during the Special Counsel's investigation.

The Special Counsel has submitted to me today a "confidential report explaining the prosecution or declination decisions" he has reached, as required by 28 C.F.R. § 600.8(c). I am reviewing the report and anticipate that I may be in a position to advise you of the Special Counsel's principal conclusions as soon as this weekend.

Separately, I intend to consult with Deputy Attorney General Rosenstein and Special Counsel Mueller to determine what other information from the report can be released to Congress and the public consistent with the law, including the Special Counsel regulations, and the Department's long-standing practices and policies. I remain committed to as much transparency as possible, and I will keep you informed as to the status of my review.

Finally, the Special Counsel regulations provide that "the Attorney General may determine that public release of" this notification "would be in the public interest." 28 C.F.R. § 600.9(c). I have so determined, and I will disclose this letter to the public after delivering it to you.

Sincerely,

William P. Barr
Attorney General

# Exhibit 4



**U.S. Department of Justice**

*The Special Counsel's Office*

*Washington, D.C. 20530*

March 27, 2019

*Recieved*
*OAG*
*March 28, 2019*

The Honorable William P. Barr
Attorney General of the United States
Department of Justice
Washington, D.C.

Re:  Report of the Special Counsel on the Investigation Into Russian Interference in the 2016 Presidential Election and Obstruction of Justice (March 2019)

Dear Attorney General Barr:

I previously sent you a letter dated March 25, 2019, that enclosed the introduction and executive summary for each volume of the Special Counsel's report marked with redactions to remove any information that potentially could be protected by Federal Rule of Criminal Procedure 6(e); that concerned declination decisions; or that related to a charged case.  We also had marked an additional two sentences for review and have now confirmed that these sentences can be released publicly.

Accordingly, the enclosed documents are in a form that can be released to the public consistent with legal requirements and Department policies.  I am requesting that you provide these materials to Congress and authorize their public release at this time.

As we stated in our meeting of March 5 and reiterated to the Department early in the afternoon of March 24, the introductions and executive summaries of our two-volume report accurately summarize this Office's work and conclusions.  The summary letter the Department sent to Congress and released to the public late in the afternoon of March 24 did not fully capture the context, nature, and substance of this Office's work and conclusions.  We communicated that concern to the Department on the morning of March 25.   There is now public confusion about critical aspects of the results of our investigation.  This threatens to undermine a central purpose for which the Department appointed the Special Counsel:  to assure full public confidence in the outcome of the investigations.  *See* Department of Justice, Press Release (May 17, 2017).

While we understand that the Department is reviewing the full report to determine what is appropriate for public release—a process that our Office is working with you to complete—that process need not delay release of the enclosed materials.  Release at this time would alleviate the misunderstandings that have arisen and would answer congressional and public questions about the nature and outcome of our investigation.  It would also accord with the standard for public

2

release of notifications to Congress cited in your letter. *See* 28 C.F.R. § 609(c) ("the Attorney General may determine that public release" of congressional notifications "would be in the public interest").

Sincerely yours,

Robert S. Mueller, III
Special Counsel

Enclosures

# Exhibit 5

# epic.org

**Electronic Privacy Information Center**
1718 Connecticut Avenue NW, Suite 200
Washington, DC 20009, USA

📞 +1 202 483 1140
🖨 +1 202 483 1248
🐦 @EPICPrivacy
🌐 https://epic.org



VIA FACSIMILE

November 5, 2018

Douglas Hibbard
Chief, Initial Request Staff
Office of Information Policy
Department of Justice
Suite 11050
1425 New York Avenue, N.W.
Washington, D.C., 20530-0001
Fax: (202) 514-1009

Dear Mr. Hibbard,

This letter constitutes a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a), and is submitted on behalf of the Electronic Privacy Information Center ("EPIC") to the Department of Justice's ("DOJ") Office of Information Policy ("OIP").

EPIC seeks documents, in the possession of the agency, concerning the investigation by Special Counsel Robert S. Mueller into Russian interference in the 2016 United States presidential election and related matters.

<u>Documents Requested</u>

EPIC requests the following records concerning the Special Counsel investigation into Russian interference with the presidential election:[1]

(1)(a)  All "report[s]" and "closing documentation" prepared under 28 C.F.R. § 600.8(c), whether or not such records were actually provided to the Attorney General or Acting Attorney General;

(b)  All drafts, outlines, exhibits, and supporting materials associated with any actual or planned "report" or "closing documentation" under 28 C.F.R. § 600.8(c);

(2)(a)  All "report[s]" concerning "the status of the investigation" prepared under 28 C.F.R. § 600.8(a)(2), whether or not such records were actually provided to the Attorney General or Acting Attorney General;

---

[1] U.S. Dep't of Justice, Office of the Deputy Attorney General, Order No. 3915-2017, Appointment of Special Counsel to Investigate Russian Interference with the 2016 Presidential Election and Related Matters (May 17, 2017), https://www.justice.gov/opa/press-release/file/967231/download [hereinafter Appointment Order].

