# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, | |
| Plaintiff, | |
| v. | Civ. Action No. 19-810 (RBW) |
| UNITED STATES DEPARTMENT OF JUSTICE, | |
| Defendant. | |
| JASON LEOPOLD, BUZZFEED, INC., | |
| Plaintiffs, | |
| v. | Civ. Action No. 19-957 (RBW) |
| UNITED STATES DEPARTMENT OF JUSTICE, | |
| Defendant. | |

## PLAINTIFFS' CONSOLIDATED REPLY IN SUPPORT
## OF THEIR CROSS-MOTIONS FOR SUMMARY JUDGMENT
## AND MOTIONS FOR IN CAMERA REVIEW OF THE "MUELLER REPORT"

## TABLE OF CONTENTS

TABLE OF AUTHORITIES..........................................................................................................ii

ARGUMENT ........................................................................................................................... 1

I.     THE DOJ HAS NOT MET ITS BURDEN UNDER EXEMPTION 7(A) TO
WITHHOLD PORTIONS OF THE MUELLER REPORT RELATING TO
CHARGED CASES AND INVESTIGATIONS.................................................................. 1

II.    THE DOJ HAS NOT PROVEN THAT ROGER STONE'S CONSTITUTIONAL
FAIR TRIAL RIGHTS OR JUDGE JACKSON'S ORDERS REQUIRE EVERY BIT
OF INFORMATION ABOUT STONE TO BE WITHHELD............................................ 5

III.   THE PUBLIC INTEREST IN A FULL ACCOUNTING OF THE CONDUCT AND
DECISIONS OF THE SPECIAL COUNSEL AND ATTORNEY GENERAL
OUTWEIGHS ANY PRIVACY INTERESTS UNDER EXEMPTIONS 6 AND 7(C)...... 7

IV.   THE DOJ'S GENERIC EXEMPTION 3 AND EXEMPTION 7(E) CLAIMS ARE
NOT SUFFICIENT, AND THOSE REDACTIONS SHOULD BE SUBJECT TO IN
CAMERA REVIEW ....................................................................................................... 12

      A.    *In Camera* inspection of information withheld under Exemptions 3 and 7(E)-1
is warranted. ......................................................................................................... 12

      B.    The DOJ cannot withhold information about "investigative focus and scope"
or the "fruits of an operation" under Exemption 7(E). ......................................... 13

V.    THE DOJ HAS NOT ESTABLISHED THAT ALL OF ITS GRAND JURY
REDACTIONS ARE WITHIN THE SCOPE OF RULE 6(E) ......................................... 15

VI.   THE AGENCY HAS FAILED TO SHOW HOW THE MUELLER REPORT
COULD QUALIFY FOR EXEMPTION 5, WHICH IS LIMITED SOLELY TO
PREDECISIONAL RECORDS. ..................................................................................... 17

CONCLUSION ....................................................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*Access Rep. v. DOJ,*
  926 F.2d 1192 (D.C. Cir. 1991)............................................................................. 18

*Afshar v. Dep't of State,*
  702 F.2d 1125 (D.C. Cir. 1982)......................................................................... 18, 20

*Alyeska Pipeline Service Co. v. EPA,*
  856 F.2d 309 (D.C. Cir. 1988)................................................................................ 3

*Arthur Andersen & Co. v. IRS,*
  679 F.2d 254 (D.C. Cir. 1982)............................................................................. 18

*Bartko v. DOJ,*
  898 F.3d 51 (D.C. Cir. 2018)................................................................................. 8

*Boyd v. DOJ,*
  475 F.3d 381 (D.C. Cir. 2007)............................................................................... 4

*Campbell v. DOJ,*
  164 F.3d 20 (D.C. Cir. 1998)................................................................................. 6

*Chiquita Brands Int'l, Inc. v. SEC,*
  10 F. Supp. 3d 1 (D.D.C. 2013)............................................................................. 5

*Cornucopia Inst. v. Agric. Mktg. Serv.,*
  312 F. Supp. 3d 85 (D.D.C. 2014)........................................................................ 13

*Costal States Gas Corp. v. Dep't of Energy,*
  617 F.2d 854 (D.C. Cir. 1980)............................................................................. 20

*Cottone v. Reno,*
  193 F.3d 550 (D.C. Cir. 1999)............................................................................. 16

*CREW v. DOJ,*
  746 F.3d 1082 (D.C. Cir. 2014)........................................................... 2, 4, 9, 10, 12, 13

*Crooker v. ATF,*
  789 F.2d 64 (D.C. Cir. 1986)............................................................................. 2, 3

*Davis v. DOJ,*
  968 F.2d 1276 (D.C. Cir. 1992)........................................................................... 16

*Dep't of Air Force v. Rose,*
  425 U.S. 352 (1976) ........................................................................................ 11

*DiBacco v. Dep't of the Army,*
  926 F.3d 827 (D.C. Cir. 2019)............................................................................... 1

*EFF v. DOJ,*
  739 F.3d 1 (D.C. Cir. 2014)................................................................................ 18

*Gatson v. FBI, No. 15-5068,*
  2017 WL 3783696 (D.N.J. Aug. 31, 2017)............................................................. 14

*In re Motions of Dow Jones & Co.,*
  142 F.3d 496 (D.C. Cir. 1998)............................................................................. 16

*Islamic Shura Council of S. Cal. v. FBI,*
  779 F. Supp. 2d 1114 (C.D. Cal. 2011).................................................................. 13

*James Madison Project v. DOJ,*
  302 F. Supp. 3d 290 (D.D.C. 2018)...................................................................... 21

*Juarez v. DOJ,*
  518 F.3d 54 (D.C. Cir. 2008)................................................................................. 4

*Judicial Watch, Inc. v. Dep't of Commerce*,
375 F. Supp. 3d 93 (D.D.C. 2019)...................................................................... 21

*Judicial Watch, Inc. v. DOD*,
245 F. Supp. 3d 19 (D.D.C. 2017),
*aff'd*, 913 F.3d 1106 (D.C. Cir. 2019) .............................................................. 18

*Judicial Watch, Inc. v. DOJ*,
365 F.3d 1108 (D.C. Cir. 2004) ........................................................................ 18

*Judicial Watch, Inc. v. DOJ*,
800 F. Supp. 2d 202 (D.D.C. 2011) ............................................................. 18, 19

*Judicial Watch, Inc. v. FDA*,
449 F.3d 141 (D.C. Cir. 2006) .......................................................................... 18

*Judicial Watch, Inc. v. U.S. Dep't of State*,
344 F. Supp. 3d 77 (D.D.C. 2018)..................................................................... 13

*Kay v. FCC*,
976 F. Supp. 23 (D.D.C. 1997).......................................................................... 3

*Krikorian v. Dep't of State*,
984 F.2d 461 (D.C. Cir. 1993) .......................................................................... 18

*Liounis v. DOJ*, No. 17-1621,
2018 WL 5817352 (D.D.C. Nov. 7, 2018) ........................................................ 17

*Mapother v. DOJ*,
3 F.3d 1533 (D.C. Cir. 1993).......................................................................... 3, 4

*Maydak v. DOJ*,
218 F.3d 760 (D.C. Cir. 2000).......................................................................... 4

