**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

```
JASON LEOPOLD, et al.          .
                               .
              Plaintiff,       .
vs.                            .   Docket No. CA 19-957-RBW
                               .
U.S. DEPARTMENT OF JUSTICE     .
                               .
              Defendant.       .
. . . . . . . . . . . . . . . .x
ELECTRONIC PRIVACY             .
INFORMATION CENTER             .
              Plaintiff,       .
vs.                            .   Docket No. CA 19-810-RBW
                               .
U.S. DEPARTMENT OF JUSTICE     .   Washington, D.C.
              Defendant.       .   Monday, August 5, 2019
. . . . . . . . . . . . . . . .x   10:03 a.m.
```

TRANSCRIPT OF STATUS CONFERENCE

BEFORE THE HONORABLE SENIOR JUDGE REGGIE B. WALTON

UNITED STATES DISTRICT JUDGE

APPEARANCES:

```
For the Plaintiff:    Alan Jay Butler, Attorney-at-Law
                      Marc Rotenberg, Attorney-at-Law
                      John L. Davisson, Attorney-at-Law
                      ELECTRONIC PRIVACY INFORMATION CENTER
                      1718 Connecticut Avenue, NW
                      Suite 200
                      Washington, DC 20009

For the Amicus:       Matthew Topic, Attorney-at-Law
                      LOEVY & LOEVY
                      311 N. Aberdeen Street
                      Third Floor
                      Chicago, IL 60607
```

```
 1   For the Defendant:   Courtney D. Enlow, Trial Attorney
                          Elizabeth J. Shapiro,
 2                        U.S. DEPARTMENT OF JUSTICE
                          Civil Division, Federal Programs Branch
 3                        1100 L Street, NW
                          Washington, DC 20005
 4


 5


 6   Court Reporter:    Cathryn J. Jones, RPR
                        Official Court Reporter
                        Room 6521, U.S. District Court
 7                      333 Constitution Avenue, N.W.
                        Washington, D.C. 20001
 8


 9


10


11
     Proceedings recorded by machine shorthand, transcript
12   produced by computer-aided transcription.

13


14


15


16


17


18


19


20


21


22


23


24


25
```

**P R O C E E D I N G S**

1
2     THE DEPUTY CLERK:  Your Honor, this morning this
3 is In re:  Jason Leopold, et al. versus U.S. Department of
4 Justice, and this is Civil Action Number 19-957.  But also
5 consolidated with Electronic Privacy Information Center
6 versus Department of Justice, Civil Action 19-810.
7     We'd ask the parties to step forward and identify
8 yourselves for the record, please.
9     MR. BUTLER:  Your Honor, Alan Butler on behalf of
10 Electronic Privacy Information Center.  Good morning.
11     THE COURT:  Good morning.
12     MR. TOPIC:  Good morning, Your Honor, Matt Topic
13 on behalf of Buzz Feed and Jason Leopold.
14     THE COURT:  Good morning.
15     MR. PETERSON:  Good morning, Your Honor, Courtney
16 Enlow on behalf of the Department of Justice, and with me at
17 counsel table is Elizabeth Shapiro.
18     THE COURT:  Good morning.
19     I think the best and the most expeditious way to
20 try and deal with these issues is to have the plaintiffs
21 indicate in reference to each exemption claimed by the
22 government and we'll go through each individually, why you
23 think what the government has provided does not comport with
24 the requirements of FOIA, and what you propose in reference
25 to those purported deficiencies I should order that the

1    department do.

2          So I'll hear individually from the plaintiffs.

3    We'll start with the Exemption Three and Federal Rule of

4    Civil Procedure 6(e), and then we'll move onto Exemption

5    Three as it relates to the National Security.

6          MR. TOPIC:  Good morning, Your Honor, again, Matt

7    Topic.

8          THE COURT:  Good morning.

9          MR. TOPIC:  Between the plaintiffs we've split up

10   the issues so you won't -- unless you want to hear from both

11   of us, we'll streamline it.

12         THE COURT:  No.  Unless the other misses something

13   and you think it's important enough to bring that to my

14   attention.  And in reference to the amicus, I don't know if

15   they are here or not.

16         MR. TOPIC:  I believe they are here.

17         THE COURT:  If they are here and they feel that

18   something hasn't been done that I need to know about, I'll

19   let them weigh in.  Okay.

20         MR. TOPIC:  Very good.  So, Your Honor, as to the

21   Grand Jury material under Rule 6(e), the first point I would

22   make is that the value of this information is not so much to

23   learn what happened before the Grand Jury, but to fully

24   understand what information was available to the Special

25   Counsel when he made his various decisions of who to charge

1   and who not to charge.  And there has been no showing here

2   that there would be any harm to any investigation or the

3   like from the release of this information.  In fact, for the

4   information that's been withheld under Rule 6(e) generally

5   speaking no other exemption has been claimed.  There hasn't

6   been a second exemption, for example, for interference with

7   an investigation or invasion of privacy.

8          And so in instances in which the primary value of

9   the information is other than to learn what happened before

10  the Grand Jury and there's no serious risk that any harm

11  would come from disclosure, then the information should be

12  released.

13         The second argument I would make, Your Honor, is

14  that the government has not shown that this is all

15  information that still remains secret.  They acknowledge in

16  their brief the information that's already publicly known

17  about the Grand Jury is not subject to Rule 6(e), and

18  there's no indication that they've done any analysis to go

19  through the redactions and make a determination as to what

20  information is already public and what information still

21  remains secret.  And so even under the standard that they

22  acknowledge, they have not made the necessary showing for

23  Rule 6(e).

24         Their primary argument seems to be that there has

25  not been any official acknowledgment by the government that

1    any of these people testified before the Grand Jury or

2    testified to this or that, but that really confuses the

3    issue.  The case they cite acknowledges that official

4    acknowledgment is basically if a record is exempt it would

5    still, it would still be produced if there's been official

6    acknowledgment of the information.  But in and of itself it

7    doesn't create an exemption if the information is not

8    publicly available, so they still have to prove that Rule

9    6(e) applies.

10          And so whether it's through official

11   acknowledgment, whether it's through a brief that the

12   government has filed in the Manafort case or otherwise.

13   Whether it's through the first person accounts in the media

14   of people who've testified before the Grand Jury to the

15   extent that information is already public or wouldn't reveal

16   anything that's secret, then it does not fall within Rule

17   6(e).

18          And so we would ask since they have not undertaken

19   that analysis, that we've provided information to the Court

20   about information that's publicly available.  And we think

21   this is an example of an area where an in-camera inspection

22   would be appropriate so Your Honor can compare what's public

23   to what has been withheld and make sure the government is

24   not overwithholding information that's not covered by Rule

25   6(e).

1              MS. ENLOW:  Your Honor, plaintiffs started out by

2      saying that they were concerned about the harm, whether

3      there's a harm to release or the value of the information,

4      that is completely irrelevant to this Court's analysis.

5      Rule 6(e) protects the secrecy of the Grand Jury

6      deliberation and Grand Jury matters and leaves no discretion

7      to the Court to do any kind of balancing of public interest

8      or harm to release or anything like that.  Only question

9      before the Court is whether the material properly falls

10     within a statute, a qualifying statute under Exemption

11     Three.  Rule 6(e) is a qualifying statute.  There's no doubt

12     about that, and the material falls within that statute.

13             Ms. Brinkmann attested that what was upheld was

14     the quintessential Grand Jury material, the identities of

15     witnesses who appeared before the Grand Jury, the identities

16     of individuals who were subpoenaed by the Grand Jury, and

17     the substance of the Grand Jury testimony.  This material

18     because it falls within Rule 6(e) that's the end of the

19     Court's analysis.

20             Now, plaintiffs also argue that this information

21     no longer remains secret.  But Ms. Brinkmann attested that

22     revealing any additional information from the Grand Jury

23     proceedings would reveal a secret aspect of the Grand Jury

24     proceedings and that everything that's been withheld was

25     explicitly before the Grand Jury.  And in addition,

1    plaintiffs bear the burden of showing that the withhold

2    material is exactly the same as what may be in the public

3    domain.  There's no evidence that they met that burden here.

4          And with regard to in-camera review, this Court

5    recognized in the *Judicial Watch versus Nora* case about the

6    Hilary Clinton indictment, it's appropriate to rely on the

7    declaration of Ms. Brinkmann here.  There's no need for the

8    Court to conduct an in-camera review to determine whether or

9    not information still may remain secret.

10         THE COURT:  Well, in reference to information

11   that's already publicly known, you're, I assume, taking the

12   position that what has not been produced in fact is

13   information that's not in the public domain?

14         MS. ENLOW:  That is correct, Your Honor, and

15   that's what Ms. Brinkmann has attested to.

16         THE COURT:  What about the position that she takes

17   that there's no balancing to be done here, and that if they

18   represent that what they're withholding was, in fact,

19   information that was submitted to the Grand Jury, that that

20   ends the inquiry?

21         MR. TOPIC:  So as to the second point, there is no

22   evidence in Ms. Brinkmann's affidavit that she has conducted

23   an analysis to make that comparison, and that is unlike the

24   Judicial Watch case that they have cited.  There's basically

25   just a conclusory paragraph.  There's no indication that she

1   has actually undertaken that analysis.  And so if she did

2   and she attest at that point it might be a different

3   situation, but they've now had two briefs and two

4   opportunities to provide affidavits that would show that and

5   they haven't.

6           As to the balancing test, the case we would

7   primarily rely on, and it's cited on page 29 of our opening

8   brief, is In Re: Grand Jury impaneled, October 2nd, quote,

9   since the subcommittee is looking into the public integrity

10  section's performance and not the Grand Jury itself these

11  record analyses would seem to fall into that category of

12  unprotected documents that have a significance of their own

13  here is part of the Public Integrity Section's investigation

14  of Robert Vesco.  I'll confess I don't know who Robert Vesco

15  is at this point, but we certainly are not the Public

16  Integrity Section of any unit of government, but that isn't

17  relevant under Rule 6(e).  The point is that when

18  information primarily has value other than to learn what

19  transpired before the Grand Jury then there is discretion

20  for the Court to release the information.

21          Last point I would make --

22          THE COURT:  And that other, that other purpose

23  would be what here?

24          MR. TOPIC:  The purpose would be the public's full

25  understanding of how the Special Counsel came to the

1    conclusions that it did on who it would charge and who it

2    would not charge.  As you read through the redacted report

3    there are large sections where we don't know, we have no

4    idea what that evidence is that the Special Counsel was

5    looking at, discounted, credited.  There's just big gaps.

6    We don't have a full understanding.

7            And so it's true that a large part, I mean,

8    depending on how you look at it, there are significant parts

9    that have been released.  There are significant parts that

10   have not been released.  And individual sentences,

11   individual passages, even if they, you know, originate with

12   the Grand Jury might tell us a lot about how did the Special

13   Counsel come to the conclusion that there was no basis to

14   charge, for example, Donald Trump, Junior, with any crimes

15   associated with the Trump Tower meeting and conspiring with

16   the Russian government or accepting anything of value.

17           There's just large sections that we don't -- we

18   really don't understand or know how that conclusion was

19   reached, so that's the value.  The Grand Jury is really, it

20   doesn't matter if it came from the Grand Jury or came

21   otherwise.  Frankly, they probably could have written a

22   report without even identifying that it came from the Grand

23   Jury or didn't come from the Grand Jury.  The point is just

24   the information.  And the secrecy under Rule 6(e) does not

25   apply to everything just because there's a Grand Jury.  It's

1    things that would reveal secret aspects of the Grand Jury's

2    activities.

3            THE COURT:  So are you assuming that an

4    investigation, for example, regarding Donald Trump, Junior,

5    was, in fact, undertaken by the Special Counsel?

6            MR. TOPIC:  Well, there's a section of the report

7    that talks about the Trump Tower meeting and talks about --

8    it talks about busy Donald Trump, Junior, and Mr. Kushner

9    and Mr. Manafort as being in attendance.  When we get to the

10   privacy arguments, I think this will come up again.

11           But they have redacted the subheadings of people's

12   names, but when you read it in context, it seems pretty

13   clear that it's talking about one of those people.  There's

14   some basic information upfront and then it walks through the

15   analysis of -- or it walks through what some of that

16   evidence is.

17           THE COURT:  I mean, obviously I don't know what,

18   if anything, was referred by the Special Counsel to other

19   prosecutors' offices, but I mean, what if that is, in fact,

20   what occurred, that there was a referral made to, for

21   example, the Southern District of New York for them to

22   assess whether they believed that some type of prosecution

23   should proceed.  Wouldn't they have a right to not disclose

24   that information at this time?

25           MR. TOPIC:  Well, you would expect to see an

1     assertion of Section 7(a) for interference with a pending

2     investigation, and we don't really have that for most of

3     these Grand Jury exemption claims.  This is just Grand Jury

4     because it's Grand Jury is essentially what they're arguing.

5            And in some of the passages it really kind of --

6     it's difficult for me, and I think for many people, to

7     understand how the particular passage would actually be

8     revealing something even before the Grand Jury.

9            So Docket Number 54-5 at page 13, we also sought a

10    voluntary interview with the president.  After more than a

11    year of discussion, the president declined to be

12    interviewed.  Then a redaction under B3.  During the course

13    of our discussions the president did agree to answer written

14    questions, and it talks about that.

15           Well, the president obviously was never called

16    before the Grand Jury.  Yeah, it really -- there's been no

17    explanation, for example, how that passage would reveal

18    anything secret about what transpired before the Grand Jury.

19           If that's an assessment by the Special Counsel's

20    office as to whether they would issue a Grand Jury subpoena

21    or whether they would attempt to bring the president before

22    the Grand Jury, that doesn't reveal anything that transpired

23    before the Grand Jury.  That reveals the thought processes

24    or the analysis by the Special Counsel's office.  And it's

25    axiomatic at this point that the Grand Jury is independent

1    from the prosecutor.  So the fact that the prosecution was

2    considering bringing something before the Grand Jury unless

3    that was directed by the Grand Jury and there's no

4    indication of that, then that passage certainly should not

5    be considered Rule 6(e) material.

6          THE COURT:  What about this point regarding the

7    proposal that the president either provide written responses

8    or appear before the Grand Jury?  I mean, what he was saying

9    in response to what counsel just indicated in that regard

10   that what's been indicated doesn't indicate that that

11   information was in fact something presented to the

12   government.  It may have been something internal within the

13   Special Prosecutor's office.  And if that is the case, why

14   would that be covered by 6(e)?

15         MS. ENLOW:  Your Honor, plaintiffs are basically

16   speculating as to what is under that redaction.  Ms.

17   Brinkmann in her sworn declaration said that that

18   information that was withheld was only that information

19   which explicitly discloses matters occurring before a

20   federal Grand Jury.  That's it.  The speculation about what

21   might be under that particular redaction does not -- is not

22   sufficient to doubt the good faith of Ms. Brinkmann's

23   declaration.

24         In any event, it's important to take a step back

25   here.  Plaintiff's counsel cited some case about the value

1     of its information, but the D.C. Circuit just recently held

2     this year in *McKeever* that the Court has no inherent

3     authority to release 6(e) information for public interest

4     purposes.

5                That is the case here.  Again, the Court's

6     analysis is simply whether or not the information falls

7     within 6(e), and Ms. Brinkmann's declaration shows that it

8     does.

9                THE COURT:  I guess they're saying I shouldn't

10    rely upon that representation that that redacted information

11    was, in fact, information submitted to the Grand Jury or

12    considered by the Grand Jury.

13               MS. ENLOW:  They are, but this is just speculation

14    as to what's under the redaction.  And it's certainly not

15    good enough to question the good faith of Ms. Brinkmann's

16    declaration where she says that only the matters that were

17    explicitly before the Grand Jury was withheld; witness'

18    names, identity of individuals who were subpoenaed by Grand

19    Jury, witness testimony.  These things are quintessential

20    Rule 6(e) material.  The D.C. Circuit has recognized this

21    over and over again.  And fun for Constitutional government

22    and assessment and Senate for the common law of Puerto Rico

23    and Hodge.

24               All of these cases repeatedly say that once it's

25    shown that in a declaration that this is the kind of

1 | information that was withheld it must be protected from

2 | disclosure under Rule 6(e) in Exemption Three.

3 |          THE COURT:  I mean she says you're just

4 | speculating about this information not having been submitted

5 | to the Grand Jury, and that I have to rely upon what's in

6 | the declaration that says that this was, in fact, something

7 | that was either before or considered by the Grand Jury.  And

8 | therefore, that ends the inquiry.  You say I should conduct

9 | an in-camera inspection.  What would be the basis for me

10 | concluding on the existing record that I should not adhere

11 | or respect the presumption that's given to the good faith of

12 | the agency in reference to its representations in this

13 | regard?

14 |          MR. TOPIC:  The reason, Your Honor, is that you

15 | don't have to and you are not supposed to rely on legal

16 | conclusions put in the form of an affidavit.  And that's

17 | exactly what Ms. Brinkmann's affidavit is.  Just says only

18 | information that was explicitly connected to the operation

19 | of the federal Grand Jury and -- which could not be

20 | disclosed without clearly revealing the inner workings of

21 | Grand Jury proceedings was protected pursuant to Exemption

22 | Three.

23 |          So there is an -- I mean in some places there's an

24 | explanation that these are witness names or testimony that

25 | was provided by a witness.  At least there we understand,

1   okay, what is the class of information they're talking

2   about?  Logically is that information that would be before a

3   Grand Jury?  The example I gave you reading that in context

4   calls into question the voracity of the affidavit as applied

5   at least to that particular passage.  Reading it in context,

6   there's no explanation as to how --

7            THE COURT:  So in reference to this particular

8   issue, are you saying that I should require that they

9   supplement their affidavit with something more than what

10  they've indicated before I would even reach the point of

11  saying that I needed to conduct an in-camera review?

12           MR. TOPIC:  Your Honor, the cases -- there's a

13  public interest obviously here and a desire to expedite the

14  case.  So they've had two opportunities.  We've raised these

15  issues all along the way.  It's not uncommon for the

16  government to provide a supplemental affidavit in its second

17  brief.  They had the opportunity to do that.  They didn't do

18  that.  I think at this point we would add and I'm sure

19  you're hear reasons throughout the argument today why

20  in-camera inspection would be more appropriate.  We think

21  given the fact that they've had opportunities that would

22  make sense.

23           If I can touch a couple of other -- unless there's

24  something else on that point.

25           THE COURT:  That's fine.  You may.

1          MR. TOPIC:  *McKeever* really is not the issue here.

2  *McKeever* says if material is subject to Rule 6(e) then the

3  Court doesn't have discretion.  And we'll see how that plays

4  out en banc and what will happen next with *McKeever* because

5  it really is contrary to some prior decisions.  But that's

6  not our argument.  Our argument is that if it's not a matter

7  occurring before the Grand Jury as that term of art has been

8  interpreted, including in the case that I cited to you, then

9  it's not Rule 6(e) material in the first place.

10          It is not our burden to prove anything here.  It's

11  their burden of proving that this material is subject to

12  Rule 6(e).  So obviously I haven't seen the material.  I can

13  only see what Ms. Brinkmann said and what I see is very

14  generic, high level legal conclusion type of language.  It

15  doesn't specifically talk about some of these passages that

16  don't plausibly seem to possibly have anything to do with

17  the Grand Jury.

18          It could be that Ms. Brinkmann is taking a very

19  aggressive legal interpretation of what is a matter

20  occurring before the Grand Jury.  And her affidavit is not

21  entitled to any deference at all when it comes to those

22  kinds of issues.

23          THE COURT:  You know, government counsel, I'm

24  obviously very sensitive to the need to maintain the privacy

25  of information provided to the Grand Jury, but counsel says

1    that Ms. Brinkmann really is just providing legal

2    conclusions, and I shouldn't just rely upon those

3    conclusions in concluding what's been -- we're talking about

4    now that these redactions were, in fact, do, in fact, relate

5    to information that was provided to the Grand Jury.

6            I mean, can I just rely upon her generalized

7    statement that the information that they're seeking is

8    covered by 6(e) without more?

9            MS. ENLOW:  Your Honor, it's not just a

10   generalized statement of, oh, yes, this material is Grand

11   Jury material.  That's how they're painting this.  When you

12   actually look at Ms. Brinkmann's declaration she explicitly

13   states that the material that was withhold, Grand Jury

14   witnesses, individuals who were subpoenaed by the Grand

15   Jury, and Grand Jury testimony.  That's what she says.  She

16   doesn't say that there's any other squishy category of

17   information that was withheld.  She said those three

18   categories.

19           Those are quintessential Rule 6(e) material --

20           THE COURT:  You're saying all of the claimed

21   Exemption Three exemptions as it relates to 6(e) fall within

22   those three categories?

23           MS. ENLOW:  That is what the declaration says.

24   And because it does fall within those categories, and courts

25   have recognized time and again that this is quintessential

1    6(e) material, it must be protected from disclosure.   And

2    the fact that the McKeever case, that actually -- the time

3    for en banc has run.   That case is final.   That case is

4    binding.   The Court has no inherent discretion to release

5    this material just for public interests purposes.

6            THE COURT:   Okay.   I think I understand your

7    respective positions regarding this particular exemption.

8    We can move on to Exemption Three and the National Security

9    Act.

10            MR. TOPIC:   That's me again, Your Honor, and I

11    think really this exemption sort of merges with the 7(e)(1)

12    category, so sources and methods and intelligence kind of

13    information.   Our argument is largely the same here.

14            THE COURT:   You said 7(e)?

15            MR. TOPIC:   Sorry, yes.   So they claim under 7(e)

16    they have subdivided in between 7(e)(1) and 7(e)(2).

17            THE COURT:   Right.

18            MR. TOPIC:   Seven (e)(1) is law enforcement

19    gathering techniques, and then Exemption Three is

20    intelligence gathering techniques.   And I think they've

21    largely sorted them together, and so we can certainly

22    address them the same way.

23            THE COURT:   Does the government agree?

24            MS. ENLOW:   Yes, your Honor.

25            THE COURT:   Okay.

1          MR. TOPIC:  So we've explained in our briefs the

2     case law makes clear that notwithstanding any deference, the

3     Court must be satisfied that only exempt material was

4     redacted.  Here, what they're largely describing is, quote,

5     investigative and information gathering techniques, end

6     quote, which I think is quite a bit too vague to really

7     allow the Court and not allow us to test the veracity of

8     those claims.

9          I would primarily point you to the *Crew* decision

10    involving the DeLay, Tom DeLay materials.  We are not told

11    what procedures are at stake, nor are we told how

12    disclosures of the 302s or investigative materials could

13    reveal such procedures directly or indirectly.  And then

14    they provide some examples in that case of the kind of

15    information that has provided that would be satisfactory.

16         I think details about procedures used during the

17    forensic examination of the computer of an FBI forensic

18    examiner.  And really I think all we have here is just sort

19    of very generalized descriptions.  And so under *Ray* and

20    under other cases I think this is also appropriate for

21    in-camera inspection.

22         THE COURT:  Government counsel, why is he wrong?

23         MS. ENLOW:  He's wrong for two reasons, Your

24    Honor.  The first is that this material is covered by

25    Exemption Three as well under the National Security Act and

 1    Courts have recognized this is near blanket FOIA exemption.

 2    And the kind of detail that he's describing here as being

 3    required under 7(e) is simply not required under Exemption

 4    Three for the National Security Act.

 5           Courts have recognized and upheld redactions under

 6    the National Security Act when the declaration simply say

 7    that the withholdings were taken to protect intelligent

 8    source and methods or when they were protected special

 9    practices or procedures or where they are meant to protect

10    investigative techniques or information regarding how an

11    inspector general conducts its investigations.

12           As the Court can tell, these are very generalized

13    descriptions and we have them in our brief for the case

14    citation.

15           Under the Crew case that plaintiff's counsel

16    referenced, *Crew* does not deal with Exemption 3.   It only

17    deals with Exemption 7(e).   So this material is covered by

18    Exemption three and 7(e.)   And under Exemption Three it just

19    has to relate to intelligence sources and methods.

20           And Ms. Brinkmann's declaration read in

21    conjunction with the FOIA marked version of the report shows

22    that it does.   Ms. Brinkmann said that these are what's

23    being protected as techniques and procedures authorized for

24    and used in national security investigations.   These are

25    unclassified sources and methods relating to investigative

1    and information gathering techniques used in investigations

2    and to interference activities emanating from Russia and

3    2016 presidential election.

4            Not only that, Ms. Brinkmann describes that the

5    information withheld would describe the specific

6    circumstances of the use of these investigative and

7    information gathering techniques, such as when the

8    techniques were used, the types of information, information

9    that was gathered, the limitations of the use, what

10   techniques might be used to gather, and specific details

11   about how the techniques are implemented.

12           Now, this is all that is required certainly under

13   Exemption Three and also under Exemption 7(e).  Again, *Crew*

14   was just about 7(e).  And *Crew* said there was insufficient

15   detail because we were not told what procedures are at

16   stake.  But here, we are.  They are information -- excuse

17   me, investigative and information gathering techniques.  And

18   when you read it in conjunct -- the declaration in

19   conjunction with the report, you can see that whenever

20   there's a heading, the information and gathering techniques

21   are described under that heading clearly relate to the

22   investigation of what the Court is talking about.

23           For example, there's a heading that says active

24   measures, social media campaign.  And then there's some

25   exemptions for 7(e) and for Exemption Three of the National

1   Security Act under that.  Clearly what's going on there is

2   what's being redacted as investigation gathering techniques

3   that were used to investigate the active measure social

4   media campaign.  So you have to look at the context within

5   this narrative together with the declaration to reach this

6   conclusion.

7        And Ms. Brinkmann further attested that no further

8   detail about these techniques could be revealed without

9   giving individuals the means to evade detection.  And the

10  Court must -- special deference are owed to agency

11  affidavits such as the one in this case from DOJ on national

12  security matters.

13       THE COURT:  So you seem to be saying that when

14  both 7(e) and Exemption Three are in play that the Court's

15  review is more limited?

16       MS. ENLOW:  Under Exemption Three the case law

17  seems to be more -- provides more deference -- well, not

18  more deference, more -- there are fewer requirements as to

19  what needs to be in a declaration to support Exemption

20  Three.  It just has to show that it relates to sources and

21  methods.

22       THE COURT:  Brief response to that?

23       MR. TOPIC:  Only response would be that courts

24  have held notwithstanding the deference, Your Honor has the

25  discretion to elect to conduct an in-camera inspection.  And

1    given the nature of this case we think it would be

2    appropriate to conduct an in-camera inspection.

3              THE COURT:  I mean, that's an issue we're going to

4    have to address, but you've raised it now in reference to

5    both discussions we've had.  I mean, besides your belief

6    that conceivably there's other information that could be and

7    should be released as required by FOIA, is there any other

8    reason why you believe that in-camera inspection is

9    appropriate?  Because obviously the Circuit has held that

10   in-camera review is a matter of last resort, and that

11   obviously I have to, you know, assume the good faith of the

12   government in reference to its claimed exemptions unless

13   there's some good reason not to do so.

14             So besides what you believe may exist and

15   therefore you believe that that would be a sufficient

16   predicate for me to conduct an in-camera review, is there

17   any other reason why you think in-camera review would be

18   appropriate?

19             MR. TOPIC:  Under these particular exemptions

20   there's really nothing more I would point Your Honor to.  I

21   think, as we talked about earlier for a Grand Jury and I

22   think as you'll hear from some of the other sections, there

23   are some areas where it really seems like they have

24   overasserted exemptions or the exemptions don't quite make

25   sense.  And we've listed in our opening brief, we pasted in

1   a lot of passages whereas if you look at the claim and you

2   read the passage in context, it really does calls into

3   question the validity of the claims by the government, and

4   whether they're just interpreting the exemptions too broadly

5   and then asking for deference under the standards for

6   affidavits for things that are really more legal

7   conclusions.

8          THE COURT:  Okay.  Thank you.

9          The next, we've already talked about 7(e).  I

10  don't know to what extent we need to have further

11  discussions on it, but the law enforcement information

12  exemption claimed by the government pursuant to 7(a), 7(b)

13  and 7(e), I'll hear from counsel in reference to those

14  claimed exemptions.

15         MR. BUTLER:  Your Honor, I don't know if you

16  wanted to talk about Exemption 5 before we talked about

17  7(a).  I'm happy to do either.

18         THE COURT:  We can.

19         MR. BUTLER:  Okay.  I'll just make a couple of

20  quick notes following up on what my colleague said about

21  in-camera review.  A few additional reasons I think it's

22  particularly appropriate in this case, the scope of the

23  different exemptions.  One is that we're dealing a single

24  discreet document here, and so it's different than other

25  case where in-camera review might be especially burdensome

1   if there are hundreds or thousands of pages, and also the

2   unique circumstances of this case.

3           The extreme public interest in this information

4   and significance of the report as well as the complications

5   caused by the Attorney General's statements about the report

6   before it was released.  The statement responsive by the

7   Special Counsel, statements by the Special Counsel, I think

8   that the integrity of this process has been called into

9   question sufficiently that it would be in the public's

10  interest to have a neutral, independent review by this

11  court.

12          Shifting over to Exemption 5, there's two

13  subcategories of Exemption 5 claims in this report as to the

14  government described them.

15          THE COURT:  I don't want to cut you off, but

16  before we move to that, let me just query the government on

17  this issue of in-camera review.  Counsel now says that in

18  addition to what was previously indicated that I also should

19  factor in -- well, obviously, there's significant public

20  interest, but that may be the case in reference to a lot of

21  matters that come before the Court.  But the position

22  regarding statements and actions that were taken by the

23  Attorney General that counsel is suggesting should cause me

24  to conclude that there's sufficient reason to conduct

25  in-camera review.  I'll hear from the government in

1    reference to that.

2          I mean, I do have some concerns because it seems

3    to me that it's difficult to reconcile the content of the

4    Mueller report.  And the statements made by the Attorney

5    General in reference to the content of the Mueller report,

6    it seems to me that it's difficult to reconcile the

7    representation that the Special Counsel found that there was

8    no collusion, when, in fact, the Special Counsel did not

9    address the issue of collusion, and also the representation

10   that there was no determination or at least the Special

11   Counsel exonerated the president in reference to

12   obstruction, when, in fact, the report specifically says

13   that that was not the case.

14         And also I guess the timing of the letter that was

15   written by the Attorney General after the report was

16   produced to him, which occurred very quickly, and these two

17   positions were taken which appear to be inconsistent with

18   what the report itself says.  And then the events that took

19   place on the day that the report itself was released, and

20   that before or at least giving the public and the media the

21   opportunity to review the report, again, there were

22   statements made by the Attorney General that would tend,

23   that would seem to be inconsistent with what the report

24   itself says and how if that's the case how that should

25   factor in on my assessment as to whether in-camera review

1   would be appropriate.

2          MS. ENLOW:  Your Honor, the Attorney General made

3   a discretionary release of the report.  If you look at the

4   Special Counsel's regulations 600.8(c) says that it's

5   supposed to be a confidential report from the Special

6   Counsel to the Attorney General.  And the Attorney General

7   was not required to release the report to the public.  He

8   could have simply provided notice to Congress under the

9   regulation.

10          Instead the Attorney General took the step of

11   releasing the report to the public.  And the report as the

12   Court can tell is lightly redacted.  It's got, media

13   statements estimate as much as 92 percent of the report is

14   unredacted.  From that the Court can glean context together

15   with Ms. Brinkmann's affidavit to fully assess the propriety

16   of the redactions here.  And with regard to Ms. Brinkmann's

17   declaration, it's sufficiently detailed.  Courts usually for

18   in-camera review when the declaration itself was not

19   sufficiently detailed.

20          But here it is especially when read in context to

21   the FOIA marked report, and especially given that the Office

22   of Information Policy went through and provided additional

23   codes on the side to, for ease of reference to the Court and

24   to better understand the basis for each and every redaction.

25   And no one is questioning the good faith of Ms. Brinkmann or

1    the Office of Information Policy here and going through and

2    diligently marking and preparing the report for release

3    under the FOIA.

4              THE COURT:  I guess they're not specifically

5    questioning her good faith, but I think they are questioning

6    the good faith of the Attorney General in reference to the

7    representations that he made in reference to what the report

8    purportedly says.  And they seemed to be saying that what he

9    said was not an accurate indication of what the report

10   indicates at least in two respects, and to what extent that

11   in and of itself should cause me to have sufficient concern

12   about the good faith of the department and therefore justify

13   me conducting an in-camera review.

14             MS. ENLOW:  Again, because the Office of

15   Information Policy specifically went through and you heard

16   the detailed declaration, again reviewed the report

17   separately to ensure that everything that was redacted was

18   pursuant to one of the FOIA exemptions and then provided

19   extensive detail as to why it all fell within the FOIA

20   exemption, in-camera review is simply not necessary here.

21             THE COURT:  Thank you.  Counsel, why what she says

22   does -- I mean, if she doesn't really address the concerns I

23   expressed about the content of the report as compared to the

24   representations made by the Attorney General, but she says

25   if I just considered the declaration and the representations

1    made by Ms. Brinkmann in the declaration, that that in and

2    of itself is sufficient reason regardless of anything else

3    to conclude an in-camera review is not necessary or

4    appropriate.

