**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                                )
ELECTRONIC PRIVACY                              )
INFORMATION CENTER,                          )
                                                                )
           Plaintiff,                                 )
                                                                )
           v.                                             )      Civil Action No. 19-cv-810 (RBW)
                                                                )
UNITED STATES DEPARTMENT OF             )
JUSTICE,                                                 )
                                                                )
           Defendant.                             )
_____ )
                                                                )
JASON LEOPOLD, BUZZFEED, INC.,            )
                                                                )
           Plaintiffs,                               )
                                                                )
           v.                                             )      Civil Action No. 19-cv-957 (RBW)
                                                                )
UNITED STATES DEPARTMENT OF             )
JUSTICE, et al.                                         )
                                                                )
           Defendants.                          )
_____ )

## DEFENDANT'S STATUS REPORT AND RESPONSE TO THE COURT'S ORDER

Defendant, the Department of Justice ("DOJ"), respectfully submits this status report and response to the issues raised in the Court's Order, Dkt. 104, in advance of the status conference set for December 18, 2019.

### Pending Cross-Motions for Summary Judgment

Pursuant to the Court's Order, Dkt. 43, on May 6, 2019, DOJ produced to Plaintiff Electronic Privacy Information Center ("EPIC") and Plaintiffs Jason Leopold and BuzzFeed, Inc., a redacted copy of Special Counsel Mueller's report regarding the investigation into Russian interference in the 2016 United States presidential election (the "Mueller Report" or "Report")

with the appropriate exemption markings under the Freedom of Information Act ("FOIA").  DOJ

filed its motion for summary judgment on June 3, 2019.  *See* Def.'s Mot., Dkt. 54.  As reflected in

DOJ's motion for summary judgment, *id.*, and in the supporting declaration from Vanessa

Brinkmann, Senior Counsel in DOJ's Office of Information Policy, Dkt. 54-3, information

pertaining to Roger Stone was withheld, *inter alia*, under Exemption 7(A)—which protects

information "compiled for law enforcement purposes" when disclosure "could reasonably be

expected to interfere with enforcement proceedings," 5 U.S.C. § 552(b)(7)(A)—and pursuant to

the media communications order issued in Mr. Stone's criminal case.[1]

The parties' cross-motions for summary judgment were fully briefed on July 19, 2019, *see*

Dkt. 69, 71, 80, 82, and the Court held oral argument on those motion on August 5, 2019, *see* Dkt.

43.  The cross-motions remain pending before the Court.

## Reprocessing the Mueller Report is Not Warranted at this Time

On November 15, 2019, the same day Mr. Stone was convicted and the superseding

indictment was issued in *United States v. Concord Management and Consulting, LLC*, No. 18-cr-

32-2, counsel for Plaintiff Electronic Privacy Information Center ("EPIC") contacted undersigned

counsel to inquire whether DOJ would reprocess the Mueller Report in light of Mr. Stone's

conviction and the *Concord* superseding indictment.  *See* Exh. A (emails between counsel).

On November 22, 2019, undersigned counsel informed Plaintiffs that DOJ "will not

reprocess the Mueller Report at this time."  *Id.*  DOJ disagreed with Plaintiffs' assertion that DOJ

does not have a basis to withhold portions of the Mueller Report that concern Mr. Stone and the

---

[1] Information pertaining to Mr. Stone was also withheld under Exemptions 6, 7(B), and 7(C).  Because information
pertaining to Mr. Stone that was withheld under Exemptions 6, 7(B), and 7(C)  is also protected by Exemption 7(A),
if the Court upholds the withholdings under Exemption 7(A), it need not consider the applicability of Exemptions 6,
7(B), and 7(C) to this information.  *See Larson v. Dep't of State*, 565 F.3d 857, 862–63 (D.C. Cir. 2009).

investigation into his activities, as well as information pertaining to the *Concord* case, for the following reasons. *Id.*

First, information pertaining to Mr. Stone remains properly withheld under Exemption 7(A). As undersigned counsel informed Plaintiffs, "Exemption 7(A) protects information from disclosure until a conviction is final," and Mr. Stone's "conviction is not yet final." *Id.* (citing *Kansi v. Dep't of Justice*, 11 F. Supp. 2d 42, 44 (D.D.C. 1998) ("The potential for interference with witnesses and highly sensitive evidence that drives the 7(A) exemption . . . exists at least until plaintiff's conviction is final.")). Because Exemption 7(A) protects information from disclosure until a conviction is final, Exemption 7(A) protects information from disclosure pending the conclusion of sentencing and the 14-day period to file a notice of appeal. *See Basey v. Dep't of the Army*, No. 4:16-CV-00038-TMB, 2018 WL 8798586, at *9 (D. Alaska May 14, 2018) ("Although Plaintiff's trial has concluded and Plaintiff is currently awaiting sentencing, the Court finds that exemption 7(A) remains applicable at least pending the conclusion of sentencing and the statutory period for a notice of appeal."); *see also* Fed. R. App. P. 4(b)(1)(A) (requiring a defendant's notice of appeal to be filed within 14 days after the later of the entry of judgment or the order being appealed or the filing of the government's notice of appeal). Mr. Stone has not yet been sentenced; his sentencing is scheduled for February 6, 2020. After sentencing, Mr. Stone would have 14 days to file a notice of appeal. *See* Fed. R. App. P. 4(b)(1)(A). Thus, Exemption 7(A) applies to information pertaining to Mr. Stone at least through February 20, 2020. Finally, if Mr. Stone files an appeal, Exemption 7(A) would continue to protect information from disclosure. Indeed, as this Court has found, "[a] pending appeal of a criminal conviction qualifies as a pending or prospective law enforcement proceeding for purposes of Exemption 7(A)." *Kidder v. F.B.I.*, 517 F. Supp. 2d 17, 27 (D.D.C. 2007) (Walton, J.); *see also Adionser v. Dep't of Justice*, 811 F.

