IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
- - - - - - - - - - - - - - - - - - x
ELECTRONIC PRIVACY INFORMATION          CV No. 1:19-cv-00810-RBW
CENTER,
            Plaintiff,

v.


UNITED STATES DEPARTMENT OF JUSTICE,
            Defendant.
- - - - - - - - - - - - - - - - - - x
JASON LEOPOLD, et al.,                  CV No. 1:19-cv-00957-RBW
            Plaintiffs,

v.
                                        Washington, DC
U.S. DEPARTMENT OF JUSTICE,             Wednesday, December 18, 2019
            Defendant.                  12:30 p.m.
_____

                  TRANSCRIPT OF STATUS CONFERENCE
          HELD BEFORE THE HONORABLE REGGIE B. WALTON
                 UNITED STATES DISTRICT JUDGE
_____

APPEARANCES:
For the Plaintiffs:    Alan J. Butler, Esq.
                       John L. Davisson, Esq.
                       ELECTRONIC PRIVACY INFORMATION CENTER
                       1519 New Hampshire Avenue, NW
                       Washington, DC 20036
                       (202) 483-1140 ext. 103

                       Matthew Topic, Esq.
                       LOEVY & LOEVY
                       311 N. Aberdeen Street
                       Third Floor
                       Chicago, IL 60607
                       (312) 243-5900


For the Defendant:     Courtney D. Enlow, Esq.
                       Elizabeth J. Shapiro, Esq.
                       U.S. DEPARTMENT OF JUSTICE
                       Civil Division, Federal Programs Branch
                       1100 L Street, NW
                       Washington, DC 20005
                       (202) 616-8467


Court Reporter:        Timothy R. Miller, RPR, CRR, NJ-CCR
                       Official Court Reporter
                       U.S. Courthouse, Room 6722
                       333 Constitution Avenue, NW
                       Washington, DC 20001

1                        **P R O C E E D I N G S**

2                    THE DEPUTY CLERK:  Your Honor, we're in Civil

3       Action 19-810, Electronic Privacy Information Center v.

4       United States Department of Justice; and in Civil Action

5       19-957, Jason Leopold, et al., v. United States Department

6       of Justice.

7                    If I can have counsel please approach the podium

8       and identify yourself for the record, please.

9                    MR. BUTLER:  Good afternoon, Your Honor.  Alan

10      Butler on behalf of Electronic Privacy Information Center.

11                   THE COURT:  Good afternoon.

12                   MR. BUTLER:  With me at counsel table is

13      Mr. Davisson.

14                   THE COURT:  Good afternoon.

15                   MR. TOPIC:  Good afternoon, Your Honor.  Matt

16      Topic for Leopold and BuzzFeed.

17                   THE COURT:  Good afternoon.

18                   MS. ENLOW:  Good afternoon, Your Honor.  Courtney

19      Enlow for defendants, and with me at counsel table is

20      Elizabeth Shapiro.

21                   THE COURT:  Okay.

22                   I had issued an order for you all to be in a

23      position to reply to a number of questions that I have first

24      related to the order issued by Judge Jackson in the Stone

25      case that was designed to ensure that information would not

1    be disseminated to the public that might impact on Mr. Stone

2    and the government's ability to have a fair trial.  And I've

3    looked at the submissions that were made and, I must say,

4    I'm a little perplexed by the position that somehow what she

5    was seeking to accomplish would not be undermined if another

6    component of the Justice Department complied with a request

7    for the production of FOIA information that would, if it

8    becomes public, undermine her objective to try and ensure

9    that Mr. Stone and the government in that case receive a

10   fair trial.  But I'll hear from plaintiffs' counsel further

11   in reference to that.

12            MR. BUTLER:  Sure, Your Honor.

13            As to the media communications order in the Stone

14   case, our view, as we laid out in the papers we filed this

15   morning, is that the order is quite specific and limited.

