**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 19-810 (RBW) |
| UNITED STATES DEPARTMENT OF JUSTICE, | ) ) ) |
| Defendant. | ) ) ) |
| JASON LEOPOLD & BUZZFEED, INC., | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) Civil Action No. 19-957 (RBW) |
| UNITED STATES DEPARTMENT OF JUSTICE, et al., | ) ) ) |
| Defendants. | ) ) ) |

## <u>MEMORANDUM OPINION</u>

The above-captioned matters concern requests made by the Electronic Privacy

Information Center ("EPIC") and Jason Leopold and Buzzfeed, Inc. (the "Leopold plaintiffs")

(collectively, the "plaintiffs") to the United States Department of Justice (the "Department")

pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2018), seeking, <u>inter alia</u>,

the release of an unredacted version of the report prepared by Special Counsel Robert S. Mueller

III ("Special Counsel Mueller") regarding his investigation into Russian interference in the 2016

United States presidential election (the "Mueller Report").  <u>See</u> Complaint ¶¶ 2, 43, <u>Elec.</u>

Privacy Info. Ctr. v. U.S. Dep't of Justice, Civ. Action No. 19-810 ("EPIC Compl."); Complaint

¶ 1, Leopold v. U.S. Dep't of Justice, Civ. Action No. 19-957 ("Leopold Pls.' Compl.").

Currently pending before the Court are (1) the Department of Justice's Motion for Summary

Judgment in Leopold v. Department of Justice and Partial Summary Judgment in Electronic

Privacy Information Center v. Department of Justice ("Def.'s Mot." or the "Department's

motion"); (2) the Plaintiff's Combined Opposition to Defendant's Motion for Partial Summary

Judgment, Cross-Motion for Partial Summary Judgment, and Motion for In Camera Review of

the "Mueller Report" ("EPIC's Mot." or "EPIC's motion"); and (3) Plaintiffs Jason Leopold's

and Buzzfeed Inc.'s Motion for Summary Judgment ("Leopold Pls.' Mot." or the "Leopold

plaintiffs' motion").  Upon careful consideration of the parties' submissions,[1] the Court

concludes for the following reasons that it must deny without prejudice the Department's motion,

grant in part and deny without prejudice in part EPIC's motion, and grant in part and deny

without prejudice in part the Leopold plaintiffs' motion.

## I.   BACKGROUND

### A.   Factual Background

On May 17, 2017, "to ensure a full and thorough investigation of the Russian

government's efforts to interfere in the 2016 presidential election," then-Acting Attorney

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Memorandum of Points and Authorities in Support of the Department of Justice's Motion for Summary Judgment in Leopold v. Department of Justice and Partial Summary Judgment in Electronic Privacy Information Center v. Department of Justice ("Def.'s Mem."); (2) the Declaration of Vanessa R. Brinkmann ("Brinkmann Decl."); (3) the Memorandum of Points and Authorities in Support of Plaintiff's Combined Opposition and Cross-Motion for Partial Summary Judgment and Motion for In Camera Review of the "Mueller Report" ("EPIC's Mem."); (4) Plaintiffs Jason Leopold's and Buzzfeed Inc.'s Combined Memorandum in Support of Their Motion for Summary Judgment and in Opposition to Defendants' Motion for Summary Judgment ("Leopold Pls.' Mem."); (5) the Brief of Citizens for Responsibility and Ethics in Washington as Amicus Curiae in Support of Plaintiffs' Motions for Summary Judgment ("CREW Br."); (6) the Department of Justice's Reply in Support of its Motion for Summary Judgment with Respect to the "Mueller Report" and Opposition to the Plaintiffs' Cross-Motions for Summary Judgment ("Def.'s Reply"); and (7) the Plaintiffs' Consolidated Reply in Support of Their Cross-Motions for Summary Judgment and Motions for In Camera Review of the "Mueller Report" ("Pls.' Reply").

General Rod J. Rosenstein appointed Special Counsel Mueller to investigate "any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump" (the "Trump campaign").  Def.'s Mot., Exhibit ("Ex.") 3 (Order No. 3915-2017 – Appointment of Special Counsel to Investigate Russian Interference with the 2016 Presidential Election and Related Matters ("Appointment Order")).

In March 2019, Special Counsel Mueller concluded his investigation into Russian interference in the 2016 United States presidential election, and on Friday, March 22, 2019, he provided Attorney General William P. Barr ("Attorney General Barr") with the Mueller Report. See Def.'s Mot., Ex. 4 (Letter from William P. Barr, Attorney General, to Lindsey Graham, Chairman, Committee on the Judiciary, United States Senate, et al. (Mar. 22, 2019) ("March 22, 2019 Letter")).  On that same day, Attorney General Barr advised members of the United States Congress by letter that he was "reviewing the [Mueller] [R]eport and anticipate[d] that [he] may be in a position to advise [the members of Congress] of [ ] Special Counsel[] [Mueller's] principal conclusions as soon as th[at] weekend."  Id., Ex. 4 (March 22, 2019 Letter).  Attorney General Barr "disclose[d] [the March 22, 2019] letter to the public after delivering it to [members of Congress]."  Id., Ex. 4 (March 22, 2019 Letter).

