## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, *Plaintiff,* v. UNITED STATES DEPARTMENT OF JUSTICE, *Defendant.* | Civil Action No. 19-cv-810 (RBW) |
| JASON LEOPOLD, BUZZFEED, INC., *Plaintiffs,* v. UNITED STATES DEPARTMENT OF JUSTICE, et al. *Defendants.* | Civil Action No. 19-cv-957 (RBW) |

### ~~IN CAMERA, EX PARTE SEALED~~ FOURTH DECLARATION
### OF VANESSA R. BRINKMANN

I, Vanessa R. Brinkmann, declare the following to be true and correct:

1.  I am Senior Counsel in the Office of Information Policy (OIP), United States Department of Justice (the Department or DOJ). In this capacity, I am responsible for supervising the handling of the Freedom of Information Act (FOIA) requests subject to litigation processed by the Initial Request Staff (IR Staff) of OIP. The IR Staff of OIP is responsible for processing FOIA requests seeking records from within OIP and from within six senior leadership

offices of the Department of Justice, specifically the Offices of the Attorney General (OAG),

Deputy Attorney General (ODAG), Associate Attorney General (OASG), Legal Policy (OLP),

Legislative Affairs (OLA), and Public Affairs (PAO).  Moreover, the IR Staff is responsible for

processing FOIA requests seeking certain records from the Special Counsel's Office (SCO).

2.   The IR Staff of OIP determines whether records responsive to requests exist, and, if

so, whether they can be released in accordance with the FOIA.  In processing such requests, the

IR Staff consults with personnel in the senior leadership offices and, when appropriate, other

components within the Department of Justice, as well as with others in the Executive Branch.

3.   I make the statements herein on the basis of personal knowledge, on my review of the

information at issue, as well as on information acquired by me in the course of performing my

official duties.

4.   This fourth declaration supplements and incorporates by reference my June 3, 2019

Declaration in support of the Department's Motion for Summary Judgment, see ECF No. 54-3,

which described OIP's processing of the confidential "Report on the Investigation Into Russian

Interference in the 2016 Presidential Election" ("the Report"), my July 12, 2019 Second

Declaration in support of the Department's Reply in Support of Its Motion for Summary

Judgment and Opposition to Plaintiffs' Cross-Motions for Summary Judgment, see ECF No. 80-

1, and my July 21, 2020 in camera, ex parte Sealed Third Declaration in support of the

Department's responses to the Court's questions concerning certain redactions to the Report,

including Exhibit A to that declaration, which further addressed the Court's questions, see ECF

No. 125.

5.   This fourth declaration addresses the Court's questions from the ex parte hearing held

on September 15, 2020, regarding certain redactions in the Report.  The information contained in

2

this declaration has been provided to me by other Department components as part of my duties, or is otherwise based on my personal knowledge and experience with the FOIA, as Senior Counsel of OIP.

### (b)(3)-1: Federal Grand Jury Information Prohibited from Disclosure by Rule 6(e) of the Federal Rules of Criminal Procedure

6.   OIP withheld federal grand jury information in the Report pursuant to Exemption 3, which protects from disclosure records that are specifically exempted from disclosure by other federal statutes provided that such statute "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue." 5 U.S.C. § 552(b)(3)(A)(i).  Rule 6(e) of the Federal Rules of Criminal Procedure falls within this first subpart of Exemption 3 and prohibits disclosure of federal grand jury information.  In paragraph 18 of my first declaration, I stated, "All of the information withheld concerns the inner workings of federal grand juries – specifically, the names and/or identifying information of individuals who were subpoenaed or actually testified before a federal grand jury (or information that might reveal that the witness was subpoenaed or testified before the grand jury) and information provided by these individuals in their grand jury testimony." ECF No. 54-3.  The reference to grand jury subpoenas in my first declaration should be understood to include information that was withheld because it would reveal that the information was obtained in response to a grand jury subpoena.  ██████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████  Releasing that

information would show what information was sought by the grand jury and would thus reveal

the inner workings of the grand jury, which is prohibited by Rule 6(e) of the Federal Rules of

Criminal Procedure.

**(b)(7)(A): Pending Law Enforcement Proceedings and**
**(b)(7)(E): Investigative Techniques and Procedures**

7.   Information in the Report that was withheld under Exemption 7(A) was often also

withheld under Exemption 7(E) and vice versa.  Therefore, the paragraphs in my declarations

concerning Exemption 7(A) and Exemption 7(E) should be read together as they often pertain to

the same information.  The entries on Exhibit A pertaining to the Department's justifications for

Exemption 7(A) and Exemption 7(E) for a particular redaction should likewise be read together.[1]

In other words, the harms identified for release of the material protected by Exemption 7(A)

would likewise occur if the material protected by Exemption 7(E) is released, and vice versa.

