**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 19-810 (RBW) |
| UNITED STATES DEPARTMENT OF JUSTICE, | ) ) ) |
| Defendant. | ) ) ) |
| JASON LEOPOLD & BUZZFEED, INC., | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. 19-957 (RBW) |
| UNITED STATES DEPARTMENT OF JUSTICE, et al., | ) ) ) ) |
| Defendants. | ) ) ) |

**MEMORANDUM OPINION**

The plaintiffs in the above-captioned matters, Jason Leopold and Buzzfeed, Inc. (the "Leopold plaintiffs") and the Electronic Privacy Information Center ("EPIC"), pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seek, inter alia, the release of an unredacted version of the report prepared by Special Counsel Robert S. Mueller III ("Special Counsel Mueller") regarding his investigation into Russian interference in the 2016 United States presidential election (the "Mueller Report").  See Complaint ("Compl.") ¶¶ 2, 43, Elec. Privacy Info. Ctr. v. U.S. Dep't of Justice, Civ. Action No. 19-810 ("EPIC Compl."); Compl. ¶ 1,

Leopold v. U.S. Dep't of Justice, Civ. Action No. 19-957 ("Leopold Pls.' Compl.").  On June 3, 2019, the United States Department of Justice (the "Department") filed its motion for summary judgment.  See Department of Justice's Motion for Summary Judgment in Leopold v. Department of Justice and Partial Summary Judgment in Electronic Privacy Information Center v. Department of Justice ("Def.'s Mot.").  Thereafter, the plaintiffs filed their cross-motions for summary judgment.  See Plaintiff's Combined Opposition to Defendant's Motion for Partial Summary Judgment, Cross-Motion for Partial Summary Judgment, and Motion for In Camera Review of the "Mueller Report" ("EPIC's Mot."); Plaintiffs Jason Leopold's and Buzzfeed Inc.'s Motion for Summary Judgment ("Leopold Pls.' Mot.").

On March 5, 2020, the Court issued a Memorandum Opinion, in which it concluded that "the actions of Attorney General [William] Barr and his representations about the Mueller Report preclude the Court's acceptance of the validity of the Department's redactions without its independent verification" and ordered the Department to submit the unredacted version of the Mueller Report to the Court for in camera review.  Elec. Privacy Info. Ctr. v. U.S. Dep't of Justice, 442 F. Supp. 3d 37, 52 (D.D.C. 2020); see also Order at 2 (Mar. 5, 2020), ECF No. 112.

On March 30, 2020, the Department submitted to the Court the unredacted version of the Mueller Report.  See Defendant's Notice of Submission of Documents for In Camera Review at 1–2.  After reviewing the unredacted version of the Mueller Report, the Court ordered the Department to "appear before the Court for an ex parte hearing to address the Court's questions regarding certain redactions of the Mueller Report."  Order at 2 (June 8, 2020), ECF No. 120.  And, "[t]o accord the Department knowledge of the questions that the Court ha[d] regarding some of the redactions prior to the ex parte hearing, the Court [ ] prepared an Excel spreadsheet that catalogues these questions," and "[t]o the extent that the Department is able to respond to the

Court's questions in writing," the Court ordered the Department to file "under seal its responses to the Court's questions."  Order at 2 (July 6, 2020), ECF No. 123.  On July 21, 2020, the Department timely submitted its responses to the Court's questions as well as a declaration from Vanessa Brinkmann, Senior Counsel in the Office of Information Policy at the Department.  See Defendant's Notice of Sealed Submission of Responses to Court Order at 1–2; id., Exhibit ("Ex.") 1 (Sealed Third Declaration of Vanessa R. Brinkmann (redacted)) ("Redacted Brinkmann 3d Decl.").  Thereafter, on September 15, 2020, the Court held an ex parte hearing regarding the Department's claimed exemptions, after which the Department submitted an additional declaration from Brinkmann that addresses questions posed by the Court during the hearing.  See Defendant's Notice of Filing Public Version of Declaration in Response to Court's Questions During Ex Parte Hearing, Ex. 1 (Fourth Declaration of Vanessa R. Brinkmann (redacted)) ("Redacted Brinkmann 4th Decl.").

Having completed its in camera review of the unredacted version of the Mueller Report, and upon careful consideration of the parties' submissions,[1] the Court now concludes for the following reasons that it must grant in part and deny in part the Department's motion for

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Memorandum of Points and Authorities in Support of the Department of Justice's Motion for Summary Judgment in Leopold v. Department of Justice and Partial Summary Judgment in Electronic Privacy Information Center v. Department of Justice ("Def.'s Mem."); (2) Def.'s Mot., Exhibit ("Ex.") 1 (Declaration of Vanessa R. Brinkmann) ("Brinkmann 1st Decl."); (3) the Memorandum of Points and Authorities in Support of Plaintiff's Combined Opposition and Cross-Motion for Partial Summary Judgment and Motion for In Camera Review of the "Mueller Report" ("EPIC's Mem."); (4) Plaintiffs Jason Leopold's and Buzzfeed Inc.'s Combined Memorandum in Support of Their Motion for Summary Judgment and in Opposition to Defendants' Motion for Summary Judgment ("Leopold Pls.' Mem."); (5) the Brief of Citizens for Responsibility and Ethics in Washington as Amicus Curiae in Support of Plaintiffs' Motions for Summary Judgment ("CREW Br."); (6) the Department of Justice's Reply in Support of its Motion for Summary Judgment With Respect to the "Mueller Report" and Opposition to Plaintiffs' Cross-Motions for Summary Judgment ("Def.'s Reply"); (7) Def.'s Reply, Ex. 1 (Second Declaration of Vanessa R. Brinkmann) ("Brinkmann 2d Decl."); (8) the Plaintiffs' Consolidated Reply in Support of Their Cross-Motions for Summary Judgment and Motions for In Camera Review of the "Mueller Report" ("Pls.' Reply"); (9) the Sealed Third Declaration of Vanessa R. Brinkmann ("Sealed Brinkmann 3d Decl."); and (10) the In Camera Ex Parte Sealed Fourth Declaration of Vanessa R. Brinkmann ("Sealed Brinkmann 4th Decl.").

summary judgment and grant in part and deny the balance of the plaintiffs' cross-motions for summary judgment.[2]

## I.   STANDARD OF REVIEW

"FOIA cases typically are resolved on a motion for summary judgment." Ortiz v. U.S. Dep't of Justice, 67 F. Supp. 3d 109, 116 (D.D.C. 2014) (citation omitted). The "FOIA requires federal agencies to disclose, upon request, broad classes of agency records unless the records are covered by the statute's exemptions." Students Against Genocide v. U.S. Dep't of State, 257 F.3d 828, 833 (D.C. Cir. 2001) (citing 5 U.S.C. § 552(a)(3)(A), (b)); see also Wash. Post Co. v. U.S. Dep't of Justice, 863 F.2d 96, 101 (D.C. Cir. 1988) (citation omitted) ("[The] FOIA is to be interpreted with a presumption favoring disclosure and exemptions are to be construed narrowly."). In a FOIA action, the defendant agency has "[the] burden of demonstrating that the withheld documents are exempt from disclosure." Boyd v. U.S. Dep't of Justice, 475 F.3d 381, 385 (D.C. Cir. 2007). This burden "cannot be met by mere conclusory statements." Wash. Post Co., 863 F.2d at 101 (citation omitted). "The agency may meet this burden by filing affidavits describing the material withheld and the manner in which it falls within the exemption claimed," King v. U.S. Dep't of Justice, 830 F.2d 210, 217 (D.C. Cir. 1987) (citations omitted), and by "show[ing] how release of the particular material would have the adverse consequence that the [FOIA] seeks to guard against," Wash. Post Co., 863 F.2d at 101 (citation omitted).

---

[2] In response to the Court's inquiries, the Department filed two declarations ex parte and under seal—redacted versions of which were also filed on the public docket. Although a district "court should not use in camera affidavits unless necessary," the "use of such affidavits is at the discretion of the [district] court." Lykins v. U.S. Dep't of Justice, 725 F.2d 1455, 1465 (D.C. Cir. 1984). However, "if such affidavits are used, it should be certain to make the public record as complete as possible." Id. Pursuant to Lykins, the Court concludes that the Department's submission of Brinkmann's third and fourth declarations ex parte and under seal was appropriate in this case because the declarations were "absolutely necessary to determine whether the [Department] properly claimed FOIA [e]xemptions[s] for its withholdings." Elec. Privacy Info. Ctr. v. U.S. Drug Enf't Agency, 401 F. Supp. 3d 37, 45 (D.D.C. 2019).

Moreover, courts will grant summary judgment to the government in a FOIA case only if the agency can prove "that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." Friends of Blackwater v. U.S. Dep't of Interior, 391 F. Supp. 2d 115, 119 (D.D.C. 2005) (quoting Greenberg v. U.S. Dep't of Treasury, 10 F. Supp. 2d 3, 11 (D.D.C. 1998)). Thus, in a lawsuit brought to compel the production of documents under the FOIA, "an agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly[, or partially,] exempt [from disclosure].'" Students Against Genocide, 257 F.3d at 833 (omission in original) (quoting Goland v. Cent. Intelligence Agency, 607 F.2d 339, 352 (D.C. Cir. 1978)). However, "[t]he burden upon the requester is merely 'to establish the absence of material factual issues before a summary disposition of the case could permissibly occur.'" Pub. Citizen Health Research Grp. v. Food & Drug Admin., 185 F.3d 898, 904–05 (D.C. Cir. 1999) (quoting Nat'l Ass'n of Gov't Emps. v. Campbell, 593 F.2d 1023, 1027 (D.C. Cir. 1978)).

