**HOUSTON & HOUSTON**

Law and Education

Dr. LEONARD W. HOUSTON, Sr.
Juris Doctor of Law, Ph.D., Education

November 17, 2020

The Clerk of the Court
**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**
333 Constitution Avenue, N.W.
Washington, D.C. 20001

Re: *"Re-submission"* of original Motion For Leave To Intervene as Proposed Intervenor-Plaintiff
and Attachments [Exhibits] as pursuant to Rule 24 of the Federal Rules of Civil Procedure
due to *"Non-receipt"* of submitted documents by the Court:

**ELECTRONIC PRIVACY INFORMATION CENTER,** *Plaintiff* - against
**UNITED STATES DEPARTMENT OF JUSTICE,** *Defendant*
**U.S. District Court, District of Columbia (Washington, D.C.)**
**Civil Docket For Case #: 1:19-cv-00810-RBW**

---

**Dear SIR/MADAM:**
*The Clerk of the Court*

Enclosed, re-submitted of <u>original</u> Motion for leave to intervene as Proposed Intervenor-Plaintiff in
the proceedings, bearing Case Number 19-cv-00810, under captioned case, now pending before this
Court.

The required attachments pursuant to Rule 24 of the Federal Rules of Civil Procedure in support of
said Motion with attached Certificate of Service have been served on the respective Attorneys for the
Plaintiff, Electronic Privacy Information Center, and the Defendant, United States Department of Justice
herewith resubmitted for filing to this Court.

As it was noted by Hon. REGGIE B. WALTON, United States District Judge, dated 10/02/2020,
bearing Court Document Number 134:

*"Leave to file is granted, although the Court never
received his original motion."*

Respectfully,

*[signature]*

Leonard W. Houston, Sr.
*Movant/Proposed Intervenor-Plaintiff*

Encls: Motion and Memorandum of Points and Authorities in Support of Motion to Intervene w/
(*Proposed*) Order [*Granting Motion to Intervene*]; and
Certificate of Service by Mail on Attorneys of Record (**19-cv-00810-RBW**); and
Complaint In Intervention (Leonard W. Houston, Sr., Movant/Proposed Intervenor-Plaintiff)

**COPY**

*Leave to file is granted although the Court never received his original motion.*

*10/2/2020*

HOUSTON & HOUSTON

Dr. LEONARD W. HOUSTON, Sr.
Laws Doctor of Law, Ph.D. Education

September 14, 2020

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Attn: Ms. Auntalene F. Queen, Secretary/Judicial Assistant
Honorable REGGIE B. WALTON, United States District Judge
333 Constitution Avenue, N.W.
Washington, D.C. 20001

Re: General Order For Civil Cases Before
The Honorable Reggie B. Walton, United States District Judge –

**MOTIONS:** Counsel *pro-se*, is inrequiring about an unresolved motion that has been
pending before this Court for more than nine(9) months.

**Motion for Leave To Intervene As Proposed Intervenor-Plaintiff**
Electronic Privacy Information Center, *Plaintiff* s.
United States Department of Justice, *Defendant*
U.S. District Court, District of Columbia (Washington, D.C.)
Civil Docket For Case# 1:19-cv-00810-**RBW**

Dear Ms. Queens

In accordance with the General Order therein issued by the Honorable REGGIE B. WALTON,
United States District Judge, for Plaintiff(s) and Defendant(s), this communication merely serves
herewith, as a reminder to Chambers that the above described and entitled motion pursuant to
Rule 24, Federal Rule of Civil Procedure, has been pending for an extended period of time, since on
or about July 15, 2019.

And respectfully in that regard, said reminder is hereby submitted under the entitled Order
**3.Communication with Chambers** (c)(4) (FN.4), as issued by said District Judge.

*Respectfully submitted,*

Leonard W. Houston
Movant/Proposed Intervenor-Plaintiff

Enclosures

cc: Electronic Privacy Information Center
Attn: Plaintiff Attorneys of Record
1718 Connecticut Avenue, NW, Suite 200, Washington, DC 20009

United States Department of Justice
*Civil Division, Federal Programs Branch*
Attn: Courtney D. Enlow, U.S. Attorney
Defendant Attorney of Record
1100 L Street, Room 12102, Washington, DC 20005

# THE UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, | ) ) ) |
| *Plaintiff,* | ) ) |
| LEONARD W. HOUSTON, SR., | ) ) Civil Action No. 19-cv-00810 (RBW) |
| *Proposed Intervenor-Plaintiff,* | ) ) ) |
| v. | ) ) |
| UNITED STATES DEPARTMENT OF JUSTICE, | ) ) ) |
| *Defendant.* | ) ) ) |

## MOTION TO INTERVENE AS PLAINTIFF

For the reasons set forth in the accompanied Memorandum of Points and Authorities the Movant, Leonard W. Houston, Sr., will move this Court for leave to intervene as party plaintiff of right in the above-captioned action pursuant to Federal Rules of Civil Procedure 24(a).  In the alternative, Leonard W. Houston, Sr., will move for permissive intervention pursuant to Federal Rule of Civil Procedure 24(b).

In further support of this Motion, the Movant submits the proposed Complaint In Intervention, with Attachments thereto, pursuant to Federal Rule of Civil Procedure 24(c) and pursuant to District Court of District of Columbia Local Civil Rule 7(c) a (Proposed) Order is attached.

1



RECEIVED
Mail Room

NOV 2 0 2020

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

In accordance and pursuant to the District Court of District of Columbia, Local Civil Rule 7(m),

the Movant, Leonard W. Houston, Sr., has conferred by written request, dated May 17, 2019,

with the listed Counsels of Record for Plaintiff, Electronic Privacy Information Center, Inc., and

Counsels of Record for Defendant, U.S. Department of Justice to ascertain their respective

positions of Movant's entitled Motion for leave to intervene in the above captioned proceedings

pursuant to Rule 24 of the Federal Rules of Civil Procedure to intervene as Plaintiff, as a matter

of right, or in the alternative, as permissive intervener. Attachment as **Exhibit 1.**

That Counsel for the Defendant, United States Department of Justice, had advised by E-mail

dated June 11, 2019, as to the above captioned case - 19-cv-810 (D.D.C.), that the Government

oppose said motion. Attachment as **Exhibit 2.**

It appears the Plaintiff, Electronic Privacy Information Center, Inc., by their non-responsive actions

to Movant's written request that they consented to without exceptions thereof, to the requested

statutory relief in the entitled Motion pursuant to Rule 24 of the Federal Rules of Civil Procedure

[**Intervention of Right**— (a)(1) and (a)(2)(C) or **Permissive Intervention**— (b)(1)(B)] and in

accordance with the District Court Local Civil Rule 7(m), as to judicial intervention by this Court

to grant the Movant's entitled motion to intervene as a party-plaintiff in the captioned proceedings.

Dated: July 15, 2019

**LEONARD W. HOUSTON, SR.,** *pro-se*
*Movant*
148 Deer court Drive, Bldg. 4
Middletown, NY 10940-6867
Telephone No. (845) 343-8923

# NOTICE OF MOTION

**TO:**

Alan Jay Butler, Attorney
Marc Rotenberg, Attorney
John L. Davisson, Attorney
**ELECTRONIC PRIVACY INFORMATION CENTER**
*Plaintiff Attorneys of Record*
1718 Connecticut Avenue, NY, Suite 200
Washington, D.C. 20009

Courtney Danielle Enlow, U.S. Attorney
Elizabeth J. Shapiro, U.S. Attorney
**UNITED STATES DEPARTMENT OF JUSTICE**
Civil Division, Federal Programs Branch
*Defendant Lead U.S. Attorneys of Record*
1100 L Street, NW
Washington, D.C. 20005

**PLEASE TAKE NOTICE** that on July 31, 2019, at 9:30 AM o'clock or as soon

thereafter as Counsel *pro-se* can be heard, in Court Room 16, United States District Court House,

District of Columbia, at 333 Constitution Avenue, N.W., Washington D.C. 20001, the undersigned

will submit the above entitled motion for leave to intervene as plaintiff pursuant to Rule 24(a)(2),

or alternatively, pursuant to Rule 24(b)(2) of the Federal Rules of Civil Procedure as set out in the

attached proposed Complaint in intervention; and hereby assert that it would not unduly delay or

prejudice the adjudication of the original parties' rights in these proceedings therein filed under the

Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, as amended,  pursuant to Rule 24(b)(3) of

the Federal Rules of Civil Procedure and the Local Civil Rules of the District of Columbia.

Dated: July 15, 2019

**LEONARD W. HOUSTON, SR.** *pro-se*
Movant
148 Deer Court Drive
Middletown, New York 10940-6867
Telephone No. (845) 343-8923

**A T T A C H M E N T**

**Exhibit 1**

# HOUSTON & HOUSTON
Law and Education

Dr. LEONARD W. HOUSTON, Sr.
Juris Doctor of Law,  Ph.D., Education

May 17, 2019

Alan Jay Butler, Attorney
Marc Rotenberg, Attorney
John L. Davisson, Attorney
ELECTRONIC PRIVACY INFORMATION CENTER
*Plaintiff Attorneys of Record*
1718 Connecticut Avenue, NW, Suite 200
Washington, D.C. 20009

Courtney Danielle Enlow, U.S. Attorney
Elizabeth J. Shapiro, U.S. Attorney
UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
*Defendant Lead U.S. Attorneys of Records*
1100 L. Street, NW
Washington, D.C. 20005

Re: **MOTION TO INTERVENE AS INTERVENER PLAINTIFF**
    **AS MATTER OF RIGHT OR PERMISSIVE INTERVENER**
    (As therein authorized by Rule 24 of the Federal Rules of Civil Procedure)

*Electronic Privacy Information Center v. United States Department of Justice*
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
Civil Action Case/ Docket No.: 1:19-cv-00810 (RBW)

Dear Attorneys of Record:

In accordance with District of Columbia of the District Court Rule 7(m), as Movant, seeks to file a Motion to Intervene pursuant to Fed. R. Civ. P 24(a)(1), as of an unconditional right, or in the alterative 24(b)(1)(A); 24 (b)(1)(B) permissive intervention in the above caption proceedings (*see* ECF Docket No. 1 - Complaint of Electronic Privacy Information Center ("EPIC"). dated/filed  March 22, 2019.

As said individual Movant's claim under the Freedom of Information Act (FOIA), 5 U. S. C. 552, as amended. Seeks the release of agency records requested by FOIA Requestor, Leonard W. Houston, Sr. from Defendant, United States Department of Justice, Office of Information Policy (OIP), in accordance with the Special Counsel's investigation (i.e., the "Mueller Report") to which it pertains - Russian Interference in the 2016 U.S. Presidential Election and related matters, as stated by the Office of the Deputy Attorney General in the Order No.  3915-2017, of appointment of Special Counsel. dated May 17, 2017.

Thus, in that regard, the courts have stressed the Rule 24's intervention requirements should be liberally construed to favor intervention. See, e.g., *Nuesse v. Camp*,  385 F.2d 694, 702-04 (D.C. Cir. 1967), also *American Horse Prot. Ass'n, Inc. v. Veneman*, 200 F.R.D. 153, 157 (D.D.C. 2001)(the interest requirement is "liberal and forgiving"). As this suit has a common question of law and fact. Fed. R. Civ. P. 24(b)(1)(B).

Therefore, your response in writing as Attorneys of Record in the above captioned proceedings, please state as to whether or not you "**Consent**" or "**Oppose**" the individual Movant's entitled motion, is hereby requested pursuant to D.C. District Court Rule 7(m).

Sincerely,

Leonard W. Houston, Sr., JD. PhD. Ed.
Movant (*Proposed*) Intervenor-Plaintiff
*Re*: See, FOIA Requestor: DOJ-2019-003927 (OIP)

**ATTACHMENT**

**Exhibit 2**

Electronic Privacy Information Center v. Department of Justice, No. 19-810 (D.D.C.)

From:  Enlow, Courtney D. (CIV) (Courtney.D.Enlow@usdoj.gov)

To:      lenny.houston@yahoo.com

Date:  Tuesday, June 11, 2019, 12:40 PM CDT


Dear Mr. Houston,


I received your letter requesting the Government's position on your proposed motion to intervene in *Electronic Privacy Information Center v. Department of Justice*, No. 19-810 (D.D.C.).  The Government opposes your motion.


Best regards,

Courtney


Courtney Enlow

Trial Attorney

U.S. Department of Justice

Civil Division, Federal Programs Branch

1100 L Street, N.W., Room 12102

Washington, D.C. 20005
(202) 616-8467

courtney.d.enlow@usdoj.gov

THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, | ) ) ) | |
| Plaintiff, | ) ) | |
| LEONARD W. HOUSTON, SR., | ) ) | Civil Action No. 19-cv-00810 (RBW) |
| Proposed Intervenor-Plaintiff, | ) ) ) | |
| v. | ) ) | |
| UNITED STATES DEPARTMENT OF JUSTICE, | ) ) ) | |
| Defendant. | ) ) | |

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF THE MOTION TO INTERVENE

## PRELIMINARY STATEMENT

Pursuant to Federal Rules of Civil Procedure 24, Movant-Proposed-Intervenor-Plaintiff,

Leonard W. Houston, Sr., in support of its motion to intervene in the above-captioned matter seeking

the release of the Special Counsel Robert S. Mueller's report [*unredacted*] regarding the investigation

into Russian interference in the "2016 United States Presidential Election"[1] and other related matters

pursuant to Freedom of Information Act (FOIA), 5 U.S.C. § 552, as amended, with the appropriate

statutory Exemption's under said act. The same,  was denied to Movant in whole on his written

submission of FOIA Request, being a violation of said statutes. Therefore, Movant be granted its

Motion to intervene as of right, or alternatively, for permissive intervention under said federal rule.

Also, the requested information sought has informative value, or potential for contribution to public

understanding of the government operations and activities of the U.S. Department of Justice through

its Office of Information Policy (OIP).

## STATEMENT OF THE CASE

The Movant, Leonard W. Houston, Sr., on April 5, 2019, submitted a written Freedom of

Information Act Request pursuant to 5 U.S.C. § 552, as to: (1) the [unredacted] Final Mueller Report

that was submitted on March 22, 2919, the public release of the summaries of Special counsel Robert

Mueller's report that was prepared by his investigators, and (3) all communications between the

Justice Department and Mueller's office, with respect to any and all said entitled documents and any

and all related aspects of "Conclusion" and "Obstruction of Justice" by Donald J. Trump and/or any

individuals associated with the presidential campaign of Donald J. Trump in the 2016 election.

---

[1]See, U.S. Department of Justice, Office of the Deputy Attorney General, ORDER NO. 3915-2017, dated May 17, 2017, entitled, " **APPOINTMENT OF SPECIAL COUNSEL TO INVESTIGATE RUSSIAN INTERFERENCE WITH THE 2016,**" and the endorsed  procedural authorities claimed by Rod J. Rosenstein,. Acting Attorney General of the Office of the Deputy Attorney General.  Attachment as **Exhibit A.**

Thereafter, on April 12, 2019, the Requestor's entitled letter was marked as submitted on April 12, 2019 by the OAF FOIA Office, Douglas Hibbard, Chief, Initial Request Staff, Office of Information Policy, therein being assigned Tracking Number; DOJ-2019-00392.

Thus, it was stated therein as U.S. Department of Justice's official response (Douglas R. Hibbard, Chief, Initial Request Staff) dated May 7, 2019,

> "* * * that this [letter] is a standard notification that
> is given to all our requesters and should not be taken as
> an indication that excluded records to, or do not exist."[2]

Moreover, without adequately describing the documents withheld, without establishing a factual and/or legal basis for the application of these exemptions as aforestated in said response letter, and without performing a sufficient segregability analysis to justify withholding non-exempt portions of requested records, which should under the FOIA be disclosed as reasonably segregable from exempt portions.

Accordingly, for the above reasons, the Movant meets the standards for intervention as of right pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure, and the motion should be granted, or in the alternative, if the Movant does not satisfy the requirements for intervention of right, it should be granted permissive intervention under Rule 24(b)(1)(B) of the Federal Rules of Civil Procedure.

The Movant's entitled "**Complaint In Intervention**" is filed along with this motion pursuant to Rule 24(c) of the Federal Rules of Civil Procedure as therein provided in Rule 5 of the Federal Rules of Civil Procedure.

---

[2] See <u>Attachment as **Exhibit B**</u> - Your FOIA Request for a Copy of the Report of Special Counsel Robert Mueller-- **U.S. Department of Justice**, Office of Information Policy, by Douglas R. Hibbard, Chief, Initial Request Staff, dated May 7, 2019, marked **Final Response** - SCO Report (5.7.19)

## SUMMARY OF MOVANT-PROPOSED
## INTERVENOR-PLAINTIFF'S ARGUMENT

The Movant, Leonard W. Houston hereby move by Motion to intervene as party plaintiff in the

above-captioned action under Rule 24 of the Federal Rules of Civil Procedure. As aforestated herein,

Intervention as of Right is warranted and should be permitted pursuant to Federal Rule Civil

Procedure 24(a)(2), or in the alternative, Permissive Intervention under Federal Rule of Civil

Procedure 24(b)(1)(B) on similar grounds, as to Department of Justice's violation of the Freedom

of Information Act ("FOIA"), 5 U.S.C. § 552, as amended.

Moreover, the Movant's specific interest in this action will not be adequately represented by the

existing parties.  Although the federal government (*i.e.*, U.S. Department of Justice, of the Office of

Policy Information), would likely to defend the challenged FOIA exemption(s), its particular interest

in doing so is necessarily broad. Intervention required if "the government's and the interveners

interest may diverge during the course of litigation or if the interveners' individual interest in the

matter are narrower than those of the government under FOIA, as amended.

Therefore, the issue for the Court to resolve in this case of "Complaint in Intervention" by the

Leonard W. Houston, Sr., *Proposed Intervenor-Plaintiff,* is whether the Defendant, United States

Department of Justice, by its Office of Information Policy (OIP) improperly withheld requested

documents  from the Movant, Leonard W. Houston, Sr., pursuant to their claimed of statutory

Exemptions, in response to FOIA Request submitted by said Movant.

# ARGUMENT
## POINT I

**Movant, Leonard W. Houston, Sr., is entitled to *"Intervene As of Right"* pursuant to Federal Rules of Civil Procedure 24 (a)(2), as the existing parties may not adequately represent said Intervenor-Plaintiff interests.**

Movant, Leonard W. Houston, Sr., can satisfy Rule 24(a)(2) inadequate representation requirements by showing merely that representation of his interests "may be inadequate" and "the burden of making this showing should be treated as minimal." *United Guaranty Residential Insurance Co. v. Philadelphia Sav. Fund*, 819 F.2d 473, 475 (4th Cir. 1987)(quoting *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10, 92S. Ct. 630, 636 n.10 (1972). FRCP 24(a). See also *In re Sierra Club*, 945 F.2d 776, 779-80 (4th Cir. 1991) This Court has held that Rule 24 "underscores both the burden of those opposing intervention to show the adequacy of the existing representation and the need for a liberal application in favor of permitting intervention." *Nuesse v. Camp*, 385 F.2d 694, 702 (D.C. Cir. 1967). See also the case, *Smuck v. Hobson*, 408 F.2d 175, 181 (D.C. Cir. 1969)

Although the Defendant and movants "may share some objectives" with respect to said matter, that does not mean the Defendant's interests and movement's are identical or that their approaches to litigation would be the same.

Consequently, even if the Defendant vigorously perform their duty to represent its citizenry, representation of Movant's distinct interest may still be inadequate, because the Defendant must balance the competing interests presented by the proposed intervenors as well as those individuals or entities like the Plaintiff, who oppose it. *John Doe*, 256 F.3d at 380-81.

Movant meet the standards for intervention as of right, and his motion should be granted.

## POINT II

**Alternatively, this Court can clearly exercise its statutory discretion and grant "*Permissive Intervention*" pursuant to Federal Rules of Civil Procedure 24(b)(1)(B), as this suite under FOIA, § 552 as amended, have a common question of law and fact.**

Even if this Court should determine that Movant, Leonard W. Houston, Sr., do not satisfy the requirements for intervention of right, it should grant permissive intervention under Rule 24(b)(B), which permit's intervention on timely motion when a person "has a claim or defense that shares with the main action a common question of law or fact. As amply stated in the correspondence to the Attorneys of Record for the Plaintiff, Electronic Privacy Information Center ("EPIC"), and the Defendant, United States Department of Justice ("DOJ"), dated May 17, 2019, said FOIA claim and defenses shares common factual and legal questions with the main action. Also, intervention will not "unduly delay or prejudice the adjudication of the original parties rights." Fed. R. Civ. P. 24(b)(3).

Accordingly, intervention pursuant to Rule 24 of the Federal Rules of Civil Procedure should be granted in this proceedings as party plaintiff. Moreover, the Movant, Leonard W. Houston, Sr., anticipated that FOIA defenses raise common issues of law and fact, and intervention will not unduly delay the proceedings or prejudice the original parties.[3] *NAACP v. New York*, 413 U.S. 345, 365-55, 93 S.C.t. 2591, 2602-03 (1973)[4], *Roeder v. Islanic Republic of Iran*, 333 F.3d 228, 233.

---

[3]

So as not to delay the proceedings or prejudice the original parties and to ensure the earliest opportunity to participate in this case. Movant, Leonard W. Houston filed his FOIA Request on April 5, 2019, which wa marked submitted by U.S. Department of Justice, Office of Information Policy on April 12, 2019, whereas the Plaintiff's Complaint in the entitled action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for injunctive and other appropriate relief to secure release of agency records requested, was filed on March 22, 2019 (ECF Document No.1), which any motion by the parties for Summary Judgment has not been granted and/or entered to disposed of this case as Final. I have provided the parties with notice of my specific interest in this action. In the interim, this Court has entered an Order of Consolidation of this Case No. 19-cv-00810 with the Case No. 19-cv-009f7, on consent, dated April 22, 2019 (Case 1:19-cv-00810-RBW [ECF Document No. 33] - **ORDERED** that, to the extent that the plaintiffs in the above-captioned matters are seeking the release of the Special Counsel Mueller's report regarding the investigation into Russian interference in the 2016 United States presidential election, Case No. 19-cv-810, is **CONSOLIDATED** with Case No. 19-cv-857.

[4]

"Whether intervention be claimed of right or as permissive . . . apparent, from the initial words of both Rule 24(a) and Rule 24(b), that the application must be timely," If it is untimely intervention must be de Although the point to which the suit has progressed is one factor . . . it is not solely dispositive. Timeliness is to be determined from all the circumstances."

Further, because the Movant, Leonard W. Houston, Sr., satisfies the threshold requirements

for permissive intervention, Rule 24(b) of the Federal Rules of Civil Procedure, so long as (1) its

motion is timely; (2) it has a claim or defense that shares a common question of law or fact

with the main action; and (3) its intervention will not cause undue delay or prejudice the rights of

the original parties, and therefore, authorizes the Court, in its discretion, to permit intervention.

*Chiles v Thorburgh*, 865 F.2d 1197 at 1213, and doing so would aid in the fair, efficient

adjudication of the issues (*i.e.* FOIA § 552, as amended) before the Court of said Movant's case

for intervention as a party-plaintiff under Rule 24(b) of the Federal Rules of Civil Procedure.

Here, at all events heretofore stated above and the factors presented, it is clear that the Court

herein, should grant said Movant with leave to intervene as of right, or in the alternative

permissive intervention in this matter. *Smoke v. Norton*, 252 F. 3d 468, 470 (D.C. Cir. 2001)


Moreover, in accordance with this Court's Order the "**Joint Status Report**" of the Plaintiff,

Electronic Privacy Information Center, and the Defendant, United States Department of Justice,

therein duly filed and dated June 17, 2019, stating how the case shall proceed and *inter alia*,

the Position of said Defendant, and the position of said Plaintiff with a proposed schedule

consistent with this Court's practice, applicable in this action under this Court's ordered

consolidated case —Civil Action No. 19-cv-810 (RBW).  Attachment **Exhibit C**.