(b)  All drafts, outlines, exhibits, and supporting materials associated with any actual or planned "report" concerning "the status of the investigation" under 28 C.F.R. § 600.8(a)(2);

(3)(a)  All records "expla[ining] . . . any investigative or prosecutorial step" under 28 C.F.R. § 600.7(b), whether or not such records were actually provided to the Attorney General or Acting Attorney General;

(b)  All drafts, outlines, exhibits, and supporting materials associated with any actual or planned "explanation for any investigative or prosecutorial step" under 28 C.F.R. § 600.7(b);

(4)(a)  All records prepared under 28 C.F.R. § 600.9(a) to "notify the Chairman and Ranking Minority Member of the Judiciary Committees of each House of Congress" of a development in the Special Counsel investigation, whether or not such records were actually transmitted to any member of Congress;

(b)  All drafts, outlines, exhibits, and supporting materials associated with any actual or planned notification under 28 C.F.R. § 600.9(a);

(5)(a)  All referrals by the Special Counsel, Attorney General, or Acting Attorney General for "administrative remedies, civil sanctions or other governmental action outside the criminal justice system" under 28 C.F.R. § 600.4(c), whether or not such records were actually transmitted to any party outside of the Special Counsel's Office;

(b)  All drafts, outlines, exhibits, and supporting materials associated with any actual or planned referral for "administrative remedies, civil sanctions or other governmental action outside the criminal justice system" under 28 C.F.R. § 600.4(c);

(6)(a)  All "report[s]," "recommendation[s]," and other "compilation[s] of information" prepared for the eventual consideration of one or more members of Congress,[2] whether or not such records were actually transmitted to any party outside of the Special Counsel's Office;

(b)  All drafts, outlines, exhibits, and supporting materials associated with any actual or planned report, recommendation, or compilation of the type described in Category (6)(a) of this request;

(7)(a)  All other reports summarizing or describing, for one or more persons outside of the Special Counsel's Office, (i) any of the Special Counsel's evidence, findings, decisions, actions, or planned actions, or (ii) any developments in the Special Counsel investigation; and

---

[2] *In re Report & Recommendation of June 5, 1972 Grand Jury Concerning Transmission of Evidence to House of Representatives*, 370 F. Supp. 1219, 1221, 1226 (D.D.C. 1974), *aff'd sub nom. Haldeman v. Sirica*, 501 F.2d 714 (D.C. Cir. 1974).

      (b)   All drafts, outlines, exhibits, and supporting materials associated with any actual or planned report of the type described in Category (7)(a) of this request.

EPIC does not seek records which have already been disclosed to the public in their complete and unredacted form (i) in the course of an open judicial proceeding; (ii) available at https://www.justice.gov/sco; or (iii) available at https://www.justice.gov/news.

<u>Background</u>

      EPIC's FOIA request, and the Special Counsel investigation to which it pertains, arise out of the Russian government's coordinated campaign to interfere with the 2016 U.S. presidential election.

*Russian Interference in the 2016 U.S. Presidential Election*

      In 2016, the Russian government carried out a multi-pronged attack on the U.S. Presidential Election to destabilize U.S. democratic institutions and aid the candidacy of Donald J. Trump. As explained in the declassified 2017 Intelligence Community Assessment ("ICA") on Russian election interference:[3]

> We assess with high confidence that Russian President Vladimir Putin ordered an influence campaign in 2016 aimed at the US presidential election, the consistent goals of which were to undermine public faith in the US democratic process, denigrate Secretary Clinton, and harm her electability and potential presidency. We further assess Putin and the Russian Government developed a clear preference for President-elect Trump. When it appeared to Moscow that Secretary Clinton was likely to win the election, the Russian influence campaign then focused on undermining her expected presidency.

> We also assess Putin and the Russian Government aspired to help President-elect Trump's election chances when possible by discrediting Secretary Clinton and publicly contrasting her unfavorably to him.[4]

      The ICA—along with the reports, investigations, and prosecutions that have ensued—establishes that Russia interfered with the 2016 election on at least four fronts.

      First, "Russia's intelligence services conducted cyber operations against targets associated with the 2016 US presidential election, including targets associated with both major

---

[3] Office of the Dir. of Nat'l Intelligence, ICA 2017-01D, *Intelligence Community Assessment: Assessing Russian Activities and Intentions in Recent US Elections* (Jan. 6, 2017), https://www.dni.gov/files/documents/ICA_2017_01.pdf [hereinafter *Intelligence Community Assessment*]; *see also* EPIC, *EPIC v. ODNI (Russian Hacking)* (Dec. 18, 2017), https://www.epic.org/foia/odni/russian-hacking/ (EPIC FOIA lawsuit to obtain full Intelligence Community Assessment on which declassified version was based).
[4] *Intelligence Community Assessment*, *supra* note 3, at 1.

US political parties."[5] These operations included the "exfiltrat[ion of] large volumes of data" from the Democratic National Committee ("DNC") and "the compromise of the personal e-mail accounts of Democratic Party officials and political figures."[6]

Second, Russian intelligence services "used the Guccifer 2.0 persona, DCLeaks.com, and WikiLeaks to release US victim data obtained in cyber operations publicly and in exclusives to media outlets."[7] These disclosures included data extracted by Russian intelligence from DNC networks.[8] Subsequent investigation has also revealed that senior Trump campaign officials engaged in multiple meetings with Russian intermediaries offering to provide "dirt" on Hillary Clinton, including "thousands of emails" obtained by Russia.[9]

Third, "Russian intelligence accessed elements of multiple state or local electoral boards" in an ongoing effort to assess "US electoral processes and related technology and equipment."[10]

Fourth, "Russia's state-run propaganda machine—comprised of its domestic media apparatus, outlets targeting global audiences such as RT and Sputnik, and a network of quasi-government trolls—contributed to the influence campaign by serving as a platform for Kremlin messaging to Russian and international audiences."[11] As part of this propaganda push, the Russian government spent millions of dollars and employed hundreds of people to flood Facebook and Twitter with fraudulent users, posts, articles, groups, and targeted advertisements.[12]

---

[5] *Id.* at 2.