*Mobley v. CIA*,
806 F.3d 568 (D.C. Cir. 2015).......................................................................... 22

*NARA v. Favish*,
541 U.S. 157 (2004) ......................................................................................... 8

*New Orleans Workers' Ctr. for Racial Justice v. Immigrations and Customs Enf't*,
373 F. Supp. 3d 16 (D.D.C. 2019)..................................................................... 14

*NLRB v. Robbins Tire & Rubber Co.*,
437 U.S. 214 (1978) ......................................................................................... 3

*NLRB v. Sears, Roebuck & Co.*,
421 U.S. 132 (1975) ......................................................................................... 18

*North v. Walsh*,
881 F.2d 1088 (D.C. Cir. 1989).......................................................................... 4

*Peay v. DOJ*, No. 04-1859,
2007 WL 788871 (D.D.C. Mar. 14, 2007) ........................................................ 16

*Petroleum Info. Corp. v. Dep't of Interior*,
976 F.2d 1429 (D.C. Cir. 1992).......................................................................... 18

*Pub. Citizen, Inc. v. OMB*,
598 F.3d 865 (D.C. Cir. 2010).......................................................................... 19

*Quarles v. Dep't of Navy*,
893 F.2d 390 (D.C. Cir. 1990).......................................................................... 18

*Ray v. Turner*,
587 F.2d 1187 (D.C. Cir. 1978).............................................................. 12, 13, 16

*Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*,
    421 U.S. 168 (1975) ............................................................................................... 18
*Rosenberg v. DOD*,
    342 F. Supp. 3d 62 (D.D.C. 2018)......................................................................... 21
*Senate of the Commw. of P.R. on Behalf of Judiciary Comm. v. DOJ*,
    823 F.2d 574 (D.C. Cir. 1987)............................................................................... 16
*Serbian E. Orthodox Diocese for U.S. of Am. and Can. v. CIA*,
    458 F. Supp. 798 (D.D.C. 1978)............................................................................ 12
*Shapiro v. DOJ*,
    239 F. Supp. 3d 100 (D.D.C. 2017)....................................................................... 14
*Sheridan v. OPM*,
    278 F. Supp. 3d 11 (D.D.C. 2017)......................................................................... 15
*Skilling v. United States*,
    561 U.S. 358 (2010) ................................................................................................. 5
The record at issue in *PHE, Inc. v. Department of Justice*,
    983 F.2d 248 (D.C. Cir. 1993)............................................................................... 14
*United States v. Concord Mgmt. & Consulting LLC*,
    No. 18-cr-32-2 (D.D.C. July 1, 2019) ................................................................ 6, 7
*Vaughn v. Rosen*,
    484 F.2d 820 (D.C. Cir. 1973)............................................................................... 17
*Vaughn v. Rosen*,
    523 F.2d 1136 (D.C. Cir. 1975)............................................................................. 20
*Whitaker v. CIA*,
    31 F. Supp. 3d 23 (D.D.C. 2014)........................................................................... 13

**Statutes**
5 U.S.C. § 552(a)(8) .................................................................................................. 21

**Other Authorities**
28 C.F.R § 600.8 ....................................................................................................... 20
Pl.'s Mem. Op., *Peay v. DOJ*, No. 04-1859, ECF No. 83 (D.D.C. Mar. 14, 2007) ...................... 16
*Transcript: Attorney General William Barr's Press Conference Remarks Ahead of Mueller
    Report Release*, Politico (Apr. 18, 2019) ............................................................... 7
U.S. Dep't of Justice, *Special Counsel Robert S. Mueller III Makes Statement on
    Investigation into Russian Interference in the 2016 Presidential Election* (May 29, 2019) ...... 20

## ARGUMENT

If the Court were to read only the Government's briefs, it would be easy to forget that the version of the Mueller Report disclosed to Plaintiffs contains redactions on 178 of 448 pages—more than one-third of the document—including multiple pages blacked out in their entirety. Information about the special counsel's declination decisions has been selectively withheld. Details about ongoing vulnerabilities in the US election system remain hidden from public view. The roles of well-known public officials and public figures in an effort by a foreign government to change the outcome of a US Presidential election are still kept behind a shroud of secrecy. The information previously disclosed by the DOJ has no bearing on Plaintiffs' right under the FOIA to obtain material that the agency is unlawfully withholding. The FOIA makes clear that the burden falls on the agency to justify withholdings, and recent amendments to the Act also require the agency to demonstrate a "foreseeable harm" if it chooses to withheld information in its possession from the public. The agency's efforts to treat the exemption claims in the Mueller Report as routine law enforcement matters could hardly be further from the reality of this case. After two briefs and two declarations, the DOJ has *still* failed to carry its burden of "proving the applicability of claimed exemptions." *DiBacco v. Dep't of the Army*, 926 F.3d 827, 834 (D.C. Cir. 2019). Accordingly, the Court should deny the DOJ's cross-motion for summary judgment and conduct an *in camera* inspection. *See GTE Sylvania, Inc. v. Consumers Union of U. S., Inc*., 445 U.S. 375 (1980) ("Indeed, Congress viewed the federal courts as the necessary protectors of the public's right to know.").

## I.     THE DOJ HAS NOT MET ITS BURDEN UNDER EXEMPTION 7(A) TO WITHHOLD PORTIONS OF THE MUELLER REPORT RELATING TO CHARGED CASES AND INVESTIGATIONS.

The Mueller Report is not a typical investigatory record, and the DOJ's attempts to apply the traditional categorical approach to justify withholding substantial portions of the Report is

not consistent with the FOIA and not supported by any of the cases the agency cites. Put simply, no court has endorsed a blanket Exemption 7(A) claim covering the type of material contained in the Mueller Report. The portions of the Report that the agency claims exempt under 7(A) concern eight criminal cases that have already been publicly described in detailed charging documents. DOJ Opp'n 21, ECF No. 80. The defendants in those cases already have the right under the Federal Rules of Criminal Procedure and the Constitution to access evidence, witness statements, and other primary investigative sources. The FOIA does not permit an agency to withhold descriptions of those charged cases contained in a final oversight report without submitting any evidence concerning the specific circumstances of each case, or even identifying which redactions relate to which prosecution. Indeed, the DOJ has not cited any case where a court has upheld an agency's Exemption 7(A) claim related to pending prosecutions without also submitting details about the prosecutions and evidence that disclosure could in fact interfere with those prosecutions.

The DOJ argues that this Court should approve withholding of material on hundreds of pages concerning the eight pending prosecutions and other investigations because "there is just one document at issue." DOJ Opp'n 24. But the fact that the details of all the prosecutions are contained in the Mueller Report is not relevant under the categorical approach. The agency must categorize its withholdings "functionally" and must "explain to the court how the release of each category would interfere with enforcement proceedings." *CREW v. DOJ*, 746 F.3d 1082, 1098 (D.C. Cir. 2014). The agency has failed to do so. The agency has provided no factual basis for the Court to "grasp 'how each . . . category of documents, if disclosed, would interfere with" the specific investigations discussed. *Crooker v. ATF*, 789 F.2d 64, 67 (D.C. Cir. 1986) ("The hallmark of an acceptable *Robbins* category is thus that it is functional; it allows the court to

trace a rational link between the nature of the document and the alleged likely interference.") As

the court explained in *Crooker*, the categorical approach only allows withholding based on proof

that "with respect to *particular* kinds of enforcement proceedings, disclosure of *particular* kinds

of investigatory records . . . would generally 'interfere with enforcement proceedings.'" *Id.*

(emphasis added).