5              MR. BUTLER:  Well, Your Honor, the sequence of

6    events here is significant.  The fact that the DOJ

7    acknowledged in our first hearing the Office of Information

8    Policy didn't actually conduct their review until after the

9    Attorney General had directed a team at DOJ to conduct a

10   review and release the report without FOIA markings.  So

11   what OIC was doing was reviewing the report that had already

12   been released and basically applying FOIA markings to it,

13   but there was no, you know, significant additional release

14   of information.  And so --

15             THE COURT:  So you're saying the record does

16   support the proposition that the redactions that were made

17   by the Attorney General mirror what Ms. Brinkmann says are

18   appropriate exemptions under FOIA?

19             MR. BUTLER:  That there was no change after the

20   Attorney General made his decision with his team as to what

21   to redact and what to release.

22             THE COURT:  Okay.

23             MR. BUTLER:  Shall I move on?

24             THE COURT:  Yes.

25             MR. BUTLER:  So under Exemption 5 there's two

1   categories described by the Department of Justice that are

2   redacted.  One is the sort of application of law to specific

3   facts, and the other concerns individuals who were not

4   charged.  But across the board Exemption 5 does not apply to

5   the material in this report.  Because this report is a final

6   report, a closing report of the Special Counsel's office

7   issued under the DOJ, counsel mentioned the operative

8   regulation 600.8c.  And so this is a report of the Special

9   Counsel's office, a official report about decisions that

10  have already been made.

11          So this report is not pre-decisional.  It's

12  post-decisional.  It's the quintessential post-decisional

13  report.  And the courts have said over and over again in

14  Exemption 5 cases that pre-decisional requirement means that

15  the document has to be in temporal sequence, must predate

16  the decision, and also separately it has to be deliberative

17  in nature, and a document that summarizes a decision that's

18  already been reached by the operative agency official or

19  office, here the Special Counsel and his office, is not a

20  pre-decisional document nor is it deliberative.

21          THE COURT:  This is sort of a unique situation,

22  isn't it?  Because the Special Counsel as at least it

23  relates to the president did not have the ultimate authority

24  pursuant to DOJ policy to determine whether the president

25  should be charged with a crime or not.  Ultimately that was

1    going to have to be a decision by the Attorney General if he

2    decided to disregard the policy that's been in place for

3    some period of time about not indicting or charging a

4    sitting president.

5              So was what Mr. Mueller submitted really a final

6    determination?

7              MR. BUTLER:  As to the specific point of charging

8    the president, I think that the Special Counsel's view of it

9    is that DOJ operative regulation does not allow indictment

10   while the president is in office, but that there are other

11   constitutional mechanisms that can be brought to bear to

12   consider these questions.

13             One obviously is Congress's role under the

14   impeachment clause.  And so in order for that to be

15   available, and in order for that process to actually work it

16   would necessarily have to be an ability of both Congress and

17   I think the public to access the information.  And there is

18   information about the president's actions in the report

19   that's unredacted.

20             So I don't think that specific reason maps on to

21   why they're withholding information in this report.  And

22   volume two is not -- there are extensive redactions in

23   volume two that concern the president's activities.

24             Instead, we have in volume one, at the end of

25   volume one, a series of charging decisions.  Where there are

1   redactions under, many under what is designated B-one,

2   application of law and facts.  And these are decision that

3   the Special Counsel is invested with the authority to

4   decide --

5            THE COURT:  Charging decisions regarding

6   individuals other than the president?

7            MR. BUTLER:  Correct, exactly.  Charging decisions

8   and those are final decisions by the Special Counsel's

9   office.  The Special Counsel's office no longer is in

10  operation, and so by definition they can't make decisions in

11  the future.  If some other office makes a different decision

12  in the future it's not relevant to this, the post-decisional

13  or non-deliberative nature of the report as to these

14  charging decisions.

15           THE COURT:  Okay.

16           MS. ENLOW:  Your Honor, a couple of points about

17  Exemption 5, but first I want to respond to the in-camera

18  review just briefly.  I don't want the Court to have the

19  wrong impression.  The redactions that's shown in the

20  Attorney General's letters before the report came out, they

21  were done in conjunction with the Special Counsel and his

22  staff, and other individuals who were involved in ongoing

23  matters.  This is not just the Attorney General's

24  redactions.  This is redactions that were done in

25  consultation and together with these other --

1          THE COURT:  Mr. Mueller, as I understand, did take

2     exception with some representations made by the Attorney

3     General about what was in his report, right?

4          MS. ENLOW:  Well, Mr. Mueller actually said that

5     he didn't question the good faith of the Attorney General in

6     releasing what he released.  He said that at the press

7     conference in May.

8          THE COURT:  Well, but I thought, at least from the

9     media reports, the Special Counsel wanted his summaries to

10    be released also, which the Attorney General did not do.

11    And I thought he took the position that the representations

12    made by the Attorney General about conclusions that the

13    Special Counsel's office had reached were not consistent

14    with the Special Counsel's position.

15         MS. ENLOW:  They certainly were released, of

16    course, with the report.  And then also, as I said, the

17    Special Counsel specifically stated at the press conference

18    on May 29th, that he did not question the good faith of the

19    Attorney General in releasing the report.

20         THE COURT:  Not releasing the report, but he seems

21    to disagree with the conclusion that the Attorney General

22    represents are contained in the report both in reference to

23    the issue of collusion which Mr. Mueller did not assess

24    because he only assessed whether the legal principle of

25    conspiracy had provided a basis for charges.  And clearly

1    says in reference to the alleged obstruction activity that

2    he did not exonerate the president in reference to those

3    allegations.

4           And Mr. Barr seems to say something very different

5    than that.

6           MS. ENLOW:  In any event, Your Honor, now that the

7    report has been released, any sort of difference between the

8    report and statements can be plainly viewed from the report

9    itself and certainly doesn't support in-camera review of the

10   redacted material.

11          THE COURT:  Except I guess their position is that

12   well, a determination was basically made and set in stone by

13   the Attorney General as to what should be redacted from the

14   report.  And that all Ms. Brinkmann did was mimmick what the

15   Attorney General had already decided should be -- should not

16   been disclosed and, therefore, became what purportedly are

17   appropriate FOIA exemptions.

18          MS. ENLOW:  That takes me back to my first point,

19   Your Honor.  When the report was being redacted for public

20   release it was done in conjunction with the Special Counsel

21   in conjunction with the staff, in conjunction with others in

22   the government that were dealing with ongoing matters at the

23   time.  It was not a singular person that was making the

24   redactions to the report.  This was done in conjunction with

25   others in taking into account the interests that needed to

1   be protected before this information could be disclosed.

2          THE COURT:  Well, I mean, should I, should I, I

3   don't know how you do it now since the Special Counsel's

4   office doesn't exist anymore, but should I require that

5   something be submitted indicating that the Special Counsel

6   did, in fact, agree with the Attorney General in reference

7   to the redactions?

8          MS. ENLOW:  No, Your Honor.  Because he was

9   already consulted, and Special Counsel's office was part of

10  the redaction process.  But in any event after that, Ms.

11  Brinkmann and the Office of Information Policy, also did a

12  thorough review, and that's what we're looking at here.  Her

13  declaration, her sworn declaration and the detailed

14  declaration and the redactions that the Office of

15  Information Policy took.

16         THE COURT:  I understand that.  But, you know, I

17  also worked for the department at one point too, and I do

18  appreciate, you know, in the executive branch of government

19  that sometimes when the head says they want a result, that

20  sometimes the body does what the head wants.  So I mean, I

21  guess the suggestion, i.e., should I just accept what

22  Ms. Brinkmann says when, in fact, there already had been a

23  determination made by the Attorney General as to what should

24  not been disclosed and she just agreed with that.  And

25  therefore, we have a consistent claim of exemptions with

1    what the Attorney General thought was appropriate to redact.

2            MS. ENLOW:  Well, that is not what Ms. Brinkmann

3    attested to in her sworn declaration, Your Honor.  She said

4    that the Office of Information Policy went through line by

5    line and looked at information under the redactions and

6    determined that it could be and should be withheld under the

7    exemptions under FOIA.

8            THE COURT:  Okay.  Thank you.

9            MS. ENLOW:  Thank you.  And moving on to Exemption

10   5, Exemption 5 not only, the deliberative process privilege

11   not protects pre-decisional documents.  This Court

12   recognized in *Judicial Watch versus DOJ*, the case about the

13   Black Panther party dismissal, that post-decisional

14   documents can still be protected under the deliberative

15   process privilege to the extent they recount or reflect

16   pre-decisional deliberations.

17           And that's what's going on here.  Akin to Judicial

18   Watch, in that case one of the documents at issue was a

19   briefing paper made after the decision to dismiss the case

20   had been made, was a briefing paper to superiors within the

21   department about why the case was dismissed.  And in doing

22   so it described the legal analysis and the application of

23   facts and law and the strengths and weaknesses of evidence.

24   And that is akin to what we have here.  The report, it

25   described in the Special Counsel to the Attorney General the

1  basis for the charging and declination decisions.  It

2  recounts pre-decisional deliberations about the analysis of

3  facts to law, the strengths and weaknesses of evidence, and

4  why individual decisions were made.  It is the exact same

5  situation and should be ruled upon the exact same way.

6          THE COURT:  Are you able to distinguish that case?

7  That was the circuit, right?

8          MS. ENLOW:  No, that was decisional 2011.

9          THE COURT:  Okay, 2001, that was a long time ago.

10          MS. ENLOW:  2011.

11          MR. BUTLER:  Your Honor, I just wanted to quickly

12  just in response to the in-camera point, just point to the

13  fact that Exhibit 4 to our Summary Judgment Motion is the

14  letter from the Special Counsel to the Attorney General that

15  you mentioned, so it has, I think it's worth reading, just

16  reviewing again.  And noting that Special Counsel did feel

17  the public confusion about the critical aspects of the

18  results of their investigation.  And that there was a need

19  for public release of the material, and that the Special

20  Counsel had essentially provided a document with limited

21  designations of things that may be redacted based on the

22  review.

23          As to the *Judicial Watch* case, I think that that

24  case is easily distinguishable because what was at issue in

25  that case were internal emails and communications

1   summarizing prior discussions between inferior officers.

2   The Special Counsel is not an inferior officer in this

3   context.  He is given under the regulations the authority

4   ultimately to make prosecution and declination decisions.

5          The Attorney General, the Crew amicus brief lays

6   this out in detail, but the Attorney General has the

7   authority to step in if the Special Counsel is far outside

8   the boundaries of what is reasonable under DOJ policy.  The

9   Attorney General explicitly said that he would not do so.

10  The Special Counsel had on his own independent authority to

11  make these prosecution and declination decisions.

12         So he's not an internal communication to an

13  inferior officer.  This is a closing report, a final report,

14  and it's really a sui generis document, so it's really not

15  like the type of traditional deliberative pre-decisional

16  documents that are at issues in all of the other cases.

17         THE COURT:  So we're talking about his decisions

18  to or not to prosecute as it relates to individuals other

19  than the president?  That's what you're referencing?

20         MR. BUTLER:  Yes, correct.  The prosecution and

21  declination decisions described a specific, in particular in

22  volume one, at the end of volume one of the report for all

23  of the issues that are sort of the factual issues that are

24  discussed in volume one of the report.  The Special counsel

25  again had ultimate authority and did make ultimately

1    decisions that were summarized in the report.  So it's

2    really not like the type of internal staff discussions or

3    candid communications.  This is not a candid communication,

4    it is an official report that the Special Counsel very well

5    knew that we know based on Exhibit 4 to our Summary Judgment

6    Motion, the Special Counsel not only knew that this was

7    going to be given to Congress and disclosed to the public,

8    but intended it to be so.

9            And so the core of Exemption 5, which is

10   protecting the deliberative process and the interests of

11   government officials in having candid communications isn't

12   implicated at all here because the Special Counsel's office

13   wrote this report to be released to Congress and to the

14   public, so it really doesn't implicate the interest of

15   Exemption 5.

16           THE COURT:  Well, counsel, your opponent says it

17   was submitted to the Attorney General for his assessment as

18   to what he would do with it.

19           MR. BUTLER:  It is submitted to the Attorney

20   General under the regulation, but it's still marked as a

21   closing final report and the Special Counsel himself

22   indicated in his March 27th letter that it met the standards

23   for public release and should be released to Congress --

24           THE COURT:  He couldn't make that determination

25   though?  Ultimately, it was the Attorney General who had to

1    make that assessment, right?  The Attorney General did not

2    have to make it public if he chose not to.

3            MR. BUTLER:  He didn't have to make it public

4    under the Special Counsel regulations, but, of course, we

5    could have still filed the FOIA request.  And ultimately the

6    question about whether it is subject to Exemption 5 under

7    the deliberative process privilege goes to whether it was

8    pre-decisional, which it was not, and also whether it would

9    harm the deliberative process, which it would not because

10   the special counsel did not intend this as a, ultimately a

11   candid secret communications.  This is a formal final report

12   describing decisions that were made.

13           THE COURT:  And you're not, I assume, talking

14   about matters that were referred to other prosecutors'

15   offices for their investigation?  You're talking about final

16   decisions that the Special Counsel made about either the

17   decision to prosecute or not to prosecute?

18           MR. BUTLER:  Correct.  As we understand the

19   Exemption 5 claims in the declaration and as laid out in the

20   report, these are the formal, there are two categories or

21   one application of specific law and specific facts with

22   respect to charging decisions and decisions not to bring

23   charges.

24           THE COURT:  Okay.  Counsel, why aren't those final

25   decisions and therefore not pre-decisional?

1          MS. ENLOW:  Yes, your Honor.

2          THE COURT:  As I understand, I guess the Special

3    Counsel did have the authority other than the president to

4    make decisions about whether individuals should or should

5    not be prosecuted and he made those decisions.  And why

6    aren't those final decisions therefore not covered by

7    Exemption 5?

8          MS. ENLOW:  Your Honor, this case again goes back,

9    and it is akin to the *Judicial Watch* case in which the Court

10   said that post-decisional documents can still be protected

11   under the privilege so long as they recount or reflect

12   pre-decisional deliberation.  That's what we have here.  And

13   the Judicial Watch case specifically, and counsel said there

14   was just emails, internal emails that were protected from

15   release.  But that's not what happened.

16          In that case it was the documents that were

17   created in order to brief officials within the DOJ about the

18   decision-making process that led up to the dismissal of the

19   case at issue.

20          They were prepared in order to rehash the

21   litigation process as they peeled back the core decision

22   making processes which unfolded in the course of the new

23   Black Panther party case.  One of those documents was a

24   detailed chronology of the author's thoughts on the

25   litigation decisions, actions, strategies, recommendations

1    as they developed, as well as rumination and retrospective

2    analyses of the variety of decision-making processes in

3    several DOJ offices.

4            So that case dealt with several different records

5    not just internal emails, but also these briefing papers

6    that laid out the decision-making process that led to the

7    decision to dismiss that case.

8            THE COURT:  I think counsel is right, the Judicial

9    Watch circumstances are different than what we have here.  I

10   guess what I'm struggling with is if, for example, a local

11   U.S. Attorney's Office made a decision not to prosecute and

12   it was a high profile, you know, type case, and the public

13   wanted to know, well, you know, why in reference to this

14   individual who may have some type of status that conceivably

15   the public would have concerns about, why this individual as

16   compared to other individuals wouldn't be prosecuted.

17           Wouldn't the public under FOIA once that decision

18   not to prosecute by that local U.S. Attorney's office, once

19   that decision has been made, wouldn't the public have a

20   right to know why the government made that decision?  I mean

21   that's what open government is about.  And I think that

22   obviously there are some concerns that a lot of the American

23   public has about the criminal justice system in America, and

24   questions about the decisions, prosecutorial decisions are

25   made by the government.

1          I mean, during the Epstein case, for example, that

2     there's some real concerns about the judgment that was used

3     in that case in deciding how the government would proceed.

4     And you seem to be suggesting that if the government, an arm

5     of the government makes a decision not to prosecute, that

6     that is information that the public can't know about.

7          And it seems to me that undermines even further

8     the question that some people have about the fairness of our

9     criminal justice system if a decision by a prosecutor's

10    office made not to prosecute and the public can't know why

11    that decision was made.

12         MS. ENLOW:  Your Honor, I'm not aware of any case

13    where a Court has found that deliberations leading up to

14    charing or declination decisions should be released to the

15    public.  Indeed, the D.C. Circuit has said that the

16    deliberative process privilege is tailor made for a

17    situation like this, that it protects the actual process

18    leading up to the decision.  And that the process leading to

19    a decision to initiate or to forego prosecution is squarely

20    within the scope of this privilege.  That's a direct quote

21    from the D.C. Circuit's Senate of -- Puerto Rico case.

22         And so here too the process leading up to the

23    declination charging decision is likewise protected under

24    the deliberative process privilege.  And this idea about the

25    public interest right to know, that doesn't come in to

1    Exemption 5.   The public interest comes in in the balancing

2    of Exemption 6 and 7(c), of course.   But Exemption 5 is just

3    whether it's pre-decisional, deliberative and whether

4    there's foreseeable harm of release.

5           And here the declaration shows that it does.   It's

6    pre-decisional because there -- recounts the deliberations

7    leading up to these, the charging and declination decisions.

8    And the harm of release is that it releases the thoughts of

9    a prosecutor when trying to determine whether or not they

10   are going to bring a case against someone.   That is internal

11   thought processes of an attorney that could cause in the

12   future if information like that is released could cause

13   attorneys in the future to think, well, maybe I shouldn't

14   write this down.   Maybe I shouldn't be quite so candid which

15   would harm the decision-making process overall.

16          THE COURT:   Why isn't she right in that regard?   I

17   mean, wouldn't it have a chilling impact on prosecutors if

18   what they reported to their supervisors about why they

19   thought a case should not be prosecuted, wouldn't it they

20   have a chilling impact on whether they would be forthright

21   in reference to those communications?

22          MR. BUTLER:   Well, Your Honor, I think that

23   there's a fundamental difference between that hypothetical

24   that my opponent proposes and this case in that, one, the

25   Special Counsel is not reporting to his supervisor in this

1  regard.  He has the ultimate authority to make these

2  decisions.

3        And two, there's no risk of chill here because

4  again the Special Counsel's office wrote this report as an

5  official document documenting their reasons for the

6  decisions they've already made.  So it's very different from

7  a situation where an inferior officer is, for example,

8  explaining a proposal to their supervisor, or ultimately

9  their recommended course of action, or is playing out

10  through the give and take of the deliberative process

11  different potential arguments or avenues.  These are not --

12  the reports not summarized for potential arguments that the

13  Special Counsel's office might make, it explains their

14  decision.

15        And so there's just a -- there's a really unique

16  character to this report that is similar I think to what

17  Your Honor mentioned, yeah, you could imagine a very high

18  profile case where the United States attorney believes it's

19  important to document the reasons that a decision was made

20  in the past.  And that wouldn't itself be rehashing of the

21  deliberative process.  Otherwise, the pre-decisional,

22  post-decisional rule would completely disappear.  Because

23  any document, that post-decisional document that summarizes

24  the decision is necessarily going to discuss the reasons for

25  that decision.  And yes, some of those reasons may have been

1    discussed before the decision was made, but that's not the

2    same thing as summarizing, for example, discussions between

3    different attorneys individually when opposing counsel

4    quoted from the *Judicial Watch* case.  All of those documents

5    contained personal views, right, internal notes, and other

6    strategic considerations that really aren't what's at issue

7    in this report.  This report is fundamentally different in

8    character from that hypothetical.

9                THE COURT:  Okay.  I understand.

10               MR. SHAW:  Your Honor, did you still want to hear

11   from the --

12               THE COURT:  If there's something different that

13   you'd like to raise.

14               Yes, can you identify yourself for the record,

15   please?

16               MR. SHAW:  Yes, I'm Conor Shaw on behalf of

17   Citizens for Responsibility and Ethics in Washington.

18               Just a couple of quick points, Your Honor.  I'm

19   not going to try to repeat anything in our brief or what's

20   already been said.  But I think it is very important to

21   understand the relationship between the Attorney General and

22   the Special Counsel.

23               Special Counsel Mueller was given broad authority

24   to investigate and prosecute cases within his jurisdiction.

25   And there was a process by which the Special Counsel was --

had to explain investigative steps to the acting Attorney
General and the Mueller report describes occasions on which
Deputy attorney General was either briefed in writing or in
person about potential steps that the Special Counsel might
take, and we'd argue that those kind of memoranda are
different in nature from the final report.

The pre-decisional memoranda that weigh charging
decisions might very well be protected by Exemption 5.  When
the decision is made and the report explaining those
decisions is issued later that's a clearly post-decisional
document.  And I think it's important to sort of look at
those two documents beside each other.  One happens before
the decision, articulates the reasons why a potential step
might be taken.  The other explains after those steps have
been taken why they were taken.  And so I think that's a
very clear distinction the Court can make.

The Court also asked about how to consider the
non-indictability of a president when weighing Exemption 5,
and I think we have two points to make there.

One is that the government's claiming Exemption
five for a lot of material that has nothing to do with the
president.  And I think the answer is very easy there.  So
in that case the non-indictability of a president doesn't
really enter into the conversation.

With respect to the president though the Special

1    Counsel did have authority to conduct his investigation with

2    respect to the president, and was given the authority to

3    articulate the results of that investigation with respect to

4    the president.  And I think we should view the Special

5    Counsel's articulation of that as a final decision.

6         THE COURT:  Well, I may be in line with you on

7    your first position, but regarding the president I'm not so

8    sure.  Because if Mr. Mueller pursuant to DOJ regulations

9    did not have the authority to make a final decision about

10   prosecution, then it seems to me it's questionable as to

11   whether we're talking about something that's post-decisional

12   as compared to pre-decisional.

13        MR. SHAW:  With respect to the president it

14   wasn't -- there was no limitation in Mueller's authority

15   that prevented him from indicting the president.  It was a

16   DOJ policy that a sitting president can be indicted.  And

17   argue -- well --

18        THE COURT:  He couldn't have indicted him, the

19   president, you know, in contradiction to the existing policy

20   though?

21        MR. SHAW:  Sure.  And arguably the same would be

22   true for Attorney General Barr unless Attorney General Barr

23   explicitly overruled that policy.

24        THE COURT:  But he would have that authority.

25        MR. SHAW:  He would have that authority, but we

1    would argue that he did not exercise it.  And that gets to

2    another point which is that the Special Counsel regulations

3    also provide for a mechanism by which the Attorney General

4    can overrule the Special Counsel.  And we know from Attorney

5    General Barr that there were no instances in which he did

6    so.

7           So Attorney General Barr is kind of trying to have

8    it both ways.  He claims that he did not overrule the

9    Special Counsel in any respect, so he's claiming there's no

10   daylight there.  But at the same time he's also claiming

11   that he has the authority to say, to absolve the president

12   when the Special Counsel explicitly did not do so.  And

13   those things are a little bit intention, and I can't speak

14   for the Attorney General and why they're trying to have it

15   both ways.

16          THE COURT:  Thank you.

17          MR. SHAW:  Thank you.

18          THE COURT:  Let me give the court reporter a ten

19   minute break.

20          [Thereupon, recess taken at 11:05 a.m.,

21      resuming at 11:15 a.m.]

22          THE COURT:  Okay.  I guess we're at the Exemption

23   7 at this point.  Is there anything else besides that that

24   we need to address before we go to 7?  Okay.

25          MR. BUTLER:  Your Honor, I'm going to be

1     addressing Exemption 7(a), and then the lingering 7(e)(2)

2     category that was mentioned before we haven't discussed yet.

3     As to Exemption 7(a), ultimately the government -- the court

4     cannot --

5                  THE COURT:  What about 7(b), we haven't addressed

6     that?

7                  MR. BUTLER:  Seven(b) will be addressed by my

8     colleague.  On the record before the court that there's

9     really no way to grant summary judgment on 7(a), because

10    there's simply not only isn't it enough detail, but clearly

11    the government hasn't satisfied the requirements of the

12    threefold test described by the D.C. Circuit in the 2014

13    *Crew* decision.

14             The government is attempting to conduct a

15    categorical 7(a) withholding or analysis, but it hasn't

16    defined its categories functionally.  One or two assigned to

17    the withholding says specific categories or three, explained

18    how the release of each category of information would

19    interfere with specific enforcement actions.  That's the

20    threefold task under *Crew*, and the government hasn't done

21    any of those things.

22             This document I'll also note at the outset is a

23    sui generis document.  It's not what is traditionally at

24    issue in a 7(a) case.  Normally courts are reviewing 7(a)

25    claims with respect to witness statements or FBI interview

1    records or other notes or maybe indexes of evidence.  Right?

2    But this document is a final report that describes the

3    findings of the Special Counsel's office.  So it's

4    fundamentally not the type of document that's traditionally

5    withheld under 7(a), and therefore, if there were any valid

6    7(a) assertions they would have to be explained with

7    specificity.

8            In addition to that this report concerns at least

9    eight charged cases and other investigations that may or may

10   not be pending at this time.  I'll come back to the fact

11   that 7(a) is temporal in nature.  The nature of 7(a) claim

12   changes as an enforcement matter progresses.  And so when a

13   prosecution is charged as many of the cases are here, and

14   then subsequently moves through the process of trial and

15   sentencing, et cetera, the 7(a) claim necessarily gets

16   narrow over time and ultimately disappears when the

17   enforcement matter is concluded.

18           So there would need to be detail about any 7(a)

19   claim that links specific redactions to specific cases.

20   Otherwise, there's no way to actually analyze under the 7(a)

21   test the redactions in the different parts of the report.  I

22   would also point out that many of the redactions in this

23   report are under 7(a) slash 7(e)(2), and or fall within the

24   first 50 pages of the report.  So they concern the factual

25   findings of the Special Counsel's office with respect to the

 1   social media disruption campaign and the Russian hacking and

 2   dumping operations.

 3          In addition, there is another issue that the

 4   government hasn't really come to grips with, but just the

 5   fact that there are very few cases that concern the

 6   assertion of Exemption 7(a) in regards to a criminal case

 7   that has been charged and is being or has been prosecuted.

 8   As I mentioned when a prosecution is completed at the end of

 9   that process the 7(a) claim goes away.

10          But even after, while a prosecution is ongoing

11   after a case has been charged and there's been a public

12   charging document and a public airing of information about

13   that case that the equities and the interests at stake I

14   think fundamentally change especially I think there's a

15   distinguishing factor between criminal cases in which the

16   defendants have significant discovery access through due

17   process versus the type of civil investigations that are at

18   issue in a lot of these cases like NLRB labor cases, or EPA

19   environmental investigations, or FCC communications

20   investigations.  So I think there's a lot of distinguishing

21   factors between criminal and civil charged cases as well.

22          But ultimately, the record in this case and

23   particularly the first 50 pages concern factual findings

24   related to cases that have already been charged and are

25   being prosecuted.

1           THE COURT:  Thank you.  Does the government

2  disagree with the prospective that the affidavit does not

3  satisfy the *Crew* requirements?

4           MS. ENLOW:  Yes, the government disagrees with

5  that, Your Honor.  *Crew* dealt with the categorical taking of

6  Exemption 7(a).  The case law came from cases where the

7  government would take 7(a) for an entire investigative file.

8  So it's got all sorts of material in there; investigative,

9  administrative, et cetera.  And the courts in those cases

10  simply said that that kind of -- just taking 7(a) over the

11  entire file really didn't breakdown what the harms were for

12  release.  And the point of that kind of case law is to allow

13  the court to trace a rational link between the harm and the

14  nature of the document, but here that rational link is

15  plain.

16           When you take a step back and you look at what was

17  redacted under 7(a), this is all in Volume I or the vast

18  majority in Volume I in any event.  For ongoing

19  prosecutions, eight prosecutions that Ms. Brinkmann

20  identified in her declaration and other ongoing

21  investigations.  And as is apparent from the unredacted

22  portions of the report the report's a narrative describing

23  evidence collected, witness statements, et cetera and an

24  analysis of that evidence.

25           And release of this information whether it

pertains to the prosecutions that are pending or the ongoing
investigations plainly lead to harm.  If you release witness
statements that can lead to witness hampering.  If you
release evidence of, documentary evidence that can lead to
evidence tampering or fabrication tampering.  If you release
an analysis of why certain information is important then
clearly you're showing the strengths and weaknesses of the
government's case before the government has had a chance to
present its case in court.

        As regards to investigations you release this kind
of information you let the targets of the investigations
know where the strengths and weaknesses of the
investigations are; whose been talked to, who hasn't.  All
these things together can undermine the purpose of the
investigation.

        Exemption 7(a) could frankly not be stronger here.
The plaintiffs argue that we haven't cited to a case that's
post-indictment pretrial.  But there are numerous cases that
recognize 7(a) all the way up through appeal and even
habeas.  For example, there's a *Judicial Watch versus DOJ*
case from 2017.  It's a DCC case that relates to the 302s
for Rod Blagojevich after the trial.  And in that case, the
court recognized that even when an appeal of a criminal
conviction is pending that still qualifies for withholding
the information under 7(a).

1          And indeed, the legislative history also supports

2     this positon.  When 7(a) was enacted Senator Hart said that,

3     "7(a) should be taken whenever the government's case in

4     court could be harmed."  Here that is exactly what the

5     government took for 7(a).

6          THE COURT:  I understand the concern about

7     providing a level of specificity about the information

8     because conceivably that could create a problem as far as

9     pending prosecutions are concern.  But has a sufficient

10    amount of information been provided that gives me the

11    ability to conduct a de nova assessment as to whether the

12    exemptions are properly claimed?

13         MS. ENLOW:  Yes it has, Your Honor.  Again, the

14    declaration has to be read in conjunction with the report.

15    The report was so lightly and surgically redacted that you

16    can tell from headings and from paragraphs that weren't

17    redacted what the gist of the information under the

18    redactions is, or what it pertains to, what matter it

19    pertains to.  Nothing more is required here, Your Honor.

20         THE COURT:  And you're of the view that no more

21    specificity can be provided and at the same time protect the

22    information?

23         MS. ENLOW:  That's correct, Your Honor.  That's

24    correct.  And in a recent case judge, *CNN versus FBI*, Judge

25    Boasberg recognized that.  The government simply cannot

1    provide additional information without revealing, without

2    causing the very harm to these ongoing matters the

3    government is trying to prevent.

4            THE COURT:  Thank you.  Any brief response?  I

5    mean --

6            MR. BUTLER:  Yes, Your Honor.

7            THE COURT:  -- give me an example of what you're

8    saying you think the government could do and should do in

9    reference to 6(a) on the one hand and on the other hand,

10   would not jeopardize the legitimate desire not to cause

11   potential harm to pending cases?

12           MR. BUTLER:  Well, Your Honor, it's helpful to

13   look at the Brinkmann declaration itself.  If you go to page

14   22 of the Brinkman declaration.

15           THE COURT:  What page?

16           MR. BUTLER:  Page 22 of the Brinkmann declaration.

17   This is the section that concerns Exemption 7(a) in

18   particular.  It is the section that concerns pending

19   prosecutions, and we're given two paragraphs.

20           THE COURT:  Okay.

21           MR. BUTLER:  And those two paragraphs essentially

22   restate the statutory standard.  They don't actually

23   describe what information, what types of information would

24   be revealed in the redacted portions of the Mueller report.

25   So opposing counsel, for example, mentioned witness

1   statements, documentary evidence, right.  There's no mapping

2   of that information onto these different prosecutions.  So,

3   for example, if the government said as to the case against

4   the Internet Research Agency on page you know X there is a

5   witness statement quoted.  That would be different with --

6   that would not actually reveal the underlying information,

7   but it would provide a basis for de novo review of the

8   decision to withhold and would provide necessary information

9   for this court to conduct review in camera.

10         THE COURT:  So the two paragraphs you're

11   referencing on page 22 are paragraph 44 and 45?

12         MR. BUTLER:  Forty-five and 46.

13         THE COURT:  Let me look at them real quick.

14         MR. BUTLER:  And then paragraph 44 just for

15   clarification actually lists the charged cases.

16         THE COURT:  Right.

17         MR. BUTLER:  But doesn't actually map the charged

18   cases onto redactions.  So even the act of mapping charged

19   cases onto specific redactions would provide some record for

20   review.  Currently there's basically no such record for

21   review.  And when the government mentions pending

22   investigations, for example, yes, an Appendix D of the

23   report there's a list of referred cases, but we don't know

24   whether all those cases are still pending, whether any of

25   them have been closed.

1          We also don't know whether any information about

2     those pending investigations are non-charged cases is

3     included in the other volumes of the report.  There's just

4     not sufficient information to actually conduct the review

5     necessary or to establish that a meaningful harm would

6     attach.  And I'll note that --

7          THE COURT:  Well your opponent says I can make

8     that de nova assessment by not just reviewing the

9     declaration, but viewing it in context of what's in the

10    report that's been released.

11         MR. BUTLER:  Right.  And the problem with that is

12    that not only is the mapping not always clear from the

13    structure of the report.  I agree sometimes you're in a

14    section of the report that concerns the Russian social media

15    campaign.  And maybe the government is saying this court can

16    assume that that material is about the relevant prosecution

17    of the Internet Research Agency.