Supp. 2d 284, 298 (D.D.C. 2011), *aff'd in part*, No. 11-5093, 2012 WL 5897172 (D.C. Cir. Nov. 5, 2012) ("For purposes of Exemption 7(A), a pending appeal of a criminal conviction qualifies as an ongoing law enforcement proceeding.")).    Because Exemption 7(A) applies at least until February 20, 2020 (and longer, if Mr. Stone files an appeal), there is no basis to reprocess the Mueller Report for material pertaining to Mr. Stone at this time.

Second, information pertaining to Mr. Stone remains properly withheld under the media communications order issued in Mr. Stone's criminal case.  *See* Exh. B (Order, *United States v. Stone*, 1:19-cr-00018 (D.D.C. Feb. 15, 2019), Dkt. 36, *amended by* Minute Order (Feb. 21, 2019)). As undersigned counsel informed Plaintiffs, the order is in effect through sentencing, which, as stated above, is currently scheduled for February 6, 2020.  *See* Exh. A (emails between counsel). Although "the mere existence of a court seal is, without more, insufficient to justify nondisclosure under the FOIA," the D.C. Circuit has recognized that "those sealing orders intended to operate as the functional equivalent of an injunction prohibiting disclosure can justify an agency's decision to withhold records that do not fall within one of the specific FOIA exemptions." *Morgan v. Dep't of Justice*, 923 F.2d 195, 199 (D.C. Cir. 1991).  In the *Stone* case, pursuant to Local Criminal Rules 57.7(b)(1) and 57.7(c), the U.S. District Court for the District of Columbia has ordered "[c]ounsel for the parties and the witnesses" to "refrain from making statements to the media or in public settings that pose a substantial likelihood of material prejudice to [Mr. Stone's] case."[2]  Exh. B (Order at 3, *United States v. Stone*, 1:19-cr-00018 (D.D.C. Feb. 15, 2019), Dkt. 36, *amended by*

---

[2] Similarly, the Court in *United States v. Concord Management & Consulting LLC* issued an order under Local Criminal Rule 57.7(b).  *See* Order, *United States v. Concord Mgmt. & Consulting LLC*, No. 18-cr-32-2 (DLF) (D.D.C. May 29, 2019), Dkt. 137.  That Court ruled that the "government violated Rule 57.7" by releasing the Mueller Report because it consisted of a "public statement[] that linked the defendants' alleged activities to the Russian government and provided an opinion about the defendants' guilt and the evidence against them." Mem. Op. & Order at 10, *United States v. Concord Mgmt. & Consulting LLC*, No. 18-cr-32-2 (DLF) (D.D.C. July 1, 2019), Dkt. 148.  Upon making this finding, the Court "caution[ed] the government that any future violations of Rule 57.7 or the Court's May 29, 2019 Order will trigger a range of potential sanctions." *Id.* at 20.

Minute Order (Feb. 21, 2019)).  Because this order is still in effect through sentencing, DOJ may not release information in the Mueller Report pertaining to Mr. Stone until he has been sentenced and the order has been lifted.

Finally, the superseding indictment filed in *United States v. Concord Management and Consulting, LLC*, No. 18-cr-32-2, does not provide a basis to reprocess the Mueller Report to release any additional information that may have been officially acknowledged by the government. As the D.C. Circuit has recognized, "the question in FOIA cases is typically whether an agency improperly withheld documents *at the time that it processed* a FOIA request." *Am. Civil Liberties Union v. Dep't of Justice*, 640 F. App'x 9, 13 (D.C. Cir. 2016) (emphasis added) (citing *Bonner v. Dep't of State*, 928 F.2d 1148, 1152 (D.C. Cir. 1991)).  The Report was processed in May 2019, long before the *Concord* superseding indictment was filed.  The D.C. Circuit cautioned against "creating 'an endless cycle of judicially mandated reprocessing' of FOIA requests, lest they undermine the Act's 'premium on the rapid processing of [such] requests.'"  *Id.* (quoting *Bonner*, 928 F.2d at 1152).  Given the number of ongoing criminal and national security prosecutions and investigations related to the Special Counsel's investigation, *see* Brinkmann Decl. ¶ 44, Dkt. 54-3, to order DOJ to reprocess the Report every time a new fact is officially acknowledged in one of these ongoing matters could result in such "an endless cycle of judicially mandated processing." *Am. Civil Liberties Union*, 640 F. App'x at 13.  Moreover, creating such a cycle of reprocessing would divert the limited resources from the Office of Information Policy from processing numerous other pending FOIA requests.  *See* Exh. C (Decl. of Vanessa Brinkmann ¶¶ 6, 7, *Leopold v. Dep't of Justice*, No. 19-cv-1278-RBW (D.D.C. Nov. 12, 2019), Dkt. 38-2 (noting that as of November 12, 2019, the Office of Information Policy "has 1,820 open FOIA requests and 121 ongoing litigations" and a staff of only "seven individuals and two reviewers")).  Accordingly,

further processing of the Report to release information that may have become publicly available since the Report was processed in May 2019 is not warranted.