16   It has two components.  The first binds counsel in that

17   case -- and counsel in that case is not present here, so we

18   believe that that doesn't apply to present counsel -- and,

19   second, would apply to the parties which includes the

20   Department of Justice, but statements that are made when

21   entering or exiting the courthouse or within the immediate

22   vicinity of the courthouse, and also, it would require that

23   there be a substantial likelihood of material prejudice to

24   the case by those statements.  So we think that an official

25   release under the FOIA by the Department of Justice or by

1    the Office of Information Policy, one, is not a statement

2    made entering or exiting or in the vicinity of the

3    courthouse; is not what Judge Jackson had in mind in her

4    order; and, two, would not create a substantial likelihood

5    of material prejudice because --

6            THE COURT:  But -- not suggesting that you or

7    anybody associated with your operations would do otherwise,

8    but you seem to be saying that if I require that the

9    information be produced, that you or somebody else could do

10   what the order prohibits --

11           MR. BUTLER:  Sure.  But I think --

12           THE COURT:  -- and undermine a constitutional

13   right that Mr. Stone has to receive a fair trial.

14           MR. BUTLER:  Well, Your Honor, I think that Judge

15   Jackson properly circumscribed her order recognizing that

16   individuals -- obviously, surrounding the Roger Stone trial,

17   there was a lot of discussion in the public about the trial;

18   about the underlying facts; about the nature of the

19   allegations --

20           THE COURT:  I mean, she drew it -- I mean, she --

21   I discussed with her the issue because I had the same issue

22   in several of my cases earlier, and she drew it as narrowly

23   as she thought she had to.

24           MR. BUTLER:  Right.  And I think she recognized

25   properly that she can't and didn't have a role to bind the

1    public statements of others who were not in that case --

2            THE COURT:  But it seems to me that's a different

3    issue than I have to consider as to whether I would be

4    prepared to release the same information that she did not

5    want disseminated because of her concern that it would

6    undermine the ability of a fair trial to be had in that case

7    and, therefore, her objective could be totally defeated by

8    releasing the information which obviously, maybe, you may be

9    entitled to at some point, but it -- releasing that

10   information at a time when it could impact on his ability to

11   get a fair trial.

12           MR. BUTLER:  Well, I think -- I -- again, I think,

13   Your Honor, that --

14           THE COURT:  And I know I would have been very

15   upset in the Scooter Libby trial or the Roger Clemens case

16   if I -- which I did issue gag orders -- if there had been a

17   FOIA case filed and another judge had released information

18   and then my whole objective of trying to ensure that those

19   individuals received a fair trial were defeated.

20           MR. BUTLER:  I understand that, Your Honor.  I

21   think that, again, we're bound by the -- or the Department

22   of Justice and their counsel in the Stone trial are bound by

23   the terms of Judge Jackson's order.  Judge Jackson's order,

24   as you highlighted, is necessarily limited, and I think that

25   it doesn't, by its own terms, limit the Department of

1    Justice's production to an individual requestor of documents

2    under the FOIA.

3            THE COURT:  But even -- I agree that her order is

4    limited.  But does that mean that I can't take into account

5    her concerns in assessing the timeliness of when I'm going

6    to order the release of FOIA information?

7            MR. BUTLER:  I don't see how that fits within the

8    statutory structure of the FOIA because the -- I mean, the

9    Court obviously has, you know, equitable authority on how it

10   manages its cases, but the FOIA's pretty clear that material

11   can -- must be produced to the plaintiff if it's non-exempt

12   and responsive, and here the materials within the Mueller

13   report that are redacted about Mr. Stone are clearly

14   responsive and we are arguing that they are non-exempt at

15   this point.  And I think that the secondary consideration --

16           THE COURT:  But the government is asserting

17   exemptions that would encompass it; right?