On Sunday, March 24, 2019, Attorney General Barr supplemented his March 22, 2019 letter to Congress, "advis[ing] [certain members of Congress] of the principal conclusions reached by Special Counsel [Mueller]."  Id., Ex. 5 (Letter from William P. Barr, Attorney General, to Lindsey Graham, Chairman, Committee on the Judiciary, United States Senate, et al. (Mar. 24, 2019) ("March 24, 2019 Letter")) at 1.  However, neither an unredacted or a redacted version of the Mueller Report accompanied Attorney General Barr's March 24, 2019 letter for congressional or public consumption.  According to Attorney General Barr, "Special Counsel[]

[Mueller's] investigation did not find that the Trump campaign or anyone associated with it conspired or coordinated with Russia in its efforts to influence the 2016 [United States] presidential election." Id., Ex. 5 (March 24, 2019 Letter) at 2; see also id., Ex. 5 (March 24, 2019 Letter) at 2 ("As noted above, [ ] Special Counsel [Mueller] did not find that any [United States] person or Trump campaign official or associate conspired or knowingly coordinated with the [Internet Research Agency] in its efforts[.]"); id., Ex. 5 (March 24, 2019 Letter) at 2 ("But as noted above, [ ] Special Counsel [Mueller] did not find that the Trump campaign, or anyone associated with it, conspired or coordinated with the Russian government in these efforts, despite multiple offers from Russian-affiliated individuals to assist the Trump campaign."). Furthermore, Attorney General Barr represented that, with respect to Special Counsel Mueller's investigation into whether President Trump obstructed justice in connection with Special Counsel Mueller's investigation into Russia's interference in the 2016 presidential election, Special Counsel Mueller "determined not to make a traditional prosecutorial judgment" and "did not draw a conclusion—one way or the other—as to whether the examined conduct constituted obstruction," thereby leaving "it to [ ] Attorney General [Barr] to determine whether the conduct described in the [Mueller] [R]eport constitutes a crime." Id., Ex. 5 (March 24, 2019 Letter) at 3. Noting that Special Counsel Mueller "recognized that 'the evidence does not establish that [ ] President [Trump] was involved in an underlying crime related to Russian election interference,'" Attorney General Barr ultimately determined that "the evidence developed during [ ] Special Counsel[] [Mueller's] investigation is not sufficient to establish that [ ] President [Trump] committed an obstruction-of-justice offense," and that, "while not determinative, the absence of such evidence bears upon [ ] President[] [Trump's] intent with respect to obstruction." Id., Ex. 5 (March 24, 2019 Letter) at 3. According to Attorney General Barr, "the

[Mueller] [R]eport identifies no actions that, in [his] judgment, constitute obstructive conduct, had a nexus to a pending or contemplated proceeding, and were done with corrupt intent[.]" Id., Ex. 5 (March 24, 2019 Letter) at 3.

Attorney General Barr also indicated in his March 24, 2019 letter that he intended to "move forward expeditiously in determining what [information in the Mueller Report] can be released in light of applicable law, regulations, and Departmental policies." Id., Ex. 5 (March 24, 2019 Letter) at 4.

On March 27, 2019, Special Counsel Mueller stated in a letter to Attorney General Barr that the representations made by Attorney General Barr in his March 24, 2019 letter "did not fully capture the context, nature, and substance of th[e] [Special Counsel's] Office's work and conclusions." EPIC's Mot., Ex. 4 (Letter from Robert S. Mueller III, Special Counsel, to William P. Barr, Attorney General (Mar. 27, 2019) ("March 27, 2019 Letter")) at 1. And, according to Special Counsel Mueller, as a result of Attorney General Barr's March 24, 2019 letter, "[t]here [was] now public confusion about critical aspects of the results of [his] investigation," which Special Counsel Mueller noted "threaten[ed] to undermine a central purpose for which the Department appointed [ ] Special Counsel [Mueller]: to assure full public confidence in the outcome of the investigations." Id., Ex. 4 (March 27, 2019 Letter) at 1.

On March 29, 2019, Attorney General Barr, in a letter addressed to members of Congress, represented that "some media reports and other public statements mischaracter[ed] [his] March 24, 2019 [letter] [ ] as a 'summary' of [ ] Special Counsel[] [Mueller's] investigation and [the Mueller] [R]eport," and that his "March 24[, 2019] letter was not, and did not purport to be, an exhaustive recounting of [ ] Special Counsel[] [Mueller's] investigation or [the Mueller] [R]eport." Def.'s Mot., Ex. 6 (Letter from William P. Barr, Attorney General, to Lindsey

Graham, Chairman, Committee on the Judiciary, United States Senate, et al. (Mar. 29, 2019)

("March 29, 2019 Letter")) at 1–2.  Attorney General Barr stated:

> As my [March 24, 2019] letter made clear, my notification to Congress and the pubic provided, pending release of the [Mueller] [R]eport, a summary of its "principal conclusions"—that is, its bottom line. . . . Everyone will soon be able to read it on their own.  I do not believe it would be in the public's interest for me to attempt to summarize the full report or to release it in serial or piecemeal fashion.

Id., Ex. 6 (March 29, 2019 Letter) at 2.