8.   For the reasons explained in my third declaration, when the Department conducted

another comprehensive review of the redactions listed in Exhibit A, the Department determined

that certain information in the Report could now be released without harming government

interests or pending matters.  That information was marked as "N/A" in the "Reasons" column of

Exhibit A.  As shown on Exhibit A, for certain information that was originally withheld under

Exemptions 3, 7(A), and 7(E), the Department withdrew its reliance on one or two of the

exemptions, but continues to withhold the information under the remaining exemption(s). █

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█   Upon re-review, the Department withdrew its reliance on Exemption 7(A) because there is

---

[1] Certain information that was withheld under Exemptions 7(A) and 7(E) was also withheld as intelligence sources and methods under Exemption 3 (marked as (b)(3)-2 in the Report).  Where the redactions for Exemption 3 overlap with the redactions for Exemption 7(A) and Exemption 7(E), those paragraphs in my declaration and the entries on Exhibit A should likewise be read together because they pertain to the same information.

no longer a pending investigation or proceeding concerning this information, but maintained its

reliance on Exemptions 3 (to protect intelligence sources and methods) and 7(E) (to protect law

enforcement techniques and procedures). As shown on Exhibit A, the Department similarly

withdrew its reliance on Exemption 7(A), but maintains its reliance on Exemption 3 and/or

Exemption 7(E) for certain redactions on Volume I, pages 51, 83, 121, 122, 134, and 149. The

harm in releasing the information that was originally withheld under Exemption 7(A) but is now

withheld only under Exemptions 3 and/or 7(E) is described in paragraphs 16 and 23 of my third

declaration, as well as paragraphs 49 and 83 through 88 in my first declaration.

      9.   The Department redacted certain Federal Bureau of Investigation (FBI) file names

and serial numbers pursuant to Exemptions 7(A) and 7(E). For example, in Volume I, page 37,

footnotes 117 and 118, the words ███████████ were redacted. Similar redactions appear,

for example, on pages 37, 38, 40, 41, 43, 49, and 50. FBI file numbers are not known to the

general public because the release of a file numbering convention identifies the investigative

interest or priority given to such matters. In other words, release of FBI file numbers and serial

numbers associated with on-going FBI investigations could result in the acknowledgment of the

existence of unknown investigations or proceedings and divulge the scope/volume of the FBI's

investigative efforts. As explained in more detail in paragraph 10, release of this information

would reveal unknown details concerning pending investigations and enforcement procedures,

thus jeopardize the investigations themselves. Release of such information would provide

alleged criminals and foreign adversaries with information about the government's

investigation/enforcement strategies in ongoing matters (as identified in my prior declarations

and in Exhibit A), allow them to predict and potentially thwart these strategies, and/or allow

them to discover/tamper with witnesses and/or destroy evidence. As such, revealing this

information could reasonably be expected to interfere with pending enforcement proceedings and

risks circumvention of the law.

10.   The FBI file numbers contain three separate portions.  One portion of these file

numbers consist of FBI file classification numbers that indicate the types of

investigative/intelligence gathering programs to which these files pertain.  Here, the case

classification numbers associated with the SCO's investigation were released.  The protected

investigative file numbers also contain office-of-origin codes, indicating which FBI field office

or overseas FBI legal attaché office originated the investigations at issue.  The office-of-origin

code for the Special Counsel's Office was released, but certain office-of-origin codes of other

FBI offices were redacted.  ███████████████████████████████████

███████████████████████   Providing the FBI office-of-origin codes, in many

instances, would provide critical information about where and how the FBI detected particular

criminal behaviors or national security threats, and reveal key pieces about the FBI's non-public

investigations or intelligence/evidence gathering sources and methods.  The third portion of the

FBI's investigative files consists of the numbers given to the unique investigative initiatives

these files were created to memorialize.  Releasing these singular file numbers would provide

alleged criminals and foreign adversaries with a tracking mechanism by which they can place

particular files/investigations within the context of larger FBI investigative efforts.  Continued

release of sensitive investigative file numbers would provide alleged criminals and foreign

adversaries with an understanding of how FBI investigations may be interrelated and when, why,

and how the FBI pursued different investigative strategies.  This would provide alleged criminals

and foreign adversaries with a means of judging where the FBI allocates its limited investigative

resources, how the FBI responds to different investigative circumstances, what the FBI knows

and when/how they obtained the knowledge, and if there are knowledge-gaps in the FBI's gathered intelligence.  In summary, the release of file numbering conventions identifies the investigative interest or priority given to such matters.  Applying a mosaic analysis, suspects and foreign adversaries could use these numbers (indicative of investigative priority), in conjunction with other information known about other individuals and/or techniques, to formulate an exceptional understanding of the body of investigative intelligence available to the FBI; and where, who, what, and how it is investigating certain detected activities.  Release of this information would enable these alleged criminals and foreign adversaries to predict FBI investigations and structure their behavior to avoid detection and disruption by the FBI, thereby harming the government's efforts to bring them to justice and enabling them to circumvent the law.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Vanessa R. Brinkmann
Senior Counsel
Office of Information Policy
United States Department of Justice

Executed on this 18th day of September, 2020.