## II.   ANALYSIS

As an initial matter, the Court notes that since the issuance of its March 5, 2020 Memorandum Opinion, the Department has released a substantial amount of information that was previously withheld from public disclosure. Compare Brinkmann 1st Decl., Ex. D (Report On The Investigation Into Russian Interference In The 2016 Presidential Election), with Defendant's Notice of Reprocessed Report, Ex. 1 (Report On The Investigation Into Russian Interference In The 2016 Presidential Election, Volume I of II), and id., Ex. 2 (Report On The Investigation Into Russian Interference In The 2016 Presidential Election, Volume II of II); see

<u>also</u> Defendant's Notice of Filing Unsealed Submission of Certain Responses to Court Order,

Ex. A (Redacted Version of the Spreadsheet).[3]

However, the Department continues to withhold information in the Mueller Report

pursuant to Exemptions 3, 5, 6, 7(A), 7(C), and 7(E) of the FOIA.  <u>See</u> Def.'s Mem. at 2.  The

Department contends that

> the disclosure of the withheld information would reveal: (1) grand jury
> information protected by Rule 6(e) of the Federal Rule of Criminal Procedure and
> Exemption 3; (2) intelligence sources and methods protected by the National
> Security Act and Exemption 3; (3) privacy information protected by Exemptions
> 6 and 7(C); (4) deliberative information regarding charging decisions protected by
> Exemption 5; and (5) law enforcement information protected by Exemptions 7(A)
> [ ] and 7(E).

<u>Id.</u>  The Court will address each of the exemptions asserted by the Department in turn.

**A.      Exemption 3**

Exemption 3 of the FOIA excludes from compelled disclosure matters that are

"specifically exempted from disclosure by statute."  5 U.S.C. § 552(b)(3).  Under this exemption,

the Department need only show that the statute claimed qualifies as a withholding statute and

"that the withheld material falls within the statute."  <u>Larson v. U.S. Dep't of State</u>, 565 F.3d 857,

865 (D.C. Cir. 2009).  A statute falls under the purview of Exemption 3 only if it "requires that

the matters be withheld from the public in such a manner as to leave no discretion on the issue,"

---

[3] The Department previously withheld (1) information pursuant to Exemption 5 concerning "deliberations about applications of law to specific factual scenarios, in which the Special Counsel [Mueller] explains . . . the basis for his charging decisions," Brinkmann 1st Decl. ¶ 28; (2) "information pertaining to Roger Stone" pursuant to Exemption 7(B), <u>id.</u> ¶ 53; and (3) "information pertaining to an individual who was a subject of the investigation by [ ] [Special Counsel Mueller]" pursuant to Exemptions 6 and 7(C), <u>id.</u> ¶ 72.  However, the Department has since released the information withheld on these bases.  <u>Compare</u> Brinkmann 1st Decl., Ex. D (Report On The Investigation Into Russian Interference In The 2016 Presidential Election), <u>with</u> Defendant's Notice of Reprocessed Report, Ex. 1 (Report On The Investigation Into Russian Interference In The 2016 Presidential Election, Volume I of II); <u>see also</u> Defendant's Notice of Filing Unsealed Submission of Certain Responses to Court Order, Ex. A (Redacted Version of the Spreadsheet).  Therefore, the Court need not address the parties' arguments as to these prior withholdings.

or "establishes particular criteria for withholding or refers to particular types of matters to be withheld."  Morley v. Cent. Intelligence Agency, 508 F.3d 1108, 1125 (D.C. Cir. 2007).

Here, the Department claims that the information withheld pursuant to Exemption 3 is either "federal grand jury information, prohibited from disclosure by Federal Rule of Criminal Procedure 6(e) . . . [or] information pertaining to intelligence sources and methods, prohibited from disclosure by the National Security Act of 1947 [("National Security Act")], 50 U.S.C. § 3024(i)(1)."  Def.'s Mem. at 11.  Because both Federal Rule of Criminal Procedure 6(e) and the National Security Act qualify as separate withholding statutes for purposes of Exemption 3, see Cent. Intelligence Agency v. Sims, 471 U.S. 159, 167 (1985) ("Section 102(d)(3) of the National Security Act . . . qualifies as a withholding statute under Exemption 3."); Fund for Const. Gov't v. Nat'l Archives & Records Serv., 656 F.2d 856, 867–68 (D.C. Cir. 1981) (finding that Federal Rule of Criminal Procedure 6(e) "is a relevant statute within the meaning of FOIA Exemption 3"), the Court will address in turn whether the withheld material falls within Rule 6(e) or the National Security Act.

## 1. Federal Rule of Criminal Procedure 6(e)

Federal Rule of Criminal Procedure 6(e) prohibits disclosure of "matters occurring before [a] grand jury."  Senate of P.R. ex rel. Judiciary Comm. v. U.S. Dep't of Justice, 823 F.2d 574, 582 (D.C. Cir. 1987) (quoting Fed. R. Crim. P. 6(e)).  Recognizing that "the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings," the Supreme Court observed that "safeguarding the confidentiality of grand jury proceedings" serves several distinct interests:

> First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony.  Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements.  There also would be the

> risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment.  Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule.

Douglas Oil Co. of Cal. v. Petrol Stops Nw., 441 U.S. 211, 218–19 (1979).  And, "[i]n order to effectuate these objectives, the scope of the secrecy is necessarily broad."  Fund for Const. Gov't, 656 F.2d at 869.  Therefore, Rule 6(e) protects "not only the direct revelation of grand jury transcripts but also the disclosure of information which would reveal 'the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of the jurors, and the like.'"  Id. (quoting Secs. & Exchange Comm'n v. Dresser Indus., Inc., 628 F.2d 1368, 1382 (D.C. Cir. 1980) (en banc)); see also Senate of P.R., 823 F.2d at 584 ("[I]t is incumbent upon us to require some affirmative demonstration of a nexus between disclosure and revelation of a protected aspect of the grand jury's investigation.").  However, Rule 6(e) should not be construed in a manner that creates "a veil of secrecy . . . over all matters occurring in the world that happen to be investigated by a grand jury," Senate of P.R., 823 F.2d at 582 (quoting Dresser Indus., 628 F.2d at 1382), and "there is no per se rule against disclosure of any and all information which has reached the grand jury chambers[,]" id.  When determining whether the withheld material constitutes "grand jury" material, it is appropriate to rely on statements by the government's declarant.  See Davis v. U.S. Dep't of Justice, 970 F. Supp. 2d 10, 17 (D.D.C. 2013) (Walton, J.) (allowing the withholding of documents based on declarant's statements that revealing the documents would impermissibly reveal grand jury information).

Here, the Department represents that it has redacted grand jury information from the Mueller Report pursuant to Federal Rule of Criminal Procedure 6(e).  See Def.'s Mem. at 11.  Specifically, the Department has withheld information that was obtained as a result of grand jury

subpoenas, as well as "names and/or identifying information of individuals who were

subpoenaed or actually testified before a federal grand jury (or information that might reveal that

the witness was subpoenaed or testified before the grand jury) and information provided by these

individuals in their grand jury testimony."  Brinkmann 1st Decl. ¶ 18; <u>see also</u> Redacted

Brinkmann 4th Decl. ¶ 6 (representing that "information [ ] was withheld because it would reveal

that the information was obtained in response to a grand jury subpoena" and that "[r]eleasing that

information would show what information was sought by the grand jury and would thus reveal

the inner workings of the grand jury").  According to the Department,

> [it] withheld grand jury material that is contained within the [Mueller] Report,
> protecting both the substance of what was said to the grand jury and any
> references to the fact that a witness was called to testify (including the citation to
> the grand jury transcript) pursuant to Exemption 3 of the FOIA, in conjunction
> with Rule 6(e) . . . .  However, where the witness provided the same information
> both to the grand jury and in an investigative interview, [the Department] did not
> redact the substance of what was said because the investigative interview is an
> alternative source for the substantive information which does not implicate Rule
> 6(e).  In those instances, only the reference to the fact that a witness was called to
> testify is protected because the Department has not disclosed which witnesses
> appeared before the grand jury.  It is important to note that [the Department]
> always redacted direct quotations from the grand jury transcript contained in the
> [Mueller] Report, even if that same information was also shared in an
> investigative interview, because the source of the direct quotation is the transcript,
> implicating Rule 6(e).

Redacted Brinkmann 3d Decl. ¶ 8.  The Court finds that the information redacted by the

Department pursuant to Rule 6(e) is precisely the type of information Rule 6(e) is intended to

protect—information that "would reveal 'the identities of witnesses . . . , the substance of

testimony, [and] the strategy or direction of the investigation."  <u>Fund for Const. Gov't</u>, 656 F.2d

at 869 (quoting <u>Dresser Indus.</u>, 628 F.2d at 1382); <u>see also</u> <u>Lopez v. U.S. Dep't of Justice</u>, 393

F.3d 1345, 1350 (D.C. Cir. 2005) ("Because the evidence . . . subpoenaed is that which is

intended to be used by the grand jury, the subpoenas . . . tend to reveal the direction of the

relevant investigation. All grand jury subpoenas . . . fall within [the] FOIA's third exemption."); Fund for Const. Gov't, 656 F.2d at 869–70 ("Witness names are clearly covered . . . . Potential witnesses and potential documentary exhibits, while less clearly within [ ] [R]ule [6(e)], if disclosed would reveal the direction and strategy of the investigation."); Labow v. U.S. Dep't of Justice, 278 F. Supp. 3d 431, 444 (D.D.C. 2017) (stating that "[g]rand jury subpoenas themselves, on their face, reveal something critical about the grand jury's investigation—its targets and/or the direction of the investigation"); Boehm v. Fed. Bureau of Investigation, 983 F. Supp. 2d 154, 159 (D.D.C. 2013) (finding that "the [agency] . . . satisfied [its] burden to establish that . . . information that would otherwise reveal the names or identities of individuals subpoenaed to testify before the federal grand jury was properly withheld"). Therefore, the Court concludes that the Department's withholdings pursuant to Rule 6(e) and Exemption 3 are appropriate.