## POINT III

### A party seeking to intervene need not demonstrate that he has standing under Federal Rules of Civil Procedure 24

As held in the case- *Dillard v. Chilton Cty. Comm'n*, 495 F.3d 1324, 1336 (11th Cir. 2007), "[A] party seeking to intervene need not demonstrate that he has standing. . . as long as there exists a justiciable case or controversy between the parties already in the lawsuit. [¶] However, when the original parties have settled the claims between them, and the intervenor wishes to change the settlement, we have required the intervenor to have independent standing . . . Generally, an intervenor must be the only party litigating a case."

Thus, the Movant's further contends, and hereby asserts, that its motion also meets the requirement that a putative intervener have claim or defense that shares a common question of law or fact with the main action Fed. R. Civ. P. 24(b)(1)(B). Also, ruling that a motion to intervene was timely when it was filed seven months after filing of complaint and three months after filing of motion to dismiss. *Id. Chiles*, 720 at 1213; *Georgia v. U.S. Army Corps of Engineers*, 302 F.3d 1242 at 1259 (permitting intervention six months after filing of complaint).

The Defendant, United States Department of Justice, has failed to establish that it properly withheld documents of the claimed FOIA Exemptions in the absent of *"Vaughn Index"* that requires segregability, being an issue of the withheld information.

-7-

Further, upon relying on the Supreme Court's ruling in *Milner v. Department of the Navy* that the FOIA's exemptions are "exclusive and must be narrowly construed," 562 U.S. 565 (2011) (quoting *EPA v. Mink*, 410 U.S. 73, 79 (1973) and *FBI v. Abramson*, 456 U.S. 615, 630 (1982), the D.C. Circuit rules that "non-responsive redactions . . . find no home in FOIA's scheme." *AILA*, 830  F.3d at 677. "Rather," the court declared, "once an agency identifies a record it deems responsive to an FOIA request, the statute compels disclosure of the responsive record—i.e., as a unit—except insofar as the agency may redact information falling within a statutory exemption." *id.*

## CONCLUSION

Thus, for all the foregoing reasons, the  Movant respectfully requests the Court grant its entitled motion and permit it to intervene as a party plaintiff pursuant to  Rule 24 of the Federal Rules of Civil Procedure in said entitled proceedings therein filed under the Freedom of Information Act ("FOIA"), 5 U.S.C. 552, as amended.

Dated: July 15, 2019

Respectfully submitted,

**LEONARD W. HOUSTON, SR.**, *pro-se*
*Movant-Proposed Inventor-Plaintiff*
48 Deer Court Drive
Middletown, NY 10940-6867
Telephone No. (845) 343-8923

## THE UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER,<br>  *Plaintiff,*<br><br>LEONARD W. HOUSTON, SR.,<br><br>  *Proposed Intervenor-Plaintiff,*<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE,<br><br>  *Defendant.* | Civil Action No. 19-cv-00810 (RBW)<br><br>**COMPLAINT IN INTERVENTION** |

Leonard W. Houston, Sr., *pro-se*, intervening plaintiff[1] hereinafter called "Intervenor" and for his Complaint pursuant to Rule 24 of Federal Rules of Civil Procedure, in intervention, alleges:

### INTRODUCTION AND NATURE OF THE ACTION

1. This is an action under the Freedom of Information Act ("FOIA")[2] 5 U.S.C. §552, for injunctive and other appropriate relief to secure the release of agency records requested by Intervenor-Plaintiff, Leonard W. Houston, Sr., ("Houston" ) from Defendant, United States Department of Justice ("DOJ") *via* to the Department of Justice's Office of Information Policy.

---

[1] On April 22, 2019, this Court (Honorable WALTON, Judge) ordered this Case No. 19-cv-810 (RBW) be CONSOLIDATED with Case No. 19-cv-957(RBW). It was further Ordered that the parties make all future filings in Case No. 19-cv-810. Intervenor-Plaintiff herein, do not seek intervention in said Case No. 19-cv-957.

[2]

In 2016, Congress passed the **Freedom of Information Improvement Act of 2016** (the "FOIA Improvement Act"), which amended FOIA (See, Pub. L. No. 114-185, 130 Stat. 518, and codified at U.S.C. § 552 (2016), which amended 5 U.S.C.§ 552, enacted on June 30, 2016). A letter dated April 19, 2017 by the U.S. Department of Justice-Office of Legislative Affairs address to Congress Member of the Committee on the Judiciary as to the concerns of the implementation of the FOIA Improvement Act of 2016 and OIP's role in FOIA matters, if (OIP's) and if guidance was thoughtfully crafted to embrace the presumption of openness in processing those records. to ensure that requesters have efficient access to records that they seek. Annexed copy as **Exhibit H.**

## A. INTERVENTOR-PLAINTIFF'S COMPLAINT

2.  Intervenor-Plaintiff, Leonard W. Houston, Sr., submitted a written Freedom Of Information Act request to the Defendant, United States Department of Justice which was *via* to its component Agency- Information Office Policy,[3] and upon said receipt was marked submitted-April 12, 2019, and assigned a FOIA Tracking No.: DOJ-2019-0038(OIP), seeking documents relating to categories of records to the Special counsel's investigation into Russian interference in the 2016 Presidential Election and other related matters. Defendant, Department of Justice failed to produced in whole or in part responsive documents in response to the FOIA request, and thus withheld documents pursuant to asserted claim Exemptions of the FOIA,

3.  The public at large, has a right to know the full scope of Russian interference in the 2016 Presidential Election, and among other things, whether the President of the United States (*i.e.*, Donald J. Trump) unlawfully obstructed any investigation into Russian election interference or such other related matters. As the FOIA Request submitted by Houston for the requested records and/or documentsthe same are vital to the public's understanding of these issues and to the integrity of the political system of this Country. As was held and cited in the case and decision — *Elizabeth Eudey v. Central Intelligence Agency*, 478 F. Supp. 1175, 1176 (D. C..D. 1979) (*"even a single document has the potential for contributing to public understanding,"*)

---

[3] Freedom of Information Act Request from HOUSTON to Douglas Hibbard, Chief, Initial Request Staff, Office of Information Policy (OIP), Department of Justice, marked as submitted on April 12, 2019.

## B.  JURISDICTION AND VENUE

4.  This court has subject matter jurisdiction over the intervenor-plaintiff action pursuant to 28 U.S.C. § 1331, and 5 U.S.C. § 552, with personal jurisdiction over Defendant, United States Department of Justice.

5. Venue is proper laid in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391.

## C.  PARTIES

6.  Intervenor-Plaintiff is a individual, and resides at 148 Deer Court Drive, in the City of Middletown, County of Orange, the State of New York.

7.  Plaintiff, Electronic Privacy Information Center (EPIC), is a nonprofit organization incorporated in Washington, D.C.., and established in 1994, to focus public attention on emerging privacy and civil liberties issues.  And as central to its mission, is oversight and analysis of government actives, among other things, being a representative of the news media.

8.  Defendant, Department of Justice (DOJ), is a federal agency of the United States within the meaning of the Freedom of Information Act (FOIA), 5 U.S.C. § 552(f)(1), and has possession, custody and control of records and/or documents to which Intervenor-Plaintiff Leonard W. Houston, Sr., seeks access. Defendant's (DOJ) principal office are presently located at 950 Pennsylvania Avenue, N.W., Washington, D.C. 20530-0001.

## D.  FACTUAL ALLEGATIONS OF INTERVENOR-PLAINTIFF COMPLAINT

9. Plaintiff, Electronic Privacy Information Center, sued United States Department of Justice, by commencing an action under the Freedom of Information Act ("FOIA), 5 U.S.C. § 552, for injunctive and other appropriate relief to secure the release of agency records requested by said Plaintiff from said Defendant.

10.  Further, Plaintiff challenges the failure of the Defendant to disclose non-exempt records in response to ther request concerning the investigation by the Special Counsel, Robert s. Mueller, into Russian interference in the 2016 United States presidential election and related matters that arose or may arise directly from the investigation, and any other matters within the scope of 28 C.F.R § 600.4(a) pursuant to the United States Department of Justice, Office of the Attorney General, as to the appointment  of Special Counsel, Order No. 3915 -2017, dated May 17, 2017.

11. At the conclusion of the Special Counsel's work, as aforested above, he/she shall provide the Attorney General with a confidential report explaining the prosecution or declination decisions reached by the Special counsel, which in this case was submitted on March 22, 2019, to Attorney General, William P. Barr, pursuant to 28 C.F.R. § 600.8(c), the same was not made to the public, only the redacted report—**U.S. Department of Justice, Report On the Investigation Into Russian Interference In The 2016 Presidential Election** (Volume I and Volume II) the same was provided to the public and members of Congress.

12.  Plaintiff, Electronic Privacy Information Center, submitted a Freedom of Information Act request via fax, to the Department of Justice's Office of Information Policy, to the attention of Douglas Hibbard, Chief, Initial Request Staff, Office of Information Policy (OIP), dated November 5, 2019, of which said plaintiff sought fourteen (14) categories of records related to the Special Counsel's investigation, as aforestated above.

13. Defendant, Department of Justice failed to make a determination on said Plaintiff's request within the time period allowed by FOIA, 5 U.S.C. §§ 552(a)(6)(A)(i) and (B)(i), and thereafter on December 21, 2018, Electronic Privacy Information Center, filed a FOIA Appeal to the Office of Information Policy(OIP), with respect to its original request and reiterated the grounds fore expedition.

14. Plaintiff, Electronic Privacy Information Center, thereafter asserted in its complaint, **Count I,** Violation of the FOIA: Failure to Comply with Statutory Deadlines; **Count II**, violation of the FOIA: Unlawful Denial of Expedited Process; and **Count III**, violation of the FOIA: Unlawful withholding of Agency records, and thus sought requested relief under the Freedom of Information Act, 5 U.S.C. § 552, as amended. Annexed copy of Complaint for Injunctive Relief, dated and filed, March 22, 2019, as **Exhibit A**.

15. Defendant, Unites States Department of Justice ("DOJ") filed an answer to said Plaintiff's Complaint (ECF No.36), correspondingly to numbered paragraphs. Thereby, denying the various allegations thereof, and further avers that the Plaintiff is not entitled to any relief, and concluding *inter alia*, that it denies all allegations in the Complaint not expressly admitted or denied, dated and filed on April 25, 2019, as **Exhibit B**.

16. On March 24, 2019, the Attorney General William P. Barr, by his letter as a supplement to the notification provided on Friday, March 22, 2019, advising his principal conclusions reach by Special Counsel Robert S. Miller III, and to inform the public about the status of his initial review of the report [*redacted*] that he had prepared. Thus, concluding that he observed in his initial notification, the Special Counsel regulations provided that "the Attorney General may determine that public release of "notifications to respective Committees"would be in the public interest," citing as authority 28 C.F.R. § 600.9(c).

17. Further stated, under the caption of said letter - "***Status of the Department's Review***"that relevant regulations contemplate that the Special Counsel's report will be a "confidential report" to the Attorney General. See Office of Special Counsel, 64 Fed. Reg. 37,038, 37040-41 (July 9, 1999). And that he is mindful of the public interest in this matter. . .

18. On March 27, 2019, the U.S. Department of Justice, the Special Counsel's Office submitted their response to Honorable William P. Barr, Attorney General of the United States, in reference —**"Report of the Special Counsel on the Investigation Into Russian Interference in the 2016 Presidential election and Obstruction of Justice"** (March 2019), which stated, *inter alia,* "Accordingly, the enclosed documents are in a form that can be released to the public consistent with legal requirements and Department policies.  I am requesting that you provide these materials to Congress and authorize their public release at this time.". . . It would also accord with the standard for public release of notification to Congress cited in your letter... *See* 28 C. F. R. § 609(c) ("the Attorney General may determine that public release" of congressional notification "would be in the public interest,"collectively marked  as **Exhibit C**.

19.  That prior to the issuance of said letter, the Office of the Deputy Attorney General, submitted and filed Order No. 3915-2017, dated May 17, 2017, the Appointment of Special Counsel to investigate Russian interference with the 2016 Presidential Election and related Matter, to wit:

    (1)   any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump; and

    (2)  any matters that arose or may arise directly from the investigation; and

    (3)  any other matters within the scope of 28 C.F. R. § 600.4(c)

Annexed copy of said Order with procedural authorities claimed, as **Exhibit D**.

20.  On April 5, 2019, Interventor, Leonard W. Houston, Sr., duly requested in writing that the Defendant, United Sates Department of Justice via OAG FIOA Office, Douglas Hibbard, Chief, Initial Request Staff, being the appropriate officer thereof, to disclose the records, reports and summaries herein-above mentioned to said Requester (FIOA Requester) pursuant to request under Freedom of Information Act ("FOIA") [5 U.S.C. § 552, as amended by Public Law No. 104-231, 110 Stat. 3048], And thereby was acknowledged and confirm that said request submission to the FOIA application, was assigned Tracking Number; DOJ-2019-003927, on April 12, 2019, being  collectively marked as **Exhibit E.**

21. Defendant, United States Department of Justice maintains certain records consisting of the following:

(1) documents of any/or coordination between the Russian government And individuals associated with the campaign of President Donald J. Trump;

(2) documents as to any matters that arose or may had risen directly from the Investigation in the 2016 presidential election;

(3) documents as to any and all matters within the scope of 28 C.F.R. § 600.4(a) pursued by the Special Counsel Robert S. Mueller, III, with respect to his appointment to investigate Russian interference with the 2016 Presidential election and related matters in accordance with Order No. 3915-2017, issued and authorized by Rod J. Rosenstein, Acting Attorney General, dated May 17, 2017.

Annexed copy of Interventor's mandatory declassification review request (Executor Order 12958 of April 17, 1995 [Federal Register, Vol. 60, No. 76], dated May 8, 2019, and that said his FOIA Request DOJ-2019-00487, was confirmed as submission on May 17, 2019, which indicated among other things, under entitled **Description** *"that it is under agency review, and no records have been released yet,"* collectively marked as **Exhibit F**.

22.  The records herein-above referred to were and are identifiable records within the meaning of the Freedom of Information Act. The Defendant United States Department of Justice refusal to disclose the same to Requester was wrongful and without lawful reason or excuse and same herein, entitled to the relief provided y the Act (See, *Bristol-Myers Co. v. Federal Trade Comm.* 178 App. Dc 22, 424 F.2d 935, *cert. den*, 400 U.S. 824, 27 L. Ed.2d 52, 91 S. Ct. 46) ("Freedom of Information Act provides that a request for disclosure of agency records should specify them by reasonable description; but this requirement is not to be used as an excuse for withholding records by an agency").

23.  Intervenor, Leonard W. Houston, Sr., has incurred and will continue to incur expenses for costs in prosecuting this action under said Act.

24.  On May 31, 2019, the Requester [Intervenor-Plaintiff] submitted a written Freedom of Information Act Appeal [Tile 5, United States Code, section 552(a)(6), as amended, by Public Law No. 104, Stat 3048, as amended, the FOIA Improvement Act of 2016, Public Law No. 114-185, 130 Stat. 538].

25.  Thereby, contending and asserting his statutory appeal of denial of said FOIA request, dated April 5, 2019, being in part for Records, Reports and Summaries in the possession of the Office of Attorney General, William P. Barr, Attorney General of the Department of Justice, with respect to the Special Counsel Investigation into Russian Interference in the 2016 Presidential Election and related matters within the statutory scope of 28 C.F.R. § 600.4(a) and Section 600.4 through 600.10 of Title 28 of the Code of Federal Regulations . . ., as **Exhibit G**.

26.  In any event, it is clearly apparent that Leonard W. Houston, Sr., Intervenor-Plaintiff

have a direct and substantial interest in the pending FOIA litigation, and proceedings as herein

captioned above (Civil Action No. 19-cv-00810) , and being a FOIA Requestor in said entitled

requests - DOJ-2019-00397, dated April 12, 2019*(No records has been released yet*- the same

now marked **Final Response**) and DOJ-2019-004807, dated May 17, 2019 (*No records has been*

*release yet*), see Exhibits E and Exhibit F attached herein.

27.  Intervenor, Leonard W. Houston, Sr., has fully complied with all procedural requirements

of the Freedom of Information Act, as amended, including filing administrative Appeal to the

director thereof, and said intervenor herein, and has no further right of review or appeal or other

remedy is available to Intervenor-Plaintiff before such agent, United Stated Department of

Justice, Defendant herein. [5 U.S.C 552 (a)(6)(A)(ii)].

### E.  COUNT I –
### INTERVENOR-PLAINTIFF CLAIM
### (Violation of FOIA, 5 U.S.C. § 552, as amended, FOIA Improvement Act of 2016 )

28.  All of the preceding paragraphs in this "Complaint for Intervention" are incorporated

herein by reference from paragraphs number 1 through paragraphs number 27, as if fully restated.

29. Intervenor-Plaintiff Leonard W. Houston, Sr., contends and  hereby asserts under the

Freedom of Information Act ["FOIA"), 5 U.S.C. § 552, as amended,] the denial of said FOIA

request dated April 5, 2019, and by FOIA Improvement Act of 2016,, being in part for Records,

Reports and summaries in the possession of the Office of Attorney General, William P. Barr,

Attorney General of the Department of Justice, Defendant herein, is a violation of said act and

the continuance thereof.

30.  The Defendant failed and refused to provide any categorical description of the material withheld, without providing any exhibits or page reference to allow a court to assess whether the Intervenor's claim, in context herein, are meritorious, and thus, a near-verbatim recitation of their response of the statutory standard exemptions are inadequate.

## F.  COUNT II

31. All of the preceding paragraphs in this "Complaint for Intervention" are incorporated herein by reference from paragraph 22 through paragraph number 30, as if fully restated.

32.  Defendant, U.S. Department of Justice has failed to render and/or produce a complete itemized, index inventory of every record or portion thereof, responsive to Requester's FOIA written request pursuant to FOIA, which the DOJ improperly asserted to be exempt from disclosure, and failure to accompanied by a detailed justification statement covering each refusal to release records or portions thereof in accordance with the approved "Vaughn" indexing requirement. [See, *Vaughn v. Rosen*, 157 U.S. App. D.C. 340, 484 F.2d 820 (D. C. Cir.1973), *cert. denied*, 416 U.S. 977, 94 S. Ct. 1564, 39 L.Ed.2d 873, *Vaughn v. Rosen*, 523 F.2d 1136 (D.C. Cir. 1975)]

33. The Defendant, United States Department of Justice *via* their Office of Information Policy (OIP) has therefore failed to adequately established that it has complied with the FOIA's requirements applicable to their cited Exemptions to the records withheld from disclosure.

34. The FOIA requires federal agencies to disclose upon request, broad classes of agency records unless the records are covered by the statute's exemptions.  And thus, the defendant agency has "[the] burden of demonstrating that the withheld documents [requested by the FIOA requester] are exempt from disclosure." (See *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001)

35.  The Defendant has failed to demonstrate that <u>each</u> document that falls within the class

requested either has been produced . . . or is wholly [or partly,] exempt [from disclosure].

*Id. Students Against Genocide* at 833 (quoting *Goland v. Cent Intelligence Agency,*

607 F.2d 339, 352 (D.C. Cir 1978).

36.  The Defendant has not meet its statutory burden of showing that the withheld documents

were actually of such character as to fit one or more of the [FOIA's] exemptions.

37.  That the FOIA exemption nevertheless requires an agency to provide "a relatively detailed

justification" for the application of FOIA exemptions, thus Defendant has therefore, failed to

established that it has complied fully with the FOIA's requirements.

38.  Here, said defendant has not described each chunk of *<u>redacted</u>* text individually, but in

stead has grouped it into a descriptive category, Which the redacted material did not suffices to

show that the information withheld falls within the relevant category and hence is truly exempt

from disclosure.

### G.  COUNT III

39. All of the preceding paragraphs in this Complaint for Intervention are incorporated herein

by reference from paragraphs number 31 through paragraphs number 38, as if fully restated.

40.  The Defendant, United States Department of Justice, failed in compliance as to the

segregability of the withhold information as to definable records, etc., as requested by the

Intervenor, Leonard W. Houston, Sr., in his written request submitted under the Freedom of

Information Act (5 U.S.C. § 552) as amended.

41. Further, the segregation of any of the redacted information from information may be

disclosed is possible. (See *Sussman v. U.S. Marshals Serv.,* 494 F.3d 1106, 1116 (D.C. Cir. 2007)

(stating "a district court must make specific findings of segregability regarding the documents to

be withheld, "before approving the application of a FIOA exemption.")

## H.  COUNT IV

42.  All of the preceding paragraphs in this Complaint for Intervention" are incorporated

herein by reference from Paragraphs number 39 through paragrphs number 41, as fully restated.

43. Defendant, United States Department of Justice has failed to meet the *"foreseeable harm"*

standard pursuant to and codified in the FOIA Improvement Act of 2016, which requires an

agency must release a record-even if it falls within a FOIA exemption-if releasing the record

would <u>not</u> reasonably harm an exemption-protected interest, and if the law does not prohibit the

disclosure.

44. As the clear purpose of the FOIA Improvement Act of 2016, and its passing was to

establish a *"presumption of openness,"* and its passing was based on the recognition that

"from the beginning, agencies have taken advantage of exemptions to withhold any information

that might technically fit. [See, 162 Cong. Rec. H3714-01, H3717162 (2016)][4]

45. Defendant, Department of Justice did not make an effort to comply with the letter of the

law, nor have they complied with the spirit of the law in this case for Intevenor's intervention.

46. Here, applying the standard to the Intervenor's case, it is contended and hereby asserted

by said intervenor, that without the Defendant's supporting *Vaughn* indexes, they fall far short of

what is clearly required under the FOIA Improvement Act of 2016.

---

[4]To that end, Congress sought to require an agency to "first determine whether [i] could reasonable
foresee an actual harm" before the agency claims an exemption. id. Furthermore, an inquiry into whether an
agency has reasonably foreseen a specific, identifiable harm that would be caused by a disclosure would require the
ability to articulate both the nature of the harm and the link between the specified harm and specific information
contained in the material withheld." H.R. REP. No. 114-391, at 9 (2016.)

## PRAYER FOR RELIEF

**WHEREFORE**, the Intervenor prays:

1. For preliminary and final injunction prohibiting Defendant, United States Department of Justice and its Office of Information Policy (OIP) prohibiting defendant from withoholding from said Inventor-Plaintiff the records herein referred to and described.

2. For preliminary and final injunction directing Defendant to make such records available [*unredacted*] to Intervenor, and permit the inspection of the full "**Report On The Investigation Into Russian Interference In The 2016 Presidential Election**" as prepared by Special Counsel, Robert S. Mueller, III, submitted pursuant to 28 C.F.R § 6008(c), March 2019, and copies of Summaries thereof, in the possession of the Office of Attorney General, William P. Bar, Attorney General, of the United States. [5 U.S.C. § 552(a)(2)(A)]

3. Order Defendant, United States Department of Justice to conduct a search for any and all records responsive to Intervenor-Plaintiff's FOIA request and demonstrate that it employed search methods reasonably likely to lead to the discovery of records responsive to said intervenor-plaintiff's FOIA request.

4. Order Defendant, United States Department of Justice to produce, by a date certain, any and all non-exempt records to Intervenor-Plaintiff's FOIA request and a *Vaughn* index of any responsive records withheld under statutory claim exemption.

5. Enjoin Defendant, United States Department of Justice via Office of Information Policy ("OIP") from continuing to withheld any and all non-exempt records responsive to Intervenor-Plaintiff's FOIA request.

6.  For Intervenor's cost and disbursements reasonably incurred in prosecuting this action, and for such other and further relief as to the Court may seem proper. [As in addition to request for equitable relief, in the form of injunction, the Freedom of Information Act (FOIA), provides for allowance of attorney's fees to a successful plaintiff. [5 U.S.C. § 552(a)(4)and (5)]; and grant Intervenor-Plaintiff such other and further relief as the Court deems just and proper.

Dated: June 15, 2019

**LEONARD W. HOUSTON, SR.**, pro-se
*Proposed Intervenor-Plaintiff*
148 Deer Court Drive
Middletown, NY 10940-6867
Telephone No. (845) 343-8923

## ATTACHMENTS TO INTERVENOR-PLAINTIFF COMPLAINT

Intervenor-Plaintiff incorporates by reference the attached Exhibits
with the same force and effect as if herein set forth.