[6] *Id.*; *see also* EPIC, *EPIC v. FBI (Russian Hacking)* (May 22, 2018), https://epic.org/foia/fbi/russian-hacking/ (EPIC FOIA lawsuit revealing FBI's failure to follow its own victim notification procedures in response to Russian cyberattacks against U.S. officials).

[7] *Intelligence Community Assessment*, *supra* note 3, at 2–3.

[8] *Id.* at 3.

[9] Statement of the Offense at ¶ 14, *United States v. Papadopoulos*, No. 17-182 (D.D.C. Oct. 5, 2017) ("The Professor told defendant PAPADOPOULOS . . . that 'They [the Russians] have dirt on her'; 'the Russians had emails of Clinton'; 'they have thousands of emails.'"); *see also* House Permanent Select Committee on Intelligence, *Status of the Russia Investigation (Minority Report)* (Mar. 13, 2018), https://democrats-intelligence.house.gov/uploadedfiles/final_-_minority_status_of_the_russia_investigation_with_appendices.pdf (noting that the "stated purpose" of "the June 9, 2016 Trump Tower meeting with Russian emissaries" was to "provide damaging information on Hillary Clinton").

[10] *Intelligence Community Assessment*, *supra* note 3, at 3; *see also* EPIC, *EPIC v. DHS* (Aug. 17, 2018), https://epic.org/foia/dhs/cybersecurity/russian-interference/default.html (EPIC FOIA lawsuit revealing Department of Homeland Security response to Russian cyberattacks on election infrastructure).

[11] *Intelligence Community Assessment*, *supra* note 3, at 3–4.

[12] Indictment at ¶¶ 3–6, 10, *United States v. Internet Res. Agency*, No. 18-32 (D.D.C. Feb. 16, 2018); *see also* Statement from EPIC to U.S. Senate Select Comm. on Intelligence, Sep. 4, 2018, https://epic.org/testimony/congress/EPIC-SSCI-ForeignSocialMedia-Sept2018.pdf (calling for greater transparency concerning Russian manipulation of news and information on social networks during and after the 2016 election).

In the twenty-two months since the Intelligence Community Assessment was published, the ICA's findings have been repeatedly confirmed by federal inquiries[13] and investigative reporting.[14] The Senate Intelligence Committee, after an "an in-depth review" of the ICA and associated intelligence, determined that "the conclusions of the ICA are sound" and noted "that collection and analysis subsequent to the ICA's publication continue to reinforce its assessments."[15]

*Criminal Investigations into Russian Election Interference*

On January 20, 2018—two weeks after the public release of the Intelligence Community Assessment—Donald J. Trump was inaugurated as the 45th President of the United States. On March 2, 2017, Attorney General Jeff Sessions, who had been a prominent supporter of Mr. Trump during the campaign, recused himself "from any existing or future investigations of any matters related in any way to the campaigns for President of the United States."[16] As a result, the responsibilities of the Attorney General for any such investigation passed to the Deputy Attorney General.[17]

On March 20, 2017, James B. Comey, then-Director of the Federal Bureau of Investigation ("FBI"), confirmed to the House Permanent Select Committee on Intelligence that the FBI was conducting an investigation into "the Russian government's efforts to interfere in the 2016 presidential election," including "the nature of any links between individuals associated with the Trump campaign and the Russian government and whether there was any coordination between the campaign and Russia's efforts."[18] Mr. Comey noted that the investigation would include "an assessment of whether any crimes were committed."[19]

---

[13] Senate Select Comm. on Intelligence, *The The Intelligence Community Assessment: Assessing Russian Activities and Intentions in Recent U.S. Elections* (July 3, 2018), https://www.burr.senate.gov/imo/media/doc/SSCI%20ICA%20ASSESSMENT_FINALJULY3.pdf [hereinafter Senate Intelligence Report].

[14] *E.g.*, Scott Shane & Mark Mazzetti, *The Plot to Subvert an Election: Unraveling the Russia Story So Far*, N.Y. Times (Sep. 20, 2018), https://www.nytimes.com/interactive/2018/09/20/us/politics/russia-interference-election-trump-clinton.html; Philip Bump, *A Broad Debunking of Trump's Claims About Russian Interference and the Mueller Investigation*, Wash. Post (June 28, 2018), https://www.washingtonpost.com/news/politics/wp/2018/06/28/a-broad-debunking-of-trumps-claims-about-russian-interference-and-the-mueller-investigation/.

[15] Senate Intelligence Report, *supra* note 13, at 7.