The DOJ argues that the concerns about witness intimidation and tampering in the labor

and environmental law context, discussed in *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214

(1978), and *Alyeska Pipeline Service Co. v. Environmental Protection Agency*, 856 F.2d 309

(D.C. Cir. 1988), were "not limit[ed] to civil cases." DOJ Opp'n 24. But the logic of those

decisions hinges on the nature of the civil proceedings at issue (labor and environmental

disputes) and the likelihood of the specific harms that could be caused by disclosure of the

categories of records (witness statements in *Robbins* and identification of investigatory records in

*Alyeska Pipeline*). As the Court explained at length in *Robbins Tire*, Congress had unique

concerns about the risks associated with premature disclosure of witness statements in NLRB

enforcement proceedings when the FOIA was first enacted. *Robbins Tire*, 437 U.S. at 236. The

D.C. Circuit in *Alyeska Pipeline* only held that records related to an *ongoing* EPA investigation

could not be disclosed because they might reveal "the particular types of allegedly illegal

activities being investigated." *Alyeska Pipeline*, 856 F.2d at 311. Neither case is analogous here.

The Mueller Report is a *sui generis* Justice Department record meant to facilitate oversight of

one of the most high-profile and significant investigations in our nation's history.

The DOJ similarly misses the mark when it cites to *Kay v. Federal Communications

Commission*, 976 F. Supp. 23 (D.D.C. 1997), and *Mapother v. Department of Justice*, 3 F.3d

1533 (D.C. Cir. 1993). The records at issue in *Kay* related to an *ongoing civil* investigation into

possible Communications Act violations, which is entirely different from the charged criminal cases discussed in the Mueller Report. And contrary to the agency's claim, *Mapother* did not "involve[] pending criminal proceedings." DOJ Opp'n 25. The records in *Mapother* concerned a request for disclosure of the "Waldheim Report," a special report prepared by the DOJ prior to an order by the Attorney General excluding "the former Secretary-General of the United Nations and former President of Austria" from "entering the United States." *Mapother*, 3 F.3d at 251. As the court explained, unlike a criminal prosecution, "any proceedings to enforce [an exclusion order] will take the form of a response to a challenge by or on behalf of the person who is the subject of the order." *Id*. at 258. So the court in *Mapother* was not considering the impact on a criminal proceeding but the likelihood of a future challenge by Mr. Waldheim to the exclusion order. *Id*.

The agency's references to *Boyd v. Criminal Division of U.S. Department of Justice*, 475 F.3d 381 (D.C. Cir. 2007), and *Juarez v. Department of Justice*, 518 F.3d 54 (D.C. Cir. 2008), are perhaps closer but still miss the point. Both of those cases concerned routine criminal investigations and traditional investigatory files. The DOJ does not cite a single case involving records related to a post-indictment criminal case. And that makes sense given that it is much harder for the government to justify withholding investigatory records once charges has been filed and information about the enforcement has been made public by the government in the course of those proceedings. That was true in both *Maydak v. Department of Justice*, 218 F.3d 760 (D.C. Cir. 2000), and *North v. Walsh*, 881 F.2d 1088 (D.C. Cir. 1989). Because Exemption 7(A) is "temporal in nature," the particular stage of the enforcement proceedings at issue are directly relevant to the court's analysis. *CREW*, 746 F.3d at1097.

4

The DOJ has not met its burden to withhold material throughout the Mueller Report that concerns charged cases and other enforcement proceedings. The agency's declarations lack the detail and evidence necessary to justify such broad withholdings. In particular, the agency's failure to tie specific redactions to specific cases or to provide detail about the nature and status of those cases, is fatal to the Exemption 7(A) claim.

## II.   THE DOJ HAS NOT PROVEN THAT ROGER STONE'S CONSTITUTIONAL FAIR TRIAL RIGHTS OR JUDGE JACKSON'S ORDERS REQUIRE EVERY BIT OF INFORMATION ABOUT STONE TO BE WITHHELD

As the narrowly tailored terms of Judge Jackson's orders indicate, not every bit of information about Roger Stone must be withheld to ensure that his fair trial rights are protected. The DOJ has offered no reason for this Court to exceed Judge Jackson's carefully crafted orders in favor of the DOJ's blanket Roger Stone secrecy. Had Judge Jackson found such a restriction necessary, there is no doubt she would have imposed it. *See also* DOJ Opp'n 29 (arguing that Judge Jackson's order should be "take[n] into consideration" under Exemption 7(B)).

The plain text of Judge Jackson's order does not justify DOJ's position, and her statement that "the evidence detailed in the indictment alone is quite compelling" makes clear that the "spirit" of the order does not require the DOJ's near-blanket secrecy. *See* Pls' Mot. 19, ECF No. 69. That is because the government must show (and has not shown here) "why common judicial safeguards such as *voir dire* would be insufficient to ensure fairness," and because "pretrial publicity—even pervasive, adverse publicity—does not inevitably lead to an unfair trial." *Skilling v. United States*, 561 U.S. 358, 384 (2010); *Chiquita Brands Int'l, Inc. v. SEC*, 10 F. Supp. 3d 1, 5 (D.D.C. 2013).

Under both the spirit, and more importantly the letter, of Judge Jackson's order, the DOJ must show how each particular Stone-related passage of the redacted report would "pose a substantial likelihood of material prejudice" to Mr. Stone. The DOJ has not even attempted to

make such a showing. *See* DOJ Mot., Ex. 1, Decl. of Vanessa Brinkmann ¶¶ 54, 90, ECF No. 54-3 (generically claiming, with no specific explanation or document- or category-specific justification, that "*any* information released regarding Mr. Stone or his case contained in the Report is likely to receive the same attention, which could influence potential jurors" (emphasis added)). Nor has the DOJ addressed the substantial case law that sets forth the high bar for these kinds of fair-trial assertions. *See* Pls' Mot. 16–17. Instead, the DOJ claims that the Court should just defer to the DOJ's judgment, relying on a case applying deference to the question of whether a record was compiled for law enforcement purposes, not whether its release would deprive anyone of a fair trial. *Campbell v. DOJ*, 164 F.3d 20, 32 (D.C. Cir. 1998). And the DOJ ignores, in any event, that "[the] court's 'deferential' standard of review is not, however, 'vacuous.'" *Id.* (quotation and citation omitted).