18         But there are, according to the government's

19    declaration, information in this report about all the

20    charged cases including cases that are in the sentencing

21    phase or cases where they have a jury trial set in November

22    in the Stone case.  And the decision about whether harm

23    would attach to disclosure is made based on the record as it

24    exists when the court makes its decision.  That's what the

25    court said in *Crew*, not based on when the request was filed.

1              And so there needs to be a record of how the,

2     which prosecutions apply to which exemptions and also

3     ultimately the stage of the prosecution.  Because although

4     Exemption 7(a) can in theory attach to a prosecution that's

5     at the appeals stage, what the cases that, the very few

6     cases that have been in that posture have shown is that over

7     time that exempt material gets narrowed and narrowed and

8     wind down to zero because there's, the harm goes away,

9     right.  When it may be the case in some, we've seen in civil

10    proceedings a concern in *NLRB* context, for example, with

11    witness intimidation because of the unique relationship

12    between an employer and employee who are typically witnesses

13    there.

14              Prior to the swearing in of a witness at that

15    stage of the litigation there may be that specific concern,

16    but it's very specific to the case and where it is in the

17    litigation process and the nature of the record at issue.

18    And here we have again a report that summarizes factual

19    findings.  They're not, the report itself is not a witness

20    statement.  The report itself is not a recitation of

21    documentary evidence.  There may be references in the

22    footnotes to documents, we don't know in all cases, but the

23    report itself on its face is factual statements by the

24    Special Counsel about what happened.

25              THE COURT:  Government counsel, why as plaintiff's

1    counsel suggest why requiring that you have to identify what

2    type of evidence we're talking about without specifying

3    names or specific dates or whatever, but at least some

4    categories as to what type of evidence we're talking about,

5    why would providing that information in some way compromise

6    these pending litigations or methods or whatever?

7            MS. ENLOW:  Your Honor, that level of granularity

8    simply isn't required under the case law here.  I mean

9    there's a D.C. Circuit case *Juarez* where they talk about the

10   DEA Form 6s that are basically a narrative about evidence

11   being collected so far.  And in no way did that case require

12   this kind of detailed granularity of going through literally

13   every single sentence or parts of sentences and saying this

14   is a witness statement, so witness intimidation could happen

15   there.  And this is a document, so document could happen

16   there, evidence fabrication could happen if that's released.

17           This simply is not the case law.  Exemption 7(a)

18   is meant to be extremely broad.  It's supposed to protect

19   information whenever release of that information could

20   reasonably be expected to harm the government's case in

21   court.  And here --

22           THE COURT:  Well you may not have to associate a

23   particular passage to a particular type of evidence, but why

24   not have to generally indicate well, what type of evidence

25   you're talking about without specifically keying it to any

1   particular passage in the report?

2           MS. ENLOW:  Ms. Brinkmann has essentially done

3   that, Your Honor.  She said that release of this information

4   could cause witness intimidation, witness tampering.

5           THE COURT:  But she didn't say what type of

6   evidence it was.

7           MS. ENLOW:  I would have to go back and look at

8   the declaration.  I can't recall that at the moment.  But in

9   any event clearly if something's going to lead to witness

10  intimidation then there's going to be something about the

11  witness in there in their statement.

12          THE COURT:  I'm looking at the two photographs on

13  page 22 and 23 of her declaration, and she does not identify

14  what type of evidence we're talking about.  Again, whether

15  we're talking about dates, whether we're talking about

16  names, whether we're talking about whatever.  She's a lot

17  more general than that.

18          MS. ENLOW:  But again, Your Honor, it has to be

19  read in conjunction with the report itself.  You can see

20  from the report it lists citations to different pieces of

21  evidence in there.  That read in conjunction with her

22  declaration describing the kinds of harms that could result

23  show the kinds of information that was withheld under 7(a).

24  And that is all that is required --

25          THE COURT:  Without me seeing those redactions how

1    would I be able to conduct that type of in-camera review?

2           MS. ENLOW:  The citations for some redactions are

3    not redacted, so the court can get a sense from what been

4    produced of what is under the redacted material from that,

5    from looking at the 92 percent of the report that was not

6    redacted.

7           THE COURT:  Okay.  Nothing else on that matter we

8    can move on.

9           MR. BUTLER:  Just one quick additional point, Your

10   Honor.  I think it's helpful to note that we're not talking

11   about when it comes to the 7(a) material, we're generally

12   not talking about one line on a page being redacted, or a

13   witness name, or a citation to documentary evidence.  We're

14   talking about entire pages being redacted.  Page after page

15   in the first fifty.

16          So it's a substantial amount of material.  And

17   again, there's no linkage between specific cases.  And that

18   causes a real problem when it comes to the time-bound

19   element that I mentioned.  Because when and if, if and when

20   these prosecutions are completed there will be no way to

21   know which exemption material need to be, you know, reviewed

22   subsequently or need additional information.

23          The other thing I'll note I mentioned at the

24   beginning that 7(e)(2) is relevant to 7(a) material.  And

25   the reason that's true is because the 7(e)(2) claims are,

1    overlap with the 7(a) claims in every instance.  And what

2    7(e)(2) ultimately is is the government's assertion of a

3    7(a) -- the use of 7(a) language to make a claim that

4    techniques or procedures would be disclosed.  But that's not

5    actually a legally valid use of Exemption 7(e).

6         And the reason why it's problematic is because

7    Exemption 7(e) unlike Exemption 7(a) is not time limited.

8    And so essentially what the government is asserting here is

9    that these materials that relate to the charged cases should

10   never be released, but not because they would reveal

11   techniques or procedures.

12        If you look at page 43 of the Brinkmann's

13   declaration, paragraphs page 87 and 88, those are the only

14   two paragraphs that concern Exemption 7(e)(2).  And even the

15   heading and the general description of the claim I think

16   reveals that this is not about techniques or procedures,

17   right.  It says details about techniques or procedures, but

18   that would reveal investigative focus and scope, and the

19   circumstances, methods and fruits of investigatory

20   operations those are not techniques or procedures.

21        When we're talking about the focus and scope of an

22   investigation that's potentially material that the

23   government may claim as exempt under 7(a), but it's not a

24   technique or procedure which is required in order to assert

25   a claim of Exemption 7(e)(2).  It has to itself reveal

1   techniques or procedures and create a risk of circumvention

2   of the law.  So really this is just an overlapping category

3   that should not overlap.  But the language itself --

4           THE COURT:  But the heading does include methods

5   which I assume would be procedures conceivably?

6           MR. BUTLER:  Techniques.

7           THE COURT:  Techniques, could be.

8           MR. BUTLER:  I think that's what being said in

9   paragraphs 87 and 88 is not that the techniques or

10  procedures would be revealed, but that the fruits, the focus

11  of an investigation is not a procedure.  The fruits of an

12  investigation are not a technique or procedure.  And so the

13  fact that those are all included together does not engender

14  confidence in the conclusion that all of this material on

15  these many, many pages is all properly exempt under 7(e)(2).

16  I think it's not consistent with the case law.

17          There's a few cases that recently where the

18  government have mentioned offhand this investigative scope

19  and focus in the course of a huge list of reasons to exempt

20  something under 7(e).  It was never analyzed in detail.  No

21  court has ever found specifically that investigative focus

22  and scope is a technique or procedure that its disclosure

23  would qualify for 7(e).

24          THE COURT:  I might tend to agree with you, but I

25  think there is language looking at, for example, paragraph

1   87, where there is some reference to techniques and

2   procedures.

3         MR. BUTLER:  There are a few references.  I think

4   they're basically conclusory references.  And the court

5   would need -- this is a perfect situation where the court

6   could simply conduct in-camera review to determine whether

7   the redacted material does actually talk about some

8   technique, or whether the material simply talks about

9   factual findings of the Special Counsel's office.

10         THE COURT:  Okay.  Government counsel, if I am of

11   the view that I need more in order to conduct my independent

12   assessment, and if you are of the view that you can't

13   provide more than what you provided because it would somehow

14   potentially put at risk the techniques and procedures then

15   what do I do?  I mean do I require that at least that

16   portion of the report unredacted be provided since counsel

17   did identify one pages -- well, two pages where a

18   significant portion of those two pages were redacted?

19         And if I were to conclude that I can't make an

20   independent determination without more from you or the

21   ability to view it myself what would be your preference?

22         MS. ENLOW:  Your Honor, I'd have to consult my

23   colleague for a moment about that.  In any event, when I was

24   describing earlier about how the court can look at the

25   unredacted portions to determine what is under the

1    redactions I don't just mean on the pages where there are

2    redactions.  I mean the court can review the entire

3    unredacted report, and there's plenty of pages where there

4    are no redactions at all to see the types of information

5    that's being withheld here.  When there are redactions --

6            THE COURT:  I don't mean to cut you off.  Wouldn't

7    that be pretty hard?  Because when I look at page 43 and 44,

8    paragraphs 87 and 88, I mean it doesn't really direct me to

9    where in the report it's referencing, so it would be it

10   seems to me a little difficult for me to assess what's being

11   referenced in those two paragraphs as it relates to the

12   report itself.

13           MS. ENLOW:  Well for those two paragraphs that's

14   the 7(e) material.  And that's, the court can use the

15   declaration to determine whether or not that material has

16   been improperly withheld under 7(e).  I was referring to

17   7(a) where discussing the harms and breaking down the harms.

18   And the court can use the unredacted portions to determine

19   what kind of information has been withheld or what kind of

20   information has been cited throughout the report.  And

21   therefore it tells us what kind of information has been

22   withheld under the redactions.

23           THE COURT:  That might be true in reference to

24   7(a), but in reference to 7(e), I think it would be very

25   difficult for me to make that assessment based upon what's

1    been provided not knowing to any degree what type of

2    evidence or information is being referenced.  And I'm saying

3    generally what type of, not specifically, you know, specific

4    dates or anything.  But are we talking about dates?  Are we

5    talking about names?  Are we talking about something

6    different?  I don't know.

7                MS. ENLOW:  Your Honor, for 7(e) the 7(e)(2)

8    material that's been marked in the report, OIP withheld

9    details about the use of the various investigative or

10   information gathering techniques used by the prosecutors and

11   the FBI and the Special Counsel, and Special Counsel's

12   office, and in other investigations.  And that information

13   included information about the gathering and or the analysis

14   of the information.  How and from which sources the FBI or

15   prosecutors collected particular types of information, and

16   the methodologies used to analysis and use the collected

17   information.

18               And even then it also disclosed the exact

19   circumstances in which these techniques were used, and the

20   specific dates, the time, and the targets of information

21   gathering techniques, as well as the actual fruits of the

22   investigative operations relied on by the Special Counsel's

23   office, so the court can use Ms. Brinkmann's declaration

24   there to determine that that information is properly

25   withheld under 7(e).

1          THE COURT:  Okay.  Any other matters?

2          MR. TOPIC:  Your Honor, if you like I can proceed

3    to 7(b) which is fair trial.  I don't think there's any

4    dispute that the government has redacted essentially

5    everything in the report having anything to do with Roger

6    Stone.  In fact, in Ms. Brinkmann's affidavit she refers to

7    any information released regarding Mr. Stone would run into

8    these risks.

9          Judge Jackson, who's presiding over that case, did

10   not enter a blanket order that says everything related to

11   Roger Stone must be withheld by the government.  Instead,

12   all that is prohibited from being released is things where

13   there is a substantial likelihood of material prejudice.

14   And then they also cite to Judge Friedrich's order which was

15   an interpretation of the local criminal rule.  And she only

16   found very narrow examples of instances in which the

17   material was sufficiently prejudicial.

18         So maybe there's some individual passages where

19   they can show that Mr. Stone would be deprived of a fair

20   trial notwithstanding Supreme Court precedent setting an

21   extremely high bar for a defendant to make out that case,

22   but to apply it on a blanket level across everything related

23   to Mr. Stone.  By the way, while simultaneously claiming it

24   would give Mr. Stone an advantage in the prosecution.

25   Because they've asserted 7(a) and 7(b) over all that

1    material simultaneously.

2         It makes clear that they have just wholesale

3    redacted everything related to Mr. Stone, and that is not

4    what the FOIA statute provides and that is not what the

5    judge presiding over that case has actually entered.

6         The only exception to that is they did release

7    what the president said in response to questions that were

8    posed to him by the Special Counsel about Roger Stone.  And

9    of course, the Attorney General has said publicly and many

10   times in very prominently that the president was

11   cooperative, talks about his frustrations, et cetera.  So

12   that piece of information about Mr. Stone they elected to

13   release, but the related information, anything else they've

14   just wholesale withheld everything about Mr. Stone.

15        So this is an example of complete over redaction.

16   I think the remedy is for Your Honor to look at the specific

17   provisions or them to come forward with some kind of a far

18   more specific analysis of what exactly we're talking about,

19   and also explain how it simultaneously would hurt the

20   government's case and would hurt Mr. Stone's right to a fair

21   trial over the exact same pieces of information.

22        THE COURT:  When you say exactly what they're

23   talking about what do you mean?  I mean are you saying

24   generally indicating what type of topics are in play?  Or

25   what?  Because I mean I do have some concerns because I know

1   Judge Jackson has concerns about ensuring that both sides

2   receive a fair trial.  And while she didn't issue a blanket

3   gag order she did issue at least a partial order to try and

4   restrict information that was being disseminated that she

5   thought conceivably would make it more difficult for her to

6   pick a jury.

7           MR. TOPIC:  Right.

8           THE COURT:  I mean obviously she's in the best

9   position to make a decision as to what information would

10  conceivably impact the ability of the parties to receive a

11  fair trial, but that doesn't obviate I guess the need for me

12  to make an independent decision under FOIA as to whether I

13  order something more than what's been provided in order to

14  comply with FOIA.

15          MR. TOPIC:  We have no disagreement with applying

16  the standard from Judge Jackson's order to the material

17  that's been redacted, which is they must make a showing of a

18  substantial likelihood of material prejudice to his case.

19  It's just implausible that everything referencing Roger

20  Stone would deprive him of the right to a fair trial or

21  would create a substantial likelihood.

22          I don't know again what they have redacted, but

23  they have suggested today well you can interpret a lot of

24  this in context.  While there's a public indictment of

25  Mr. Stone there's a lot of information in that public

1    indictment about Mr. Stone, and they've redacted everything

2    about Mr. Stone that's in the report.  It, that should

3    logically follow from there that some of the information is

4    not materially different from what is in the indictment.

5            Judge Jackson in open court and quoted by the

6    government later said that the evidence detailed in the

7    indictment alone is quite compelling.  So obviously that

8    kind of statement was not even enough to create a

9    substantial likelihood of material prejudice.  So it's a

10   pretty high standard that they need to meet.  How they go

11   about that I haven't seen the unredacted copy obviously, so

12   I can't really say they can do it this way or they can do it

13   that way.  But they need to go through their redactions, or

14   I should say they needed to have gone through their

15   redactions and linked up at least at some level of

16   generality.

17           This is the type of information about, it's not

18   just about Mr. Stone.  It's something very specific.  They

19   can -- the specific details can be left out if those details

20   are adequately prejudicial.  But there needs to be some

21   showing of substantial likelihood of material prejudice to

22   his case and they have not made that showing or even

23   attempted to make that showing.

24           THE COURT:  Thank you.  Government.

25           MS. ENLOW:  Your Honor, the information pertaining

1    to Mr. Stone was redacted pursuant to 7(a) for ongoing

2    matters, 7(b) because he has an imminent trial scheduled for

3    November, 7(c), which we'll get to later, and then the

4    sealing order that's in place from Judge Berman Jackson.

5           Now the judge in that case recognized the high

6    profile nature of the case and the media attention the case

7    was getting, and therefore, thought it was necessary to

8    enter this order prohibiting the parties from making

9    statements that posed a substantial likelihood of a material

10   prejudice to Mr. Stone's case.  And she said that this was

11   necessary because otherwise Mr. Stone may be deprived of the

12   right to a fair trial, and the court knew the ability to

13   seat a jury without volunteering that the jury wasn't

14   tainted by pretrial publicity.

15          THE COURT:  Counsel says he's willing to comply

16   with the limitation that she imposed on what could be

17   released.  He's saying well, to the extent that she hasn't

18   foreclosed dissemination that I shouldn't either.

19          MS. ENLOW:  She has foreclosed dissemination, Your

20   Honor.

21          THE COURT:  Not all.  She hasn't issued a blanket

22   as far as I recall gag order in her case.

23          MS. ENLOW:  There's no blanket gag order, but here

24   again taking a step back and think about what we're looking

25   at here, we're looking at a report that describes in detail

1  Mr. Stone's conduct.  Now release of this narrative walking

2  through the evidence against him and his conduct could

3  clearly prejudice and interfere with the fairness of his

4  trial.  And that is why that material is withheld under the

5  sealing order and under 7(b), and it could prejudice the

6  government's case in court, so it's also withheld under

7  7(a).

8          Now this is clear not only from the sealing order

9  itself but also the local rule.  The order was issued under

10 Local Criminal Rule 57.7(b).  And in a similar case, the

11 case against *Concord Management*, Judge Friedrich recently

12 found that even without some kind of sealing order in place

13 like Judge Berman Jackson had that the government by

14 releasing information about *Concord* in the report had

15 violated Rule 57.7(b), and then the judge issued an order

16 prohibiting further releases.

17         So here this is not some kind of idle speculation

18 that release of this information could violate local rules,

19 or could violate the orders in place in the court.  The

20 government is working very hard to ensure that these

21 individuals receive fair trials here.  This information

22 simply cannot be released without potentially violating

23 those rights.

24         THE COURT:  Well, I mean, one concern is on page

25 128, Volume II of the Mueller report.  And there's a

1    redaction of Roger Stone associate which was in a CNN

2    article apparently.  And I guess what was the basis for

3    redacting that information since it was already in the

4    public domain?

5         MS. ENLOW:  Your Honor, simply because information

6    can be pieced together doesn't mean it shouldn't still be

7    redacted especially to protect someone's fair trial rights

8    as we're doing here, or as DOJ has done here especially

9    given the order in place and especially given his imminent

10   trial in November.

11        THE COURT:  Anything else on that we need to

12   address?

13        MR. TOPIC:  Your Honor, I believe the final item

14   we have left is a privacy exemptions, and I'm prepared to

15   walk through those.

16        THE COURT:  Right.

17        MR. TOPIC:  So there's multiple independent

18   reasons why we should prevail on the privacy exemption

19   claims here.  First and foremost is the government continues

20   to rely on a legal standard that is not the law.  The law

21   comes from the *Fabish* decision.  It does not require us to

22   prove by compelling evidence that illegal conduct occurred

23   by the Attorney General or the Special Counsel.  That would

24   an anathema to the entire purpose for FOIA which is to allow

25   the public to have information and judge for themselves

1    whether misconduct occurred.

2          So the standard in *Fabish* is simply that we must

3    go beyond a bare suspicion and we must come forward with

4    evidence or material that a reasonable person would be

5    justified in believing that some kind of government

6    impropriety not illegal conduct, impropriety which could

7    include negligence, might have occurred.  Not did it, that

8    it might have occurred.

9          We cite a litany of statements by the president of

10   the United States.  We cite statements by senators, by legal

11   experts kind of going in the other direction, that have

12   called into question all kinds of aspects about the origins

13   of the investigation, about how the investigation was

14   conducted, about who was charged, about who wasn't charged

15   and why they weren't charged.

16         So they don't even attempt to meet the standard

17   under *Fabish*.  They first cited SafeCard which predates

18   *Fabish* and has a different legal standard.  And then in

19   response in their second brief they make note of *Fabish*.

20   They don't endeavor to comply with it.  And a rely on

21   another preFabish case to try to set the standard that

22   doesn't make any sense in light of *Fabish*, which says that

23   the purposes to allow the public to potentially uncover

24   whether there was some kind of wrongdoing.

25         So I don't need to come up here and prove to you

1    that Mr. Mueller did something illegal in the course of the

2    investigation, that any of the things the president has said

3    are true.  I don't need to prove to you in the opposite

4    direction that people weren't charged because Mr. Mueller

5    took it easy on them, because perhaps they were the

6    president's son, didn't want to incur of the wrath of the

7    president, or whatever various things that have been said

8    about this.

9          This is obviously an extremely important issue.

10   It's something that frankly has ripped the country apart.

11   And to have anything less than full disclosure in the name

12   of privacy interest there really is a very high standard

13   that they need to meet to overcome the public interest in

14   disclosure.  That is just one of the theories, Your Honor.

15         Before I move on one other thing.  I think we --

16   even if you discount what the president has said, what

17   senators have said, what legal experts have said, the report

18   itself raises questions about the declination decision as to

19   what appears to be Donald Trump, Jr.  So you look at the

20   section that talks about the Trump Tower meeting.  It talks

21   about Donald Trump, Jr.  It talks about some other people

22   who were involved in it.  And then there is the beginnings

23   of an explanation as to why none of those people were

24   charged.

25         And the primary reason was because the Special

1   Counsel concluded that they hadn't developed evidence that

2   would show the necessary mens rea for that crime.  So they

3   weren't adequately inside the head of any of those people.

4   Yet there was no decision to bring Donald Trump, Jr. in

5   front of the Grand Jury where they could have put him in on

6   the spot to answer questions.

7          That alone at least raises the question in the

8   entire analysis then it's a redacted name which is probably

9   Donald Trump, Jr. and complete redaction over the specific

10  analysis that the Special Counsel undertook in order to

11  conclude that there weren't going to be charges against

12  Donald Trump, Jr.

13         That information has a strong public interest in

14  multiple ways.  It would allow the public to better

15  understand the charging decision and either feel comfortable

16  with it or point out why it was wrong.  It would also allow

17  the public to assess whether it's true as the president has

18  claimed that this has been an illegal witch hunt politically

19  motivated from the very beginning.  While they didn't charge

20  his son with a crime so it might be relevant to the public

21  understanding the veracity of those claims to have a better

22  understanding of what evidence was before the Special

23  Counsel and how did they come to that conclusion.

24         All of that is more than enough to meet the

25  standard under *Fabish*, that we're required to show.  Even if

1    we don't rely on *Fabish*, Your Honor, under the *Crew* case

2    there's an entirely independent doctrine of public interest

3    that applies here.  I'll read from the case, "Disclosure of

4    the FD 302s and investigative material could shed light on

5    how the FBI and the DOJ handled the investigation and

6    prosecution of crimes that undermine the very foundation of

7    our government.

8         As the DOJ itself explained the requested records

9    relate to a wide-ranging public corruption investigation as

10   part of ongoing efforts to root out systemic corruption

11   within the highest levels of government.  Government

12   disclosure of the records would likely reveal much about the

13   diligence of the FBI's investigation and the DOJ's exercise

14   of its prosecutorial discretion.

15        Whether the government had the evidence, but

16   nevertheless pulled its punches.  Indeed, we have repeatedly

17   recognized a public interest in the manner in which the DOJ

18   carries out substantive law enforcement policy whether or

19   not that interests outweighs any privacy interest at stake

20   in a given case."

21        So under the public interest theory that comes

22   from their case it reads directly on the facts of this case.

23   This is absolutely an investigation that goes to the very

24   foundation of our government.  It involves potentially

25   systemic problems.  And the DOJ fails to say anything at all

1    in its brief about this legal theory or about this strand of

2    public interest in disclosure.

3           I would note too then as a third point that if you

4    look at Your Honor's decision in *Judicial Watch* involving

5    the Hillary Clinton draft indictments or if you look at the

6    facts of *Fabish* you can easily distinguish those from the

7    facts here.  In *Judicial Watch* it was many years after the

8    independent counsel conducted an investigation and it was in

9    the runup to the election, and I think the requestor pretty

10   much conceded that the information would shed light on

11   Ms. Clinton's truthfulness or whatever, which is not the

12   type of analysis that the public interest doctrine under the

13   privacy exemptions looks to.

14          It looks to do we need to know more about the

15   entity that did the investigation.  And there it was many,

16   many years later, and so Your Honor properly found that in

17   that instance there was not a public interest that would

18   overcome any privacy interest.  That is clearly not the case

19   here.  This is a fresh investigation.

20          There have been questions raised up and down all

21   over this town, and all over this country and the world, as

22   to was this investigation properly conducted or not.  And

23   the people deserve to know as much as they possibly can

24   about that unless there is a truly compelling interest on

25   the other side of the scales and the government hasn't shown

1    it.

2           The third is that they have selectively decided

3    when they care about people's privacy interest and when they

4    don't.  They have redacted everything it appears about

5    Donald Trump, Jr.  Maybe it's Kushner.  I'm pretty sure it's

6    Donald Trump, Jr.  Certainly Your Honor can figure that out

7    in an in-camera inspection.  That has been redacted in favor

8    of that person's privacy, but Jeff Sessions, George

9    Papadopoulos, Carter Page, the president of the United

10   States, they've released information about the

11   investigation, about their declination decisions.  And so

12   they seem to be picking and choosing when it is they're

13   going to assert the privacy exemption and when they aren't.

14          And the reason that's particularly important, and

15   I think this is true as to Exemption 5 as we heard about

16   earlier, is that under the foreseeable harm standard they

17   have to show that the harm is foreseeable and specific.  So

18   you have similarly situated people where in some instances

19   they release the information without any problem and then

20   now they're trying to use the same argument against

21   information about other people really calls into question

22   the validity of that argument and they have made no effort

23   to attempt to explain that.

24          So that's the public interest in disclosure.  I

25   don't think there really is a very serious dispute that

1    there is a significant public interest in disclosure here.

2    So that leaves us with the privacy interest.  We take Donald

3    Trump, Jr. as an example or Kushner or Manafort or whoever

4    those people are who are under those redactions.  We're

5    talking about public people not shy about being in the

6    public eye, have commented on the investigation, have been

7    critical of the investigation.

8              It's not to say they don't have any privacy

9    interest at all, but their privacy interest is at least

10   somewhat diminished.  And there is absolutely not a complete

11   exemption for everything related to personal privacy.  They

12   have to show, they have to show that it would overcome the

13   public interest in disclosure.  We have to identify a public

14   interest and we very clearly have, but it's their burden to

15   prove the exemptions and they have completely discounted the

16   public interest in disclosure in favor of privacy.

17             THE COURT:  When you say there should be or there

18   is a diminished privacy interest of someone who is a public

19   figure as compared to a nonpublic figure in the FOIA

20   context.

21             MR. TOPIC:  I believe it's in the *Crew* case they

22   were talking about Mr. DeLay and noted that he was a

23   prominent public official.

24             I don't read that to be a distinction between

25   government officials and other people who are kind of

1    prominent in more generally in society or in the government.

2    I mean Mr. Trump, Junior is heavily involved in Mr. Trump's

3    campaign in the past, and appears like he will be in the

4    future.  He speaks very frequently about these kinds of

5    issues in front of various audiences.  So we aren't talking

6    about a person who otherwise is living an entirely private

7    life.  We're talking about someone who is willingly and

8    ongoingly [sic] living a life that is somewhat in the public

9    domain.

10          That doesn't mean there is no privacy interest.

11   That's not what we're saying.  What we're saying is it's at

12   least diminished.  And it's weighed against a tremendous

13   public interest in disclosure on the other side of the

14   scales.

15          The last thing, Your Honor, that I would talk

16   about is some of the other categories that they've

17   identified.  They talk about reporters and Facebook groups

18   who have received messages from Russian actors.  They

19   haven't shown any privacy interest at all.  They try to

20   equate those people to crime victims or victims of the

21   Jonesboro massacre and the like, and they aren't.

22          As far as they have disclosed these are people who

23   got emails from someone not knowing that they were a Russian

24   actor.  They used the phrase interactive or they're engaged

25   with.  As best I can tell that's people who re-tweeted

 1    things.  That's just a de minimis amount of privacy.  And so

 2    even if we had to show a public interest -- we don't have to

 3    show a public interest and there's a de minimis amount of a

 4    privacy interest.

 5              But again they've been selective in what they've

 6    disclosed.  So they disclosed that an entity called the

 7    Smoking Gun had been contacted about I believe it was the

 8    DNC email hacks.  They released that information.  They

 9    haven't explained why they're withholding this other

10    information.  That alone is another public interest in

11    disclosure.

12              Facebook groups, nonhuman entities do not have a

13    privacy interest under 7(c) or under Exemption 6.  I don't

14    think they dispute that.  And if they want to show or are

15    relying on the theory that if you knew the Facebook group

16    you could identify the individual people.  Under the *Rose*

17    case from the United States Supreme Court that is a prime

18    candidate, in fact, maybe even a requirement for in-camera

19    inspection.  They haven't connected the dots of okay if you

20    know the Facebook group how would you know the individual

21    people whose privacy interest are at issue?

22              Roger Stone we sort of talked about already.

23    Roger Stone doesn't seem to have any concerns at all been

24    publicity surrounding his case as I think we all know from

25    things that have occurred recently.  And then there's things

1   they just describe as mere mentions.  In many instances or

2   at least some of the instances those are people whose names

3   are redacted from the glossary of the report about people

4   who are relevant to the investigation.  So these aren't just

5   one off unknown people.  These are people who do factor in

6   to the, did factor in to investigation in some meaningful

7   way.

8            And so for all these reasons we think the public

9   interest in disclosure here far outweighs any privacy

10  interest.

11           THE COURT:  Are you as they say trying to hold

12  them to a standard is was not applicable here?

13           MS. ENLOW:  No, Your Honor.  They're referring to

14  the *SafeCard* case.  That's still good law as this court

15  recognized in *Cooper v. DOJ* a few years ago.  What that case

16  says that the identity of individuals in connection with a

17  criminal investigation should be withheld absent compelling

18  evidence to the contrary.  That's still good law again as

19  this court has recognized.

20           Which brings me to the category one and four which

21  I'll discuss together.  Category one of the privacy

22  information where these individuals that were unwittily

23  contacted by agents emanating from Russian and were

24  interacted with on social media, and were also individuals

25  who were contacted about the hacking operation.  Those

1   individuals have an extreme privacy interest of being not

2   associated with this investigation.

3          Even merely being associated with this

4   investigation could cause stigma, could cause reputational

5   harm to these individuals.  Whereas, on the other side of

6   the ledger there's literally no public interest in releasing

7   a name of an email address, for example.  How is releasing

8   that specific information going to let the public know what

9   the government was up to?

10          THE COURT:  Well, I don't know.  If someone

11   unwittingly receives information from Russia how would that

12   alone create some type of problem for them?  I mean --

13          MS. ENLOW:  They have a high interest -- I mean

14   their names or their contact information are identifying

15   information that's in this report.  And clearly --

16          THE COURT:  I guess it might depend on -- I don't

17   mean to cut you off, who that person may be.  If Russia was

18   targeting certain individuals in order to try and bring

19   about a certain result the fact that certain individuals

20   were targeted it seems to me could be a public interest.

21   And if they unwittingly received the information and

22   therefore were not in some how in collusion with the Russian

23   government then how would that shed bad light on them I

24   guess?

25          Categorically it seems to me to say just because

1    somebody was unwittingly contacted by Russia that that

2    necessarily would somehow put them in jeopardy or somehow

3    adversely impact their good name I guess I'm missing how

4    that would be the case.

5           MS. ENLOW:  Courts have repeatedly held that even

6    being associated with criminal activity puts a stigma on

7    that person.  And especially here when you're talking about

8    third parties, individuals that are completely private

9    individuals that no one has ever heard of.  Of course, that

10   would be a burden on them if their name or contact

11   information is released.  Of course, that's going to impinge

12   upon their privacy.

13          And simply releasing individual email addresses or

14   groups that may be members of where you can tell they are a

15   member of a group releasing that information does not tell

16   you anything about how the Special Counsel conducted the

17   investigation here, which is what the public interest has to

18   look at.  Given that the privacy interest is so high and the

19   public interest is none then something outweighs nothing

20   every time, Your Honor.

21          THE COURT:  I mean theoretically what if the

22   Russian government was, for example, targeting local

23   political figures in key states with the hope of maybe

24   having an impact on what their position would be about the

25   election.  If that were a pattern that were being used, and

1   these individuals did not know where that information was

2   coming from then wouldn't the public interest outweigh the

3   privacy?

4           MS. ENLOW:  The public interest is knowing what

5   our government is up to, how the investigation was run.

6           THE COURT:  Right.

7           MS. ENLOW:  Not what the Russia's government may

8   or may not have been doing.  That's not the public interest

9   that has to be assessed here.  The public interest is what

10  the United States government is up to.  And here even if

11  assuming there was a public interest in that the privacy

12  interest was so high for these individuals that it just is

13  not outweighed by the public interest.

14          THE COURT:  Okay.

15          MS. ENLOW:  And then for category four these

16  individuals who are merely mentioned in the report, the

17  balancing is the same.  The privacy interest is very high

18  and the public interest is very low even for the individuals

19  that were referred to other parts of the government for

20  further investigation.  The public interest is low on

21  figuring out like what the Special Counsel's office was up

22  to because those individuals came up in the course of the

23  Special Counsel's investigation and were referred elsewhere.

24          Again, the privacy interest is very high for all

25  the individuals in that category and does not outweigh the

 1   public interest.

 2          And for Roger Stone, again his information is

 3   protected by 7(a), 7(b), the order and 7(c).  With regard to

 4   7(c), the only argument plaintiff seem to be making is that

 5   Mr. Stone goes out and seeks intention.  Well, even if that

 6   is the case that does not mean that the -- just because an

 7   individual might voluntarily go and seek attention for any

 8   matter that does not mean the government can then release

 9   information about that individual.  And it does not also

10   mean that the individual would want the information within

11   the report released.