## **Proposed Next Steps**

As demonstrated above, reprocessing the Mueller Report at this time is not warranted. However, as undersigned counsel informed Plaintiffs, *see* Exh. A, DOJ intends to reevaluate whether reprocessing of the Mueller Report is warranted following Roger Stone's sentencing, which is currently set for February 6, 2020.  The Department respectfully proposes that it file a status report 45 days after sentencing indicating whether it will be reprocessing the Mueller Report and, if warranted, a proposed timeframe for completing reprocessing.  At that point, DOJ will know whether Mr. Stone has filed an appeal and will have had sufficient time to evaluate whether any information currently withheld should be released.


Dated: December 17, 2019                    Respectfully submitted,

                                            ETHAN DAVIS
                                            Principal Deputy Assistant Attorney General
                                            Civil Division

                                            ELIZABETH J. SHAPIRO
                                            Deputy Director
                                            Federal Programs Branch

                                            */s/ Courtney D. Enlow*
                                            COURTNEY D. ENLOW
                                            Trial Attorney
                                            United States Department of Justice
                                            Civil Division, Federal Programs Branch
                                            1100 L Street, N.W.
                                            Room 12102
                                            Washington, D.C. 20005
                                            Tel: (202) 616-8467
                                            Email: courtney.d.enlow@usdoj.gov

                                            *Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 17, 2019, I electronically transmitted the foregoing to

the parties and the clerk of court for the United States District Court for the District of Columbia

using the CM/ECF filing system.

*/s/ Courtney D. Enlow*
COURTNEY D. ENLOW
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Room 12102
Washington, D.C. 20005
Tel: (202) 616-8467
Email: courtney.d.enlow@usdoj.gov

# Exhibit A

Emails exchanged between counsel,

November—December 2019

| From: | Enlow, Courtney D. (CIV) |
| To: | Alan Butler |
| Cc: | Marc Rotenberg; John Davisson; Matt Topic |
| Subject: | RE: EPIC v. DOJ, 19-cv-810 (D.D.C.) -- Next steps in light of Stone verdict, superseding indictment in Concord Management |
| Date: | Thursday, December 05, 2019 4:39:00 PM |

Alan,

The Department of Justice intends to reevaluate whether reprocessing of the Mueller Report is warranted following Roger Stone's sentencing.  The media communications order entered in *Stone* applies through sentencing, which is currently set for February 6, 2020.

I see no need to engage in motions briefing on this issue now when DOJ will be reevaluating the issue in two months.  Engaging in motions practice under these circumstances would be a waste of the parties' and the Court's resources.  Given that the motion would not be fully briefed until the holidays, the Court may not even consider the motion before Mr. Stone is sentenced.  I think the better and more efficient path forward is for us to discuss the issue after Mr. Stone has been sentenced.

If EPIC nevertheless intends to file the motion, the Department of Justice would oppose EPIC's motion for the reasons set forth in my November 22nd email.

Best regards,
Courtney


Courtney Enlow
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W., Room 12102
Washington, D.C. 20005
(202) 616-8467
courtney.d.enlow@usdoj.gov


**From:** Alan Butler <butler@epic.org>
**Sent:** Tuesday, December 03, 2019 11:18 AM
**To:** Enlow, Courtney D. (CIV) <cenlow@CIV.USDOJ.GOV>
**Cc:** Marc Rotenberg <rotenberg@epic.org>; John Davisson <davisson@epic.org>; Matt Topic <matt@loevy.com>
**Subject:** Re: EPIC v. DOJ, 19-cv-810 (D.D.C.) -- Next steps in light of Stone verdict, superseding indictment in Concord Management

Courtney,

Thank you for your response. For the reasons below, EPIC intends to file a Motion to Order Reprocessing or, In the Alternative, for Leave to Supplement the Record in light of Roger Stone's conviction and the superseding indictment in *United States v. Concord Management.*

First, by presenting extensive evidence concerning Mr. Stone's activities, the DOJ has waived any right it had to withhold from the public that same information contained in the Mueller Report. "[W]hen information has been 'officially acknowledged,' its disclosure may be compelled even over an agency's otherwise valid exemption claim." *Mobley v. CIA*, 806 F.3d 568, 583 (D.C. Cir. 2015) (quoting *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990)). The DOJ is now required to reprocess the portions of the Mueller Report pertaining to Mr. Stone and to disclose any additional material that the government made public during Mr. Stone's trial. *See ACLU v. DOD*, 628 F.3d 612, 618 (D.C. Cir. 2011) (noting that plaintiff's appeal was remanded to ensure reprocessing of records in light of official disclosures).