18           MR. BUTLER:  They've -- so the government has

19   asserted, as to the Roger Stone materials, Exemption 7(A),

20   7(B) as to some portions, and 7(C) --

21           THE COURT:  Right.

22           MR. BUTLER:  -- /6 as to other portions.  Our

23   position at this point -- which is relevant to your second

24   question -- is that the basis for the government's 7(A)

25   argument and 7(B) and 7(C) arguments all hinged on the trial

1    itself, not the sentencing, and so now that the trial's

2    completed and if you -- we look to the Brinkmann declaration

3    for their explanation of why those materials -- why they

4    believe those materials are exempt --

5                 THE COURT:  I mean, this trial is completed.

6    That's true.  To what extent dissemination of the

7    information could impact on the sentencing, it's probably

8    not as, obviously, significant as the trial, but I assume,

9    as all criminal defendants do, he will appeal his

10   conviction.  It's not inconceivable that an appellate court

11   could reverse.  And if an appellate court reversed, then

12   she'd be back in the same situation having to retry the

13   case.

14                 MR. BUTLER:  That's correct, Your Honor, although

15   I believe that at this point, the actual -- so as to the

16   media communications order, the question is likelihood of --

17   substantial likelihood of material prejudice.  As to

18   Exemption 7(A), it's interference with the enforcement

19   proceedings.  So part of our point is that in the course of

20   the Stone trial, the government put on its case; presented

21   evidence; you know, brought witnesses forth; revealed

22   information that it had not previously revealed about its

23   trial strategy --

24                 THE COURT:  And that information, I would agree,

25   should be produced --

1           MR. BUTLER:  Right.

2           THE COURT:  -- if it's already been made public.

3    I agree with that.

4           MR. BUTLER:  Right.  So that information, we

5    believe, is -- at least some set of the -- subset of that

6    information, we believe, is contained in the descriptions of

7    the Stone matter in the Mueller report and is redacted and

8    so as to that, I think, again, the media communications

9    order would not apply because there's no substantial risk of

10   material prejudice, and as to 7(A) it wouldn't apply because

11   there's no risk of interference with the enforcement

12   proceeding.  So while it may be the case, you know, in some

13   earlier cases that while a criminal prosecution was pending

14   sentencing or appeal --

15          THE COURT:  So are you seeking anything more than

16   what was revealed in the Stone trial that's contained in the

17   Mueller report?

18          MR. BUTLER:  Well, we've made two sets of

19   arguments; right?  There's all the arguments that we made

20   already in the summary judgment motion that Your Honor is

21   considering as to the scope of 7(A) with respect to Stone

22   and other matters and then there's the, sort of, new point

23   that we've raised in the status report in this hearing with

24   respect to the material disclosed in the Stone trial.  So I

25   think, as of right now with respect to the Stone materials,

1    there's a clear subset of information which is anything that

2    was disclosed at the Stone trial -- in the course of the

3    Stone trial or disclosed to Stone or his attorneys --

4    because, again, that goes to the risk of interference --

5    needs to be released.  It's officially acknowledged.

6    There's no basis for withholding it at this point.  But

7    also, the conclusion of the Stone trial, I think, undermines

8    the basic theory of 7(A) as to all of the Roger

9    Stone-related materials which --

10             THE COURT:  I think I agree with your first

11   position.  I have problems, like I say, with the second

12   position, because it seems to me the government has a

13   legitimate concern in reference to not only itself receiving

14   a fair trial, but also Mr. Stone receiving a fair trial, and

15   if there's information in the report that was not revealed

16   and disclosure of that information could impact on either

17   one of their ability to get a fair trial, I still think that

18   those exemptions come into play, but let me hear from the

19   government --

20             MR. BUTLER:  Sure.

21             THE COURT:  -- and then I'll let you respond.

22             MR. BUTLER:  Okay.

23             MS. ENLOW:  Thank you, Your Honor.

24             A couple of points about the media communications

25   order, and then I'll touch on 7(A) and then, really, the

1    practicality of the situation here.