On April 18, 2019, prior to making the redacted version of the Mueller Report available to Congress, the public, or the media, Attorney General Barr held a press conference during which he "offer[ed] a few comments [ ] on the [Mueller] [R]eport."  Attorney General William P. Barr Delivers Remarks on the Release of the Report on the Investigation into Russian Interference in the 2016 Presidential Election, U.S. Dep't of Justice, https://www.justice.gov/opa/speech/attorney-general-william-p-barr-delivers-remarks-release-report-investigation-russian (last visited Mar. 5, 2020).[2]  Attorney General Barr stated during the press conference that the Mueller Report indicates that Special Counsel Mueller's "investigation did not establish that members of the Trump [c]ampaign conspired or coordinated with the Russian government in its election interference activities."  Id.; see also id. ("[T]hanks to [ ] Special Counsel[] [Mueller's] thorough investigation, we now know that the Russian operatives who perpetrated these schemes did not have the cooperation of President Trump or the Trump campaign—or the knowing assistance of any other Americans for that matter."); id. ("Special Counsel [Mueller] found no evidence that any Americans—including anyone associated with the

---

[2] The Court takes judicial notice of information posted on the Department's official public website.  See Pharm. Research & Mfrs. of Am. v. U.S. Dep't of Health & Human Servs., 43 F. Supp. 3d 28, 33 (D.D.C. 2014) ("Courts in this jurisdiction have frequently taken judicial notice of information posted on official public websites of government agencies."); see also Fed. R. Evid. 201(d) (providing that a "court may take judicial notice at any stage of the proceeding").

Trump campaign—conspired or coordinated with the Russian government . . . in carrying out this illegal scheme."); id. (Attorney General Barr stating that "Special Counsel [Mueller] found no 'collusion' by any Americans in the [Russian government's] illegal activity."); id. ("But again, [ ] Special Counsel[] [Mueller] did not find any evidence that members of the Trump campaign or anyone associated with the campaign conspired or coordinated with the Russian government in its hacking operations.  In other words, there was no evidence of Trump campaign 'collusion' with the Russian government's hacking.").  Attorney General Barr further stated that Special Counsel Mueller "did not find that any person associated with the Trump campaign illegally participated in the dissemination of the [stolen] materials [on Wikileaks]," and "did not find any conspiracy to violate [United States] law involving Russia-linked persons and any persons associated with the Trump campaign."  Id.  According to Attorney General Barr, the "bottom line" is that "[a]fter nearly two years of investigation, thousands of subpoenas, and hundreds of warrants and witness interviews, [ ] Special Counsel [Mueller] confirmed that the Russian government sponsored efforts to illegally interfere with the 2016 presidential election but did not find that the Trump campaign or other Americans colluded in those schemes."  Id. Finally, Attorney General Barr announced that he and then-Deputy Attorney General Rod J. Rosenstein "concluded that the evidence developed by [ ] Special Counsel [Mueller] is not sufficient to establish that [ ] President [Trump] committed an obstruction-of-justice offense." Id.; see also id. ("Although the Deputy Attorney General and I disagreed with some of [ ] Special Counsel[] [Mueller's] legal theories and felt that some of the episodes examined did not amount to obstruction as a matter of law, we did not rely solely on that in making our decision.  Instead, we accepted [ ] Special Counsel[] [Mueller's] legal framework for purposes of our analysis and

evaluated the evidence as presented by [ ] Special Counsel [Mueller] in reaching our

conclusion.").  Attorney General Barr declared that

> [i]n assessing the President[] [Trump's] actions discussed in the [Mueller]
> [R]eport, it is important to bear in mind the context.  President Trump faced an
> unprecedented situation.  As he entered into office, and sought to perform his
> responsibilities as [p]resident, federal agents and prosecutors were scrutinizing his
> conduct before and after taking office, and the conduct of some of his associates.
> At the same time, there was relentless speculation in the news media about the
> President[] [Trump's] personal culpability.  Yet, as he said from the beginning,
> there was in fact no collusion.  And as the [Mueller] [R]eport acknowledges, there
> is substantial evidence to show that [ ] President [Trump] was frustrated and
> angered by a sincere belief that the investigation was undermining his presidency,
> propelled by his political opponents, and fueled by illegal leaks.  Nonetheless, the
> White House fully cooperated with [ ] Special Counsel[] [Mueller's]
> investigation, providing unfettered access to campaign and White House
> documents, directing senior aides to testify freely, and asserting no privilege
> claims.  And at the same time, [ ] President [Trump] took no act that in fact
> deprived [ ] Special Counsel [Mueller] of the documents and witnesses necessary
> to complete his investigation. Apart from whether the acts were obstructive, this
> evidence of non-corrupt motives weighs heavily against any allegation that [ ]
> President [Trump] had a corrupt intent to obstruct the investigation.

Id.

That same day, Attorney General Barr also released a letter to members of Congress

purporting to summarize the Mueller Report.  See generally Def.'s Mot., Ex. 7 (Letter from

William P. Barr, Attorney General, to Lindsey Graham, Chairman, Committee on the Judiciary,

United States Senate, et al. (Apr. 18, 2019) ("April 18, 2019 Letter")).  In that letter, Attorney

General Barr represented that Special Counsel Mueller's "bottom-line conclusion on the question

of so-called 'collusion' [was] [that] [t]he investigation did not establish that members of the

Trump [c]ampaign conspired or coordinated with the Russian government in its election

interference activities," id., Ex. 7 (April 18, 2019 Letter) at 1; see also id., Ex. 7 (April 18, 2019

Letter) at 1 (stating that Special Counsel Mueller "concluded that [t]he investigation did not

identify evidence that any [United States] persons conspired or coordinated with the [Internet