    The plaintiffs' counterarguments are unavailing. They maintain that the Department's "withholding of alleged grand jury material fails as a matter of law because the agency cannot identify a particular 'nexus between disclosure [of each redacted passage] and revelation of a protected aspect of the grand jury's investigation.'" EPIC's Mem. at 35 (alteration in original) (quoting Judicial Watch, Inc. v. Nat'l Archives & Records Admin., 214 F. Supp. 3d 43, 53 (D.D.C. 2016) (Walton, J.)); see Leopold Pls.' Mem. at 25 ("Nor has [the Department] explained how this information would somehow reveal some unknown strategy or direction of the investigation, or how disclosure of the information on its own would reveal that the information was even presented to the grand jury."); id. (arguing that the Department has withheld "identifying information" other than names, but "has not explained what 'identifying information' means or how this non-name information could actually be used to identify any

individuals as grand jury witnesses"); id. at 29 (claiming that "none of the withheld information

seems likely to reveal anything meaningful about the strategy or direction of the grand jury or the

investigation, and thus, Rule 6(e) does not apply").  However, the plaintiffs do not cite, nor has

the Court been able to locate, any decision in which a court required an agency withholding the

type of information that has been withheld here to identify the nexus between disclosure and

revelation of a protected aspect of the grand jury's investigation.  This is unsurprising given this

Circuit's position that, with respect to redactions of information "naming or identifying grand

jury witnesses[] [and] quoting or summarizing grand jury testimony," "this information falls

within the broad reach of grand jury secrecy" because "[d]isclosure of this information would

reveal matters occurring before the grand jury and is, therefore, properly exempt from disclosure

pursuant to FOIA Exemption 3 and [Rule] 6(e)."  Fund for Const. Gov't, 656 F.2d at 869.

 The Leopold plaintiffs also "dispute[] the continued validity of any Rule 6(e) case law to

the extent it applies to all grand jury material with no further showing required."  Leopold Pls.'

Mem. at 29.  Specifically, they claim that "Rule 6(e) should not be interpreted to apply in the

first instance unless at least one of the[] interests [articulated by the Supreme Court in Douglas

Oil of California v. Petrol Stops Northwest, 441 U.S. 211 (1979)] is actually served by the Rule's

secrecy provisions as to the specific information at issue," id. at 30, and that the "information

[redacted by the Department pursuant to Rule 6(e)] is outside the scope of Rule 6(e)'s secrecy

provisions" because the "information is sought for its own intrinsic value" and not the activities

of the grand jury, id. at 28–29.  However, the Court disagrees with the Leopold plaintiffs'

argument in light of the long-standing precedent by this Circuit that Rule 6(e) prevents from

disclosure information that "would reveal 'the identities of witnesses . . . , the substance of

testimony, [and] the strategy or direction of the investigation," Fund for Const. Gov't, 656 F.2d

at 869 (quoting Dresser Indus., 628 F.2d at 1382); see also Senate of P.R., 823 F.2d at 582,

which is the type of information redacted by the Department pursuant to Rule 6(e) that is at issue

in this case.

The Leopold plaintiffs further argue that the Department, pursuant to Rule 6(e), has

inappropriately withheld grand jury information that has already been disclosed to the public.

See Leopold Pls.' Mem. at 22 (claiming that the Department "has failed to distinguish between

the identity of grand jury witnesses already known to have testified (and thus by [the

Department's] own admission [are] beyond the scope of Rule 6(e)) and those who are allegedly

secret"); id. at 25 ("A tremendous amount of information has already been disclosed about the

investigation, including throughout the [Mueller] Report.  [The Department] has failed to

establish that any of this Rule 6(e)-withheld information is actually secret.").  In support of their

position that "[t]here are many people who have already been identified as grand jury witnesses,

through self-identification, government court filings, or otherwise," Leopold Pls.' Mem. at 22,

the Leopold plaintiffs cite public sources that identify a number of individuals, namely, Paul

Manafort, George Nader, Carter Page, Andrew Miller, James Comey, David Lugo, Tyler Nixon,

Ronn Torossian, Steve Bannon, Jerome Corsi, Jason Fishbein, Jason Maloni, Wayne Holland,

and Sam Nunberg, as grand jury witnesses, see id. at 22–24.  However, "a plaintiff asserting a

claim of prior disclosure must bear the initial burden of pointing to specific information in the

public domain that appears to duplicate that being withheld," Afshar v. U.S. Dep't of State, 702

F.2d 1125, 1130 (D.C. Cir. 1983), and such information "must already have been made public

through an official and documented disclosure," Fitzgibbon v. Cent. Intelligence Agency, 911

F.2d 755, 765 (D.C. Cir. 1990).  And, the only individual identified by the Leopold plaintiffs

whose identity as a grand jury witness is already in the public domain by official disclosure is

Manafort,[4] see Government's Submission in Support of [I]ts Breach Determination at 2, United States v. Manafort, Crim. Action No. 17-201 (D.D.C. Dec. 7, 2018), ECF No. 460 (the Department acknowledging that Manafort "was called to testify before the grand jury on two occasions"), and as the Department correctly notes, the filing identified by the Leopold plaintiffs "does not provide any details regarding the substance of his testimony," Def.'s Reply at 8. Although the Court acknowledges that the Department "cannot rely on an otherwise valid exemption claim to justify withholding information that has been 'officially acknowledged' or is in the 'public domain[,]'" Davis v. U.S. Dep't of Justice, 968 F.2d 1276, 1279 (D.C. Cir. 1992), "the fact that information exists in some form in the public domain does not necessarily mean that official disclosure will not cause harm cognizable under a FOIA exemption," Wolf v. Cent. Intelligence Agency, 473 F.3d 370, 378 (D.C. Cir. 2007). Therefore, although the identity of Manafort as a grand jury witness may have been previously disclosed, "[c]itations to grand jury testimony would necessarily divulge the substance of the testimony," id., and the disclosure of any additional information would reveal more than what is publicly available, see id. (stating that "revealing any additional information would reveal a secret aspect of the grand jury's investigation"). Therefore, the Court finds that there has been no waiver of information by the government through official acknowledgment as to any of the individuals identified by the Leopold plaintiffs. See Cottone v. Reno, 193 F.3d 550, 555 (D.C. Cir. 1999) ("[W]e must be

---

[4] Although the Leopold plaintiffs cite to a filing in a matter pending before another member of this court in support of their claim that the identity of James Comey, the former Director of the Federal Bureau of Investigation ("FBI"), as a grand jury witness is in the public domain, see Notice in Response to the Court's Order of April 1, 2019, Ex. B (In Camera, Ex Parte Declaration of the FBI) ¶ 5, Cable News Network, Inc. v. Fed. Bureau of Investigation, Civ. Action No. 17-1167 (D.D.C. Apr. 8, 2019), ECF No. 79 (representation by the FBI that "Comey is a witness in the pending investigation"), the Department is correct that that filing does not state that Comey "provided testimony before a grand jury," Def.'s Reply at 7. Therefore, the Court finds that the Leopold plaintiffs have "not met [their] burden of demonstrating that the exact material [they] want[] . . . is in the public domain." Cf. Roble v. U.S. Dep't of Justice, No. 18-5189, 2019 WL 286458, at *1 (D.C. Cir. Jan. 3, 2019) (citing Davis, 968 F.2d at 1279).

confident that the information sought is truly public and that the requester receive no more than what is publicly available before we find a waiver.").

In sum, the Court concludes that the Department appropriately withheld information pursuant to Rule 6(e) and must therefore grant the Department's motion for summary judgment and deny the plaintiffs' cross-motions as to the Department's withholding of information pursuant to Exemption 3 and Rule 6(e).

### 2. The National Security Act

Section 102A(i)(1) of the National Security Act requires the Director of National Intelligence to "protect intelligence sources and methods from unauthorized disclosure," 50 U.S.C. § 3024(i)(1), and bars disclosure of information that either relates to "intelligence sources and methods," Larson, 565 F.3d at 865, or "can reasonably be expected to lead to unauthorized disclosure" of such material, Wolf, 473 F.3d at 377 (quoting Gardels v. Cent. Intelligence Agency, 689 F.2d 1100, 1103 (D.C. Cir. 1982)).  The Supreme Court has stated that "Congress gave [the intelligence agencies] broad power to control the disclosure of intelligence sources." Sims, 471 U.S. at 173.  Because of this "'sweeping power,' courts are required to give 'great deference' to the [agency's] assertion that a particular disclosure could reveal intelligence sources or methods." Whitaker v. Cent. Intelligence Agency, 64 F. Supp. 3d 55, 63–64 (D.D.C. 2014) (quoting Berman v. Cent. Intelligence Agency, 501 F.3d 1136, 1140 (9th Cir. 2007)). Accordingly, in the national security context, an agency may withhold information that may be "superficially innocuous [ ] on the ground that it might enable an observer to discover the identity of an intelligence source [or method]" because "bits and pieces of data 'may aid in piecing together bits of other information even when the individual piece is not of obvious importance in itself.'" Sims, 471 U.S. at 178 (quoting Halperin v. Cent. Intelligence Agency, 629 F.2d 144, 150 (D.C. Cir. 1980)); see also Larson, 565 F.3d at 864 ("Minor details of

intelligence information may reveal more information than their apparent insignificance suggests because, much like a piece of jigsaw puzzle, [each detail] may aid in piecing together other bits of information even when the individual piece is not of obvious importance in itself." (internal quotation marks omitted) (alteration in original)).  Therefore,

> summary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail . . . , and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith.  If the agency's statements meet this standard, the court is not to conduct a detailed inquiry to decide whether it agrees with the agency's opinions; to do so would violate the principle of affording substantial weight to the expert opinion of the agency.  Judges, moreover, lack the expertise necessary to second-guess such agency opinions in the typical national security FOIA case.