---

**EXHIBIT A:** Complaint For Injunctive Relief (Freedom of Information Act, 5 U.S.C.§ 552)
ELECTRONIC PRIVACY INFORMATION CENTER, *Plaintiff*
March 22, 2019 (Civil Action No. 19-cv-00810)

**EXHIBIT B:** Answer to Plaintiff Complaint
UNITED STATES DEPARTMENT OF JUSTICE, *Defendant*
April 25, 2019 (Civil Action No. 19-cv-00810)

**EXHIBIT C:** Supplement summary of principal conclusion reach by Special Counsel
THE ATTORNEY GENERAL - Hon. William P. Barr
March 24, 2019

Response letter to Attorney General .William P. Barr's letter of March 24, 2019
U.S. DEPARTMENT OF JUSTICE - THE SPECIAL COUNSEL'S OFFICE
March 27, 2019

**EXHIBIT D:** Order No. 3915-2017 - Appointment of Special Counsel to investigate Russian
interference with the 2016 Presidential Election and Related matters
OFFICE OF THE DEPUTY ATTORNEY GENERAL
May 17, 2017

**EXHIBIT E:** Request under Freedom of Information Act ("FOIA:) 5 U.S.C. § 552, as amended
LEONARD W. HOUSTON, SR., FOIA Requester, to
OAG FOIA Office, Office of Information Policy (OIP)
April 5, 2019 (Assigned Tracking Number: DOJ-2019-003927, April 12, 2019)

Response to Requester's Freedom of Information Act (FOIA) request
U.S. DEPARTMENT OF JUSTICE - OFFICE OF INFORMATION POLICY
May 7, 2019 (Final Response - SCO Report (5.7.19)

**EXHIBIT F:** Mandatory Declassification Review Request- Executive Order 12958 of
April 17, 1995 [Federal Register, Volume 60, No. 76]
LEONARD W. HOUSTON, SR. (Re; DOJ-2019-0038(OIP)
May 8, 2019 (Assigned Tracking No. DOJ-2019-004807, May 21, 2019)

**EXHIBIT G:** Freedom of Information Act Appeal, 5 U.S.C. § 552(a)(6), as to
FOIA Request - DOJ 2019-0038, submitted 04/12/2019
LEONARD W. HOUSTON, SR., FOIA Requester
May 20, 2019

**EXHIBIT H**: Response to a Member of Congress, the Senate Judiciary Committee concerning
the implementation of the "**FOIA Improvement Act of 2016**" and OIP's role in
FOIA matters and its responsibility for encouraging government-wide compliance.
U.S. DEPARTMENT OF JUSTICE
OFFICE OF LEGISLATIVE AFFAIRS
*Office of the Assistant Attorney General*
Samuel R. Ramer, Acting Assistant Attorney General
April 19, 2017

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2019, I filed the foregoing with the Clerk of Court, which will then send a notification of such filing to Counsels of Record.

I further certify that I served paper  copies of the foregoing documents on the following parties or their Counsel of Record by United States Postal Service - **Certificate of Mailing**, as per attached said certificate:

Alan Jay Butler
Marc Rotenberg
John L. Davisson
*Attorneys for Plaintiff*
**ELECTRONIC PRIVACY INFORMATION CENTER**
1718 Connecticut Avenue, NW, Suite 200
Washington, D.C. 20009

Courtney Danielle Enlow
Elizabeth J. Shapiro
*U.S. Attorneys for Defendant*
**UNITED STATES DEPARTMENT OF JUSTICE**
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005







PS Form **3817**, April 2007  PSN 7530-02-000-9065

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2019, I filed the foregoing with the Clerk of Court, which will then send a notification of such filing to Counsels of Record.

I further certify that I served paper copies of the foregoing documents on the following parties or their Counsel of Record by United States Postal Service - **Certificate of Mailing**, as per attached said certificate:

Alan Jay Butler
Marc Rotenberg
John L. Davisson
*Attorneys for Plaintiff*
**ELECTRONIC PRIVACY INFORMATION CENTER**
1718 Connecticut Avenue, NW, Suite 200
Washington, D.C. 20009

Courtney Danielle Enlow
Elizabeth J. Shapiro
*U.S. Attorneys for Defendant*
**UNITED STATES DEPARTMENT OF JUSTICE**
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005



**UNITED STATES POSTAL SERVICE®**   Certifica...
Ma...

This Certificate of Mailing provides evidence that mail has been presented to USPS® fo...
This form may be used for domestic and international mail.

From: **LEONARD W. HOUSTON, SR.**

148 Deer Court Drive

Middletown, NY 10940-6867

2019

To:   Courtney Danielle, U.S. Attorney
Elizabeth J. Shapiro, U.S. Attorney
UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L street, N.W.
Washington, D.C. 20005

PS Form **3817**, April 2007 PSN 7530-02-000-9065

U.S. POSTAGE PAID
PMD DEN TOWN, NY
10940
JUL ... 2019
**$1.45**
R2304.E105306-41

1006

**NAMES OF OTHER PERSONS TO BE SERVED**
Civil Action No. 19-cv-00957 - **CONSOLIDATED**

Pursuant to District Court of District of Columbia, Rule 7(k), the following is a list of the

names and addresses of all attorneys to be notified by the Clerk of Court of the Entry of this

**Proposed Order**:

        Joshua Hart Burday
        Matthew Topic
        **LOEVY & LOEVY**
        *Attorneys for Plaintiffs*
        **JASON LEOPOLD**
        **BUZZFEED INC**
        311 N. Aberdeen Street, Third Floor
        Chicago, IL 60607

        Courtney Danielle Enlow
        Elizabeth J. Shapiro
        *U.S. Attorneys for Defendant*
        **UNITED STATES DEPARTMENT OF JUSTICE**
        Civil Division, Federal Programs Branch
        1100 L Street, NW
        Washington, D.C. 20005

        Courtney Danielle Enlow
        *U.S. Attorney for Defendants*
        **DOJ OFFICE OF ATTORNEY GENERAL**
        **DOJ OFFICE DEPUTY ATTORNEY GENERAL**
        **DOJ OFFICE OF SPECIAL COUNSEL**
        U.S.  DEPARTMENT OF JUSTICE
        Civil Division, Federal Programs Branch
        1100 L street, NW
        Washington, D.C. 20005

        Respectfully submitted,

        **LEONARD W. HOUSTON, SR.**, *pro-se*
        *Movant*
        148 Deer court Drive, Bldg. 4
        Middletown, NY 10940-6867
        Telephone No. (845) 343-8923
        lenny.houston@yahoo.com

# ATTACHMENT

## EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ELECTRONIC PRIVACY INFORMATION CENTER
1718 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20009

      Plaintiff,

      v.

UNITED STATES DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20230

      Defendant.

Civ. Action No. 19-810

## COMPLAINT FOR INJUNCTIVE RELIEF

1.     This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for

injunctive and other appropriate relief to secure the release of agency records requested by

Plaintiff Electronic Privacy Information Center ("EPIC") from Defendant United States

Department of Justice ("DOJ").

2.     EPIC challenges the failure of the DOJ to disclose non-exempt records in response to

EPIC's FOIA request concerning the investigation by Special Counsel Robert S. Mueller into

Russian interference in the 2016 United States presidential election.[1]

---

[1] *See* Ex. 1, U.S. Dep't of Justice, Office of the Deputy Att'y Gen., Order No. 3915-2017,
Appointment of Special Counsel to Investigate Russian Interference with the 2016 Presidential
Election and Related Matters ¶ (a) (May 17, 2017), https://www.justice.gov/opa/press-
release/file/967231/download.

3.     Prompt disclosure of the requested records, which are of overwhelming public interest,[2]
is mandated by the FOIA.

4.     The public has a right to know the full scope of Russian interference in the 2016 United
States presidential election and whether the President of the United States played any role in
such interference. The public also has a right to know whether the President unlawfully
obstructed any investigation into Russian election interference or related matters. The requested
records are vital to the public's understanding of these issues and to the integrity of the political
system of the United States.

### Jurisdiction and Venue

5.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, 5
U.S.C. § 552(a)(4)(B), and 5 U.S.C. § 552(a)(6)(C)(i). This Court has personal jurisdiction over
Defendant DOJ.

6.     Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391.

### Parties

7.     Plaintiff EPIC is a nonprofit organization incorporated in Washington, D.C. and
established in 1994 to focus public attention on emerging privacy and civil liberties issues.
Central to EPIC's mission is oversight and analysis of government activities.

8.     EPIC is a membership organization.[3] EPIC's members include distinguished experts in
law, technology, and public policy.[4]

---

[2] Jennifer Agiesta, *CNN Poll: Almost Everyone Wants a Public Report on Mueller's Findings*,
CNN (Feb. 7, 2019), https://www.cnn.com/2019/02/07/politics/cnn-poll-russia-mueller-report-
release/index.html.
[3] EPIC, Bylaws of the Electronic Privacy Information Center §§ 2.02, 5.01 (as amended Jan. 26,
2018).
[4] *Id.* § 5.01.

2

9.      EPIC maintains one of the most popular privacy websites in the world, epic.org, which

provides EPIC's members, policymakers, and the public with access to current information about

emerging privacy and civil liberties issues. EPIC also disseminates information to the public

through the EPIC Alert[5] and through various news organizations.[6] EPIC is a representative of the

news media. *EPIC v. DOD*, 241 F. Supp. 2d 5, 11 (D.D.C. 2003).

10.     In 2017, following reports of Russian interference in the 2016 U.S. presidential election,

EPIC launched the Democracy and Cybersecurity Project.[7] EPIC's Project is focused on

preserving and promoting democratic institutions. EPIC has brought numerous FOIA requests

and lawsuits as part of the Democracy and Cybersecurity Project. In *EPIC v. FBI*,[8] EPIC

obtained records revealing the FBI's failure to follow its own victim notification procedures in

response to Russian cyberattacks against U.S. officials and U.S. political organizations.[9] In *EPIC

v. DHS*,[10] EPIC obtained records detailing the Department of Homeland Security's response to

Russian cyberattacks on election infrastructure.[11] In *EPIC v. ODNI*,[12] EPIC brought suit to obtain

the full Intelligence Community Assessment of Russian interference in the 2016 election.[13] And

in *EPIC v. IRS*[14] and *EPIC v. IRS II*,[15] EPIC brought suit to obtain certain of President Trump's

---

[5] EPIC, *EPIC Alert* (Mar. 5, 2019), https://epic.org/alert/.
[6] EPIC, EPIC in the News (Mar. 5, 2019), https://epic.org/news/.
[7] EPIC, *Democracy and Cybersecurity: Preserving Democratic Institutions* (Feb. 4, 2019),
https://epic.org/democracy/.
[8] No. 1:17-CV-00121 (TNM), 2018 WL 2324084 (D.D.C. May 22, 2018).
[9] EPIC, *EPIC v. FBI (Russian Hacking)* (Feb. 28, 2019), https://epic.org/foia/fbi/russian-
hacking/.
[10] No. 17-2047 (D.D.C. filed Oct. 4, 2017).
[11] EPIC, *EPIC v. DHS* (Jan. 31, 2019), https://epic.org/foia/dhs/cybersecurity/russian-
interference/default.html.
[12] 281 F. Supp. 3d 203 (D.D.C. 2017).
[13] EPIC, *EPIC v. ODNI (Russian Hacking)* (Feb. 28, 2019), https://www.epic.org/foia/odni/
russian-hacking/.
[14] 910 F.3d 1232 (D.C. Cir. 2018).
[15] No. 18-902 (D.D.C. filed Apr. 17, 2018).

individual and business tax records to determine the scope of the President's Russian financial entanglements.[16]

11.     Defendant DOJ is a federal agency within the meaning of the FOIA. 5 U.S.C. § 552(f)(1). Defendant DOJ is headquartered in Washington, D.C.

## Facts

12.     EPIC's FOIA request, and the Special Counsel investigation to which it pertains, arise out of the Russian government's coordinated campaign to interfere with the 2016 U.S. presidential election.

### Russian Interference in the 2016 U.S. Presidential Election

13.     In 2016, the Russian government carried out a multi-pronged attack on the U.S. presidential election to destabilize U.S. democratic institutions and to aid the candidacy of Donald J. Trump. As explained in the declassified 2017 Intelligence Community Assessment ("ICA") on Russian election interference:

> We assess with high confidence that Russian President Vladimir Putin ordered an influence campaign in 2016 aimed at the US presidential election, the consistent goals of which were to undermine public faith in the US democratic process, denigrate Secretary Clinton, and harm her electability and potential presidency. We further assess Putin and the Russian Government developed a clear preference for President-elect Trump. When it appeared to Moscow that Secretary Clinton was likely to win the election, the Russian influence campaign then focused on undermining her expected presidency.

> We also assess Putin and the Russian Government aspired to help President-elect Trump's election chances when possible by discrediting Secretary Clinton and publicly contrasting her unfavorably to him.[17]

---

[16] EPIC, *EPIC v. IRS* (Feb. 4, 2019), https://epic.org/foia/irs/trump-taxes/; EPIC, *EPIC v. IRS II* (Mar. 18, 2019), https://epic.org/foia/irs/trump-taxes-ii/.
[17] Office of the Dir. of Nat'l Intelligence, ICA 2017-01D, *Intelligence Community Assessment: Assessing Russian Activities and Intentions in Recent US Elections* 1 (Jan. 6, 2017), https://www.dni.gov/files/documents/ICA_2017_01.pdf.

14.     The ICA—along with the reports, investigations, and prosecutions that have ensued—

establishes that Russia interfered with the 2016 election on at least four fronts.

15.     First, "Russia's intelligence services conducted cyber operations against targets

associated with the 2016 US presidential election, including targets associated with both major

US political parties."[18] These operations included the "exfiltrat[ion of] large volumes of data"

from the Democratic National Committee ("DNC") and "the compromise of the personal e-mail

accounts of Democratic Party officials and political figures."[19]

16.     Second, Russian intelligence services "used the Guccifer 2.0 persona, DCLeaks.com, and

WikiLeaks to release US victim data obtained in cyber operations publicly and in exclusives to

media outlets."[20] These disclosures included data extracted by Russian intelligence from DNC

networks.[21] Subsequent investigation has also revealed that senior Trump campaign officials

engaged in multiple meetings with Russian intermediaries offering to provide "dirt" on Hillary

Clinton, including "thousands of emails" obtained by Russia.[22]

17.     Third, "Russian intelligence accessed elements of multiple state or local electoral boards"

in an ongoing effort to assess "US electoral processes and related technology and equipment."[23]

---

[18] Office of the Dir. of Nat'l Intelligence, *supra* note 17, at 2.

[19] *Id.*

[20] Office of the Dir. of Nat'l Intelligence, *supra* note 17, at 2–3.

[21] *Id.* at 3.

[22] Statement of the Offense at ¶ 14, *United States v. Papadopoulos*, No. 17-182 (D.D.C. Oct. 5, 2017) ("The Professor told defendant PAPADOPOULOS . . . that 'They [the Russians] have dirt on her'; 'the Russians had emails of Clinton'; 'they have thousands of emails.'"); *see also* House Permanent Select Committee on Intelligence, *Status of the Russia Investigation (Minority Report)* (Mar. 13, 2018), https://democrats-intelligence.house.gov/uploadedfiles/final_-_minority_status_of_the_russia_investigation_with_appendices.pdf (noting that the "stated purpose" of "the June 9, 2016 Trump Tower meeting with Russian emissaries" was to "provide damaging information on Hillary Clinton").

[23] Office of the Dir. of Nat'l Intelligence, *supra* note 17, at 3.

18.     Fourth, "Russia's state-run propaganda machine—comprised of its domestic media apparatus, outlets targeting global audiences such as RT and Sputnik, and a network of quasi-government trolls—contributed to the influence campaign by serving as a platform for Kremlin messaging to Russian and international audiences."[24] As part of this propaganda push, the Russian government spent millions of dollars and employed hundreds of people to flood Facebook and Twitter with fraudulent users, posts, articles, groups, and targeted advertisements.[25]

19.     In the two years since the Intelligence Community Assessment was published, the ICA's findings have been repeatedly confirmed by federal inquiries[26] and investigative reporting.[27] The Senate Intelligence Committee, after an "an in-depth review" of the ICA and associated intelligence, determined that "the conclusions of the ICA are sound" and noted "that collection and analysis subsequent to the ICA's publication continue to reinforce its assessments."[28]

---

[24] Office of the Dir. of Nat'l Intelligence, *supra* note 17, at 3–4.

[25] Indictment at ¶¶ 3–6, 10, *United States v. Internet Res. Agency*, No. 18-32 (D.D.C. Feb. 16, 2018); *see also* Statement from EPIC to U.S. Senate Select Comm. on Intelligence (Sep. 4, 2018), https://epic.org/testimony/congress/EPIC-SSCI-ForeignSocialMedia-Sept2018.pdf (calling for greater transparency concerning Russian manipulation of news and information on social networks during and after the 2016 election).

[26] Senate Select Comm. on Intelligence, *The Intelligence Community Assessment: Assessing Russian Activities and Intentions in Recent U.S. Elections* (July 3, 2018), https://www.burr. senate.gov/imo/media/doc/SSCI%20ICA%20ASSESSMENT_FINALJULY3.pdf [hereinafter *Senate Intelligence Report*].

[27] *E.g.*, Scott Shane & Mark Mazzetti, *The Plot to Subvert an Election: Unraveling the Russia Story So Far*, N.Y. Times (Sep. 20, 2018), https://www.nytimes.com/interactive/2018/09/20/us/ politics/russia-interference-election-trump-clinton.html; Rosalind S. Helderman, Leslie Shapiro, & Chris Alcantara, *What we learned about Trumpworld outreach to Russia since Mueller's investigation began*, Wash. Post (Feb. 19, 2019), https://www.washingtonpost.com/graphics/ 2019/politics/mueller-report-primer/.

[28] Senate Select Comm. on Intelligence, *supra* note 26, at 7.

<u>Criminal Investigations Into Russian Election Interference</u>

20.     On January 20, 2017—two weeks after the public release of the Intelligence Community

Assessment—Donald J. Trump was inaugurated as the 45th President of the United States.

21.     On March 2, 2017, then-Attorney General Jeff Sessions, who had been a prominent

supporter of Mr. Trump during the campaign, recused himself "from any existing or future

investigations of any matters related in any way to the campaigns for President of the United

States."[29] As a result, the responsibilities of the Attorney General for any such investigation

passed to the Deputy Attorney General.[30]

22.     On March 20, 2017, James B. Comey, then-Director of the Federal Bureau of

Investigation ("FBI"), confirmed to the House Permanent Select Committee on Intelligence that

the FBI was conducting an investigation into "the Russian government's efforts to interfere in

the 2016 presidential election," including "the nature of any links between individuals associated

with the Trump campaign and the Russian government and whether there was any coordination

between the campaign and Russia's efforts."[31] Mr. Comey noted that the investigation would

include "an assessment of whether any crimes were committed."[32]

---

[29] Press Release, U.S. Dep't of Justice, Attorney General Sessions Statement on Recusal (Mar. 2, 2017), https://www.justice.gov/opa/pr/attorney-general-sessions-statement-recusal; *see also* 28 C.F.R. § 45.2(a).

[30] 28 U.S.C. § 508 ("In case of a vacancy in the office of Attorney General, or of his absence or disability, the Deputy Attorney General may exercise all the duties of that office[.]").

[31] *Russian Active Measures Investigation: Hearing Before the H. Permanent Select Comm. on Intelligence*, 115th Cong. (2017) (Statement of James B. Comey, Dir., Fed. Bureau of Investigation), https://www.fbi.gov/news/testimony/hpsci-hearing-titled-russian-active-measures-investigation.

[32] *Id.*

23.     On May 9, 2017, President Trump removed Director Comey from office and terminated

his employment.[33]

24.     Two days later, in a nationally televised NBC News interview, President Trump stated:

> I was going to fire Comey knowing, there was no good time to do it. And in fact
> when I decided to just do it, I said to myself, I said you know, this Russia thing with
> Trump and Russia is a made up story, it's an excuse by the Democrats for having
> lost an election that they should have won.[34]

25.     On May 17, 2017, Deputy Attorney General Rod J. Rosenstein—in his capacity as Acting

Attorney General—appointed Robert S. Mueller III "to serve as Special Counsel for the United

States Department of Justice."[35]

26.     Mr. Rosenstein authorized Mr. Mueller to "conduct the investigation confirmed by then-

FBI Director James B. Comey in testimony before the House Permanent Select Committee on

Intelligence on March 20, 2017," including "any links and/or coordination between the Russian

government and individuals associated with the campaign of President Donald Trump"; "any

matters that arose or may arise directly from the investigation"; and, "any other matters within

the scope of 28 C.F.R. § 600.4(a)."[36] Mr. Rosenstein also authorized Mr. Mueller "to prosecute

federal crimes arising from the investigation of these matters" where "it is necessary and

appropriate[.]"[37]

---

[33] Letter from Donald J. Trump, President of the United States, to James B. Comey, Dir., Fed.
Bureau of Investigation (May 9, 2017), https://www.gpo.gov/fdsys/pkg/DCPD-
201700325/pdf/DCPD-201700325.pdf.
[34] Adam Edelman, *Trump says He Didn't Fire Comey 'Because of Russia,' Contradicting Past
Statements*, NBC News (May 31, 2018), https://www.nbcnews.com/politics/donald-
trump/trump-says-he-didn-t-fire-comey-because-russia-contradicting-n878836.
[35] Ex. 1 ¶ (a).
[36] *Id.* ¶ (b).
[37] *Id.* ¶ (c).

8

27.    Over the course of Mr. Mueller's investigation, the Special Counsel brought criminal

charges against 34 individuals and three organizations,[38] including:

- Former National Security Adviser Michael Flynn, who pleaded guilty to making false

  statements to the FBI;[39]

- Former Trump campaign manager Paul Manafort, who was convicted of multiple

  counts of tax fraud and bank fraud[40] and pleaded guilty to conspiracy against the

  United States and other charges;[41]

- Former Trump deputy campaign manager Rick Gates, who pleaded guilty to

  conspiracy against the United States and making a false statement to the FBI;[42]

- Former Trump campaign foreign policy adviser George Papadopolous, who pleaded

  guilty to making false statements to the FBI;[43]

- Former Trump personal attorney Michael Cohen, who pleaded guilty to making false

  statements to Congress;[44]

---

[38] U.S. Dep't of Justice, *Special Counsel's Office* (Jan. 25, 2019), https://www.justice.gov/sco.
[39] Plea Agreement, *United States v. Flynn*, No. 17-232 (D.D.C. Dec. 1, 2017),
https://www.justice.gov/file/1015121/download.
[40] U.S. Dep't of Justice, *supra* note 38 ("On Aug. 21, 2018, a federal jury found Manafort guilty
on eight counts: counts 1-5, subscribing to a false individual income tax return for tax years
2010-2014; count 12, failure to file reports of foreign bank and financial accounts for year 2012;
count 25, bank fraud; and count 27, bank fraud.").
[41] Plea Agreement, *United States v. Manafort*, No. 17-201 (D.D.C. Sep. 14, 2018),
https://www.justice.gov/file/1094151/download.
[42] Plea Agreement, *United States v. Gates*, No. 17-201 (D.D.C. Feb. 23, 2018),
https://www.justice.gov/file/1038801/download.
[43] Plea Agreement, *United States v. Papadopolous*, No. 17-182 (D.D.C. Oct. 5, 2017),
https://www.justice.gov/file/1007341/download.
[44] Plea Agreement, *United States v. Cohen*, No. 18-850 (S.D.N.Y. Nov. 29, 2018)

- Former Trump campaign advisor Roger Stone, who was indicted on charges of obstruction of justice, making false statements to Congress, and witness tampering;[45]

- The Internet Research Agency, Concord Management and Consulting LLC, Concord Catering, and thirteen Russian nationals, who are charged with conspiracy against the United States and related offenses for flooding social media platforms with fraudulent content to interfere with U.S. political processes;[46] and

- Twelve other Russian nationals, who are charged with conspiracy to commit computer crimes and other offenses for hacking Democratic Party computer networks and email accounts linked to the Clinton campaign.[47]

28.     On November 7, 2018, Attorney General Sessions resigned from office.[48] President Trump designated Matthew G. Whitaker, Chief of Staff to the Attorney General, to serve as Acting Attorney General.[49] Although Mr. Whitaker had been a prominent critic of Mr. Mueller's probe prior to assuming office,[50] Whitaker "decided not to recuse himself from the Special Counsel investigation."[51]

---

[45] Indictment, *United States v. Stone*, No. 19-18 (D.D.C. Jan. 24, 2019), https://www.justice.gov/file/1124706/download.