[16] Press Release, U.S. Dep't of Justice, Attorney General Sessions Statement on Recusal (Mar. 2, 2017), https://www.justice.gov/opa/pr/attorney-general-sessions-statement-recusal; *see also* 28 C.F.R. § 45.2(a).

[17] *Id.*; *see also* 28 U.S.C. § 508 ("In case of a vacancy in the office of Attorney General, or of his absence or disability, the Deputy Attorney General may exercise all the duties of that office[.]").

[18] *Russian Active Measures Investigation: Hearing Before the H. Permanent Select Comm. on Intelligence*, 115th Cong. (2017) (Statement of James B. Comey, Dir., Fed. Bureau of Investigation), https://www.fbi.gov/news/testimony/hpsci-hearing-titled-russian-active-measures-investigation.

[19] *Id.*

On May 9, 2017, President Trump removed Director Comey from office and terminated his employment.[20] Two days later, in a nationally-televised NBC News interview, President Trump stated:

> I was going to fire Comey knowing, there was no good time to do it. And in fact when I decided to just do it, I said to myself, I said you know, this Russia thing with Trump and Russia is a made up story, it's an excuse by the Democrats for having lost an election that they should have won.[21]

On May 17, 2017, Deputy Attorney General Rod J. Rosenstein—in his capacity as Acting Attorney General—appointed Robert S. Mueller III "to serve as Special Counsel for the United States Department of Justice."[22] Mr. Rosenstein authorized Mr. Mueller to "conduct the investigation confirmed by then-FBI Director James B. Comey in testimony before the House Permanent Select Committee on Intelligence on March 20, 2017," including "any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump"; "any matters that arose or may arise directly from the investigation"; and "any other matters within the scope of 28 C.F.R. § 600.4(a)."[23] Mr. Rosenstein also authorized Mr. Mueller "to prosecute federal crimes arising from the investigation of these matters" where "it is necessary and appropriate[.]"[24]

Since Mr. Mueller was appointed, the Special Counsel has brought criminal charges against 33 individuals and three organizations,[25] including:

- Former National Security Adviser Michael Flynn, who pleaded guilty to making false statements to the FBI;[26]
- Former Trump campaign manager Paul Manafort, who was convicted of multiple counts of tax fraud and bank fraud[27] and pleaded guilty to conspiracy against the United States and other charges;[28]

---

[20] Letter from Donald J. Trump, President of the United States, to James B. Comey, Dir., Fed. Bureau of Investigation (May 9, 2017), https://www.gpo.gov/fdsys/pkg/DCPD-201700325/pdf/DCPD-201700325.pdf.

[21] Adam Edelman, *Trump says He Didn't Fire Comey 'Because of Russia,' Contradicting Past Statements*, NBC News (May 31, 2018), https://www.nbcnews.com/politics/donald-trump/trump-says-he-didn-t-fire-comey-because-russia-contradicting-n878836.

[22] Appointment Order, *supra* note 1, ¶ (a).

[23] *Id.* ¶ (b).

[24] *Id.* ¶ (c).

[25] U.S. Dep't of Justice, *Special Counsel's Office* (Sep. 14, 2018), https://www.justice.gov/sco.

[26] Plea Agreement, *United States v. Flynn*, No. 17-232 (Dec. 1, 2017), https://www.justice.gov/file/1015121/download.

[27] U.S. Dep't of Justice, *Special Counsel's Office*, *supra* note 25 ("On Aug. 21, 2018, a federal jury found Manafort guilty on eight counts: counts 1-5, subscribing to a false individual income tax return for tax years 2010-2014; count 12, failure to file reports of foreign bank and financial accounts for year 2012; count 25, bank fraud; and count 27, bank fraud.").

[28] Plea Agreement, *United States v. Manafort*, No. 17-201 (Sep. 14, 2018), https://www.justice.gov/file/1094151/download.

- Former Trump deputy campaign manager Rick Gates, who pleaded guilty to conspiracy against the United States and making a false statement to the FBI;[29]
- Former Trump campaign foreign policy adviser George Papadopolous, who pleaded guilty to making false statements to the FBI;[30]
- The Internet Research Agency, Concord Management and Consulting LLC, and thirteen Russian nationals, who are charged with conspiracy against the United States and related offenses for flooding social media platforms with fraudulent content to interfere with U.S. political processes;[31] and
- Twelve other Russian nationals, who are charged with conspiracy to commit computer crimes and other offenses for hacking Democratic Party computer networks and email accounts linked to the Clinton campaign.[32]

*The Special Counsel Report(s)*

In addition to the criminal offenses charged by the Special Counsel, major news organizations[33] and President Trump's own attorneys[34] have stated that Mr. Mueller intends to

---

[29] Plea Agreement, *United States v. Gates*, No. 17-201 (Feb. 23, 2018), https://www.justice.gov/file/1038801/download.

[30] Plea Agreement, *United States v. Papadopolous*, No. 17-182 (Oct. 5, 2017), https://www.justice.gov/file/1007341/download.

[31] Indictment, *United States v. Internet Research Agency LLC,* No. 18-32 (Feb. 16, 2018), https://www.justice.gov/file/1035477/download.

[32] Indictment, *United States v. Netyksho*, No. 18-215 (July 13, 2018), https://www.justice.gov/file/1080281/download.