The recent *Concord* order does not help the DOJ's argument either; in fact, it undercuts that argument. In *Concord*, Judge Friedrich did not hold that every statement in the Report about Concord was sufficiently prejudicial to violate the local rules. Instead, Judge Friedrich found that "two categories of statements create a risk of prejudice to the defendants: (1) those linking the defendants in this case to the Russian government and its efforts to interfere with the 2016 presidential election, and (2) those providing an opinion or conclusion about the defendants' guilt or the evidence against them," and, as a result, Judge Friedrich ordered that the government "refrain from making or authorizing any public statement that links the alleged conspiracy in the indictment to the Russian government or its agencies." *United States v. Concord Mgmt. & Consulting LLC*, No. 18-cr-32-2, slip. op. at 4, 6 (D.D.C. July 1, 2019). Also relevant to that determination was that "the Attorney General drew a link between the Russian government and this case during a press conference" and that when the Report and Attorney General statements

were "viewed together" they were "reasonably likely to cause prejudice." *Id.* at 7–8; *see also id.* at 15 (finding no issue with statements by the Special Counsel about the same general subject matter that were phrased differently). Perhaps there are some specific Roger Stone redactions that could meet this standard despite the lack of any accompanying press conference statements as in *Concord*, but the DOJ has not even attempted to identify them or prove them out, instead remaining content simply to redact nearly everything about Roger Stone.

Finally, the DOJ does not even try to reconcile its 7(B) argument with its release of the questions posed by the Special Counsel to the President about Mr. Stone and the President's answers. *See* Pls' Mot. 15. Notably, the Attorney General referenced those passages when he publicly stated "the evidence developed by the Special Counsel is not sufficient to establish that the President committed an obstruction-of-justice offense" and that "the White House fully cooperated with the Special Counsel's investigation[.]" *Transcript: Attorney General William Barr's Press Conference Remarks Ahead of Mueller Report Release*, Politico (Apr. 18, 2019).[1] If those sections can be released, it is implausible that all other Stone-related materials must be kept secret. And, more to the point, the DOJ has failed to provide any argument or evidence to the contrary despite bearing the burden of proving each and every one of its exemption claims.

## III.   THE PUBLIC INTEREST IN A FULL ACCOUNTING OF THE CONDUCT AND DECISIONS OF THE SPECIAL COUNSEL AND ATTORNEY GENERAL OUTWEIGHS ANY PRIVACY INTERESTS UNDER EXEMPTIONS 6 AND 7(C)

In its reply brief, the DOJ clings to an obsolete legal standard under Exemptions 6 and 7(C). While the DOJ no longer cites *SafeCard* for these exemptions, and while the DOJ now acknowledges *Favish*, it continues to rely on the outdated compelling evidence/illegal conduct standard, now citing a different pre-*Favish* D.C. Circuit case. DOJ Opp'n 38 (citing *Computer*

---

[1] https://www.politico.com/story/2019/04/18/transcript-barr-press-conference-1280949.

*Professionals for Soc. Resp. v. Secret Serv.*, 72 F.3d 897, 905 (D.C. Cir. 1996)). The holding of *Favish* could not be clearer: there is a cognizable public interest where records could shed light on possible government wrongdoing and where the requester goes beyond "bare suspicion" to identify evidence that would justify a belief by a reasonable person that some kind of government impropriety "might" have occurred. *NARA v. Favish*, 541 U.S. 157, 174 (2004).

As a result of its continued reliance on the wrong legal standard, the DOJ's arguments are fatally deficient. First, the DOJ simply declares by fiat that "no such misconduct occurred." DOJ Opp'n 38. But the statement cites no evidentiary support and, even if it did, it is the *public's* place to make that judgment, not DOJ's or even this Court's. "The public has an interest in knowing 'that a government investigation itself is comprehensive, that the report of an investigation released publicly is accurate, that any disciplinary measures imposed are adequate, and that those who are accountable are dealt with in an appropriate manner.' That is how FOIA helps 'to hold the governors accountable to the governed.'" *Bartko v. DOJ*, 898 F.3d 51, 69 (D.C. Cir. 2018) (*quoting Stern v. FBI*, 737 F.2d 84, 92 (D.C. Cir. 1984)).

Nor do Plaintiffs contend (or need to prove) that the Special Counsel, Attorney General, or DOJ *have* acted negligently or improperly. DOJ Opp'n 38. Rather, because the purpose of FOIA is to allow the public to come to its own informed decision about these matters, *Bartko*, 898 F.3d at 69, Plaintiffs need only show that a "reasonable person" would be justified in concluding that misconduct "might" have occurred. *Favish*, 541 U.S. at 174.

The DOJ brushes off in a few cursory sentences the scores of statements by the President about specific improprieties in the investigation—pressuring witnesses to lie, conflicts of interest, political bias, failing to interview important witnesses, and illegal origins—on the basis that "there is no reason to believe that the President would have this knowledge," or at least not

"official knowledge." DOJ Opp'n 39–40. There is no affidavit from the President or any other evidentiary support for the DOJ's speculative assertion about the President's statements. But regardless, the only question before the Court is whether a reasonable person would be justified in believing that the President of the United States "might" not be telling the truth. That answer simply cannot be no.

Even if the Court discards the words of the President as unreasonable to believe, that is only the half of it. Plaintiffs also identified statements made by members of Congress and legal experts about possible impropriety in the Special Counsel's decision not to charge Donald Trump, Jr., as well as questions about the Attorney General's merits-based pseudo-exoneration of the President, his characterization of the Report, and his advocacy on behalf of the President. Pls' Mot. 9–11. DOJ has entirely failed to respond to these statements, thus conceding that a reasonable person would be justified in relying on them to conclude that impropriety "might" have occurred in the investigation or by the Attorney General thereafter. This independently satisfies *Favish*.

In addition to disregarding *Favish* in favor of the wrong legal standard, the DOJ ignores an entirely separate strand of public interest in disclosure recognized by the D.C. Circuit. The DOJ cannot dispute, nor has it, that full disclosure "could shed light on how the FBI and the DOJ handle the investigation and prosecution of crimes that undermine the very foundation of our government"—as well as the "diligence of the FBI's investigation and the DOJ's exercise of its prosecutorial discretion"—or that the "stakes" have been "further raised" by the "prominen[ce]" of those involved. *CREW*, 746 F.3d at 1093, 1095. Similarly, to respond to the DOJ's question, DOJ Opp'n 41–42, full disclosure of the investigations and charging decisions as to both Roger Stone and Donald Trump, Jr. "may show whether prominent and influential public officials are

subjected to the same investigative scrutiny and prosecutorial zeal as local aldermen and little-known lobbyists." *CREW*, 746 F.3d at 1093. Thus, even disregarding entirely the statements of the President, members of Congress, and legal experts about possible impropriety, there remains an independent public interest in disclosure.

The DOJ next downplays the public interest in *full* disclosure by claiming that the "vast majority" of the Report is unredacted, and thus, the DOJ says, the public knows enough about the investigation. DOJ Opp'n 40. But just as the federal government does not accept public compliance with merely the "vast majority" of its laws, it has no business telling a party seeking to obtain information from the agency under the Freedom of Information Act that the disclosure is "good enough." Given that the redacted information is part of an investigation that has called into question, rightly or wrongly, correctly or incorrectly, the honesty and integrity of the FBI, DOJ, intelligence community, Congress, and the Presidency, there is no "good enough." And certainly the Court should not adopt the DOJ's view without first conducting *in camera* inspection to ensure that what was withheld is in fact not of public interest. *See* Memorandum & Order, United States v. Cohen, No. 18-cr-602 (S.D.N.Y. July 17, 2019) (rejecting Government's proposed redactions and stating that "[n]ow that the Government's investigation into those violations has concluded, it is time that every American has an opportunity to scrutinize the Materials") (attached as exhibit).