12          Now with regard to category two these are the

13   individuals that were not charged by the Special Counsel's

14   office.  And even assuming a public interest here the

15   privacy interest is at it's peak when someone has been

16   investigated but never charged with a crime.  The D.C.

17   Circuit has recognized over and over again that there is an

18   obvious and great privacy interest for these individuals.

19   And that was in the *Crew* case, that was in the *ACLU* case.

20          And then in the D.C. Circuit in the case involving

21   the Hillary Rodham Clinton draft indictment, the D.C.

22   Circuit recognized there would be a severe intrusive to her

23   privacy to release that information.  And that is because

24   release of this information would result in someone being

25   tried in the court of public opinion rather than the court

1   of law.  And this interest is recognized in the Federal

2   Registrar that was used to promulgate the Special Counsel

3   regulations.

4          The reason why there is a confidential report to

5   the Attorney General so we're talking about here is because

6   the independent counsel back in the '90s produced a report

7   that was later recognized that intruded on various

8   individuals' privacy interest.  And so the concern was so

9   great that Attorney General Janet Reno went to the Hill and

10  testified in front of Congress to get that statute repealed

11  because she recognized that there was a privacy concern in

12  that final report.

13         And what she said was, "Is that the report

14  requirement cuts against many of the basic traditions and

15  practices of American law enforcement.  Under our system we

16  presume innocence and we value privacy.  We believe this

17  information obtained during a criminal investigation should

18  in most all cases be made public only if there's an

19  indictment and prosecution not in a lengthy and detail

20  report filed after a decision has been made not to

21  prosecute.  We have come to believe that the price of the

22  report is often too high."

23         And again, echoing that in the Federal Registrar

24  notice the DOJ recognized that the report should be handled

25  as a confidential document because there are such

1    significant privacy concerns by releasing this information.

2    Again this has been recognized over and over again by the

3    D.C. Circuit and should be recognized here as well.

4              THE COURT:  Okay.

5              MR. TOPIC:  Your Honor, here's what the D.C.

6    Circuit recently had to say in the *Barco* case.  "The public

7    has an interest in knowing that a government investigation

8    itself is comprehensive, that the report of an investigation

9    released publicly is accurate, that any disciplinary

10   measures imposed are adequate.  And that those who are

11   accountable are dealt with in an appropriate manner."

12             That is how FOIA helps to hold the governors

13   accountable to the govern.  That exactly applies to this

14   case.  We have, we have not simply said we're just

15   interested in digging around to find some information that

16   the report happened to have.  There have been questions

17   raised on both sides about the origins of the investigation,

18   about how it was conducted.  I think if nothing else the

19   American people have a right to know whether the president

20   has been accurate when he has said this is a political

21   witness hunt, an illegal, and the people have committed

22   treason, and the people should be in jail, et cetera, et

23   cetera.

24             And the kind of information that's being redacted

25   here goes to the very heart of the work of the Special

1    Counsel's office and the decisions that he made, and who he

2    was going to charge, who he wasn't, whether he felt that he,

3    of that kind of pressure, whether that maybe had something

4    to do with the decisions he ultimately made, but the *Barco*

5    situation that I quoted it reads exactly on this situation.

6    If Congress wanted an absolute rule for privacy in this

7    instance then they write an exemption that says that, but

8    there's a balancing against the public interest in

9    disclosure.

10           THE COURT:  So what information are -- because I

11   would tend to agree with you that obviously there have been

12   a lot of statements made by individuals including the

13   president suggesting that this was a witch hunt and it was

14   predicated on a false narrative.  So what information do you

15   believe would or could be made available from this report

16   that would undermine the suggestion that this was in fact a

17   witch hunt?

18           MR. TOPIC:  Well, if there's a detailed,

19   thoughtful analysis of why Donald Trump, Jr. wasn't charged.

20   One would think that if this was a political witch hunt that

21   would not have been the conclusion.  Conversely, other have

22   said, legal experts have said and obviously, you know,

23   people have different opinions on what the law requires or

24   doesn't.  But questions have been raised about why at least

25   wasn't Donald Trump, Jr. brought to the Grand Jury.

1          You declined to charge him based on a mens rea

2     element, but you didn't do everything you could to get to

3     the bottom of what was in his head or so the argument goes.

4     It doesn't mean that it's right.  It doesn't mean that it's

5     wrong.  But understanding exactly how the Special Counsel's

6     office came to the conclusion that they were not going to

7     charge Donald Trump, Jr. with any crimes would answer that

8     question as best as anything is going to answer that

9     question.

10          THE COURT:  But wouldn't the fact that Special

11     Counsel opted not to charge Donald Trump, Jr. wouldn't that

12     in and of itself undermine the situation that this was a

13     witch hunt just to charge people for things that they didn't

14     do?

15          MR. TOPIC:  It might, but it may go the other way.

16     It isn't just statements of the president.  It's statements

17     of people going the other way who believe he should have

18     been charged or could have been charged or at least have

19     questions.  The standard under *Fabish* again is not -- they

20     seem to now concede that all SafeCard holds is that you have

21     to show compelling circumstances to overcome a privacy

22     interest in this kind of situation.  Not that you have to

23     provide compelling evidence of illegal conduct by the

24     government which is something very, very different.

25          I think, if ever there were compelling

1    circumstances for full disclosure of information I think

2    this is exactly it.  And the Supreme Court has said that the

3    courts are necessary protectors of the public's right to

4    know and the public right to know here is that it's apex in

5    any case I've seen at any times.

6           THE COURT:  Thank you.

7           MR. TOPIC:  Thank you.

8           THE COURT:  What's the government's position

9    whether someone who is a public figure has diminished

10   privacy interest under FOIA?  Do you have any position on

11   that?  I don't know of any cases that have said that, but --

12          MS. ENLOW:  Yes, Your Honor.  In the *Judicial*

13   *Watch versus Nora* case, I believe the D.C. Circuit

14   recognized that given Hillary Rodham Clinton's position and

15   the amount of attention her case got she actually faced an

16   increased privacy interest and an increased intrusion upon

17   her privacy should that draft indictment be released.

18          THE COURT:  Okay.  Is that it?

19          MR. BUTLER:  One quick point, Your Honor, this is

20   just a minor correction for something we identified in our

21   brief.  On page 19, we refer to the *Crew* case.  We refer to

22   the D.C. Circuit 2014 *Crew* case.  The case we meant to refer

23   to is actually cited in the government's reply brief is also

24   a *Crew* case, *Crew versus Department of Justice*, 658 F2d.

25   2019, so that's the case that concerned the records of

 1    Special Prosecutor Fitzgerald.  That's the point we were

 2    making.

 3            And then related to that to underscore a point I

 4    made earlier about in-camera review, in that case the court

 5    ordered, not only ordered in-camera review but supplemental

 6    declarations which as we noted before is I think the right

 7    remedy in this case where there is substantial questions

 8    about the independence of the review of the exemption claims

 9    from the Attorney General.

10            THE COURT:  Okay.  Thank you.  If there's nothing

11    else I understand the importance of trying to have this

12    resolved as quickly as possible, because I assume regardless

13    of how I rule the case is going to go on appeal, so I think

14    it's important that we get a resolution of this as quickly

15    as possible.

16            I have an overwhelming calendar both here and in

17    Pittsburgh, so I'll do the best I can to get this done as

18    quickly as possible.  What I may end up doing is to the

19    extent that I think it's clear that a particular position

20    should be taken I may in part require that some additional

21    thing be done so that I can be in a position to resolve the

22    case as quickly as possible, but I'll turn my attention to

23    this.

24            I've got some other things I've got to get done,

25    but we'll get this done as quickly as we can so we can have

1    this matter resolved one way or the other.

2              Thank you.

3              [Thereupon, the proceedings adjourned at

4         12:18 p.m.]

1                           CERTIFICATE

2               I, Cathryn J. Jones, an Official Court Reporter

3    for the United States District Court of the District of

4    Columbia, do hereby certify that I reported, by machine

5    shorthand, the proceedings had and testimony adduced in the

6    above case.

7               I further certify that the foregoing 96 pages

8    constitute the official transcript of said proceedings as

9    transcribed from my machine shorthand notes.

10              In witness whereof, I have hereto subscribed my

11   name, this the 12th day of August, 2019.

12

13                           /s/_Cathryn J. Jones
14                           Cathryn J. Jones, RPR
                             Official Court Reporter
15

16

17

18

19

20

21

22

23

24

25

**MR. BUTLER: [30]** 3/8 25/14 25/18 30/4 30/18 30/22 30/24 32/6 33/6 38/10 39/19 40/18 41/2 41/17 45/21 50/24 51/6 57/5 57/11 57/15 57/20 58/11 58/13 58/16 59/10 63/8 65/5 65/7 66/2 94/18
**MR. PETERSON: [1]** 3/14
**MR. SHAW: [6]** 47/9 47/15 49/12 49/20 49/24 50/16
**MR. TOPIC: [28]** 3/11 4/5 4/8 4/15 4/19 8/20 9/23 11/5 11/24 15/13 16/11 16/25 19/9 19/14 19/17 19/25 23/22 24/18 69/1 71/6 71/14 75/12 75/16 82/20 91/4 92/17 93/14 94/6
**MS. ENLOW: [46]** 6/25 8/13 13/14 14/12 18/8 18/22 19/23 20/22 23/15 28/1 29/13 33/15 34/3 34/14 35/5 35/17 36/7 37/1 37/8 38/7 38/9 41/25 42/7 44/11 54/3 56/12 56/22 61/6 62/1 62/6 62/17 63/1 66/21 67/12 68/6 72/24 73/18 73/22 75/4 85/12 86/12 87/4 88/3 88/6 88/14 94/11
**THE COURT: [110]**
**THE DEPUTY CLERK: [1]** 3/1

**'**
**'90s [1]** 90/6

**.**
**.x [2]** 1/7 1/11

**/**
**/s [1]** 97/13

**1**
**10:03 [1]** 1/11
**1100 [1]** 2/3
**11:05 [1]** 50/20
**11:15 [1]** 50/21
**128 [1]** 74/25
**12:18 [1]** 96/4
**12th [1]** 97/11
**13 [1]** 12/9
**1718 [1]** 1/19
**19 [1]** 94/21
**19-810 [1]** 3/6
**19-810-RBW [1]** 1/9
**19-957 [1]** 3/4
**19-957-RBW [1]** 1/4

**2**
**200 [1]** 1/19
**20001 [1]** 2/7
**20005 [1]** 2/3
**20009 [1]** 1/20
**2001 [1]** 38/9
**2011 [2]** 38/8 38/10
**2014 [2]** 51/12 94/22
**2016 [1]** 22/3
**2017 [1]** 55/21
**2019 [3]** 1/10 94/25 97/11
**22 [4]** 57/14 57/16 58/11 62/13
**23 [1]** 62/13
**27th [1]** 40/22
**29 [1]** 9/7
**29th [1]** 34/18

**2nd [1]** 9/8

**3**
**302s [3]** 20/12 55/21 79/4
**311 [1]** 1/22
**333 [1]** 2/7

**4**
**43 [2]** 64/12 67/7
**44 [3]** 58/11 58/14 67/7
**45 [1]** 58/11
**46 [1]** 58/12

**5**
**50 [2]** 52/24 53/23
**54-5 [1]** 12/9
**57.7 [2]** 74/10 74/15

**6**
**600.8 [1]** 28/4
**600.8c [1]** 31/8
**60607 [1]** 1/23
**6521 [1]** 2/6
**658 [1]** 94/24
**6s [1]** 61/10

**8**
**810 [1]** 3/6
**87 [4]** 64/13 65/9 66/1 67/8
**88 [3]** 64/13 65/9 67/8

**9**
**92 [2]** 28/13 63/5
**957 [1]** 3/4
**96 [1]** 97/7

**A**
**a.m [3]** 1/11 50/20 50/21
**Aberdeen [1]** 1/22
**ability [5]** 32/16 56/11 66/21 71/10 73/12
**able [2]** 38/6 63/1
**about [156]**
**above [1]** 97/6
**absent [1]** 85/17
**absolute [1]** 92/6
**absolutely [2]** 79/23 82/10
**absolve [1]** 50/11
**accept [1]** 36/21
**accepting [1]** 10/16
**access [2]** 32/17 53/16
**according [1]** 59/18
**account [1]** 35/25
**accountable [2]** 91/11 91/13
**accounts [1]** 6/13
**accurate [3]** 29/9 91/9 91/20
**acknowledge [2]** 51/5 52/22
**acknowledged [1]** 30/7
**acknowledges [1]** 6/3
**acknowledgment [4]** 5/25 6/4 6/6 6/11
**ACLU [1]** 89/19
**across [2]** 31/4 69/22
**act [6]** 19/9 20/25 21/4 21/6 23/1 58/18
**acting [1]** 48/1
**action [3]** 3/4 3/6 46/9
**actions [4]** 26/22 32/18 42/25 51/19
**active [2]** 22/23 23/3

**activities [3]** 11/2 22/2 32/23
**activity [9]** 25/6 31/25
**actor [1]** 83/24
**actors [1]** 83/18
**actual [2]** 44/17 68/21
**actually [18]** 9/1 12/7 18/12 19/2 30/8 32/15 34/4 52/20 57/22 58/6 58/15 58/17 59/4 64/5 66/7 70/5 94/15 94/23
**add [1]** 16/18
**addition [4]** 7/25 26/18 52/8 53/3
**additional [8]** 7/22 25/21 28/22 30/13 57/1 63/9 63/22 95/20
**address [7]** 19/22 24/4 27/9 29/22 50/24 75/12 86/7
**addressed [2]** 51/5 51/7
**addresses [1]** 87/13
**addressing [1]** 51/1
**adduced [1]** 97/5
**adequate [1]** 91/10
**adequately [2]** 72/20 78/3
**adhere [1]** 15/10
**adjourned [1]** 96/3
**administrative [1]** 54/9
**advantage [1]** 69/24
**adversely [1]** 87/3
**affidavit [10]** 8/22 15/16 15/17 16/4 16/9 16/16 17/20 28/15 54/2 69/6
**affidavits [3]** 9/4 23/11 25/6
**after [13]** 12/10 27/15 30/8 30/19 36/10 37/19 48/14 53/10 53/11 55/22 63/14 80/7 90/20
**again [31]** 4/6 11/10 14/5 14/21 18/25 19/10 22/13 27/21 29/14 29/16 31/13 38/16 39/25 42/8 46/4 56/13 60/18 62/14 62/18 63/17 71/22 73/24 84/5 85/18 88/24 89/2 89/17 90/23 91/2 91/2 93/19
**against [9]** 45/10 58/3 74/2 74/11 78/11 81/20 83/12 90/14 92/8
**agency [5]** 15/12 23/10 31/18 58/4 59/17
**agents [1]** 85/23
**aggressive [1]** 17/19
**ago [2]** 38/9 85/15
**agree [6]** 12/13 19/23 36/6 59/13 65/24 92/11
**agreed [1]** 36/24
**aided [1]** 2/12
**airing [1]** 53/12
**akin [3]** 37/17 37/24 42/9
**al [1]** 1/3 3/3
**Alan [2]** 1/17 3/9
**all [41]** 5/14 14/24 16/15 17/21 18/20 20/18 22/12 29/19 35/14 39/16 39/22 40/12 47/4 54/8 54/17 55/13 55/19 58/24 59/19 60/22 62/24 65/13 65/14 65/15 67/4 69/12 69/25 73/21 76/12 78/24 79/25 80/20 80/21 82/9 83/19 84/23 84/24 85/8 88/24 90/18 93/20
**allegations [1]** 35/3
**alleged [1]** 35/1
**allow [8]** 20/7 20/7 32/9 54/12 75/24 76/23 78/14 78/16
**alone [4]** 72/7 78/7 84/10 86/12
**along [1]** 16/15
**already [16]** 5/16 5/20 6/15 8/11 25/9 30/11 31/10 31/18 35/15 36/9 36/22

## A

**already...** [5] 46/6 47/20 53/24 75/3 84/22

**also** [33] 3/4 7/20 12/9 20/20 22/13 26/1 26/18 27/9 27/14 31/16 34/10 34/16 36/11 36/17 41/8 43/5 48/17 50/3 50/10 51/22 52/22 56/1 59/1 60/2 68/18 69/14 70/19 74/6 74/9 78/16 85/24 89/9 94/23

**although** [1] 60/3

**always** [1] 59/12

**am** [1] 66/10

**America** [1] 43/23

**American** [3] 43/22 90/15 91/19

**amicus** [3] 1/21 4/14 39/5

**amount** [5] 56/10 63/16 84/1 84/3 94/15

**analyses** [2] 9/11 43/2

**analysis** [21] 5/18 6/19 7/4 7/19 8/23 9/1 11/15 12/24 14/6 37/22 38/2 51/15 54/24 55/6 68/13 68/16 70/18 78/8 78/10 80/12 92/19

**analyze** [1] 52/20

**analyzed** [1] 65/20

**anathema** [1] 75/24

**another** [4] 50/2 53/3 76/21 84/10

**answer** [5] 12/13 48/22 78/6 93/7 93/8

**any** [53] 5/2 5/2 5/10 5/18 5/25 6/1 7/7 7/22 9/16 10/14 13/24 17/21 18/16 20/2 24/7 24/17 35/6 35/7 36/10 44/12 46/23 50/9 51/21 52/5 52/18 54/18 57/4 58/24 59/1 61/25 62/9 66/23 68/1 69/1 69/3 69/7 76/22 77/2 78/3 79/19 80/18 81/19 82/8 83/19 84/23 85/9 89/7 91/9 93/7 94/5 94/5 94/10 94/11

**anymore** [1] 36/4

**anything** [19] 6/16 7/8 10/16 11/18 12/18 12/22 17/10 17/16 30/2 47/19 50/23 68/4 69/5 70/13 75/11 77/11 79/25 87/16 93/8

**apart** [1] 77/10

**apex** [1] 94/4

**apparent** [1] 54/21

**apparently** [1] 75/2

**appeal** [3] 55/19 55/23 95/13

**appeals** [1] 60/5

**appear** [2] 13/8 27/17

**APPEARANCES** [1] 1/16

**appeared** [1] 7/15

**appears** [3] 77/19 81/4 83/3

**Appendix** [1] 58/22

**applicable** [1] 85/12

**application** [4] 31/2 33/2 37/22 41/21

**applied** [1] 16/4

**applies** [3] 6/9 79/3 91/13

**apply** [4] 10/25 31/4 60/2 69/22

**applying** [2] 30/12 71/15

**appreciate** [1] 36/18

**appropriate** [14] 6/22 8/6 16/20 20/20 24/2 24/9 24/18 25/22 28/1 30/4 30/18 35/17 37/1 91/11

**are** [115]

**area** [1] 6/21

**areas** [1] 24/23

**aren't** [7] 41/24 42/6 47/6 81/13 83/5 83/21 85/4

**arguably** [1] 49/21

**argue** [5] 7/20 48/5 49/17 50/1 55/17

**arguing** [1] 48/4

**argument** [10] 5/13 5/24 16/19 17/6 17/6 19/13 81/20 81/22 89/4 93/3

**arguments** [3] 11/10 46/11 46/12

**arm** [1] 44/4

**around** [1] 91/15

**art** [1] 17/7

**article** [1] 75/2

**articulate** [1] 60/3

**articulates** [1] 48/13

**articulation** [1] 49/5

**as** [123]

**ask** [2] 3/7 6/18

**asked** [1] 48/17

**asking** [1] 25/5

**aspect** [1] 7/23

**aspects** [1] 11/1 38/17 76/12

**assert** [2] 64/24 81/13

**asserted** [2] 69/25

**asserting** [1] 64/8

**assertion** [3] 12/1 53/6 64/2

**assertions** [1] 52/6

**assess** [5] 11/22 28/15 34/23 67/10 78/17

**assessed** [2] 34/24 88/9

**assessment** [9] 12/19 14/22 27/25 40/17 41/1 56/11 59/8 66/12 67/25

**assigned** [1] 51/16

**associate** [2] 61/22 75/1

**associated** [4] 10/15 86/2 86/3 87/6

**assume** [6] 8/11 24/11 41/13 59/16 65/5 95/12

**assuming** [3] 11/3 88/11 89/14

**attach** [3] 59/6 59/23 60/4

**attempt** [3] 12/21 76/16 81/23

**attempted** [1] 72/23

**attempting** [1] 51/14

**attendance** [1] 11/9

**attention** [5] 4/14 73/6 89/7 94/15 95/22

**attest** [1] 9/2

**attested** [5] 7/13 7/21 8/15 23/7 37/3

**attorney** [58] 1/17 1/17 1/18 1/21 2/1 26/5 26/23 27/4 27/15 27/22 28/2 28/6 28/6 28/10 29/6 29/24 30/9 30/17 30/20 32/1 33/20 33/23 34/2 34/5 34/10 34/12 34/19 34/21 35/13 35/15 36/6 36/23 37/1 37/25 38/14 39/5 39/6 39/9 40/17 40/19 40/25 41/1 45/11 46/18 47/21 48/1 48/3 49/22 49/22 50/3 50/4 50/7 50/14 70/9 75/23 90/5 90/9 95/9

**Attorney's** [2] 43/11 43/18

**Attorney-at-Law** [4] 1/17 1/17 1/18 1/21

**attorneys** [2] 45/13 47/3

**audiences** [1] 83/5

**August** [2] 1/10 97/11

**author's** [1] 42/24

**authority** [24] 14/3 31/23 33/3 39/3 39/7 39/10 39/25 42/3 46/1 47/23 49/1 49/2 49/9 49/14 49/24 49/25 50/11

**authorized** [1] 21/23

**available** [5] 4/24 6/8 6/20 32/15 92/15

**Avenue** [2] 1/19 2/7

**avenues** [1] 46/11

**aware** [1] 44/12

**away** [2] 53/6 61/15

**axiomatic** [1] 12/25

## B

**B-one** [1] 33/1

**B3** [1] 12/12

**back** [9] 13/24 35/18 42/8 42/21 52/10 54/16 62/7 73/24 90/6

**bad** [1] 86/23

**balancing** [6] 7/7 8/17 9/6 45/1 88/17 92/8

**banc** [2] 17/4 19/3

**bar** [1] 69/21

**Barco** [2] 91/6 92/4

**bare** [1] 76/3

**Barr** [5] 35/4 49/22 49/22 50/5 50/7

**based** [6] 38/21 40/5 59/23 59/25 67/25 93/1

**basic** [2] 11/14 90/14

**basically** [8] 6/4 8/24 13/15 30/12 35/12 58/20 61/10 66/4

**basis** [7] 10/13 15/9 28/24 34/25 38/1 58/7 75/2

**be** [150]

**bear** [2] 8/1 32/11

**became** [1] 35/16

**because** [49] 7/18 10/25 12/4 17/4 18/24 22/15 24/9 27/2 29/14 31/5 31/22 34/24 36/8 38/24 40/12 41/9 45/6 46/3 46/22 49/8 51/9 56/8 60/3 60/8 60/11 63/19 63/25 64/6 64/10 66/13 67/7 69/25 70/20 70/25 73/2 73/11 75/5 77/4 77/5 77/25 86/25 88/22 89/6 89/23 90/5 90/11 90/25 92/10 95/12

**been** [70] 4/18 5/1 5/4 5/5 5/6 5/25 6/5 6/23 7/24 8/12 10/9 10/10 12/16 13/10 13/12 15/4 17/7 18/3 26/8 30/12 31/10 31/18 32/2 35/7 35/16 36/24 36/24 37/20 43/19 46/25 47/20 48/15 53/7 53/7 53/11 53/11 53/24 55/13 56/10 58/25 59/10 60/6 63/16 67/16 67/19 67/20 67/21 68/1 68/8 71/13 71/17 77/7 78/18 80/20 81/7 82/6 84/5 84/7 84/23 88/8 89/15 90/20 91/2 91/16 91/20 92/11 92/21 92/24 93/18 93/18

**before** [39] 1/14 4/23 5/9 6/1 6/14 7/9 7/15 7/25 9/19 12/8 12/16 12/18 12/21 12/23 13/2 13/8 13/19 14/17 15/7 16/2 16/10 17/7 17/20 25/16 26/6 26/16 26/21 27/20 33/20 36/1 47/1 48/12 50/24 51/2 51/8 55/8 77/15 78/22 95/6

**beginning** [2] 63/24 78/19

**beginnings** [1] 77/22

**behalf** [4] 3/9 3/13 3/16 47/16

**being** [23] 11/9 21/2 21/23 23/2 35/19 53/7 53/25 61/11 63/12 63/14 65/8 67/5 67/10 68/2 69/12 71/4 82/5 86/1 86/3 87/6 87/25 89/24 91/24

**belief** [1] 24/5

**believe** [12] 4/16 24/8 24/14 24/15 75/13 82/21 84/7 90/16 90/21 92/15 93/17 94/13

**believed** [1] 11/22

**believes** [1] 46/18

**believing** [1] 76/5

**B**

**Berman [2]** 73/4 74/13
**beside [1]** 48/12
**besides [3]** 24/5 24/14 50/23
**best [5]** 3/19 71/8 83/25 93/8 95/17
**better [3]** 28/24 78/14 78/21
**between [13]** 4/9 19/16 35/7 39/1 45/23 47/2 47/21 53/13 53/21 54/13 60/12 63/17 82/24
**beyond [1]** 76/3
**big [1]** 10/5
**binding [1]** 19/4
**bit [2]** 20/6 50/13
**Black [2]** 37/13 42/23
**Blagojevich [1]** 55/22
**blanket [6]** 21/1 69/10 69/22 71/2 73/21 73/23
**board [1]** 31/4
**Boasberg [1]** 56/25
**body [1]** 36/20
**both [10]** 4/10 23/14 24/5 32/16 34/22 50/8 50/15 71/1 91/17 95/16
**bottom [1]** 93/3
**bound [1]** 63/18
**boundaries [1]** 39/8
**branch [2]** 2/2 36/18
**break [1]** 50/19
**breakdown [1]** 54/11
**breaking [1]** 67/17
**brief [15]** 5/16 6/11 9/8 16/17 21/13 23/22 24/25 39/5 42/17 47/19 57/4 76/19 80/1 94/21 94/23
**briefed [1]** 48/3
**briefing [3]** 37/19 37/20 43/5
**briefly [1]** 33/18
**briefs [2]** 9/3 20/1
**bring [6]** 4/13 12/21 41/22 45/10 78/4 86/18
**bringing [1]** 13/2
**brings [1]** 85/20
**Brinkman [1]** 57/14
**Brinkmann [22]** 7/13 7/21 8/7 8/15 13/17 17/13 17/18 18/1 21/22 22/4 23/7 28/25 30/1 30/17 35/14 36/11 36/22 37/2 54/19 57/13 57/16 62/2
**Brinkmann's [12]** 8/22 13/22 14/7 14/15 15/17 18/12 21/20 28/16 64/12 68/23 69/6
**broad [2]** 47/23 61/18
**broadly [1]** 25/4
**brought [2]** 32/11 92/25
**burden [6]** 8/1 8/3 17/10 17/11 82/14 87/10
**burdensome [1]** 25/25
**busy [1]** 11/8
**Butler [2]** 1/17 3/9
**Buzz [1]** 3/13

**C**

**CA [2]** 1/4 1/9
**calendar [1]** 95/16
**called [4]** 12/15 26/8 76/12 84/6
**calls [3]** 16/4 25/2 81/21
**came [8]** 9/25 10/20 10/20 10/22 33/20 54/6 88/22 93/6
**camera [32]** 6/21 8/4 8/8 15/9 16/11 16/20 20/21 23/25 24/2 24/8 24/10
24/16 24/17 25/21 25/25 26/17 26/25 27/20 28/25 83/25 84/10 85/12 85/19 35/9 38/12 58/9 63/1 66/6 81/7 84/18 95/4 95/5
**campaign [5]** 22/24 23/4 53/1 59/15 83/3
**can [53]** 6/22 16/23 17/12 18/6 19/8 19/21 21/12 22/19 25/18 28/12 28/14 32/11 35/8 37/14 42/10 47/14 48/16 49/16 50/4 55/3 55/4 55/14 56/16 56/21 59/7 59/15 60/4 62/19 63/3 63/8 66/24 67/2 67/14 67/18 68/23 69/2 69/19 71/23 72/12 72/12 72/19 72/19 75/6 80/6 80/23 81/6 83/25 87/14 89/8 95/17 95/21 95/25 95/25
**can't [8]** 33/10 44/6 44/10 50/13 62/8 66/12 66/19 72/12
**candid [5]** 40/3 40/3 40/11 41/11 45/14
**candidate [1]** 84/18
**cannot [3]** 51/4 56/25 74/22
**care [1]** 81/3
**carries [1]** 79/18
**Carter [1]** 81/9
**case [124]**
**cases [36]** 14/24 16/12 20/20 31/14 39/16 47/24 52/9 52/13 52/19 53/5 53/15 53/18 53/18 53/21 53/24 54/6 54/9 55/18 57/11 58/15 58/18 58/19 58/23 58/24 59/2 59/20 59/21 60/5 60/6 60/22 63/17 64/9 65/17 90/18 94/11
**categorical [2]** 51/15 54/5
**Categorically [1]** 86/25
**categories [9]** 18/18 18/22 18/24 31/1 41/20 51/16 51/17 61/4 83/16
**category [11]** 9/11 18/16 19/12 51/2 51/18 65/2 85/20 85/21 88/15 88/25 89/12
**Cathryn [4]** 2/5 97/2 97/13 97/14
**cause [8]** 26/23 29/11 45/11 45/12 57/10 62/4 86/4 86/4
**caused [1]** 26/5
**causes [1]** 63/18
**causing [1]** 57/2
**CENTER [4]** 1/8 1/18 3/5 3/10
**certain [4]** 55/6 86/18 86/19 86/19
**certainly [8]** 9/15 13/4 14/14 19/21 22/12 34/15 35/9 81/6
**CERTIFICATE [1]** 97/1
**certify [2]** 97/4 97/7
**cetera [6]** 52/15 54/9 54/23 70/11 91/22 91/23
**chance [1]** 55/8
**change [2]** 30/19 53/14
**changes [1]** 52/12
**character [2]** 46/16 47/8
**charge [11]** 4/25 5/1 10/1 10/2 10/14 78/19 92/2 93/1 93/7 93/11 93/13
**charged [24]** 31/4 31/25 52/9 52/13 53/7 53/11 53/21 53/24 58/15 58/17 58/18 59/2 59/20 64/9 76/14 76/14 76/15 77/4 77/24 89/13 89/16 92/19 93/18 93/18
**charges [3]** 34/25 41/23 78/11
**charging [13]** 32/3 32/7 32/25 33/5 33/7 33/14 38/1 41/22 44/23 45/7 48/7
53/12 78/15
**chance [1]** 104/01
**Chicago [1]** 1/23
**chill [1]** 46/3
**chilling [2]** 45/17 45/20
**choosing [1]** 81/12
**chose [1]** 41/2
**chronology [1]** 42/24
**circuit [14]** 14/1 14/20 24/9 38/7 44/15 51/12 61/9 89/17 89/20 89/22 91/3 91/6 94/13 94/22
**Circuit's [1]** 44/21
**circumstances [7]** 22/6 26/2 43/9 64/19 68/19 93/21 94/1
**circumvention [1]** 65/1
**citation [2]** 21/14 63/13
**citations [2]** 62/20 63/2
**cite [4]** 6/3 69/14 76/9 76/10
**cited [8]** 8/24 9/7 13/25 17/8 55/17 67/20 76/17 94/23
**Citizens [1]** 47/17
**civil [7]** 2/2 3/4 3/6 4/4 53/17 53/21 60/9
**claim [11]** 19/15 25/1 36/25 52/11 52/15 52/19 53/9 64/3 64/15 64/23 64/25
**claimed [8]** 3/21 5/5 18/20 24/12 25/12 25/14 56/12 78/18
**claiming [4]** 48/20 50/9 50/10 69/23
**claims [12]** 12/3 20/8 25/3 26/13 41/19 50/8 51/25 63/25 64/1 75/19 78/21 95/8
**clarification [1]** 58/15
**class [1]** 16/1
**clause [1]** 32/14
**clear [7]** 11/13 20/2 48/16 59/12 70/2 74/8 95/19
**clearly [12]** 15/20 22/21 23/1 34/25 48/10 51/10 55/7 62/9 74/3 80/18 82/14 86/15
**Clinton [3]** 8/6 80/5 89/21
**Clinton's [2]** 80/11 94/14
**closed [1]** 58/25
**closing [3]** 31/6 39/13 40/21
**CNN [2]** 56/24 75/1
**codes [1]** 28/23
**colleague [3]** 25/20 51/8 66/23
**collected [5]** 54/23 61/11 68/15 68/16
**collusion [4]** 27/8 27/9 34/23 86/22
**COLUMBIA [2]** 1/2 97/4
**come [13]** 5/11 10/13 10/23 11/10 26/21 44/25 52/10 53/4 70/17 76/3 76/25 78/23 90/21
**comes [6]** 17/21 45/1 63/11 63/18 75/21 79/21
**comfortable [1]** 78/15
**coming [1]** 88/2
**commented [1]** 82/6
**committed [1]** 91/21
**common [1]** 14/22
**communication [2]** 39/12 40/3
**communications [6]** 38/25 40/3 40/11 41/11 45/21 53/19
**compare [1]** 6/22
**compared [4]** 29/23 43/16 49/12 82/19
**comparison [1]** 8/23
**compelling [7]** 72/7 75/22 80/24 85/17