Second, the DOJ must reevaluate its Exemption 7(A) claims now that the trial has ended. Exemption 7(A) only applies as long as disclosure "could reasonably be expected to interfere with enforcement proceedings." The exemption does not shield material for the entire duration of an enforcement proceeding, as the DOJ incorrectly suggested in briefing of this case. See *CREW v. DOJ*, 746 F.3d 1082, 1097 (D.C. Cir. 2014) (quoting *North v. Walsh*, 881 F.2d 1088, 1100 (D.C. Cir. 1989)) ("Disclosure of the information [the requester] seeks cannot interfere with parts of the enforcement proceeding already concluded.").

Moreover, the DOJ argued in briefing that exemption 7(A) applies to material concerning Mr. Stone because disclosure "could prejudice the trial" in his case. Brinkmann Decl. ¶ 50. The trial has now concluded. And the enforcement proceedings underlying a 7(A) assertion "must be pending or reasonably anticipated at the time of the district court's eventual decision, not merely at the time of [the plaintiff's] original FOIA request[.]" *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1115 (D.C. Cir. 2007) (emphasis added). Accordingly, the DOJ must reprocess the sections of the Mueller Report pertaining to Mr. Stone and inform EPIC and the Court whether any of the agency's 7(A) assertions can be sustained given the major change in factual circumstances. See D.C. R. Prof'l Conduct 3.3 cmt. 2 (duty to correct).

Third, the DOJ cannot rely on Judge Jackson's order in *United States v. Stone* to avoid reprocessing. Judge Jackson's order solely prohibits "[c]ounsel for the parties and the witnesses [from] making statements to the media or in public settings that pose a substantial likelihood of material prejudice to [Mr. Stone's] case." Order at 3, *United States v. Stone*, 19-18 (D.D.C. Feb. 15, 2019), ECF No. 36. The order does not bind the parties or attorneys in this matter, and it does not bar the disclosure of records pursuant to EPIC's FOIA request. As Judge Walton noted at argument, Judge Jackson's order "doesn't obviate . . . the need for me to make an independent decision under FOIA as to whether I order something more than what's been provided in order to comply with FOIA." Tr. at 71:11–14, ECF No. 83.

Finally, the doctrine of waiver by official acknowledgment also compels the DOJ to reprocess the portions of the Mueller Report pertaining to the defendants in *United States v. Concord Management and Consulting*, LLC, No. 18-CR-32-2. The government has disclosed new information through the superseding indictment in Concord Management—information that the DOJ is very likely withholding from the Mueller Report in EPIC's case. Reprocessing of the report is therefore warranted. See *ACLU*, 628 F.3d at 618; *ACLU v. DOJ*, 640 F. App'x 9, 13 (D.C. Cir. 2016) (explaining that there "there may be some circumstances in which it

is appropriate to consider new information that comes to light during litigation").

Please let us know the DOJ's position on EPIC's motion or if the DOJ will now reconsider its position on reprocessing.

Best,

Alan Butler
General Counsel
Electronic Privacy Information Center
1519 New Hampshire Ave. NW
Washington, D.C. 20036
(202) 483-1140 x103
butler@epic.org


> On Nov 22, 2019, at 4:06 PM, Enlow, Courtney D. (CIV)
> <Courtney.D.Enlow@usdoj.gov> wrote:
>
> Alan,
>
> The Department of Justice will not reprocess the Mueller Report at this time.
>
> We disagree that DOJ does not have a basis to withhold portions of the Mueller Report that concern Roger Stone and the investigation into his activities. Information concerning Mr. Stone was withheld, *inter alia*, under Exemption 7(A).  Mr. Stone was convicted less than a week ago on November 15, 2019.  His conviction is not yet final. *See Dugan v. Dep't of Justice*, 82 F. Supp. 3d 485, 501 n.6 (D.D.C. 2015) (noting that a conviction is final 'when the Supreme Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires'" (quoting *Clay v. United States*, 537 U.S. 522, 527 (2003))).  Exemption 7(A) protects information from disclosure until a conviction is final.  *See Kansi v. Dep't of Justice*, 11 F.Supp.2d 42, 44 (D.D.C. 1998) ("The potential for interference with witnesses and highly sensitive evidence that drives the 7(A) exemption .... exists at least until plaintiff's conviction is final.").  Mr. Stone's sentencing has been scheduled for February 6, 2020.  Exemption 7(A) protects information from disclosure pending the conclusion of sentencing.  *See Basey v. Dep't of the Army*, No. 4:16-CV-00038-TMB, 2018 WL 8798586, at *9 (D. Alaska May 14, 2018) ("Although Plaintiff's trial has concluded and Plaintiff is currently awaiting sentencing, the Court finds that exemption 7(A) remains applicable at least pending the conclusion of sentencing and the statutory period for a notice of appeal.").  And although Mr. Stone has not yet filed a notice of appeal, his time for doing so has not yet run.  If Mr. Stone files an appeal, Exemption 7(A) protects information from disclosure.  As Judge Walton has found, "[a] pending appeal of a criminal conviction qualifies as a pending or prospective law enforcement proceeding for purposes of Exemption 7(A)."  *Kidder v. F.B.I.*, 517 F. Supp. 2d 17, 27 (D.D.C. 2007) (citing *Kansi v. Dep't of Justice*, 11 F. Supp. 2d 42, 44 (D.D.C. 1998)); *see also Adionser v. Dep't of Justice*, 811 F. Supp. 2d 284, 298 (D.D.C. 2011), *aff'd in part sub nom. Adionser v. U.S. Dep't of Justice*, No.