2         With regard to the media communications order,

3    it's not so limited as to just apply to statements outside

4    the courthouse.  It's -- counsel for the parties have to

5    refrain from making statements to the media or in public

6    settings that propose -- that pose a substantial likelihood

7    of material prejudice in the case.

8         Now, Judge Jackson didn't limit that just through

9    trial.  She extended it through sentencing.  And the

10   government takes -- of course, takes the obligation to

11   comply with the order very seriously and has taken the

12   position, as we argued back in August, that release of

13   information in the report would violate this order and,

14   therefore, cannot be produced.  Now, this is not something

15   under the FOIA.  This is entirely separate.  The Supreme

16   Court has recognized that when -- in the Kissinger case that

17   was in our motion for summary judgment that when a court

18   order prevents disclosure of material, that's entirely

19   without -- outside the scope of the FOIA and, indeed, the

20   court doesn't have jurisdiction to decide that the materials

21   should be released under the Freedom of Information Act

22   case.

23        So even setting the media communications order

24   aside, 7(A) absolutely still applies through sentencing and

25   through any appeal.  This Court has -- Your Honor has

1    recognized in Kidder v. FBI -- it was a 2007 case, 517 F.

2    Supp. 2d at 17 -- that a pending appeal qualifies as a

3    pending law enforcement proceeding under Exemption 7(A).

4    And all of these harms that Your Honor's recognized is --

5    are absolutely applicable if the case goes up on appeal and

6    comes back and a new trial is ordered.  The same harms

7    apply.  But, again, setting aside the law for a moment here

8    on those two issues, as a practical matter, the D.C. Circuit

9    has recognized in ACLU v. DOJ that the courts must avoid

10   this endless cycle of judicially mandated reprocessing

11   because then cases simply are never over.  What plaintiffs

12   are seeking, especially with regard to the information

13   regarding the Concord case -- the superseding indictment

14   issued in that case --

15          THE COURT:  What -- I don't know anything about

16   that case.  What is that case about?  Do you know?

17          MS. ENLOW:  Sure.  Yes.  So that -- in that case,

18   the ACLU sought documents related to, I believe, the drone

19   strikes, and I believe the government withheld certain

20   material because it was classified.  And up on appeal, the

21   ACLU -- excuse me, the government made an assertion that

22   additional information would be released at some point soon

23   about this program.  And the ACLU made the argument that

24   that statement by the government that it intended to release

25   more information meant that the government should be

1    required to reprocess the documents that were withheld in

2    the FOIA case, and the D.C. Circuit rejected that argument

3    saying that -- again, that the court should avoid this

4    judicially mandated cycle of reprocessing because the --

5    under the FOIA, it matters for -- the exemptions that matter

6    are what were taken at the time the documents were

7    processed, not at the time of the decision, and so that if

8    we allow the courts to continue to direct reprocessing over

9    and over and over again, the cases are simply never over.

10             THE COURT:  Actually, what I was asking about was

11   the superseding indictment in the U.S. v. --

12             MS. ENLOW:  Oh, I apologize, Your Honor.

13             THE COURT:  -- in the Research Agency case.

14   That's what I was asking about.

15             MS. ENLOW:  I am sorry about that, Your Honor.

16             THE COURT:  Do you know what that case is about?

17             MS. ENLOW:  That's the case in front of Judge

18   Friedrich with the Internet Research Agency.  It's one of

19   the interference cases.  I don't have an in-depth knowledge

20   of that case.