Research Agency]" (first alteration in original) (internal quotation marks omitted)); id., Ex. 7 (April 18, 2019 Letter) at 2 (representing that Special Counsel Mueller "did not find that President Trump, his campaign, or its associates conspired or coordinated with the Russian government in its hacking activities"); id., Ex. 7 (April 18, 2019 Letter) at 2 ("Special Counsel [Mueller] did not find that any person associated with the Trump campaign, or any other [United States] citizen, illegally participated in the dissemination of hacked information."); id., Ex. 7 (April 18, 2019 Letter) at 2 ("Special Counsel [Mueller] did not find any conspiracy to violate [United States] law involving Russia-linked persons and any persons associated with the Trump campaign."), and that, in light of Special Counsel Mueller's "decision not to reach a conclusion on [whether President Trump] obstruct[ed] [justice]," "the evidence set forth in the [ ] [Mueller] [R]eport was [not] sufficient to establish that [ ] President [Trump] committed an obstruction-of-justice offense," id., Ex. 7 (April 18, 2019 Letter) at 2–3.

Attorney General Barr, in his April 18, 2019 letter, indicated that the Mueller Report would "be released to the public and to Congress to the maximum extent possible, subject only to those redactions required by law or by compelling law enforcement, national security, or personal privacy interests."  Id., Ex. 7 (April 18, 2019 Letter) at 3.  According to Attorney General Barr, "most of the redactions were required to protect grand-jury secrecy or to comply with judicial orders (i) protecting from public release sensitive discovery information or (ii) prohibiting public disclosure of information bearing upon ongoing investigations and criminal proceedings[.]"  Id., Ex. 7 (April 18, 2019 Letter) at 3.  Specifically, Attorney General Barr represented the following as the reasons for withholding the redacted information:

> (1) grand-jury information . . . , the disclosure of which is prohibited by Federal Rule of Criminal Procedure 6(e); (2) investigative techniques . . . , which reflect material identified by the intelligence and law enforcement communities as potentially compromising sensitive sources, methods, or techniques, as well as

information that could harm ongoing intelligence or law enforcement activities; (3) information that, if released, could harm ongoing law enforcement matters . . . , including charged cases where court rules and orders bar public disclosure by the parties of case information; and (4) information that would unduly infringe upon the personal privacy and reputational interests of peripheral third parties . . . , which includes deliberation about decisions not to recommend prosecution of such parties.

Id., Ex. 7 (April 18, 2019 Letter) at 3.

A redacted version of the Mueller Report was made available to the public later that same day.  According to the redacted version of the Mueller Report, Special Counsel Mueller "identified multiple contacts—'links,' in the words of the Appointment Order—between Trump [c]ampaign officials and individuals with ties to the Russian government."  Def.'s Mot., Ex. D (Report on the Investigation Into Russian Interference in the 2016 Presidential Election – Volume I of II ("Mueller Report – Volume I")) at 66.  However, because coordination—the term that appears in the Appointment Order—"does not have a settled definition in federal criminal law," Special Counsel Mueller, "[i]n evaluating whether evidence about collective action of multiple individuals constituted a crime, [ ] applied the framework of conspiracy law," understanding "coordination to require an agreement—tacit or express—between the Trump [c]ampaign and the Russian government on election interference," which "requires more than the two parties taking actions that were informed by or responsive to the other's actions or interests," id., Ex. D (Mueller Report – Volume I) at 2, and concluded that the investigation did not establish that "these contacts involved or resulted in coordination or a conspiracy with the Trump [c]ampaign and Russia, including with respect to Russia providing assistance to the [Trump] [c]ampaign in exchange for any sort of favorable treatment in the future," id., Ex. D (Mueller Report – Volume I) at 66.  Section IV of Volume I of the Mueller Report "describes the principal links between the Trump [c]ampaign and individuals with ties to the Russian government,

including some contacts with [Trump] [c]ampaign officials or associates that have been publicly
reported to involve Russian contacts." Id., Ex. D (Mueller Report – Volume I) at 66. See
generally id., Ex. D (Mueller Report – Volume I) at 66–173.

With respect to Special Counsel Mueller's investigation into whether President Trump
obstructed justice, Special Counsel Mueller accepted the Department's Office of Legal Counsel's
legal conclusion "'that the indictment or criminal prosecution of a sitting [p]resident would
impermissibly undermine the capacity of the executive branch to perform its constitutionally
assigned functions' in violation of the constitutional separation of powers" for the purpose of
exercising prosecutorial jurisdiction and "determined not to make a traditional prosecutorial
judgment[,] . . . recogniz[ing] that a federal criminal accusation against a sitting [p]resident
would place burdens on the [p]resident's capacity to govern and potentially preempt
constitutional processes for addressing presidential misconduct." Id., Ex. D (Report on the
Investigation Into Russian Interference in the 2016 Presidential Election – Volume II of II
("Mueller Report – Volume II") at 1 (internal quotation marks omitted). Therefore, Special
Counsel Mueller "determined not to apply an approach that could potentially result in a judgment
that [ ] President [Trump] committed crimes" because "[f]airness concerns counseled against
potentially reaching that judgment when no charges can be brought." Id., Ex. D (Mueller Report
– Volume II) at 2. Nevertheless, in light of the fact that "a [p]resident does not have immunity
after he leaves office," Special Counsel Mueller "conducted a thorough factual investigation in
order to preserve the evidence when memories were fresh and documentary materials were
available." Id., Ex. D (Mueller Report – Volume II) at 1–2. Special Counsel Mueller ultimately
represented that

> if [he] had confidence after a thorough investigation of the facts that [ ] President
> [Trump] clearly did not commit obstruction of justice, [he] would so state. Based

> on the facts and the applicable legal standards, however, [he] [is] unable to reach
> that judgment.  The evidence [he] obtained about [ ] President[] [Trump's] actions
> and intent presents difficult issues that prevent [him] from conclusively
> determining that no criminal conduct occurred.  Accordingly, while th[e]
> [Mueller] [R]eport does not conclude that [ ] President [Trump] committed a
> crime, it also does not exonerate him.