Halperin, 629 F.2d at 148 (footnotes omitted).

Here, the Department claims that the information redacted from the Mueller Report pursuant to Exemption 3 and the National Security Act "relat[es] to investigative and information gathering techniques used" in national security investigations, and "reflects material identified by the intelligence and law enforcement communities as potentially compromising sensitive sources, methods, or techniques."  Brinkmann 1st Decl. ¶ 23.  Specifically, the Department represents that "[s]ome information about and derived from investigative activities of [Federal Bureau of Investigation ('FBI')] personnel assigned to [ ] Special Counsel [Mueller] are contained in the [ ] [Mueller] Report."  Id. ¶ 20; see also Redacted Brinkmann 3d Decl. ¶ 9 (stating that the withheld information "reflects historical and/or current sources and methods of foreign intelligence information that should be protected from disclosure" and that "[t]he information pertains to specific sources of information as well as to capabilities and techniques that are used by the United States to obtain critical foreign intelligence information").  Based on the Department's public and ex parte representations to the Court as well as the Court's review of the unredacted version of the Mueller Report, the Court concludes that the Department

appropriately redacted information from the Mueller Report that relates to intelligence sources and methods and therefore is protected from disclosure by Exemption 3 and the National Security Act.  The Court must therefore grant the Department's motion for summary judgment and deny the Leopold plaintiffs' cross-motion as to these non-disclosures.

**B.      Exemption 7**

Under the FOIA, agencies are authorized to withhold

records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings, . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, . . . [and] (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law[.]

5 U.S.C. § 552(b)(7).  Thus, Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure of such records would cause an enumerated harm.  Id.; see Fed. Bureau of Investigation v. Abramson, 456 U.S. 615, 622 (1982).  Here, the Department has "withheld information under Exemptions 7(A), . . . 7(E), as well as 7(C) (together with Exemption 6)," Def.'s Mem. at 16, each of which the Court will address in turn.[5]

**1.   Exemption 7(C)/Exemption 6**

Exemption 7(C) protects "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy."

---

[5] Neither EPIC nor the Leopold plaintiffs challenge the threshold requirement under Exemption 7—that the Mueller Report "must have been 'compiled for law enforcement purposes.'"  Pub. Emps. for Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mex., 740 F.3d 195, 202 (D.C. Cir. 2014) (quoting 5 U.S.C. § 552(b)(7)).  Therefore, the Court need not address this factor in assessing whether the Department has appropriately withheld information under Exemption 7.

5 U.S.C. § 552(b)(7)(C).  Similarly, Exemption 6 permits agencies to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  Id. § 552(b)(6).  "Both exemptions require agencies and reviewing courts to 'balance the privacy interests that would be compromised by disclosure against the public interest in the release of the requested information.'"  100Reporters LLC v. U.S. Dep't of Justice, 248 F. Supp. 3d 115, 158 (D.D.C. 2017) (quoting Beck v. U.S. Dep't of Justice, 997 F.2d 1489, 1491 (D.C. Cir. 1993)).  However, there are two important differences between the exemptions.  First, "Exemption 7 in general applies only to information compiled for 'law enforcement purposes.'"  Stonehill v. Internal Revenue Serv., 534 F. Supp. 2d 1, 11 (D.D.C. 2008).  Second, "Exemption 7(C) . . . establishes a lower bar for withholding material," Prison Legal News v. Samuels, 787 F.3d 1142, 1146 n.5 (D.C. Cir. 2015) (quoting Am. Civil Liberties Union v. U.S. Dep't of Justice, 655 F.3d 1, 6 (D.C. Cir. 2011)), because, "while Exemption 6 requires a 'clearly unwarranted invasion of personal privacy' to qualify for withholding, Exemption 7(C) requires only that disclosure 'could reasonably be expected to constitute an unwarranted invasion of personal privacy,'" Stonehill, 534 F. Supp. 2d at 11 (quoting 5 U.S.C. § 552(b)(6)–(7)).  Accordingly, "the Court need only address whether the [Department] has properly withheld these documents under Exemption 7(C)[,] [and i]f so, there is no need to consider the higher bar of Exemption 6."  Braga v. Fed. Bureau of Investigation, 910 F. Supp. 2d 258, 267 (D.D.C. 2012); see also Archibald v. U.S. Dep't of Justice, 950 F. Supp. 2d 80, 86 (D.D.C. 2013) (Walton, J.)  ("[I]t is sufficient to consider only Exemption 7(C), because if the defendants are not excused from disclosure under the heightened privacy protection of Exemption 7(C), then neither will they be excused under Exemption 6."), aff'd, No. 13-5190, 2014 WL 590894 (D.C. Cir. Jan. 28, 2014).

In order to justify its withholdings under Exemption 7(C), the agency must show that (1) the disclosure of the records must "reasonably be expected to constitute an unwarranted invasion of personal privacy," and (2) the "personal privacy interest" must not be "outweighed by the public interest in disclosure" of the records.  Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 160 (2004).  However,

> [i]n order to trigger the balancing of public interests against private interests, a [plaintiff] [ ] must (1) "show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake," and (2) " show the information is likely to advance that interest."  If the public interest is government wrongdoing, then the [plaintiff] must "produce evidence that would warrant a belief by a reasonable person that the alleged [g]overnment impropriety might have occurred."

Boyd, 475 F.3d at 387 (quoting Favish, 541 U.S. at 172, 174).

Here, the Department represents that it "withheld information that would unduly infringe upon individuals' personal privacy interests."  Def.'s Mem. at 31.  Specifically, the Department has withheld (1) the "names, social media account information, and other contact information of unwitting third parties" (the "unwitting third parties"); (2) the "names and personally-identifiable information about individuals not charged [with having allegedly violated the law] by the [Special Counsel's Office]" (the "individuals not charged with having committed crimes by the Special Counsel's Office"); and (3) the "names, social media account information, contact information, and other personally-identifiable information of individuals merely mentioned in the [Mueller] Report" (the "individuals merely mentioned in the Mueller Report").  Brinkmann 1st Decl. ¶ 62.[6]  According to the Department, the unwitting third parties "were unknowingly involved in election interference efforts carried out by Russian nationals."  Id. ¶ 63; see also id.

---

[6] The Court notes that "EPIC does not challenge the withholdings of personal information of unwitting third parties in the [Mueller] Report . . . , as the required balancing analysis weighs against disclosure for such individuals."  EPIC's Mem. at 26.

("[T]he [Mueller] Report identifies numerous authentic social media users, reporters, and individuals associated with the Trump campaign who – apparently not knowing that the [Internet Research Agency ('IRA')]-controlled accounts and personas were fake – were contacted by, or interacted or engaged with the IRA's social media activities."); id. ("[T]he [Mueller] Report [also] identifies reporters who – again, apparently not knowing that the [Main Intelligence Directive of the General Staff ('GRU')]-controlled personas were fake – were contacted by DCLeaks and Guccifer 2.0 as a part of GRU's efforts to promote release of the hacked materials."); id. ¶ 64 (indicating that "[i]n limited instances, [the Department] has withheld the names of Facebook groups in order to protect the individuals who can be identified through their online interactions with the Facebook groups"); id. ("[T]he Facebook groups can be tied to the individuals who are members of and interact within each group.  The Facebook group names have been withheld in order to protect these individuals.").  The Department also represents that the individuals merely mentioned in the Mueller Report "were neither subjects of the [Special Counsel's Office's] investigation nor charged [with having committed crimes] by the [Special Counsel's Office] . . . and [ ] were also not unwitting third parties[.]"  Id. ¶ 76 (stating that the last category of withheld information includes "third parties who are mentioned only in association with individuals of interest to the investigation (but who are not themselves subjects or targets of the investigation); individuals who were mentioned in relation to or were victims of GRU hacking and dumping operations; assorted contact information, including social media account information, for these and other individuals mentioned throughout the [Mueller] Report; and names and related personally-identifiable information of individuals for whom evidence of potential criminal activity was referred by [ ] Special Counsel [Mueller] to appropriate law enforcement authorities").

Based on the Court's review of the unredacted version of the Mueller Report and the Department's public and <u>ex parte</u> representations to the Court, the Court concludes that, pursuant to Exemption 7(C), the Department has appropriately withheld information relating to the unwitting third parties, the individuals not charged with having committed crimes by the Special Counsel's Office, and the individuals merely mentioned in the Mueller Report.  The Department has adequately explained the harms associated with releasing this information "[g]iven the intense public interest surrounding the [Special Counsel's Office's] work as well as the public and media scrutiny, and partisan attacks, that occur when any new fact is made public."  <u>Id.</u> ¶ 65; <u>see also</u> <u>id.</u> (indicating that "disclosure of the identities and associated social media/contact information of [the] [unwitting third parties], who are merely victims of interference operations emanating from Russia, would certainly subject these individuals to unwarranted attention, harassment and potential harm, that gives rise to a significant privacy interest"); <u>id.</u> ¶ 69 ("[D]isclosure of the identities of these individuals, who were ultimately not charged with any crime, would certainly subject these individuals to unwarranted harassment and potential harm. . . . [C]onsider[ing] the stigmatizing effect that being associated with a criminal investigation carries[,] [ ] having it publicly revealed that criminal charges against these individuals were contemplated (particularly in this context), notwithstanding that no charges were ultimately filed, would very likely subject them to significant embarrassment, reputational harm, reprisal, or even physical harm should their connection to the [Special Counsel's Office's] investigation be publicized."); <u>id.</u> ¶ 77 (stating that in light of "the stigmatizing effect that being associated with a criminal investigation carries, disclosure of the identities or social media/contact information of these individuals, who are merely mentioned in the [Mueller] Report, but who were not subjects of the investigation, nor pursued or considered for criminal

charges by the [Special Counsel's Office] in any way, would certainly subject these individuals to unwarranted harassment and potential harm").