[46] Indictment, *United States v. Internet Research Agency LLC*, No. 18-32 (D.D.C. Feb. 16, 2018), https://www.justice.gov/file/1035477/download.

[47] Indictment, *United States v. Netyksho*, No. 18-215 (D.D.C. July 13, 2018), https://www.justice.gov/file/1080281/download.

[48] Letter from Jefferson B. Sessions III, Att'y Gen., to Donald J. Trump, President (Nov. 7, 2018), *available at* https://int.nyt.com/data/documenthelper/475-jeff-sessions-letter-offering/optimized/full.pdf.

[49] Memorandum from Steven A. Engel, Asst. Att'y Gen., to Emmet T. Flood, Counsel to the President at 1 (Nov. 14, 2018), https://www.justice.gov/olc/page/file/1110881/download.

[50] Adam Goldman & Edward Wong, *Trump Installs a Critic of the Mueller Investigation to Oversee It*, N.Y. Times (Nov. 7, 2018), https://www.nytimes.com/2018/11/07/us/politics/whitaker-mueller-trump.html.

[51] Letter from Stephen E. Boyd, Asst. Att'y Gen., to Sen. Mitch McConnell & Sen. Charles E. Schumer at 2 (Dec. 20, 2018), *available at* https://int.nyt.com/data/documenthelper/551-senate-letter-re-acting-ag-eth/2ae5d0739b6be8f2ec12/optimized/full.pdf.

29.     In December 2018, President Trump nominated former Attorney General William P. Barr

to serve again as Attorney General. Six months earlier, Mr. Barr had sent a memo to senior DOJ

officials in which Barr strongly criticized the direction of the Special Counsel investigation and

stated that Mr. Mueller's "obstruction theory" concerning President Trump's firing of Director

Comey "should be rejected[.]" Mr. Barr was confirmed by the Senate as Attorney General on

February 14, 2019.[52]

<u>The Mueller Report(s)</u>

30.     According to President Trump,[53] Attorney General Barr,[54] members of President Trump's

legal team,[55] and multiple major news organizations,[56] Mr. Mueller is expected to produce, or

---

[52] *Roll Call Vote 116th Congress - 1st Session*, U.S. Senate (Feb. 14, 2019),
https://www.senate.gov/legislative/LIS/roll_call_lists/roll_call_vote_cfm.cfm?congress=116&se
ssion=1&vote=00024.
[53] Brian Naylor, *Trump Backs Public Release Of Mueller Report*, NPR (Mar. 20, 2019),
https://www.npr.org/2019/03/20/705162788/trump-backs-public-release-of-mueller-report.
[54] Responses from William P. Barr, Nominee to be U.S. Att'y Gen, to Questions from Sen. Chris
Coons at 154–55 (Jan. 2019), https://www.judiciary.senate.gov/imo/media/doc/Barr%20
Responses%20to%20Coons%20QFRs1.pdf.
[55] *E.g.*, Memorandum from John M. Dowd, Att'y for President Trump, to Robert S. Mueller,
Special Counsel (Jan. 29, 2018), reprinted in *The Trump Lawyers' Confidential Memo to
Mueller, Explained*, N.Y. Times (June 2, 2018), https://www.nytimes.com/interactive/2018/06/
02/us/politics/trump-legaldocuments.html ("It is our understanding that the reason behind the
request for the interview is to allow the Special Counsel's office to complete its report."); Rudy
Giuliani, @RudyGiuliani, Twitter (Aug. 15, 2018, 9:58 AM), https://twitter.com/RudyGiuliani/
status/1029728984446193664 ("DOJ should require Mueller to submit his report before
September 7.").
[56] *E.g.*, Devlin Barrett, Josh Dawsey, & Matt Zapotosky, *Justice Department preparing for
Mueller report in coming days*, Wash. Post (Feb. 20, 2019), https://www.washingtonpost.com/
world/national-security/justice-department-preparing-for-mueller-report-in-coming-
days/2019/02/20/c472691c-354b-11e9-af5b-b51b7ff322e9_story.html ("Justice Department
officials . . . believe a confidential report could be issued in coming days, according to people
familiar with the discussions."); Katie Benner, *Mueller Report Expected to Go to Justice
Department Within Weeks*, N.Y. Times (Feb. 21, 2019), https://www.nytimes.com/
2019/02/21/us/politics/mueller-report-ending.html ("The new attorney general, William P. Barr,
is preparing for the special counsel to deliver a report in coming weeks on the results of the
investigation into Russian interference in the 2016 election[.]"); Sadie Gurman & Aruna
Viswanatha, *Where the Mueller Report Stands—and What Could Happen Next*, Wall Street J.

has already completed, one or more reports detailing the Special Counsel's findings and

decisions (the "Mueller Report(s)").

31.     The precise number, character, and scope of the Mueller Report(s) are not publicly

known,[57] but one such document is the Special Counsel's final report to the Attorney General

required by 28 C.F.R. § 600.8(c).[58] Section 600.8(c) states:

> ✓ **(c) Closing documentation.** At the conclusion of the Special Counsel's work, he
> or she shall provide the Attorney General with a confidential report explaining the
> prosecution or declination decisions reached by the Special Counsel.

32.     On March 22, 2019, major news organizations reported that Mr. Mueller had transmitted

the Special Counsel's final report under section 600.8(c) to Attorney General Barr.[59] That report

has not yet been made public.

---

(Feb. 22, 2019), https://www.wsj.com/articles/final-mueller-report-not-expected-next-week-justice-department-official-says-11550874759 ("Mr. Mueller is widely believed to be in the final stages of his sprawling investigation and is expected to deliver his report to Attorney General William Barr in the coming weeks.").

[57] *See, e.g.*, Charlie Savage, *Legal Experts Urge Release of Watergate Report to Offer Mueller a Road Map*, N.Y. Times (Sep. 14, 2018), https://www.nytimes.com/2018/09/14/us/politics/mueller-report-grand-jurywatergate.html ("The leading theory is that Mr. Mueller will write a report for his supervisor at the Justice Department. . . . But there is historical precedent for another model. Echoing a move by the Watergate prosecutor in March 1974, the grand jury with which Mr. Mueller has been working could try to send a report about the evidence it has gathered directly to the House Judiciary Committee."); Michael S. Schmidt & Maggie Haberman, *Mueller Examining Trump's Tweets in Wide-Ranging Obstruction Inquiry*, N.Y. Times (July 26, 2018), https://www.nytimes.com/2018/07/26/us/politics/trump-tweets-mueller-obstruction.html ("If Mr. Mueller does not plan to make a case in court, a report of his findings could be sent to Congress, leaving it to lawmakers to decide whether to begin impeachment proceedings.").

[58] *See* Ex. 1 ¶ (d) ("Sections 600.4 through 600.10 of Title 28 of the Code of Federal Regulations are applicable to the Special Counsel.").

[59] Sharon LaFraniere & Katie Benner, *Mueller Delivers Report on Russia Investigation to Attorney General*, N.Y. Times (Mar. 22, 2019), https://www.nytimes.com/2019/03/22/us/politics/mueller-report-release.html; Devlin Barrett & Matt Zapotosky, *Mueller report sent to attorney general, signaling his Russia investigation has ended*, Wash. Post (Mar. 22, 2019), https://www.washingtonpost.com/world/national-security/mueller-report-sent-to-attorney-general-signaling-his-russia-investigation-has-ended/2019/03/22/b061d8fa-323e-11e9-813a-0ab2f17e305b_story.html.

Case 1:19-cv-00810   Document 1   Filed 03/22/19   Page 13 of 23

33.     One of the Mueller Report(s)—possibly the Special Counsel's final report under section

600.8(c)—is said to address allegations that President Trump obstructed justice by attempting to

block a criminal probe into Russian election interference.[60]

34.     There are several legal authorities under which the Special Counsel or Attorney General

may issue a report or otherwise disclose information concerning the Special Counsel's

investigation.

35.     First, as noted, the Special Counsel is required to provide the Attorney General with a

report at the conclusion of the investigation under 28 C.F.R. § 600.8(c).[61]

36.     Second, under 28 C.F.R. § 600.8(a)(2), the Special Counsel is required to provide annual

status reports to the Attorney General:

> **(2)** Thereafter, 90 days before the beginning of each fiscal year, the Special Counsel
> shall report to the Attorney General the status of the investigation, and provide a
> budget request for the following year. The Attorney General shall determine
> whether the investigation should continue and, if so, establish the budget for the
> next year.[62]

37.     Third, under 28 C.F.R. § 600.7(b), the Attorney General may request an explanation for

any investigative or prosecutorial step taken by the Special Counsel:

> **(b)** The Special Counsel shall not be subject to the day-to-day supervision of any
> official of the Department. However, the Attorney General may request that the
> Special Counsel provide an explanation for any investigative or prosecutorial step,
> and may after review conclude that the action is so inappropriate or unwarranted
> under established Departmental practices that it should not be pursued. In
> conducting that review, the Attorney General will give great weight to the views of

---

[60] Carol D. Leonnig & Robert Costa, *Mueller Told Trump's Attorneys the President Remains Under Investigation But is Not Currently a Criminal Target*, Wash. Post (Apr. 3, 2018), https://www.washingtonpost.com/politics/mueller-told-trumps-attorneys-the-president-remains-underinvestigation-but-is-not-currently-a-criminal-target/2018/04/03/d7832cf0-36c1-11e8-acd5-35eac230e514_story.html ("The special counsel also told Trump's lawyers that he is preparing a report about the president's actions while in office and potential obstruction of justice, according to two people with knowledge of the conversations.").
[61] Ex. 1 ¶ (d) ("Sections 600.4 through 600.10 of Title 28 of the Code of Federal Regulations are applicable to the Special Counsel.").
[62] 28 C.F.R. § 600.8(a)(2).

the Special Counsel. If the Attorney General concludes that a proposed action by a Special Counsel should not be pursued, the Attorney General shall notify Congress as specified in § 600.9(a)(3).[63]

38.     Fourth, under 28 C.F.R. § 600.9(a), the Attorney General is required to notify certain members of Congress of key developments in the Special Counsel's investigation:

> **(a)** The Attorney General will notify the Chairman and Ranking Minority Member of the Judiciary Committees of each House of Congress, with an explanation for each action —
>
> > **(1)** Upon appointing a Special Counsel;
> >
> > **(2)** Upon removing any Special Counsel; and
> >
> > **(3)** Upon conclusion of the Special Counsels investigation, including, to the extent consistent with applicable law, a description and explanation of instances (if any) in which the Attorney General concluded that a proposed action by a Special Counsel was so inappropriate or unwarranted under established Departmental practices that it should not be pursued.[64]

39.     Fifth, under 28 C.F.R. § 600.4(c), the Special Counsel may take "necessary action" to pursue penalties "outside the criminal justice system" in consultation with the Attorney General:

> **(c) Civil and administrative jurisdiction.** If in the course of his or her investigation the Special Counsel determines that administrative remedies, civil sanctions or other governmental action outside the criminal justice system might be appropriate, he or she shall consult with the Attorney General with respect to the appropriate component to take any necessary action. A Special Counsel shall not have civil or administrative authority unless specifically granted such jurisdiction by the Attorney General.[65]

40.     Sixth, the Special Counsel may use its "full power and independent authority to exercise all investigative and prosecutorial functions of any United States Attorney"[66] to transmit "report[s]," "recommendation[s]," or other "compilation[s] of information" to Congress via the

---

[63] 28 C.F.R. § 600.7(b).
[64] 28 C.F.R. § 600.9(a).
[65] 28 C.F.R. § 600.4(c).
[66] 28 C.F.R. § 600.6.

grand jury process.[67] This procedure was used by Special Counsel Leon Jaworski in 1974 to

convey "material in the Grand Jury's possession having a material bearing on matters within the

primary jurisdiction of the United States House of Representatives Committee on the Judiciary

relating to questions of impeachment."[68]

41.     Finally, the Special Counsel and/or Attorney General may rely on their powers under 28

C.F.R. § 600.1 *et seq.* (and on other legal authorities) to disclose developments, evidence,

findings, decisions, actions, or planned actions from the Special Counsel's investigation.

## EPIC's FOIA Request

42.     On November 5, 2018, EPIC submitted a FOIA Request via fax to the DOJ's Office of

Information Policy.[69]

43.     EPIC, in its FOIA Request, sought fourteen categories of records related to the Special

Counsel's investigation into Russian interference in the 2016 U.S. presidential election:

> (1)(a)   All "report[s]" and "closing documentation" prepared under 28 C.F.R. §
> 600.8(c), whether or not such records were actually provided to the
> Attorney General or Acting Attorney General;
>
> (b)   All drafts, outlines, exhibits, and supporting materials associated with
> any actual or planned "report" or "closing documentation" under 28
> C.F.R. § 600.8(c);

---

[67] *In re Report & Recommendation of June 5, 1972 Grand Jury Concerning Transmission of
Evidence to House of Representatives*, 370 F. Supp. 1219, 1221, 1226 (D.D.C. 1974), *aff'd sub
nom. Haldeman v. Sirica*, 501 F.2d 714 (D.C. Cir. 1974).
[68] Report & Recommendation at 1, *In re Report & Recommendation*, 370 F. Supp. at 1221, 1226
(D.D.C. 1974) (capitalization altered), *available at* https://www.archives.gov/files/
research/investigations/watergate/roadmap/docid-70105890.pdf; *see also* 105 Cong. Rec. H9,670
(daily ed. Oct. 6, 1998) (statement of Rep. Jackson-Lee) ("[I]t will be recalled the Watergate
special prosecution force did not send to Congress an argumentative or inflammatory document,
but rather a simple road map which merely summarized and identified the location of relevant
evidence.").
[69] Ex. 2, FOIA Request from EPIC to Douglas Hibbard, Chief, Initial Request Staff, Office of
Info. Policy, Dep't of Justice (Nov. 5, 2018).

Case 1:19-cv-00810   Document 1   Filed 03/22/19   Page 20 of 28

(2)(a)    All "report[s]" concerning "the status of the investigation" prepared under 28 C.F.R. § 600.8(a)(2), whether or not such records were actually provided to the Attorney General or Acting Attorney General;

(b)    All drafts, outlines, exhibits, and supporting materials associated with any actual or planned "report" concerning "the status of the investigation" under 28 C.F.R. § 600.8(a)(2);

(3)(a)    All records "expla[ining] . . . any investigative or prosecutorial step" under 28 C.F.R. § 600.7(b), whether or not such records were actually provided to the Attorney General or Acting Attorney General;

(b)    All drafts, outlines, exhibits, and supporting materials associated with any actual or planned "explanation for any investigative or prosecutorial step" under 28 C.F.R. § 600.7(b);

(4)(a)    All records prepared under 28 C.F.R. § 600.9(a) to "notify the Chairman and Ranking Minority Member of the Judiciary Committees of each House of Congress" of a development in the Special Counsel investigation, whether or not such records were actually transmitted to any member of Congress;

(b)    All drafts, outlines, exhibits, and supporting materials associated with any actual or planned notification under 28 C.F.R. § 600.9(a);

(5)(a)    All referrals by the Special Counsel, Attorney General, or Acting Attorney General for "administrative remedies, civil sanctions or other governmental action outside the criminal justice system" under 28 C.F.R. § 600.4(c), whether or not such records were actually transmitted to any party outside of the Special Counsel's Office;

(b)    All drafts, outlines, exhibits, and supporting materials associated with any actual or planned referral for "administrative remedies, civil sanctions or other governmental action outside the criminal justice system" under 28 C.F.R. § 600.4(c);

(6)(a)    All "report[s]," "recommendation[s]," and other "compilation[s] of information" prepared for the eventual consideration of one or more members of Congress,[70] whether or not such records were actually transmitted to any party outside of the Special Counsel's Office;

(b)    All drafts, outlines, exhibits, and supporting materials associated with any actual or planned report, recommendation, or compilation of the type described in Category (6)(a) of this request;

---

[70] *In re Report & Recommendation*, 370 F. Supp. at 1221, 1226.

16

(7)(a)     All other reports summarizing or describing, for one or more persons outside of the Special Counsel's Office, (i) any of the Special Counsel's evidence, findings, decisions, actions, or planned actions, or (ii) any developments in the Special Counsel investigation; and

(b)     All drafts, outlines, exhibits, and supporting materials associated with any actual or planned report of the type described in Category (7)(a) of this request.[71]

44.     EPIC excluded from its FOIA Request records "which have already been disclosed to the public in their complete and unredacted form (i) in the course of an open judicial proceeding; (ii) available at https://www.justice.gov/sco; or (iii) available at https://www.justice.gov/news."[72]

45.     EPIC sought expedited processing of its FOIA Request and demonstrated that the request qualifies for expedition under two separate provisions of the DOJ's FOIA regulations.[73]

46.     First, EPIC explained that it is entitled to expedition of its FOIA Request under 28 C.F.R. § 16.5(e)(1)(ii) because "there is an 'urgency to inform the public about an actual or alleged federal government activity" and because EPIC "is primarily engaged in disseminating information."[74]

47.     As EPIC stated in its FOIA Request, the requested records pertain to "the Special Counsel's investigation of Russian interference in the 2016 U.S. presidential election"; "the U.S. government's response to Russian election interference"; and "President Trump's alleged obstruction of justice while in office."[75] EPIC cited the "voluminous press coverage of, and immense public interest in" these government activities,[76] noting that "Americans are deeply

---

[71] Ex. 2 at 1–3.
[72] *Id.* at 3.
[73] *Id.* at 11–12.
[74] *Id.* at 11 (quoting 28 C.F.R. § 16.5(e)(1)(ii)).
[75] *Id.*
[76] *Id.* (citing *Robert Mueller — F.B.I. Director*, N.Y. Times (Nov. 1, 2018), https://www.nytimes .com/topic/person/robert-mueller-mdash-fbi-director (listing over 570 articles concerning Robert

concerned about the scope of Russian interference in the 2016 presidential election; the U.S.

government's response to that interference; the involvement of particular individuals in that

interference, including possibly President Trump; the susceptibility of U.S. election systems and

democratic institutions to future foreign interference; and the integrity of the Special Counsel

investigation itself."[77]

48.    EPIC also stated that it is "an organization 'primarily engaged in disseminating

information'"[78]—and is thereby entitled to expedited processing of its FOIA Request—because

EPIC qualifies as "'a representative of the news media.'"[79]

49.    Second, EPIC explained that it is entitled to expedition of its FOIA Request under 28

C.F.R. § 16.5(e)(1)(iv) because "EPIC's request involves '[a] matter of widespread and

exceptional media interest in which there exist possible questions about the government's

integrity that affect public confidence.'"[80]

50.    As EPIC stated in its FOIA Request, "In addition to the extraordinary media attention

given to the work of the Special Counsel, the requested records concern the potential

involvement of the President in a foreign campaign to influence an election that he won; the

possible obstruction of justice by the President while in office; the federal government's capacity

---

Mueller since his appointment as Special Counsel on May 17, 2017); Morning Consult &
Politico, *National Tracking Poll* (Oct. 30, 2018), https://www.politico.com/f/?id=00000166-
cb61-d184-ad67-ff67dddd0000 (finding that over 66% of respondents were aware of, and had
developed an opinion on, Special Counsel Mueller); *Robert Mueller*, Google Trends (Nov. 2,
2018), https://trends.google.com/trends/explore?date=today%205-y&geo=US&q=
Robert%20Mueller (showing a more than 100-fold increase in U.S. Google searches for Robert
Mueller following his appointment as Special Counsel)).
[77] *Id.* at 12.
[78] *Id.* (quoting 28 C.F.R. § 16.5(e)(1)(ii)).
[79] *Id.* (quoting *EPIC*, 241 F. Supp. 2d at 11).
[80] *Id.* (quoting 28 C.F.R. § 16.5(e)(1)(iv)).

18

to defend U.S. election systems and democratic institutions against foreign attacks; and the discharge of a high-profile Special Counsel investigation."[81]

51.     Finally, EPIC explained that it is "entitled to receive the requested record[s] with only duplication fees assessed"[82] because EPIC is "a representative of the news media."[83] EPIC explained that "'any duplication fees should also be waived because disclosure of the requested information . . . 'is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester.'"[84] EPIC described in detail how its FOIA Request satisfies the DOJ's three-factor test for a waiver of duplication fees.[85]

<u>The DOJ's Failure to Release the Requested Records</u>

52.     By letter dated November 15, 2018, the DOJ's Office of Information Policy acknowledged receipt of EPIC's FOIA Request "on behalf of the Special Counsel's Office."[86]

53.     In the letter, the DOJ admitted that it had "not yet completed a search to determine whether there are records within the scope of [EPIC's] request."[87]

54.     The DOJ claimed that EPIC's request presented "unusual circumstances" under 5 U.S.C. § 552(a)(6)(B), a provision which (if applicable) gives an agency no more than 10 additional working days to make a determination on a FOIA request.

---

[81] *Id.* (citing *Search Results: "Robert Mueller" and "Russia"*, Google News (Nov. 2, 2018), https://www.google.com/search?tbm=nws&q=%22Robert+Mueller%22+and+%22Russia%22 (identifying 941,000 news results containing both "Robert Mueller" and "Russia"); Shane & Mazzetti, *supra* note 27).
[82] Ex. 2 at 13 (citing 5 U.S.C. § 552(a)(4)(A)(ii)(II)).
[83] *EPIC*, 241 F. Supp. 2d at 11.
[84] Ex. 2 at 13 (quoting 28 C.F.R. § 16.10(k)(1)); *see also* § 552(a)(4)(A)(iii).
[85] *Id.*
[86] Ex. 3, Letter from Vanessa R. Brinkmann, Senior Counsel, Office of Info. Policy, Dep't of Justice, to Enid Zhou, EPIC Open Government Counsel 1 (Nov. 15, 2018).
[87] *Id.* at 1.

55.     The DOJ also stated that it was denying EPIC's request for expedited processing under

both 28 C.F.R. § 16.5(e)(1)(ii) and 28 C.F.R. § 16.5(e)(1)(iv).[88]

56.     Despite overwhelming public interest in the immediate disclosure of the requested

records—as set forth in EPIC's FOIA Request[89]—the DOJ claimed that it could not "identify a

particular urgency to inform the public about an actual or alleged federal government activity

[under 28 C.F.R. § 16.5(e)(1)(ii)] beyond the public's right to know about government activities

generally."[90]

57.     The DOJ also stated that the DOJ's Director of Public Affairs "has determined that

[EPIC's] request for expedited processing [under 28 C.F.R. § 16.5(e)(1)(iv)] should be denied."

The DOJ identified no basis for the Director's decision.

58.     Today—March 22, 2019—is the 92nd working day since the DOJ received EPIC's FOIA

request.

59.     The DOJ has failed to make a determination regarding EPIC's FOIA request within the

time period allowed by 5 U.S.C. §§ 552(a)(6)(A)(i) and (B)(i).

60.      The DOJ's failure to make a determination on EPIC's FOIA request within the

applicable time limits is a violation of the FOIA.

61.     On December 21, 2018, EPIC submitted a FOIA Appeal to the Director of the Office of

Information Policy concerning the DOJ's denial of expedited processing.[91] EPIC reiterated the

grounds for expedition set forth in EPIC's original FOIA request.[92]

---

[88] *Id.*

[89] Ex. 2 at 11–12.

[90] Ex. 3 at 1.

[91] Ex. 4, FOIA Appeal from EPIC to Director, Office of Info. Policy, Dep't of Justice (Dec. 21, 2018).

[92] *Id.* at 4–7.