[33] *E.g.*, Charlie Savage, *Legal Experts Urge Release of Watergate Report to Offer Mueller a Road Map*, N.Y. Times (Sep. 14, 2018), https://www.nytimes.com/2018/09/14/us/politics/mueller-report-grand-jury-watergate.html ("The leading theory is that Mr. Mueller will write a report for his supervisor at the Justice Department. . . . But there is historical precedent for another model. Echoing a move by the Watergate prosecutor in March 1974, the grand jury with which Mr. Mueller has been working could try to send a report about the evidence it has gathered directly to the House Judiciary Committee."); Jeffrey Toobin, *How Rudy Giuliani Turned Into Trump's Clown,* New Yorker (Sep. 10, 2018), https://www.newyorker.com/magazine/2018/09/10/how-rudy-giuliani-turned-into-trumps-clown ("Mueller will file a concluding report with Rod Rosenstein, the Deputy Attorney General, at the end of the investigation[.]"); Michael S. Schmidt & Maggie Haberman, *Mueller Examining Trump's Tweets in Wide-Ranging Obstruction Inquiry*, N.Y. Times (July 26, 2018), https://www.nytimes.com/2018/07/26/us/politics/trump-tweets-mueller-obstruction.html ("If Mr. Mueller does not plan to make a case in court, a report of his findings could be sent to Congress, leaving it to lawmakers to decide whether to begin impeachment proceedings.").

[34] *E.g.*, Memorandum from John M. Dowd, Att'y for President Trump, to Robert S. Mueller, Special Counsel (Jan. 29, 2018), *reprinted in The Trump Lawyers' Confidential Memo to Mueller, Explained*, N.Y. Times (June 2, 2018), https://www.nytimes.com/interactive/2018/06/02/us/politics/trump-legal-documents.html ("It is our understanding that the reason behind the request for the interview is to allow the Special Counsel's office to complete its report."); @RudyGiuliani, Twitter (Aug. 15, 2018, 9:58 AM), https://twitter.com/RudyGiuliani/status/1029728984446193664 ("DOJ should require Mueller to submit his report before September 7."); Peter Nicholas, *Rudy Giuliani Says Trump Lawyers Are Prepared to Counter Mueller*, Wall Street J. (Aug. 12, 2018), https://www.wsj.com/articles/rudy-giuliani-says-trump-lawyers-are-prepared-to-counter-mueller-1534110560 ("President Trump's lawyers believe they can

transmit one or more report(s) detailing the Special Counsel's findings (the "Mueller Report(s)"). The precise number, character, and subject matter of the Mueller Report(s) are not publicly known, though at least one such report is said to address allegations that President Trump obstructed justice by attempting to block a criminal probe into Russian election interference.[35]

There are several legal authorities under which the Special Counsel, Attorney General, or Acting Attorney General might issue a report or otherwise release information concerning the Special Counsel's investigation. First, under 28 C.F.R. § 600.8(c), the Special Counsel is required to provide the Attorney General or Acting Attorney General with a report at the conclusion of the investigation:

> **(c) Closing documentation.** At the conclusion of the Special Counsel's work, he or she shall provide the Attorney General with a confidential report explaining the prosecution or declination decisions reached by the Special Counsel.[36]

Second, under 28 C.F.R. § 600.8(a)(2), the Special Counsel is required to provide annual status reports to the Attorney General or Acting Attorney General:

> **(2)** Thereafter, 90 days before the beginning of each fiscal year, the Special Counsel shall report to the Attorney General the status of the investigation, and provide a budget request for the following year. The Attorney General shall determine whether the investigation should continue and, if so, establish the budget for the next year.[37]

Third, under 28 C.F.R. § 600.7(b), the Attorney General or Acting Attorney General may request an explanation for any investigative or prosecutorial step taken by the Special Counsel:

> **(b)** The Special Counsel shall not be subject to the day-to-day supervision of any official of the Department. However, the Attorney General may request that the Special Counsel provide an explanation for any investigative or prosecutorial step, and may after review conclude that the action is so inappropriate or unwarranted under established Departmental practices that it should not be pursued. In conducting that review, the Attorney General will give great weight to the views of the Special Counsel. If the Attorney General concludes that a proposed action by a

---

weather a 'negative' report from special counsel Robert Mueller and are prepared to rebut the conclusions, Rudy Giuliani, one of Mr. Trump's attorneys, said in an interview.").

[35] Carol D. Leonnig & Robert Costa, *Mueller Told Trump's Attorneys the President Remains Under Investigation But is Not Currently a Criminal Target*, Wash. Post (Apr. 3, 2018), https://www.washingtonpost.com/politics/mueller-told-trumps-attorneys-the-president-remains-under-investigation-but-is-not-currently-a-criminal-target/2018/04/03/d7832cf0-36c1-11e8-acd5-35eac230e514_story.html ("The special counsel also told Trump's lawyers that he is preparing a report about the president's actions while in office and potential obstruction of justice, according to two people with knowledge of the conversations.").

[36] 28 C.F.R. § 600.8(c); *see also* Appointment Order, *supra* note 1, ¶ (d) ("Sections 600.4 through 600.10 of Title 28 of the Code of Federal Regulations are applicable to the Special Counsel.").

[37] 28 C.F.R. § 600.8(a)(2).