Against the unprecedented public interest in disclosure of the complete Mueller Report, DOJ must also show quite a remarkable set of privacy interests. It has not. As to the first category of redactions (reporters and Facebook groups who received messages or emails from Russian actors), the DOJ has still not established any appreciable privacy interest. To again answer DOJ's question, "interacted or engaged with" messages fails to articulate a privacy claim.

*See* DOJ Opp'n 32–33. Nor has the DOJ explained how any individuals could be identified and associated with the specific messages at issue. The DOJ has also not disputed that claims of indirect identification require *in camera* inspection to establish. *Dep't of Air Force v. Rose,* 425 U.S. 352, 381 (1976). And further still, the DOJ has remained silent on why it was willing to ignore these significant privacy interests for The Smoking Gun but not others. *See* Brinkmann Decl., Ex. A, ECF No. 54-4, at 42. Because the DOJ has shown no privacy interest in this category, the Court need not even find a public interest—though understanding and contextualizing the DOJ's selective outing of The Smoking Gun while protecting unknown others is interest enough.

As to the second category, the DOJ similarly has no explanation for its claim that Donald Trump, Jr. and others have privacy interests, but Jeff Sessions, Carter Page, and others apparently do not. *See* DOJ Opp'n 40. It may be true that the government can elect to waive exemptions, but a coherent defense of the exemption requires an equitable outcome.

In this particular FOIA case, the public interest in disclosure could not be greater and the privacy interest in withholding records about well-known public officials and public figures could hardly be less. If these materials are withheld—and if there has been no *in camera* review by the judicial branch—the public may well suspect that something important is being hidden or that someone was treated unfairly or not fairly enough. That result could not be any more at odds with the purpose of the Freedom of Information Act.

IV.   **THE DOJ'S GENERIC EXEMPTION 3 AND EXEMPTION 7(E) CLAIMS ARE NOT SUFFICIENT, AND THOSE REDACTIONS SHOULD BE SUBJECT TO IN CAMERA REVIEW**

A.   *In Camera* **inspection of information withheld under Exemptions 3 and 7(E)-1 is warranted.**

The DOJ has not met its burden under Exemptions 3 and 7(E), and the agency's argument against *in camera* inspection is not compelling. The "ultimate criterion" for *in camera* inspection is "[w]hether the district judge believes that *in camera* inspection is needed in order to make a responsible *de novo* determination on the claims of exemption." *Ray v. Turner*, 587 F.2d 1187, 1195 (D.C. Cir. 1978). Indeed, "[w]hether and how to conduct an *in camera* examination of the documents rests in the sound discretion of the court, in national security cases as in all other cases." *Serbian E. Orthodox Diocese for U.S. of Am. and Can. v. CIA*, 458 F. Supp. 798, 801 (D.D.C. 1978). "[U]neasiness" on the part of a court, or "an inherent tendency" of government agencies to "resist disclosure" may influence a court's decision. *Ray*, 587 F.2d at 1195.

The DOJ's attempt at distinguishing *CREW*, 746 F.3d at 1102 falls short. In *CREW*, the D.C. Circuit rejected DOJ's claim that material was withheld "to protect procedures and techniques used by FBI [agents] during the investigation"; here the DOJ simply replaced "procedures and techniques" with "investigative and information gathering techniques" and added that those techniques were used as part of this specific investigation. DOJ Opp'n 12. That is a meaningless distinction, and suffers from the same shortcomings as in *CREW*:

> We are not told what procedures are at stake. (Perhaps how the FBI conducts witness interviews? Or how it investigates public corruption?) Nor are we told how disclosure of the FD–302s or investigative materials could reveal such procedures. (Are the procedures spelled out in the documents? Or would the reader be able to extrapolate what the procedures are from the information contained therein?) Although Exemption 7(E) sets a "low bar for the agency to justify withholding," *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011), the agency must at least provide some explanation of what procedures are involved and how they would be disclosed. *See id.* (FBI sought to withhold "details about procedures used during the forensic examination of a computer by an FBI forensic examiner" (quotation

marks omitted)); *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1192 (D.C. Cir. 2009) (IRS sought to withhold information setting forth "settlement strategies and objectives, assessments of litigating hazards, and acceptable ranges of percentages for settlement" (quotation marks and alteration omitted)); *Morley v. CIA*, 508 F.3d 1108, 1128–29 (D.C. Cir. 2007) (CIA sought to withhold information revealing procedures for conducting security clearances and background investigations).

*CREW*, 746 F.3d at 1102.

Plaintiffs ask this Court to conduct *in camera* inspection and ensure "[g]overnment officials" have not "stoop[ed] to misrepresentation." *Ray*, 587 F.2d at 1195. The deference afforded to the executive branch on national security matters does not diminish the Court's "'substantial discretion' in deciding whether to review documents *in camera*" in FOIA cases such as this one. *Cornucopia Inst. v. Agric. Mktg. Serv.*, 312 F. Supp. 3d 85, 97 (D.D.C. 2014) (quoting *Ctr. for Auto Safety v. EPA*, 731 F.2d 16, 21 (D.C. Cir. 1984)); *see Whitaker v. CIA*, 31 F. Supp. 3d 23, 37 (D.D.C. 2014). The stakes in this case are too high to forego *in camera* inspection and simply accept the veracity of DOJ's affidavits. *See Judicial Watch, Inc. v. U.S. Dep't of State*, 344 F. Supp. 3d 77, 79–80 (D.D.C. 2018) ("At worst, career employees in the State and Justice Departments colluded to scuttle public scrutiny of Clinton, skirt FOIA, and hoodwink this Court."); *Islamic Shura Council of S. Cal. v. FBI*, 779 F. Supp. 2d 1114, 1117 (C.D. Cal. 2011) ("The Government previously provided false and misleading information to the Court.").

**B.    The DOJ cannot withhold information about "investigative focus and scope" or the "fruits of an operation" under Exemption 7(E).**

The DOJ seeks to justify its withholdings labelled 7(E)-2 with the same type of vague, categorical description that this Court found "clearly inadequate" in *New Orleans Workers' Center for Racial Justice v. Immigrations and Customs Enforcement*, 373 F. Supp. 3d 16 (D.D.C. 2019). The agency relies on two conclusory paragraphs in the Brinkmann Declaration to justify

extensive redactions throughout the Mueller Report. And the Brinkmann Declaration does not establish that release of the redacted material would reveal "techniques and procedures."

Instead, the DOJ argues that release of the redacted portions would, indirectly, reveal the "investigative focus and scope" and the "fruits of investigatory operations" is properly withheld under Exemption 7(E). DOJ Opp'n 17. But Exemption 7(E) does not allow withholding of the "investigative focus and scope" or "fruits of investigatory operations." Neither of these phrases is within the definition of a "technique" or a "procedure," and there is no evidence that revealing the focus of the investigations detailed in the Mueller Report would reveal a "technique" or "procedure," as the 7(E) Exemption requires.