**C**

compelling... [3] 93/21 93/23 93/25
complete [3] 70/15 78/9 82/10
completed [2] 53/8 63/20
completely [4] 7/4 46/22 82/15 87/8
complications [1] 26/4
comply [3] 71/14 73/15 76/20
comport [1] 3/23
comprehensive [1] 91/8
compromise [1] 61/5
computer [2] 2/12 20/17
computer-aided [1] 2/12
concede [1] 93/20
conceded [1] 80/10
conceivably [6] 24/6 43/14 56/8 65/5
71/5 71/10
concern [13] 29/11 32/23 52/24 53/5
53/23 56/6 56/9 60/10 60/15 64/14
74/24 90/8 90/11
concerned [2] 7/2 94/25
concerns [14] 27/2 29/22 31/3 43/15
43/22 44/2 52/8 57/17 57/18 59/14
70/25 71/1 84/23 91/1
conclude [4] 26/24 30/3 66/19 78/11
concluded [2] 52/17 78/1
concluding [2] 15/10 18/3
conclusion [9] 10/13 10/18 17/14 23/6
34/21 65/14 78/23 92/21 93/6
conclusions [6] 10/1 15/16 18/2 18/3
25/7 34/12
conclusory [2] 8/25 66/4
Concord [2] 74/11 74/14
conduct [22] 8/8 15/8 16/11 23/25
24/2 24/16 26/24 30/8 30/9 49/1 51/14
56/11 58/9 59/4 63/1 66/6 66/11 74/1
74/2 75/22 76/6 93/23
conducted [6] 8/22 76/14 80/8 80/22
87/16 91/18
conducting [1] 29/13
conducts [1] 21/11
conference [3] 1/13 34/7 34/17
confess [1] 9/14
confidence [1] 65/14
confidential [3] 28/5 90/4 90/25
confuses [1] 6/2
confusion [1] 38/17
Congress [7] 28/8 32/16 40/7 40/13
40/23 90/10 92/6
Congress's [1] 32/13
conjunct [1] 22/18
conjunction [10] 21/21 22/19 33/21
35/20 35/21 35/21 35/24 56/14 62/19
62/21
connected [2] 15/18 84/19
Connecticut [1] 1/19
connection [1] 85/16
Conor [1] 47/16
consider [2] 32/12 48/17
considerations [1] 47/6
considered [4] 13/5 14/12 15/7 29/25
considering [1] 13/2
consistent [3] 34/13 36/25 65/16
consolidated [1] 3/5
conspiracy [1] 34/25
conspiring [1] 10/15
constitute [1] 97/8
Constitution [1] 2/7

constitutional [2] 14/21 32/11
consummated [3] ...
consultation [1] 33/25
consulted [1] 36/9
contact [2] 86/14 87/10
contacted [4] 84/7 85/23 85/25 87/1
contained [2] 34/22 47/5
content [3] 27/3 27/5 29/23
context [12] 11/12 16/3 16/5 23/4 25/2
28/14 28/20 39/3 59/9 60/10 71/24
82/20
continues [1] 75/19
contradiction [1] 49/19
contrary [2] 17/5 85/18
conversation [1] 48/24
Conversely [1] 92/21
conviction [1] 55/24
Cooper [1] 85/15
cooperative [1] 70/11
copy [1] 72/11
core [2] 40/9 42/21
correct [6] 8/14 33/7 39/20 41/18
56/23 56/24
correction [1] 94/20
corruption [2] 79/9 79/10
could [40] 10/21 15/19 17/18 20/12
23/8 24/6 28/8 36/1 37/6 41/5 45/11
45/12 46/17 55/16 56/4 56/8 57/8
61/14 61/15 61/16 61/19 62/4 62/22
65/7 66/6 73/16 74/2 74/5 74/19 74/19
76/6 78/5 79/4 84/16 86/4 86/4 86/20
92/15 93/2 93/18
couldn't [2] 40/24 49/18
counsel [80] 3/17 4/25 9/25 10/4
10/13 11/5 11/18 13/9 13/25 17/23
17/25 20/22 21/15 25/13 26/7 26/7
26/17 26/23 27/7 27/8 27/11 28/6
29/21 31/7 31/19 31/22 33/3 33/21
34/9 34/17 35/20 36/5 37/25 38/14
38/16 38/20 39/2 39/7 39/10 39/24
40/4 40/6 40/16 40/21 41/4 41/10
41/16 41/24 42/3 42/13 43/8 45/25
47/3 47/22 47/23 47/25 48/4 49/1 50/2
50/4 50/9 50/12 57/25 60/24 60/25
61/1 66/10 66/16 68/11 70/8 73/15
75/23 78/1 78/10 78/23 80/8 87/16
90/2 90/6 93/11
Counsel's [26] 12/19 12/24 28/4 31/6
31/9 32/8 33/8 33/9 34/13 34/14 36/3
36/9 40/12 46/4 46/13 49/5 52/3 52/25
66/9 68/11 68/22 88/21 88/23 89/13
92/1 93/5
country [2] 77/10 80/21
couple [4] 16/23 25/19 33/16 47/18
course [12] 12/12 34/16 41/4 42/22
45/2 46/9 65/19 70/17 71/9 87/9 87/11
88/22
court [65] 1/1 2/5 2/6 2/6 6/19 7/7 7/9
8/4 8/9 9/20 14/2 17/3 19/4 20/3 20/7
21/12 22/22 23/10 26/11 26/21 28/12
28/14 28/23 33/18 37/11 42/9 44/13
48/16 48/17 50/18 51/3 51/8 54/13
55/9 55/23 56/4 58/9 59/15 59/24
59/25 61/21 63/3 65/21 66/4 66/5
66/24 67/2 67/14 67/18 68/23 69/20
72/5 73/12 74/6 74/19 84/17 85/14
85/19 89/25 89/25 94/2 95/4 97/2 97/3

97/14
Courtney [2] 2/1 3/15
courts [10] 18/24 21/1 21/5 23/23
28/17 31/13 51/24 54/9 75/4 94/3
covered [6] 6/24 13/14 18/8 20/24
21/17 42/6
create [6] 6/7 56/8 65/1 71/21 72/8
86/12
created [1] 42/17
credited [1] 10/5
Crew [18] 20/9 21/15 21/16 22/13
22/14 39/5 51/13 51/20 54/3 54/5
59/25 79/1 82/21 89/19 94/21 94/22
94/24 94/24
crime [5] 31/25 78/2 78/20 83/20
89/16
crimes [3] 10/14 79/6 93/7
criminal [11] 43/23 44/9 53/6 53/15
53/21 55/23 69/15 74/10 85/17 87/6
90/17
critical [2] 38/17 82/7
Currently [1] 58/20
cut [3] 26/15 67/6 86/17
cuts [1] 90/14

**D**

D.C [15] 1/10 2/7 14/1 14/20 44/15
44/21 51/12 61/9 89/16 89/20 89/21
91/3 91/5 94/13 94/22
dates [5] 61/3 62/15 68/4 68/4 68/20
Davisson [1] 1/18
day [2] 27/19 97/11
daylight [1] 50/10
DC [2] 1/20 2/3
DCC [1] 55/21
de [5] 56/11 58/7 59/8 84/1 84/3
DEA [1] 61/10
deal [2] 3/20 21/16
dealing [2] 25/23 35/22
deals [1] 21/17
dealt [3] 43/4 54/5 91/11
decide [1] 33/4
decided [3] 32/2 35/15 81/2
deciding [1] 44/3
decision [46] 20/9 30/20 31/16 31/17
32/1 33/2 33/11 37/19 41/17 42/18
42/21 43/2 43/6 43/7 43/11 43/17
43/19 43/20 44/5 44/9 44/11 44/18
44/19 44/23 45/15 46/14 46/19 46/24
46/25 47/1 48/9 48/13 49/5 49/9 51/13
58/8 59/22 59/24 71/9 71/12 75/21
77/18 78/4 78/15 80/4 90/20
decision-making [4] 42/18 43/2 43/6
45/15
decisional [25] 31/11 31/12 31/12
31/14 31/20 33/12 37/11 37/13 37/16
38/2 38/8 39/15 41/8 41/25 42/10
42/12 45/3 45/6 46/21 46/22 46/23
48/7 48/10 49/11 49/12
decisions [36] 4/25 17/5 31/9 32/25
33/5 33/7 33/8 33/10 33/14 38/1 38/4
39/4 39/11 39/17 39/21 40/1 41/12
41/16 41/22 41/22 41/25 42/4 42/5
42/6 42/25 43/24 43/24 44/14 45/7
46/2 46/6 48/8 48/10 81/11 92/1 92/4
declaration [38] 8/7 13/17 13/23 14/7

## D

**declaration... [34]** 14/16 14/25 15/6 18/12 18/23 21/6 21/20 22/18 23/5 23/19 28/17 28/18 29/16 29/25 30/1 36/13 36/13 36/14 37/3 41/19 45/5 54/20 56/14 57/13 57/14 57/16 59/9 59/19 62/8 62/13 62/22 64/13 67/15 68/23
**declarations [1]** 95/6
**declination [6]** 38/1 39/4 39/11 39/21 44/14 44/23 45/7 77/18 81/11
**declined [2]** 12/1 93/1
**defendant [4]** 1/6 1/10 2/1 69/21
**defendants [1]** 53/16
**deference [7]** 17/21 20/2 23/10 23/17 23/18 23/24 25/5
**deficiencies [1]** 3/25
**defined [1]** 51/16
**definition [1]** 33/10
**degree [1]** 68/1
**DeLay [3]** 20/10 20/10 82/22
**deliberation [2]** 7/6 42/12
**deliberations [4]** 37/16 38/2 44/13 45/6
**deliberative [14]** 31/16 31/20 33/13 37/10 37/14 39/16 40/10 41/7 41/9 44/16 44/24 45/3 46/10 46/21
**department [12]** 1/5 1/10 2/2 3/3 3/6 3/16 4/1 29/12 31/1 36/17 37/21 94/24
**depend [1]** 86/16
**depending [1]** 10/8
**deprive [1]** 71/20
**deprived [2]** 69/19 73/11
**Deputy [1]** 48/3
**describe [3]** 22/5 57/23 85/1
**described [7]** 22/21 26/14 31/1 37/22 37/25 39/21 51/12
**describes [4]** 22/4 48/2 52/2 73/25
**describing [6]** 20/4 21/2 41/12 54/22 62/22 66/24
**description [1]** 64/15
**descriptions [2]** 20/19 21/13
**deserve [1]** 80/23
**designated [1]** 33/1
**designations [1]** 38/21
**desire [2]** 16/13 57/10
**detail [10]** 21/2 22/15 23/8 29/19 39/6 51/10 52/18 65/20 73/25 90/19
**detailed [8]** 28/17 28/19 29/16 36/13 42/24 61/12 72/6 92/18
**details [6]** 20/16 22/10 64/17 68/9 72/19 72/19
**detection [1]** 23/9
**determination [7]** 5/19 27/10 32/6 35/12 36/23 40/24 66/20
**determine [8]** 8/8 31/24 45/9 66/6 66/25 67/15 67/18 68/24
**determined [1]** 37/6
**developed [2]** 43/1 78/1
**did [37]** 9/1 10/1 10/12 12/13 27/8 31/23 34/1 34/10 34/18 34/23 35/2 35/14 36/6 36/11 38/16 39/25 41/1 41/10 42/3 47/10 49/1 49/9 50/1 50/5 50/8 50/12 61/11 66/17 69/6 70/6 71/3 76/7 77/1 78/23 80/15 85/6 88/1
**didn't [12]** 10/23 16/17 30/8 34/5 41/3 54/11 62/5 71/2 77/6 78/19 93/2 93/13

**difference [2]** 35/7 45/23
**different [22]** 6/23 7/3 18/20 35/4 35/4 43/4 43/9 46/6 46/11 47/3 47/7 47/12 48/6 52/21 58/2 58/5 62/20 68/6 72/4 76/18 92/23 93/24
**different with [1]** 58/5
**difficult [6]** 12/6 27/3 27/6 67/10 67/25 71/5
**digging [1]** 91/15
**diligence [1]** 79/13
**diligently [1]** 29/2
**diminished [4]** 82/10 82/18 83/12 94/9
**direct [2]** 44/20 67/8
**directed [2]** 13/3 30/9
**direction [2]** 76/11 77/4
**directly [2]** 20/13 79/22
**disagree [2]** 34/21 54/2
**disagreement [1]** 71/15
**disagrees [1]** 54/4
**disappear [1]** 46/22
**disappears [1]** 52/16
**disciplinary [1]** 91/9
**disclose [1]** 11/23
**disclosed [10]** 15/20 35/16 36/1 36/24 40/7 64/4 68/18 83/22 84/6 84/6
**discloses [1]** 13/19
**disclosure [19]** 5/11 15/2 19/1 59/23 65/22 77/11 77/14 79/3 79/10 80/2 81/24 82/1 82/10 82/16 83/13 84/11 85/9 92/9 94/1
**disclosures [1]** 20/12
**discount [1]** 77/16
**discounted [2]** 10/5 82/15
**discovery [1]** 53/16
**discreet [1]** 25/24
**discretion [6]** 7/6 9/19 17/3 19/4 23/25 79/14
**discretionary [1]** 28/3
**discuss [2]** 46/24 85/21
**discussed [3]** 39/24 47/1 51/2
**discussing [1]** 67/17
**discussion [1]** 12/11
**discussions [6]** 12/13 24/5 25/11 39/1 40/2 47/2
**dismiss [2]** 37/19 43/7
**dismissal [2]** 37/13 42/18
**dismissed [1]** 37/21
**dispute [3]** 69/4 81/25 84/14
**disregard [1]** 32/2
**disruption [1]** 53/1
**disseminated [1]** 71/4
**dissemination [2]** 73/18 73/19
**distinction [2]** 48/16 82/24
**distinguish [2]** 38/6 80/6
**distinguishable [1]** 38/24
**distinguishing [2]** 53/15 53/20
**DISTRICT [7]** 1/1 1/2 1/15 2/6 11/21 97/3 97/3
**Division [1]** 2/2
**DNC [1]** 84/8
**do [36]** 4/1 7/7 16/17 16/17 17/16 18/4 24/13 25/17 27/2 34/10 36/3 36/17 39/9 40/18 48/21 50/12 57/8 57/8 66/15 66/15 66/15 69/5 70/23 70/25 72/12 72/12 80/14 84/12 85/5 92/4 92/14 93/2 93/14 94/10 95/17 97/4
**Docket [3]** 1/4 1/9 12/9

**doctrine [2]** 79/2 80/12
**document [20]** 15/24 31/15 31/17 31/20 38/20 39/14 46/5 46/16 46/23 46/23 48/11 51/22 51/23 52/2 52/4 53/12 54/14 61/15 61/15 90/25
**documentary [4]** 55/4 58/1 60/21 63/13
**documenting [1]** 46/5
**documents [11]** 9/12 37/11 37/14 37/18 39/16 42/10 42/16 42/23 47/4 48/12 60/22
**does [28]** 3/23 6/16 10/24 13/21 14/8 18/24 19/23 21/16 21/22 25/2 29/22 30/15 31/4 32/9 36/20 45/5 54/1 54/2 62/13 65/4 65/13 66/7 75/21 87/15 88/25 89/6 89/8 89/9
**doesn't [23]** 6/7 10/20 12/22 13/10 17/3 17/15 18/16 29/22 35/9 36/4 40/14 44/25 48/23 58/17 67/8 71/11 75/6 76/22 83/10 84/23 92/24 93/4 93/4
**doing [5]** 30/11 37/21 75/8 88/8 95/18
**DOJ [20]** 23/11 30/6 30/9 31/7 31/24 32/9 37/12 39/8 42/17 43/3 49/8 49/16 55/20 75/8 79/5 79/8 79/17 79/25 85/15 90/24
**DOJ's [1]** 79/13
**domain [4]** 8/3 8/13 75/4 83/9
**don't [40]** 4/14 9/14 10/3 10/6 10/17 10/18 11/17 12/2 15/15 17/16 24/24 25/10 25/15 26/15 32/20 33/18 36/3 57/22 58/23 59/1 60/22 67/1 67/6 68/6 69/3 71/22 76/16 76/20 76/25 77/3 79/1 81/4 81/25 82/8 82/24 84/2 84/13 86/10 86/16 94/11
**Donald [15]** 10/14 11/4 11/8 77/19 77/21 78/4 78/9 78/12 81/5 81/6 82/2 92/9 92/25 93/7 93/11
**done [14]** 4/18 5/18 8/17 33/21 33/24 35/20 35/24 51/20 62/2 75/8 95/17 95/21 95/24 95/25
**dots [1]** 84/19
**doubt [2]** 7/11 13/22
**down [4]** 45/14 60/8 67/17 80/20
**draft [3]** 80/5 89/21 94/17
**due [1]** 53/16
**dumping [1]** 53/2
**during [4]** 12/12 20/16 44/1 90/17

## E

**each [5]** 3/21 3/22 28/24 48/12 51/18
**earlier [4]** 24/21 66/24 81/16 95/4
**ease [1]** 28/23
**easily [2]** 38/24 80/6
**easy [2]** 48/22 77/5
**echoing [1]** 90/23
**effort [1]** 81/22
**efforts [1]** 79/10
**eight [2]** 52/9 54/19
**either [6]** 13/7 15/7 25/17 41/16 48/3 73/18 78/15
**elect [1]** 23/25
**elected [1]** 70/12
**election [3]** 22/3 80/9 87/25
**ELECTRONIC [4]** 1/7 1/18 3/5 3/10
**element [2]** 63/19 93/2
**Elizabeth [2]** 2/1 3/17

**E**

**else [8]** 16/24 30/2 50/23 63/7 70/13
75/11 91/18 95/11
**elsewhere [1]** 88/23
**email [3]** 84/8 86/7 87/13
**emails [5]** 38/25 42/14 42/14 43/5
83/23
**emanating [2]** 22/2 85/23
**employee [1]** 60/12
**employer [1]** 60/12
**en [2]** 17/4 19/3
**enacted [1]** 56/2
**end [6]** 7/18 20/5 32/24 39/22 53/8
95/18
**endeavor [1]** 76/20
**ends [2]** 8/20 15/8
**enforcement [7]** 19/18 25/11 51/19
52/12 52/17 79/18 90/15
**engaged [1]** 83/24
**engender [1]** 65/13
**Enlow [2]** 2/1 3/16
**enough [5]** 4/13 14/15 51/10 72/8
78/24
**ensure [2]** 29/17 74/20
**ensuring [1]** 71/1
**enter [3]** 48/24 69/10 73/8
**entered [1]** 70/5
**entire [6]** 54/7 54/11 63/14 67/2 75/24
78/8
**entirely [2]** 79/2 83/6
**entities [1]** 84/12
**entitled [1]** 17/21
**entity [2]** 80/15 84/6
**environmental [1]** 53/19
**EPA [1]** 53/18
**Epstein [1]** 44/1
**equate [1]** 83/20
**equities [1]** 53/13
**especially [8]** 25/25 28/20 28/21 53/14
75/7 75/8 75/9 87/7
**essentially [6]** 12/4 38/20 57/21 62/2
64/8 69/4
**establish [1]** 59/5
**estimate [1]** 28/13
**et [8]** 1/3 3/3 52/15 54/9 54/23 70/11
91/22 91/22
**Ethnics [1]** 47/17
**evade [1]** 23/9
**even [26]** 5/21 10/11 10/22 12/8 16/10
44/7 53/10 55/19 55/23 58/18 64/14
68/18 72/8 72/22 74/12 76/16 77/16
78/25 84/2 84/18 86/3 87/5 88/10
88/18 89/5 89/14
**event [6]** 13/24 35/6 36/10 54/18 62/9
66/23
**events [2]** 27/18 30/6
**ever [3]** 65/21 87/9 93/25
**every [4]** 28/24 61/13 64/1 87/20
**everything [13]** 7/24 10/25 29/17 69/5
69/10 69/22 70/3 70/14 71/9 72/1
81/4 82/11 93/2
**evidence [34]** 8/3 8/22 10/4 11/16
37/23 38/3 52/1 54/23 54/24 55/4 55/4
55/5 58/1 60/21 61/2 61/4 61/10 61/16
61/23 61/24 62/6 62/14 62/21 63/13
68/2 72/6 74/2 75/22 76/4 78/1 78/22
79/15 85/18 93/23

**exact [4]** 38/4 38/5 68/18 70/21
**exactly [4]** 20/21 21/1 35/1 93/18
**examination [1]** 20/17
**examiner [1]** 20/18
**example [23]** 5/6 6/21 10/14 11/4
11/21 12/17 16/3 22/23 42/13 46/1
46/7 47/2 55/20 57/7 57/25 58/3 58/22
60/10 65/25 70/15 82/3 86/7 87/22
**examples [2]** 10/24 69/16
**Except [1]** 35/11
**exception [2]** 34/2 70/6
**excuse [1]** 22/16
**executive [1]** 36/18
**exempt [6]** 6/4 20/3 60/7 64/23 65/15
65/19
**exemption [72]** 3/21 4/3 4/4 5/5 5/6
6/7 7/10 12/3 15/2 15/21 18/21 19/7
19/8 19/11 19/19 20/25 21/1 21/3
21/16 21/17 21/18 21/18 22/13 22/13
22/25 23/14 23/16 23/19 25/12 25/16
26/12 26/13 29/20 30/25 31/4 31/14
33/17 37/9 37/10 40/9 40/15 41/6
41/19 42/7 45/1 45/2 45/2 48/8 48/18
48/20 50/22 51/1 51/3 53/6 54/6 55/16
57/17 60/4 61/17 63/21 64/5 64/7 64/7
64/14 64/25 75/18 81/13 81/15 82/11
84/13 92/7 95/8
**exemptions [19]** 18/21 22/25 24/12
24/19 24/24 24/24 25/4 25/14 25/23
29/18 30/18 35/17 36/25 37/7 56/12
60/2 75/14 80/13 82/15
**exercise [2]** 50/1 79/13
**Exhibit [2]** 38/13 40/5
**exist [2]** 24/14 36/4
**existing [2]** 15/10 49/19
**exists [1]** 59/24
**exonerate [1]** 35/2
**exonerated [1]** 27/11
**expect [1]** 11/25
**expected [1]** 61/20
**expedite [1]** 16/13
**expeditious [1]** 3/19
**experts [3]** 76/11 77/17 92/22
**explain [3]** 48/1 70/19 81/23
**explained [2]** 20/1 51/17 52/6 79/8
84/9
**explaining [2]** 46/8 48/9
**explains [2]** 46/13 48/14
**explanation [4]** 12/17 15/24 16/6
77/23
**explicitly [8]** 7/25 13/19 14/17 15/18
18/12 39/9 49/23 50/12
**expressed [1]** 29/23
**extensive [2]** 29/19 32/22
**extent [6]** 6/15 25/10 29/10 37/15
73/17 95/19
**extreme [2]** 26/3 86/1
**extremely [3]** 61/18 69/21 77/9
**eye [1]** 82/6

**F**

**F2d [1]** 94/24
**Fabish [10]** 75/21 76/2 76/17 76/18
76/19 76/22 78/25 79/1 80/6 93/19
**fabrication [2]** 55/5 61/16
**face [1]** 60/23

**Facebook [4]** 83/17 84/12 84/15 84/20
84/24
**faced [1]** 75/3
**fact [27]** 5/3 8/12 8/18 11/5 11/19 13/1
13/11 14/11 15/6 16/21 18/4 18/4 19/2
27/8 27/12 30/6 36/6 36/22 38/13
52/10 53/5 65/13 69/6 84/18 86/19
92/16 93/10
**factor [5]** 26/19 27/25 53/15 85/5 85/6
**factors [1]** 53/21
**facts [8]** 31/3 33/2 37/23 38/3 41/21
79/22 80/6 80/7
**factual [6]** 39/23 52/24 53/23 60/18
60/23 66/9
**fails [1]** 79/25
**fair [9]** 69/3 69/19 70/20 71/2 71/11
71/20 73/12 74/21 75/7
**fairness [2]** 44/8 74/3
**faith [10]** 13/22 14/15 15/11 24/11
28/25 29/5 29/6 29/12 34/5 34/18
**fall [5]** 6/16 9/11 18/21 18/24 52/23
**falls [4]** 7/9 7/12 7/18 14/6
**false [1]** 92/14
**far [7]** 39/7 56/8 61/11 70/17 73/22
83/22 85/9
**favor [2]** 81/7 82/16
**FBI [6]** 20/17 51/25 56/24 68/11 68/14
79/5
**FBI's [1]** 79/13
**FCC [1]** 53/19
**FD [1]** 79/4
**federal [6]** 2/2 4/3 13/20 15/19 90/1
90/23
**Feed [1]** 3/13
**feel [3]** 4/17 38/16 78/15
**fell [1]** 92/2
**felt [1]** 92/2
**few [6]** 25/21 53/5 60/5 65/17 66/3
85/15
**fewer [1]** 23/18
**fifty [1]** 63/15
**figure [4]** 81/6 82/19 82/19 94/9
**figures [1]** 87/23
**figuring [1]** 88/21
**file [2]** 54/7 54/11
**filed [6]** 6/12 41/5 59/25 90/20
**final [16]** 19/3 31/5 32/5 33/8 39/13
40/21 41/11 41/15 41/24 42/6 48/6
49/5 49/9 52/2 75/13 90/12
**find [1]** 91/15
**findings [5]** 52/3 52/25 53/23 60/19
66/9
**fine [1]** 16/25
**first [13]** 4/21 6/13 17/9 20/24 30/7
33/17 35/18 49/7 52/24 53/23 63/15
75/19 76/17
**Fitzgerald [1]** 95/1
**five [2]** 48/21 58/12
**Floor [1]** 1/22
**focus [5]** 64/18 64/21 65/10 65/19
65/21
**FOIA [22]** 3/24 21/1 21/21 24/7 28/21
29/3 29/18 29/19 30/10 30/12 30/18
35/17 37/7 41/5 43/17 70/4 71/12
71/14 75/24 82/19 91/12 94/10
**follow [1]** 72/3
**following [1]** 25/20
**footnotes [1]** 60/22

## F

**foreclosed** [2] 73/18 73/19
**forego** [1] 44/19
**foregoing** [1] 97/7
**foremost** [1] 75/19
**forensic** [2] 20/17 20/17
**form** [2] 15/16 61/10
**formal** [2] 41/11 41/20
**forthright** [1] 45/20
**Forty** [1] 58/12
**Forty-five** [1] 58/12
**forward** [3] 3/7 70/17 76/3
**found** [6] 27/7 44/13 65/21 69/16 74/12 80/16
**foundation** [2] 79/6 79/24
**four** [2] 85/20 88/15
**frankly** [3] 10/21 15/6 77/10
**frequently** [1] 83/4
**fresh** [1] 80/19
**Friedrich** [1] 74/11
**Friedrich's** [1] 69/14
**front** [3] 78/5 83/5 90/10
**fruits** [4] 64/19 65/10 65/11 68/21
**frustrations** [1] 70/11
**full** [4] 9/24 10/6 77/11 94/1
**fully** [2] 4/23 28/15
**fun** [1] 14/21
**functionally** [1] 51/16
**fundamental** [1] 45/23
**fundamentally** [3] 47/7 52/4 53/14
**further** [7] 23/7 23/7 25/10 44/7 74/16 88/20 97/7
**future** [5] 33/11 33/12 45/12 45/13 83/4

## G

**gag** [3] 71/3 73/22 73/23
**gaps** [1] 10/5
**gather** [1] 22/10
**gathered** [1] 22/9
**gathering** [11] 19/19 19/20 20/5 22/1 22/7 22/17 22/20 23/2 68/10 68/13 68/21
**gave** [1] 16/3
**general** [51] 21/11 26/23 27/5 27/15 27/22 28/2 28/6 28/6 28/10 29/6 29/24 30/9 30/17 30/20 32/1 34/3 34/10 34/12 34/19 34/21 35/13 35/15 36/6 36/23 37/1 37/25 38/14 39/5 39/6 39/9 40/17 40/20 40/25 41/1 47/21 48/2 48/3 49/22 49/22 50/3 50/5 50/7 50/14 62/17 64/15 70/9 75/23 90/5 90/9 95/9
**General's** [3] 26/5 33/20 33/23
**generality** [1] 72/16
**generalized** [4] 18/6 18/10 20/19 21/12
**generally** [6] 5/4 61/24 63/11 68/3 70/24 83/1
**generic** [1] 17/14
**generis** [2] 39/14 51/23
**George** [1] 81/8
**get** [9] 11/9 63/3 73/3 90/10 93/2 95/14 95/17 95/24 95/25
**gets** [3] 50/1 52/15 60/7
**getting** [1] 73/7
**gist** [1] 56/17

**give** [4] 46/10 50/18 57/7 69/24
**given** [11] 18/2 18/6 26/12 39/17 40/7 47/23 49/2 57/19 75/9 75/9 79/20 87/18 94/14
**gives** [1] 56/10
**giving** [2] 23/9 27/20
**glean** [1] 28/14
**glossary** [1] 85/3
**go** [11] 3/22 5/18 50/24 57/13 62/7 72/10 72/12 76/3 89/7 93/15 95/13
**goes** [8] 41/7 42/8 53/9 60/8 79/23 89/5 91/25 93/3
**going** [23] 23/1 24/3 29/1 32/1 37/17 40/7 45/10 46/24 47/19 50/25 61/12 62/9 62/10 76/11 78/11 81/13 86/8 87/11 92/2 93/6 93/8 93/17 95/13
**gone** [1] 72/14
**good** [24] 3/10 3/11 3/12 3/14 3/15 3/18 4/6 4/8 4/20 13/22 14/15 14/15 15/11 24/11 24/13 28/25 29/5 29/6 29/12 34/5 34/18 85/14 85/18 87/3
**got** [6] 28/12 54/8 83/23 94/15 95/24 95/24
**govern** [1] 91/13
**government** [76] 3/22 3/23 5/14 5/25 6/12 6/23 9/16 10/16 13/12 14/21 16/16 17/23 19/23 20/22 24/12 25/3 25/12 26/14 26/16 26/25 35/22 36/18 40/11 43/20 43/21 43/25 44/3 44/4 44/5 51/3 51/11 51/14 51/20 53/4 54/1 54/4 54/7 55/8 56/5 56/25 57/3 57/8 58/3 58/21 59/15 60/25 64/8 64/23 65/18 66/10 69/4 69/11 72/6 72/24 74/13 74/20 75/19 76/5 79/7 79/11 79/11 79/15 79/24 80/25 82/1 86/9 86/23 87/22 88/5 88/7 88/10 88/19 89/8 91/7 93/24
**government's** [10] 48/20 55/8 56/3 59/18 61/20 64/2 70/20 74/6 94/8 94/23
**governors** [1] 91/12
**Grand** [61] 4/21 4/23 5/10 5/17 6/1 6/14 7/5 7/6 7/14 7/15 7/16 7/17 7/22 7/23 7/25 8/19 9/8 9/10 9/19 10/12 10/19 10/20 10/22 10/23 10/25 11/1 12/3 12/3 12/4 12/8 12/16 12/18 12/20 12/22 12/23 12/25 13/2 13/3 13/8 13/20 14/11 14/12 14/17 14/18 15/5 15/7 15/19 15/21 16/3 17/7 17/17 17/20 17/25 18/5 18/10 18/13 18/14 18/15 24/21 78/5 92/25
**grant** [1] 51/9
**granularity** [2] 61/7 61/12
**great** [2] 89/18 90/9
**grips** [1] 53/4
**group** [3] 84/15 84/20 87/15
**groups** [3] 83/17 84/12 87/14
**guess** [13] 14/9 27/14 29/4 35/11 36/21 42/2 43/10 50/22 71/11 75/2 86/16 86/24 87/3
**Gun** [1] 84/7