11-5093, 2012 WL 5897172 (D.C. Cir. Nov. 5, 2012) ("For purposes of Exemption 7(A), a pending appeal of a criminal conviction qualifies as an ongoing law enforcement proceeding.").

In addition, DOJ withheld information pertaining to Mr. Stone because that information was prohibited from disclosure pursuant to the media communications order in that case.  *See* Order, *United States v. Stone*, 1:19-cr-00018 (D.D.C. Feb. 15, 2019), Dkt. 36, *amended by* Minute Order (Feb. 21, 2019).  That Order is in effect through sentencing, which, as stated above, is currently scheduled for February 6, 2020.

The superseding indictment filed in *United States v. Concord Management and Consulting, LLC*, No. 18-CR-32-2, also does not provide a basis to reprocess the Mueller Report.  As the D.C. Circuit has recognized, "the question in FOIA cases is typically whether an agency improperly withheld documents at the time that it processed a FOIA request."  *Am. Civil Liberties Union v. U.S. Dep't of Justice*, 640 F. App'x 9, 13 (D.C. Cir. 2016) (citing *Bonner v. Dep't of State*, 928 F.2d 1148, 1152 (D.C. Cir. 1991)).  The D.C. Circuit cautioned against "creating 'an endless cycle of judicially mandated reprocessing' of FOIA requests, lest they undermine the Act's 'premium on the rapid processing of [such] requests.'"  *Id.* (quoting *Bonner*, 928 F.2d at 1152).  Because the case is fully briefed and argued, further processing of the Report is not warranted.

Best regards,
Courtney

---

**From:** Alan Butler <butler@epic.org>
**Sent:** Friday, November 15, 2019 2:49 PM
**To:** Enlow, Courtney D. (CIV) <cenlow@CIV.USDOJ.GOV>
**Cc:** Marc Rotenberg <rotenberg@epic.org>; John Davisson <davisson@epic.org>; Matt Topic <matt@loevy.com>
**Subject:** EPIC v. DOJ, 19-cv-810 (D.D.C.) -- Next steps in light of Stone verdict, superseding indictment in Concord Management

Courtney,

We are writing to follow up after conclusion of the Roger Stone trial this week.

Now that Mr. Stone has been convicted on all 7 counts, we believe that the DOJ does not have any basis to withhold portions of the Mueller Report that concern Mr. Stone and the investigation into his activities. We also believe that the DOJ is obligated to release any portions of the report that correspond with new facts in the superseding indictment that the Government indicated it would file today in United States v. Concord Management and Consulting, LLC, No. 18-CR-32-2.

Will the agency agree to reprocess the Mueller Report based on these developments? We believe that doing so would avoid unnecessary litigation and serve the Court's interests in expeditious treatment of this case and judicial efficiency. Please let us know by Wednesday November 20 if the DOJ will agree

to reprocess the report by Friday December 20.

Sincerely,

Alan Butler
Senior Counsel
Electronic Privacy Information Center
1519 New Hampshire Ave. NW
Washington, D.C. 20036
(202) 483-1140 x103
butler@epic.org

# Exhibit B

Order, *United States v. Stone*, 1:19-cr-00018 (D.D.C. Feb. 15, 2019), Dkt. 36, *amended by* Minute Order (Feb. 21, 2019)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

```
_____
                                )
UNITED STATES OF AMERICA,        )
                                )
        v.                       )       Crim. Action No. 19-0018 (ABJ)
                                )
ROGER J. STONE, JR.,             )
                                )
                Defendant.       )
_____ )
```

## ORDER

At the status conference held in this case on February 1, 2019, the parties were invited to file submissions by February 8, 2019 setting forth any reasons why the Court should not enter an order pursuant to Local Criminal Rule 57.7(c) requiring all interested parties, in particular, counsel for both sides, to refrain from making further statements to the media or in public settings that are "substantially likely to have a materially prejudicial effect" on this case.  *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1076 (1991).

The Court has received submissions from both sides, as well as a filing from a non-party in the form of an *amicus curiae* submission, and it has reviewed and considered them all.  *See* Roger Stone's Resp. to the Court's Opportunity to Respond to the Possibility of the Entry of an Order Under Local Criminal Rule 57.7(b) & (c) [Dkt. # 28]; Gov't's Filing Regarding Imposition of Order Pursuant to Local Criminal Rule 57.7(c) [Dkt. # 29]; *Amici Curiae* Br. of Dr. Jerome Corsi [Dkt. # 35].

"Because lawyers have special access to information through discovery and client communications, their extrajudicial statements pose a threat to the fairness of a pending proceeding." *Gentile,* 501 U.S. at 1074.  Thus, the Rules of this Court provide:

> It is the duty of the lawyer or law firm not to release or authorize the release of information or opinion which a reasonable person would expect to be disseminated by means of public communication, in connection with pending or imminent criminal litigation with which the lawyer or the law firm is associated, if there is a reasonable likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice.