21             THE COURT:  But that's a criminal case?

22             MS. ENLOW:  It is a criminal case, yes, and I

23   believe it's set for trial in April, but, you know, as Your

24   Honor is aware, there's a number of pending criminal

25   prosecutions related to the Special Counsel's office.  Those

1   were listed in Ms. Brinkmann's declaration when we filed the

2   motion for summary judgment.  There's at least half a dozen

3   mentioned in those, but then there's also the ones that are

4   mentioned in the Appendix D to the report and there's a long

5   list of pending and ongoing matters.  To require the

6   government to essentially reprocess the report every single

7   time a new fact related to any of these other ongoing

8   matters might come out would, in fact, result in such

9   judicially mandated reprocessing that the D.C. Circuit said

10   the Court should not be doing, but -- and also, as a

11   practical matter, the Office of Information Policy processed

12   this report and, as Your Honor's aware, the office is

13   incredibly inundated with at least approximately 2,000 FOIA

14   requests.  One hundred and twenty or so are in litigation.

15   And they only have half a dozen folks to process these.  So

16   to reprocess and reprocess and reprocess the Mueller report

17   simply takes away resources from these other cases where

18   these documents, you know, in the other cases might not have

19   been produced yet, but --

20          THE COURT:  But does -- let me just ask -- I mean,

21   does your position change in reference to the information

22   that was actually released or made public in the Stone trial

23   that's also contained in the Mueller report?  I mean, is

24   your position that even though that information has been

25   disseminated to the public in the Stone case, that that

1    information is still exempt from disclosure?

2          MS. ENLOW:  The position is that, as a practical

3    matter, the government is going to -- after Mr. Stone is

4    sentenced which is scheduled for February 6th, DOJ is going

5    to look at the report again and see what information, if

6    any, can be released either because it was disclosed in the

7    Stone trial or because -- basically, it's going to evaluate

8    whether 7(A) applies to the material that was withheld for

9    Mr. Stone.  So as a practical matter, ordering reprocessing

10   now when -- especially on EPIC's proposed deadline of

11   January 17th, is just quite simply a race -- a waste of

12   resources, especially when the government is already going

13   to look at the material again in February.

14         THE COURT:  Well, I mean, it is -- it seems to me

15   I -- I can't just ignore the issuance of an order by another

16   member of my court who issued that order for the purpose of

17   protecting the constitutional rights of Mr. Stone to receive

18   a fair trial, and also, the government's right to receive a

19   fair trial, and I don't think I can just overlook that and

20   conclude that obligations of production under FOIA should

21   take precedent over a desire -- an attempt by a colleague to

22   protect the constitutional rights of somebody accused of a

23   crime, and I think the Constitution does have greater weight

24   than a statute since it's the foundation of the creation of

25   this country.  So I would not be inclined to agree with the

1    proposition that I should not consider the order issued by

2    Judge Jackson in my assessment as to the timeliness of when

3    information needs to be produced.  The government has

4    indicated that it will, after the sentencing, reevaluate

5    what information should be released.  I don't know what

6    decision Judge Jackson will make.  I don't know what

7    decision Mr. Stone will make.  I, as I say, assume he

8    probably -- as almost -- most defendants who have been

9    convicted do, he will appeal, and then I guess a question

10   will become to what extent what Judge Jackson has sought to

11   do in order to ensure fair trial continues to be a relevant

12   consideration, and I would think it would because while a

13   lot of convictions are not reversed on appeal, it's not

14   something that is beyond the pale.  So if there was a

15   reversal, then the case is back in the same status it was at

16   the time she issued that order and, therefore, the same

17   concerns that she had, I think, would be in play.  So I do

18   think it's appropriate for the government, after the

19   sentencing, to reevaluate to what extent information that's

20   already been made public -- and I would assume the

21   government would conclude that if that information that's in

22   the Mueller report was, in fact, disclosed during the Stone

23   trial, that that information would be subject to production

24   and that the government would do that.  I hope that would be

25   the case, and I assume that would be the case.  But if

 1    there's other information in the Mueller report that's not

 2    information that was disclosed during the Stone trial and

 3    it's of the view that that information should not be made

 4    known because it would potentially undermine the ability of

 5    the parties in that case to receive a fair trial, then I

 6    would think that the same considerations that applied

 7    earlier would apply at that time.  But, you know, if I'm

 8    wrong, it can be taken up to the Court of Appeals, but I do

 9    think that the status quo, at least until after the

10    sentencing is imposed, should be maintained.