Id., Ex. D (Mueller Report – Volume II) at 2; see also id., Ex. D (Mueller Report – Volume II) at

8 ("Because [Special Counsel Mueller] determined not to make a traditional prosecutorial

judgment, [he] did not draw ultimate conclusions about [ ] President[] [Trump's] conduct.  The

evidence [he] obtained about [ ] President[] [Trump's] actions and intent presents difficult issues

that would need to be resolved if [he] were making a traditional prosecutorial judgment.  At the

same time, if [he] had confidence after a thorough investigation of the facts that [ ] President

[Trump] clearly did not commit obstruction of justice, [he] would so state.  Based on the facts

and the applicable legal standards, however, [he] [is] unable to reach that judgment.

Accordingly, while th[e] [Mueller] [R]eport does not conclude that [ ] President[] [Trump]

committed a crime, it also does not exonerate him.").  Section II of Volume II of the Mueller

Report details the evidence obtained during Special Counsel Mueller's investigation.  See

generally id., Ex. D (Mueller Report – Volume II) at 15–158.

**B.      Procedural Background**

On November 5, 2018, EPIC requested, inter alia, a copy of the unredacted version of

Mueller Report from the Department pursuant to the FOIA.  See EPIC Compl. ¶¶ 2, 43; see also

id., Ex. 2 (Letter from John Davisson, EPIC Counsel, et al., to Douglas Hibbard, Chief, Initial

Request Staff, Office of Information Policy (Nov. 5, 2018)) at 1–3.  According to EPIC, the

Department "den[ied] EPIC's request for expedited processing" and "fail[ed] to make a

determination regarding EPIC's FOIA request within the applicable time limits.  Id. ¶¶ 55, 60.

EPIC then filed its Complaint in this Court.  See generally id.

On March 21, 2019, the Leopold plaintiffs also sought a copy of the unredacted version of the Mueller Report from the Department, the Office of Attorney General of the United States, the Deputy Attorney General of the United States, and the Special Counsel's Office pursuant to the FOIA.  See Leopold Pls.' Compl. ¶¶ 1, 6; see also id., Ex. A (FOIA Request by Jason Leopold) at 1–3.  Although the Department granted the Leopold plaintiffs' request for expedited processing, it failed to produce the unredacted version of the Mueller Report within the applicable deadline.  See id. ¶¶ 8, 16.  Therefore, on April 4, 2019, the Leopold plaintiffs filed their Complaint in this Court.  See generally id.

On April 22, 2019, the Court consolidated the above-captioned matters as to the plaintiffs' demands for the release of the unredacted version of the Mueller Report.  See Order at 2 (Apr. 22, 2019), ECF No. 33.  Thereafter, the parties filed their cross-motions for summary judgment.  In their respective motions for summary judgment, EPIC and the Leopold plaintiffs request that the Court conduct an in camera review of the unredacted version of the Mueller Report.  These requests are the subjects of this Memorandum Opinion.

## II.    STANDARD OF REVIEW

"[The] FOIA requires federal agencies to disclose, upon request, broad classes of agency records unless the records are covered by the statute's exemptions."  Students Against Genocide v. U.S. Dep't of State, 257 F.3d 828, 833 (D.C. Cir. 2001) (citation omitted).  In a FOIA action, the defendant agency has "[the] burden of demonstrating that the withheld documents are exempt from disclosure," Boyd v. U.S. Dep't of Justice, 475 F.3d 381, 385 (D.C. Cir. 2007), and the district court must "determine the matter de novo," 5 U.S.C. § 552(a)(4)(B); see also U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989) ("[T]he FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to

'determine the matter de novo.'").  To determine de novo the applicability of the particular

exemptions cited by the government to the withheld documents, the Court has the discretion to

"examine the contents of [ ] agency records in camera."  5 U.S.C. § 552(a)(4)(B); see Larson v.

U.S. Dep't of State, 565 F.3d 857, 869–70 (D.C. Cir. 2009) ("In camera review is available to

the district court if the court believes it is needed 'to make a responsible de novo determination

on the claims of exception.'" (quoting Juarez v. U.S. Dep't of Justice, 518 F.3d 54, 60 (D.C. Cir.

2008))).