And, the Department's decision to withhold information relating to the unwitting third parties, the individuals not charged with having committed crimes by the Special Counsel's Office, and the individuals merely mentioned in the Mueller Report pursuant to Exemption 7(C) is fully consistent with caselaw in this Circuit.  See, e.g., Am. Civil Liberties Union v. U.S. Dep't of Justice, 750 F.3d 927, 933 (D.C. Cir. 2014) ("Although the fact that such defendants were accused of criminal conduct may remain a matter of public record, they are entitled to move on with their lives without having the public reminded of their alleged but never proven transgressions."); Schrecker v. U.S. Dep't of Justice, 349 F.3d 657, 666 (D.C. Cir. 2003) (recognizing that "the mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation"); Nation Magazine, Wash. Bureau v. U.S. Customs Serv., 71 F.3d 885, 894 (D.C. Cir. 1995) (stating that "third parties who may be mentioned in investigatory files" have "an obvious privacy interest cognizable under Exemption 7(C)"); Senate of P.R., 823 F.2d at 588 ("There is little question that disclosing the identity of targets of law-enforcement investigations can subject those identified to embarrassment and potentially more serious reputational harm."); Stern v. Fed. Bureau of Investigation, 737 F.2d 84, 91–92 (D.C. Cir. 1984) ("[I]ndividuals have a strong interest in not being associated unwarrantedly with alleged criminal activity."); Fund for Const. Gov't, 656 F.2d at 863 ("[I]nformation in an investigatory file tending to indicate that a named individual has been investigated for suspected criminal activity is, at least as a threshold matter, an appropriate subject for exemption under 7(C)."); Bast v. U.S. Dep't of Justice, 665 F.2d 1251, 1254 (D.C. Cir. 1981) (concluding that Exemption 7(C) "recognizes the stigma potentially

associated with law enforcement investigations and affords broader privacy rights to suspects, witnesses, and investigators"); Giovanetti v. Fed. Bureau of Investigation, 174 F. Supp. 3d 453, 462 (D.D.C. 2016) (finding that the FBI appropriately withheld the names of "individuals merely mentioned"); Lazaridis v. U.S. Dep't of State, 934 F. Supp. 2d 21, 38 (D.D.C. 2013) ("As a general rule, third-party identifying information contained in [law enforcement] records is 'categorically exempt' from disclosure." (quoting Nation Magazine, 71 F.3d at 896)); Negley v. Fed. Bureau of Investigation, 825 F. Supp. 2d 63, 70–73 (D.D.C. 2011) (withholding names and/or identifying information of third parties merely mentioned in the records, individuals interviewed by the FBI, and third parties of investigative interest); McGehee v. U.S. Dep't of Justice, 800 F. Supp. 2d 220, 233–34 (D.D.C. 2011) (upholding non-disclosure of third parties merely mentioned and third parties of investigative interest).

Additionally, the Court disagrees with the plaintiffs' claims that the Department "failed to justify the withholding of information about public figures, including the President's family, associates, and government officials," including individuals "who have actively solicited publicity and media attention for their connection with the administration," and that "[t]he categorical rule under Exemption 7(C) does not apply to public figures or to individuals who have been 'charged, convicted, or otherwise implicated in connection with [a] public corruption investigation.'" EPIC's Mem. at 27 (alteration in original); see also EPIC's Mem. at 28 (stating that "[s]ome of these individuals include prominent public figures that have released information about themselves in connection to the Special Counsel's investigation," including Donald Trump Jr.). The Department is "not at liberty to disclose the name of or identifying information about an individual referenced in law enforcement records, even if the requester already knows, or is able to guess, the individual's identity," Petrucelli v. U.S. Dep't of Justice, 153 F. Supp. 3d 355,

362 (D.D.C. 2016), aff'd, No. 16-5042, 2016 WL 5349349 (D.C. Cir. Aug. 22, 2016), and the

individuals identified by the plaintiffs as public figures—"the President, the President's

associates, members of the President's family (including those who serve in the administration),

current and former members of the administration, and other public officials," EPIC's Mem. at

26—nevertheless maintain an interest that is protectable under Exemption 7(C), see Quinon v.

Fed. Bureau of Investigation, 86 F.3d 1222, 1230 (D.C. Cir. 1996) (stating that "while it is true

that [g]overnment officials may have a somewhat diminished privacy interest, [they] do not

surrender all rights to personal privacy when they accept a public appointment" (second

alteration in original) (citation and internal quotation marks omitted)); Judicial Watch, Inc. v.

Nat'l Archives & Records Admin., 214 F. Supp. 3d at 59–60 (concluding that Former Secretary

of State Hillary Clinton did not "surrender all rights to personal privacy" and nevertheless

"maintain[ed] an interest in the contents of the drafts of the proposed indictment, despite the fact

that it is widely known that she was one of the subjects of an independent counsel

investigation").

Moreover, contrary to EPIC's suggestion, see EPIC's Mem. at 31 ("Some of the redacted

material in the Mueller Report is in fact within the public domain, and the [Department] cannot

rely on Exemption 7(C) to withhold such information."), "the fact that information about

[Special Counsel Mueller's] investigation . . . of [these individuals] is readily available to the

public does not extinguish [their] privacy interest," Judicial Watch, Inc. v. Nat'l Archives &

Records Admin., 214 F. Supp. 3d at 60.  Although an individual's "interests in privacy fade

when the information involved already appears on the public record," Am. Civil Liberties Union,

655 F.3d at 9 (quoting Cox Broad. Corp. v. Cohn, 420 U.S. 469, 494–95 (1975)), "the fact that

an event is not wholly private does not mean that an individual has no interest in limiting

disclosure or dissemination of [the requested] information," People for the Ethical Treatment of Animals v. Nat'l Insts. of Health, 745 F.3d 535, 542 (D.C. Cir. 2014) (quoting U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 770 (1989)).

Furthermore, although the Court acknowledges that the public interest in the Special Counsel's investigation is substantial, the Court finds that the plaintiffs have failed to identify a public interest that would outweigh the individuals' privacy interest from having their names disclosed.  To demonstrate a public interest sufficient to override a privacy intrusion, the plaintiffs were required to show that the information sought is likely to advance the public interest in disclosure.  See Boyd, 475 F.3d at 387.  But, the plaintiffs have failed to show how the disclosure of individuals' names would "contribut[e] significantly to public understanding of the operations or activities of the government," Consumers' Checkbook, Ctr. for the Study of Servs. v. U.S. Dep't of Health & Human Servs., 554 F.3d 1046, 1051 (D.C. Cir. 2009) (quoting U.S. Dep't of Def. v. Fed. Labor Relations Auth., 510 U.S. 487, 495 (1994)); see also Davis, 968 F.2d at 1282 ("It is well established that the only public interest relevant for purposes of Exemption 7(C) is one that focuses on the citizens right to be informed about what their government is up to." (internal quotation marks omitted)), or how the disclosure of individuals' names "would be probative of the [government's] alleged misconduct," Cooper v. U.S. Dep't of Justice, 169 F. Supp. 3d 20, 36–38 (D.D.C. 2016); see also SafeCard Servs., Inc. v. Sec. & Exchange Comm'n, 926 F.2d 1197, 1205 (D.C. Cir. 1991) (stating that a FOIA requester also must seek information that is "probative of an agency's behavior or performance").  Because the plaintiffs have failed to satisfy their obligation to show that the requested information advances the public interest in the disclosure of such information, the Court therefore concludes that the Department properly redacted the information pursuant to Exemption 7(C).  Cf. Consumers' Checkbook, Ctr., 554

F.3d at 1051 ("[I]information about private citizens . . . that reveals little or nothing about an agency's own conduct does not serve a relevant public interest under [the] FOIA." (alteration in original)).  Accordingly, the Court must grant the Department's motion for summary judgment and deny the plaintiffs' cross-motions as to the Department's withholding of information in the Mueller Report pursuant to Exemption 7(C).

## 2. **Exemption 7(E)**

Exemption 7(E) protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions . . . if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  To justify its withholdings pursuant to this exemption, the government must show (1) "that the documents were in fact 'compiled for law enforcement purposes' and not for some other reason," (2) "that the records contain law-enforcement techniques and procedures that are 'generally unknown to the public,'" and (3) "that disclosure 'could reasonably be expected to risk circumvention of the law.'"  Am. Immigration Council v. U.S. Dep't of Homeland Sec., 950 F. Supp. 2d 221, 245 (D.D.C. 2013) (citations omitted).  To warrant non-disclosure, "the agency must at least provide some explanation of what procedures are involved and how they would be disclosed," Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice, 746 F.3d 1082, 1102 (D.C. Cir. 2014), and

> courts in this District have found that the government carried its evidentiary burden where it provided [(1)] a description of the technique or procedure at issue in each document, [(2)] a reasonably detailed explanation of the context in which the technique is used, [(3)] an exploration of why the technique or procedure is not generally known to the public, and [(4)] an assessment of the way(s) in which individuals could possibly circumvent the law if the information were disclosed[,]

Am. Immigration Council, 950 F. Supp. 2d at 247.  Exemption 7(E) "sets a relatively low bar for

the agency to justify withholding" and "only requires that the [agency] demonstrate logically

how the release of the requested information might create a risk of circumvention of the law."