62.     Today—March 22, 2019—is approximately the 59th working day since the DOJ received EPIC's FOIA Appeal concerning the agency's denial of expedited processing.

63.     The DOJ has failed to make a determination regarding EPIC's FOIA Appeal within the time period allowed by 5 U.S.C. §§ 552(a)(6)(A)(ii) and (E)(ii)(II).

64.     The DOJ's failure to make a determination on EPIC's FOIA Appeal within the applicable time limits is a violation of the FOIA.

65.     Accordingly, EPIC has constructively exhausted all administrative remedies under 5 U.S.C. § 552(a)(6)(C)(i).

### Count I

### Violation of the FOIA: Failure to Comply with Statutory Deadlines

66.     Plaintiff asserts and incorporates by reference paragraphs 1–65.

67.     Defendant DOJ, by failing to make a determination regarding EPIC's request for 92 working days, has violated the deadlines set forth in 5 U.S.C. § 552(a)(6)(A)(i) and 5 U.S.C. § 552(a)(6)(B)(i).

68.     Defendant DOJ, by failing to make a determination on EPIC's FOIA Appeal for approximately 59 working days, has violated the deadlines set forth in 5 U.S.C. § 552(a)(6)(A)(ii) and 5 U.S.C. § 552(a)(6)(E)(ii)(II).

69.     Plaintiff has constructively exhausted all applicable administrative remedies with respect to EPIC's FOIA Request and FOIA Appeal under 5 U.S.C. § 552(a)(6)(C)(i).

70.     Plaintiff is entitled to injunctive relief with respect to the processing of EPIC's FOIA request and FOIA Appeal and the disclosure of the requested records.

21

### Count II

#### Violation of the FOIA: Unlawful Denial of Expedited Processing

71.     Plaintiff asserts and incorporates by reference paragraphs 1–65.

72.     Defendant DOJ has wrongfully denied expedited processing of EPIC's FOIA Request in violation of 5 U.S.C. § 552(a)(6)(E).

73.     Defendant DOJ has wrongfully failed to make a determination on EPIC's FOIA Appeal from the DOJ's denial of expedited processing in violation of 5 U.S.C. § 552(a)(6)(E)(ii)(II) and 5 U.S.C. § 552(a)(6)(A)(ii).

74.     Plaintiff has constructively exhausted applicable administrative remedies with respect to expedited processing of EPIC's FOIA Request under 5 U.S.C. § 552(a)(6)(C)(i).

75.     Plaintiff is entitled to injunctive relief requiring expedited processing of EPIC's FOIA Request.

### Count III

#### Violation of the FOIA: Unlawful Withholding of Agency Records

76.     Plaintiff asserts and incorporates by reference paragraphs 1–65.

77.     Defendant DOJ has wrongfully withheld agency records requested by EPIC.

78.     Plaintiff has constructively exhausted applicable administrative remedies with respect to EPIC's FOIA Request under 5 U.S.C. § 552(a)(6)(C)(i).

79.     Plaintiff is entitled to injunctive relief with respect to the release and disclosure of the requested records.

### Requested Relief

WHEREFORE, Plaintiff requests that this Court:

    A.  Order the DOJ to process EPIC's FOIA request on an expedited basis;

22

B.  Order the DOJ to immediately conduct a search for all records responsive to EPIC's

   FOIA request;

C.  Order the DOJ to disclose all nonexempt records responsive to EPIC's FOIA request;

D.  Award EPIC costs and reasonable attorney's fees incurred in this action; and

E.  Grant such other relief as the Court may deem just and proper.


                            Respectfully Submitted,

                            MARC ROTENBERG, D.C. Bar #422825
                            EPIC President and Executive Director

                            ALAN BUTLER, D.C. Bar #1012128
                            EPIC Senior Counsel

                            /s/ John Davisson
                            JOHN DAVISSON, D.C. Bar #1531914
                            EPIC Counsel
                            davisson@epic.org

                            ELECTRONIC PRIVACY
                            INFORMATION CENTER
                            1718 Connecticut Avenue, N.W.
                            Suite 200
                            Washington, D.C. 20009
                            (202) 483-1140 (telephone)
                            (202) 483-1248 (facsimile)

                            *Attorneys for Plaintiff EPIC*


Dated: March 22, 2019



                            23

# ATTACHMENT

## EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 19-cv-810 (RBW) |
| UNITED STATES DEPARTMENT OF JUSTICE, | ) ) ) | |
| Defendant. | ) ) | |
| | ) | |
| JASON LEOPOLD, BUZZFEED, INC., | ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 19-cv-957 (RBW) |
| UNITED STATES DEPARTMENT OF JUSTICE, et al. | ) ) ) | |
| Defendants. | ) ) | |

## ANSWER TO PLAINTIFF ELECTRONIC PRIVACY INFORMATION CENTER'S COMPLAINT

Defendant, the U.S. Department of Justice ("DOJ"), by and through undersigned counsel,

hereby answers the Complaint (ECF No. 1) ("Complaint") filed by Plaintiff Electronic Privacy

Information Center ("EPIC" or "Plaintiff") on March 22, 2019, as follows, in correspondingly

numbered paragraphs:

1.      This paragraph sets forth Plaintiff's characterization of this action, to which no

response is required.

2.      This paragraph sets forth Plaintiff's characterization of this action, to which no response is required.

3.      The allegations in this paragraph do not set forth a claim for relief or aver facts in support of a claim to which a response is required.  Furthermore, the allegations in this paragraph purport to characterize an article from CNN, which speaks for itself.

4.      The allegations in this paragraph do not set forth a claim for relief or aver facts in support of a claim to which a response is required.

5.      This paragraph consists of Plaintiff's legal conclusions regarding jurisdiction, to which no response is required.

6.      This paragraph consists of Plaintiff's legal conclusions regarding venue, to which no response is required.

7.      This paragraph consists of Plaintiff's characterization of itself and its work. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

8.      This paragraph consists of Plaintiff's characterization of itself and its work. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

9.      This paragraph consists of Plaintiff's characterization of itself and its work. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

10.     This paragraph consists of Plaintiff's characterization of itself and its work. Defendant lacks knowledge or information sufficient to form a belief about the truth of the

allegations in this paragraph. Furthermore, the allegations in this paragraph purport to characterize judicial opinions, which speak for themselves.

11.    Admitted.

12.    The allegations in this paragraph do not set forth a claim for relief or aver facts in support of a claim to which a response is required.

13.    The allegations in this paragraph do not set forth a claim for relief or aver facts in support of a claim to which a response is required. Furthermore, the allegations in this paragraph purport to characterize a document issued by the Office of the Director of National Intelligence, which speaks for itself.

14.    The allegations in this paragraph do not set forth a claim for relief or aver facts in support of a claim to which a response is required. Furthermore, the allegations in this paragraph purport to characterize a document issued by the Office of the Director of National Intelligence, which speaks for itself.

15.    The allegations in this paragraph do not set forth a claim for relief or aver facts in support of a claim to which a response is required. Furthermore, the allegations in this paragraph purport to characterize a document issued by the Office of the Director of National Intelligence, which speaks for itself.

16.    The allegations in this paragraph do not set forth a claim for relief or aver facts in support of a claim to which a response is required. Furthermore, the allegations in this paragraph purport to characterize a document issued by the Office of the Director of National Intelligence, a court filing, and a Congressional report, which speak for themselves.

17.    The allegations in this paragraph do not set forth a claim for relief or aver facts in support of a claim to which a response is required. Furthermore, the allegations in this paragraph

3

purport to characterize a document issued by the Office of the Director of National Intelligence, which speaks for itself.

18.     The allegations in this paragraph do not set forth a claim for relief or aver facts in support of a claim to which a response is required.  Furthermore, the allegations in this paragraph purport to characterize a document issued by the Office of the Director of National Intelligence, a court filing, and Congressional testimony, which speak for themselves.

19.     The allegations in this paragraph do not set forth a claim for relief or aver facts in support of a claim to which a response is required.  Furthermore, the allegations in this paragraph purport to characterize a Congressional report and articles from the New York Times and the Washington Post, which speak for themselves.

20.     The allegations in this paragraph do not set forth a claim for relief or aver facts in support of a claim to which a response is required.

21.     The allegations in this paragraph do not set forth a claim for relief or aver facts in support of a claim to which a response is required.  Furthermore, the allegations in this paragraph purport to characterize a press release, a regulation, and a statute, which speak for themselves.

22.     The allegations in this paragraph do not set forth a claim for relief or aver facts in support of a claim to which a response is required.  Furthermore, the allegations in this paragraph purport to characterize Congressional testimony, which speaks for itself.

23.     The allegations in this paragraph do not set forth a claim for relief or aver facts in support of a claim to which a response is required.  Furthermore, the allegations in this paragraph purport to characterize a letter from the President, which speaks for itself.

4

24.     The allegations in this paragraph do not set forth a claim for relief or aver facts in support of a claim to which a response is required.  Furthermore, the allegations in this paragraph purport to characterize an article by NBC News, which speaks for itself.

25.     The allegations in this paragraph do not set forth a claim for relief or aver facts in support of a claim to which a response is required.  Furthermore, the allegations in this paragraph purport to characterize Order No. 3915-2017 issued by the Office of the Deputy Attorney General, which speaks for itself.

26.     The allegations in this paragraph do not set forth a claim for relief or aver facts in support of a claim to which a response is required.  Furthermore, the allegations in this paragraph purport to characterize Order No. 3915-2017 issued by the Office of the Deputy Attorney General, which speaks for itself.

27.     The allegations in this paragraph do not set forth a claim for relief or aver facts in support of a claim to which a response is required.  Furthermore, the allegations in this paragraph purport to characterize a Department of Justice website, plea agreements, and indictments, which speak for themselves.

28.     The allegations in this paragraph do not set forth a claim for relief or aver facts in support of a claim to which a response is required.  Furthermore, the allegations in this paragraph purport to characterize a letter from Jefferson B. Sessions, III, a memorandum from Steven A. Engel, an article from the New York Times, and a letter from Stephen E. Boyd, which speak for themselves.

29.     The allegations in this paragraph do not set forth a claim for relief or aver facts in support of a claim to which a response is required.  Furthermore, the allegations in this paragraph purport to characterize a Congressional roll call vote, which speaks for itself.

30.    The allegations in this paragraph do not set forth a claim for relief or aver facts in support of a claim to which a response is required. Furthermore, the allegations in this paragraph purport to characterize "Responses from William P. Barr, Nominee to be U.S. Att'y General, to Questions from Sen. Chris Coons," a memorandum from John M. Dowd, a Twitter statement from @RudyGiuliani, and articles from NPR, the New York Times, the Washington Post, and the Wall Street Journal, which speak for themselves. Defendant avers that on March 22, 2019, the Attorney General wrote a letter to The Honorable Lindsey Graham, The Honorable Jerrold Nadler, The Honorable Dianne Feinstein, and The Honorable Doug Collins, in which he stated, "The Special Counsel has submitted to me today a 'confidential report explaining the prosecution or declination decisions' he has reached, as required by 28 C.F.R. § 600.8(c)." *See* Pl.'s Mot., Ex. 5, ECF No. 7-4.

31.    The allegations in this paragraph do not set forth a claim for relief or aver facts in support of a claim to which a response is required. This paragraph also sets forth Plaintiff's conclusions of law, to which no response is required. Furthermore, the allegations in this paragraph purport to characterize a regulation, Order No. 3915-2017 issued by the Office of the Deputy Attorney General, and articles from the New York Times, which speak for themselves.

32.    The allegations in this paragraph do not set forth a claim for relief or aver facts in support of a claim to which a response is required. Furthermore, the allegations in this paragraph purport to characterize articles from the New York Times and the Washington Post, which speak for themselves. Defendant avers that on March 22, 2019, the Attorney General wrote a letter to The Honorable Lindsey Graham, The Honorable Jerrold Nadler, The Honorable Dianne Feinstein, and The Honorable Doug Collins, in which he stated, "The Special Counsel has submitted to me

6

today a 'confidential report explaining the prosecution or declination decisions' he has reached, as

required by 28 C.F.R. § 600.8(c)." *See* Pl.'s Mot., Ex. 5, ECF No. 7-4. The last sentence is denied.

33.     The allegations in this paragraph do not set forth a claim for relief or aver facts in

support of a claim to which a response is required. Furthermore, the allegations in this paragraph

purport to characterize an article from the Washington Post, which speaks for itself.

34.     The allegations in this paragraph do not set forth a claim for relief or aver facts in

support of a claim to which a response is required. This paragraph also sets forth Plaintiff's

conclusions of law, to which no response is required.

35.     The allegations in this paragraph do not set forth a claim for relief or aver facts in

support of a claim to which a response is required. This paragraph also sets forth Plaintiff's

conclusions of law, to which no response is required. Furthermore, the allegations in this

paragraph purport to characterize Order No. 3915-2017 issued by the Office of the Deputy

Attorney General, which speaks for itself.

36.     The allegations in this paragraph do not set forth a claim for relief or aver facts in

support of a claim to which a response is required. This paragraph also sets forth Plaintiff's

conclusions of law, to which no response is required. Furthermore, the allegations in this

paragraph purport to characterize a regulation, which speaks for itself.

37.     The allegations in this paragraph do not set forth a claim for relief or aver facts in

support of a claim to which a response is required. This paragraph also sets forth Plaintiff's

conclusions of law, to which no response is required. Furthermore, the allegations in this

paragraph purport to characterize a regulation, which speaks for itself.

38.     The allegations in this paragraph do not set forth a claim for relief or aver facts in

support of a claim to which a response is required. This paragraph also sets forth Plaintiff's

conclusions of law, to which no response is required. Furthermore, the allegations in this paragraph purport to characterize a regulation, which speaks for itself.

39.     The allegations in this paragraph do not set forth a claim for relief or aver facts in support of a claim to which a response is required. This paragraph also sets forth Plaintiff's conclusions of law, to which no response is required. Furthermore, the allegations in this paragraph purport to characterize a regulation, which speaks for itself.

40.     The allegations in this paragraph do not set forth a claim for relief or aver facts in support of a claim to which a response is required. This paragraph also sets forth Plaintiff's conclusions of law, to which no response is required. Furthermore, the allegations in this paragraph purport to characterize a regulation, judicial opinion, and a statement in the Congressional Record, which speak for themselves.

41.     The allegations in this paragraph do not set forth a claim for relief or aver facts in support of a claim to which a response is required. This paragraph also sets forth Plaintiff's conclusions of law, to which no response is required. Furthermore, the allegations in this paragraph purport to characterize a regulation, which speaks for itself.

42.     Admitted.

43.     Admitted. Defendant respectfully refers the Court to the FOIA request dated November 5, 2018, for a full and accurate statement of its contents.

44.     Admitted. Defendant respectfully refers the Court to the FOIA request dated November 5, 2018, for a full and accurate statement of its contents.

45.     Admitted that "EPIC sought expedited processing of its FOIA request." The rest of the allegations in this paragraph are Plaintiff's characterization of its FOIA request, to which no response is required. To the extent a response is required, these allegations are denied. Defendant

8

respectfully refers the Court to the FOIA request dated November 5, 2018, for a full and accurate statement of its contents.

46.     Admitted that EPIC stated in its FOIA request that "there is an 'urgency to inform the public about an actual or alleged federal government activity,'" and that EPIC stated in its FOIA request that EPIC "is primarily engaged in disseminating information." The rest of the allegations in this paragraph are Plaintiff's characterization of its FOIA request, to which no response is required. To the extent a response is required, these allegations are denied. Defendant respectfully refers the Court to the FOIA request dated November 5, 2018, for a full and accurate statement of its contents.

47.·    Admitted that EPIC stated the quoted language in this paragraph in its FOIA request dated November 5, 2018.  The rest of the allegations in this paragraph are Plaintiff's characterization of its FOIA request, to which no response is required. To the extent a response is required, these allegations are denied. Defendant respectfully refers the Court to the FOIA request dated November 5, 2018, for a full and accurate statement of its contents.

48.     Admitted that EPIC stated the quoted language in this paragraph in its FOIA request dated November 5, 2018.  The rest of the allegations in this paragraph are Plaintiff's characterization of its FOIA request, to which no response is required. To the extent a response is required, these allegations are denied. Defendant respectfully refers the Court to the FOIA request dated November 5, 2018, for a full and accurate statement of its contents.

49.     Admitted that EPIC stated the quoted language in this paragraph in its FOIA request dated November 5, 2018.  The rest of the allegations in this paragraph are Plaintiff's characterization of its FOIA request, to which no response is required. To the extent a response is

9

required, these allegations are denied. Defendant respectfully refers the Court to the FOIA request

dated November 5, 2018, for a full and accurate statement of its contents.

  50. Admitted that EPIC stated the quoted language in this paragraph in its FOIA request

dated November 5, 2018. The rest of the allegations in this paragraph are Plaintiff's

characterization of its FOIA request, to which no response is required. To the extent a response is

required, these allegations are denied. Defendant respectfully refers the Court to the FOIA request

dated November 5, 2018, for a full and accurate statement of its contents.

  51. Admitted that EPIC stated the quoted language in this paragraph in its FOIA request

dated November 5, 2018. The rest of the allegations in this paragraph are Plaintiff's

characterization of its FOIA request, to which no response is required. To the extent a response is

required, these allegations are denied. Defendant respectfully refers the Court to the FOIA request

dated November 5, 2018, for a full and accurate statement of its contents.

  52. Admitted. Defendant respectfully refers the Court to the letter from DOJ's Office

of Information Policy ("OIP") dated November 15, 2018, for a full and accurate statement of its

contents.

  53. Admitted that in the letter dated November 15, 2018, OIP stated, "We have not yet

completed a search to determine whether there are records within the scope of your request." The

rest of the allegations in this paragraph are Plaintiff's characterization of OIP's letter, to which no

response is required. To the extent a response is required, these allegations are denied. Defendant

respectfully refers the Court to the letter from OIP dated November 15, 2018, for a full and accurate

statement of its contents.

  54. Admitted that in the letter dated November 15, 2018, OIP stated, "The records you

seek require a search in and/or consultation with another Office, and so your request falls within

'unusual circumstances.' See 5 U.S.C. 552 § (a)(6)(B)(i)-(iii) (2012 & Supp. V. 2017). Because of these unusual circumstances, we need to extend the time limit to respond to your request beyond the ten additional days provided by the statute." The rest of the allegations in this paragraph are Plaintiff's characterization of OIP's letter, to which no response is required. To the extent a response is required, these allegations are denied. This paragraph also sets forth Plaintiff's conclusions of law, to which no response is required. Defendant respectfully refers the Court to the letter from OIP dated November 15, 2018, for a full and accurate statement of its contents.

55.    Admitted. Defendant respectfully refers the Court to the letter from OIP dated November 15, 2018, for a full and accurate statement of its contents.

56.    Admitted that in the letter dated November 15, 2018, OIP stated, "This Office cannot identify a particular urgency to inform the public about an actual or alleged federal government activity beyond the public's right to know about government activities generally." The rest of the allegations in this paragraph are Plaintiff's characterization of the FOIA request and OIP's letter, to which no response is required. To the extent a response is required, these allegations are denied. Defendant respectfully refers the Court to the FOIA request dated November 5, 2018, and the letter from OIP dated November 15, 2018, for a full and accurate statement of their contents.

57.    Admitted that in the letter dated November 15, 2018, OIP stated, "Please be advised the Director has determined that your request for expedited processing should be denied." The rest of the allegations in this paragraph are Plaintiff's characterization of OIP's letter, to which no response is required. To the extent a response is required, these allegations are denied. Defendant respectfully refers the Court to the letter from OIP dated November 15, 2018, for a full and accurate statement of its contents.

11

58.     Admitted that the FOIA request at issue in this case was received on November 5, 2018.

59.     This paragraph sets forth Plaintiff's conclusions of law, to which no response is required.

60.     This paragraph sets forth Plaintiff's conclusions of law, to which no response is required.

61.     Admitted that EPIC submitted a FOIA Appeal to the Director of OIP on December 21, 2018, concerning the DOJ's denial of expedited processing.  Defendant respectfully refers the Court to the FOIA Appeal dated December 21, 2018, for a full and accurate statement of its contents.

62.     Admitted that the FOIA Appeal in this case was received on December 21, 2018.

63.     This paragraph sets forth Plaintiff's conclusions of law, to which no response is required.

64.     This paragraph sets forth Plaintiff's conclusions of law, to which no response is required.

65.     This paragraph sets forth Plaintiff's conclusions of law, to which no response is required.

66.     Defendant incorporates by reference its answers to all of the preceding paragraphs.

67.     This paragraph sets forth Plaintiff's conclusions of law, to which no response is required.

68.     This paragraph sets forth Plaintiff's conclusions of law, to which no response is required.

12

69.     This paragraph sets forth Plaintiff's conclusions of law, to which no response is required.

70.     This paragraph sets forth Plaintiff's conclusions of law, to which no response is required.

71.     Defendant incorporates by reference its answers to all of the preceding paragraphs.

72.     This paragraph sets forth Plaintiff's conclusions of law, to which no response is required.

73.     This paragraph sets forth Plaintiff's conclusions of law, to which no response is required.

74.     This paragraph sets forth Plaintiff's conclusions of law, to which no response is required.

75.     This paragraph sets forth Plaintiff's conclusions of law, to which no response is required.

76.     Defendant incorporates by reference its answers to all of the preceding paragraphs.

77.     This paragraph sets forth Plaintiff's conclusions of law, to which no response is required.

78.     This paragraph sets forth Plaintiff's conclusions of law, to which no response is required.

79.     This paragraph sets forth Plaintiff's conclusions of law, to which no response is required.

The remaining paragraphs of the Complaint contain Plaintiff's requested relief, to which no response is required. To the extent a response is required, Defendant denies the allegations

13

Case 1:19-cv-00810-RBW   Document 36   Filed 04/25/19   Page 14 of 15

contained in the remaining paragraphs of the Complaint and further avers that Plaintiff is not

entitled to any relief.

 Defendant hereby denies all allegations in the Complaint not expressly admitted or denied.


Dated: April 25, 2019     Respectfully submitted,

          HASHIM MOOPPAN
          Deputy Assistant Attorney General
          Civil Division

          ELIZABETH J. SHAPIRO
          Deputy Director
          Federal Programs Branch

          */s/ Courtney D. Enlow*
          COURTNEY D. ENLOW
          Trial Attorney
          United States Department of Justice
          Civil Division, Federal Programs Branch
          1100 L Street, N.W.
          Room 12102
          Washington, D.C. 20005
          Tel: (202) 616-8467
          Email: courtney.d.enlow@usdoj.gov

          *Counsel for Defendant*


14

## CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2019, I electronically transmitted the foregoing to the parties and the clerk of court for the United States District Court for the District of Columbia using the CM/ECF filing system.

/s/ Courtney D. Enlow
COURTNEY D. ENLOW
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Room 12102
Washington, D.C. 20005
Tel: (202) 616-8467
Email: courtney.d.enlow@usdoj.gov

15

# ATTACHMENT

## EXHIBIT C

The Attorney General
Washington, D.C.

March 24, 2019

The Honorable Lindsey Graham
Chairman, Committee on the Judiciary
United States Senate
290 Russell Senate Office Building
Washington, D.C. 20510

The Honorable Jerrold Nadler
Chairman, Committee on the Judiciary
United States House of Representatives
2132 Rayburn House Office Building
Washington, D.C. 20515

The Honorable Dianne Feinstein
Ranking Member, Committee on the Judiciary
United States Senate
331 Hart Senate Office Building
Washington, D.C. 20510

The Honorable Doug Collins
Ranking Member, Committee on the Judiciary
United States House of Representatives
1504 Longworth House Office Building
Washington, D.C. 20515

Dear Chairman Graham, Chairman Nadler, Ranking Member Feinstein, and Ranking Member Collins:

As a supplement to the notification provided on Friday, March 22, 2019, I am writing today to advise you of the principal conclusions reached by Special Counsel Robert S. Mueller III and to inform you about the status of my initial review of the report he has prepared.