Special Counsel should not be pursued, the Attorney General shall notify Congress as specified in § 600.9(a)(3).[38]

Fourth, under 28 C.F.R. § 600.9(a), the Attorney General or Acting Attorney General is required to notify certain members of Congress of key developments in the Special Counsel's investigation:

> **(a)** The Attorney General will notify the Chairman and Ranking Minority Member of the Judiciary Committees of each House of Congress, with an explanation for each action —
>
> > **(1)** Upon appointing a Special Counsel;
> >
> > **(2)** Upon removing any Special Counsel; and
> >
> > **(3)** Upon conclusion of the Special Counsels investigation, including, to the extent consistent with applicable law, a description and explanation of instances (if any) in which the Attorney General concluded that a proposed action by a Special Counsel was so inappropriate or unwarranted under established Departmental practices that it should not be pursued.[39]

Fifth, under 28 C.F.R. § 600.4(c), the Special Counsel may take "necessary action" to pursue penalties "outside the criminal justice system" in consultation with the Attorney General or Acting Attorney General:

> **(c) Civil and administrative jurisdiction.** If in the course of his or her investigation the Special Counsel determines that administrative remedies, civil sanctions or other governmental action outside the criminal justice system might be appropriate, he or she shall consult with the Attorney General with respect to the appropriate component to take any necessary action. A Special Counsel shall not have civil or administrative authority unless specifically granted such jurisdiction by the Attorney General.[40]

Sixth, the Special Counsel may use its "full power and independent authority to exercise all investigative and prosecutorial functions of any United States Attorney"[41] to transmit "report[s]," "recommendation[s]," or other "compilation[s] of information" to Congress via the grand jury process.[42] This procedure was used by Special Counsel Leon Jaworski in 1974 to convey "material in the Grand Jury's possession having a material bearing on matters within the

---

[38] 28 C.F.R. § 600.7(b).
[39] 28 C.F.R. § 600.9(a).
[40] 28 C.F.R. § 600.4(c).
[41] 28 C.F.R. § 600.6.
[42] *In re Report & Recommendation*, 370 F. Supp. at 1221, 1226.

primary jurisdiction of the United States House of Representatives Committee on the Judiciary relating to questions of impeachment."[43]

Finally, the Special Counsel, Attorney General, and/or Acting Attorney General may rely on their general powers under 28 C.F.R. § 600.1 *et seq.* (and on other legal authorities) to disclose developments, evidence, findings, decisions, actions, or planned actions from the Special Counsel's investigation.

EPIC, through this FOIA request, seeks all of the above categories of records and supporting materials generated by or related to Special Counsel Mueller's investigation.

<u>EPIC's Interest in the Special Counsel Investigation</u>

EPIC has a particular interest in the release of records related to Special Counsel Mueller's investigation because those records will inform EPIC's project on Democracy and Cybersecurity, which was launched in response the interference in the 2016 Presidential Election.[44] As part of EPIC's Democracy and Cybersecurity project, EPIC has filed suits seeking public release of President Trump's tax returns and to correct numerous misstatements of fact concerning the President's financial ties to Russia.

*EPIC v. IRS I (Donald Trump's Tax Records)*

In *EPIC v. IRS I,* EPIC argues that the Internal Revenue Service ("IRS") has the authority, under § 6103(k)(3) of the Internal Revenue Code,[45] to disclose the President's returns to correct numerous misstatement of fact concerning his financial ties to Russia.[46] For example, President Trump falsely tweeted that "Russia has never tried to use leverage over me. I HAVE NOTHING TO DO WITH RUSSIA – NO DEALS, NO LOANS, NO NOTHING."[47] Yet, numerous news organizations have covered President Trump's ties to Russian businesses and government.[48] The case is currently pending in the D.C. Circuit.

---

[43] Report & Recommendation at 1, *In re Report & Recommendation*, 370 F. Supp. at 1221 (Mar. 1, 1974) (capitalization altered), https://www.archives.gov/files/research/investigations/watergate/roadmap/docid-70105890.pdf; *see also* 105 Cong. Rec. H9,670 (daily ed. Oct. 6, 1998) (statement of Rep. Jackson-Lee) ("[I]t will be recalled the Watergate special prosecution force did not send to Congress an argumentative or inflammatory document, but rather a simple road map which merely summarized and identified the location of relevant evidence.").

[44] *See* EPIC, *Democracy and Cybersecurity: Preserving Democratic Institutions*, https://www.epic.org/democracy/.

[45] 26 U.S.C. § 6103(k)(3).

[46] *See* EPIC, *EPIC v. IRS (Donald Trump's Tax Records)*, https://www.epic.org/foia/irs/trump-taxes/.

[47] Donald J. Trump (@realDonaldTrump), Twitter (July 26, 2016), https://twitter.com/realdonaldtrump/status/758071952498159616?lang=en.