The only cases that the DOJ cites in support of this radical proposition are not analogous because they involved specific investigative *techniques*. In *Shapiro v. Department of Justice*, 239 F. Supp. 3d 100 (D.D.C. 2017), the plaintiff brought an action to compel the Federal Bureau of Investigation ("FBI") to produce processing notes and other materials related to prior FOIA requests. *Id*. at 105. As the court explained, one of the FBI's concerns in that case was that release of FOIA processing records related to "No Records" responses would risk "disclosure of confidential techniques and procedures used by the FBI to hide or obscure its use of the FOIA exclusion, 5 U.S.C. § 552(c)." *Id*. at 113. The record at issue in *PHE, Inc. v. Department of Justice*, 983 F.2d 248 (D.C. Cir. 1993), was literally a manual for law enforcement officials that provided guidelines for their investigations. *Id*. at 249. Neither case supports the withholding "focus" or "scope" of the Mueller Report, a law enforcement oversight report that describes the results of a completed investigation. The decision in *Gatson v. Federal Bureau of Investigation*, No. 15-5068, 2017 WL 3783696 (D.N.J. Aug. 31, 2017), is also irrelevant because the court

14

simply did not address whether disclosure of the "focus" or "scope" of an investigation fit within the "techniques and procedures" requirement of Exemption 7(E).

Meanwhile, the DOJ does not cite any case where a court has permitted an agency to withhold information about the "fruits of" an investigation under Exemption 7(E). The DOJ notes that the court in *Sheridan v. Office of Personnel Management*, 278 F. Supp. 3d 11 (D.D.C. 2017), permitted the exemption to encompass "information regarding the circumstances of their use and the effectiveness of the technique" but that does not equate to "fruits of an investigatory operation." The Brinkmann Declaration does not shed any light on how releasing a description of the "fruits of an investigatory operation" would reveal a technique or procedure used in law enforcement investigations. It is Exemption 7(A), not Exemption 7(E), that concerns disclosure of the evidence and results of an investigation. And the DOJ does not dispute that every redaction in the Mueller Report marked 7(E)-2 is coextensive with an Exemption 7(A) claim. DOJ Opp'n 19. But the DOJ cannot simply convert a 7(A) claim into a 7(E) claim and thus avoid the "temporal" restrictions on Exemption 7(A) redactions. Once an investigation is closed, Exemption 7(A) no longer provides a basis for withholding information about the "fruits" or the "focus" of the investigation. Exemption 7(E) never provides the basis for withholding such information.

## V.     THE DOJ HAS NOT ESTABLISHED THAT ALL OF ITS GRAND JURY REDACTIONS ARE WITHIN THE SCOPE OF RULE 6(E)

As the DOJ itself explained in its opening brief, Rule 6(e) does not apply to information that is not, in fact, secret.[2] Brinkmann Decl. ¶ 18; *see also In re Motions of Dow Jones & Co.*,

---

[2] BuzzFeed does not dispute the continued validity of *all* Rule 6(e) case law as DOJ suggests in its partial quotation from BuzzFeed's brief. DOJ Opp'n 2. Rather, as BuzzFeed' explained, the government should be required to show that some cognizable interest protected by the grand jury statute actually is served by keeping secret the particular records at issue before it can be said that Rule 6(e)'s secrecy provision applies. Pls' Mot. 29–31. DOJ has made no such showing here,

142 F.3d 496, 505 (D.C. Cir. 1998); *Senate of the Commw. of P.R. on Behalf of Judiciary Comm. v. DOJ*, 823 F.2d 574, 584 (D.C. Cir. 1987). DOJ now attempts to remake Plaintiffs' Rule 6(e) argument into one of official acknowledgement and waiver. DOJ Opp'n 6–7. But Plaintiffs contend—as the law provides and as DOJ has admitted—that no information, including witness names and testimony, is covered by Rule 6(e) in the first place unless it would reveal a still-secret aspect of the grand jury's activities.

That separate and distinct argument under Rule 6(e) itself was not at issue in the official-acknowledgement cases the DOJ cites. *See Peay v. DOJ*, No. 04-1859, 2007 WL 788871, at *3 (D.D.C. Mar. 14, 2007) (addressing official acknowledgement argument without discussing elements of Rule 6(e)); Pl.'s Mem. Op. 7, *Peay v. DOJ*, No. 04-1859, ECF No. 83 (D.D.C. Mar. 14, 2007) (*pro se* brief arguing only official acknowledgement and not elements of Rule 6(e)); *Davis v. DOJ*, 968 F.2d 1276, 1279 (D.C. Cir. 1992) (not addressing any grand jury issues); *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999) (same). Indeed, it is always the government's burden under the FOIA to prove each and every one of the required exemption elements. *Davis*, 968 F.2d at 1280 ("While a showing of public availability renders the FOIA exemptions inapplicable, the converse does not follow. If a requester is unable to establish that the material he seeks is in the public domain, the government, to continue withholding the information, still must prove that it falls within a statutory exemption."); *Ray*, 587 F.2d at 1194–95 (government bears burden of proving exemption claims).

Here, it is the DOJ that is required to evaluate publicly available information—including the government's own court filings and the public statements of grand jury witnesses cited in

---

generally relying on Rule 6(e) alone and not claiming, for example, that any investigation would be obstructed, or confidential sources revealed, or privacy invaded under Exemption 7.

BuzzFeed's opening brief—and compare those materials to the redacted information. That is a far cry from asking the DOJ to prove a negative, *see* DOJ Opp'n 7 n.1, and the DOJ's refusal to do so is yet another reason the Court should conduct *in camera* inspection. *See* Brinnkmann Decl. ¶¶ 17-18; *Ray*, 587 F.2d at 1195.

The DOJ also contends that it is not required to provide "granular detail" and cites to cases in which, the agency claims, courts did not require it. *See* DOJ Opp'n 4–5. None of those cases actually support DOJ's claim. It is a cornerstone principle of FOIA that affidavits in support of exemption claims must be sufficiently detailed to allow for adversary testing. *E.g., Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973); *Liounis v. DOJ*, No. 17-1621, 2018 WL 5817352, at *7 (D.D.C. Nov. 7, 2018) (government must "provide the Court with sufficient details regarding the connection between those documents and a 'secret aspect' of the grand jury investigation" (cited by DOJ for other purposes)). Ms. Brinkmann's one-paragraph statement is conclusory and provides no detail, granular or otherwise, leaving Plaintiffs without a meaningful way to respond and frustrating the required adversary testing under *Vaughn*. *See* Brinkmann Decl. ¶ 18 (describing in conclusory terms "secret aspect of the grand jury's investigation" that are "explicitly connected to the operation of the federal grand jury" without any details or explanation). As such, the DOJ has not met its burden, despite filing a second affidavit with its reply brief.

## VI.   THE AGENCY HAS FAILED TO SHOW HOW THE MUELLER REPORT COULD QUALIFY FOR EXEMPTION 5, WHICH IS LIMITED SOLELY TO PREDECISIONAL RECORDS.