## H

**habeas** [1] 55/20
**hacking** [2] 53/1 85/25
**hacks** [1] 84/8
**had** [26] 9/3 16/14 16/17 16/21 24/5

30/9 30/11 34/13 34/25 35/15 36/22 37/23 40/9 40/9 41/25 45/25 40/25 48/1 55/8 74/13 74/14 79/15 84/2 84/7 91/6 92/3 97/5
**hadn't** [1] 78/1
**hampering** [1] 55/3
**hand** [2] 57/9 57/9
**handled** [2] 79/5 90/24
**happen** [4] 17/4 61/14 61/15 61/16
**happened** [5] 4/23 5/9 42/15 60/24 91/16
**happens** [1] 48/12
**happy** [1] 25/17
**hard** [2] 67/7 74/20
**harm** [5] 5/2 5/10 7/2 7/3 7/8 41/9 45/4 45/8 45/15 54/13 55/2 57/2 57/11 59/5 59/22 60/8 61/20 81/16 81/17 86/5
**harmed** [1] 56/4
**harms** [4] 54/11 62/22 67/17 67/17
**Hart** [1] 56/2
**has** [78] 3/23 5/1 5/5 5/14 5/24 6/12 6/23 8/12 8/15 8/22 9/1 9/18 14/2 14/20 17/7 19/3 19/4 20/15 21/19 23/20 23/24 24/9 26/8 31/15 31/16 35/7 38/15 39/6 43/19 43/23 44/13 44/15 46/1 48/21 50/11 53/7 53/7 53/11 55/8 56/9 56/13 56/14 62/2 62/18 64/25 65/21 67/15 67/19 67/20 67/21 69/4 70/5 70/9 71/1 73/2 73/19 75/8 76/18 77/2 77/10 77/16 78/13 78/17 78/18 81/7 85/19 87/9 87/17 88/9 89/15 89/17 90/20 91/2 91/7 91/20 91/20 94/2 94/9
**hasn't** [10] 4/18 5/5 51/11 51/15 51/20 53/4 55/13 73/17 73/21 80/25
**have** [147]
**haven't** [9] 9/5 17/12 51/2 51/5 55/17 72/11 83/19 84/9 84/19
**having** [4] 15/4 40/11 69/5 87/24
**he** [44] 4/25 13/8 20/22 28/7 29/7 29/8 32/1 34/5 34/6 34/6 34/11 34/18 34/20 34/24 35/2 36/8 39/3 39/9 40/18 40/24 41/2 41/3 42/5 46/1 49/18 49/24 49/25 50/1 50/5 50/8 50/8 50/11 73/2 82/22 83/3 83/4 91/20 92/1 92/1 92/2 92/2 92/2 92/4 93/17
**he's** [7] 20/23 21/2 39/12 50/9 50/10 73/15 73/17
**head** [4] 36/19 36/20 78/3 93/3
**heading** [5] 22/20 22/21 22/23 64/15 65/4
**headings** [1] 56/16
**hear** [7] 4/2 4/10 16/19 24/22 25/13 26/25 47/10
**heard** [3] 29/15 81/15 87/9
**hearing** [1] 30/7
**heart** [1] 91/25
**heavily** [1] 83/2
**held** [4] 14/1 23/24 24/9 87/5
**helpful** [2] 57/12 63/10
**helps** [1] 91/12
**her** [15] 13/17 17/20 18/6 29/5 36/12 36/13 37/3 54/20 62/13 62/21 71/5 73/22 89/22 94/15 94/17
**here** [69] 4/15 4/16 4/17 5/1 8/3 8/7 8/17 9/13 9/23 13/25 14/5 16/13 17/1

**H**

here... **[56]** 17/10 19/13 20/4 20/18 21/2 22/16 25/24 28/16 28/20 29/1 29/20 30/6 31/19 36/12 37/17 37/24 40/12 42/12 43/9 44/22 45/5 46/3 52/13 54/14 55/16 56/4 56/19 60/18 61/8 61/21 64/8 67/5 73/23 73/25 74/17 74/21 75/8 75/18 75/19 76/25 79/3 80/7 80/19 82/1 85/9 85/12 87/7 87/17 88/9 88/19 89/14 90/5 91/3 91/25 94/4 95/16

here's **[1]** 91/5

hereby **[1]** 97/4

hereto **[1]** 97/10

high **[13]** 17/14 43/12 46/17 69/21 72/10 73/5 77/12 86/13 87/18 88/12 88/17 88/24 90/22

highest **[1]** 79/11

Hilary **[1]** 8/6

Hill **[1]** 90/9

Hillary **[3]** 80/5 89/21 94/14

him **[8]** 27/16 49/15 49/18 70/8 71/20 74/2 78/5 93/1

himself **[1]** 40/21

his **[24]** 4/25 30/20 30/20 31/19 33/21 34/3 34/9 39/10 39/17 40/17 40/22 45/25 47/24 49/1 70/11 71/18 72/22 74/2 74/3 75/9 78/20 84/24 89/2 93/3

history **[1]** 56/1

Hodge **[1]** 14/23

hold **[2]** 85/11 91/12

holds **[1]** 93/20

Honor **[64]** 3/2 3/9 3/12 3/15 4/6 4/20 5/13 6/22 7/1 8/14 13/15 15/14 16/12 18/9 19/10 19/24 20/24 23/24 24/20 25/15 28/2 30/5 33/16 35/6 35/19 36/8 37/3 38/11 42/1 42/8 44/12 45/22 46/17 47/10 47/18 50/25 54/5 56/13 56/19 56/23 57/6 57/12 61/7 62/3 62/18 63/10 66/22 68/7 69/2 70/16 72/25 73/20 75/5 75/13 77/14 79/1 80/16 81/6 83/15 85/13 87/20 91/5 94/12 94/19

Honor's **[1]** 80/4

HONORABLE **[1]** 1/14

hope **[1]** 87/23

how **[39]** 9/25 10/8 10/12 10/18 12/7 12/17 16/6 17/3 18/11 20/11 21/10 22/11 27/24 27/24 36/3 44/3 48/17 51/18 60/1 62/25 66/24 68/14 70/19 72/10 76/13 78/23 79/5 84/20 86/7 86/11 86/22 86/23 87/3 87/16 88/5 91/12 91/18 93/5 95/13

huge **[1]** 65/19

hundreds **[1]** 26/1

hunt **[6]** 78/18 91/21 92/13 92/17 92/20 93/13

hurt **[2]** 70/19 70/20

hypothetical **[2]** 45/23 47/8

**I**

I'd **[1]** 66/22

I'll **[14]** 4/2 4/18 9/14 25/13 25/19 26/25 51/22 52/10 59/6 63/23 79/3 85/21 95/17 95/22

I'm **[14]** 16/18 17/23 25/17 43/10 44/12 47/16 47/18 49/7 50/25 62/12 68/2

75/14 81/5 87/3

I've **[2]** 18/6 95/24

i.e **[1]** 36/21

idea **[2]** 10/4 44/24

identified **[3]** 54/20 83/17 94/20

identify **[7]** 3/7 47/14 61/1 62/13 66/17 82/13 84/16

identifying **[2]** 10/22 86/14

identities **[2]** 7/14 7/15

identity **[2]** 14/18 85/16

idle **[1]** 74/17

II **[1]** 74/25

IL **[1]** 1/23

illegal **[6]** 75/22 76/6 77/1 78/18 91/21 93/23

imagine **[1]** 46/17

imminent **[2]** 73/2 75/9

impact **[5]** 45/17 45/20 71/10 87/3 87/24

impaneled **[1]** 9/8

impeachment **[1]** 32/14

impinge **[1]** 87/11

implausible **[1]** 71/19

implemented **[1]** 22/11

implicate **[1]** 40/14

implicated **[1]** 40/12

importance **[1]** 95/11

important **[9]** 4/13 13/24 46/19 47/20 48/11 55/6 77/9 81/14 95/14

imposed **[2]** 73/16 91/10

impression **[1]** 33/19

improperly **[1]** 67/16

impropriety **[2]** 76/6 76/6

in-camera **[31]** 6/21 8/4 8/8 15/9 16/11 16/20 20/21 23/25 24/2 24/8 24/10 24/16 24/17 25/21 25/25 26/17 26/25 27/25 28/18 29/13 29/20 30/3 33/17 35/9 38/12 63/1 66/6 81/7 84/18 95/4 95/5

include **[2]** 65/4 76/7

included **[3]** 59/3 65/13 68/13

including **[3]** 17/8 59/20 92/12

inconsistent **[1]** 27/17 27/23

increased **[2]** 94/16 94/16

incur **[1]** 77/6

indeed **[3]** 44/15 56/1 79/16

independence **[1]** 95/8

independent **[10]** 12/25 26/10 39/10 66/11 66/20 71/12 75/17 79/2 80/8 90/6

indexes **[1]** 52/1

indicate **[3]** 3/21 13/10 61/24

indicated **[5]** 13/9 13/10 16/10 26/18 40/22

indicates **[1]** 29/10

indicating **[2]** 36/5 70/24

indication **[4]** 5/18 8/25 13/4 29/9

indictability **[2]** 48/18 48/23

indicted **[2]** 49/16 49/18

indicting **[2]** 32/3 49/15

indictment **[10]** 8/6 32/9 55/18 71/24 72/1 72/4 72/7 89/21 90/19 94/17

indictments **[1]** 80/5

indirectly **[1]** 20/13

individual **[12]** 10/10 10/11 38/4 43/14 43/15 69/18 84/16 84/20 87/13 89/7 89/9 89/10

individually **[3]** 3/22 4/2 47/3

individuals **[48]** 4/18 18/14 23/9 31/3 33/6 33/22 39/18 42/4 43/16 74/21 85/16 85/22 85/24 86/1 86/5 86/18 86/19 87/8 87/9 88/1 88/12 88/16 88/18 88/22 88/25 89/13 89/18 92/12

individuals' **[1]** 90/8

inferior **[4]** 39/1 39/2 39/13 46/7

information **[161]**

inherent **[2]** 14/2 19/4

initiate **[1]** 44/19

inner **[1]** 15/20

innocence **[1]** 90/16

inquiry **[2]** 8/20 15/8

inside **[1]** 78/3

inspection **[9]** 6/21 15/9 16/20 20/21 23/25 24/2 24/8 81/7 84/19

inspector **[1]** 21/11

instance **[3]** 64/1 80/17 92/7

instances **[6]** 5/8 50/5 69/16 81/18 85/1 85/2

Instead **[3]** 28/10 32/24 69/11

insufficient **[1]** 22/14

integrity **[4]** 9/9 9/13 9/16 26/8

intelligence **[3]** 19/12 19/20 21/19

intelligent **[1]** 21/7

intend **[1]** 41/10

intended **[1]** 40/8

intention **[2]** 50/13 89/5

interacted **[1]** 85/24

interactive **[1]** 83/24

interest **[71]** 7/7 14/3 16/13 26/3 26/10 26/20 40/14 44/25 45/1 77/12 77/13 78/13 79/2 79/17 79/19 79/21 80/2 80/12 80/17 80/18 80/24 81/3 81/24 82/1 82/2 82/9 82/9 82/13 82/14 82/16 82/18 83/10 83/13 83/19 84/2 84/3 84/4 84/10 84/13 84/21 85/9 85/10 86/1 86/6 86/13 86/20 87/17 87/18 87/19 88/2 88/4 88/8 88/9 88/11 88/12 88/13 88/17 88/18 88/20 88/24 89/1 89/14 89/15 89/16 90/1 90/8 91/7 92/8 93/22 94/10 94/16

interested **[1]** 91/15

interests **[5]** 19/5 35/25 40/10 53/13 79/19

interfere **[2]** 51/19 74/3

interference **[3]** 5/6 12/1 22/2

internal **[8]** 13/12 38/25 39/12 40/2 42/14 43/5 45/10 47/5

Internet **[2]** 58/4 59/17

interpret **[1]** 71/23

interpretation **[2]** 17/19 69/15

interpreted **[1]** 17/8

interpreting **[1]** 25/4

interview **[2]** 12/10 51/25

interviewed **[1]** 12/12

intimidation **[4]** 60/11 61/14 62/4 62/10

intruded **[1]** 90/7

intrusion **[1]** 94/16

intrusive **[1]** 89/22

invasion **[1]** 5/7

invested **[1]** 33/3

investigate **[2]** 23/3 47/24

investigated **[1]** 89/16

## I

**investigation [42]** 5/2 5/7 9/13 11/4
12/2 22/22 23/2 38/18 41/15 49/1 49/3
55/15 64/22 65/11 65/12 76/13 76/13
77/2 79/5 79/9 79/13 79/23 80/8 80/15
80/19 80/22 81/11 82/6 82/7 85/4 85/6
85/17 86/2 86/4 87/17 88/5 88/20
88/23 90/17 91/7 91/8 91/17

**investigations [15]** 21/11 21/24 22/1
52/9 53/17 53/19 53/20 54/21 55/2
55/10 55/11 55/13 58/22 59/2 68/12

**investigative [15]** 20/5 20/12 21/10
21/25 22/6 22/17 48/1 54/7 54/8 64/18
65/18 65/21 68/9 68/22 79/4

**investigatory [1]** 64/19

**involved [3]** 33/22 77/22 83/2

**involves [1]** 79/24

**involving [3]** 20/10 80/4 89/20

**irrelevant [1]** 7/4

**is [325]**

**isn't [7]** 9/16 31/22 40/11 45/16 51/10
61/8 93/16

**issue [20]** 6/3 12/20 16/8 17/1 24/3
26/17 27/9 34/23 37/18 38/24 42/19
47/6 51/24 53/3 53/18 60/17 71/2 71/3
77/9 84/21

**issued [5]** 31/7 48/10 73/21 74/9
74/15

**issues [8]** 3/20 4/10 16/15 17/22 39/16
39/23 39/23 83/5

**it [183]**

**it's [76]** 4/13 6/10 6/11 6/13 8/6 9/7
10/7 10/25 11/13 12/4 12/6 12/24
13/24 14/14 14/24 16/15 17/6 17/9
17/10 18/9 25/21 25/24 27/3 27/6 28/4
28/12 28/17 31/11 31/12 33/12 38/15
39/14 39/14 40/1 40/20 45/3 45/5 46/6
46/18 48/11 49/10 51/23 52/3 54/8
55/21 57/12 60/16 61/18 63/10 63/16
64/6 64/23 65/16 67/9 71/19 72/9
72/17 72/18 74/6 77/10 78/8 78/17
81/5 81/5 82/8 82/14 82/21 83/11
83/12 89/15 93/4 93/4 93/16 94/4
95/14 95/19

**item [1]** 75/13

**its [13]** 14/1 15/12 16/16 21/11 24/12
51/16 55/9 59/24 60/23 65/22 79/14
79/16 80/1

**itself [23]** 6/6 9/10 27/18 27/19 27/24
28/18 29/11 30/2 35/9 46/20 57/13
60/19 60/20 60/23 62/19 64/25 65/3
67/12 74/9 77/18 79/8 91/8 93/12

## J

**Jackson [5]** 69/9 71/1 72/5 73/4 74/13

**Jackson's [1]** 71/16

**jail [1]** 91/22

**Janet [1]** 90/9

**JASON [3]** 1/3 3/3 3/13

**Jay [1]** 1/17

**Jeff [1]** 81/8

**jeopardize [1]** 57/10

**jeopardy [1]** 87/2

**John [1]** 1/18

**Jones [4]** 2/5 97/2 97/13 97/14

**Jonesboro [1]** 83/21

**Jr [12]** 77/19 77/21 78/4 78/9 78/12

## J (continued)

81/5 81/6 82/3 92/19 92/25 93/7 93/11
94/1 94/13

**judge [16]** 1/14 1/15 56/24 56/24 69/9
69/14 70/5 71/1 71/16 72/5 73/4 73/5
74/11 74/13 74/15 75/25

**judgment [4]** 38/13 40/5 44/2 51/9

**Judicial [13]** 8/5 8/24 37/12 37/17
38/23 42/9 42/13 43/8 47/4 55/20 80/4
80/7 94/12

**Junior [4]** 10/14 11/4 11/8 83/2

**jurisdiction [1]** 47/24

**jury [64]** 4/21 4/23 5/10 5/17 6/1 6/14
7/5 7/6 7/14 7/15 7/16 7/17 7/22 7/23
7/25 8/19 9/8 9/10 9/19 10/12 10/19
10/20 10/23 10/23 10/25 12/3 12/3
12/4 12/8 12/16 12/18 12/20 12/22
12/23 12/25 13/2 13/3 13/8 13/20
14/11 14/12 14/17 14/19 15/5 15/7
15/19 15/21 16/3 17/7 17/17 17/20
17/25 18/5 18/11 18/13 18/15 18/15
24/21 59/21 71/6 73/13 73/13 78/5
92/25

**Jury's [1]** 11/1

**just [60]** 8/25 10/5 10/17 10/23 10/25
12/3 13/9 14/1 14/13 15/3 15/17 18/1
18/2 18/6 18/9 19/5 20/18 21/18 22/14
23/20 25/4 25/19 26/16 29/25 33/18
33/23 36/21 36/24 38/11 38/12 38/12
38/15 42/14 43/5 45/2 46/15 47/18
53/4 54/10 58/14 59/3 59/8 63/9 65/2
67/1 70/2 70/14 71/19 72/18 77/14
84/1 85/1 85/4 86/25 88/12 89/6 91/14
93/13 93/16 94/20

**just taking [1]** 54/10

**justice [10]** 1/5 1/10 2/2 3/4 3/6 3/16
31/1 43/23 44/9 94/24

**justified [1]** 76/5

**justify [1]** 29/12

## K

**key [1]** 87/23

**keying [1]** 61/25

**kind [26]** 7/7 12/5 14/25 19/12 20/14
21/2 48/5 50/7 54/10 54/12 55/10
61/12 67/19 67/19 67/21 70/17 72/8
74/12 74/17 76/5 76/11 76/24 82/25
91/24 92/3 93/22

**kinds [5]** 17/22 62/22 62/23 76/12
83/4

**knew [4]** 40/5 40/6 73/12 84/15

**know [49]** 4/14 4/18 9/14 10/3 10/11
10/18 11/17 17/23 24/11 25/10 25/15
30/13 36/3 36/16 36/18 40/5 43/12
43/13 43/13 43/20 44/6 44/10 44/25
49/19 50/4 55/12 58/4 58/23 59/1
60/22 63/21 63/21 68/3 68/6 70/25
71/22 80/14 80/23 84/20 84/20 84/24
86/8 86/10 88/1 91/19 92/22 94/4 94/4
94/11

**knowing [4]** 68/1 83/23 88/4 91/7

**known [2]** 5/16 8/11

**Kushner [3]** 11/8 81/5 82/3

## L

**labor [1]** 53/18

**laid [2]** 41/19 43/6

**language [4]** 17/14 64/3 65/3 65/25

## L (continued)

**large [3]** 10/3 10/7 10/17

**large/v03 [1]** 10/5 10/15 20/4

**last [3]** 9/21 24/10 83/15

**later [5]** 48/10 72/6 73/3 80/16 90/7

**law [28]** 1/17 1/17 1/18 1/21 14/22
19/18 20/2 23/16 25/11 31/2 33/2
37/23 38/3 41/21 54/6 54/12 61/8
61/17 65/2 65/16 75/20 75/20 79/18
85/14 85/18 90/1 90/15 92/23

**lays [1]** 39/5

**lead [4]** 55/2 55/3 55/4 62/9

**leading [5]** 44/13 44/18 44/18 44/22
45/7

**learn [3]** 4/23 5/9 9/18

**least [18]** 15/25 16/5 27/10 27/20
29/10 31/22 34/8 52/8 61/3 66/15 71/3
72/15 78/7 82/9 83/12 85/2 92/24
93/18

**leaves [2]** 7/6 82/2

**led [2]** 42/18 43/6

**ledger [1]** 86/6

**left [2]** 72/19 75/14

**legal [13]** 15/15 17/14 17/19 18/1 25/6
34/24 37/22 75/20 76/10 76/18 77/17
80/1 92/22

**legally [1]** 64/5

**legislative [1]** 56/1

**legitimate [1]** 57/10

**lengthy [1]** 90/19

**LEOPOLD [3]** 1/3 3/3 3/13

**less [1]** 77/11

**let [6]** 4/19 26/16 50/18 55/11 58/13
86/8

**letter [3]** 27/14 38/14 40/22

**letters [1]** 33/20

**level [5]** 17/14 56/7 61/7 69/22 72/15

**levels [1]** 79/11

**life [2]** 83/7 83/8

**light [4]** 76/22 79/4 80/10 86/23

**lightly [2]** 28/12 56/15

**like [14]** 5/3 7/8 24/23 39/15 40/2
44/17 45/12 47/13 53/18 69/2 74/13
83/3 83/21 88/21

**likelihood [6]** 69/13 71/18 71/21 72/9
72/21 73/9

**likely [1]** 79/12

**likewise [1]** 44/23

**limitation [2]** 49/14 73/16

**limitations [1]** 22/9

**limited [3]** 23/15 38/20 64/7

**line [4]** 37/4 37/5 49/6 63/12

**lingering [1]** 51/1

**link [2]** 54/13 54/14

**linkage [1]** 63/17

**linked [1]** 72/15

**links [1]** 52/19

**list [2]** 58/23 65/19

**listed [1]** 24/25

**lists [2]** 58/15 62/20

**litany [1]** 76/9

**literally [2]** 61/12 86/6

**litigation [4]** 42/21 42/25 60/15 60/17

**litigations [1]** 61/6

**little [2]** 50/13 67/10

**living [2]** 83/6 83/8

**local [7]** 43/10 43/18 69/15 74/9 74/10
78/8 87/22

**L**

**LOEVY [2]** 1/21 1/21
**logically [2]** 16/2 72/3
**long [2]** 38/9 42/11
**longer [2]** 7/21 33/9
**look [18]** 10/8 18/12 23/4 25/1 28/3 48/11 54/16 57/13 58/13 62/7 64/12 66/24 67/7 70/16 77/19 80/4 80/5 87/18
**looked [1]** 37/5
**looking [8]** 9/9 10/5 36/12 62/12 63/5 65/25 73/24 73/25
**looks [2]** 80/13 80/14
**lot [11]** 10/12 25/1 26/20 43/22 48/21 53/18 53/20 62/16 71/23 71/25 92/12
**low [2]** 88/18 88/20

**M**

**machine [3]** 2/11 97/4 97/9
**made [43]** 4/25 5/22 11/20 27/4 27/22 28/2 29/7 29/24 30/1 30/16 30/20 31/10 34/2 34/12 35/12 36/23 37/19 37/20 38/4 41/12 41/16 42/5 43/11 43/19 43/20 43/25 44/10 44/11 44/16 46/6 46/19 47/1 48/9 59/23 72/22 81/22 90/18 90/20 92/1 92/4 92/12 92/15 95/4
**maintain [1]** 17/24
**majority [1]** 54/18
**make [35]** 4/22 5/13 5/19 6/23 8/23 9/21 16/22 24/24 25/19 33/10 39/4 39/11 39/25 40/24 41/1 41/2 41/3 42/4 46/1 46/13 48/16 48/19 49/9 59/7 64/3 66/19 67/25 69/21 71/5 71/9 71/12 71/17 72/23 76/19 76/22
**makes [5]** 20/2 33/11 44/5 59/24 70/2
**making [9]** 35/23 42/18 42/22 43/2 43/6 45/15 73/8 89/4 95/2
**Manafort [3]** 6/12 11/9 82/3
**Management [1]** 74/11
**manner [2]** 79/17 91/11
**many [12]** 12/6 33/1 52/13 52/22 65/15 65/15 70/9 80/7 80/15 80/16 85/1 90/14
**map [1]** 58/17
**mapping [3]** 58/1 58/18 59/12
**maps [1]** 32/20
**Marc [1]** 1/17
**March [1]** 40/22
**March 27th [1]** 40/22
**marked [4]** 21/21 28/21 40/20 68/8
**marking [1]** 29/2
**markings [2]** 30/10 30/12
**massacre [1]** 83/21
**material [51]** 4/21 7/9 7/12 7/14 7/17 8/2 13/5 14/20 17/2 17/9 17/11 17/12 18/10 18/11 18/13 18/19 19/1 19/5 20/3 20/24 21/17 31/5 35/10 38/19 48/21 54/8 59/16 60/7 63/4 63/11 63/16 63/21 63/24 64/22 65/14 66/7 66/8 67/14 67/15 68/8 69/13 69/17 70/1 71/16 71/18 72/9 72/21 73/9 74/4 76/4 79/4
**materially [1]** 72/4
**materials [3]** 20/10 20/12 64/9
**Matt [2]** 3/12 4/6
**matter [10]** 10/20 17/6 17/19 24/10

**matters [2]** 18/3 15/24
**Matthew [1]** 1/21
**may [27]** 8/2 8/9 13/12 16/25 24/14 26/20 34/7 34/18 38/21 43/14 46/25 49/6 52/9 52/9 60/9 60/15 60/21 61/22 64/23 73/11 86/17 87/14 88/7 88/8 93/15 95/18 95/20
**maybe [9]** 45/13 45/14 52/1 59/15 69/18 81/5 84/18 87/23 92/3
**McKeever [5]** 14/2 17/1 17/2 17/4 19/2
**me [28]** 3/16 12/6 15/9 19/10 22/17 24/16 26/16 26/23 27/3 27/6 29/11 29/13 35/18 44/7 49/10 50/18 56/10 57/7 58/13 62/25 67/8 67/10 67/10 67/25 71/11 85/20 86/20 86/25
**mean [40]** 10/7 11/17 11/19 13/8 15/3 15/23 18/6 24/3 24/5 27/2 29/22 36/2 36/20 43/20 44/1 45/17 57/5 61/8 66/15 67/1 67/2 67/6 67/8 70/23 70/23 70/25 71/8 74/24 75/6 83/2 83/10 86/12 86/13 86/17 87/21 89/6 89/8 89/10 93/4 93/4
**meaningful [2]** 59/5 85/6
**means [2]** 23/9 31/14
**meant [3]** 21/9 61/18 94/22
**measure [1]** 23/3
**measures [2]** 22/24 91/10
**mechanism [1]** 50/3
**mechanisms [1]** 32/11
**media [10]** 6/13 22/24 23/4 27/20 28/12 34/9 53/1 59/14 73/6 85/24
**meet [4]** 72/10 76/16 77/13 78/24
**meeting [2]** 10/15 11/7 77/20
**member [1]** 87/15
**members [1]** 87/14
**memoranda [2]** 48/5 48/7
**mens [2]** 78/2 93/1
**mentioned [10]** 31/7 38/15 46/17 51/2 53/8 57/25 63/19 63/23 65/18 88/16
**mentions [2]** 58/21 85/1
**mere [1]** 85/1
**merely [2]** 86/3 88/16
**merges [1]** 19/11
**messages [1]** 83/18
**met [2]** 8/3 40/22
**methodologies [1]** 68/16
**methods [8]** 19/12 21/8 21/19 21/25 23/21 61/6 64/19 65/4
**might [17]** 9/2 10/12 13/21 22/10 25/25 46/13 48/4 48/8 48/14 65/24 67/23 76/7 76/8 78/20 86/16 89/7 93/15
**mimmick [1]** 35/14
**minimis [2]** 84/1 84/3
**minor [1]** 94/20
**minute [1]** 50/19
**mirror [1]** 30/17
**misconduct [1]** 76/1
**misses [1]** 4/12
**missing [1]** 87/3
**moment [2]** 62/8 66/23
**Monday [1]** 1/10
**more [23]** 12/10 16/9 16/20 18/8 23/15 23/17 23/17 23/18 23/18 24/20 25/6

**56/19 56/20 62/17 66/11 66/13 66/20 70/22 76/17 77/15 80/14 83/1
**morning [9]** 3/2 3/10 3/11 3/12 3/14 3/15 3/18 4/6 4/8
**most [3]** 3/19 12/2 90/18
**Motion [2]** 38/13 40/6
**motivated [1]** 78/19
**move [6]** 4/4 19/8 26/16 30/23 63/8 77/15
**moves [1]** 52/14
**moving [1]** 37/9
**Mr [7]** 11/8 35/4 70/3 74/1 77/4 82/22 83/2
**Mr. [23]** 11/9 32/5 34/1 34/4 34/23 49/8 69/7 69/19 69/23 69/24 70/12 70/14 70/20 71/25 72/1 72/2 72/18 73/1 73/10 73/11 77/1 83/2 89/5
**Mr. Manafort [1]** 11/9
**Mr. Mueller [6]** 32/5 34/1 34/4 34/23 49/8 77/1
**Mr. Stone [13]** 69/7 69/19 69/23 69/24 70/12 70/14 71/25 72/1 72/2 72/18 73/1 73/11 89/5
**Mr. Stone's [2]** 70/20 73/10
**Mr. Trump [1]** 83/2
**Ms [23]** 7/13 7/21 8/7 8/15 8/22 13/16 15/17 17/13 17/18 18/1 21/22 22/4 23/7 28/15 28/16 28/25 30/17 35/14 36/10 54/19 62/2 68/23 69/6
**Ms. [9]** 13/22 14/7 14/15 18/12 21/20 30/1 36/22 37/2 80/11
**Ms. Brinkmann [3]** 30/1 36/22 37/2
**Ms. Brinkmann's [5]** 13/22 14/7 14/15 18/12 21/20
**Ms. Clinton's [1]** 80/11
**much [5]** 4/22 28/13 79/12 80/10 80/23
**Mueller [13]** 27/4 27/5 32/5 34/1 34/4 34/23 47/23 48/2 49/8 57/24 74/25 77/1 77/4
**Mueller's [1]** 49/14
**multiple [2]** 75/17 78/14
**must [9]** 15/1 19/1 20/3 23/10 31/15 69/11 71/17 76/2 76/3
**my [11]** 4/13 25/20 27/25 35/18 45/24 51/7 66/11 66/22 95/22 97/9 97/10
**myself [1]** 66/21

**N**

**N.W [1]** 2/7
**name [7]** 63/13 77/11 78/8 86/7 87/3 87/10 97/11
**names [8]** 11/12 14/18 15/24 61/3 62/16 68/5 85/2 86/14
**narrative [5]** 23/5 54/22 61/10 74/1 92/14
**narrow [2]** 52/16 69/16
**narrowed [2]** 60/7 60/7
**national [8]** 4/5 19/8 20/25 21/4 21/6 21/24 22/25 23/11
**nature [9]** 24/1 31/17 33/13 48/6 52/11 52/11 54/14 60/17 73/6
**near [1]** 21/1
**necessarily [4]** 32/16 46/24 52/15 87/2
**necessary [9]** 5/22 29/20 30/3 58/8 59/5 73/7 73/11 78/2 94/3

# N

**need [19]** 4/18 8/7 17/24 25/10 38/18 50/24 52/18 63/21 63/22 66/5 66/11 71/11 72/10 72/13 75/11 76/25 77/3 77/13 80/14
**needed [3]** 16/11 35/25 72/14
**needs [3]** 23/19 60/1 72/20
**negligence [1]** 76/7
**neutral [1]** 26/10
**never [4]** 12/15 64/10 65/20 89/16
**nevertheless [1]** 79/16
**new [2]** 11/21 42/22
**next [2]** 17/4 25/9
**NLRB [2]** 53/18 60/10
**no [53]** 1/4 1/9 4/12 5/1 5/5 5/10 5/18 7/6 7/11 7/21 8/3 8/7 8/17 8/21 8/25 10/3 10/13 12/16 13/3 14/2 16/6 19/4 23/7 27/8 27/10 28/25 30/13 30/19 33/9 36/8 38/8 46/3 49/14 50/5 50/9 51/9 52/20 56/20 58/1 58/20 61/11 63/17 63/20 65/20 67/4 71/15 73/23 78/4 81/22 83/10 85/13 86/6 87/9
**non [4]** 33/13 48/18 48/23 59/2
**non-charged [1]** 59/2
**non-deliberative [1]** 33/13
**non-indictability [1]** 48/18 48/23
**none [2]** 77/23 87/19
**nonhuman [1]** 84/12
**nonpublic [1]** 82/19
**Nora [2]** 8/5 94/13
**Normally [1]** 51/24
**not [204]**
**note [6]** 51/22 59/6 63/10 63/23 76/19 80/3
**noted [2]** 82/22 95/6
**notes [4]** 25/20 47/5 52/1 97/9
**nothing [7]** 24/20 48/21 56/19 63/7 87/19 91/18 95/10
**notice [2]** 28/8 90/24
**noting [1]** 38/16
**notwithstanding [3]** 20/2 23/24 69/20
**nova [2]** 56/11 59/8
**November [3]** 59/21 73/3 75/10
**novo [1]** 58/7
**now [14]** 7/20 9/3 18/4 22/12 24/4 26/17 35/6 36/3 73/5 74/1 74/8 81/20 89/12 93/20
**Number [2]** 3/4 12/9
**numerous [1]** 55/18
**NW [2]** 1/19 2/3

# O

**obstruction [2]** 27/12 35/1
**obtained [1]** 90/17
**obviate [1]** 71/11
**obvious [1]** 89/18
**obviously [16]** 11/17 12/15 16/13 17/12 17/24 24/9 24/11 26/19 32/13 43/22 71/8 72/7 72/11 77/9 92/11 92/22
**occasions [1]** 48/2
**occurred [7]** 11/20 27/16 75/22 76/1 76/7 76/8 84/25
**occurring [3]** 13/19 17/7 17/20
**October [1]** 9/8
**of granularity [1]** 61/7
**off [4]** 26/15 67/6 85/5 86/17