LCrR 57.7(b)(1).

Rule 57.7(b)(1) applies to any case in this district. Local Criminal Rule 57.7(c) goes on to set forth specific guidance for widely publicized cases, and it gives the Court authority "[i]n a widely publicized or sensational criminal case, . . . [to] issue a special order governing such matters as extrajudicial statements by parties, witnesses and attorneys likely to interfere with the rights of the accused to a fair trial by an impartial jury." LCrR 57.7(c). As the Supreme Court has noted:

> The limitations are aimed at two principal evils: (1) comments that are likely to influence the actual outcome of the trial, and (2) comments that are likely to prejudice the jury venire, even if an untainted panel can ultimately be found. Few, if any, interests under the Constitution are more fundamental than the right to a fair trial by "impartial" jurors, and an outcome affected by extrajudicial statements would violate that fundamental right.

*Gentile,* 501 U.S. at 1075. For these reasons, given the widespread media coverage this case has already received, the Court will impose a limitation on public communications by lawyers at this time.

In addition, the Court has particular concerns about the potential impact of public statements made in the District of Columbia, directed at individuals who may be members of the venire from which the jury will be drawn. And, in light of the size and vociferousness of the crowds that have already been attracted to these proceedings, and the risk that public pronouncements by the participants may inflame those gatherings, the Court is persuaded that a narrowly tailored order governing the conduct of participants in the matter while they are at the courthouse is necessary to advance the Court's legitimate interest in maintaining the order and

2

decorum that is essential to court proceedings and the fair administration of justice. *See Cox v. Louisiana,* 379 U.S. 559, 562 (1965) ("[I]t is of the utmost importance that the administration of justice be absolutely fair and orderly. . . . A State may adopt safeguards necessary and appropriate to assure that the administration of justice at all stages is free from outside control and influence.");[1] *see also Hodge v. Talkin,* 799 F. 3d 1145, 1163–64 (D.C. Cir. 2015), *reh'g en banc denied* (recognizing the significance of the "interest in maintaining suitable decorum in the area of a courthouse" and emphasizing the continuing "vitality" of the "genuine" and "compelling" "interest in preserving public confidence in the integrity of the judicial process").

Therefore, in order to safeguard the defendant's right to a fair trial; to ensure that the Court has the ability to seat a jury that has not been tainted by pretrial publicity; to maintain the dignity and seriousness of the courthouse and these proceedings; and to protect the safety and security of parties, witnesses, jurors, attorneys, court personnel, and members of the public seeking access to the building to conduct court business and attend these and other public proceedings, the following orders are now in effect in this case:

It is hereby **ORDERED** that

> Counsel for the parties and the witnesses must refrain from making statements to the media or in public settings that pose a substantial likelihood of material prejudice to this case; and

it is **FURTHER ORDERED** that

---

1       *See also Shepard v. Maxwell,* 384 U.S. 333, 358 (1966) ("[T]he courtroom and the courthouse premises are subject to the control of the court."); *id.* at 362–63 ("Due process requires that the accused receive a trial by an impartial jury free from outside influences. . . . The courts must take such steps by rule and regulation that will protect their processes from prejudicial outside interferences.  Neither prosecutors, counsel for defense, the accused, witnesses, court staff nor enforcement officers coming under the jurisdiction of the court should be permitted to frustrate its function."); *Cox,* 379 U.S. at 562 ("The constitutional safeguards relating to the integrity of the criminal process attend every stage of a criminal proceeding . . . . [t]here can be no doubt that they embrace the fundamental conception of a fair trial, and that they exclude influence or domination by either a hostile or a friendly mob.").

all interested participants in the matter, including the parties, any potential witnesses, and counsel for the parties and the witnesses, must refrain, when they are entering or exiting the courthouse, or they are within the immediate vicinity of the courthouse, from making statements to the media or to the public that pose a substantial likelihood of material prejudice to this case or are intended to influence any juror, potential juror, judge, witness or court officer or interfere with the administration of justice.

There will be no additional restrictions imposed on the defendant's public statements or appearances at this time, although this order may be amended in the future consistent with Local Criminal Rule 57.7(c) if necessary. This order should not be interpreted as modifying or superseding the condition of the defendant's release that absolutely prohibits him from communicating with any witness in the case, either directly or indirectly. Nor does this order permit the defendant to intimidate or threaten any witness, or to engage or attempt to engage in any conduct in violation of 18 U.S.C. §1512.

Finally, while it is not up to the Court to advise the defendant as to whether a succession of public statements would be in his best interest at this time, it notes that one factor that will be considered in the evaluation of any future request for relief based on pretrial publicity will be the extent to which the publicity was engendered by the defendant himself.