11         Now, let me just ask because we are nearing the

12    completion of an opinion regarding the summary judgment

13    motion that was filed, and I would hope that sometime in the

14    near future we would issue an opinion in reference to that.

15    Is the landscape changed now?  Does there need to be

16    rebriefing on any issues in reference to that -- those

17    summary judgment motions that I -- that should cause me to

18    delay issuing that opinion?

19         MS. ENLOW:  I don't believe so, Your Honor.

20         THE COURT:  Does the plaintiff have a different

21    position in reference to that as to whether rebriefing is

22    needed at this point based upon what's transpired and what I

23    just indicated?

24         MR. BUTLER:  No, Your Honor.  We believe -- we do

25    not believe rebriefing is necessary --

1           THE COURT:  Very well.

2           MR. BUTLER:  -- especially in light of the --

3           THE COURT:  Then we'll move ahead and we will

4   hopefully get you an opinion sometime very, very soon.

5           MR. BUTLER:  Sure.  Can I just make one

6   additional --

7           THE COURT:  Yeah, yeah.

8           MR. BUTLER:  -- point, Your Honor?  With respect

9   to the timing that you highlighted just, you know, two

10  issues related to that.  One is that in terms of the timing

11  of the sentencing, if we're talking about the DOJ -- I mean,

12  this is a -- the Court has highlighted that this is -- that

13  this particular record in this case is of unique public

14  importance and timing is of the essence, especially in light

15  of the fact that we have an impeachment vote today; there's

16  a trial that's going to be happening in January; and there

17  are at least a number of issues related to the Mueller

18  investigation that are relevant to that.  Now, the DOJ is --

19  says it's going to reevaluate its redactions in the report

20  and whether to reprocess those in light of the outcome in

21  the Stone case.  Even if the Court feels that the media

22  communications order limits disclosure or release of those

23  portions pending the February 6th deadline which is when the

24  DOJ says it is exhausted, the DOJ could nevertheless

25  reprocess -- identify the materials in the report that were,

1    in fact, disclosed in the Stone order [sic] prior to that

2    date so that it would be ready to release or have

3    reprocessed them on that date, because the only thing that's

4    limited by the order is the -- under the view that Your

5    Honor has espoused, the actual release, not the

6    reprocessing.  So our point is merely that time is of the

7    essence and if we wait, as the Department has indicated,

8    until February and then they seem to hint, maybe, even

9    longer, then we're looking at many, many months down the

10   road and no further information disclosed.  So --

11              MS. ENLOW:  Your Honor, I don't believe that is

12   the case.  I mean, so all the material that was withheld

13   pertaining to Mr. Stone was under the order which is

14   separate and apart from FOIA, but then also under 7(A), (B)

15   and (C) and 6 -- Exemption 6, as well.  So the government

16   needs to know whether or not Mr. Stone is going to file an

17   appeal -- which is -- under the federal rules, is due 14

18   days after sentencing, so February 20th -- before it can

19   evaluate whether or not additional information should be

20   released under 7(A) because if he, you know -- if he's one

21   of those rare defendants perhaps who does not file an

22   appeal, then there would be no pending enforcement

23   proceeding, I would imagine, at that point.  So you know,

24   perhaps more information would be released.

25              THE COURT:  I would suspect he will file an

1    appeal.