> The District of Columbia Circuit has specifically noted that

> in camera inspection may be particularly appropriate when either the agency
> affidavits are insufficiently detailed to permit meaningful review of exemption
> claims or there is evidence of bad faith on the part of the agency, when the
> number of withheld documents is relatively small, and when the dispute turns on
> the contents of the withheld documents, and not the parties' interpretations of
> those documents. . . . These factors identify circumstances under which it would
> be error for the district court not to review the documents in camera, but they do
> not present the only circumstances under which the district court may do so.  As
> the court explained in Ray v. Turner, 587 F.2d 1187 (D.C. Cir. 1978) (per
> curiam), [i]n camera inspection does not depend on a finding or even tentative
> finding of bad faith.  A judge has discretion to order in camera inspection on the
> basis of an uneasiness, on a doubt that he wants satisfied before he takes
> responsibility for a de novo determination. . . . The ultimate criterion is simply
> this: Whether the district judge believes that in camera inspection is needed in
> order to make a responsible de novo determination on the claims of exemption.
> Thus, in cases in which a look at the withheld material itself would be useful, we
> have fully approved in camera examination of the withheld material by the trial
> court.

Spirko v. U.S. Postal Serv., 147 F.3d 992, 996 (D.C. Cir. 1998) (second alteration in original)

(internal quotation marks omitted).  But see Carter v. U.S. Dep't of Commerce, 830 F.2d 388,

393 (D.C. Cir. 1987) ("[T]he mere allegation of bad faith does not undermine the sufficiency of

agency submissions.  There must be tangible evidence of bad faith; without it[,] the court should

not question the veracity of agency submissions."); Hayden v. Nat'l Sec. Agency, 608 F.2d 1381,

1387 (D.C. Cir. 1979) ("The sufficiency of the affidavits is not undermined by a mere allegation

of agency misrepresentation or bad faith, nor by past agency misconduct in other unrelated cases."). However, the Circuit has cautioned that district courts "should not resort to [in camera review] routinely on the theory that 'it can't hurt.'"  Ray, 587 F.2d at 1195; see Juarez, 518 F.3d at 59–60 ("It is true that [the] FOIA provides district courts the option to conduct in camera review, but it by no means compels the exercise of that option." (citations omitted)).  Instead, in camera review "is more appropriate in only the exceptional case."  Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec., 384 F. Supp. 2d 100, 119–20 (D.D.C. 2005) (citing Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co., 437 U.S. 214, 224 (1978) and PHE, Inc. v. U.S. Dep't of Justice, 983 F.2d 248, 252–53 (D.C. Cir. 1993)).

## III.    ANALYSIS

The Court has grave concerns about the objectivity of the process that preceded the public release of the redacted version of the Mueller Report and its impacts on the Department's subsequent justifications that its redactions of the Mueller Report are authorized by the FOIA. For the reasons set forth below, the Court shares the plaintiffs' concern that the Department "dubious[ly] handl[ed] [ ] the public release of the Mueller Report."  EPIC's Mem. at 40; see also id. ("Attorney General[] [Barr's] attempts to spin the findings and conclusions of the [Mueller] Report have been challenged publicly by the author of the [Mueller] Report.  [ ] Attorney[] General[] [Barr's] characterization of the [Mueller] [R]eport has also been contradicted directly by the content of the [Mueller] Report."); Leopold Pls.' Mem. at 9 ("[T]here have been serious and specific accusations by other government officials about improprieties in the [Department's] handling and characterization of the [Mueller] Report[.]"). Accordingly, the Court concludes that it must conduct an in camera review of the unredacted version of the Mueller Report to assess de novo the applicability of the particular exemptions

claimed by the Department for withholding information in the Mueller Report pursuant to the FOIA.

On March 24, 2019, only two days after receiving the 381-page Mueller Report, Attorney General Barr represented that he was providing "a summary of [the Mueller Report's] 'principal conclusions.'"  Def.'s Mot., Ex. 6 (March 29, 2019 Letter) at 2.  In his March 24, 2019 letter, Attorney General Barr stated that "Special Counsel[] [Mueller's] investigation did not find that the Trump campaign or anyone associated with it conspired or coordinated with Russia in its efforts to influence the 2016 [United States] presidential election," id., Ex. 5 (March 24, 2019 Letter) at 2, and that, with respect to Special Counsel Mueller's investigation into whether President Trump obstructed justice in connection with Special Counsel Mueller's investigation into Russia's interference in the 2016 presidential election, Special Counsel Mueller "recognized that 'the evidence does not establish that [ ] President [Trump] was involved in an underlying crime related to Russian election interference,'" id., Ex. 5 (March 24, 2019 Letter) at 3. However, Special Counsel Mueller himself took exception to Attorney General Barr's March 24, 2019 letter, stating that Attorney General Barr "did not fully capture the context, nature, and substance of th[e] [Special Counsel's] Office's work and conclusions," EPIC's Mot., Ex. 4 (March 27, 2019 Letter) at 1, and a review of the redacted version of the Mueller Report by the Court results in the Court's concurrence with Special Counsel Mueller's assessment that Attorney General Barr distorted the findings in the Mueller Report.  Specifically, Attorney General Barr's summary failed to indicate that Special Counsel Mueller "identified multiple contacts—'links,' in the words of the Appointment Order—between Trump [c]ampaign officials and individuals with ties to the Russian government," Def.'s  Mot., Ex. D (Mueller Report – Volume I) at 66, and that Special Counsel Mueller only concluded that the investigation did not

establish that "these contacts involved or resulted in coordination or a conspiracy with the Trump [c]ampaign and Russia, including with respect to Russia providing assistance to the [Trump] [c]ampaign in exchange for any sort of favorable treatment in the future," because coordination—the term that appears in the Appointment Order—"does not have a settled definition in federal criminal law," id., Ex. D (Mueller Report – Volume I) at 2, 66.  Attorney General Barr also failed to disclose to the American public that, with respect to Special Counsel Mueller's investigation into whether President Trump obstructed justice, Special Counsel Mueller "determined not to make a traditional prosecutorial judgment[,] . . . recogniz[ing] that a federal criminal accusation against a sitting [p]resident would place burdens on the [p]resident's capacity to govern and potentially preempt constitutional processes for addressing presidential misconduct," but nevertheless declared that