Blackwell v. Fed. Bureau of Investigation, 646 F.3d 37, 42 (D.C. Cir. 2011) (alteration in

original) (quoting Mayer Brown LLP v. Internal Revenue Serv., 562 F.3d 1190, 1193 (D.C. Cir.

2009)).  Exemption 7(E)

> looks not just for circumvention of the law, but for a risk of circumvention; not
> just for an actual or certain risk of circumvention, but for an expected risk; not
> just for an undeniably or universally expected risk, but for a reasonably expected
> risk; and not just for certitude of a reasonably expected risk, but for the chance of
> a reasonably expected risk.

Mayer Brown, 562 F.3d at 1193.

Here, the Department claims that, pursuant to Exemption 7(E), it has withheld "details

about the use of a variety of sensitive techniques and procedures utilized by the FBI agents and

prosecutors investigating Russian interference in the 2016 presidential election and in other

cases."  Brinkmann 1st Decl. ¶ 87.[7]  Specifically, the Department represents that

> release of the information withheld in this category would reveal specific non-
> public details about the use of techniques and procedures regarding investigative
> focus; information about the gathering and/or analysis of information; information
> directly implicating investigative targets, dates, and scope of investigatory
> operations; and information that would reveal investigative strategies for utilizing
> particular information gathered.  As a whole, this detailed information concerning
> how, when, where, and why specific investigative techniques and procedures
> were utilized in the [Special Counsel's Office's] investigation is not publicly
> known.  Release of this information would disclose the methods employed by
> investigators and prosecutors in the collection and analysis of information,

---

[7] The Department also represents that pursuant to Exemption 7(E), it has "withheld information that would reveal
techniques and procedures authorized for and used in national security investigations."  Def.'s Mem. at 27.
However, because the Department further represents that such information "is also protected by Exemption 3" and
the National Security Act, see id. at 28 n.17, which the Court finds persuasive, infra Part III.A.2, the Court need not
address the Department's withholdings of this information pursuant to Exemption 7(E), see Larson, 565 F.3d at
862–63 ("[C]ourts may uphold agency action under one exemption without considering the applicability of
the other." (citing Gardels, 689 F.2d at 1106–07)).

> including how and from which sources they collected particular types of information and the methodologies employed to analyze it once collected.

Id.; see also id. ¶ 88 (stating that "the exact details of how given techniques are implemented (investigatively and/or technically) are not public" and that the information was withheld because "it would disclose the exact circumstances under which the techniques were utilized; the methods of investigative or information gathering employed, including the specific dates and times and targets of information gathering techniques; and the actual fruits of the investigative operations relied upon by the [Special Counsel's Office]").  According to the government, the disclosure of the information withheld

> would enable the subjects of other investigations to identify the precise timing and circumstances when these or similar currently-used techniques and procedures are being employed, evaluate the capabilities of these techniques and procedures, and take evasive actions or countermeasures to circumvent their effectiveness.  This would provide valuable information to investigative targets concerning the circumstances in which specific techniques were used, thereby diminishing the relative utility of these techniques and undermining the usefulness of the information collected.

Id. ¶ 87; see also id. ¶ 88 ("Any release of the circumstances under which these techniques and procedures were implemented would undermine the FBI's and prosecutors' effectiveness, as well as those of intelligence community partners, in ongoing investigations and prosecutions and its future use.").   Although EPIC argues that the Department "has improperly withheld information about the 'investigative focus and scope' and the 'fruits of investigatory operations' that is not properly subject to Exemption 7(E)," EPIC's Mem. at 14, the Court finds that the disclosure of the withheld information "necessarily discloses a technique or procedure used by [the Special Counsel's Office]," and that although the redacted information itself may not be "a technique, procedure[,] or guideline," with the disclosure of such information "comes the knowledge of how the agency employs its procedures or techniques," Elec. Privacy Info. Ctr. v. U.S. Drug

Enf't Agency, 401 F. Supp. 3d 37, 46 (D.D.C. 2019).  "In other words, to reveal the [redacted information] would necessarily reveal information about the techniques and procedures for those particular law enforcement agency investigations."  Id. at 46–47.  Therefore, based on the Court's review of not only the unredacted version of the Mueller Report but also the Department's ex parte representations, which support the Department's assertion that the redacted information reveals investigative techniques or procedures, the disclosure of which would result in a reasonably expected risk of circumvention of the law, the Court concludes that the Department has properly withheld information pursuant to Exemption 7(E).  Accordingly, the Court will grant the Department's motion for summary judgment and deny the plaintiffs' cross-motions as to the Department's reliance on Exemption 7(E).

### 3.  Exemption 7(A)

To justify the withholding of information pursuant to Exemption 7(A), an agency must show that "disclosure (1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or reasonably anticipated."  Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice, 746 F.3d at 1096 (quoting Mapother v. U.S. Dep't of Justice, 3 F.3d 1533, 1540 (D.C. Cir. 1993)).  In crafting this exemption, "Congress recognized that law enforcement agencies ha[ve] legitimate needs to keep certain records confidential, lest the agencies be hindered in their investigations or placed at a disadvantage when it came time to present their cases."  Alyeska Pipeline Serv. Co. v. Envtl. Prot. Agency, 856 F.2d 309, 313 (D.C. Cir. 1988) (quoting Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co., 437 U.S. 214, 224 (1978)); see also Maydak v. U.S. Dep't of Justice, 218 F.3d 760, 762 (D.C. Cir. 2000) ("The principal purpose of Exemption 7(A) is to prevent disclosures [that] might prematurely reveal the government's cases in court, its evidence and strategies, or the nature, scope, direction, and focus of its investigations, and thereby enable suspects to establish defenses or fraudulent alibis or to

destroy or alter evidence.").  Nevertheless, this exemption is not intended to be a "blanket

exemption" for any files or records that are relevant to an investigation—their disclosure must be

reasonably expected to interfere in a "palpable, particular way" with the investigation.  North v.

Walsh, 881 F.2d 1088, 1100 (D.C. Cir. 1989).

Here, the Department, pursuant to Exemption 7(A),[8] has withheld FBI "file names and

serial numbers."  Redacted Brinkmann 4th Decl. ¶ 9.[9]  The Department represents that there are

a number of pending and ongoing law enforcement proceedings, including United States v.

Netyksho, Crim. Case No. 18-215 (D.D.C.) and United States v. Morenets, Crim. Case No. 18-

263 (W.D. Pa.), see Redacted Brinkmann 3d Decl. ¶ 15, and that it has withheld "FBI file

numbers" that "are not known to the general public because the release of a file numbering

convention identifies the investigative interest or priority given to such matters[,]" the disclosure

of which "could result in the acknowledgment of the existence of unknown investigations or

proceedings and divulge the scope/volume of the FBI's investigative efforts," Redacted

Brinkmann 4th Decl. ¶ 9.  According to the Department, the release of the information withheld

---

[8] The Court notes that the Department has withheld approximately twenty percent of the redacted information in the Mueller Report pursuant to Exemption 7(A).  However, because, with the exception of three redactions, the Department has also invoked either Exemption 3, 7(C), or 7(E), which the Court has already concluded have been appropriately asserted, see infra Parts III.A.2., III.B.1. III.B.2., the Court need only address whether the Department has appropriately withheld the information pursuant to Exemption 7(A) in relation to the three instances where only Exemption 7(A) has been asserted, see Larson, 565 F.3d at 862–63 ("[C]ourts may uphold agency action under one exemption without considering the applicability of the other.").

[9] The Department explains that

> The FBI file numbers contain three separate portions.  One portion of these file numbers consist of FBI file classification numbers that indicate the types of investigative/intelligence gathering programs to which these files pertain.  Here, the case classification numbers associated with the [Special Counsel's Office's] investigation were released.  The protected investigative file numbers also contain office-of-origin codes, indicating which FBI field office or overseas FBI legal attaché office originated the investigations at issue.  The office-of-origin code for the Special Counsel's Office was released, but certain office-of-origin codes of other FBI offices were redacted. . . . The third portion of the FBI's investigative files consists of the numbers given to the unique investigative initiatives these files were created to memorialize.

Redacted Brinkmann 4th Decl. ¶ 10.

pursuant to Exemption 7(A) would "reveal unknown details concerning pending investigations and enforcement procedures, thus jeopardiz[ing] the investigations themselves." Id. Specifically, the Department represents that

> [r]elease of such information would provide alleged criminals and foreign adversaries with information about the government's investigation/enforcement strategies in ongoing matters . . . , allow them to predict and potentially thwart these strategies, and/or allow them to discover/tamper with witnesses and/or destroy evidence.   As such, revealing this information could reasonably be expected to interfere with pending enforcement proceedings and risks circumvention of the law. . . .

> Providing the FBI office-of-origin codes, in many instances, would provide critical information about where and how the FBI detected particular criminal behaviors or national security threats, and reveal key pieces about the FBI's non-public investigations or intelligence/evidence gathering sources and methods. . . . Releasing these singular file numbers would provide alleged criminals and foreign adversaries with a tracking mechanism by which they can place particular files/investigations within the context of larger FBI investigative efforts.