### *The Special Counsel's Report*

On Friday, the Special Counsel submitted to me a "confidential report explaining the prosecution or declination decisions" he has reached, as required by 28 C.F.R. § 600.8(c). This report is entitled "Report on the Investigation into Russian Interference in the 2016 Presidential Election." Although my review is ongoing, I believe that it is in the public interest to describe the report and to summarize the principal conclusions reached by the Special Counsel and the results of his investigation.

The report explains that the Special Counsel and his staff thoroughly investigated allegations that members of the presidential campaign of Donald J. Trump, and others associated with it, conspired with the Russian government in its efforts to interfere in the 2016 U.S. presidential election, or sought to obstruct the related federal investigations. In the report, the Special Counsel noted that, in completing his investigation, he employed 19 lawyers who were assisted by a team of approximately 40 FBI agents, intelligence analysts, forensic accountants, and other professional staff. The Special Counsel issued more than 2,800 subpoenas, executed nearly 500 search warrants, obtained more than 230 orders for communication records, issued almost 50 orders authorizing use of pen registers, made 13 requests to foreign governments for evidence, and interviewed approximately 500 witnesses.

1

The Special Counsel obtained a number of indictments and convictions of individuals and entities in connection with his investigation, all of which have been publicly disclosed. During the course of his investigation, the Special Counsel also referred several matters to other offices for further action. The report does not recommend any further indictments, nor did the Special Counsel obtain any sealed indictments that have yet to be made public. Below, I summarize the principal conclusions set out in the Special Counsel's report.

**Russian Interference in the 2016 U.S. Presidential Election.** The Special Counsel's report is divided into two parts. The first describes the results of the Special Counsel's investigation into Russia's interference in the 2016 U.S. presidential election. The report outlines the Russian effort to influence the election and documents crimes committed by persons associated with the Russian government in connection with those efforts. The report further explains that a primary consideration for the Special Counsel's investigation was whether any Americans – including individuals associated with the Trump campaign – joined the Russian conspiracies to influence the election, which would be a federal crime. The Special Counsel's investigation did not find that the Trump campaign or anyone associated with it conspired or coordinated with Russia in its efforts to influence the 2016 U.S. presidential election. As the report states: "[T]he investigation did not establish that members of the Trump Campaign conspired or coordinated with the Russian government in its election interference activities."[1]

The Special Counsel's investigation determined that there were two main Russian efforts to influence the 2016 election. The first involved attempts by a Russian organization, the Internet Research Agency (IRA), to conduct disinformation and social media operations in the United States designed to sow social discord, eventually with the aim of interfering with the election. As noted above, the Special Counsel did not find that any U.S. person or Trump campaign official or associate conspired or knowingly coordinated with the IRA in its efforts, although the Special Counsel brought criminal charges against a number of Russian nationals and entities in connection with these activities.

The second element involved the Russian government's efforts to conduct computer hacking operations designed to gather and disseminate information to influence the election. The Special Counsel found that Russian government actors successfully hacked into computers and obtained emails from persons affiliated with the Clinton campaign and Democratic Party organizations, and publicly disseminated those materials through various intermediaries, including WikiLeaks. Based on these activities, the Special Counsel brought criminal charges against a number of Russian military officers for conspiring to hack into computers in the United States for purposes of influencing the election. But as noted above, the Special Counsel did not find that the Trump campaign, or anyone associated with it, conspired or coordinated with the Russian government in these efforts, despite multiple offers from Russian-affiliated individuals to assist the Trump campaign.

---

[1]   In assessing potential conspiracy charges, the Special Counsel also considered whether members of the Trump campaign "coordinated" with Russian election interference activities. The Special Counsel defined "coordination" as an "agreement—tacit or express—between the Trump Campaign and the Russian government on election interference."

**Obstruction of Justice.** The report's second part addresses a number of actions by the President – most of which have been the subject of public reporting – that the Special Counsel investigated as potentially raising obstruction-of-justice concerns. After making a "thorough factual investigation" into these matters, the Special Counsel considered whether to evaluate the conduct under Department standards governing prosecution and declination decisions but ultimately determined not to make a traditional prosecutorial judgment. The Special Counsel therefore did not draw a conclusion – one way or the other – as to whether the examined conduct constituted obstruction. Instead, for each of the relevant actions investigated, the report sets out evidence on both sides of the question and leaves unresolved what the Special Counsel views as "difficult issues" of law and fact concerning whether the President's actions and intent could be viewed as obstruction. The Special Counsel states that "while this report does not conclude that the President committed a crime, it also does not exonerate him."

The Special Counsel's decision to describe the facts of his obstruction investigation without reaching any legal conclusions leaves it to the Attorney General to determine whether the conduct described in the report constitutes a crime. Over the course of the investigation, the Special Counsel's office engaged in discussions with certain Department officials regarding many of the legal and factual matters at issue in the Special Counsel's obstruction investigation. After reviewing the Special Counsel's final report on these issues; consulting with Department officials, including the Office of Legal Counsel; and applying the principles of federal prosecution that guide our charging decisions, Deputy Attorney General Rod Rosenstein and I have concluded that the evidence developed during the Special Counsel's investigation is not sufficient to establish that the President committed an obstruction-of-justice offense. Our determination was made without regard to, and is not based on, the constitutional considerations that surround the indictment and criminal prosecution of a sitting president.[2]

In making this determination, we noted that the Special Counsel recognized that "the evidence does not establish that the President was involved in an underlying crime related to Russian election interference," and that, while not determinative, the absence of such evidence bears upon the President's intent with respect to obstruction. Generally speaking, to obtain and sustain an obstruction conviction, the government would need to prove beyond a reasonable doubt that a person, acting with corrupt intent, engaged in obstructive conduct with a sufficient nexus to a pending or contemplated proceeding. In cataloguing the President's actions, many of which took place in public view, the report identifies no actions that, in our judgment, constitute obstructive conduct, had a nexus to a pending or contemplated proceeding, and were done with corrupt intent, each of which, under the Department's principles of federal prosecution guiding charging decisions, would need to be proven beyond a reasonable doubt to establish an obstruction-of-justice offense.

### Status of the Department's Review

The relevant regulations contemplate that the Special Counsel's report will be a "confidential report" to the Attorney General. *See* Office of Special Counsel, 64 Fed. Reg. 37,038,

---

[2]   *See A Sitting President's Amenability to Indictment and Criminal Prosecution*, 24 Op. O.L.C. 222 (2000).

3

37,040-41 (July 9, 1999). As I have previously stated, however, I am mindful of the public interest in this matter. For that reason, my goal and intent is to release as much of the Special Counsel's report as I can consistent with applicable law, regulations, and Departmental policies.

Based on my discussions with the Special Counsel and my initial review, it is apparent that the report contains material that is or could be subject to Federal Rule of Criminal Procedure 6(e), which imposes restrictions on the use and disclosure of information relating to "matter[s] occurring before [a] grand jury." Fed. R. Crim. P. 6(e)(2)(B). Rule 6(e) generally limits disclosure of certain grand jury information in a criminal investigation and prosecution. *Id.* Disclosure of 6(e) material beyond the strict limits set forth in the rule is a crime in certain circumstances. *See, e.g.*, 18 U.S.C. § 401(3). This restriction protects the integrity of grand jury proceedings and ensures that the unique and invaluable investigative powers of a grand jury are used strictly for their intended criminal justice function.

Given these restrictions, the schedule for processing the report depends in part on how quickly the Department can identify the 6(e) material that by law cannot be made public. I have requested the assistance of the Special Counsel in identifying all 6(e) information contained in the report as quickly as possible. Separately, I also must identify any information that could impact other ongoing matters, including those that the Special Counsel has referred to other offices. As soon as that process is complete, I will be in a position to move forward expeditiously in determining what can be released in light of applicable law, regulations, and Departmental policies.

*       *       *

As I observed in my initial notification, the Special Counsel regulations provide that "the Attorney General may determine that public release of" notifications to your respective Committees "would be in the public interest." 28 C.F.R. § 600.9(c). I have so determined, and I will disclose this letter to the public after delivering it to you.

Sincerely,

William P. Barr
Attorney General



**U.S. Department of Justice**

*The Special Counsel's Office*

_____

*Washington, D.C. 20530*

March 27, 2019

The Honorable William P. Barr
Attorney General of the United States
Department of Justice
Washington, D.C.

Re:   Report of the Special Counsel on the Investigation Into Russian Interference in the
      2016 Presidential Election and Obstruction of Justice (March 2019)

Dear Attorney General Barr:

I previously sent you a letter dated March 25, 2019, that enclosed the introduction and
executive summary for each volume of the Special Counsel's report marked with redactions to
remove any information that potentially could be protected by Federal Rule of Criminal Procedure
6(e); that concerned declination decisions; or that related to a charged case. We also had marked
an additional two sentences for review and have now confirmed that these sentences can be
released publicly.

Accordingly, the enclosed documents are in a form that can be released to the public
consistent with legal requirements and Department policies. I am requesting that you provide these
materials to Congress and authorize their public release at this time.

As we stated in our meeting of March 5 and reiterated to the Department early in the
afternoon of March 24, the introductions and executive summaries of our two-volume report
accurately summarize this Office's work and conclusions. The summary letter the Department
sent to Congress and released to the public late in the afternoon of March 24 did not fully capture
the context, nature, and substance of this Office's work and conclusions. We communicated that
concern to the Department on the morning of March 25. There is now public confusion about
critical aspects of the results of our investigation. This threatens to undermine a central purpose
for which the Department appointed the Special Counsel: to assure full public confidence in the
outcome of the investigations. *See Department of Justice, Press Release (May 17, 2017).*

While we understand that the Department is reviewing the full report to determine what is
appropriate for public release—a process that our Office is working with you to complete—that
process need not delay release of the enclosed materials. Release at this time would alleviate the
misunderstandings that have arisen and would answer congressional and public questions about
the nature and outcome of our investigation. It would also accord with the standard for public

2

release of notifications to Congress cited in your letter. *See* 28 C.F.R. § 609(c) ("the Attorney General may determine that public release" of congressional notifications "would be in the public interest").

Sincerely yours,

Robert S. Mueller, III
Special Counsel

Enclosures

# A T T A C H M E N T

## EXHIBIT D



Office of the Deputy Attorney General
Washington, D.C. 20530

ORDER NO. 3915-2017

APPOINTMENT OF SPECIAL COUNSEL
TO INVESTIGATE RUSSIAN INTERFERENCE WITH THE
2016 PRESIDENTIAL ELECTION AND RELATED MATTERS

By virtue of the authority vested in me as Acting Attorney General, including 28 U.S.C. §§ 509, 510, and 515, in order to discharge my responsibility to provide supervision and management of the Department of Justice, and to ensure a full and thorough investigation of the Russian government's efforts to interfere in the 2016 presidential election, I hereby order as follows:

(a)     Robert S. Mueller III is appointed to serve as Special Counsel for the United States Department of Justice.

(b)     The Special Counsel is authorized to conduct the investigation confirmed by then-FBI Director James B. Comey in testimony before the House Permanent Select Committee on Intelligence on March 20, 2017, including:

> (i)     any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump; and
>
> (ii)    any matters that arose or may arise directly from the investigation; and
>
> (iii)   any other matters within the scope of 28 C.F.R. § 600.4(a).

(c)     If the Special Counsel believes it is necessary and appropriate, the Special Counsel is authorized to prosecute federal crimes arising from the investigation of these matters.

(d)     Sections 600.4 through 600.10 of Title 28 of the Code of Federal Regulations are applicable to the Special Counsel.

5/17/17
Date

Rod J. Rosenstein
Acting Attorney General

Supra-legislative
Procedural Authorities claimed by Rosenstein:
28 USC 509 28 U.S. Code § 509 - Functions of the Attorney General
28 USC 510 28 U.S. Code § 510 - Delegation of authority
28 USC 515 28 U.S. Code § 515 - Authority for legal proceedings; commission, oath, and salary for special attorneys
28 CFR 600.4(a) 28 CFR 600.4 - Jurisdiction.
28 CFR 600.5    28 CFR 600.5 - Staff.
28 CFR 600.6    28 CFR 600.6 - Powers and Authority
28 CFR 600.7    28 CFR 600.7 - Conduct and Accountability
28 CFR 600.8    28 CFR 600.8 - Notification and Reports by Special Counsel
28 CFR 600.9    28 CFR 600.9 - Notification and Reports by Attorney General
28 CFR 600.10   28 CFR 600.10 - No creation of rights

# A T T A C H M E N T

## EXHIBIT E

April 5, 2019

OAG FOIA Office
Douglas Hibbard, Chief, Initial Request Staff
Office of Information Policy
DEPARTMENT OF JUSTICE
1425 New York Avenue, N.W. Suite 11050
Washington, D.C. 20530-0001

      **Re:**   **Request Under Freedom of Information Act ("FOIA")**
             **5 U.S.C. § 552, as amended by Public Law No. 104-231, 110 Stat. 3048**

Dear Sir
FOIA Officer

     This letter I herewith submit, constitute a request ("Request"), pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, as amended, for Records, Reports and Summaries in the possession of the Office of Attorney General, William P. Barr, Attorney General, of the Department of Justice ("DOJ"), with respect to the Special Counsel Investigation of 2017-2019 (also referred to as the Mueller probe, Mueller report investigation, and Russian investigation) announced as a United States statutory enforcement and a subsequent counterintelligence investigation of the Russian government's efforts to interfere in the 2016 U.S. Presidential Election as to such, being principally related to the filed Court documents. [1]

     The four-page Letter from Attorney General William P. Barr, on March 24, 2019, and thereafter made to leaders of the House and Senate Judiciary Committees and release to the public, was in fact, only his summary of the "Special Counsel Investigation of 2017-2019" of the Russian interference of the 2016 presidential election. And being absent of **(1)** the [unredacted] Final Mueller Report submitted on March 22, 2019, **(2)** the public release of the Summaries of Special Counsel Robert Muller's report that was prepared by his investigators, and **(3)**, all communications between the Justice Department and Mueller's office with respect to said entitled documents.

---

[1]
     On **May 17, 2017**, Robert S. Mueller III, was appointed by acting Attorney General Rod J. Roserstein to serve as Special Counsel by Order 3915-2017, to investigate Russian Interference with the 2016 Presidential Election and related matters within the scope of 28 C.F.R § 600.4(a). All related to the following filed Court Documents: U.S. v. Roger Jason Stone, Jr. (1: 19-cr-18, District of Columbia); U.S. v. Michael Cohen (I;18-cr-850, Southern District of New York);U.S. v. Paul J. **Manafort, Jr.** (1:17-cr-201, District of Columbia); U.S. v. Viktor Borisovich Netyksho, et al (1:18-cr-215, District of Columbia); U.S. v. Konstantin Killmink (I:17-cr-201, District of Columbia); U.S.  v. Richard W. Gates III (1;17-cr-201, District of Columbia); U.S. v. Paul J. Manafort, Jr., and Richard W. Gates III(1;18-cr-83, Eastern District of Virginia); **U.S. v. Alex van der Zwaan** (I:18-cr-31, District of Columbia); U.S.  v. Internet Research Agency, et al (1:18-cr-32, District of Columbia); U.S.  v. Richard Pinedo, et al (I;18-cr-24, District of Columbia); U.S.  v. Michael T. Flynn (1: 17-cr-232, District of Columbia); and U.S. v. George Papadopoulos (1: 17-cr-182, District of Columbia)
SPECIAL COUNSEL'S OFFICE | DEPARTMENT OF JUSTICE (hpps://www.justice.gov/sco)

-1-

For purposes of said entitled section, the term—

(1) "agency" as defined in section 551(1) of this title includes any executive department, military department, Government controlled corporation, or other establishment in the executive branch of the government (including the Executive President), or any independent regulatory agency;

(2) "record" and any other term used in this section in reference to information includes any information that would be and subject to the requirements of this section when maintained by an agency in any format, including an electronic format.

### Defined Terms

For the purposes of this Request, the following terms are defined as follows:

• Otherwise noted as "first" aforestated above, the Request seeks Records, Reports, and Summaries of Special Counsel Robert S. Mueller III, created since 2017, and thereafter, including but not limited to, those prepared by the Special Counsel's investigators which documents, comprised the full MUELLER REPORT, on March 22, 2019, and subsequently submitted to the Attorney General William P. Barr, the Department of Justice on said even date.

### Requested Records

As an individual Requester seeks the following categories of Records to the Special Counsel's investigation into Russian interference in the 2016 Presidential Election:

1. Special Counsel Robert S. Mueller Report and evidence submitted to the Attorney General William P. Barr, of the Department of Justice, of said even date, as to the Special Counsel investigation of 2017-2019. Presidential Election of Russian interference in the 2016;

2. Special Counsel Robert S. Mueller' written Summaries as prepared by investigators of said special counsel that comprised the Mueller's report, which was therein above submitted as to the Special Counsel investigation of 2017 to 2019. Presidential Election of Russian interference 2016;

3. All Communications between the Justice Department and Mueller's office with respect to the entitled documents as to the Special Counsel investigation of 2017 to 2019, Presidential Election of Russian interference 2016;

4. All report(s) and documents prepared pursuant to 28 C.F.R. 600.8(c), regardless whether such records were actually provided to the Attorney General William P. Barr, or the Acting Attorney General Matthew G. Whitaker;

5. All drafts, outlines, exhibits, and supporting materials associated with any actual and/or planned "report" or "closing documents, pursuant to 28 C,F,R, § 600.8(c);

6. All report(s) concerning or pertaining to the status of the investigation as prepared pursuant to 28 C.F.R. § 6008(a)(2), regardless such records were actually provided to the Attorney General William P. Barr, or the Acting Attorney General Matthew G. Whitaker;

7. All drafts, outlines, exhibits, and supporting materials associated with actual and/or planned report(s) concerning or pertaining to the status of the investigation, pursuant to 28 C.F.R. § 600.8(a)(2);

8. All records that explain . . . any investigative and/or prosecutorial procedure(s) pursuant to 28 C.F.R. § 600.7(b), regardless such records were actually provided to the Attorney General William P. Barr, or the Acting Attorney General Matthew G. Whitaker;

9. All drafts, outlines, exhibits, and supporting materials associated with or pertaining to actual or planned explanation for any investigative and/or prosecutorial procedure(s) pursuant to 28 C.F.R. § 600.7(b);

10. All referrals by the Special Counsel Robert S. Mueller III, Attorney General William P. Barr, or Acting Attorney General Matthew G. Whitaker for administrative actions, civil sanctions or other governmental actions, outside the criminal justice system, pursuant to 28 C,F.R. § 600.4(c), regardless such records were actually transmitted to any party outside of the Special Counsel's Office;

11. All reports summarizing and/or describing one or more persons outside of the Special Counsel's Office(1) any of the Special counsel's evidence, findings, decisions, procedure actions or planned procedural actions, or (2) any developments in the Special Counsel investigations of 2017 to 2019 of the Russian government's efforts to interfere in the 2016 Presidential Election; and

12. All drafts, outlines, exhibits, and supporting materials associated with or pertaining to any actual and/or planned report of the type(s) therein described in Item No. 11 of this FOIA Request.


The Individual Requester has excluded from its FOIA Request of records, of which have already been disclosed to the public in their complete and unredacted form in the course of pending judicial proceeding (FN [1] of said Individual FOIA Request) available at https://www.justice.gov/news. [2]

---

[2]
   Jennifer Agiesta, *CNN Poll: Almost Everyone Wants a Public Report on Muller's Findings,*
   CNN (Feb. 7, 2019), https://www.cnn.com/2019/02/07/politics/cnn-poll-russia-mueller-report-release/index.html.

The Requester agrees to pay search, duplication and review fees up to $100. If the fees amount to more than $100. said Requester seeks a fee waiver pursuant to 5 U.S.C. § 552(a)(A)(ii) and (a)(4)(A)(iii). That the FOIA's legislative history makes clear that the "fee waiver provision . . . is to be liberally construed in favor of waivers for non-commercial requesters. *Fed. Cure v. Lappin*, 602 F. Supp. 2d 197, 201 (D.D.C. 2009) (internal quotation marks omitted).

Further, "disclosure of the information (i.e., Special Counsel Mueller Report and Summaries) is in the public interest because it is likely to contribute significantly to public understanding of the activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).

Finally, pursuant to the applicable regulations and statute, I, the Individual Requester expects the determination of the Request for documents, as therein defined, within twenty business (20) days, statutorily mandated period, *see* 5 U.S.C. § 552(a)(6)(A)(i). If this Request is denied in whole or in part, the Individual Requester asks that the Department of Justice justify all deletions by reference to specific exemptions to FOIA. Moreover, the individual Requester expects the release of all segregative portions of otherwise exempt material, and herein reserves the right to appeal a decision to respond without any information.

Please furnish all applicable records pursuant to FOIA, 5 U.S.C. § 552(a)(3) to:

> Dr. Leonard W. Houston, Sr.
> HOUSTON & HOUSTON
> 148 Deer Court Drive, Bldg. 4
> Middletown, New York 10940-6867

Thank you for your assistance and prompt attention to this statutory matter.

Respectfully submitted,

LEONARD W. HOUSTON, SR.
*Individual Requester*

FOIA Request DOJ-2019-003927 Submitted

From: admin@foiaonline.gov (admin@foiaonline.gov)

To:    lenny.houston@yahoo.com

Date:  Friday, April 12, 2019, 2:07 PM CDT

This message is to confirm your request submission to the FOIAonline application:   . Request information is as follows:

- Tracking Number: DOJ-2019-003927
- Requester Name: Leonard W Houston, Sr.
- Date Submitted: 04/12/2019
- Request Status: Submitted
- Description: foia request

# DOJ-2019-003927 Request Details

 

Submitted    Evaluation    Assignment    Processing    Closed

## Request Information

| | |
|---|---|
| **Full Name** | Under Agency Review |
| **Organization** | Under Agency Review |
| **Fee Category** | TBD |
| **Date Submitted** | 04/12/2019 |
| **Estimated Date of Completion** | |
| **Final Disposition** | Undetermined |

## Description

The description of this request is under agency review.

## Released Records

| Download | Title | Size (MB) | File Type | Release Date |
|---|---|---|---|---|
| | | No records have been released yet. | | |



**U.S. Department of Justice**
Office of Information Policy
*Suite 11050*
*1425 New York Avenue, NW*
*Washington, DC  20530-0001*

*Telephone: (202) 514-3642*

May 7, 2019

Dear Requester:

This responds to your Freedom of Information Act (FOIA) request seeking a copy of the Report of Special Counsel Robert Mueller.  Please be advised that the tracking number associated with your request was provided in our letter acknowledging receipt of your request.

The Office of Information Policy (OIP) has completed FOIA processing of the "Report On The Investigation Into Russian Interference In The 2016 Presidential Election" ("the Report").  The FOIA-processed Report has now been made available in OIP's online FOIA Library, at _____ (under the "FOIA-Processed Documents" heading).  I have determined that the Report is appropriate for release with excisions made pursuant to Exemptions 3, 5, 6, 7(A), 7(B), 7(C), and 7(E) of the FOIA, 5 U.S.C. § 552(b)(3), (b)(5), (b)(6), (b)(7)(A), (b)(7)(B), (b)(7)(C), and (b)(7)(E).

Exemption 3 pertains to information specifically exempted from release by statute other than the FOIA (in this instance, the National Security Act of 1947, 50 U.S.C. § 3024(i)(1), which pertains to intelligence sources and methods, and Rule 6(e) of the Federal Rules of Criminal Procedure, which pertains to the secrecy of grand jury proceedings).  Exemption 5 pertains to certain inter- and intra-agency records protected by the deliberative process privilege.  Exemption 6 pertains to information the release of which would constitute a clearly unwarranted invasion of personal privacy.  Exemption 7(A) pertains to records or information compiled for law enforcement purposes, the release of which could reasonably be expected to interfere with enforcement proceedings.  Exemption 7(B) pertains to records or information compiled for law enforcement purposes, the release of which would deprive a person of a right to a fair trial or an impartial adjudication.  Exemption 7(C) pertains to records or information compiled for law enforcement purposes, the release of which could reasonably be expected to constitute an unwarranted invasion of personal privacy.  Exemption 7(E) pertains to records or information compiled for law enforcement purposes, the release of which would disclose techniques or procedures for law enforcement investigations or prosecutions.