[48] See e.g., Tom Hamburger, Rosalind S. Helderman, & Michael Birnbaum, *Inside Trump's Financial Ties to Russian and His Unusual Flatters of Vladimir Putin*, Wash. Post (June 17, 2016), https://www.washingtonpost.com/politics/inside-trumps-financial-ties-to-russia-and-his-unusual-flattery-of-vladimir-putin/2016/06/17/dbdcaac8-31a6-11e6-8ff7-7b6c1998b7a0_story.html; *Despite Denial, Trump's Connections to Russia Go Back Years*, CBS News (July 29, 2016),

*EPIC v. IRS II (Trump Offers-in-Compromise)*

In *EPIC v. IRS II*, EPIC filed suit to compel the IRS to release certain tax records pertaining to President Trump's more than 300 associated business entities.[49] EPIC requested all "offers-in-compromise" used to satisfy a tax debt owed by President Trump or one of his businesses. Under § 6103(k)(1) of the Internal Revenue Code, taxpayer "return information shall be disclosed to all members of the general public to the extent necessary to permit inspection of any accepted offer-in-compromise[.]"[50] These records are public as a matter of law. The case is currently pending in the U.S. Federal Court for the District of Columbia.

<u>Request for Expedition</u>

EPIC is entitled to expedited processing of this request.[51] Under the DOJ's FOIA regulations, a request "shall be processed on an expedited basis" when (1) there is an "urgency to inform the public about an actual or alleged federal government activity," and (2) where the request is "made by a person who is primarily engaged in disseminating information."[52] This request satisfies both conditions.

First, there is an "urgency to inform the public about an actual or alleged federal government activity."[53] The actual federal government activities are (1) the Special Counsel's investigation of Russian interference in the 2016 U.S. presidential election, and (2) the U.S. government's response to Russian election interference, as reflected in the requested records of the Special Counsel.[54] The requested records also pertain to President Trump's alleged obstruction of justice while in office.[55]

The urgency to inform the public about these government activities is clear from the voluminous press coverage of,[56] and immense public interest in,[57] Mr. Mueller's investigation

---

https://www.cbsnews.com/news/election-2016-donald-trump-ties-to-russia-go-back-years-dnc-email-hack/; John Hardwood, *Trump Calls the Special Counsel's Probe a 'Witch Hunt,' but His Links to Russia Go Back a Long Time*, CNBC (May 23, 2018), https://www.cnbc.com/2018/05/23/trump-links-to-russia-an-explanation.html.

[49] See EPIC, *EPIC v. IRS II (Trump Offers-in-Compromise)*, https://epic.org/foia/irs/trump-taxes-ii/.

[50] 26 U.S.C. § 6103(k)(1).

[51] 5 U.S.C. § 552(a)(6)(E)(v)(II); 28 C.F.R. § 16.5(e)(1).

[52] 28 C.F.R. § 16.5(e)(1), (e)(1)(ii).

[53] *Id.*

[54] *See* Appointment Order, *supra* note 1.

[55] *See* Leonnig & Costa, *supra* note 35 ("The special counsel also told Trump's lawyers that he is preparing a report about the president's actions while in office and potential obstruction of justice, according to two people with knowledge of the conversations.").

[56] *See, e.g.*, *Robert Mueller — F.B.I. Director*, N.Y. Times (Nov. 1, 2018), https://www.nytimes.com/topic/person/robert-mueller-mdash-fbi-director (listing over 570 articles concerning Robert Mueller since his appointment as Special Counsel on May 17, 2017).

[57] *See, e.g.*, Morning Consult & Politico, *National Tracking Poll* (Oct. 30, 2018), https://www.politico.com/f/?id=00000166-cb61-d184-ad67-ff67dddd0000 (finding that over 66% of respondents were aware of, and had developed an opinion on, Special Counsel Mueller); Robert Mueller, Google Trends (Nov. 2, 2018), https://trends.google.com/trends/explore?date=today%205-

and findings. Americans are deeply concerned about the scope of Russian interference in the 2016 presidential election; the U.S. government's response to that interference; the involvement of particular individuals in that interference, including possibly President Trump; the susceptibility of U.S. election systems and democratic institutions to future foreign interference; and the integrity of the Special Counsel investigation itself.[58] The Mueller Report(s) and supporting materials are critical to the public's understanding of these issues.

Second, EPIC is an organization "primarily engaged in disseminating information."[59] As the Court explained in *EPIC v. Department of Defense*, 241 F. Supp. 2d 5 (D.D.C. 2003), "EPIC satisfies the definition of 'representative of the news media'" entitling it to preferred fee status under FOIA.[60]

EPIC is also entitled to expedited processing because EPIC's request involves "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence."[61] In addition to the extraordinary media attention given to the work of the Special Counsel,[62] the requested records concern the potential involvement of the President in a foreign campaign to influence an election that he won; the possible obstruction of justice by the President while in office; the federal government's capacity to defend U.S. election systems and democratic institutions against foreign attacks; and the discharge of a high-profile Special Counsel investigation.[63] These matters unquestionably bear on the integrity of the government and affect public confidence.

In submitting this request for expedited processing, I certify that this explanation is true and correct to the best of my knowledge and belief.[64]

---

y&geo=US&q=Robert%20Mueller (showing a more than 100-fold increase in U.S. Google searches for Robert Mueller following his appointment as Special Counsel).