Time and again, the Supreme Court and D.C. Circuit have made it clear that the deliberative process privilege "distinguish[es] between predecisional memoranda prepared in order to assist an agency decisionmaker in arriving at his decision, which are exempt from disclosure, and postdecisional memoranda setting forth the reasons for an agency decision

already made, which are not." *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975); *accord EFF v. DOJ*, 739 F.3d 1, 7 (D.C. Cir. 2014); *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006); *Judicial Watch, Inc. v. DOJ*, 365 F.3d 1108, 1113 (D.C. Cir. 2004); *Krikorian v. Dep't of State*, 984 F.2d 461, 466 (D.C. Cir. 1993); *Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992); *Access Rep. v. DOJ*, 926 F.2d 1192, 1194 (D.C. Cir. 1991); *Quarles v. Dep't of Navy*, 893 F.2d 390, 392 (D.C. Cir. 1990); *Afshar v. Dep't of State*, 702 F.2d 1125, 1142 (D.C. Cir. 1982); *Arthur Andersen & Co. v. IRS*, 679 F.2d 254, 257 (D.C. Cir. 1982); *see also* EPIC Mot. 32–33, ECF No. 71 (collecting additional cases).

Despite this voluminous contrary authority, the DOJ continues to argue that it may invoke the deliberative process privilege to redact a *postdecisional* report "looking back on and explaining . . . a decision already reached[.]" *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 152 n.19 (1975); *see also* 28 C.F.R. § 600.8(c) (requiring the Special Counsel to submit a "report explaining the prosecution or declination decisions reached"). In support, the agency relies on this Court's ruling in *Judicial Watch, Inc. v. Department of Justice*, which held that "post-decisional documents may still be covered under the deliberative-process privilege to the extent they 'recount or reflect predecisional deliberations.'" 800 F. Supp. 2d 202, 218 (D.D.C. 2011). But this Court has since clarified that "the deliberative process privilege . . . covers *only pre-decisional materials*." *Judicial Watch, Inc. v. DOD*, 245 F. Supp. 3d 19, 31 (D.D.C. 2017) (emphasis added), *aff'd*, 913 F.3d 1106 (D.C. Cir. 2019)*.* And to the extent that *Judicial Watch v. DOJ* remains good law, it is simply not apposite here.

The records deemed privileged in *Judicial Watch v. DOJ* consisted of "summaries of internal conversations with colleagues and with supervisors"; "'back and forth' discussions and

comments concerning factual and legal analysis"; "handwritten attorney's notes"; and a

"'detailed chronology' of the DOJ's involvement in the New Black Panther Party case," *Judicial*

*Watch v. DOJ*, 800 F. Supp. 2d at 218—in other words, records that actually "reflect[] the give-

and-take of the consultative process." *Pub. Citizen, Inc. v. OMB*, 598 F.3d 865, 874 (D.C. Cir.

2010). These raw, unpolished accounts of internal deliberations are a far cry from the final

Mueller Report, the carefully-crafted product of a two-year investigation which was written to

"explain[]" the Special Counsel's prosecution decisions after the fact. 28 C.F.R. § 600.8(c).

Unlike the agency in *Judicial Watch v. DOJ*, the DOJ does not suggest that the redacted sections

of the Report would reveal contrary views expressed by individual members of the Special

Counsel's office or specific interpretations of evidence that were proposed and rejected. Nor

does the privilege attach to the Report simply because the Special Counsel's explanations align

with certain "thought processes" and "application[s] of law" that first arose during the agency's

deliberative process. Brinkmann Decl. ¶ 30. If that were all the privilege required, an agency

could withhold the underlying logic of *every* final decision on the grounds that it was discussed

by the agency at some earlier point in time. That is simply not the law.

Moreover, disclosure of the report would not "discourage candid discussion within the

agency." *Elec. Frontier Found. v. Dep't of Justice*, 826 F. Supp. 2d 157, 166 (D.D.C. 2011)

(quoting *Access Reports*, 926 F.2d at 1195). Special Counsel Mueller characterized the Report as

containing the office's "findings and analysis, and the reasons for the decisions . . . made," not

candid deliberations or private opinions. U.S. Dep't of Justice, *Special Counsel Robert S.*

*Mueller III Makes Statement on Investigation into Russian Interference in the 2016 Presidential*

*Election* (May 29, 2019).[3] Mr. Mueller also publicly stated that his team "chose those words carefully, and the work speaks for itself." *Id.*

Indeed, the DOJ has not even demonstrated that the Mueller Report is "deliberative," as required by the privilege. A document is "deliberative" only when it is "a part of the agency give-and-take . . . by which the decision itself is made." *Vaughn v. Rosen*, 523 F.2d 1136, 1143 (D.C. Cir. 1975). The Report does not reflect deliberation or consultative give-and-take, but rather contains the Special Counsel's final "prosecution or declination decisions" following the completion of its investigation. 28 C.F.R § 600.8.

And even if the Mueller Report been a "deliberative" document to begin with, the Report certainly did not retain that status after Attorney General Barr explicitly adopted the Special Counsel's judgments, findings, and decisions as DOJ policy in March. The D.C. Circuit has held that "even if the document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public." *Costal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980); *accord Afshar*, 702 F.2d at 1139–41. In *Afshar*, the D.C. Circuit held that the agency could not withhold portions of a predecisional memorandum under Exemption 5 when the agency had adopted that reasoning to explain its final course of action. Like the agency in *Afshar*, Attorney General Barr explicitly cited the Special Counsel's report in drawing his final conclusion that "the evidence developed during the Special Counsel's investigation is not sufficient to establish that the President committed an obstruction-of-justice offense." Letter from William P. Barr, Attorney Gen., to Lindsey Graham, Chairman, Senate Comm. on the

---

[3] https://www.justice.gov/opa/speech/special-counsel-robert-s-mueller-iii-makes-statement-investigation-russian-interference.

Judiciary, et al. at 3 (Mar. 24, 2019), ECF No. 7-4. Barr also drew this connection in his final determination: "In making this determination, we noted that the Special Counsel recognized that 'the evidence does not establish that the President was involved in an underlying crime related to Russian election interference[.]'" *Id.*

Finally, contra the DOJ, courts have recognized that the FOIA Improvement Act of 2016 created a "heightened standard" for the application of FOIA exemptions. *Judicial Watch, Inc. v. Dep't of Commerce*, 375 F. Supp. 3d 93, 100 (D.D.C. 2019) ("even if an exemption applies, an agency must release the document unless doing so would reasonably harm an exemption-protected interest."); *Rosenberg v. DOD*, 342 F. Supp. 3d 62, 73 (D.D.C. 2018) ("pursuant to the FOIA Improvement Act, an agency must release a record—even if it falls within a FOIA exemption—if releasing the record would not reasonably harm an exemption-protected interest and if its disclosure is not prohibited by law.") The burden is on the agency to satisfy the foreseeable harm standard. 5 U.S.C. § 552(a)(8). The DOJ must do more than "perfunctorily state that disclosure of all the withheld information—regardless of category or substance—would jeopardize the free exchange of information." Yet the DOJ's conclusory statements in support of withholding material under Exemption 5 fail to articulate "a link between the specified harm and specific information contained in the material withheld." *Judicial Watch,* 375 F. Supp. 3d at 93 (quoting H.R. Rep. No. 114-391 at 9 (2016)). And the DOJ's argument that it must withhold details of Special Counsel's prosecutorial decisions to protect the agency's deliberative process is inherently suspect, as the agency has already disclosed a great deal of information about other charging decisions in the Report.