**offhand [1]** 65/18
**office [38]** 11/23 12/2 12/24 28/12 29/1 29/14 30/7 31/6 31/9 31/19 31/19 32/10 33/9 33/9 33/11 34/13 36/4 36/9 36/11 36/14 37/4 40/12 43/11 43/18 44/10 46/4 46/13 52/3 52/25 66/9 68/12 68/23 88/21 89/14 92/1 93/6
**officer [3]** 39/2 39/13 46/7
**officers [1]** 39/1
**offices [1]** 11/19 41/15 43/3
**official [13]** 2/6 5/25 6/3 6/5 6/10 31/9 31/18 40/4 46/5 82/23 97/2 97/8 97/14
**officials [3]** 40/11 42/17 82/25
**often [1]** 90/22
**oh [1]** 18/10
**OIC [1]** 30/11
**OIP [1]** 68/8
**okay [23]** 4/19 16/1 19/6 19/25 25/8 25/19 30/22 33/15 37/8 38/9 41/24 47/9 50/22 50/24 57/20 63/7 66/10 69/1 84/19 88/14 91/4 94/18 95/10
**once [3]** 14/24 43/17 43/18
**one [35]** 11/13 23/11 25/23 28/25 29/18 31/2 32/13 32/24 32/25 33/1 36/17 37/18 39/22 39/22 39/24 41/21 42/23 45/24 48/12 48/20 51/16 57/9 63/9 63/12 66/17 74/24 77/14 77/15 85/5 85/20 85/21 87/9 92/20 94/19 96/1
**ongoing [9]** 33/22 35/22 53/10 54/18 54/20 55/1 57/2 73/1 79/10
**ongoingly [1]** 83/8
**only [21]** 7/8 13/18 14/16 15/17 17/13 20/3 21/16 22/4 23/23 34/24 37/10 40/6 51/10 59/12 64/13 69/15 70/6 74/8 89/4 90/18 95/5
**open [2]** 43/21 72/5
**opening [2]** 9/7 24/25
**operation [3]** 15/18 33/10 85/25
**operations [3]** 53/2 64/20 68/22
**operative [3]** 31/7 31/18 32/9
**opinion [1]** 89/25
**opinions [1]** 92/23
**opponent [2]** 40/16 45/24 59/7
**opportunities [2]** 9/4 16/14 16/21
**opportunity [2]** 16/17 27/21
**opposing [2]** 47/3 57/25
**opposite [1]** 77/3
**opted [1]** 93/11
**order [27]** 3/25 32/14 32/15 42/17 42/20 64/24 66/11 69/10 69/14 71/3 71/3 71/13 71/13 71/16 73/4 73/8 73/22 73/23 74/5 74/8 74/9 74/12 74/15 75/9 78/10 86/18 89/3
**ordered [2]** 95/5 95/5
**orders [1]** 74/19
**originate [1]** 10/11
**origins [2]** 76/12 91/17
**other [53]** 4/12 5/5 5/9 9/18 9/22 9/22 11/18 16/23 18/16 20/20 24/6 24/7 24/17 24/22 25/24 31/3 32/10 33/6 33/11 33/22 33/25 39/16 39/18 41/14 42/3 43/16 47/5 48/12 48/14 52/1 52/9 54/20 57/9 59/3 63/23 68/12 69/1 76/11 77/15 77/21 80/25 81/21 82/25 83/13 83/16 84/9 86/5 88/19 92/1 93/15 93/17 95/24 96/1

**others [2]** 35/21 35/25
**otherwise [6]** 6/19 10/21 46/21 52/20 73/11 83/6
**our [19]** 9/7 12/13 17/6 17/6 17/10 19/13 20/1 21/13 24/25 30/7 38/13 40/5 44/8 47/19 79/7 79/24 88/5 90/15 94/20
**out [16]** 7/1 17/4 33/20 39/6 41/19 43/6 46/9 52/22 69/21 72/19 78/16 79/10 79/18 81/6 88/21 89/5
**outset [1]** 51/22
**outside [1]** 39/7
**outweigh [2]** 88/2 88/25
**outweighed [1]** 88/13
**outweighs [3]** 79/19 85/9 87/19
**over [20]** 14/21 14/21 26/12 31/13 31/13 52/16 54/10 60/6 69/9 69/25 70/5 70/15 70/21 78/9 80/21 80/21 89/17 89/17 91/2 91/2
**overall [1]** 45/15
**overasserted [1]** 24/24
**overcome [4]** 77/13 80/18 82/12 93/21
**overlap [2]** 64/1 65/3
**overlapping [1]** 65/2
**overrule [2]** 50/4 50/8
**overruled [1]** 49/23
**overwhelming [1]** 95/16
**overwithholding [1]** 6/24
**owed [1]** 23/10
**own [2]** 9/12 39/10

# P

**p.m [1]** 96/4
**page [17]** 9/7 12/9 57/13 57/15 57/16 58/4 58/11 62/13 63/12 63/14 63/14 64/12 64/13 67/7 74/24 81/9 94/21 97/7
**pages [11]** 26/1 52/24 53/23 63/14 65/15 66/17 66/18 67/1 67/3 97/7
**painting [1]** 18/11
**Panther [2]** 37/13 42/23
**Papadopoulos [1]** 81/9
**paper [2]** 37/19 37/20
**papers [1]** 43/5
**paragraph [4]** 8/25 58/11 58/14 65/25
**paragraphs [10]** 56/16 57/19 57/21 58/10 64/13 64/14 65/9 67/8 67/11 67/13
**part [5]** 9/13 10/7 36/9 79/10 95/20
**partial [1]** 71/3
**particular [12]** 12/7 13/21 16/5 16/7 19/7 24/19 39/21 57/18 61/23 61/23 62/1 68/15 95/19
**particularly [3]** 25/22 53/23 81/14
**parties [4]** 3/7 71/10 73/8 87/8
**parts [5]** 10/8 10/9 52/21 61/13 88/19
**party [2]** 37/13 42/23
**passage [7]** 12/7 12/17 13/4 16/5 25/2 61/23 62/1
**passages [5]** 10/11 12/5 17/15 25/1 69/18
**past [2]** 46/20 83/3
**pasted [1]** 24/25
**pattern [1]** 87/25
**peak [1]** 89/15
**peeled [1]** 42/21
**pending [1]** 12/1 52/10 55/1 55/24

**P**

pending... [7]  56/9 57/11 57/18 58/21 58/24 59/2 61/6
people [30]  6/1 6/14 11/13 12/6 44/8 77/4 77/21 77/23 78/3 80/23 81/18 81/21 82/4 82/5 82/25 83/20 83/22 83/25 84/16 84/21 85/2 85/3 85/5 85/5 91/19 91/21 91/22 92/23 93/13 93/17
people's [2]  11/11 81/3
percent [2]  28/13 63/5
perfect [1]  66/5
performance [1]  9/10
perhaps [1]  77/5
period [1]  32/3
person [7]  6/13 35/23 48/4 76/4 83/6 86/17 87/7
person's [1]  81/8
personal [2]  47/5 82/11
pertaining [1]  72/25
pertains [3]  55/1 56/18 56/19
phase [1]  59/21
photographs [1]  62/12
phrase [1]  83/24
pick [1]  71/6
picking [1]  81/12
piece [1]  70/12
pieced [1]  75/6
pieces [2]  62/20 70/21
Pittsburgh [1]  95/17
place [7]  17/9 27/19 32/2 73/4 74/12 74/19 75/9
places [1]  15/23
plain [1]  54/15
plainly [2]  35/8 55/2
plaintiff [4]  1/4 1/8 1/17 89/4
plaintiff's [3]  13/25 21/15 60/25
plaintiffs [8]  3/20 4/2 4/9 7/1 7/20 8/1 13/15 55/17
plausibly [1]  17/16
play [2]  23/14 70/24
playing [1]  46/9
plays [1]  17/3
please [2]  3/8 47/15
plenty [1]  67/3
point [29]  4/21 8/21 9/2 9/15 9/17 9/21 10/23 12/25 13/6 16/10 16/18 16/24 20/9 24/20 32/7 35/18 36/17 38/12 38/12 50/2 50/23 52/22 54/12 63/9 78/16 80/3 94/19 95/1 95/3
points [3]  33/16 47/18 48/19
policy [14]  28/22 29/1 29/15 30/8 31/24 32/2 36/11 36/15 37/4 39/8 49/16 49/19 49/23 79/18
political [3]  87/23 91/20 92/20
politically [1]  78/18
portion [2]  66/16 66/18
portions [4]  54/22 57/24 66/25 67/18
posed [2]  70/8 73/9
position [14]  8/12 8/16 26/21 34/11 34/14 35/11 49/7 71/9 87/24 94/8 94/10 94/14 95/19 95/21
positions [2]  19/7 27/17
positon [1]  56/2
possible [4]  95/12 95/15 95/18 95/22
possibly [2]  17/16 80/23
post [10]  31/12 31/12 33/12 37/13 42/10 46/22 46/23 48/10 49/11 55/18

post-decisional [9]  31/12 31/12 33/12 37/13 42/10 46/22 46/23 48/10 49/11
post-indictment [1]  55/18
posture [1]  60/6
potential [5]  46/11 46/12 48/4 48/13 57/11
potentially [5]  64/22 66/14 74/22 76/23 79/24
practices [2]  21/9 90/15
pre [15]  31/11 31/14 31/20 37/11 37/16 38/2 39/15 41/8 41/25 42/12 45/3 45/6 46/21 48/7 49/12
pre-decisional [15]  31/11 31/14 31/20 37/11 37/16 38/2 39/15 41/8 41/25 42/12 45/3 45/6 46/21 48/7 49/12
precedent [1]  69/20
predate [1]  31/15
predates [1]  76/17
predicate [1]  24/16
predicated [1]  92/14
preFabish [1]  76/21
preference [1]  66/21
prejudice [7]  69/13 71/18 72/9 72/21 73/10 74/3 74/5
prejudicial [2]  69/17 72/20
prepared [2]  42/20 75/14
preparing [1]  29/2
present [1]  55/9
presented [1]  13/11
president [39]  12/10 12/11 12/13 12/15 12/21 13/7 27/11 31/23 31/24 32/4 32/8 32/10 33/6 35/2 39/19 42/3 48/18 48/22 48/23 48/25 49/2 49/4 49/7 49/13 49/15 49/16 49/19 50/11 70/7 70/10 76/9 77/2 77/7 77/16 78/17 81/9 91/19 92/13 93/16
president's [3]  32/18 32/23 77/6
presidential [1]  22/3
presiding [2]  69/9 70/5
press [2]  34/6 34/17
pressure [1]  92/3
presume [1]  90/16
presumption [1]  15/11
pretrial [2]  55/18 73/14
pretty [5]  11/12 67/7 72/10 80/9 81/5
prevail [1]  75/18
prevent [1]  57/3
prevented [1]  49/15
previously [1]  26/18
price [1]  90/21
primarily [3]  9/7 9/18 20/9
primary [3]  5/8 5/24 77/25
prime [1]  84/17
principle [1]  34/24
prior [3]  17/5 39/1 60/14
privacy [49]  1/7 1/18 3/5 3/10 5/7 11/10 17/24 75/14 75/18 77/12 79/19 80/13 80/18 81/3 81/8 81/13 82/2 82/8 82/9 82/11 82/16 82/18 83/10 83/19 84/1 84/4 84/13 84/21 85/9 85/21 86/1 87/12 87/18 88/3 88/11 88/17 88/24 89/15 89/18 89/23 90/8 90/11 90/16 91/1 92/6 93/21 94/10 94/16 94/17
private [2]  83/6 87/8
privilege [7]  37/10 37/15 41/7 42/11 44/16 44/20 44/24
probably [2]  10/21 78/8

problem [5]  56/8 59/11 63/18 81/19 86/22
problematic [1]  64/6
problems [1]  79/25
procedure [5]  4/4 64/24 65/11 65/12 65/22
procedures [16]  20/11 20/13 20/16 21/9 21/23 22/15 64/4 64/11 64/16 64/17 64/20 65/1 65/5 65/10 66/2 66/14
proceed [3]  11/23 44/3 69/2
proceedings [8]  2/11 7/23 7/24 15/21 60/10 96/3 97/5 97/8
process [24]  26/8 32/15 36/10 37/10 37/15 40/10 41/7 41/9 42/18 42/21 43/6 44/16 44/17 44/18 44/22 44/24 45/15 46/10 46/21 47/25 52/14 53/9 53/17 60/17
processes [4]  12/23 42/22 43/2 45/11
produced [6]  2/12 6/5 8/12 27/16 63/4 90/6
profile [3]  43/12 46/18 73/6
Programs [1]  2/2
progresses [1]  52/12
prohibited [1]  69/12
prohibiting [2]  73/8 74/16
prominent [2]  82/23 83/1
prominently [1]  70/10
promulgate [1]  90/2
properly [7]  7/9 56/12 65/15 68/24 80/16 80/22
proposal [2]  13/7 46/8
propose [1]  3/24
proposes [1]  45/24
proposition [1]  30/16
propriety [1]  28/15
prosecute [9]  39/18 41/17 41/17 43/11 43/18 44/5 44/10 47/24 90/21
prosecuted [5]  42/5 43/16 45/19 53/7 53/25
prosecution [16]  11/22 13/1 39/4 39/11 39/20 44/19 49/10 52/13 53/8 53/10 59/16 60/3 60/4 69/24 79/6 90/19
prosecutions [8]  54/19 54/19 55/1 56/9 57/19 58/2 60/2 63/20
prosecutor [3]  13/1 45/9 95/1
prosecutor's [2]  13/13 44/9
prosecutorial [2]  43/24 79/14
prosecutors [3]  45/17 68/10 68/15
prosecutors' [2]  11/19 41/14
prospective [1]  54/2
protect [5]  21/7 21/9 56/21 61/18 75/7
protected [12]  15/1 15/21 19/1 21/8 21/23 36/1 37/14 42/10 42/14 44/23 48/8 89/3
protecting [1]  40/10
protectors [1]  94/3
protects [3]  7/5 37/11 44/17
prove [6]  6/8 17/10 75/22 76/25 77/3 82/15
provide [11]  9/4 13/7 16/16 20/14 50/3 57/1 58/7 58/8 58/19 66/13 93/23
provided [17]  3/23 6/19 15/25 17/25 18/5 20/15 28/8 28/22 29/18 34/25 38/20 56/10 56/21 66/13 66/16 68/1 71/13

**P**

**provides [2]** 23/17 70/4
**providing [3]** 18/1 56/7 61/5
**proving [1]** 17/11
**provisions [1]** 70/17
**public [91]** 5/20 6/15 6/22 7/7 8/2 8/13 9/9 9/13 9/15 14/3 16/13 19/5 26/3 26/19 27/20 28/7 28/11 32/17 35/19 38/17 38/19 40/7 40/14 40/23 41/2 41/3 43/12 43/15 43/17 43/19 43/23 44/6 44/10 44/15 44/25 45/1 53/11 53/12 71/24 71/25 75/4 75/25 76/23 77/13 78/13 78/14 78/17 78/20 79/2 79/9 79/17 79/21 80/2 80/12 80/17 81/24 82/1 82/5 82/6 82/13 82/13 82/16 82/18 82/23 83/8 83/13 84/2 84/3 84/10 85/8 86/6 86/8 86/20 87/17 87/19 88/2 88/4 88/8 88/9 88/11 88/13 88/18 88/20 89/1 89/14 89/25 90/18 91/6 92/8 94/4 94/9
**public's [3]** 9/24 26/9 94/3
**publicity [2]** 73/14 84/24
**publicly [6]** 5/16 6/8 6/20 8/11 70/9 91/9
**Puerto [2]** 14/22 44/21
**pulled [1]** 79/16
**punches [1]** 79/16
**purported [1]** 3/25
**purportedly [2]** 29/8 35/16
**purpose [4]** 9/22 9/24 55/14 75/24
**purposes [3]** 14/4 19/5 76/23
**pursuant [6]** 15/21 25/12 29/18 31/24 49/8 73/1
**put [4]** 15/16 66/14 78/5 87/2
**puts [1]** 87/6

**Q**

**qualifies [1]** 55/24
**qualify [1]** 65/23
**qualifying [2]** 7/10 7/11
**query [1]** 26/16
**question [14]** 7/8 14/15 16/4 25/3 26/9 34/5 34/18 41/6 44/8 76/12 78/7 81/21 93/8 93/9
**questionable [1]** 49/10
**questioning [3]** 28/25 29/5 29/5
**questions [11]** 12/14 32/12 43/24 70/7 77/18 78/6 80/20 91/16 92/24 93/19 95/7
**quick [5]** 25/20 47/18 58/13 63/9 94/19
**quickly [7]** 27/16 38/11 95/12 95/14 95/18 95/22 95/25
**quintessential [5]** 7/14 14/19 18/19 18/25 31/12
**quite [4]** 20/6 24/24 45/14 72/7
**quote [4]** 9/8 20/4 20/6 44/20
**quoted [4]** 47/4 58/5 72/5 92/5

**R**

**raise [1]** 47/13
**raised [5]** 16/14 24/4 80/20 91/17 92/24
**raises [2]** 77/18 78/7
**ranging [1]** 79/9
**rather [1]** 89/25
**rational [2]** 54/13 54/14

**Ray [1]** 20/19
**re [3]** 3/3 9/8 83/25
**re-tweeted [1]** 83/25
**rea [2]** 78/2 93/1
**reach [2]** 16/10 23/5
**reached [3]** 10/19 31/18 34/13
**read [11]** 10/2 11/12 21/20 22/18 25/2 28/20 56/14 62/19 62/21 79/3 82/24
**reading [3]** 16/3 16/5 38/15
**reads [2]** 79/22 92/5
**real [3]** 44/2 58/13 63/18
**really [34]** 6/2 10/18 10/19 12/2 12/5 12/16 17/1 17/5 18/1 19/11 20/6 20/18 24/20 24/23 25/2 25/6 29/22 32/5 39/14 39/14 40/2 40/14 46/15 47/6 48/24 51/9 53/4 54/11 65/2 67/8 72/12 77/12 81/21 81/25
**reason [12]** 15/14 24/8 24/13 24/17 26/24 30/2 32/20 63/25 64/6 77/25 81/14 90/4
**reasonable [2]** 39/8 76/4
**reasonably [1]** 61/20
**reasons [11]** 16/19 20/23 25/21 46/5 46/19 46/24 46/25 48/13 65/19 75/18 85/8
**recall [2]** 62/8 73/22
**receive [3]** 71/2 71/10 74/21
**received [2]** 83/18 86/21
**receives [1]** 86/11
**recent [1]** 56/24
**recently [5]** 14/1 65/17 74/11 84/25 95/3
**recess [1]** 50/20
**recitation [1]** 60/20
**recognize [1]** 55/19
**recognized [21]** 8/5 14/20 18/25 21/1 21/5 37/12 55/23 56/25 73/5 79/17 85/15 85/19 89/17 89/22 90/1 90/7 90/11 90/24 91/2 91/3 94/14
**recommendations [1]** 42/25
**recommended [1]** 46/9
**reconcile [2]** 27/3 27/6
**record [13]** 3/8 6/4 9/11 15/10 30/15 47/14 51/8 53/22 58/19 58/20 59/23 60/1 60/17
**recorded [1]** 2/11
**records [5]** 43/4 52/1 79/8 79/12 94/25
**recount [2]** 37/15 42/11
**recounts [2]** 38/2 45/6
**redact [2]** 30/21 37/1
**redacted [35]** 10/2 11/11 14/10 20/4 23/2 28/12 29/17 31/2 35/10 35/13 35/19 38/21 54/17 56/15 56/17 57/24 63/3 63/4 63/6 63/12 63/14 66/7 66/18 69/4 70/3 71/17 71/22 72/1 73/1 75/7 78/8 81/4 81/7 85/3 91/24
**redacting [1]** 75/3
**redaction [9]** 12/12 13/16 13/21 14/14 28/24 36/10 70/15 75/1 78/9
**redactions [30]** 5/19 18/4 21/5 28/16 30/16 32/22 33/1 33/19 33/24 33/24 35/24 36/7 36/14 37/5 52/19 52/21 52/22 56/18 58/18 58/19 62/25 63/2 67/1 67/2 67/4 67/5 67/22 72/13 72/15 82/4
**refer [3]** 94/21 94/21 94/22

**reference [26]** 3/21 3/24 4/14 8/10 15/20 6/11 24/22 25/13 26/20 27/1 27/5 27/11 28/23 29/6 29/7 34/22 35/1 35/2 36/6 43/13 45/21 57/9 66/1 67/23 67/24
**referenced [3]** 21/16 67/11 68/2
**references [3]** 60/21 66/3 66/4
**referencing [4]** 39/19 58/11 67/9 71/19
**referral [1]** 11/20
**referred [5]** 11/18 41/14 58/23 88/19 88/23
**referring [2]** 67/16 85/13
**refers [1]** 69/6
**reflect [2]** 37/15 42/11
**regard [8]** 8/4 13/9 15/13 28/16 45/16 46/1 89/3 89/12
**regarding [8]** 11/4 13/6 19/7 21/10 26/22 33/5 49/7 69/7
**regardless [2]** 30/2 95/12
**regards [2]** 53/6 55/10
**REGGIE [1]** 1/14
**Registrar [1]** 90/2 90/23
**regulation [4]** 28/9 31/8 32/9 40/20
**regulations [6]** 28/4 39/3 41/4 49/8 50/2 90/3
**rehash [1]** 42/20
**rehashing [1]** 46/20
**relate [5]** 18/4 21/19 22/21 64/9 79/9
**related [7]** 53/24 69/10 69/22 70/3 70/13 82/11 95/3
**relates [7]** 4/5 18/21 23/20 31/23 39/18 55/21 67/11
**relating [1]** 21/25
**relationship [2]** 47/21 60/11
**release [35]** 5/3 7/3 7/8 9/20 14/3 19/4 28/3 28/7 29/2 30/10 30/13 30/21 35/20 38/19 40/23 42/15 45/4 45/8 51/18 54/12 54/25 55/2 55/4 55/5 55/10 61/19 62/3 70/6 70/13 74/1 74/18 81/19 89/8 89/23 89/24
**released [28]** 5/12 10/9 10/10 24/7 26/6 27/19 30/12 34/6 34/10 34/15 35/7 40/13 40/23 44/14 45/12 59/10 61/16 64/10 69/7 69/12 73/17 74/22 81/10 84/8 87/11 89/11 91/9 94/17
**releases [2]** 45/8 74/16
**releasing [10]** 28/11 34/6 34/19 34/20 74/14 86/6 86/7 87/13 87/15 91/1
**relevant [6]** 9/17 33/12 59/16 63/24 78/20 85/4
**relied [1]** 68/22
**rely [10]** 8/6 9/7 14/10 15/5 15/15 18/2 18/6 75/20 76/20 79/1
**relying [1]** 84/15
**remain [1]** 8/9
**remains [3]** 5/15 5/21 7/21
**remedy [2]** 70/16 95/7
**Reno [1]** 90/9
**repealed [1]** 90/10
**repeat [1]** 47/19
**repeatedly [3]** 14/24 79/16 87/5
**reply [1]** 94/23
**report [120]**
**report's [1]** 54/22
**reported [2]** 45/18 97/4
**reporter [5]** 2/5 2/6 50/18 97/2 97/14

**R**

**reporters** [1] 83/17
**reporting** [1] 45/25
**reports** [2] 34/9 46/12
**represent** [1] 8/18
**representation** [3] 14/10 27/7 27/9
**representations** [6] 15/12 29/7 29/24
29/25 34/2 34/11
**represents** [1] 34/22
**reputational** [1] 86/4
**request** [2] 41/5 59/25
**requested** [1] 79/8
**requestor** [1] 80/9
**require** [6] 16/8 36/4 61/11 66/15
75/21 95/20
**required** [10] 21/3 21/3 22/12 24/7
28/7 56/19 61/8 62/24 64/24 78/25
**requirement** [1] 31/14 84/18 90/14
**requirements** [4] 3/24 23/18 51/11
54/3
**requires** [1] 92/23
**requiring** [1] 61/1
**Research** [2] 58/4 59/17
**resolution** [1] 95/14
**resolve** [1] 95/21
**resolved** [2] 95/12 96/1
**resort** [1] 24/10
**respect** [9] 15/11 41/22 48/25 49/2
49/3 49/13 50/9 51/25 52/25
**respective** [1] 19/7
**respects** [1] 29/10
**respond** [1] 33/17
**response** [7] 13/9 23/22 23/23 38/12
57/4 70/7 76/19
**responses** [1] 13/7
**Responsibility** [1] 47/17
**responsive** [1] 26/6
**restate** [1] 57/22
**restrict** [1] 71/4
**result** [4] 36/19 62/22 86/19 89/24
**results** [2] 38/18 49/3
**resuming** [1] 50/21
**retrospective** [1] 43/1
**reveal** [11] 6/15 7/23 11/1 12/17 12/22
20/13 58/6 64/10 64/18 64/25 79/12
**revealed** [2] 23/8 57/24 65/10
**revealing** [4] 7/22 12/8 15/20 57/1
**reveals** [2] 12/23 64/16
**review** [35] 8/4 8/8 16/11 23/15 24/10
24/16 24/17 25/21 25/25 26/10 26/17
26/25 27/21 27/25 28/18 29/13 29/20
30/3 30/8 30/10 33/18 35/9 36/12
38/22 58/7 58/9 58/20 58/21 59/4 63/1
66/6 67/2 95/4 95/5 95/8
**reviewed** [2] 29/16 63/21
**reviewing** [4] 30/11 38/16 51/24 59/8
**Rico** [2] 14/22 44/21
**right** [27] 11/23 19/17 34/3 38/7 41/1
43/8 43/20 44/25 45/16 47/5 52/1 58/1
58/16 59/11 60/9 64/17 70/20 71/7
71/20 73/12 75/16 88/6 91/19 93/4
94/3 94/4 95/6
**rights** [2] 74/23 75/7
**ripped** [1] 77/10
**risk** [4] 5/10 46/3 65/1 66/14
**risks** [1] 69/8
**Robert** [2] 9/14 9/14

**Rod** [1] 55/22
**Rodham** [2] 55/23 94/3
**Roger** [8] 69/5 69/1 70/8 71/19 75/1
84/22 84/23 89/2
**role** [1] 32/13
**Room** [1] 2/6
**root** [1] 79/10
**Rose** [1] 84/16
**Rotenberg** [1] 1/17
**RPR** [2] 2/5 97/14
**rule** [27] 4/3 4/21 5/4 5/17 5/23 6/8
6/16 6/24 7/5 7/11 7/18 9/17 10/24
13/5 14/20 15/2 17/2 17/9 17/12 18/19
46/22 69/15 74/9 74/10 74/15 92/6
95/13
**ruled** [1] 38/5
**rules** [1] 74/18
**rumination** [1] 43/1
**run** [3] 19/3 69/7 88/5
**runup** [1] 80/9
**Russia** [4] 22/2 86/11 86/17 87/1
**Russia's** [1] 88/7
**Russian** [8] 10/16 53/1 59/14 83/18
83/23 85/23 86/22 87/22

**S**

**SafeCard** [3] 76/17 85/14 93/20
**said** [41] 13/17 17/13 18/17 19/14
21/22 22/14 25/20 29/9 31/13 34/4
34/6 34/16 37/3 39/9 42/10 42/13
44/15 47/20 54/10 56/2 58/3 59/25
62/3 65/8 70/7 70/9 72/6 73/10 77/2
77/7 77/16 77/17 77/17 90/13 91/14
91/20 92/22 92/22 94/2 94/11 97/8
**same** [12] 8/2 19/13 19/22 38/4 38/5
47/2 49/21 50/10 56/21 70/21 81/20
88/17
**satisfactory** [1] 20/15
**satisfied** [2] 20/3 51/11
**satisfy** [1] 54/3
**say** [16] 14/24 15/8 18/16 21/6 35/4
50/11 62/5 70/22 72/12 72/14 79/25
82/8 82/17 85/11 86/25 91/6
**saying** [17] 7/2 13/8 14/9 16/8 16/11
18/20 23/13 29/8 30/15 57/8 59/15
61/13 68/2 70/23 73/17 83/11 83/11
**says** [30] 14/16 15/3 15/6 15/17 17/2
17/25 18/15 18/23 22/23 26/17 27/12
27/18 27/24 28/4 29/8 29/21 29/24
30/17 35/1 36/19 36/22 40/16 51/17
59/7 64/17 69/10 73/15 76/22 85/16
92/7
**scales** [1] 80/25 83/14
**scheduled** [1] 73/2
**scope** [5] 25/22 44/20 64/18 64/21
65/18 65/22
**sealing** [4] 73/4 74/5 74/8 74/12
**seat** [1] 73/13
**second** [5] 5/6 5/13 8/21 16/16 76/19
**secrecy** [2] 7/5 10/24
**secret** [9] 5/15 5/21 6/16 7/21 7/23 8/9
11/1 12/18 41/11
**section** [7] 9/16 11/6 12/1 57/17 57/18
59/14 77/20
**section's** [2] 9/10 9/13
**sections** [2] 10/3 10/17 24/22
**security** [8] 4/5 19/8 20/25 21/4 21/6

21/24 23/1 23/12
**Roman** [11] 9/3 17/3 17/13 22/19
62/19 67/4
**seeing** [1] 62/25
**seek** [1] 89/7
**seeking** [1] 18/7
**seeks** [1] 89/5
**seem** [9] 9/11 17/16 23/13 27/23 44/4
81/12 84/23 89/4 93/20
**seemed** [1] 29/8
**seems** [13] 5/24 11/12 23/17 24/23
27/2 27/6 34/20 35/4 44/7 49/10 67/10
86/20 86/25
**seen** [4] 17/12 60/9 72/11 94/5
**selective** [1] 84/5
**selectively** [1] 81/2
**Senate** [2] 14/22 44/21
**Senator** [1] 56/2
**senators** [2] 76/10 77/17
**SENIOR** [1] 1/14
**sense** [4] 16/22 24/25 63/3 76/22
**sensitive** [1] 17/24
**sentence** [1] 61/13
**sentences** [2] 10/10 61/13
**sentencing** [2] 52/15 59/20
**separately** [2] 29/17 31/16
**sequence** [2] 30/5 31/15
**series** [1] 32/25
**serious** [2] 5/10 81/25
**Sessions** [1] 81/8
**set** [3] 35/12 59/21 76/21
**setting** [1] 69/20
**Seven** [2] 19/18 51/7
**several** [2] 43/3 43/4
**severe** [1] 89/22
**Shall** [1] 30/23
**Shapiro** [2] 2/1 3/17
**Shaw** [1] 47/16
**she** [33] 8/16 8/22 8/25 9/1 9/2 14/16
15/3 18/12 18/15 18/15 18/17 29/21
29/22 29/24 36/24 37/3 45/16 62/3
62/5 62/13 69/6 69/15 71/2 71/3 71/4
73/10 73/16 73/17 73/19 73/21 90/11
90/13 94/15
**she's** [2] 62/16 71/8
**shed** [3] 79/4 80/10 86/23
**Shifting** [1] 26/12
**shorthand** [3] 2/11 97/5 97/9
**should** [45] 3/25 5/11 11/23 13/4 15/8
15/10 16/8 24/7 26/18 26/23 27/24
29/11 31/25 35/13 35/15 35/15 36/2
36/2 36/4 36/21 36/23 37/6 38/5 40/23
42/4 42/4 44/14 45/19 49/4 56/3 57/8
64/9 65/3 72/2 72/14 75/18 82/17
85/17 90/17 90/24 91/3 91/22 93/17
94/17 95/20
**shouldn't** [6] 14/9 18/2 45/13 45/14
73/18 75/6
**show** [13] 9/4 23/20 62/23 69/19 78/2
78/25 81/17 82/12 82/12 84/2 84/3
84/14 93/21
**showing** [8] 5/1 5/22 8/1 55/7 71/17
72/21 72/22 72/23
**shown** [6] 5/14 14/25 33/19 60/6
80/25 83/19
**shows** [3] 14/7 21/21 45/5
**shy** [1] 82/5

**S**

**sic** [1] 83/8
**side** [4] 28/23 80/25 83/13 86/5
**sides** [2] 71/1 91/17
**significance** [2] 9/12 26/4
**significant** [9] 10/8 10/9 26/19 30/6 30/13 53/16 66/18 82/1 91/1
**similar** [2] 46/16 74/10
**similarly** [1] 81/18
**simply** [17] 14/6 21/3 21/6 28/8 29/20 51/10 54/10 56/25 61/8 61/17 66/6 66/8 74/22 75/5 76/2 87/13 91/14
**simultaneously** [3] 69/23 70/1 70/19
**since** [5] 6/18 9/9 36/3 66/16 75/3
**single** [2] 25/23 61/13
**singular** [1] 35/23
**sitting** [2] 32/4 49/16
**situated** [1] 81/18
**situation** [10] 9/3 31/21 38/5 44/17 46/7 66/5 92/5 92/5 93/12 93/22
**slash** [1] 52/23
**Smoking** [1] 84/7
**so** [127]
**social** [5] 22/24 23/3 53/1 59/14 85/24
**society** [1] 83/1
**some** [49] 11/14 11/15 11/22 12/5 13/25 15/23 17/5 17/15 20/14 22/24 24/13 24/22 24/23 27/2 32/3 33/11 34/2 43/14 43/22 44/2 44/8 46/25 58/19 60/9 61/3 61/5 63/2 66/1 66/7 69/18 70/17 70/25 72/3 72/15 72/20 74/12 74/17 76/5 76/24 77/21 81/18 83/16 85/2 85/6 86/12 86/22 91/15 95/20 95/24
**somebody** [1] 87/1
**somehow** [3] 66/13 87/2 87/2
**someone** [8] 45/10 82/18 83/7 83/23 86/10 89/15 89/24 94/9
**someone's** [1] 75/7
**something** [24] 4/12 4/18 12/8 13/2 13/11 13/12 15/6 16/9 16/24 35/4 36/5 47/12 49/11 62/10 65/20 68/5 71/13 72/18 77/1 77/10 87/19 92/3 93/24 94/20
**something's** [1] 62/9
**sometimes** [3] 36/19 36/20 59/13
**somewhat** [2] 82/10 83/8
**son** [2] 77/6 78/20
**Sorry** [1] 19/15
**sort** [8] 19/11 20/18 31/2 31/21 35/7 39/23 48/11 84/22
**sorted** [1] 19/21
**sorts** [1] 54/8
**sought** [1] 12/9
**source** [1] 21/8
**sources** [5] 19/12 21/19 21/25 23/20 68/14
**Southern** [1] 11/21
**speak** [1] 50/13
**speaking** [1] 5/5
**speaks** [1] 83/4
**special** [85] 4/24 9/25 10/4 10/12 11/5 11/18 12/19 12/24 13/13 21/8 23/10 26/7 26/7 27/7 27/8 27/10 28/4 28/5 31/6 31/8 31/19 31/22 32/8 33/3 33/8 33/9 33/21 34/9 34/13 34/14 34/17 35/20 36/3 36/5 36/9 37/25 38/14