**SO ORDERED.**


AMY BERMAN JACKSON
United States District Judge

DATE: February 15, 2019

4

# Exhibit C

Declaration of Vanessa Brinkmann, as filed in *Leopold v. Dep't of Justice*, 19-cv-1278 (RBW) (D.D.C. Nov. 12, 2019), Dkt. 38-2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
JASON LEOPOLD, BUZZFEED, INC.,          )
                                        )
                Plaintiffs,             )
                                        )
        v.                              )        Civil Action No. 19-cv-1278 (RBW)
                                        )
UNITED STATES DEPARTMENT OF             )
JUSTICE, et al.                         )
                                        )
                Defendants.             )
_____         )
                                        )
CABLE NEWS NETWORK,                     )
                                        )
                Plaintiff,              )
                                        )
        v.                              )        Civil Action No. 19-cv-1626 (RBW)
                                        )
FEDERAL BUREAU OF                       )
INVESTIGATION,                          )
                                        )
                Defendant.              )
_____         )

## <u>SECOND DECLARATION OF VANESSA R. BRINKMANN</u>

I, Vanessa R. Brinkmann, declare the following to be true and correct:

1. I am Senior Counsel in the Office of Information Policy (OIP), United States

Department of Justice (Department or DOJ). In this capacity, I am responsible for supervising

the handling of the Freedom of Information Act (FOIA) requests subject to litigation processed

by the Initial Request Staff (IR Staff) of OIP. The IR Staff of OIP is responsible for processing

FOIA requests seeking records from within OIP and from within six senior leadership offices of

the Department, specifically the Offices of the Attorney General (OAG), Deputy Attorney

General (ODAG), Associate Attorney General (OASG), Legal Policy (OLP), Legislative

Affairs (OLA), and Public Affairs (PAO).  Moreover, the IR Staff is responsible for processing

FOIA requests seeking certain records from the Special Counsel's Office (SCO).

2.   The IR Staff of OIP is responsible for conducting searches in response to FOIA

requests seeking records of the above-referenced offices, for determining whether records

located pursuant to its searches are responsive to those FOIA requests, and, if so, whether such

records are appropriate for release in accordance with the FOIA.  In processing such requests,

the IR Staff consults with Department personnel in the senior leadership offices, with

Department records management staff and/or with other components within the Department, as

well as with others in the Executive Branch.

3.   I make the statements herein on the basis of personal knowledge and on information

acquired by me in the course of performing my official duties, including my familiarity with

OIP's resources and procedures for responding to FOIA requests, my discussions with

knowledgeable Department personnel, and my review of and determinations made regarding the

request and material at issue in this case.

4.   This second declaration will specifically address the questions directed to

Defendants in this Court's October 3, 2019 Order, ECF No. 33.[1]

### OIP's Current Caseload and Staffing Levels

5.   As stated above, OIP's Initial Request Staff (IR Staff) is responsible for processing

FOIA requests seeking records from within OIP and from within six senior leadership offices

(OAG, ODAG, OASG, PAO, OLA, OLP), plus certain records of SCO.  The IR Staff's

---

[1] OIP is only providing information related to case number 19-cv-1278, filed by Plaintiffs Jason
Leopold and Buzzfeed, because OIP was not named as a defendant in the Cable News Network
(CNN) suit, originally filed as case number 19-cv-1626.

Litigation Team is specifically responsible for handling those requests that are in litigation. The remainder of the IR Staff is responsible for handling all other FOIA requests – i.e., requests for leadership office or SCO records that are not in litigation.

6. As of November 12, 2019, OIP has 1,820 open FOIA requests and 121 ongoing litigations.

7. The non-litigation staff consists of five full-time employees (FTEs) (Chief of the Initial Request Staff, one reviewer, and three Senior Government Information Specialists (GIS)), one temporary detailee (six-month detail with four and a half months left with OIP), and three contractors. The three GIS, three contractors, and one detailee are responsible for processing all FOIA requests received by OIP that are not in litigation, subject to review by the IR Staff reviewer and/or Chief. In sum, the 1,820 non-litigation FOIA requests involving senior leadership office and SCO records under OIP's purview are currently processed by a staff of seven individuals and two reviewers.

8. The IR Staff's Litigation Team consists of seven FTEs (Senior Counsel, two Senior Supervisory Attorneys, and four Attorney-Advisors). Each FOIA litigation is assigned to a team of two: one of the four Attorney-Advisors, paired with one of the two Senior Supervisory Attorneys. Each Attorney-Advisor is responsible for handling all aspects of each litigation request assigned to them, including searching for and processing responsive records, coordinating consultations within the Executive Branch, drafting declarations and other court filings, and working with the litigators assigned to each case, subject to review by the Senior Supervisory Attorney and/or the Senior Counsel. In sum, all 121 FOIA litigations involving senior leadership office or SCO records under OIP's purview are processed by a staff of four attorneys and three reviewing attorneys.

3

9.  Of the 121 matters being handled by the IR Staff Litigation Team, OIP is a named litigant in 102 cases at varying stages in multiple jurisdictions.  Of these 102 cases, seventy-eight are filed in the United States District Court for the District of Columbia and twenty-four are filed in other jurisdictions.  Of the remaining nineteen matters, nine are litigation consultations and ten are litigation referrals, which OIP receives from other DOJ components or Executive Branch agencies who are named defendants in FOIA litigation.  For perspective, about one year ago, as of November 13, 2018, OIP was involved in a total of ninety-three ongoing litigation matters – amounting to a 30% increase in litigation in the past year.