2            MS. ENLOW:  I would suspect so, Your Honor, but,

3    you know, we just don't know at this point, obviously, and

4    so -- and the fact that he may file an appeal, it certainly

5    doesn't tell the government anything about whether or not

6    additional information may -- is going to be released at

7    that point.  So to order the government to complete its

8    reprocessing on the day he's sentenced, it practically just

9    makes no sense considering he probably --

10            THE COURT:  I guess I don't see what is

11   accomplished by requiring that because the trial was heavily

12   covered.  So information that was revealed during the course

13   of that trial, the public is generally aware of that

14   information.  Now, some of that information may be a part of

15   the Mueller report.  I don't know.  But to the extent that

16   it is a part of the Mueller report, that information is

17   already available to the public as a result of the trial and

18   the fact that it was so heavily covered.  And I think to

19   force the government to go through the effort of doing the

20   assessment that's being requested when that information is

21   already in the public and, as government counsel says, with

22   the amount of FOIA litigation that's been initiated, that to

23   require the government to do that now is obviously going to

24   impact their ability to process other information that's not

25   yet known to the public.  So I would not be prepared to

1    order at this time that that assessment be made and that the

2    government can start to make that assessment once the --

3    Stone has been sentenced and once a determination has been

4    made as to whether he's going to appeal.

5              MS. ENLOW:  Thank you, Your Honor.

6              THE COURT:  Okay.  Now, I don't know if this has

7    covered the issue -- the second issue I raise as to whether

8    some of the exemptions are now moot as a result of what the

9    current situation is.  I would assume I've basically covered

10   that, but I don't know.  Are there -- as a result of either

11   the superseding indictment in the case before Judge

12   Friedrich or what has occurred in the Stone case, has that

13   mooted any issues regarding exemptions that are being

14   claimed by the government?

15             MS. ENLOW:  No, I don't believe so, Your Honor.

16   And even if it did -- even if it's possible that, maybe,

17   7(B) or 7(C) is somewhat -- could be mooted in certain

18   circumstances, then they are still covered by 7(A).  So as a

19   practical matter, it simply has no effect at this point.

20             THE COURT:  Okay.  I only ask that because,

21   obviously, I don't want to address issues in the opinion

22   that we're working on that don't need to be addressed, but

23   if none of the exemptions has been mooted by what's

24   transpired up to this point, then -- and counsel has said

25   it's -- not believe that there's further -- need for further

1  briefing, then we can just proceed to try and get you an

2  opinion as quickly as possible.

3         MS. ENLOW:  Thank you.

4         MR. BUTLER:  Just to clarify --

5         THE COURT:  Yes.

6         MR. BUTLER:  -- Your Honor, we agree that the

7  issues are not moot.  So our position is simply that it

8  changes the factual basis on which the government is relying

9  in its declaration to support, for example, 7(B), 7(A) and

10  7(C), and so that there's been a factual change that we

11  wanted to alert this Court to.  That's why we filed the

12  status report.

13         THE COURT:  Okay.

14         (Brief pause.)

15         Okay.  Are there other issues that we need to

16  address at this time?

17         MS. ENLOW:  Nothing from the government, Your

18  Honor.

19         THE COURT:  Anything else from plaintiffs'

20  counsel?

21         (Brief pause.)

22         MR. BUTLER:  No, Your Honor.

23         THE COURT:  Okay.  We're -- as I say, we're

24  working on the opinion.  I would hope within a short period

25  of time, we will have an opinion for you.  So if you want to

1     take it up, you'll be able to do that quickly.

2               Thank you.

3               THE DEPUTY CLERK:  The parties are excused.

4               (Proceedings concluded at 12:58 p.m.)

5                      * * * * * * * * * * * *

6              **CERTIFICATE OF OFFICIAL COURT REPORTER**

7     **I, TIMOTHY R. MILLER, RPR, CRR, NJ-CCR, do hereby certify**

8     **that the above and foregoing constitutes a true and accurate**

9     **transcript of my stenographic notes and is a full, true and**

10    **complete transcript of the proceedings to the best of my**

11    **ability, dated this 21st day of December 2019.**

12                           **/s/Timothy R. Miller, RPR, CRR, NJ-CCR**
                             **Official Court Reporter**
13                           **United States Courthouse**
                             **Room 6722**
14                           **333 Constitution Avenue, NW**
                             **Washington, DC 20001**

15

16

17

18

19

20

21

22

23

24

25