> if [he] had confidence after a thorough investigation of the facts that [ ] President [Trump] clearly did not commit obstruction of justice, [he] would so state.  Based on the facts and the applicable legal standards, however, [he] [is] unable to reach that judgment.  The evidence [he] obtained about [ ] President[] [Trump's] actions and intent presents difficult issues that prevent [him] from conclusively determining that no criminal conduct occurred.  Accordingly, while th[e] [Mueller] [R]eport does not conclude that [ ] President [Trump] committed a crime, it also does not exonerate him.

Id., Ex. D (Mueller Report – Volume II) at 1–2.

Although Attorney General Barr can be commended for his effort to expeditiously release a summary of Special Counsel Mueller's principal conclusions in the public interest, the Court is troubled by his hurried release of his March 24, 2019 letter well in advance of when the redacted version of the Mueller Report was ultimately made available to the public.  The speed by which Attorney General Barr released to the public the summary of Special Counsel Mueller's principal conclusions, coupled with the fact that Attorney General Barr failed to provide a thorough representation of the findings set forth in the Mueller Report, causes the Court to question

whether Attorney General Barr's intent was to create a one-sided narrative about the Mueller

Report—a narrative that is clearly in some respects substantively at odds with the redacted

version of the Mueller Report.

Attorney General Barr's decision to not only conduct a press conference but also issue his

April 18, 2019 letter immediately prior to releasing the redacted version of the Mueller Report to

the public on April 18, 2019, also causes the Court concern.  During his press conference,

Attorney General Barr maintained that Special Counsel Mueller's "investigation did not establish

that members of the Trump [c]ampaign conspired or coordinated with the Russian government in

its election interference activities," and that "President [Trump] took no act that in fact deprived

[ ] Special Counsel [Mueller] of the documents and witnesses necessary to complete his

investigation," and declared that

> [i]n assessing [ ] President[] [Trump's] actions discussed in the [Mueller]
> [R]eport, it is important to bear in mind the context.  President Trump faced an
> unprecedented situation.  As he entered into office, and sought to perform his
> responsibilities as [p]resident, federal agents and prosecutors were scrutinizing his
> conduct before and after taking office, and the conduct of some of his associates.
> At the same time, there was relentless speculation in the news media about [ ]
> President[] [Trump's] personal culpability.  Yet, as he said from the beginning,
> there was in fact no collusion.  And as the [Mueller] [R]eport acknowledges, there
> is substantial evidence to show that [ ] President [Trump] was frustrated and
> angered by a sincere belief that the investigation was undermining his presidency,
> propelled by his political opponents, and fueled by illegal leaks.  Nonetheless, the
> White House fully cooperated with [ ] Special Counsel[] [Mueller's]
> investigation, providing unfettered access to campaign and White House
> documents, directing senior aides to testify freely, and asserting no privilege
> claims.  And at the same time, [ ] President [Trump] took no act that in fact
> deprived [ ] Special Counsel [Mueller] of the documents and witnesses necessary
> to complete his investigation. Apart from whether the acts were obstructive, this
> evidence of non-corrupt motives weighs heavily against any allegation that [ ]
> President [Trump] had a corrupt intent to obstruct the investigation.

Attorney General William P. Barr Delivers Remarks on the Release of the Report on the

Investigation into Russian Interference in the 2016 Presidential Election, U.S. Dep't of Justice,

https://www.justice.gov/opa/speech/attorney-general-william-p-barr-delivers-remarks-release-report-investigation-russian (last visited Mar. 5, 2020).  Similar statements were made in his April 18, 2019 letter.  See Def.'s Mot., Ex. 7 (April 18, 2019 Letter) at 1–3 (stating that Special Counsel Mueller's "bottom-line conclusion on the question of so-called 'collusion' [was] [that] [t]he investigation did not establish that members of the Trump [c]ampaign conspired or coordinated with the Russian government in its election interference activities" and that "the evidence set forth in the [ ] [Mueller] [R]eport was [not] sufficient to establish that [ ] President [Trump] committed an obstruction-of-justice offense").

As noted earlier, the Court has reviewed the redacted version of the Mueller Report, Attorney General Barr's representations made during his April 18, 2019 press conference, and Attorney General Barr's April 18, 2019 letter.  And, the Court cannot reconcile certain public representations made by Attorney General Barr with the findings in the Mueller Report.  The inconsistencies between Attorney General Barr's statements, made at a time when the public did not have access to the redacted version of the Mueller Report to assess the veracity of his statements, and portions of the redacted version of the Mueller Report that conflict with those statements cause the Court to seriously question whether Attorney General Barr made a calculated attempt to influence public discourse about the Mueller Report in favor of President Trump despite certain findings in the redacted version of the Mueller Report to the contrary.