Id. ¶¶ 9–10; Brinkmann 1st Decl. ¶¶ 45–46, 48–49 (articulating in detail the risks involved with the disclosure of the information redacted pursuant to Exemption 7(A)).  Furthermore, the Department claims that

> [c]ontinued release of sensitive investigative file numbers would provide alleged criminals and foreign adversaries with an understanding of how FBI investigations may be interrelated and when, why, and how the FBI pursued different investigative strategies.   This would provide alleged criminals and foreign adversaries with a means of judging where the FBI allocates its limited investigative resources, how the FBI responds to different investigative circumstances, what the FBI knows and when/how they obtained the knowledge, and if there are knowledge-gaps in the FBI's gathered intelligence. . . .   Applying a mosaic analysis, suspects and foreign adversaries could use these numbers (indicative of investigative priority), in conjunction with other information known about other individuals and/or techniques, to formulate an exceptional understanding of the body of investigative intelligence available to the FBI; and where, who, what, and how it is investigating certain detected activities.   Release of this information would enable these alleged criminals and foreign adversaries to predict FBI investigations and structure their behavior to avoid detection and disruption by the FBI, thereby harming the government's efforts to bring them to justice and enabling them to circumvent the law.

Redacted Brinkmann 4th Decl. ¶ 10.  Based on the Court's review of the unredacted version of

the Mueller Report as well as the public and ex parte representations made by the Department,

the Court concludes that the Department has appropriately withheld information pursuant to

Exemption 7(A).  Cf. Poitras v. U.S. Dep't of Homeland Sec., 303 F. Supp. 3d 136, 157 (D.D.C.

2018) (holding that the agency "properly invoked Exemption 7(A) to withhold [ ] file numbers"

of pending FBI investigations).  Therefore, the Court must grant the Department's motion for

summary judgment and deny the plaintiffs' cross-motion as to the Department's withholding of

information pursuant to Exemption 7(A).

**C.     Exemption 5**

The Department represents that, pursuant to Exemption 5, it has withheld information

that is protected by the deliberative process privilege because the information pertains to

"deliberations about charging decisions not to prosecute, which would reveal criminal charges

considered but not pursued against certain named individuals under investigation."  Brinkmann

1st Decl. ¶ 28.  Based on the Court's review of the unredacted version of the Mueller Report, the

Court concludes that the Department has failed to satisfy its burden to demonstrate that the

withheld material is protected by the deliberative process privilege.

Exemption 5 protects "inter-agency or intra-agency memorandums or letters that would

not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. §

552(b)(5).  To be covered by Exemption 5, a document's "source must be a [g]overnment

agency, and it must fall within the ambit of a privilege against discovery under judicial standards

that would govern litigation against the agency that holds it."  Dep't of the Interior v. Klamath

Water Users Protective Ass'n, 532 U.S. 1, 8 (2001).  "[T]he parameters of Exemption 5 are

determined by reference to the protections available to litigants in civil discovery; if material is

not 'available' in discovery, it may be withheld from FOIA requesters." Burka v. U.S. Dep't of Health & Human Servs., 87 F.3d 508, 516 (D.C. Cir. 1996).  Thus, Exemption 5 covers "those documents, and only those documents, normally privileged in the civil discovery context," which includes the deliberative process privilege.  Citizens for Responsibility & Ethics in Wash. v. Nat'l Archives & Records Admin., 715 F. Supp. 2d 134, 138 (D.D.C. 2010) (quoting Nat'l Labor Relations Bd. v. Sears, Roebuck & Co., 421 U.S. 132, 148–49 (1975)).

"To justify its application of the deliberative process privilege, an agency must address the following areas: '(1) the nature of the specific deliberative process involved, (2) the function and significance of the document in that process, and (3) the nature of the decisionmaking authority vested in the document's author and recipient.'" Hunton & Williams LLP v. Envtl. Prot. Agency, 248 F. Supp. 3d 220, 241 (D.D.C. 2017) (quoting Nat'l Sec. Counselors v. Cent. Intelligence Agency, 960 F. Supp. 2d 101, 189 (D.D.C. 2013)); see also Senate of P.R., 823 F.2d at 585–86 ("The agency must establish 'what deliberative process is involved, and the role played by the documents in issue in the course of that process.'" (quoting Coastal States Gas Corp. v. U.S. Dep't of Energy, 617 F.2d 854, 868 (D.C. Cir. 1980))); see Arthur Andersen & Co. v. Internal Revenue Serv., 679 F.2d 254, 258 (D.C. Cir. 1982).  "To be exempt from disclosure under the deliberative process privilege, the agency must show that the information is both (1) 'predecisional' and (2) 'deliberative.'" Cleveland v. U.S. Dep't of State, 128 F. Supp. 3d 284, 298 (D.D.C. 2015) (Walton, J.) (quoting Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 39 (D.C. Cir. 2002)).  The deliberative process privilege protects "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated."  Sears, 421 U.S. at 150 (internal quotation marks omitted).

The Department's Exemption 5 withholdings fail because the Department has failed to show that the information is predecisional. According to the Department, "the charging decisions not to prosecute[,] . . . [the elements of the contemplated offenses], and the identities of the individuals against whom those criminal charges were considered but not pursued, are [ ] protected pursuant to the deliberative process privilege" because "information regarding the application of law to specific facts leading up to charging decisions is pre-decisional and deliberative." Brinkmann 1st Decl. ¶¶ 34–35 (footnote omitted). Specifically, the Department claims that "[i]nasmuch as this information recounts the thinking and considerations of [ ] Special Counsel [Mueller] prior to reaching decisions on these matters, it is predecisional," and that "[t]his information is also deliberative, because it reflects contemplated charges against individuals that were considered, but not pursued, as [ ] Special Counsel [Mueller] formulated his conclusions on these matters." Id. ¶ 35.

As an initial matter, the Court disagrees with the Department that "the identities of the individuals against whom those criminal charges were considered but not pursued[] are [ ] protected pursuant to the deliberative process privilege." Id. ¶ 34 (footnote omitted). Although the Department also initially claimed Exemptions 6 and 7(C) in conjunction with Exemption 5 to, in certain instances, withhold the identities of the individuals not charged with having committed crimes by the Special Counsel's Office, see id. ¶ 34 n.9, the Department without explanation later withdrew its reliance on Exemptions 6 and 7(C) with respect to these withholdings and now only claims Exemption 5 as its basis for the nondisclosures, compare id., Ex. D (Report On The Investigation Into Russian Interference In The 2016 Presidential Election), with Defendant's Notice of Reprocessed Report, Ex. 1 (Report On The Investigation Into Russian Interference In The 2016 Presidential Election, Volume I of II), and id., Ex. 2

33

(Report On The Investigation Into Russian Interference In The 2016 Presidential Election, Volume II of II).[10]   However, unlike Exemptions 6 and 7(C), which presumably may have more appropriately protected the identities of the individuals not charged with having committed crimes by the Special Counsel's Office, see Senate of P.R., 823 F.2d at 588 ("There is little question that disclosing the identity of targets of law-enforcement investigations can subject those identified to embarrassment and potentially more serious reputational harm." (citations omitted)), Exemption 5 only protects information that is "both (1) 'predecisional' and (2) 'deliberative,'" Cleveland, 128 F. Supp. 3d at 298 (quoting Nat'l Ass'n of Home Builders, 309 F.3d at 39).   And, mere identities of individuals not charged with having committed crimes in this context are neither predecisional nor deliberative.   Moreover, although purely factual material may be withheld if "the material is so inextricably intertwined with the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations," In re Sealed Case, 121 F.3d 729, 737 (D.C. Cir. 1997), the Department has failed to show in certain instances—and the Court's review of the unredacted version of the Mueller Report confirms—that the identities of the individuals not charged with having committed crimes is so inextricably intertwined with information that the disclosure of which would reveal Special Counsel Mueller's deliberations.   Therefore, the Court concludes that the Department has failed to satisfy its burden to demonstrate that the withholdings of the identities of the individuals not charged with having committed crimes by the Special Counsel's Office are protected by the deliberative process privilege.

---

[10] The Court notes that the Department's withdrawal of its reliance on Exemptions 6 and 7(C) is inconsistent with their position that the names of individuals not charged with having committed crimes by the Special Counsel's Office are protected from disclosure pursuant to Exemption 7(C).  See Part III.B.1.  Although this inconsistency is puzzling, it is not the prerogative of a judge to second-guess litigation decisions made by attorneys.  The Department is represented by highly competent attorneys who have extensive experience in the field of FOIA law.  Accordingly, the inconsistency can have no bearing on the Court's analysis as to Exemptions 6 and 7(C).

With respect to the remaining information that has been withheld pursuant to Exemption 5, the Court also concludes that the Department has failed to satisfy its burden to demonstrate that the withheld material is protected by the deliberative process privilege.  Although the Department correctly notes that "the process leading to a decision to initiate, or to forego, prosecution is squarely within the scope of th[e] [deliberative process] privilege," Def.'s Reply at 44 (alteration in original) (quoting Senate of P.R., 823 F.2d at 585 n.38), and that "[E]xemption [5] is tailor-made for the situation in which the Special Prosecutor's Office was assessing the evidence it was compiling," id. at 45 (quoting Fund for Const. Gov't v. Nat'l Archives & Records Serv., 485 F. Supp 1, 13 (D.D.C. 1978)), aff'd in part and remanded, 656 F.2d 856 (D.C. Cir. 1981), this is not the case here.  The information withheld by the Department is not predecisional because, as the plaintiffs correctly note, see Leopold Pls.' Mem. at 46, it is the decision of Special Counsel Mueller, see 28 CFR § 600.8 (2018) (stating that "[a]t the conclusion of the Special Counsel's work, he . . . shall provide the Attorney General with a confidential report explaining the prosecution or declination decisions reached by the Special Counsel"), and such information is not protected by the deliberative process privilege.  Cf. Sears, 421 U.S. at 148 (concluding that a document "explain[ing] decisions by the General Counsel not to file a complaint are 'final opinions' made in the adjudication of a case and fall outside the scope of Exemption 5; but that those [documents] [ ] explain[ing] decisions by the General Counsel to file a complaint and commence litigation before the Board are not 'final opinions' made in the adjudication of a case and do fall within the scope of Exemption 5"); Petrol. Info. Corp. v. U.S. Dep't of the Interior, 976 F.2d 1429, 1434 (D.C. Cir. 1992) ("A document is predecisional if it was 'prepared in order to assist an agency decisionmaker in arriving at his decision,' rather than to support a decision already made." (quoting Renegotiation Bd. v.