Additionally, please be advised that some information contained in the Report is also subject to a court order prohibiting counsel for the parties from making statements to the media or in public settings that pose a substantial likelihood of material prejudice to the case.  *See* United States v. Roger J. Stone, Jr., Criminal No. 19-cr-18-ABJ (D.D.C.).

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA.  *See* 5 U.S.C. § 552 (2012 & Supp. V 2017).  This response is limited to those records that are subject to the requirements of

-2-

the FOIA. This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

You may contact our FOIA Public Liaison, Douglas Hibbard, for any further assistance and to discuss any aspect of your request at: Office of Information Policy, United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, DC 20530-0001; telephone at 202-514-3642; or facsimile at 202-514-1009.

Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; e-mail at                ; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

If you are not satisfied with my response to this request, you may administratively appeal by writing to the Director, Office of Information Policy, United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, DC 20530-0001, or you may submit an appeal through OIP's FOIAonline portal at                . Your appeal must be postmarked or electronically submitted within ninety days of the date of my response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

Sincerely,

Douglas R. Hibbard
Chief, Initial Request Staff

# Your FOIA Request for a Copy of the Report of Special Counsel Robert Mueller

From: OIP-NoReply (OIP-NoReply@usdoj.gov)

Date: Tuesday, May 7, 2019, 1:58 PM CDT

Attached is correspondence from the Department of Justice's Office of Information Policy, which is associated with the above-referenced Freedom of Information Act (FOIA) request.

**Please do not reply to this e-mail, as this account is not monitored.**

Thank you,

-------------------------------------------

Initial Request Staff

Office of Information Policy

U.S. Department of Justice

202-514-3642 (Main Line)

202-514-1009 (Fax)

Final Response - SCO Report (5.7.19).pdf
166.8kB

# ATTACHMENT

## EXHIBIT F

# HOUSTON & HOUSTON.
Law and Education

Dr. LEONARD W. HOUSTON, Sr.
Juris Doctor of Law, Ph.D., Education

May 8, 2019

Melane Ann Pustay, Director
Office of Information Policy
**DEPARTMENT OF JUSTICE**
1425 New York Avenue, N.W. Suite 11050
Washington, D.C. 20530-0001

---

### Mandatory Declassification Review Request
### Executive Order 12958 of April 17, 1995 [Federal Register, Vol. 60 No. 76]

---

*Re:*  **FOIA Request — DOJ 2019-0038 (OIP)**
   **Leonard W. Houston, Sr., Requester**
   **Date Submitted: 04/12/2019**

*Sub.:*  **Douglas R. Hibbard, Chief, Initial Request Staff**
   **OIP Reply Dated: May 7, 2019**


Dear Director Pustay:

This is a formal request for a mandatory declassification review, under the terms of Executive Order 12958, as amended, therein above described, as to the following:

1. Documents of any and/or coordination between the Russian government and individuals associated with the campaign of Presidential Donald J. Trump; and

2. Documents as to any matters that arose or may had risen directly from the investigation the investigation in the 2016 presidential election; and

3. Documents as to any and all matters within the scope of 28 C.F.R. § 600.4(a), pursed by the Special Counsel Robert S. Mueller, III, with respect to his appointment to investigate Russian interference with the 2016 Presidential election and related matters in accordance with Order No. 3915-2017, issued and authorized by Rod J. Rosenstein, Acting Attorney, dated May 17, 2017.

Thus, if you regard these documents as potentially exempt from disclosures' requirements under FOIA, as amended, I request that you nonetheless exercise your discretion to disclose them. Further, please release all reasonably segregable nonexempt portions of said requested documents that are responsive to the Requester's FOIA disclosure request.  5 U.S.C. § 552(a)(3)(A)

-1-

# HOUSTON & HOUSTON,

### Law and Education

Dr. LEONARD W. HOUSTON, Sr.
Juris Doctor of Law, Ph.D., Education

Moreover, to permit I, as an individual Requester of the FOIA, as amended, to reach an intelligent and informed decision, as to whether or not to file an administrative appeal of any *"denied"* material. And in that regard, please described any withheld portions and explain the basis for your claims, this in accordance with the indexing requirements of *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974).

I, as the individual Requester under the FOIA, as amended, looks forward to receiving your response.

Sincerely,

Leonard W. Houston, Sr.

---

### * * * VAUGHN INDEX

The term "Vaughn Index" originated from *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974), wherein the court rejected an agency's conclusory affidavit stating that requested FOIA documents were subject to exemption, *id* at 828. "A Vaughn Index must: (1) identify each document withheld; (2) state the statutory exemption claimed, and (3) explain how disclosure would damage the interests protected by the claimed exemption." *Citizens Comm'n on Human Rights v. FDA*, 45 F.3d 1325, 1326 n.1(9th Cir. 1995) This detailed affidavit "permit[s] the court system effectively and efficiently to evaluate the factual nature of disputed information." *John Doe Agency v. John Doe Corp*. 493 U.S. 146, 149 n.2 (1989) (quoting *Vaughn*, 484 F.2d at 826)

148 Deer Court Drive ■ Middletown ■ New York 10940-6867
Telephone No. (845) 343-8923 ■ Fax: (845) 342-3114
E-Mail: lenny.houston@yahoo.com

# FOIA Request DOJ-2019-004807 Submitted

From:  admin@foiaonline.gov (admin@foiaonline.gov)

To:    lenny.houston@yahoo.com

Date:  Tuesday, May 21, 2019, 12:13 PM CDT

This message is to confirm your request submission to the FOIAonline application:    . Request information is as
follows:

- Tracking Number: DOJ-2019-004807
- Requester Name: Leonard W Houston, Sr.
- Date Submitted: 05/17/2019
- Request Status: Submitted
- Description: mdr

# DOJ-2019-004807 Request Details

|  ○ | ○ | ○ | | |
|---|---|---|---|---|
| Submitted | Evaluation | Assignment | Processing | Closed |

## Request Information

| | |
|---|---|
| **Full Name** | Under Agency Review |
| **Organization** | Under Agency Review |
| **Fee Category** | TBD |
| **Date Submitted** | 05/17/2019 |
| **Estimated Date of Completion** | |
| **Final Disposition** | Undetermined |

## Description

The description of this request is under agency review.

## Released Records

| Download | Title | Size (MB) | File Type | Release Date |
|---|---|---|---|---|

No records have been released yet.

# ATTACHMENT

## EXHIBIT G

## LEONARD W. HOUSTON, PH.D., J.D.

148 Deer Court Drive • Middletown, New York 10940-6867 • (845) 343-8923 • FAX (845) 342-3114

May 20, 2019

Melane Ann Pustay, Director
**OFFICE OF INFORMATION POLICY(OIP)**
**UNITED STATES DEPARTMENT OF JUSTICE**
1425 New York Avenue, N.W., Suite 11050
Washington, D.C. 20530-0001

### Freedom of Information Act Appeal
Title 5, United States Code, section 552 (a)(6), as amended by Public Law No. 104, Stat. 3048,
as amended by FOIA Improvement Act of 2016, Public Law No. 114-185, 130 Stat. 538.

*Re:* FOIA Request —DOJ 2019-0038 (OIP)
Leonard W. Houston, Sr., FOIA Requester
Date Submitted: 04/12/2019

Dear Director Pustay:

This letter submitted herein, is pursuant to Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, as amended, and is herein, a statutory appeal of denial of said FOIA request dated April 5, 2019, being in part for Records, Reports and Summaries in the possession of the Office of Attorney General, William P. Barr, Attorney General, of the Department of Justice ("DOJ"), with respect to the Special Counsel Investigation into Russian Interference in the 2016 Presidential Election and related matters within the statutory scope of 28 C.F.R. § 600.4(a) and Section 600.4 through 600.10 of Title 28 of the Code of Federal Regulations are applicable to the appointed Special Counsel, Robert S. Miller III.  Annexed copy of Order No. 3915-2017, dated May 17, 2017

The same, being applicable to the Special Counsel,  Robert S. Mueller III, as appointed Special Counsel for the United States Department of Justice pursuant to Order No. 3915-2017, as issued by virtue of the authority vested therein,  by Acting Attorney General, Rod J. Rosenstein, dated May 17, 2017.

Thus, absent of complete response to initial  FOIA request as to: **(1)** the [*unredacted*] Final Mueller Report that was submitted on March 22, 2019,  **(2)** the public release of the Summaries of Special Counsel Robert Muller's report that were prepared by his investigators, and **(3),** all communications between the Justice Department and Mueller's office with respect to any and all said entitled documents and any and all related aspects of "Conclusion" and "Obstruction of Justice" by Donald J. Trump and/or any individuals associated with the presidential campaign of Donald J. Trump in the 2016 election.

As therein requested by said Requester's entitled letter, dated April 5, 2019, addressed to OAG FOIA Office, Douglas Hibbard, Chief, Initial Request Staff, Office of Information Policy, Department of Justice, as assigned Tracking Number: DOJ-2019-00392, dated April 12, 2019, 207 P.M. CDT.

Melane Ann Pustay, Director
**OFFICE OF INFORMATION POLICY (OIP)**
**UNITED STATES DEPARTMENT OF JUSTICE**
Page 2

The FOIA Requester contends and hereby asserts, that the U.S. Department of Justice's unlawfully withholding of records requested by Leonard W. Houston, Sr., as Requester, violates the FOIA, 5 U.S.C. § 552(a)(3)(A),

Thereby sought to withhold (i.e., including excisions made in the "Report On the Investigation Into Russian Interference In The 2016 Presidential Election" ("the Report") requested records under the claim Exemptions 3, 5, 6, 7(A), 7(B), 7(C), and 7(E); and the reliance on FOIA 5 U.S.C. § 552(b)(3), (b)(5), (b)(6), (b)(7)(A), (b)(7)(B), (7)(b)(7)(C) and (b)(7)(E) to disclosure, in the specific absence and/or statement thereof, to each said exemption under the deliberative process privilege.

Moreover, Exemption 5 [i.e., 5 U.S.C. § 552(b)(5)], permits an agency to withhold materials normally privileges from discovery in civil litigation against the agency (see, *Tax Analysts v. IRS*, 117 F.3d 607, 616 D.C. Cir. 1997). Thus, to qualify as exempt under said Exemption 5, "a document must meet two conditions: its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Syolt-Nielsen Transp. Grp. Ltd. v. United States*, 534 F.3d 728, 733 (D.C. Cir. 2008).

Further, for said documents to fall within the scope of the deliberative process privilege, withheld materials must be both "predecisional" and "deliberative" as cited in the case- *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993). And, a communication is predecisional if, "it was generated before the adoption of an agency policy" and deliberative if it "reflects the give-and-take of the consultative process." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 8866 (D.C. Cir. 1980).

Thus, even if the document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue[.] *id*. The deliberative process privilege is to construe "as narrowly as consistent with efficient Government operation." *United States v. Phillip Morris*, 218 F. R. D. 312, 315 (D. D.C. 2003)(quoting *Taxation with Representation Fund v. IRS*, 646 F.2d 666, 667 (D.C. Cir.)

Further stated therein as DOJ's official response (Douglas R. Hibbard, Chief, Initial Request Staff), dated May 7, 2019, "*** that this is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.*"

Here, the information sought has an informative value, and potential for contribution to public understanding (Note the decision in *Elizabeth v. Central Intelligence Agency*, 478 F. Supp. 1175, 1176 (D.C. D. 1979) (even a single document has the potential for contributing to public understanding).

Moreover, without adequately describing the documents withheld, without establishing a factual and/or legal basis for the application of these exemptions as aforestated above, to the responsive agency documents and without performing a sufficient segregability analysis to justify withholding nonexempt portions of requested records, which should be disclosed as reasonably segregable from exempt portions.

Melane Ann Pustay, Director
**OFFICE OF INFORMATION POLICY (OIP)**
**UNITED STATES DEPARTMENT OF JUSTICE**
Page 3

In addition, U.S. Department of Justice has failed to render and/or produce a complete itemized, indexed inventory of every record or portion thereof responsive to Requester's FOIA request pursuant to 5 U.S.C. 552, as amended, which the DOJ asserted to be exempt from disclosure, if any, to be accompanied by a detailed justification statement covering each refusal to release records or portions thereof in accordance with the indexing requirements of *Vaughn v. Rosen*, 157 U.S.App.D.C. 340, 484 F.2d 820 (1973) *cert. denie4d*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974); *Vaughn v. Rosen*, 523 F.2d 1136 (D.C. Cir. 1975)

Thus, the "*Vaughn Index*" must explain specifically which of the nine statutory Exemptions to FOIA's general rule of disclosure supports the DOJ's decision to withhold a requested document or to delete information from a released document. *Founding Church of Scientology of Washington, D.C. Inc. v. Bell*, 603 F.2d 945, 947 (D.C. Cir. 1976).

The Requestor, Leonard W. Houston, Sr., has <u>now</u> stipulated and agreed to narrow the scope of its request in two ways. *First,* Leonard W. Houston, Sr., will strike the term "drafts" from all categories in its FOIA request. *Second,* Leonard W. Houston Sr., will clarify that in Category 11, is seeking only "All other formal written reports, excluding e-mails, informal communications, and logistical memoranda, summarizing or describing . . .

The Individual Requester has excluded from its FOIA Request of records, of which has already been disclosed to the public in their complete and unredacted form in the course of pending judicial proceeding (FN. [1] of said Individual FOIA Request) available at https://www.justice.gov/news. [Jennifer Agiesta, *CNN Poll: Almost Everyone Wants a Public Report on Muller's Findings*, CNN (Feb. 7, 2019), https://www.cnn.com/2019/02/07/politics/cnn-poll-russia-mueller-report-release/index.html.]

Congress enacted Freedom of Information Act (FOIA) to "open up the workings of government to public scrutiny through the disclosure of government records." *Stern v, FBI,* 737 f.2d 84, 88 (D.C. Cir. 1984) As such, and pursuant to FOIA's nine Exemptions (5 U.S.C. § 552 *b) (1) - (9), an agency may withhold requested information. However, because FOIA established a strong presumption in favor of disclosure, requested materials must be disclosed unless it falls squarely with one of the exemptions (see, *Burke v, U.S. Dep't of Health and Human Servs. ,* 87 F.3d 508, 515 (D.C. Cir. 1996).

In 2016, Congress passed the Freedom of Information Improvement Act of 2016 ("the FOIA Improvement Act"), which amended FOIA (*see,* Pub. L. No. 114-185, 130 Stat. 518 codified at U.S.C. § 552 (2016), which amended 5 U.S.C. § 552, and was enacted on June 30, 2016). Which said Act codified the "foreseeable harm" standard, established by the Department of Justice in 2009 and used to defend an agency's decision to withhold information.

Further, under the foreseeable harm "standard, the Department of Justice would "defend an agency's denial of an FOIA request only if (**1**) the agency reasonably fores[aw] that disclosure would harm an interest protected by one of [FOIA's] statutory exemptions, or (**2**) disclosure was prohibited by law." U.S. Dep't of Justice, guide to the Freedom of Information Act 25 (2009 ed) (https://www.justice.gov/archive/oip/foia_guide09/procedual-requirements.pdf.

Melane Ann Pustay, Director
**OFFICE F INFORMATION POLICY (OIP)**
**UNITED STATES DEPARTMENT OF JUSTICE**
Page 4

Accordingly, as amended by the FOIA Improvement Act, the statutory text now provides that: "an agency shall . . . withhold information under this section only if . . . (1) the agency reasonably foresees that disclosure would harm an interest protected by [a FOIA] exemption; or (II) disclosure is prohibited by law. — 5 U.S.C. § 552(a)(8)(A).  Thus,  stated differently, pursuant to the FOIA Improvement Act, an agency must release a record-even if it falls within an FOIA exemption-if releasing the record would <u>not</u> reasonably harm an exemption-protected interest" and if the law does not prohibit the disclosure. *Rosenberg v. U.S. Dep't of Def.,* 342 F. Supp. 3d 62, 72 (D.D.C. 2018) (citation omitted).

The agency (*i.e.,* U.S. Department of Justice) bears the burden of justifying any withholding (see case— *Bigwood v. U.S. Agency for Int'l Dev.,* 484 F. Supp. 2d 68, 74 (D.D.C. 2007).

Thus, base upon this premise, for a Court to determine whether documents properly were withheld, the agency must provide a detailed description of the information withheld through the submission of a so-called "Vaughn Index," sufficiently detailed affidavits or declarations, or both.  *Hussain v. U.S. Dep't of Homeland Sec.,* 674 F. Supp. 2d 260, 267 (D.C.C. 2009)

Moreover, given the fact, there is no set formula for a "*Vaughn Index*" the agency must "disclose as much information as possible without thwarting the exemption's purpose. *King v. Dep't of Justice,* 830 F.2d 210, 224 (D.C. Cir. 1987).

Requestor, Leonard W. Houston, Sr., contends and hereby asserts, that the U.S. Department of Justice has failed to meet the foreseeable harm standard codified in the Act, under their cited FOIA Exemptions. Thus, applying the "foreseeable harm" standard, the DOJ has failed to explain how the disclosure of information withheld under the cited Exemptions would harm their deliberative process.

As previously stated, the actual government activity at issue in the Requestor's FOIA Request is the Special Counsel's investigation of Russian interference of the 2016 presidential election and the U.S. government's response to Russian election interference. Said Requestor's FOIA Request included facts—supported by both official government documents and federal regulations—to demonstrates that the activities of the Special Counsel, including the creation of investigatory reports, constitute a federal government activity.  Moreover, the U.S. government's response to Russian election interference is self-evidently an actual government activity.

Arguably, the foreseeable harm requirement does not go "so far as to require the government to identify harm likely to result from disclosure of each of its cited Exemption withholding, **but** the government (DOJ) at least needed to do more than "perfunctorily state that disclosure of all withheld information-regardless of category or substance-would jeopardizes the free exchange of information. Annexed copy of a letter from Robert S. Mueller III, Special Counsel, U.S. Department of Justice, Re:

**Report of the Special Counsel on the Investigation into Russian Interference**
**in the 2016 Presidential election and Obstruction of Justice(March 2019),**

dated March 27. 2019, addressed to Hon. William P. Barr, Attorney General of the United States, Department of Justice, which stated *inter alia,* "Accordingly, the enclosed documents are in a form that can be released to the public consistent with legal requirements and Department policies.  I am requesting that you provide these materials to Congress and authorize their public release at this time."

Melane Ann Pustay, Director
**OFFICE OF INFORMATION POLICY (OIP)**
**UNITED STATES DEPARTMENT OF JUSTICE**
Page 5

Thus, considering among other things, the voluminous press coverage of, and the intense interest, as herein asserted by this Requester, in the Special counsel's investigation, it is clear that I being of the public, urgently need to know the details of the interference in the 2016 presidential election.  Furthermore, the potential involvement of President Donald Trump in a foreign campaign to influence an election unquestionably bears on the integrity of the government and inevitably affects public confidence.

So, to does the government's capacity to protect United States' election systems and democratic institutions against foreign attacks Here, the Special Counsel's reports [unredacted] would shed more significant light on both of these matters so outlined in his reference letter to William P. Barr, Attorney General of the United States, Department of Justice in his letter dated March 27, 2019. in which he concluded in said entitled letter:

> *"It would also accord with the standard for public release of notifications*
> *to Congress cited in your letter* [March 24, 2019].  *See 28 C.F.R. § 609(c)*
> *("the Attorney General may determine that public release of congressional*
> *notifications" would be in the public interest").*

**Conclusion**

Requester, respectfully request that sad decision and determination of DOJ to withhold the requested documents as aforestated, in all respects, be <u>reverse</u>, according to the relevant DOJ and FOIA regulation, and that the U.S. Department of Justice conduct a search for any and all records responsive to the Requester's FOIA request and demonstrate that it employed search methods reasonably likely to lead to the discovery of records responsive to said Requestor's FOIA request, (1) that DOJ produce by a date certain, any and all non-exempt records responsive to Requester's FOIA request and a "*Vaughn Index*" of any responsive records as therein being subsequently defined withheld under claim of statutory Exemption, and not continuing to withhold and  all non-exempt records responsive to said Requestor's FOIA request.

Thank you for your consideration of this administrative Appeal, as I will anticipate your determination on said appeal within twenty (20) working days.  5 U.S.C. § 552a(6)(A)(ii).

Respectfully submitted,

Leonard W. Houston, Sr.
Requester

Melane Ann Pustay, Director
**OFFICE OF INFORMATION POLICY (OIP)**
**UNITED STATES DEPARTMENT OF JUSTICE**
Page 6

## Requested Records

As an FOIA Requestor seeks the following categories of Records to the Special Counsel's investigation into Russian interference in the 2016 Presidential Election:

1. Special Counsel Robert S. Mueller Report and evidence submitted to the Attorney General William P. Barr, of the Department of Justice, of said even date, as to the Special Counsel investigation of 2017-2019. Presidential Election of Russian interference in the 2016;

2. Special Counsel Robert S. Mueller' written Summaries as prepared by investigators of said special counsel that comprised the Mueller's report, which was therein above submitted as to the Special Counsel investigation of 2017 to 2019. Presidential Election of Russian interference 2016;

3. All Communications between the Justice Department and Mueller's office with respect to the entitled documents as to the Special Counsel investigation of 2017 to 2019, Presidential Election of Russian interference 2016;

4. All report(s) and documents prepared pursuant to 28 C.F.R. 600.8(c), regardless whether such records were actually provided to the Attorney General William P. Barr, or the Acting Attorney General Matthew G. Whitaker; [FN:1]

5. All drafts, outlines, exhibits, and supporting materials associated with any actual and/or planned "report" or "closing documents, pursuant to 28 C,F,R, § 600.8(c); [*id.* FN:1]

6. All report(s) concerning or pertaining to the status of the investigation as prepared pursuant to 28 C.F.R. § 6008(a)(2), regardless such records were actually provided to the Attorney General William P. Barr, or the Acting Attorney General Matthew G. Whitaker; [FN:2]

7. All drafts, outlines, exhibits, and supporting materials associated with actual and/or planned report(s) concerning or pertaining to the status of the investigation, pursuant to 28 C.F.R. § 600.8(a)(2); [*id.* FN:2]

8. All records that explain . . . any investigative and/or prosecutorial procedure(s) pursuant to 28 C.F.R. § 600.7(b), regardless such records were actually provided to the Attorney General William P. Barr, or the Acting Attorney General Matthew G. Whitaker; [FN;3]

9. All drafts, outlines, exhibits, and supporting materials associated with or pertaining to actual or planned explanation for any investigative and/or prosecutorial procedure(s) pursuant to 28 C.F.R. § 600.7(b); [*id.*FN:3]

Melane Ann Pustay, Director
**OFFICE OF INFORMATION POLICY (OIP)**
**UNITED STATES DEPARTMENT OF JUSTICE**
Page 7

10. All referrals by the Special Counsel Robert S. Mueller III, Attorney General William P. Barr, or Acting Attorney General Matthew G. Whitaker for administrative actions, civil sanctions or other governmental actions, outside the criminal justice system, pursuant to 28 C,F.R. § 600.4(c), regardless such records were actually transmitted to any party outside of the Special Counsel's Office; [FN4]

11. All reports summarizing and/or describing one or more persons outside of the Special Counsel's Office(1) any of the Special counsel's evidence, findings, decisions, procedure actions or planned procedural actions, or (2) any developments in the Special Counsel investigations of 2017 to 2019 of the Russian government's efforts to interfere in the 2016 Presidential Election; [FN:5 ]and

12. All drafts, outlines, exhibits, and supporting materials associated with or pertaining to any actual and/or planned report of the type(s) therein described in Item No. 11 of this FOIA Request.

### Defining a "Record"

In response to your question [The Honorable DIANNE FEINSTEIN, Senator Ranking Member, Committee on the Judiciary, dated April 19, 2017] about OIP's (Office of Information Policy) guidance on defining a "record" for purposes of responding to FOIA requests, that guidance is rooted in the guiding principles provided by the court of Appeals for the District of Columbia in *American Immigration Lawyers Association* (AAHA) *v. EOIR,* 830 F.3d 667, 678 (216), as the definition of a record found in the FOIA's sister statute, the Privacy Act of 1974. Like the FOIA, the Privacy Act has an access provision and is contained within 5 U.S.C. § 552, as part of the Administrative Procedure Act.