[58] *See, e.g.*, NPR/PBS NewsHour/Marist, *The United States' Relationship with Russia* 10, 12–13, 17 (July 25, 2018), http://maristpoll.marist.edu/wp-content/uploads/2018/07/NPR_PBS-Nature-of-the-Sample-and-Tables_The-US-Relationship-with-Russia_July-2018_18180724 1048.pdf (finding that 69% of respondents believed Russian interference occurred in the 2016 election, 63% believed Russian interference impacted the 2016 election, 53% believed President Trump had done something illegal or unethical "in his dealings with Russia and Russian President Vladimir Putin," and 57% expected Russia to interfere in the 2018 election); Suffolk University, *Suffolk University/USA Today National Poll Shows Faith in Mueller's Russia Investigation but Not in Trump Denials* (Aug. 29, 2018), https://www.suffolk.edu/news/77724.php ("A majority of Americans (55 percent) trust special counsel Robert Mueller and his investigation into alleged Russian meddling in the 2016 election, but 59 percent don't trust President Donald Trump's denial that his campaign was involved, according to a new Suffolk University/USA TODAY national poll.").

[59] 28 C.F.R. § 16.5(e)(1)(ii).

[60] 241 F. Supp. at 15.

[61] 28 C.F.R. § 16.5(e)(1)(iv).

[62] *Search Results: "Robert Mueller" and "Russia"*, Google News (Nov. 2, 2018), https://www.google.com/search?tbm=nws&q=%22Robert+Mueller%22+and+%22Russia%22 (identifying 941,000 news results containing both "Robert Mueller" and "Russia").

[63] *See* Shane & Mazzetti, *supra* note 14.

[64] *See* 5 U.S.C. § 552(a)(6)(E)(vi); 28 C.F.R. § 16.5(e)(3).

<u>Request for News Media Fee Status and Fee Waiver</u>

EPIC is a "representative of the news media" for fee classification purposes, as the Court held in *EPIC v. Department of Defense*.[65] Based on EPIC's status as a "news media" requester, EPIC is entitled to receive the requested record with only duplication fees assessed.[66]

Further, any duplication fees should also be waived because disclosure of the requested information "is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest" of EPIC, the requester.[67] The DOJ evaluates the three factors to determine whether this requirement is met: (i) the "subject of the request must concern identifiable operations or activities of the Federal Government"; (ii) disclosure must be "likely to contribute significantly to public understanding of those operations or activities"; and (iii) "disclosure must not be primarily in the commercial interest of the requester."[68] EPIC's request satisfies all three factors.

First, the requested Mueller Report(s) and supporting materials clearly "concern[] identifiable operations or activities of the Federal Government,"[69] namely: (1) the Special Counsel's investigation of Russian interference in the 2016 U.S. Presidential Election; (2) the U.S. government's response to Russian election interference; and (3) possible obstruction of justice by President Trump while in office.[70]

Second, disclosure would be "likely to contribute significantly to public understanding of those operations or activities."[71] Disclosure would be "meaningfully informative about government operations or activities" because—apart from the charging documents already filed by Mr. Mueller—little is known about the Special Counsel's substantive findings concerning Russian election interference; the Trump campaign's involvement in that interference; the U.S. government's response to that interference; and possible obstruction of justice by President Trump.

Disclosure will also "contribute to the understanding of a reasonably broad audience of persons interested in the subject," because DOJ components must "presume that a representative of the news media," such as EPIC, "will satisfy this consideration."[72] The requested Mueller Report(s) and supporting materials will reach a large audience through EPIC's widely read website, https://epic.org, where EPIC routinely posts government documents obtained under the FOIA.

---

[65] 241 F. Supp. 2d 5.

[66] 5 U.S.C. § 552(a)(4)(A)(ii)(II).

[67] 28 C.F.R. § 16.10(k)(1); *see also* § 552(a)(4)(A)(iii).

[68] 28 C.F.R. §§ 16.10(k)(2)(i)–(iii).

[69] *Id.* § 16.10(k)(2)(i).

[70] *See* Appointment Order, *supra* note 1; Leonnig & Costa, *supra* note 35.

[71] 28 C.F.R. §§ 16.10(k)(2)(ii)(A)–(B).

[72] *Id.* § 16.10(k)(2)(ii)(B)

Third, disclosure of the requested information is not "primarily in the commercial interest" of EPIC.[73] EPIC has no "commercial interest . . . that would be furthered by the requested disclosure."[74] EPIC is a registered non-profit organization committed to open government, privacy, and civil liberties.[75] Moreover, DOJ components "ordinarily will presume that where a news media requester has satisfied [the public interest standard], the request is not primarily in the commercial interest of the requester."[76] As described above, EPIC is a news media requester and satisfies the public interest standard.

For these reasons, a fee waiver should be granted to EPIC's request.

<u>Conclusion</u>

Thank you for your consideration of this request. I anticipate your determination on our request within ten calendar days.[77] For questions regarding this request, I can be contacted at 202-483-1140 x120 or FOIA@epic.org.

Respectfully submitted,

*/s John Davisson*
John Davisson
EPIC Counsel

*/s Enid Zhou*
Enid Zhou
EPIC Open Government Counsel

---

[73] *Id.* §§ 16.10(k)(2)(iii)(A)–(B).

[74] *Id.* §§ 16.10(k)(2)(iii)(A).

[75] EPIC, *About EPIC* (2018), https://epic.org/epic/about.html.

[76] 28 C.F.R. § 16.10(k)(2)(iii)(B).

[77] 5 U.S.C. § 552 (a)(6)(E)(ii)(I).