Thus, the DOJ's attempt to assert Exemption 5 with respect to the Mueller Report must fail.

## VII.    THE COURT SHOULD CONDUCT *IN CAMERA* REVIEW.

As noted, in camera review is "needed in order to make a responsible de novo determination on the claims of exemption" in this case. *James Madison Project v. DOJ*, 302 F. Supp. 3d 290, 299 (D.D.C. 2018) (quoting *Ray*, 587 F.2d at 1195). Plaintiffs have identified numerous conclusory statements, factual gaps, and inconsistencies in the agency's representations about the Mueller Report such that the "district court[] should conduct in camera review of [the] allegedly FOIA-exempt" portions. *Mobley v. CIA*, 806 F.3d 568, 588 (D.C. Cir. 2015). The DOJ, in its Opposition, has done nothing to rebut these arguments. Indeed, the DOJ's unwillingness to accept *in camera* review of the Mueller Report calls into question the viability of the agency's withholdings. Accordingly, the Court should conduct in camera review of the full Mueller Report in order to determine the lawfulness of the agency's withholdings.

## CONCLUSION

The DOJ has failed to justify the withholding of the complete Mueller Report, a record of unprecedented national importance. The Court should accordingly deny the agency's motion for summary judgment and conduct an *in camera* inspection to ensure compliance with the FOIA.

Respectfully Submitted,

MARC ROTENBERG, D.C. Bar #422825
EPIC President and Executive Director

/s/ Matthew V. Topic
MATTHEW V. TOPIC

/s/ Alan Butler
ALAN BUTLER, D.C. Bar #1012128
EPIC Senior Counsel

JOSHUA BURDAY
MERRICK WAYNE

JOHN DAVISSON, D.C. Bar #1531914
EPIC Counsel

LOEVY & LOEVY
311 North Aberdeen,
3rd Floor
Chicago, IL 60607
312-243-5900
foia@loevy.com
DC Bar Nos. IL0037 and IL0042

ELECTRONIC PRIVACY
INFORMATION CENTER
1718 Connecticut Avenue, N.W.
 Suite 200
Washington, D.C. 20009
(202) 483-1140 (telephone)
(202) 483-1248 (facsimile)

*Attorneys for Plaintiffs Buzzfeed & Jason
Leopold*

*Attorneys for Plaintiff EPIC*[4]

Dated: July 19, 2019

---

[4] EPIC Open Government Counsel Enid Zhou, a member of the California bar whose admission is pending in the District of Columbia, contributed to this memorandum.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------  :
                                                                 :
  UNITED STATES OF AMERICA,                                      :
                                                                 :          18cr602
                       -against-                                 :
                                                                 :          MEMORANDUM & ORDER
  MICHAEL COHEN,                                                 :
                                                                 :
                                          Defendant.             :
                                                                 :
---------------------------------------------------------------  :

WILLIAM H. PAULEY III, Senior United States District Judge:

        On April 9, 2018, the FBI executed searches of Defendant Michael Cohen's

residence, hotel room, office, safe deposit box, cell phones, and electronic communications

pursuant to warrants authorized under Rule 41 of the Federal Rules of Criminal Procedure and

18 U.S.C. § 2703.  The New York Times Company, the American Broadcasting Companies,

Inc., the Associated Press, Cable News Network, Inc., Daily News, L.P., Dow Jones & Co., Inc.,

Newsday LLC, NYP Holdings, Inc., and CBS Broadcasting, Inc. sought to unseal copies of the

warrants, warrant applications, and supporting affidavits and riders relating to the April 9, 2018

searches (the "Materials").

        On February 7, 2019, this Court granted in part and denied in part the unsealing

requests.  In that Opinion & Order, this Court directed the Government to submit proposed

redactions to the Materials, which were then publicly filed in redacted form on March 19, 2019

pursuant to an order dated March 18, 2019.  The February 7, 2019 Opinion & Order also directed

the Government to submit a status report by May 15, 2019 explaining the need for continued

redaction of the Materials.  United States v. Cohen, 366 F. Supp. 3d 612, 634 (S.D.N.Y. 2019).

        On May 21, 2019, this Court authorized the continued redaction of portions of the

Materials relating to Cohen's campaign finance violations to protect the Government's ongoing

investigation.  The May 21, 2019 Order also directed the Government to submit a further status report by July 15, 2019 explaining the need for continued redaction of the Materials.

On July 15, 2019, the Government submitted a status report and proposed redactions to the Materials ex parte and under seal.  The Government now represents that it has concluded the aspects of its investigation that justified the continued sealing of the portions of the Materials relating to Cohen's campaign finance violations.  Although the Government agrees that the majority of the campaign finance portions of the Materials may be unsealed, it requests limited redactions to those portions to protect third-party privacy interests.

After reviewing the Government's status report and proposed redactions, this Court denies the Government's request.  In particular—and in contrast to the private nature of Cohen's business transactions—the weighty public ramifications of the conduct described in the campaign finance portions warrant disclosure.  See United States v. Amodeo, 71 F.3d 1044, 1051 (2d Cir. 1995) (explaining that "financial records of a wholly owned business, family affairs, illnesses, embarrassing conduct with no public ramifications, and similar matters will weigh more heavily against access than conduct affecting a substantial portion of the public").  Moreover, the involvement of most of the relevant third-party actors is now public knowledge, undercutting the need for continued secrecy.  See United States v. Basciano, 2010 WL 1685810, at *4 (E.D.N.Y. Apr. 23, 2010) ("Shielding third parties from unwanted attention arising from an issue that is already public knowledge is not a sufficiently compelling reason to justify withholding judicial documents from public scrutiny.").  On balance, the "strong presumption of public access" to search warrants and search warrant materials under the common law far outweighs the weakened privacy interests at play here.  See Cohen, 366 F. Supp. 3d at 621-22 (collecting cases).

The campaign finance violations discussed in the Materials are a matter of national importance.  Now that the Government's investigation into those violations has concluded, it is time that every American has an opportunity to scrutinize the Materials.  Indeed, the common law right of access—a right so enshrined in our identity that it "predate[s] even the Constitution itself"—derives from the public's right to "learn of, monitor, and respond to the actions of their representatives and representative institutions."  United States v. Erie Cty., 763 F.3d 235, 238-39 (2d Cir. 2014).

Accordingly, the Government is directed to file the July 15, 2019 status report and the Materials on the public docket on **July 18, 2019 at 11:00 a.m.**  The July 15, 2019 status report shall be unredacted in its entirety, except that limited references in the footnote to an uncharged third-party may remain redacted.  See United States v. Smith, 985 F. Supp. 2d 506, 526 (S.D.N.Y. 2013).  The Materials shall be unredacted in their entirety, except that the names of law enforcement investigators, references to individuals who purportedly engaged in business transactions or contemplated business transactions with Cohen relating to taxi medallions, see Cohen, 366 F. Supp. 3d at 625, and personal information referenced in this Court's March 18, 2019 Order may remain redacted.

Dated:  July 17, 2019
New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.