38/16 38/19 39/2 39/7 39/10 39/24 40/20 40/18 43/21 44/2 44/12 44/19 41/16 42/2 45/25 46/4 46/13 47/22 47/23 47/25 48/4 48/25 49/4 50/2 50/4 50/9 50/12 52/3 52/25 60/24 66/9 68/11 68/11 68/22 70/8 75/23 77/25 78/10 78/22 87/16 88/21 88/23 89/13 90/2 91/25 93/5 93/10 95/1
**specific** [26] 22/5 22/10 31/2 32/7 32/20 39/21 41/21 41/21 51/17 51/19 52/19 52/19 58/19 60/15 60/16 61/3 63/17 68/3 68/20 70/16 70/18 72/18 72/19 78/9 81/17 86/8
**specifically** [9] 17/15 27/12 29/4 29/15 34/17 42/13 61/25 65/21 68/3
**specificity** [3] 52/7 56/7 56/21
**specifying** [1] 61/2
**speculating** [2] 13/16 15/4
**speculation** [3] 13/20 14/13 74/17
**split** [1] 4/9
**spot** [1] 78/6
**squarely** [1] 44/19
**squishy** [1] 18/16
**staff** [3] 33/22 35/21 40/2
**stage** [3] 60/3 60/5 60/15
**stake** [4] 20/11 22/16 53/13 79/19
**standard** [14] 5/21 57/22 71/16 72/10 75/20 76/2 76/16 76/18 76/21 77/12 78/25 81/16 85/12 93/19
**standards** [2] 25/5 40/22
**start** [1] 4/3
**started** [1] 7/1
**stated** [1] 34/17
**statement** [8] 18/7 18/10 26/6 58/5 60/20 61/14 62/11 72/8
**statements** [18] 26/5 26/7 26/22 27/4 27/22 28/13 35/8 51/25 54/23 55/3 58/1 60/23 73/9 76/9 76/10 92/12 93/16 93/16
**states** [10] 1/1 1/15 18/13 46/18 76/10 81/10 84/17 87/23 88/10 97/3
**status** [2] 1/13 43/14
**statute** [6] 7/10 7/10 7/11 7/12 70/4 90/10
**statutory** [1] 4/9
**step** [7] 3/7 13/24 28/10 39/7 48/13 54/16 73/24
**steps** [3] 48/1 48/4 48/14
**stigma** [2] 86/4 87/6
**still** [16] 5/15 5/20 6/5 6/5 6/8 8/9 37/14 40/20 41/5 42/10 47/10 55/24 58/24 75/6 85/14 85/18
**stone** [24] 35/12 59/22 69/6 69/7 69/11 69/19 69/23 69/24 70/3 70/8 70/12 70/14 71/20 71/25 72/1 72/2 72/18 73/1 73/11 75/1 84/22 84/23 89/2 89/5
**Stone's** [3] 70/20 73/10 74/1
**strand** [1] 80/1
**strategic** [1] 47/6
**strategies** [1] 42/25
**streamline** [1] 4/11
**Street** [2] 1/22 2/3
**strengths** [4] 37/23 38/3 55/7 55/12
**strong** [1] 78/13
**stronger** [1] 55/16
**structure** [1] 59/13

**struggling** [1] 43/10
**subcategories** [1] 25/13
**subcommittee** [1] 9/9
**subdivided** [1] 19/16
**subheadings** [1] 11/11
**subject** [4] 5/17 17/2 17/11 41/6
**submitted** [8] 8/19 14/11 15/4 32/5 36/5 40/17 40/19
**subpoena** [1] 12/20
**subpoenaed** [3] 7/16 14/18 18/14
**subscribed** [1] 97/10
**subsequently** [2] 52/14 63/22
**substance** [1] 7/17
**substantial** [8] 63/16 69/13 71/18 71/21 72/9 72/21 73/9 95/7
**substantive** [1] 79/18
**such** [5] 20/13 22/7 23/11 58/20 90/25
**sufficient** [7] 13/22 24/15 26/24 29/11 30/2 56/9 59/4
**sufficiently** [4] 26/9 28/17 28/19 69/17
**suggest** [1] 61/1
**suggested** [1] 71/23
**suggesting** [3] 26/23 44/4 92/13
**suggestion** [2] 36/21 92/16
**sui** [2] 39/14 51/23
**Suite** [1] 1/19
**summaries** [1] 34/9
**summarized** [2] 40/1 46/12
**summarizes** [3] 31/17 46/23 60/18
**summarizing** [2] 39/1 47/2
**summary** [3] 38/13 40/5 51/9
**superiors** [1] 37/20
**supervisor** [2] 45/25 46/8
**supervisors** [1] 45/18
**supplement** [1] 16/9
**supplemental** [2] 16/16 95/5
**support** [3] 23/19 30/16 35/9
**supports** [1] 56/1
**supposed** [3] 15/15 28/5 61/18
**Supreme** [3] 69/20 84/17 94/2
**sure** [5] 6/23 16/18 49/8 49/21 81/5
**surgically** [1] 56/15
**surrounding** [1] 84/24
**suspicion** [1] 76/3
**swearing** [1] 60/14
**sworn** [3] 13/17 36/13 37/3
**system** [3] 43/23 44/9 90/15
**systemic** [2] 79/10 79/25

**T**

**table** [1] 3/17
**tailor** [1] 44/16
**tainted** [1] 73/14
**take** [7] 13/24 34/1 46/10 48/5 54/7 54/16 82/2
**taken** [9] 21/7 26/22 27/17 48/14 48/15 48/15 50/20 56/3 95/20
**takes** [3] 8/16 35/18
**taking** [6] 8/11 17/18 35/25 54/5 54/10 73/24
**talk** [6] 17/15 25/16 61/9 66/7 83/15 83/17
**talked** [6] 24/21 25/9 25/16 55/13 84/22
**talking** [30] 11/13 16/1 18/3 22/22 39/17 41/13 41/15 49/11 61/2 61/4 61/25 62/14 62/15 62/15 62/16 63/10

**T**

**talking...** **[14]** 63/12 63/14 64/21 68/4 68/5 68/5 70/18 70/23 82/5 82/22 83/5 83/7 87/7 90/5

**talks** **[9]** 11/7 11/7 11/8 12/14 66/8 70/11 77/20 77/20 77/21

**tampering** **[3]** 55/5 55/5 62/4

**targeted** **[1]** 86/20

**targeting** **[2]** 86/18 87/22

**targets** **[2]** 55/11 68/20

**task** **[1]** 51/20

**team** **[2]** 30/9 30/20

**technique** **[4]** 64/24 65/12 65/22 66/8

**techniques** **[28]** 19/19 19/20 20/5 21/10 21/23 22/1 22/7 22/8 22/10 22/11 22/17 22/20 23/2 23/8 64/4 64/11 64/16 64/17 64/20 65/1 65/6 65/7 65/9 66/1 66/14 68/10 68/19 68/21

**tell** **[7]** 10/12 21/12 28/12 56/16 83/25 87/14 87/15

**tells** **[1]** 67/21

**temporal** **[2]** 31/15 52/11

**ten** **[1]** 50/18

**tend** **[3]** 27/22 65/24 92/11

**term** **[1]** 17/7

**test** **[4]** 9/6 20/7 51/12 52/21

**testified** **[4]** 6/1 6/2 6/14 90/10

**testimony** **[5]** 7/17 14/19 15/24 18/15 97/5

**than** **[16]** 5/9 9/18 12/10 16/9 25/24 33/6 35/5 39/19 42/3 43/9 62/17 66/13 71/13 77/11 78/24 89/25

**Thank** **[13]** 25/8 29/21 37/8 37/9 50/16 50/17 54/1 57/4 72/24 94/6 94/7 95/10 96/2

**that** **[707]**

**that's** **[70]** 5/4 5/16 6/16 6/20 6/24 7/18 7/24 8/11 8/13 8/15 10/19 12/19 13/20 15/11 15/16 16/25 17/5 18/11 18/15 19/10 24/3 27/24 31/17 32/2 32/19 33/19 36/12 37/17 39/19 42/12 42/15 43/21 44/20 47/1 48/10 48/15 49/11 51/19 52/4 55/17 56/23 56/23 59/10 59/24 60/4 61/16 63/25 64/4 64/22 65/8 67/5 67/13 67/14 68/8 71/17 72/2 73/4 81/14 81/24 83/11 83/25 84/1 85/14 85/18 86/15 87/11 88/8 91/24 94/25 95/1

**the FOIA** **[1]** 82/19

**their** **[28]** 5/16 5/24 9/12 16/9 17/11 30/8 35/11 38/18 41/15 45/18 46/5 46/8 46/9 46/13 62/11 72/13 72/14 76/19 79/22 81/11 82/9 82/14 86/14 86/14 87/3 87/10 87/12 87/24

**them** **[15]** 4/19 11/21 19/21 19/22 21/13 26/14 58/13 58/25 70/17 77/5 85/12 86/12 86/23 87/2 87/10

**themselves** **[1]** 75/25

**then** **[41]** 4/4 5/11 6/16 9/19 11/14 12/12 13/4 17/2 17/8 19/19 20/13 22/24 25/5 27/18 29/18 34/16 49/10 51/1 52/14 55/6 58/14 62/10 66/14 68/18 69/14 73/3 74/15 76/18 77/22 78/8 80/3 81/19 84/25 86/23 87/19 88/2 88/15 89/8 89/20 92/7 95/3

**theoretically** **[1]** 87/21

**theories** **[1]** 77/14

**theory** **[4]** 16/4 23/21 51/5 54/3

**there** **[94]** 5/1 5/2 5/5 5/24 8/21 9/19 10/3 10/8 10/9 10/13 11/20 15/23 15/25 22/14 23/1 23/18 24/7 24/16 24/22 26/1 27/7 27/10 27/21 30/13 30/19 32/10 32/17 32/22 32/25 36/22 38/18 41/20 42/13 43/22 45/6 47/25 48/19 48/22 49/14 50/5 50/10 50/23 52/5 52/18 53/3 53/5 54/8 55/18 58/4 59/18 60/1 60/13 60/15 60/21 61/15 61/16 62/11 62/20 65/25 66/1 66/3 67/1 67/3 67/5 68/24 69/13 72/3 72/20 76/24 77/12 77/22 78/4 78/11 80/15 80/17 80/20 80/24 81/25 82/1 82/10 82/17 82/17 83/10 88/11 89/17 89/22 90/4 90/11 90/25 91/16 92/11 93/25 95/7

**there's** **[72]** 5/10 5/18 6/5 7/3 7/11 8/3 8/7 8/17 8/24 8/25 10/5 10/17 10/25 11/6 11/13 12/16 13/3 15/23 16/6 16/12 16/23 18/16 22/20 22/23 22/24 24/6 24/13 24/20 26/12 26/19 26/24 30/25 44/2 45/4 45/23 46/3 46/15 46/15 47/12 50/9 51/8 51/10 52/20 53/11 53/14 53/20 55/20 58/1 58/20 58/23 59/3 60/8 61/9 62/10 63/17 65/17 67/3 69/3 69/18 71/24 71/25 73/23 74/25 75/17 79/2 84/3 84/25 86/6 90/18 92/8 92/18 95/10

**therefore** **[11]** 15/8 24/15 29/12 35/16 36/25 41/25 42/6 52/5 67/21 73/7 86/22

**Thereupon** **[2]** 50/20 96/3

**these** **[50]** 3/20 6/1 9/10 12/3 14/19 14/24 15/24 16/14 17/15 18/4 21/12 21/22 21/24 22/6 23/8 24/19 27/16 32/12 33/2 33/13 33/25 39/11 41/20 43/5 45/7 46/1 46/11 53/18 55/14 57/2 58/2 61/6 63/20 64/9 65/15 68/19 69/18 74/20 83/4 83/22 85/4 85/5 85/8 85/22 86/5 88/1 88/12 88/15 89/12 89/18

**they** **[121]**

**they're** **[19]** 8/18 12/4 14/9 16/1 18/7 18/11 20/4 25/4 29/4 32/21 50/14 60/19 66/4 70/22 81/12 81/20 83/24 84/9 85/13

**they've** **[14]** 5/18 9/3 16/10 16/14 16/21 19/20 46/6 69/25 70/13 72/1 81/10 83/16 84/5 84/5

**thing** **[5]** 47/2 63/23 77/15 83/15 95/21

**things** **[15]** 11/1 14/19 25/6 38/21 50/13 51/21 55/14 69/12 77/2 77/7 84/1 84/25 84/25 93/13 95/24

**think** **[66]** 3/19 3/23 4/13 6/20 11/10 12/6 16/18 16/20 19/6 19/11 19/20 20/6 20/16 20/18 20/20 24/1 24/17 24/22 24/22 25/21 26/7 29/5 32/8 32/17 32/20 38/15 38/23 43/8 43/21 45/13 45/22 46/16 47/20 48/11 48/15 48/19 48/22 49/4 53/14 53/20 57/8 63/10 64/15 65/8 65/16 65/25 66/3 67/24 69/16 73/24 77/14 80/9 81/15 81/25 84/14 84/24 85/8 91/18 92/20 93/25 94/1 95/6 95/13 95/19

**third** **[4]** 1/22 80/3 81/2 87/8

**this** **[162]**

**thorough** **[1]** 39/11

**those** **[50]** 3/25 11/13 17/21 18/2 18/17 18/19 18/22 18/24 20/8 25/13 33/8 35/2 41/24 42/5 42/6 42/23 45/21 46/25 47/4 48/5 48/9 48/12 48/14 50/13 51/21 54/9 57/21 58/24 59/2 62/25 64/13 64/20 65/13 66/18 67/11 67/13 72/19 74/23 75/15 77/23 78/3 78/21 80/6 82/4 82/4 83/20 85/2 85/25 88/22 91/10

**though** **[3]** 40/25 48/25 49/20

**thought** **[8]** 12/23 34/8 34/11 37/1 45/11 45/19 71/5 73/7

**thoughtful** **[1]** 92/19

**thoughts** **[2]** 42/24 45/8

**thousands** **[1]** 26/1

**three** **[20]** 4/3 4/5 7/11 15/2 15/22 18/17 18/21 18/22 19/8 19/19 20/25 21/4 21/18 21/18 22/13 22/25 23/14 23/16 23/20 51/17

**threefold** **[2]** 51/12 51/20

**through** **[21]** 3/22 5/19 6/10 6/11 6/13 10/2 11/14 11/15 28/22 29/1 29/15 37/4 46/10 52/14 53/16 55/19 61/12 72/13 72/14 74/2 75/15

**throughout** **[2]** 16/19 67/20

**time** **[15]** 11/24 18/25 19/2 32/3 35/23 38/9 50/10 52/10 52/16 56/21 60/7 63/18 64/7 68/20 87/20

**time-bound** **[1]** 63/18

**times** **[2]** 70/10 94/5

**timing** **[1]** 27/14

**today** **[2]** 16/19 71/23

**together** **[8]** 19/21 23/5 28/14 33/25 55/14 65/13 75/6 85/21

**told** **[3]** 20/10 20/11 22/15

**Tom** **[1]** 20/10

**too** **[6]** 20/6 25/4 36/17 44/22 80/3 90/22

**took** **[6]** 27/18 28/10 34/11 36/15 56/5 77/5

**Topic** **[5]** 1/21 3/12 4/7

**topics** **[1]** 70/24

**touch** **[1]** 16/23

**Tower** **[3]** 10/15 11/7 77/20

**town** **[1]** 80/21

**trace** **[1]** 54/13

**traditional** **[1]** 39/15

**traditionally** **[2]** 51/23 52/4

**traditions** **[1]** 90/14

**transcribed** **[1]** 97/9

**transcript** **[3]** 1/13 2/11 97/8

**transcription** **[1]** 2/12

**transpired** **[3]** 9/19 12/18 12/22

**treason** **[1]** 91/22

**tremendous** **[1]** 83/12

**trial** **[15]** 2/1 52/14 55/22 59/21 69/3 69/20 70/21 71/2 71/11 71/20 73/2 73/12 74/4 75/7 75/10

**trials** **[1]** 74/21

**tried** **[1]** 89/25

**true** **[7]** 10/7 49/22 63/25 67/23 77/3 78/17 81/15

**truly** **[1]** 80/24

**Trump** **[19]** 10/14 10/15 11/4 11/7 11/8 75/19 77/20 78/4 78/9 78/12

**T**

**Trump... [8]**  81/5 81/6 82/3 83/2 92/19 92/25 93/7 93/11
**Trump's [1]**  83/2
**truthfulness [1]**  80/11
**try [6]**  3/20 47/19 71/3 76/21 83/19 86/18
**trying [7]**  45/9 50/7 50/14 57/3 81/20 85/11 95/11
**turn [1]**  95/22
**tweeted [1]**  83/25
**two [25]**  9/3 9/3 16/14 20/23 26/12 27/16 29/10 30/25 32/22 32/23 41/20 46/3 48/12 48/19 51/16 57/19 57/21 58/10 62/12 64/14 66/17 66/18 67/11 67/13 89/12
**type [21]**  11/22 17/14 39/15 40/2 43/12 43/14 52/4 53/17 61/2 61/4 61/23 61/24 62/5 62/14 63/1 68/1 68/3 70/24 72/17 80/12 86/12
**types [4]**  22/8 57/23 67/4 68/15
**typically [1]**  60/12

**U**

**U.S [7]**  1/5 1/10 2/2 2/6 3/3 43/11 43/18
**ultimate [3]**  31/23 39/25 46/1
**ultimately [13]**  31/25 39/4 39/25 40/25 41/5 41/10 46/8 51/3 52/16 53/22 60/3 64/2 92/4
**unclassified [1]**  21/25
**uncommon [1]**  16/15
**uncover [1]**  76/23
**under [82]**  4/21 5/4 5/21 7/10 9/17 10/24 12/12 13/16 13/21 14/14 15/2 19/15 20/19 20/20 20/25 21/3 21/3 21/5 21/15 21/18 22/12 22/13 22/21 23/1 23/16 24/19 25/5 28/8 29/3 30/8 30/25 31/7 32/13 33/1 33/1 37/5 37/6 37/7 37/14 39/3 39/8 40/20 41/4 41/6 42/11 43/17 44/23 51/20 52/5 52/20 52/23 54/17 55/25 56/17 61/8 62/23 63/4 64/23 65/15 65/20 66/25 67/16 67/22 68/25 71/12 74/4 74/5 74/6 74/9 76/17 78/25 79/1 79/21 80/12 81/16 82/4 84/13 84/13 84/16 90/15 93/19 94/10
**underlying [1]**  58/6
**undermine [4]**  55/14 79/6 92/16 93/12
**undermines [1]**  44/7
**underscore [1]**  95/3
**understand [15]**  4/24 10/18 12/7 15/25 19/6 28/24 34/1 36/16 41/18 42/2 47/9 47/21 56/6 78/15 95/11
**understanding [5]**  9/25 10/6 78/21 78/22 93/5
**undertaken [3]**  6/18 9/1 11/5
**undertook [1]**  78/10
**unfolded [1]**  42/22
**unique [4]**  26/2 31/21 46/15 60/11
**unit [1]**  9/16
**UNITED [8]**  1/1 1/15 46/18 76/10 81/9 84/17 88/10 97/3
**unknown [1]**  85/5
**unless [7]**  4/10 4/12 13/2 16/23 24/12 49/22 80/24
**unlike [2]**  8/23 64/7

**unprotected [1]**  9/12
**unreasonable [3]**  8/14 9/3 9/11
66/16 66/25 67/3 67/18 72/11
**until [1]**  30/8
**unwittily [1]**  85/22
**unwittingly [3]**  86/11 86/21 87/1
**up [10]**  4/9 11/10 25/20 42/18 44/13 44/18 44/22 45/7 55/19 72/15 76/25 80/20 86/9 88/5 88/10 88/21 88/22 95/18
**upfront [1]**  11/14
**upheld [2]**  7/13 21/5
**upon [8]**  14/10 15/5 18/2 18/6 38/5 67/25 87/12 94/16
**us [6]**  4/11 10/12 20/7 67/21 75/21 82/2
**use [10]**  22/6 22/9 64/3 64/5 67/14 67/18 68/9 68/16 68/23 81/20
**used [13]**  20/16 21/24 22/1 22/8 22/10 23/3 44/2 68/10 68/16 68/19 83/24 87/25 90/2
**usually [1]**  28/17

**V**

**vague [1]**  20/6
**valid [2]**  52/5 64/5
**validity [2]**  25/3 81/22
**value [8]**  4/22 5/8 7/3 9/18 10/16 10/19 13/25 90/16
**variety [1]**  43/2
**various [5]**  4/25 68/9 77/7 83/5 90/7
**vast [1]**  54/17
**veracity [2]**  20/7 78/21
**version [1]**  21/21
**versus [9]**  3/3 3/6 8/5 37/12 53/17 55/20 56/24 94/13 94/24
**very [37]**  4/20 17/13 17/18 17/24 20/19 21/12 27/16 35/4 40/4 46/16 47/17 47/20 48/8 48/16 48/22 53/5 57/2 60/5 60/16 67/24 69/16 70/10 72/18 77/12 78/19 79/6 79/23 81/25 82/14 83/4 88/17 88/18 88/24 91/25 93/24 93/24
**Vesco [2]**  9/14 9/14
**victims [2]**  83/20 83/20
**view [6]**  32/8 49/4 56/20 66/11 66/12 66/21
**viewed [1]**  35/8
**viewing [1]**  59/9
**views [1]**  47/5
**violate [2]**  74/18 74/19
**violated [1]**  74/15
**violating [1]**  74/22
**volume [10]**  32/22 32/23 32/24 32/25 39/22 39/22 39/24 54/17 54/18 74/25
**volumes [1]**  59/3
**voluntarily [1]**  89/7
**voluntary [1]**  12/10
**volunteering [1]**  73/13
**voracity [1]**  16/4

**W**

**walk [1]**  75/15
**walking [1]**  74/1
**walks [2]**  11/14 11/15
**WALTON [1]**  1/14
**want [9]**  4/10 26/15 33/17 33/18 36/19

47/10 77/6 84/14 89/10
**wanted [5]**  25/16 34/5 38/11 43/13 92/6
**wants [1]**  36/20
**was [155]**
**Washington [5]**  1/10 1/20 2/3 2/7 47/17
**wasn't [6]**  49/14 73/13 76/14 92/2 92/19 92/25
**Watch [13]**  8/5 8/24 37/12 37/18 38/23 42/9 42/13 43/9 47/4 55/20 80/4 80/7 94/13
**way [17]**  3/19 16/15 19/22 38/5 51/9 52/20 55/19 61/5 61/11 63/20 69/23 72/12 72/13 85/7 93/15 93/17 96/1
**ways [3]**  50/8 50/15 78/14
**we [92]**  6/18 6/20 9/6 9/15 10/3 10/3 10/6 10/17 10/17 11/9 12/2 12/9 15/25 16/18 16/20 19/8 19/21 20/10 20/11 20/18 21/13 22/15 22/16 24/1 24/21 24/25 25/10 25/16 25/18 26/16 32/24 36/25 37/24 40/5 41/4 41/18 42/12 43/9 48/19 49/4 49/25 50/4 50/24 50/24 51/2 51/5 55/17 58/23 59/1 60/18 60/22 63/7 68/4 68/4 68/5 71/15 75/11 75/14 75/18 76/2 76/3 76/9 76/10 77/15 79/1 79/16 80/14 81/15 82/2 82/13 82/3 84/3 84/2 84/2 82/24 84/25 85/8 90/15 90/16 90/21 91/14 91/14 94/20 94/21 94/21 94/22 95/1 95/6 95/14 95/25 95/25
**we'd [2]**  3/7 48/5
**we'll [7]**  3/22 4/3 4/4 4/11 17/3 73/3 95/25
**we're [29]**  18/3 24/3 25/23 36/12 39/17 49/11 50/22 57/19 61/2 61/4 62/14 62/15 62/15 62/16 63/10 63/11 63/13 64/21 70/18 73/24 73/25 75/8 78/25 82/4 83/7 83/11 83/11 90/5 91/14
**we've [8]**  4/9 6/19 16/14 20/1 24/5 24/25 25/9 60/9
**weaknesses [4]**  37/23 38/3 55/7 55/12
**weigh [2]**  4/19 48/7
**weighed [1]**  83/12
**weighing [1]**  48/18
**well [38]**  8/10 11/6 11/25 12/15 20/25 23/17 26/4 26/19 30/5 34/4 34/8 35/12 36/2 37/2 40/4 40/16 43/1 43/13 45/13 45/22 48/8 49/6 49/17 53/21 57/12 59/7 61/22 61/24 66/17 67/13 68/21 71/23 73/17 74/24 86/10 89/5 91/3 92/18
**went [4]**  28/22 29/15 37/4 90/9
**were [57]**  7/2 7/16 14/16 14/18 18/4 18/14 21/7 21/8 22/8 22/15 23/3 26/22 27/17 27/21 30/16 31/3 33/21 33/22 33/24 34/13 34/15 35/22 38/4 38/25 40/1 41/12 41/14 42/14 42/16 42/20 48/15 50/5 52/5 54/11 66/18 66/19 68/19 70/7 77/5 77/22 77/23 82/22 83/23 85/22 85/23 85/24 85/25 86/20 86/22 87/25 87/25 88/19 88/23 89/13 93/6 93/25 95/1
**weren't [5]**  56/16 76/15 77/4 78/3 78/11
**what [156]**
**what's [16]**  6/22 13/10 14/14 15/5 18/3

## W

**what's... [11]** 21/22 23/1 23/2 37/17 47/6 47/19 59/9 67/10 67/25 71/13 94/8

**whatever [5]** 61/3 61/6 62/16 77/7 80/11

**when [50]** 4/25 9/17 11/9 11/12 17/21 18/11 21/6 21/8 22/7 22/18 23/13 27/8 27/12 28/18 28/20 35/19 36/19 36/22 45/9 47/3 48/8 48/18 50/12 52/12 52/16 53/8 54/16 55/23 56/2 58/21 59/24 59/25 60/9 63/11 63/18 63/19 63/19 64/21 66/23 67/5 67/7 70/22 81/3 81/3 81/12 81/13 82/17 87/7 89/15 91/20

**whenever [3]** 22/19 56/3 61/19

**where [31]** 6/21 10/3 14/16 21/9 24/23 25/25 32/25 44/13 46/7 46/18 54/6 55/12 59/21 60/16 61/9 65/17 66/1 66/5 66/17 67/1 67/3 67/9 67/17 69/12 69/18 78/5 81/18 85/22 87/14 88/1 95/7

**whereas [2]** 25/1 86/5

**whereof [1]** 97/10

**whether [45]** 6/10 6/11 6/13 7/2 7/9 8/8 11/22 12/20 12/21 14/6 25/4 27/25 31/24 34/24 41/6 41/7 41/8 42/4 45/3 45/3 45/9 45/20 49/11 54/25 56/11 58/24 58/24 59/1 59/22 62/14 62/15 62/16 66/6 66/8 67/15 71/12 76/1 76/24 78/17 79/15 79/18 91/19 92/2 92/3 94/9

**which [45]** 5/8 13/19 15/19 20/6 27/16 27/17 34/10 34/23 40/9 41/8 41/9 42/9 42/22 45/14 47/25 48/2 50/2 50/3 50/5 53/15 60/2 60/2 63/21 64/24 65/5 68/14 68/19 69/3 69/14 69/16 71/17 73/3 75/1 75/24 76/6 76/17 76/22 78/8 79/17 80/11 85/20 85/20 87/17 93/24 95/6

**while [6]** 32/10 53/10 69/23 71/2 71/24 78/19

**who [36]** 4/25 5/1 7/15 7/16 9/14 10/1 10/1 14/18 18/14 31/3 33/22 40/25 43/14 55/13 60/12 76/14 76/14 77/22 82/4 82/18 82/25 83/6 83/7 83/18 83/22 83/25 85/4 85/5 85/25 86/17 88/16 91/10 92/1 92/2 93/17 94/9

**who's [1]** 69/9

**who've [1]** 6/14

**whoever [1]** 82/3

**wholesale [2]** 70/2 70/14

**whose [3]** 55/13 84/21 85/2

**why [37]** 3/22 13/13 16/19 20/22 24/8 24/17 29/19 29/21 32/21 37/21 38/4 41/24 42/5 43/13 43/15 43/20 44/10 45/16 45/18 48/13 48/15 50/14 55/6 60/25 61/1 61/5 61/23 64/6 74/4 75/18 76/15 77/23 78/16 84/9 90/4 92/19 92/24

**wide [1]** 79/9

**wide-ranging [1]** 79/9

**will [5]** 11/10 17/4 51/7 63/20 83/3

**willing [1]** 73/15

**willingly [1]** 83/7

**wind [1]** 60/8

**witch [5]** 78/18 92/13 92/17 92/20 93/13 93/25

**with [66]** 5/3 5/25 12/19 13/9 14/17 15/1 18/17 22/5 37/6 52/5 62/23 67/5 67/16 67/19 67/22 68/8 68/25 69/11 70/14 74/4 74/6 85/17

**withhold [3]** 8/1 18/13 58/8

**withholding [6]** 8/18 32/21 51/15 51/17 55/24 84/9

**withholdings [1]** 21/7

**within [17]** 6/16 7/10 7/12 7/18 13/12 14/7 18/21 18/24 23/4 29/19 37/20 42/17 44/20 47/24 52/23 79/11 89/10

**without [15]** 10/22 15/20 18/8 23/8 30/10 57/1 57/1 61/2 61/25 62/25 66/20 73/13 74/12 74/22 81/19

**witness [21]** 14/19 15/24 15/25 51/25 54/23 55/2 55/3 57/25 58/5 60/11 60/14 60/19 61/14 61/14 62/4 62/4 62/9 62/11 63/13 91/21 97/10

**witness' [1]** 14/17

**witnesses [3]** 7/15 18/14 60/12

**won't [1]** 4/10

**work [2]** 32/15 91/25

**worked [1]** 36/17

**working [1]** 74/20

**workings [1]** 15/20

**world [1]** 80/21

**worth [1]** 38/15

**would [120]**

**wouldn't [12]** 6/15 11/23 43/16 43/17 43/19 45/17 45/19 46/20 67/6 88/2 93/10 93/11

**wrath [1]** 77/6

**write [2]** 45/14 92/7

**writing [1]** 48/3

**written [4]** 10/21 12/13 13/7 27/15

**wrong [5]** 20/22 20/23 33/19 78/16 93/5

**wrongdoing [1]** 76/24

**wrote [2]** 40/13 46/4

## Y

**yeah [2]** 12/16 46/17

**year [2]** 12/11 14/2

**years [3]** 80/7 80/16 85/15

**yes [14]** 18/10 19/15 19/24 30/24 39/20 42/1 46/25 47/14 47/16 54/4 56/13 57/6 58/22 94/12

**yet [2]** 51/2 78/4

**York [1]** 11/21

**you [118]**

**you'd [1]** 47/13

**you'll [1]** 24/22

**you're [15]** 8/11 15/3 16/19 18/20 30/15 39/19 41/13 41/15 55/7 56/20 57/7 58/10 59/13 61/25 87/7

**you've [1]** 24/4

**your [71]** 3/2 3/9 3/12 3/15 4/6 4/20 5/13 6/22 7/1 8/14 13/15 15/14 16/12 18/9 19/6 19/10 19/24 20/23 23/24 24/5 24/20 25/15 28/2 30/5 33/16 35/6 35/19 36/8 37/3 38/11 40/16 42/1 42/8 44/12 45/22 46/17 47/10 47/18 49/7 50/25 54/5 56/16 56/19 56/23 57/6 57/12 59/7 61/7 62/3 62/18 63/9 66/21 66/22 68/7 69/2 70/16 72/25 73/19 75/5 75/13 77/14 79/1 80/4 80/16 81/6 83/15 85/13 87/20 91/5 94/12 94/19

**yourself [1]** 57/4

**yourselves [1]** 3/8

## Z

**zero [1]** 60/8