10. Plaintiffs Jason Leopold and BuzzFeed have filed nine FOIA litigation cases involving OIP, eight of which were filed in the United States District Court for the District of Columbia.  The eight cases in this district involve a total of twenty-eight individual FOIA requests, most of which consist of multiple, often unrelated parts requiring OIP to conduct several different searches for even just one of  the twenty-eight requests.  As of November 12, 2019, the IR Staff has at least eighty-five open FOIA requests submitted by Mr. Leopold or BuzzFeed:  sixty-three from Mr. Leopold, and another twenty-two from other BuzzFeed reporters.[2]

11. OIP has been inundated by an ongoing and unprecedented surge of FOIA requests, which began in the middle of Fiscal Year (FY) 2016 and which has not abated.  In addition to the sheer volume of incoming FOIA requests, OIP has also experienced an influx of increasingly complicated requests requiring complex, voluminous searches of a variety of

---

[2] OIP's FOIA tracking system can only identify FOIA requests submitted by BuzzFeed reporters when "BuzzFeed" is included in the "organization" field associated with a given FOIA request.  It is likely that OIP has more than twenty-two requests submitted by other BuzzFeed reporters that don't list BuzzFeed in the tracking system's "organization" field.

electronic records, most notably emails, often implicating dozens of records custodians and vast

amounts of electronic data.  At the same time, the number of lawsuits filed in connection with

requests being processed by OIP has exponentially increased – in fact, tripling in the past three

years.[3]  This combination of increased volume of requests and custodians, request scope and

complexity, and exponential increase in litigation has substantially increased the amount of time

and resources required for OIP to complete its searches and processing, and has exhausted

OIP's resources.

### OIP's Efforts to Respond to Its Surging FOIA Obligations

12. To OIP's knowledge, DOJ has not requested additional funding from Congress to hire

Federal employees to assist in processing FOIA requests.  The Department recognizes that the

solution to modernization is a combination of hardware, software, and staffing.  Solely adding

staff, without increasing capacity, will not fully address the problem.  Consequently, the

Department has invested significant resources to bolster the Department's technical capacity

and capability in an effort to handle the increased volume of FOIA requests, as well as shifted

internal resources to address issues with FOIA and e-discovery.

13. In FY 2019, OIP acquired three contractors and one temporary detailee to work on

non-litigation FOIA requests, as described supra in paragraph seven, allowing the IR Staff to

process more requests than it received over the last six months of FY 2019.  Additionally, in FY

2018 and FY 2019 OIP reallocated internal resources, and the IR Staff Litigation Team acquired

two Senior Attorneys from another team within OIP to address the exponential increase in

litigation.  To further address staffing constraints and directly address this exponential increase

---

[3] At the beginning of FY 2017, OIP was involved in forty FOIA litigation matters.  As noted elsewhere, OIP is involved in 121 FOIA litigation matters.

in litigation matters, the Litigation Team has advertised and intends to onboard Attorney-Advisor detailees, and is exploring acquiring additional contractors, to assist with the litigation demand.

14. Furthermore, in FY 2019, OIP reorganized its internal search processing queues by expanding the number of search queues used by the Justice Management Division, Office of the Chief Information Officer (JMD/OCIO), the entity which conducts all electronic searches, including emails on behalf of OIP. These search queues are distinguished from each other by the total number of senior leadership office search custodians required to be searched. This process allows JMD/OCIO to more efficiently and effectively run searches for simpler/narrower requests, which may be completed more quickly when they are not in the search queue behind larger, more complex requests involving more search custodians.

15. Finally, OIP is working closely with JMD/OCIO to make improvements to efficiency and search capacity for the FOIA records searches it handles on behalf of OIP. JMD/OCIO has been able to devote additional resources to address the backlog of records searches pending in their queues with the addition of four contractors in FY 2020. Additionally, JMD has an expected increase of four servers between FY 2019 and FY 2020 and increased their software licensing capacity by 250%, contributing to a more effective and efficient search process.

16. Despite all of the challenges described above, OIP continues to respond by employing a variety of system improvements and adaptive methods that have resulted in record numbers of FOIA requests being processed to completion each year. However, OIP recognizes that even with these adaptations and advances, its backlog of requests continues to grow, and it is therefore essential that OIP continue to identify new efficiencies in our FOIA processing

methods to ensure that the management of our FOIA caseload is as dynamic as the breadth, complexity, and volume of the FOIA requests being received by OIP. For this reason, OIP continues to look at ways to increasing staffing levels while also improving the technological processes which are at the heart of processing the FOIA requests received by OIP.

17. Notwithstanding our limited resources and surging FOIA obligations, OIP has consistently succeeded in fulfilling more FOIA requests annually. In FY 2014 and 2015, OIP fulfilled 1,265 and 1,528 FOIA requests, respectively. In FY 2016, OIP fulfilled over 2,000 requests for the first time, fulfilling a total of 2,054 FOIA requests. In FY 2017 OIP fulfilled 2,113 FOIA requests. FY 2018 was OIP's all-time record, fulfilling 2,790 FOIA requests. FY 2019 was the first time since 2014 where OIP did not fulfill more records than the previous year, due to both the month-long government shutdown at the beginning of FY 2019 and a change in OIP's tracking system that took place halfway through FY 2019. Still, OIP was able to fulfill 2,460 FOIA requests in FY 2019, which is more requests than OIP received in the same Fiscal Year.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Vanessa R. Brinkmann

Executed on this 12th day of November 2019.