These circumstances generally, and Attorney General Barr's lack of candor specifically, call into question Attorney General Barr's credibility and in turn, the Department's representation that "all of the information redacted from the version of the [Mueller] Report released by [ ] Attorney General [Barr]" is protected from disclosure by its claimed FOIA exemptions.  Brinkmann Decl. ¶ 11 (emphasis added).  In the Court's view, Attorney General

Barr's representation that the Mueller Report would be "subject only to those redactions required by law or by compelling law enforcement, national security, or personal privacy interests" cannot be credited without the Court's independent verification in light of Attorney General Barr's conduct and misleading public statements about the findings in the Mueller Report, id., Ex. 7 (April 18, 2019 Letter) at 3, and it would be disingenuous for the Court to conclude that the redactions of the Mueller Report pursuant to the FOIA are not tainted by Attorney General Barr's actions and representations.  And, despite the Department's representation that it "review[ed] the full unredacted [Mueller] Report for disclosure pursuant to the FOIA," Brinkmann Decl. ¶ 11, the Court cannot ignore that the Department's withholdings under the FOIA exemptions mirror the redactions made pursuant to Attorney General Barr's guidance, which cause the Court to question whether the redactions are self-serving and were made to support, or at the very least to not undermine, Attorney General Barr's public statements and whether the Department engaged in post-hoc rationalization to justify Attorney General Barr's positions.

Despite what the Court has just outlined, the Department nonetheless claims that the plaintiffs' assertions of bad faith are merely speculative and "do not show that 'information contained in [the Department's declaration] is contradicted by other evidence in the record.'" Def.'s Reply at 53–54.   However, "[i]n camera inspection does not depend on a finding or even tentative finding of bad faith," but rather, "[a] judge has discretion to order [i]n camera inspection on the basis of an uneasiness, on a doubt that he wants satisfied before he takes responsibility for a de novo determination."  Ray, 587 F.2d at 1196.  In fact, this is precisely the type of situation that Congress envisioned when it enacted the FOIA in 1966—"to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny," U.S. Dep't of

the Air Force v. Rose, 425 U.S. 352, 361 (1976) (internal quotation marks omitted), and to

provide "a means for citizens to know what their [g]overnment is up to," Nat'l Archives &

Records Admin. v. Favish, 541 U.S. 157, 171 (2004) (internal quotation marks omitted).  As this

Circuit has noted, "Congress was all too aware of the [i]nnumerable times that agencies had

withheld information under prior law only to cover up embarrassing mistakes or irregularities[,]

[and the] FOIA was designed to prevent such incidents[.]"  Wash. Post Co. v. U.S. Dep't of

Health & Human Servs., 690 F.2d 252, 264 (D.C. Cir. 1982) (first alteration in original) (internal

quotation marks omitted).  The FOIA's policy of broad disclosure of government documents not

only "give[s] citizens access to the information on the basis of which government agencies make

their decisions, thereby equipping the populace to evaluate and criticize those decisions,"

McGehee v. Cent. Intelligence Agency, 697 F.2d 1095, 1108–09 (D.C. Cir. 1983); see also

Favish, 541 U.S. at 171–72 ("This phrase should not be dismissed as a convenient formalism[;]

[i]t defines a structural necessity in a real democracy."); Wash. Post Co., 690 F.2d at 264 ("[T]he

purpose of [the] FOIA is to permit the public to decide for itself whether government action is

proper."), but also "ensure[s] an informed citizenry, vital to the functioning of a democratic

society, needed to check against corruption and to hold the governors accountable to the

governed," Nat'l Labor Relations Bd., 437 U.S. at 242; see also Envtl. Prot. Agency v. Mink,

410 U.S. 73, 105 (1973) (Douglas, J., dissenting) (characterizing the philosophy of the FOIA as

"[t]he generation that made the nation thought secrecy in government one of the instruments of

Old World tyranny and committed itself to the principle that a democracy cannot function unless

the people are permitted to know what their government is up to").

    Here, although it is with great consternation, true to the oath that the undersigned took

upon becoming a federal judge, and the need for the American public to have faith in the judicial

process, considering the record in this case, the Court must conclude that the actions of Attorney General Barr and his representations about the Mueller Report preclude the Court's acceptance of the validity of the Department's redactions without its independent verification.  Adherence to the FOIA's objective of keeping the American public informed of what its government is up to demands nothing less.  Accordingly, the Court will conduct an independent review of the unredacted version of the Mueller Report to determine whether it concurs with the Department's determination that the redactions of the Mueller Report are authorized by the FOIA exemptions upon which the Department relies.

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes that it must grant in part and deny without prejudice in part the plaintiffs' motions.  Specifically, the Court must grant the plaintiffs' motions to the extent they seek in camera review of the unredacted version of the Mueller Report and deny without prejudice the plaintiffs' motions in all other respects.  The Court further concludes that it must deny without prejudice the Department's motion for summary judgment and directs the Department to submit the unredacted version of the Mueller Report to the Court for in camera review.  If, after reviewing the unredacted version of the Mueller Report, the Court concludes that all of the information has been appropriately withheld under the claimed FOIA exemptions, it will issue a supplemental Memorandum Opinion and Order granting the Department's motion for summary judgment on that ground and denying the plaintiffs' cross-motions.  On the other hand, if the Court concludes after its in camera review that any of the redacted information was inappropriately withheld, it will issue a supplemental Memorandum Opinion and Order that comports with that finding.

**SO ORDERED** this 5th day of March, 2020.[3]

REGGIE B. WALTON
United States District Judge

---

[3] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.