Grumman Aircraft Eng'g Corp., 421 U.S. 168, 184 (1975))); see Senate of P.R., 823 F.2d at 585 ("A document is 'predecisional' if it precedes, in temporal sequence, the 'decision' to which it relates.").

The Department argues that "post-decisional documents may still be covered under the deliberative-process privilege to the extent they recount or reflect predecisional deliberations," Def.'s Reply at 45 (internal quotation marks omitted).  Although the Court agrees with the Department's recitation of the state of the law, it nonetheless finds that this case does not fall within the scope of those circumstances where courts have concluded that the agency's withholdings under Exemption 5 were appropriate.  In support of its argument that is withholdings under Exemption 5 were appropriate, the Department cites a 2011 opinion issued by this Court, see Def.'s Reply at 45 (quoting Judicial Watch, Inc. v. U.S. Dep't of Justice, 800 F. Supp. 2d 202, 218 (D.D.C. 2011)); however, the basis for the Court's conclusion in that case is distinguishable from the case currently before the Court.  In Judicial Watch, Inc. v. U.S. Dep't of Justice, the plaintiff was seeking the disclosure of documents that "were generally created in the course of recounting specific factual and legal aspects of the New Black Panther Party litigation for the preparation of public statements, responding to an internal investigation about the handling of the case, or briefing officials within the [Department] about the decisionmaking process."  800 F. Supp. 2d at 215.  In that context, the Court concluded that these post-decisional documents "were appropriately withheld under the deliberative-process privilege" because "[i]t would exalt form over substance to exempt documents in which staff recommend certain action or offer their opinions on given issues but require disclosure of documents which only 'report' on what those recommendations and opinions are," id. at 218 (alteration in original) (quoting Mead Data Cent. Inc. v. U.S. Dep't of the Air Force, 566 F.2d 242, 257 (D.C. Cir. 1977)), and

that "the future quality of an agency's decisions could be affected if 'the ingredients of the decisionmaking process are . . . disclosed,'" id. (alteration in original) (quoting Sears, 421 U.S. at 151). Here, as opposed to the recommended actions and options withheld by the agency in Judicial Watch, Inc., the Department has withheld information regarding decisions that were already final, rendering the withheld information as information that was "made after the decision and designed to explain it," which the Supreme Court has held is not privileged, see Sears, 421 U.S. at 152. In fact, the Supreme Court, in National Labor Relations Board v. Sears, Roebuck & Co., stated that the "distinction between predecisional communications, which are privileged, and communications made after the decision and designed to explain it, which are not," id. at 151–52 (citations omitted),

> is supported not only by the lesser injury to the decisionmaking process flowing from disclosure of postdecisional communications, but also, in the case of those communications which explain the decision, by the increased public interest in knowing the basis for agency policy already adopted. The public is only marginally concerned with reasons supporting a policy which an agency has rejected, or with reasons which might have supplied, but did not supply, the basis for a policy which was actually adopted on a different ground. In contrast, the public is vitally concerned with the reasons which did supply the basis for an agency policy actually adopted. These reasons, if expressed within the agency, constitute the working law of the agency and have been held by the lower courts to be outside the protection of Exemption 5. Exemption 5, properly construed, calls for disclosure of all opinions and interpretations which embody the agency's effective law and policy, and the withholding of all papers which reflect the agency's group thinking in the process of working out its policy and determining what its law shall be[,]

id. at 152–53 (internal quotation marks omitted). As the Department candidly indicates, see Brinkmann 1st Decl. ¶ 28, the information withheld reflects Special Counsel Mueller's deliberations about decisions not to prosecute—information that falls within the latter category that the Supreme Court has held is not privileged. Accordingly, the Court denies the Department's motion for summary judgment as to this information and grants the plaintiffs'

motions for summary judgment for its production, and concludes that the Department must disclose the information redacted pursuant to Exemption 5, unless such information has been properly withheld pursuant to another exemption.

## D.    Segregability

The FOIA provides that, if a record contains information that is exempt from disclosure, "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt."  5 U.S.C. § 552(b).  "[I]f a requested record contains information that is exempt from disclosure . . . , 'any reasonably segregable portion,'" Trans-Pac. Policing Agreement v. U.S. Customs Serv., 177 F.3d 1022, 1026–27 (D.C. Cir. 1999) (quoting 5 U.S.C. § 552(b)), must be released after deleting the exempt portions, "unless [the non-exempt portions] are inextricably intertwined with exempt portions," id. at 1027 (quoting Mead, 566 F.2d at 260).  And, it is the government's burden to show with "reasonable specificity why the documents cannot be further segregated."  Armstrong v. Exec. Office of the President, 97 F.3d 575, 578 (D.C. Cir. 1996) (internal quotation marks omitted).  Agencies must review the withheld documents and determine whether, absent the exempted material, the resulting document would still be comprehensible, or whether "the result would be an essentially meaningless set of words and phrases."  See Mead, 566 F.2d at 261 (stating result of meaningless set of words may be sufficient to claim that the information is not segregable).  A "document-by-document" review and a declaration that each piece of information that is withheld is not reasonably segregable is sufficient to satisfy the requirement.  See Juarez v. U.S. Dep't of Justice, 518 F.3d 54, 61 (D.C. Cir. 2008); Beltranena v. U.S. Dep't of State, 821 F. Supp. 2d 167, 178–79 (D.D.C. 2011).

Here, according to the Department, it conducted a segregability assessment as to each of its claimed exemptions.  See Brinkmann 1st Decl. ¶¶ 24, 51, 80, 89.  The Department represents that "[i]n each instance where information was withheld pursuant to [ ] Exemption 3, only the precise information which would be prohibited from disclosure by Rule 6(e) or the [National Security Act] has been withheld."  Id. ¶ 24.  Specifically, it claims that "[f]or the portions protected pursuant to [Rule 6(e)], only information with a clear nexus to federal grand jury proceedings was withheld," and that "if any information could be released without violating grand jury secrecy rules, that information was released."  Id.  Furthermore, "[f]or the portions protected pursuant to [the National Security Act], only the specific information that reveals intelligence sources and methods . . . was withheld pursuant to Exemption 3," and that "the withholdings made on this basis were so precise that only limited portions . . . , where the []protected information appears, are withheld."  Id.  With respect to Exemption 7(A), the Department represents that "[a] substantial amount of information pertaining to ongoing and current enforcement proceedings has been disclosed within the [Mueller] Report, in public statements made by Attorney General Barr, and in public indictments," and that "releasing any further information could reasonably be expected to interfere with enforcement proceedings."

Id. ¶ 51.  As to Exemptions 6 and 7(C), the Department represents that

> [i]n each instance where privacy-based information was withheld . . . , only the precise information that would reveal the identities, social media/contact information, or other information identifiable to the individuals was withheld pursuant to Exemptions 6 and 7(C).  When no other FOIA exemptions were applicable, only the specific information that, if released, would result in an unwarranted invasion in the privacy of individual was redacted within sentences in order to segregate and release as much non-exempt information as possible to [the] [p]laintiffs and the public.

Id. ¶ 80.  Lastly, regarding Exemption 7(E), the Department represents that "[o]nly the precise information which would reveal non-public details about the Department's law enforcement

techniques and procedures, the disclosure of which would risk circumvention of the law by criminal actors and hostile foreign powers, was protected on the basis of Exemption 7(E)."  Id. ¶ 89.  "This shows that [the Department] made the required effort to segregate and disclose those portions that could be released," and that "[t]he non-exempt portions of these documents that have been redacted are thus 'inextricably intertwined with exempt portions' and need not be further segregated."  Am. Immigration Council v. U.S. Dep't of Homeland Sec., 30 F. Supp. 3d 67, 80 (D.D.C. 2014) (quoting Mead, 566 F.2d at 260).  And, based on the Court's own in camera review of the unredacted version of the Mueller Report, the Court concludes that "there are no segregability problems in this case," id., and that "all reasonably segregable information within has been released," Am. Immigration Council v. U.S. Dep't of Homeland Sec., 21 F. Supp. 3d 60, 83 (D.D.C. 2014).

### III.    CONCLUSION

For the foregoing reasons, the Court concludes that the Department has appropriately withheld information from the Mueller Report pursuant to Exemptions 3, 7(A), 7(C), and 7(E) of the FOIA.  The Court further concludes that the Department has failed to show that it appropriately withheld information pursuant to Exemption 5.  In addition, the Court concludes that the Department has satisfied its segregability obligations under the FOIA.  Accordingly, the Court will grant in part and deny in part the Department's motion for summary judgment and grant in part and deny the balance of the plaintiffs' cross-motions for summary judgment.

SO ORDERED this 30th day of September, 2020.[11]

REGGIE B. WALTON
United States District Judge

---

[11] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.