\* \* \*

Additionally. once a record has been identified as responsive, the agency applies the presumption of openness in processing those records.  OIP's guidance does not change this in disclosure determinations even before these principles were codified in the statute.  Looking to the definition of a record found in the Administrative Procedure Act, OIP's guidance provides workable principles to help agencies implement the precedent set in *AILA* in a manner that is not only consistent with the presumption of openness, but fully embraces it.

\* \* \*

Moreover, OIP's guidance stresses that the nature of a FOIA "record" is defined by both the content of a document *and* the subject of the request, both of which must be considered in determining what is a record for the purposes of each individual FOIA request. . .

By:  **SAMUEL R. RAMER**, Acting Assistant Attorney General
    *Office of the Assistant Attorney General,* Washington, D, C. 20530
    Excerpt from a responsive letter to Hon. DIANNE FEINSTEIN, Senator, dated April 19, 2017
    **U.S. Department of Justice**
    Office of Legislative Affairs

Melane Ann Pustay, Director
**OFFICE OF INFORMATION POLICY (OIP)**
**UNITED STATES DEPARTMENT OF JUSTICE**
Page 8

## FOOT NOTES:

[1]

    28 C.F.R § 600.8(c)-Closing documentation. At the conclusion of the special counsel's work, he or she shall provide the Attorney general with a confidential report explaining the prosecution or declination reached by the Special counsel; and the Special Counsel is required to provide the Attorney General with a report at the conclusion of the investigation.

[2]

    28 C,F,R, § 6008(a)(2): The Special Counsel is required to provide annual status to the Attorney General;   **(2)** Thereafter, 90 days before the beginning of each fiscal year, the Special Counsel shall report to the Attorney General the status of the investigation and provide a budget request for the following year.  The Attorney General shall determine whether the investigation should continue and, if so, establish the budget for the next year.

[3]

    28 C.F.R. § 6007(b): the Attorney General may request an explanation for any investigative or prosecutorial step taken by the Special Counsel:(b) The Special Counsel shall not be subject to the day-to-day supervision of any official of the Department.  However, the Attorney General may request that the Special Counsel provide an explanation for any investigative or prosecutorial step, and may after review conclude that the action is so inappropriate or unwarranted under established Departmental practices that it should not be pursued.  In conducting that review, the Attorney General will give great weight to the views of the Special counsel.  If the Attorney General concludes that a proposed action by a Special counsel should not be pursued, the Attorney General shall notify Congress as Specified in § 6009(a)(3).

[4]

    28 C,F.R. § 600.4(c): The special counsel may take "necessary action" to pursue penalties "outside the criminal justice system" in consultation with the Attorney General: (c) civil and administrative jurisdiction.  If in the course of his or her investigation the Special Counsel determines that administrative remedies, civil sanctions or other governmental action outside the criminal justice system might be appropriate, he or she shall consult with the Attorney General with respect to the appropriate component to take any necessary action.  A special counsel shall not have civil or administrative authority unless specifically granted such jurisdiction by the Attorney.

[5]

    Requester, Leonard W. Houston, Sr., in its FOIA Request sought twelve categories of records related to the Special Counsel's investigation into Russian interference in the 2016 presidential election:

> All other reports summarizing or describing for one or more persons outside of the Special Counsels' Office,(i) any of the special counsel's evidence, findings, decisions, actions, or planned actions, or (ii) any developments in the Special counsel investigations; and

> All drafts, outlines, exhibits, and supporting materials associated with Any actual or planned report or the type described in said Category of this request.

# ATTACHMENT

## EXHIBIT H



**U.S. Department of Justice**

Office of Legislative Affairs

---

Office of the Assistant Attorney General          *Washington, D.C. 20530*

APR 1 9 2017

The Honorable Dianne Feinstein
Ranking Member
Committee on the Judiciary
United States Senate
Washington, DC 20510

Dear Senator Feinstein:

This responds to your letter dated March 15, 2017 to the Director of the Department of Justice's (the Department) Office of Information Policy (OIP) concerning the implementation of the FOIA Improvement Act of 2016 and OIP's role in FOIA matters. As you know, the Department is responsible for encouraging government-wide compliance with the FOIA and we take this responsibility very seriously. The Department recently submitted to Congress its 2016 FOIA Litigation and Compliance Report,[1] which details a wide range of efforts undertaken by OIP this past calendar year to encourage compliance with the FOIA. We refer the Committee to that Report for a comprehensive description of OIP's activities in that regard. Set out below are answers to your specific questions. We are sending identical responses to the other Senators who joined in your letter.

### FOIA Improvement Act of 2016

OIP has taken a number of steps to ensure that agencies are fully implementing all the recent changes made to the FOIA through the FOIA Improvement Act of 2016. The two changes to the statute referenced in your letter, i.e., codification of the "foreseeable harm standard" and codification of the practice of proactively posting records online once they have been requested three times, both originated with the Department of Justice and OIP has been encouraging compliance with these long-standing polices for a number of years. OIP has long included these topics in its government-wide FOIA trainings and has required agencies to report on their implementation through their Chief FOIA Officer Reports, which are publicly available on OIP's website.

After passage of the FOIA Improvement Act of 2016, OIP immediately took a number of steps to inform and educate agencies as to all of its provisions. OIP created a detailed summary of the law and a redline version of the FOIA showing the changes made and posted those resources to its website. OIP continued to assist agencies with implementation of the new

---

[1] Links to supporting documents have been embedded throughout the document and can be viewed by selecting the highlighted text. All links can be accessed by visiting http://www.justice.gov/oip.

The Honorable Dianne Feinstein
Page Two

statutory amendments by providing training, issuing guidance, and leading government-wide efforts in accordance with the various new provisions of the law. For example:

- OIP held a government-wide training event that was widely attended on the new FOIA amendments. The training provided an overview of the amendments, including codification of the foreseeable harm standard and the posting of frequently requested records. The training also provided an opportunity for agency FOIA personnel to ask OIP's Director questions about the FOIA Improvement Act. The slides from the training session are publicly available on OIP's website.

- OIP issued several guidance articles to agencies addressing the various changes made by the FOIA Improvement Act of 2016:

  - On July 18, 2016, OIP issued guidance to agencies on the new requirements for FOIA response letters, including the requirement to afford requesters ninety days to file an administrative appeal and the new notification requirements for extending the FOIA's time limits. The guidance included an implementation checklist to serve as a quick resource for FOIA professionals.

  - On September 8, 2016, OIP issued updated guidance on Agency FOIA Regulations, which incorporated the changes made by the FOIA Improvement Act of 2016. OIP also issued an updated Template for Agency FOIA Regulations for agencies to use as they update their regulations.

  - On October 6, 2016, OIP issued guidance on the new requirements for agency Annual FOIA Reports. OIP also updated the Department of Justice Handbook for Agency Annual FOIA Reports to reflect the changes made under the FOIA Improvement Act of 2016.

  - On October 19, 2016, OIP issued guidance on the new requirements further prohibiting the assessment of certain fees when the FOIA's time limits are not met. This guidance also included a "Decision Tree" designed to serve as a resource for FOIA professionals as they implement the new restrictions in real time.

- On July 22, 2016, OIP convened the first meeting of the Chief FOIA Officers (CFO) Council, created by the FOIA Improvement Act of 2016. As one of the Chairs for the Council, OIP coordinated this inaugural meeting to both immediately establish this new body and to receive feedback on the potential implementation of a "Release to One is a Release to All" presumption for FOIA responses. OIP's Director opened the meeting by providing an overview of the responsibilities of agency CFOs and then briefed the Council on the Department's six-month Proactive Disclosure Pilot that tested the "Release to One is a Release to All" concept.

The Honorable Dianne Feinstein
Page Three

Finally, OIP continues to provide direct, one-on-one counseling for agency personnel through its FOIA Counselor Service. Agency professionals continue to call OIP's FOIA Counselor service for advice on all aspects of the FOIA, including the new provisions from the FOIA Improvement Act of 2016.

## Consolidated Online Request Portal

With the launch of FOIA.gov in 2011, OIP created a singular online resource that the public can use to learn about the FOIA, including where and how to make a request, with ready links to existing agency online portals, and descriptions of each agency. FOIA.gov also has a range of other helpful features, such as a search function that allows a potential requester to first search for publicly available information that is already online. FOIA.gov also displays graphically a wealth of data on all aspects of agencies' compliance with the FOIA. Over the past few years, as part of commitments in the United States' Second and Third Open Government National Action Plans, OIP has been working with both internal and external stakeholders to develop user and market research, as well as baseline requirements, for development of enhanced features on FOIA.gov. Among those features would be a consolidated or national FOIA request portal that would allow a member of the public to make a request to any agency directly from FOIA.gov.

Subsequent to the signing of the FOIA Improvement Act of 2016, OIP continued this work with the Office of Management and Budget (OMB) as a Cross-Agency Priority (CAP) goal. Working with OMB, we have secured $1.3 million to develop the initial phase of the portal. OIP also has been working with the 18F Team at GSA to develop a Statement of Work for the project and the Department has now signed an inter-agency agreement with 18F. As you know, 18F is a technology service built in the spirit of tech startups and provides agencies with custom, user-centric solutions that address a client's unique challenges. We are nearing the kickoff of our new work on the portal in conjunction with 18F in the coming weeks. We expect the initial phase of the project to be completed in 2017; however, we will be employing an open and iterative development process throughout this project allowing stakeholders to be fully engaged from the very beginning. This will ensure that interested stakeholders, including requesters and agencies, can monitor, and weigh-in on, the progress of the portal as the project proceeds. The work being done on the portal will be available to view and interact with from the beginning and as it progresses towards a more final product, both requesters and agency users will be able to continue to work with it and test new features in each iteration of the development process.

## Fostering Good Communication between Agencies and Requesters

OIP has engaged in a range of efforts over the years to encourage good communication and outreach with requesters across the government. Since 2010, OIP has issued multiple guidance articles encouraging practices that embrace the importance of good communication with requesters. This guidance, which is listed below, is available on OIP's website.

- The Importance of Good Communication with FOIA Requesters (March 1, 2010)

The Honorable Dianne Feinstein
Page Four

- The Importance of Good Communication with FOIA Requesters 2.0: Improving Both the Means and Content of Requester Communications (November 22, 2013)
- Limitations on Use of "Still-Interested" Inquiries (July 2, 2015)
  - Implementation Checklist for OIP Guidance on Limitations on Use of "Still-Interested" Inquiries

In addition to its guidance, each year OIP provides training to thousands of FOIA professionals across the government and has integrated the importance of good communication throughout those training programs. Further, in March 2015 OIP released a suite of new electronic training resources available for all agencies. As part of this suite of resources, in the e-Learning training for FOIA professionals an entire module focuses on good communication practices and working with requesters in a spirit of cooperation. This module includes simulated interactions between FOIA professionals and requesters illustrating the benefits of good communication.

Expanding on its training program, in May 2014 OIP launched a new Best Practices Workshop Series and invited experts from the government and the public to share successful strategies and best practices on specific topics in FOIA administration. All of the sessions and the best practices shared are recapped on OIP's website so that all government personnel can learn from them. Each year for the past three years, OIP has held a workshop that specifically focused on good communication and outreach with requesters:

- Best Practices from the Requester's Perspective (October 28, 2014)
- Customer Service and Dispute Resolution (February 18, 2015)
- Best Practices from the Requester's Perspective (April 25, 2016)

You can view all of the best practices discussed at these workshops on the Best Practices Workshop Series page of OIP's website. OIP's guidance, as well as the best practices shared in these workshops, emphasize communicating with requesters early on and then maintaining frequent and substantive communications throughout the FOIA process.

As a further way of reinforcing the importance of outreach to requesters, OIP has also required agencies to report on their FOIA outreach activities in their Chief FOIA Officer Reports. As you know, the FOIA requires each agency Chief FOIA Officer to "review and report to the Attorney General, through the head of the agency, at such times and in such formats as the Attorney General may direct, on the agency's performance in implementing [the FOIA]." 5 U.S.C. § 552(j)(2)(D) (2014). In addition to asking about requester outreach, OIP has also asked agencies to report on the activities of their FOIA Requester Service Centers and FOIA Public Liaisons who interact with requesters every day. Moreover, this past year, OIP asked agencies to report on whether they offer a mechanism for requesters to provide feedback about their experience with the FOIA process. OIP posts all of the Chief FOIA Officer Report Guidelines on its Guidance page.

The Honorable Dianne Feinstein
Page Five

In their Chief FOIA Officer Reports, many agencies have detailed their efforts to engage in outreach with requesters. The following are just a few examples of these efforts that were highlighted in the Department's Summary of the 2016 Chief FOIA Officer Reports:

- The Department of Homeland Security Privacy Office hosted an open forum meeting to discuss their FOIA process with requesters and to look for ways to improve.

- At the Department of Defense, in July 2016 the National Security Agency (NSA) hosted a roundtable with a representative of civil society. Additionally, in April 2016 NSA held a session with a frequent requester at the Intelligence Community FOIA Officers Information Day.

- The United States Postal Service (USPS) held a FOIA Forum in December 2015 that was open to postal employees and the public.

As you can see, the Department very much appreciates the importance and benefits of working with requesters and employing good communication practices. OIP has fully embedded those principles in all of its different efforts to encourage compliance with the FOIA.

### "Release to One is Release to All"

In July 2015, the Department launched a 6-month pilot program with seven volunteer agencies to assess the viability of a policy that would direct agencies to proactively post online their FOIA responses. The concept behind the pilot was to take the legal maxim under the FOIA that "release to one is release to all" and make it literally a reality. The goal of such a policy is to enable all citizens—not just those making individual requests—to have access to information released under the FOIA. Preparing documents for online posting involves time and resources to ensure that the material is available to all members of the public, including those with disabilities. Because that preparation necessarily involves agency time and resources, OIP conducted the pilot to capture metrics on the time and resources associated with implementing this policy, as well as to assess any impacts on interested stakeholders. At the conclusion of the pilot OIP prepared a comprehensive report, summarizing the metrics gathered and experiences learned by the pilot participants. Based on the metrics collected, input from stakeholders, and interviews and discussions with the pilot participants OIP made seven findings concerning the feasible of implementing such a policy, which it included in its public report.

In conjunction with the signing of the FOIA Improvement Act of 2016, OIP took this initiative to the next step by working with the newly established Chief FOIA Officers Council to consider the lessons learned from the pilot and to get further input on issues critical to a proposed government-wide "Release to One is a Release to All" policy. This effort included assessing the impact on investigative journalism, as well as how best to address technological and resource challenges. OIP held two Chief FOIA Officer Council meetings in July and September of 2016, both of which were open to the public. A recap of the meetings, and all of the material from the meetings, can be found on the Chief FOIA Officer Council page of OIP's website.

The Honorable Dianne Feinstein
Page Six

After giving careful consideration to the lessons learned from the pilot and the feedback received from both agencies and the public, OIP next published draft guidance concerning the proposed policy in the Federal Register for public comment. All comments were due by December 23, 2016. OIP received a range of thoughtful comments with competing suggestions from the public on several aspects of the policy, including the merits of whether a delay should be required before agencies post records. The Department is currently evaluating those comments and balancing them against the lessons learned from the pilot and agency feedback to determine the best path forward for advancing the principles behind the policy. The overwhelming concern raised by agencies with regard to the policy are the resources needed to prepare documents for posting by making them compliant with Section 508 of the Rehabilitation Act. Some agencies have reported concern that this diversion of their time and resources could impact their ability to respond to FOIA requests.

OIP is continuing to encourage agencies to proactively post information of interest to the public. Indeed, several agencies reported in their 2017 Chief FOIA Officer Reports that they are already implementing the "Release to One is a Release to All" presumption. Moreover, as discussed above, in accordance with the FOIA Improvement Act of 2016 agencies are required to post FOIA-processed records once they have been requested three times and so those FOIA-processed records are now being made available to all through that public posting.

## Defining a "Record"

In response to your questions about OIP's guidance on defining a "record" for purposes of responding to FOIA requests, that guidance is rooted in the guiding principles provided by the Court of Appeals for the District of Columbia Circuit in *American Immigration Lawyers Association (AILA) v. EOIR*, 830 F.3d 667, 678 (2016), as well as the definition of a record found in the FOIA's sister statute, the Privacy Act of 1974. Like the FOIA, the Privacy Act has an access provision and is contained within 5 U.S.C. § 552 as part of the Administrative Procedure Act.

In *AILA* the plaintiff submitted a request to the agency for records regarding complaints made against immigration judges. The agency processed thousands of pages of complaint files, but made redactions of information that the agency deemed to be non-responsive to the FOIA request. AILA moved to compel production of the non-responsive material and, as the D.C. Circuit relayed, "[t]he district court, relying on its own past practice and that of other district courts in recent years, denied AILA's motion." Indeed, as noted in OIP's guidance, for many years it was common practice for agencies to process only those portions of a document that are responsive to the topic of the request and to redact the other portions as "non-responsive" or "outside the scope." This is clearly evidenced in the many court decisions where this practice was affirmed. *See Welby v. HHS*, 2016 WL 1718263, at *8 (S.D.N.Y. Apr. 27, 2016) (finding that the agency did not improperly redact portions of a document because the subject matter was unrelated to the FOIA request or fell outside the time period provided in the FOIA request);

The Honorable Dianne Feinstein
Page Seven

*Gahagan v. USCIS*, 147 F.Supp.3d 613 (E.D. La 2015) (finding that the agency lawfully withheld, from otherwise responsive documents, nonresponsive notes about the processing of the request); *Menifee v. U.S. Dep't of the Interior*, 931 F. Supp. 2d 149, 167 (D.D.C. 2013) (finding that redactions of information outside the scope of the request was not improper, even if not exempted from FOIA disclosure); *Pub. Investors Arb. Bar Ass'n v. S.E.C.*, 930 F. Supp. 2d 55, 72 (D.D.C. 2013) (concluding that, "it is elementary that an agency's decision to withhold non-responsive material is not a violation of the FOIA"); *Ctr. for Biological Diversity v. OMB*, No. 07-04997, 2009 WL 1246690, at *5 (N.D. Cal. May 5, 2009) (finding that agency "is not required to produce information that is not responsive to a FOIA request"); *Cal. ex rel. Brown v. NHTSA*, No. 06-2654, 2007 WL 1342514, at *2 (N.D. Cal. May 8, 2007) (declining to order agency to disclose non-responsive information redacted from documents, and stating that "[a]n agency has no obligation to produce information that is not responsive to a FOIA request").

On appeal, the D.C. Circuit noted that the agency practice of redacting non-responsive information within responsive records was "a question of first impression" for the D.C. Circuit. Relying on the Supreme Court's ruling in *Milner v. Department of the Navy* that the FOIA's exemptions are "'exclusive' and must be 'narrowly construed,'" 562 U.S. 562, 565 (2011) (quoting *EPA v. Mink*, 410 U.S. 73, 79 (1973) & *FBI v. Abramson*, 456 U.S. 615, 630 (1982)), the D.C. Circuit ruled that "non-responsive redactions . . . find no home in FOIA's scheme." *AILA*, 830 F.3d at 677. OIP's guidance fully embraces and implements the D.C. Circuit's finding in *AILA* that once an agency identifies a record that is responsive to a request, it cannot redact information within that record based on the fact that it is non-responsive.

Significantly, in arriving at its conclusion the D.C. Circuit did not attempt to answer the important antecedent question of what a "record" is under the FOIA. *Id.* at 678. Indeed, it noted that the "practical significance of FOIA's command to disclose a responsive record as a unit (after deletion of exempt information) depends on how one conceives of a 'record.'" *Id.* The court in *AILA* noted that there is no definition of the term "record" in the definition section of the FOIA. *AILA*, 830 F.3d at 678.

While the court in *AILA* declined to examine the issue and provide a definition of a "record," for purposes of FOIA, some helpful principles did emerge from the court's opinion which form the basis of OIP's guidance. The court recognized that there are a range of ways to define what is a "record," and that it is the very process of searching for what has been requested by each requester that forms the basis for the determination. *See id.* While the court drew attention to a number of different disclosure statutes, the "record" definition from the Privacy Act is particularly relevant, given that the Privacy Act is the sister statute to the FOIA, often working in tandem with it. Indeed, both the FOIA and the Privacy Act are part of the Administrative Procedure Act, and both statues contain rights of access to agency records. *See* 5 U.S.C. §§ 552(a)(3), 552a(d)(1). Additionally, unlike other Federal statutory definitions of the term "record," the Privacy Act definition actions for a content-based approach to the decision. Using the Privacy Act' definition of a record as an "item, collection, or grouping of information" allows agencies to understand as a practical matter what may be considered a single record when processing a request. Moreover, OIP's guidance stresses that the nature of a FOIA "record" is

The Honorable Dianne Feinstein
Page Eight

defined by both the content of a document *and* the subject of the request, both of which must be considered in determining what is a record for the purposes of each individual FOIA request.

OIP's guidance was thoughtfully crafted to embrace the presumption of openness. The guidance helps ensure that requesters have efficient access to the records that they seek and that agency time and resources are not diverted from that task by reviewing records that were not requested. Spending resources to process records that the requester has not requested disadvantages all requesters by prolonging response times for everyone. A recent decision by the District Court for the District of Columbia affirmed this approach, with the court noting that "If an agency was forced to turn over a full manual or entire report every time a single page contained a responsive term, the amount of time, labor, and cost that would be required to review this purportedly 'responsive' material for exemptions would be exponential, hindering the agency's ability to process multiple requests efficiently or allocate its resources effectively." *Shapiro v. CIA,* No. 00019 (D.D.C. Mar. 21, 2017).

Additionally, once a record has been identified as responsive, the agency applies the presumption of openness in processing those records. OIP's guidance does not change this in any way. Indeed, the Department has long championed applying a presumption of openness to disclosure determinations even before these principles were codified in the statute. Looking to the definition of a record found in the Administrative Procedure Act. OIP's guidance provides workable principles to help agencies implement the precedent set in *AILA* in a manner that is not only consistent with the presumption of openness, but fully embraces it.

### OIP's Litigation Role

From time to time OIP has assisted the United States Attorney's Office for the District of Columbia by taking on a handful of FOIA cases. These cases can involve both procedural matters and the proper application of exemptions. In accordance with 28 C.F.R. § 0.24(g) (2016), OIP may represent government agencies in FOIA litigation through the United States Attorney's Offices.

We appreciate your interest in the Department's and agencies' FOIA administration and we hope that this information is helpful. Please do not hesitate to contact this office if we may provide additional assistance regarding this or any other matter.

Sincerely,

Samuel R. Ramer
Acting Assistant Attorney General

# THE UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

ELECTRONIC PRIVACY INFORMATION )
CENTER, )
        *Plaintiff,* )
 )
LEONARD W. HOUSTON, SR., )
 )
       *Proposed Intervenor-Plaintiff,* )
 )
       v. )
 )
UNITED STATES DEPARTMENT OF )
JUSTICE, )
 )
       *Defendant.* )

Civil Action No. 1:19-cv-00810 (RBW)

## [PROPOSED] ORDER GRANTING MOTION TO INTERVENE

Upon consideration of the Motion of Leonard W. Houston, Sr., to intervene as a Plaintiff in the above captioned matter, pursuant to Federal Rule of Civil Procedures 24. Having considered the motion, and supporting Memorandum in support thereof, and it appearing to the Court that notice of the motion has been served on all parties thereto, and that this Court finds good cause exists for granting the motion, and therefore,

**IT IS ORDERED**, Leonard W. Houston, Sr., Motion to Intervene as Plaintiff is GRANTED, and it is

**FURTHER ORDERED**, that Leonard W. Houston, Sr., is joined as a Plaintiff to this action, and it is

**FURTHER ORDERED,** that the Clerk of the Court shall docket Leonard W. Houston, Sr's. Complaint in Intervention attached to the motion and shall serve as the complaint in intervention in this action.

**SO ORDERED** on this ____day of August 2019

                                  **Honorable  REGGIE B. WALTON**
                                  United States District Judge